IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JON HALL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No.  05-01199-JDT |
| ) | |
| RICKY BELL, Warden, Riverbend ) | |
| Maximum Security Institution, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM IN SUPPORT OF
MOTION FOR LEAVE TO SERVE SUBPOENAS

I.   INTRODUCTION

At his first-degree murder trial, Jon Hall did not dispute that he killed his estranged wife Billie.  The only issue was why.

The State maintained that prior to going to Billie's house, Mr. Hall formulated a plan: He was going to make Billie suffer, feel the way she had made him feel when she left him.  The State presented evidence that in carrying out such a plan, Mr. Hall forced his way into Billie's home, barricaded himself and Billie in a bedroom, and began beating her.  As further evidence of premeditation, the State presented Dr. O. C. Smith's testimony that during the beating, Billie received eighty-three separate blows.

The jury credited the State's theory, convicted Mr. Hall of premeditated first-degree murder, and sentenced him to death.

In this habeas proceeding, Mr. Hall asserts, among other things, that the night Billie died, he was drunk, stoned, and tired.  He went to Billie's home, she allowed him to come inside, and

after an hour or so of talking, he "just lost it." Mr. Hall alleges that the State created the premeditation case against him, and crippled his defense that emotions overcame him, by withholding evidence and presenting perjured testimony. In addition, Mr. Hall asserts that trial counsel rendered ineffective assistance by failing to establish that the State's premeditation case was unworthy of the jury's favor. To develop these claims, Mr. Hall respectfully requests leave to serve subpoenas for the District Attorney's file and the files of the State agencies that investigated the Billie Hall murder - the Tennessee Bureau of Investigation (TBI), the Henderson County Sheriff's Department, and the Madison County Sheriff's Department.

Section II, below, discusses the standard governing Mr. Hall's right to serve the specified subpoenas. Section III, below, demonstrates that under that standard, Mr. Hall is entitled to serve those subpoenas. Section IV concludes.

II.     THE HABEAS DISCOVERY STANDARD

In this 28 U.S.C. § 2254 proceeding, Mr. Hall is entitled to invoke civil discovery on his withheld evidence, perjured testimony, and ineffective assistance of counsel claims upon a showing of "good cause." Rule 6 of the Rules Governing Section 2254 Cases. Good cause exists "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." See Bracy v. Gramley, 520 U.S. 908-09, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994); Deputy v. Taylor, 19 F.3d 1485, 1492-93 (3rd Cir. 1994). At this stage of the proceeding, Mr. Hall need not demonstrate that he will ultimately prevail on his claims, only that discovery will assist him develop fully those claims. Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005).

In the context of a withheld evidence claim, discovery is appropriate when the petitioner's claims "do not appear purely speculative or without any basis in the record." McDaniel v. United States District Court for the District of Nevada, 127 F.3d 886, 888 (9th Cir. 1997); see also Moore v. Gibson, 195 F.3d 1152, 1166 (10th Cir. 1999)(discovery appropriate when the record lends some support to the petitioner's allegations). As to a perjured testimony claim, discovery is appropriate when the record provides a basis to suspect that the prosecution presented such testimony. Drake v. Portuondo, 321 F.3d 338, 345-46 (2d Cir. 2003). Consistent with these standards, Tennessee District Courts regularly allow death-sentenced habeas petitioners leave to conduct the type of discovery Mr. Hall seeks here. See Payne v. Bell, 89 F.Supp.2d 967, 970-71, 973-74 (W.D. Tenn. 2000)(recognizing that in a capital habeas proceeding, federal courts should apply the Rule 6 "good cause" standard liberally); (Exhibit 1, District Court Discovery Orders).

The next section demonstrates that under these standards, Mr. Hall is entitled to serve the subpoenas he specifies.

III. MR. HALL IS ENTITLED TO SERVE SUBPOENAS

    A. The State's Premeditation Case At Trial

To have the jury find that Mr. Hall killed his estranged wife pursuant to a premeditated plan, the State presented:

    (1) the jailhouse snitch testimony of Chris Dutton that Mr. Hall said he went to Billie's home intending to hurt her and make her suffer;

    (2) the testimony of Billie's children that Mr. Hall forced his way into the house and barricaded Billie and himself in a bedroom where he began beating her;

3

>   (3) crime scene photographs containing no evidence that after going inside
Billie's home, Mr. Hall and Billie talked while Hall drank beer; and

>   (4) Dr. O. C. Smith's testimony that Billie Hall received eighty-three separate
blows during the beating.

>   1. Chris Dutton's Trial Testimony: Before Mr. Hall Went To Billie's Home He Formulated A Plan That He Was Going To Hurt Her And Make Her Suffer When He Got There

At Mr. Hall's trial, Chris Dutton testified that he was a Tennessee Department of Correction inmate incarcerated at a minimum security facility. R. 2, 222-24.[1] After describing prior convictions, R. 2, 222-23, Dutton testified that he had previously been incarcerated at the Riverbend Maximum Security Institution where he spoke with Mr. Hall. R. 2, 227. When the prosecution asked on direct examination if Mr. Hall had told Dutton about a plan he formulated before going to Billie's home, Dutton testified that Hall said he

> wanted to make her feel as he did. He wanted her to suffer as he did, feel the helplessness that he was feeling because she took his world away from him.

R. 2, 228. On redirect, Dutton again told the jury that Hall said he went to Billie's home "to make her hurt the way she made him hurt, feel as helpless as he felt." R. 2, 236.

Dutton testified that he had his conversation with Hall about a year prior, and he wrote a letter to the State about it a week or two thereafter. R. 2, 229-30. To bring credibility to his story, Dutton testified that (1) no one contacted him about his conversation with Hall until the prosecutor did so a week before Mr. Hall's trial, R. 2, 230; (2) he did not know what a prison

---

[1] The State filed the trial transcript as Addendum 2 to R. 21: Notice Of Manual Filing Of Documents. Mr. Hall will cite trial testimony from transcript as "R. (volume number), (page number)." Closing arguments are contained in a separate volume. Mr. Hall will cite that volume as "Closing Argument Transcript, (page number)."

informant was, R. 2, 232; (3) his role was not to tell authorities about things he purportedly heard in prison, id.; and (4) getting favorable treatment had nothing to do with his decision to testify against Mr. Hall.  R. 2, 233.

>   2.  The Children's Trial Testimony: Mr. Hall Forced His Way Into Billie Hall's Home, Barricaded Billie And Himself In A Bedroom, And Began Beating Her

Billie Hall's four children were with her when Mr. Hall arrived at her home.  Three of the children testified at Mr. Hall's trial.  They told Mr. Hall's jury that when he arrived, he pushed his way through the front door, R. 2, 242 (Stephanie Lambert testimony); R. 2, 260 (Cynthia Lambert testimony), told the kids to go to bed, R. 2, 243 (Stephanie Lambert testimony); R. 2, 260 (Cynthia Lambert testimony); R. 2, 277 (Jennifer Lambert testimony), barricaded Billie and himself in a bedroom, R. 2, 244 (Stephanie Lambert testimony); R. 2, 262 (Cynthia Lambert testimony); R. 2, 277(Jennifer Lambert testimony), and began beating her.

>   3.  The Crime Scene Photographs: Devoid Of Evidence That After Arriving At Billie's Home, Hall And Billie Talked While Mr. Hall Drank Beer

At trial, the prosecution entered into evidence pictures taken inside Billie's home after she was killed.  Beer bottles do not appear.  Collective Trial Exhibits 3 and 5.

>   4.  Dr. Smith's Testimony: Billie Received Eighty-Three Separate Blows

Medical Examiner Dr. O. C. Smith testified that Billie Hall received eighty-three separate blows before dying.  R. 2, 302.

>   5.  Closing Argument

At the close of trial there was but one issue: did Mr. Hall killed Billie with premeditation or did he "lose it?"  The prosecution argued that it had established premeditation through (1) Dutton's testimony that Hall said he went to Billie's home intending to make her suffer, Closing

Argument Transcript, 6-7, 19; (2) the children's testimony that Hall forced his way into Billie's home, id. at 10; and (3) Dr. Smith's testimony that Billie received eighty-three separate blows. Id. at 12. Defense counsel argued that Mr. Hall's passion precluded a premeditation finding. Id. at 28. The jury credited the State's evidence, convicted Mr. Hall of first-degree murder, and sentenced him to death.

   B.  If Mr. Hall Proves His Habeas Allegations, He Is Entitled To Relief

Mr. Hall's habeas petition alleges that Dutton's testimony was false, R. 15: Amended Petition For Writ Of Habeas Corpus at ¶ 234; the State withheld evidence that Dutton had a previous conviction for false reporting to law enforcement authorities, id. at ¶ 228; the children's testimony was false, id. at ¶ 235; Dr. O. C. Smith's testimony was false, id. at ¶ 237; the State introduced into evidence photographs that misrepresented the crime scene, ¶ 236; and the State withheld evidence that its premeditation evidence was false. Id. at 230. See also id. at ¶ 248. In addition to his withheld evidence/false testimony allegations, Mr. Hall asserts that trial counsel was ineffective for failing to challenge the State's premeditation evidence. Id. at ¶¶ 262.10-13

Mr. Hall's claims strike at the heart of the central issue at his trial: whether he carried out a premeditated plan to kill Billie or whether his emotions got the best of him. Whether cast in terms of materiality for purposes of his false testimony and withheld evidence claims, or prejudice for purposes of his ineffective assistance of counsel claim, the result is the same. If Mr. Hall proves his allegations he will eviscerate the State's premeditation case, and, consequently, he will be entitled to habeas relief. See United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)(when the prosecution withholds evidence and knowingly presents false testimony, a new trial is required "if there is any reasonable likelihood that the

false testimony could have affected the judgment of the jury."); Napue v. Illinois, 360 U.S. 264, 271-272, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)(same); Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)(in withheld evidence case, issue is whether the defendant had a fair trail in the withheld evidence's absence); United States v. Bagley, 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)(when the State withholds evidence, the defendant is entitled to a new trial if there exists a "reasonable probability" that had the evidence been disclosed the result of the trial would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the trial's outcome.); Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)(same standard governs claims of ineffective assistance of counsel).

The next subsections demonstrate that currently available evidence supports Mr. Hall's allegations, and he is therefore entitled to serve the subpoenas he specifies.

    C.    Currently Available Evidence Provides Reason To Believe That Mr. Hall's Allegations Are True

        1.    Chris Dutton Lied At Mr. Hall's Trial And The State Withheld Dutton Impeachment Evidence/Trial Counsel Failed To Establish That Dutton's Testimony Was False And Impeach Dutton

            a.    Dutton's Testimony That No One Contacted Him Until One Week Before Mr. Hall's Trial

Dutton wrote the State informing it of his purported conversation with Mr. Hall on February 10, 1996, and "Legal Counsel" logged that letter on March 8, 1996. (Exhibit 2: 2/10/96 Letter From Dutton To Sir).[2] Dutton testified that after he sent this letter, he did not hear

---

[2] Mr. Hall does not have page five of Dutton's February 10, 1996, letter, and Mr. Hall's current copy of page six is mostly illegible.

7

from anyone until the prosecutor contacted him a week before his February 4, 1997, appearance at Mr. Hall's trial. R. 2, 230. On cross-examination, trial counsel did not challenge this testimony. See R. 2, 232-236. Currently available evidence indicates that contrary to Dutton's testimony, the State met with Dutton and obtained a statement from him more than five months before Mr. Hall's trial.

> On August 28, 1996, the prosecution wrote one of Mr. Hall's trial attorneys that
>
> the State has been advised by (TBI) Agent Byrd that (an) inmate of Jon Hall may testify against Mr. Hall as to certain admissions made by Jon Hall concerning the murder of Billie Joe Hall. All of the details of that statement are not available .... The name of the inmate has not been confirmed to this office but we intend to meet with Agent Byrd soon and obtain a written copy of the statement.

(Exhibit 3: 8/28/96 Letter From Earls To Ford). On September 4, 1996, a prosecutor wrote trial counsel that "I do not have a written statement from Mr. Dutton as of this date." (Exhibit 4: 9/4/96 Letter From Earls To Ford). The next day, September 5, 1996, the prosecution transmitted to trial counsel a copy of a statement given by Dutton. (Exhibit 5: 9/5/96 Letter From Earls To Ford).[3]

These letters from the prosecution to trial counsel demonstrate that prior to August 28, 1996, TBI Agent Byrd spoke with Chris Dutton and obtained a statement from him. They indicate that Dutton lied when he testified at Mr. Hall's February 1997 trial that no one from the State contacted him until one week before he testified.

      b.  Dutton's Testimony That He Did Not Know What An Informant Was And His Role Was Not To Snitch On Fellow Prisoners

On cross-examination, trial counsel pressed Dutton to admit that he was an informant in

---

[3] Mr. Hall does not have Mr. Dutton's statement.

the prison system. Dutton claimed that he did not know what an informant was, and he assured that it was not his role to provide authorities information on fellow prisoners. R. 2, 232. Dutton's testimony in a prior criminal proceeding and letters Dutton wrote prior to Mr. Hall's trial, however, demonstrate that Dutton's testimony was false.

By 1991, the State of North Carolina had already twice tried Tammie Lee Thompson for first-degree murder. Both times the jury deadlocked. At Mr. Thompson's third trial, however, the State had a new witness: Chris Dutton.

In testimony echoing his testimony against Mr. Hall, Dutton testified that Mr. Thompson and he had been incarcerated together prior to Mr. Thompson's trial. Dutton testified that while confined together, Thompson and he had conversations during which Thompson purportedly incriminated himself. See State v. Thompson, 420 S.E.2d 395, 399 (N.C. 1992). Dutton's testimony proved to be the difference. The jury convicted Thompson of first-degree murder. Thompson, 420 S.E. 2d at 397.

In his February 10, 1996, letter informing authorities of his purported conversations with Mr. Hall, Dutton puffed about his work for the North Carolina authorities in the Thompson case:

> I may know bits and pieces more, but not right off. I know the drill and what can be used in court - been there - done that.

(Exhibit 2: 2/10/96 Letter From Dutton To Sir at 4). One month later, in another letter to the prosecutor, Dutton expressed his desire to parlay his North Carolina work and his coming appearance in Mr. Hall's case into a career move. He wrote:

> I could be of great use within the prison system as a reliable *informant*. And (I could) use this and N.C. as a chance to become an *informant* for the F.B.I.!

(Exhibit 6: 3/5/96 Letter From Dutton To Sir)(emphasis supplied).

9

Dutton's previous appearance in the <u>Thompson</u> case, his expressed "been there - done that" confidence in his ability to provide crucial snitch testimony, and his March 1996 letter expressing his interest in becoming a big-league informant demonstrate that by the time of Mr. Hall's trial, Dutton was acutely familiar with the informant job description.  Indeed, he was one.  Dutton's testimony that he did not know what an informant was and he did not play such a role in the prison system was false.

        c.      Dutton's Testimony That Favorable Treatment Had Nothing To Do With His Decision To Testify Against Hall

Dutton assured Mr. Hall's jury that obtaining favorable treatment had nothing to do with his motivation to snitch on Mr. Hall and testify at his trial.  R. 2, 232-33.  Again, Dutton's own writing demonstrates this testimony was false.  In his March 1996 letter, Dutton wrote the prosecution that

> what I ask for, for my testimony, I can get through the judicial system.  I was given concurrent sentences, but I'm doing consecutive sentences.  If my contract plea bargains were honored, I would have already been up for parole.  When I get to Fort Pillow I will begin the process to have my plea bargains honored and begin an interstate compact to parole to another state.

(Exhibit 6: 3/5/95 Letter From Dutton To Sir at 1).  Dutton's own words demonstrate that he testified falsely when he swore that favorable treatment provided no motivation for his informant work against Mr. Hall.

        d.      Dutton Had Been Previously Convicted Of Providing Law Enforcement Officers False Information

At the beginning of his direct examination, the prosecution asked Dutton about prior

10

convictions. Dutton testified about convictions in Bradley County, Tennessee, and Hamblin County, Tennessee, for property crimes and escape. R. 2, 222-23. Dutton failed to mention, however, and Mr. Hall's jury never learned, that Dutton also had been previously convicted of providing law enforcement authorities false information. See Thompson, 420 S.E.2d at 399.

        2.        The Children Testified Inaccurately/Trial Counsel Failed To Challenge Their Testimony

Consistent with Dutton's testimony that Mr. Hall said he went to Billie's home to make her hurt and suffer, Billie's children testified that Hall forced his way into the home and barricaded Billie and himself in a bedroom where he began beating her. R. 2, 242-44 (Stephanie Lambert testimony); R. 2, 260-62 (Cynthia Lambert testimony); R. 2, 277 (Jennifer Lambert testimony). Every investigative document created prior to Mr. Hall's trial, however, recounts that the children told authorities Billie let Mr. Hall into the home without a struggle. (Exhibit 7: 11/7/94 TBI Report (Cindy tells authorities that Billie let Hall come into the home);[4] Exhibit 8: 11/7/94 TBI Report (Jennifer tells authorities the same); Exhibit 9, 8/9/94 TBI Report (Henderson County Sheriff's Investigator reports that Hall talked his way into the home); Exhibit 10: 9/15/94 Handwritten Notes ("Momma let him in").

        3.        The Crime Scene Photographs Were Inaccurate/Trial Counsel Failed To Establish Their Inaccuracy

Jon Hall maintained, and continues to maintain, that he did not go to Billie's house to, in

---

[4] Mr. Hall has only page one of this T.B.I. Report.

11

Dutton's words, make her hurt and suffer.  Rather, Hall maintains that he was tired, drunk, and stoned, he went to Billie's home to try to reconcile, she allowed him inside the home, and Billie and he spent time talking before his emotions got the best of him.  The crime scene photographs the State entered into evidence did nothing to support Mr. Hall's description of events.  Those photographs, however, inaccurately depict the crime scene.  A crime scene video, shot before the crime scene photographs shown the jury were taken, support Mr. Hall.

The photographs shown the jury fail to depict any beer bottles.  See Collective Trial Exhibits 3 and 5.  A crime scene video of the identical areas depicted in those photographs, however, reveal that immediately after the incident, the interior of Billie's home contained numerous empty, half-empty, and full beer bottles. (Exhibit 11:  Crime Scene Video).  These bottles were apparently removed, photographs were then taken, and those photographs were shown the jury.  The crime scene video supports Hall: He was drunk, and Billie and he spent some time talking before emotions got the best of him.  The photographs shown the jury misrepresent that the crime scene does not support Hall's version of events.

    4.  Dr. Smith's Testimony

Mr. Hall acknowledges that, on the state of this record, he cannot present anything specifically showing that Dr. Smith's testimony was false.  The reason for this lack of information, however, is because he does not currently have access to the Billie Hall autopsy photographs and x-ray photographs.  Given that Mr. Hall makes a preliminary showing that the State withheld evidence and presented false testimony on other aspects of its premeditation case, and given that the prosecution argued in closing that Dr. Smith's testimony about eighty-three separate blows Billie purportedly received was further evidence of premeditation, Closing

12

Argument Transcript at 12, see State v. Sims, 45 S.W.3d 1, 8 (Tenn. 2001), Mr. Hall is entitled to obtain the autopsy photographs and x-ray photographs to test the accuracy of Dr. Smith's testimony.

      D.      Mr. Hall Requires Discovery To Develop Fully His Claims

If, as Mr. Hall credibly asserts, the State withheld evidence while presenting false testimony, there is reason to believe that the files of the District Attorney and the State investigating agencies contain relevant evidence. Mr. Hall, however, cannot obtain the District Attorney's file, the TBI files, or autopsy photographs taken of Billie Hall's body without subpoenas from this Court. (Exhibit 12: /9/06 Letter From Woodall To Santana; T.C.A. § 10-7-504(a)(2)(A)(TBI records exempt from disclosure under State Public Records Act); Exhibit 13: 10/10/06 Santana Declaration.)[5] Given these circumstances, leave to issue those subpoenas is not only appropriate, it is required. See Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)("it is the *duty* of the court to provide the necessary facilities and procedures for an adequate inquiry")(emphasis added); Pham, 400 F.3d at 743 (leave to conduct discovery "required" when it is "essential" to develop fully a petitioner's Brady Claim); c.f. Brauner United States, 10 F.R.D. 468, 470-71 (E.D. Pa. 1950)("good cause" exists for production of government investigation documents when those documents "contain facts, information, and

---

[5] While the documents Mr. Hall presents in support of this motion apparently originated from files of the State authorities, Mr. Hall culled them together from a review of the files of Mr. Hall's prior attorneys. As such, while Mr. Hall has access to some State documents, he does not have access to the complete files of the authorities, and, as discussed in footnotes 2, 3, & 4, *supra*, portions of critical evidence are missing and/or illegible. See McDaniel, 127 F.3d at 888 (discovery warranted when habeas petitioner has some, but not all, of the relevant records).

clues which it might be extremely difficult, if not impossible, for the plaintiffs ... to obtain.").[6]

IV.     CONCLUSION

This Court should grant Mr. Hall leave to serve subpoenas requesting production of the District Attorney's file, the TBI file, and the files of the Henderson and Madison County Sheriff's Departments.

>                                Respectfully Submitted,
>
>                                Paul R. Bottei
>                                Christopher M. Minton
>                                Assistant Federal Public Defender
>
>                                Office of the Federal Public Defender
>                                Middle District of Tennessee
>                                810 Broadway, Suite 200
>                                Nashville, Tennessee 37203
>                                (615) 736-5047
>
>
>                                By:/s/ Christopher M. Minton

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed electronically. Notice of

---

[6] Mr. Hall acknowledges that (1) until recently, he did not request from the Henderson County and Madison County Sheriff's Departments any documents they possess on the Billie Hall murder; and (2) those agencies stated they would provide the documents requested. As of the date of Mr. Hall's Habeas Rule 6 Motion, however, Mr. Hall has not received the requested documents. For consistency and completeness, Mr. Hall respectfully requests leave to serve subpoenas on the Sheriff's Departments despite their welcome agreement to provide the requested documents.

this Filing will be sent by operation of this Court's electronic filing system to counsel for respondent, Elizabeth Ryan, Esq., 425 Fifth Avenue North, Nashville, Tennessee 37243. on this the 10th day of October, 2006.

/s/ Christopher M. Minton