EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**RECEIVED**

NOV 2 1 2001

**Federal Public Defender's Office**
Nashville, Tennessee

EDMUND ZAGORSKI,                    )
                                    )
         Petitioner,                )
                                    )
v.                                  )    Civil No. 3:99-1193
                                    )    Judge Trauger
RICKY BELL, Warden,                 )    Magistrate Judge Brown
                                    )
         Respondent.                )

**O R D E R**

Pending before the court is petitioner's Motion for Discovery (Docket No. 73),

respondent's Response In Opposition (Docket No. 77), and petitioner's Reply (Docket No. 80).

Petitioner seeks the following evidence:

(1)    **Tennessee Bureau of Investigation (T.B.I.):** All records relating to any
investigation of any illegal activities (including narcotics trafficking) by: Jimmy
Porter; Dale Dotson; Eastside Tavern in Dickson, Tennessee; James Burton
Blackwell; any drug investigations involving interstate drug dealings or
transactions in Hickman County, Tennessee between 1980-1985; any information
concerning James Blackwell's involvement in investigation for any such agency,
including any documentation of any benefit provided to Blackwell, including
monetary payment or other consideration for his work or for providing
information to such agency; deposition to ensure production of all requested
materials.

(2)    **Federal Bureau of Investigation (F.B.I.), Drug Enforcement
Administration (D.E.A.), Bureau Of Alcohol Tobacco & Firearms (A.T.F.):**
Production of any and all records concerning James Burton Blackwell, Sallie
Salmon, Eastside Tavern, Don Peery, Buddy Corbitt (Corbin), Jimmy Porter,
and/or Dale Dotson; any investigation of illegal purchase, transportation, sale, or
distribution of narcotics or other illegal drugs by James Burton Blackwell, Sallie
Salmon, Eastside Tavern, Don Peery, Jimmy Porter, and/or Dale Dotson; and/or
any investigations of intrastate or interstate drug activity involving persons or
organizations in Hickman County, Tennessee during the period 1980-1985; any
information concerning James Blackwell's involvement in investigation for any

1

**This** document was entered on
the docket in compliance with
Rule 58, and/or Rule 79(a),
FRCP, on 11-21-01 By:



such agency, including any documentation of any benefit provided to Blackwell, including monetary payment or other consideration for his work or for providing information to any such agency; deposition to confirm production of all requested materials.

(3)    **Robertson County District Attorney's Office:** Investigative File of Detective Ronnie Perry.

(4)    **Office of the District Attorney General, Dickson County, Tennessee; Dickson County Sheriff; Dickson Police Department; Hickman County Sheriff's Department:** Production of records concerning any investigation of illegal purchase, transportation, sale, or distribution of narcotics or other illegal drugs by James Burton Blackwell, Sallie Salmon, Eastside Tavern, Buddy Corbitt (or Corbin), Jimmy Porter, and/or Dale Dotson.

(5)    **Tennessee Alcoholic Beverage Commission (ABC):** Production of all records relating to investigations of James Burton Blackwell, Sallie Salmon, Eastside Tavern, Jimmy Porter, Dale Dotson; any information concerning James Blackwell's involvement in investigation for any such agency, including any documentation of any benefit provided to Blackwell, including monetary payment or other consideration for his work or for providing information to such agency; deposition to confirm production of all requested materials.

(6)    **Tennessee Board of Paroles:** Production of all records concerning James Burton Blackwell, including tapes of parole hearings and recommendations, and all materials considered by Board members in making a decision about parole not yet provided to counsel for Petitioner; deposition to confirm production of all requested materials.

(7)    **Tennessee Department of Corrections, Federal Bureau Of Prisons and United States Probation Office:** Production of all records relating to the placement and incarceration of James Burton Blackwell in state or federal custody, including pre-sentence investigation report(s); and any records relating to his release from custody through probation or otherwise; deposition to confirm production of all requested materials.

(8)    **Office of the Medical Examiner, Shelby County, Tennessee:** Production of any and all records or documentation and any and all physical or forensic samples from the autopsies of Jimmy Porter and Dale Dotson, including but not limited to photographs, paraffin blocks, histological slides, and x-rays of the decedents; deposition to confirm production of all requested materials

(9)    **Tennessee Bureau of Investigation Laboratory:** Any and all information including all documentation and records (including but not limited to raw notes and final test results) concerning any and all forensic evaluations

2

conducted related to the investigation of the deaths of Jimmy Porter and Dale Dotson; production of any physical evidence in the custody of the Laboratory; and/or production of records identifying evidence once within the possession of the Lab but no longer in its possession; and accompanying deposition to ensure production of all records and evidence.

(10)    **Robertson County, Tennessee & Robertson County Sheriff's Department; Hickman County, Tennessee & Hickman County Sheriff's Department:** Production of all physical evidence recovered in connection with the investigation of the deaths of Jimmy Porter and Dale Dotson; production of all financial and other records concerning any dealings with James Burton Blackwell, including but not limited to receipts, checks, ledgers, deposits or any other material documenting any transfer of money or anything else of value to James Burton Blackwell; deposition to confirm production of all requested materials

(11)    **Frank Atkinson, Former Sheriff, Hickman County:** Deposition.

Discovery in federal *habeas corpus* proceedings is governed by Rule 6 of the Rules

Governing § 2254 Cases, which provides in part:

A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rule 6(a), Rules Governing § 2254 Cases.  The Supreme Court has held this rule to mean:

. . . where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Bracy v. Gramley*, 520 U.S. 899, 908-9 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300

(1960)).

Petitioner has filed a 44-page Amended Petition (Docket No. 18), the allegations of

which justify the majority of discovery sought.  Discovery requests one through eleven directly

relate to plaintiff's claims that the prosecution withheld exculpatory material and that petitioner's

attorneys were ineffective in failing to investigate other suspects and key prosecution witnesses.

3

In support of his requests, plaintiff has alleged specific facts to suggest that additional discovery may reveal new facts which support his claims of constitutional error and that he was diligent in developing the factual predicate of his claims during state court proceedings.

To be entitled to discovery, plaintiff need not show that the newly discovered information will entitle him to relief. *See Payne v. Bell*, 89 F.Supp.2d 967, 970 (W.D.Tenn. 2000). "Rather, he need only show good cause that the evidence sought would lead to relevant evidence supporting his position." *Id.* This he has done.

Good cause having been shown, petitioner's motion for discovery (Docket No. 73) is hereby **GRANTED** in part and **DENIED** in part. Petitioner's request for documentary and physical evidence and his request to depose Frank Atkinson are **GRANTED**. Because the court is not persuaded that depositions to confirm production are warranted, however, petitioner's requests for such depositions are **DENIED** without prejudice to renewal. The court will reconsider petitioner's requests upon good cause shown.

Petitioner is authorized to issue subpoenas to the Tennessee Bureau of Investigation; Tennessee Bureau of Investigation Laboratory; the Tennessee Alcoholic Beverage Commission; the Tennessee Board of Paroles; the Tennessee Department of Corrections; the Federal Bureau of Prisons; the United States Probation Office; the Federal Bureau of Investigation; the Drug Enforcement Administration; the Bureau of Alcohol, Tobacco and Firearms; the Office of the Medical Examiner Shelby County, Tennessee; the Robertson County District Attorney's Office; the Office of the District Attorney General, Dickson County, Tennessee; the Dickson County Sheriff's Department; the Dickson County Police Department; the Hickman County Sheriff's Department; the Robertson County Sheriff's Department; and Frank Atkinson in order to secure the requested materials and information.

4

With regard to physical evidence, the parties are hereby **ORDERED** to confer and agree upon a process by which the petitioner may have access to the evidence requested and to file an Agreed Order setting forth that procedure by December 14, 2001.  Failing agreement, by the same deadline the parties shall submit their own proposed procedure.  No destructive testing shall be performed without prior notice and approval by the court.

It is so **ORDERED.**

ENTER this 20ᵗʰ dat of November, 2001

ALETA A. TRAUGER
U.S. District Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BYRON LEWIS BLACK                        )
                                         )
v.                                       )        NO. 3:00-0764
                                         )        JUDGE CAMPBELL
                                         )        DEATH PENALTY CASE
RICKY BELL                               )

## ORDER

Pending before the Court is Petitioner's Motion For Discovery (Docket No. 19).  Through

the Motion, Petitioner seeks to conduct discovery in the form of physical and forensic evidence,

documents and records, and depositions.  Respondent has filed a response to the Motion (Docket

No. 21).  As set forth below, Petitioner's Motion is GRANTED in part, and DENIED in part.

Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts

provides that a district judge may permit discovery "in the exercise of his discretion and for good

cause shown."  The Supreme Court has stated that  "good cause" is shown, for purposes of Rule

6(a), "where specific allegations before the court show reason to believe that the petitioner may,

if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v.

Gramley, 117 S.Ct. 1793 (1997)(quoting Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 1091, 22

L.Ed.2d 281 (1969)).

The forensic and physical evidence Petitioner seeks in this case relate to his claims of

actual innocence, withholding of exculpatory evidence, and ineffective assistance of counsel.

The Court concludes that Petitioner has shown good cause for discovery of certain evidence.

Accordingly, Petitioner may have access to the following ballistics evidence and other physical

evidence recovered from the crime scene:

(1) Bullet and shell fragments taken from the victims or their residence;

This document was entered on
the docket in compliance with
Rule 58 and / or Rule 79 (a).

FRCP. on 8/14/01 By ORT

22

(2) Bullet fragments taken from a Mazda vehicle purportedly owned by Bennie Clay;
(3) Bullet fragments reportedly removed from Bennie Clay;
(4) Three samples of .44 caliber bullets introduced at trial as Exhibit 49;
(5) A .22 Caliber Ruger automatic, holster and shells introduced at trial as Exhibit 24;
(6) All fingerprints and palm prints recovered during the investigation of the offense and materials relating to the analysis of such prints;
(7) Any trace evidence recovered at the scene;
(8) Marijuana and marijuana cigarettes recovered from the victims' residence;
(9) Set of four keys on a red plastic key chain recovered from the victims' residence;
(10) Set of five keys on a silver key chain recovered from the victims' residence;
(11) Four shirts recovered by Officers Mike Smith and Ed Moran;
(12) One pair of panties recovered by Officers Mike Smith and Ed Moran;
(13) One bed rail recovered by Officers Mike Smith and Ed Moran;
(14) One pillow case recovered by Officers Mike Smith and Ed Moran;
(15) One pillow recovered by Officers Mike Smith and Ed Moran;
(16) Two bed sheets recovered by Officers Mike Smith and Ed Moran;
(17) One container of bullet fragments recovered by Officers Mike Smith and Ed Moran;
(18) Two brown envelopes of bullet and shell fragments recovered by Officers Mike Smith and Ed Moran;
(19) One pair of boots recovered by Officers Mike Smith and Ed Moran;
(20) Two towels recovered by Officers Mike Smith and Ed Moran;
(21) Hair samples recovered by Officers Mike Smith and Ed Moran;
(22) One carpet sample recovered by Officers Mike Smith and Ed Moran;
(23) One Kool cigarette butt recovered by Officers Mike Smith and Ed Moran; and
(24) All items of evidence of the bodies of the three deceased, such as tissue samples, hair samples, and items of clothing worn on the bodies of the three deceased.

The documents and records Petitioner seeks in this case also relate to his claims of actual innocence, withholding of exculpatory evidence, and ineffective assistance of counsel. The Court concludes that Petitioner has shown good cause for discovery of the following items of evidence requested:

(1) Records and files of the Tennessee Bureau of Investigation and the Tennessee Bureau of Investigation laboratory concerning the investigation of this case;
(2) Manuals and materials from the Tennessee Bureau of Investigation concerning forensic ballistics and firearm evaluation, and fingerprint evaluation;
(3) Records and physical evidence derived from the forensic examination of the victims;
(4) Records from the Metropolitan Davidson County Police Department, the Tennessee Bureau of Investigation and the Federal Bureau of Investigation regarding Bennie Clay;

2

(5) Insurance records concerning any life insurance policies on the victims and the expected receipt and receipt of any insurance proceeds by Bennie Clay;
(6) Relevant bank records of Bennie Clay at and around the time of the offense and at and around the time he received any insurance proceeds from the victims' deaths; and
(7) Handwritten investigative notes of the Metropolitan Davidson County Police Department with regard to the investigation of the victims' deaths.

Petitioner has failed to demonstrate good cause with regard to the Tennessee Supreme Court materials regarding its proportionality review. Petitioner has failed to demonstrate that these documents relate to a credible allegation of a federal constitutional violation. See, e.g., Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984); McQueen v. Scroggy, 99 F.3d 1302, 1333 (6th Cir. 1996). In addition, Petitioner has cited no authority in which a federal court has ordered production of internal, non-public documents used in chambers by state appellate judges in reaching a decision in a case. Petitioner also fails to address how any such order would conform to important principles of federalism and comity. See, e.g., Perkins v. LeCureaux, 58 F.3d 214 (6th Cir. 1995).

Finally, Petitioner requests the depositions of Assistant District Attorney Eddie Bernard, former Assistant District Attorney Cheryl Blackburn, Tennessee Bureau of Investigation Agent Tommy Heflin, Tennessee Bureau of Investigation Agent Steve Scott, and Bennie Clay. Petitioner requests the depositions of Bernard, Heflin and Scott to further investigate ballistics analyses, which relate to his claims of actual innocence, withholding of exculpatory evidence, and ineffective assistance of counsel. The Court concludes that Petitioner has shown good cause for the depositions of these individuals. The deposition of Assistant District Attorney Eddie Bernard shall be limited to the subject of the ballistics issues. The Court is not persuaded, however, that Petitioner has made a sufficient showing, at this stage of the proceedings, for the depositions of Blackburn and Clay.

3

The parties shall confer and attempt to agree upon a process for discovery of the materials and information set forth above, and file a proposed agreed order setting forth that agreement on or before August 24, 2001. Any agreement shall be consistent with the October 1, 2001 discovery cutoff. If the parties are unable to agree, each party shall file a proposal for an appropriate discovery procedure on or before August 24, 2001.

No destructive testing shall be performed without prior notice and approval by the Court, and the parties shall establish safeguards for the integrity of the evidence. Petitioner is authorized to issue subpoenas in order to secure the materials and information identified in this Order.

It is so ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

4

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

OSCAR SMITH,                                    )
                                                )
    Petitioner-Applicant,                       )        RECEIVED
                                                )
v.                                              )        No. 3:99-0731    JUL 1 2 2000
                                                )        Judge Trauger
RICKY BELL, Warden, Riverbend                   )
Maximum Security Institution,                   )        Federal Public Defender's Office
                                                )        Nashville, Tennessee
    Respondent.                                 )

### O R D E R

The petitioner has filed two Motions for Discovery (Docket Nos. 24, 26), to which the

respondent has filed an opposition (Docket No. 28).

Motion for Discovery #1 (Docket No. 24) seeks the following items of physical evidence

that were introduced at the state court trial or in post-conviction proceedings, which are presently

in the custody of the Criminal Court for Davidson County, Tennessee:

| | |
|---|---|
| State Trial, Prosecution's Exhibit 8: | Awl |
| State Trial, Prosecution's Exhibit 9: | Glove |
| State Trial, Prosecution's Exhibit 10: | .22 caliber live round |
| State Trial, Prosecution's Exhibit 12: | Blood samples |
| State Trial, Prosecution's Exhibit 13: | Hair samples |
| State Trial, Prosecution's Exhibit 14: | Hair samples |
| State Trial, Prosecution's Exhibit 15: | Sheet |
| State Trial, Prosecution's Exhibit 16: | Palm print |
| State Trial, Prosecution's Exhibit 24: | .22 live round |
| State Trial, Prosecution's Exhibit 39: | Bullet fragments |
| Post-conviction proceedings: | Knife found under residence |

Discovery Motion #2 (Docket No. 26) requests the following discovery:

1.    ***Tennessee Bureau of Investigation:*** (a) Production of all
    investigative records concerning the investigation of the deaths of
    Judy Smith, Chad Burnett, and Jason Burnett, including but not
    limited to case 89-12329; (b) records deposition (or other

This document was entered on
the docket in compliance with
Rule 58 and/or Rule 79(a)
FRCP on 7-10-00 by VCH



equivalent process) from any necessary party to authenticate such
records and confirm production of all requested records.

2.    *Tennessee Bureau of Investigation Laboratory*, 3021 Lebanon
Pike, Nashville, Tennessee 37214: (a) Production of any physical
evidence and records – including log-books, handwritten notes and
written reports – identifying any and all materials submitted to the
Laboratory in connection with the forensic investigation of Oscar
Smith and/or deaths of Judy Smith, Chad Burnett, and Jason
Burnett, the nature of any testing conducted on such materials, and
the results of any such testing; (b) deposition (or other equivalent
process) from any necessary party at the laboratory to authenticate
such records and confirm production of all requested records and
evidence.

Discovery in federal *habeas corpus* proceedings is governed by Rule 6 of the Rules

Governing § 2254 Cases, which provides in part:

A party shall be entitled to invoke the processes of discovery
available under the Federal Rules of Civil Procedure if, and to the
extent that, the judge in the exercise of his discretion and for good
cause shown grants leave to do so, but not otherwise.

Rule 6(a), Rules Governing § 2254 Cases.  The Supreme Court has held this rule to mean:

. . . where specific allegations before the court show reason to
believe that the petitioner may, if the facts are fully developed, be
able to demonstrate that he is . . . entitled to relief, it is the duty of
the court to provide the necessary facilities and procedures for an
adequate inquiry.

*Bracy v. Gramley*, 520 U.S. 899, 908-9 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300

(1960)).

Petitioner has filed a 33-page Amended Petition (Docket No. 18), the allegations of

which fully justify the discovery sought.  Good cause having been shown, both motions for

discovery are hereby **GRANTED**.

With regard to Motion #2, petitioner is authorized to issue subpoenas to the Tennessee Bureau of Investigation and the Tennessee Bureau of Investigation Laboratory in order to secure the requested materials and information.

With regard to Motion #1, given the demonstrated loss of materials in another case when the procedure of transferring the actual evidence to the United States District Court Clerk was followed, the court is hesitant to repeat that process.  Therefore, it is hereby **ORDERED** that the parties shall confer and agree upon a process by which the petitioner may have access to the evidence requested and file an Agreed Order setting forth that procedure by July 14, 2000. Failing agreement, by the same deadline the parties shall submit their own proposed procedure.

It is so **ORDERED**.

Enter this 7th day of July 2000.

ALETA A. TRAUGER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RECEIVED

STEVE HENLEY,                    )
                                 )          JUN 16 1999
        Petitioner,              )
                                 )      Federal Public Defender's Office
   v.                            )           Nashville, Tennessee
                                 )
                                 )      No. 3:98-0672
RICKY BELL, Warden,              )      JUDGE ECHOLS
                                 )
        Respondent.              )
                                 )

ORDER

Presently pending before the Court is Petitioner's Motion for Discovery (Docket Entry No. 17), to which Respondent responds in opposition.  For the reasons explained in the Memorandum entered contemporaneously herewith, the Court hereby GRANTS IN PART and DENIES IN PART Petitioner's Motion.  In particular, the Court GRANTS Petitioner's Motion with respect to the following items: (1) all records, notes, files, etc., relating to tests performed or samples taken by the Tennessee Bureau of Investigation and/or the Office of the State Fire Marshal; (2) the policies and procedures of the Office of the State Fire Marshal, for the relevant time period, concerning how cases like the present one should have been handled; (3) documents and records held by the Office of the Medical Examiner relating to the cause of death of Edna Stafford; and (4) evidence held by the Tennessee Board of Paroles and Terry Flatt's attorney concerning the nature of the agreement between Mr. Flatt and the Government.  All remaining aspects of Petitioner's Motion are hereby DENIED.

It is so ORDERED.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

This document was entered on the docket in compliance with Rule 58, and/or Rule 79(a), FRCP, on 6-14-99 by BA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

FILED

2001 JUN 19 P 2: 35

US DISTRICT COURT
EASTERN DIST. TENN

DEATH
PENALTY
CASE

TIMOTHY E. MORRIS,                    )
                                      )
        *Petitioner,*                 )
                                      )
v.                                    )        No. 2:99-cv-424
                                      )        *Edgar*
RICKY BELL, WARDEN, Riverbend         )
Maximum Security Institution,         )
                                      )
        *Respondent.*                 )

RECEIVED

JUN 20 2001

Federal Public Defender's Office
Nashville, Tennessee

## MEMORANDUM AND ORDER

Timothy E. Morris ("Morris") has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Morris, through counsel, filed a second motion for discovery [Court File No. 55], which was opposed by the respondent [Court File No. 58]. On June 1, 2001, United States Magistrate Judge John Y. Powers denied the petitioner's second discovery motion [Court File No.60].

Presently before the District Judge is an appeal by Morris of the Magistrate Judge's June 1, 2001 ruling [Court File No. 63]. The Magistrate Judge denied a request by Morris for the testing of certain physical evidence, subpoenas for the production of certain records/evidence, and depositions.

## I.    *Standard of Review*

Under 28 U.S.C. § 636(b)(1)(A), a district court may "designate a magistrate to hear and determine any pretrial matter pending before the court," with certain exceptions which involve dispositive matters. 28 U.S.C. § 636(b)(1)(A); *Massey v. City of Ferndale*, 7 F.3d 506, 508 (6th Cir.

1

1993). When a magistrate judge issues an order concerning a nondispositive pretrial motion, such as discovery requests and objections, the district court has the authority to "reconsider" the determination under a limited standard of review. 28 U.S.C. § 636(b)(1)(A); *Massey*, 7 F.3d at 509 (6th Cir. 1993). Under this standard of review, the district court may overturn the magistrate's determination only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). This "clearly erroneous" standard dictates that a reviewing court defer to the magistrate's discretion in resolving discovery disputes, and the district court must affirm the magistrate's decision unless the district court "is left with the definite and firm conviction that a mistake has been committed." *Farley v. Farley*, 952 F. Supp. 1232, 1235 (M.D. Tenn. 1997) (citations omitted). A party seeking to overturn a magistrate judge's discovery ruling bears a "heavy burden." *Seewald v. IIS Intelligent Information Systems, Ltd.*, 1998 WL 305597, at *1 (E.D.N.Y. April 23, 1998) (citation omitted). Reversal of a magistrate's order curtailing discovery is "unusual." *Id.* Rule 72(a) of the FEDERAL RULES OF CIVIL PROCEDURE implements 28 U.S.C. § 636(b)(1)(A) and requires that a party objecting to a magistrate's order file his objection with a district court judge within ten days after service of the order.

## II.    *Analysis*

Morris has objected to the United States Magistrate Judge's denial of certain discovery. Morris has supplemented his discovery requests with additional specific allegations which were not presented to the United States Magistrate Judge in the original second motion for discovery. Morris has specified that the requested discovery is necessary to prove certain specific ineffective assistance of counsel allegations, prosecutorial misconduct claims, and other specific constitutional violation claims.

2

The respondent continues to maintain that Morris has failed to provide adequate legal justification to invoke the processes of discovery and submits the Magistrate Judge's order should be affirmed.   A habeas petitioner is not entitled to discovery as a matter of ordinary course. *Brady v. Gramley*, 520 U.S. 899, 904 (1997).  Rule 6 of the RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS provides that a person requesting discovery must show good cause before the Court can grant discovery.  Good cause exists where specific allegations show reason to believe the petitioner may, if the facts are fully developed, be able to demonstrate he is entitled to relief. *See Harris v. Nelson*, 394 U.S. 286, 300 (1969); *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991).  Petitioner is not required to show the additional discovery will definitely lead to relief.  Rather, he is required to show good cause that the evidence sought would lead to relevant evidence to support his habeas claims.  Moreover, "more liberal discovery is appropriate in capital cases where the stakes for petitioner are so high." *Payne v. Bell*, 89 F.Supp.2d 967, 971 (W.D. Tenn., 2000), *citing Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

The Court has reviewed the record including the additional specific allegations in Morris' objections of constitutional error, *i.e.*, that counsel was ineffective for failing to investigate the time of death, the pathology evidence, the prosecution's theory about the identity of the decedent; and failing to object to the prosecutor's use of a horned rock and victim's skull and cross examination of petitioner, and failing to object to prosecutor's improper closing arguments; prosecutorial conduct based on knowingly misinforming the jury the victim was last seen alive on June 29, 1980; and claims the state destroyed and withheld exculpatory evidence.  The Court finds that Morris has now made specific allegations of constitutional error, which, if fully developed, may demonstrate his

3

possible entitlement to relief. Thus, the Court finds good cause and will GRANT the requested discovery. Accordingly, it is ORDERED that:

(1)    Morris is AUTHORIZED to issue a subpoena duces tecum to Dr. Cleland Blake, M.D., for the production of physical evidence for the purpose of testing. The parties SHALL resolve all issues, including but not limited to any logistical issues that arise, or IMMEDIATELY NOTIFY the Court of their inability to resolve such issues;

(2)    Morris is AUTHORIZED to issue subpoenas to T.B.I. Agent Bob Baird, Madison County, North Carolina, Sheriff's Department, and North Carolina Bureau of Investigation for the production of records/evidence;

(3)    Morris is AUTHORIZED to depose T.B.I. Agent Bob Baird regarding his investigation of this case, the Court Clerk for Greene County, Tennessee regarding the preservation and/or destruction of physical evidence in this case, and Dr. Cleland Blake, M.D. concerning his knowledge of this case.

ENTER:


R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE

4



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

FILED

2001 MAR -1 P 2: 13

US DISTRICT COURT
EASTERN DIST. TENN
BY_____DEP CLERK

TIMOTHY E. MORRIS,                    )
                                      )
        *Petitioner,*                 )
                                      )
v.                                    )     No.  _ 2:99-cv-424
                                      )     *Edgar*
RICKY BELL, WARDEN, Riverbend         )
Maximum Security Institution          )
                                      )
        *Respondent.*                 )

DEATH
PENALTY
CASE

## ORDER

This matter is before the Court on Petitioner's motion for discovery (#1) filed by petitioner's

counsel (Court File No. 38).  This motion will be **DENIED IN PART** and **GRANTED IN PART**.

In his motion to for discovery (Court File No. 38) Petitioner requests the process of this Court

to secure certain records and physical evidence.  Petitioner also requests that he be allowed to depose

certain individuals involved in his case at the state level.

Respondent contends Petitioner has failed to demonstrate good cause for such discovery

(Court File No. 42).  Respondent contends that Petitioner failed to properly exhaust all of the claims

on which he bases his various requests for discovery.  Therefore, Respondent argues, the motion

should be denied.  Respondent contends a showing that the claim on which a petitioner bases his

request for discovery was first presented and exhausted in state court is an indispensable component

of any showing of good cause for discovery under Rule 6.  In support of this contention Respondent

cites *Williams v. Taylor*, 529 U.S. 420 (2000) and apparently claims that it held federal habeas

43

petitioners must first present all possible claims of constitutional error to state courts.  However, in the *Williams* case Williams did not develop or raise his claims at issue in his federal habeas until he filed his federal habeas petition.  Williams was seeking an evidentiary hearing on claims which had not been heard in state court.  The United States Supreme Court concluded that although Williams had not raised his claims in state court, he had met his burden of showing he was diligent in efforts to develop the facts supporting certain claims in collateral proceedings before the state court and found that an evidentiary hearing was required. *Williams v. Taylor,* 529 U.S. at 440-45.

A habeas petitioner is not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley,* 520 U.S. 899, 904 (1997).  However, "'[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry.'" *Bracy v. Gramley,* 520 U.S. at 908-909 *quoting Harris v. Nelson,* 394 U.S. 286, 299 (1969).  The United State Supreme Court has said that "Habeas Corpus Rule 6 is meant to be 'consistent' with Harris." *Bracy v. Gramley,* 520 U.S. at 909; Advisory Committee's Note on Habeas Corpus Rule 6.  "Discovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing or to grant the writ . . ." Advisory Committee's Note on Habeas Corpus Rule 6.

Discovery is proper in capital proceedings in which petitioner is pursuing exhausted claims with some factual basis. *See McDaniel v. United States,* 127 F.3d 886, 888 (9th Cir. 1997).  Petitioner contends the requested discovery is relevant to his claims of constitutional error, and the requested discovery is necessary to enable him to fully investigate and present his claims of constitutional error.  Petitioner claims he was denied a full and fair opportunity to investigate and

2

present his claims in state court, and according to the record Petitioner properly exhausted his claim that he was denied a full and fair opportunity to investigate and present all of his claims in state court.

### 1.    Pathology/Autopsy Records

Petitioner claims he was prevented from fully investigating the circumstances of the death of the victim in state court and as a result he was denied a full and fair post-conviction hearing. Petitioner claims he diligently sought to fully investigate the circumstances of the death of the victim and requested full access to all relevant pathology materials, but never received them. Petitioner attached several letters indicating he previously sought to obtain these records (Court File No. 39, Exhibits C-F). As a result, Petitioner claims he was prevented from fully investigating his ineffective assistance of counsel and/or the withholding of exculpatory of evidence claims. The Court finds Petitioner has shown good cause and is entitled to any written document concerning the autopsy investigation or relating to the forensic pathology evidence which he did not receive. The respondent **SHALL** furnish to Petitioner any such report which has not been provided to Petitioner.

Petitioner also requests all photographs, x-rays, tissue samples etc. of the victim. The Court finds the Petitioner has shown good cause and Respondent **SHALL** provide access but not physical possession of the requested items to the Petitioner so that Petitioner may inspect all physical evidence.

### 2.    Tennessee Bureau of Investigations ("T.B.I.")/T.B.I. Laboratory Records

Petitioner requests the records from the T.B.I and T.B.I. Laboratory regarding the investigation of this case. Petitioner claims that due to his denial of a full and fair state post-conviction hearing, he was unable to fully investigate his claim that trial counsel failed to investigate

the circumstances of the offense and that the State withheld exculpatory evidence. Petitioner claims all he received during his state court proceedings was an index of the T.B.I.'s investigative file (Court File No. 39, Exhibit 5). Petitioner has shown good cause and he is entitled to any report which he has not previously received from the T.B.I. The respondent **SHALL** furnish to Petitioner any such report which has not been provided to Petitioner.

3.    **Federal Bureau of Investigations ("F.B.I.") Records**

Petitioner requests the records form the F.B.I. regarding the investigation of this case. Petitioner claims the F.B.I. has evidence regarding the identification of the victim and evidence demonstrating Petitioner is innocent and another person is guilty of committing this crime. Petitioner claims that due to his denial of a full and fair state post-conviction hearing, he was unable to fully investigate his claim that trial counsel failed to investigate the circumstances of the offense and that the State withheld exculpatory evidence. Petitioner has shown good cause and is entitled to any report which he has not previously received from the F.B.I. regarding this crime. The respondent **SHALL** furnish to Petitioner any such report which has not previously been provided to Petitioner.

4.    **Hunter Tait Dental Records**

Petitioner seeks the dental records of the deceased and claims they are relevant to the investigation of the identity of the decedent. The victim's identity was made by the F.B.I. identifying that prints of Hunter Tait, who apparently had applied to be an F.B.I. agent years before. Accordingly, the Court does not find good cause at this time to grant this request. The request for dental records is **DENIED**.

4

5.    **Records Concerning the Alleged Disappearance of Tait & Disappearance of a North Carolina Soldier**

Petitioner claims the fact that authorities initially thought the victim may have been a soldier who disappeared is highly relevant to Petitioner's claims that counsel failed to investigate the identity of the decedent as being someone other than Tait. Petitioner also requests the records regarding the disappearance of Tait. Petitioner has failed to good show cause at this time to grant the request for records concerning the alleged disappearance of a North Carolina Soldier and therefore, that request is **DENIED**. The Court **GRANTS** Petitioner's request for records regarding the disappearance of Tait.

6.    **Pikeville Juvenile Facility Records**

Petitioner claims trial counsel failed to investigate and present mitigating mental state evidence which should have been introduced during the sentencing phase of the trial. This appears to be a case where no mitigating evidence was presented to the jury during the sentencing phase of the trial. Furthermore, it appears that Petitioner has exhausted this claim. Therefore, the Court finds Petitioner has shown good cause and will **GRANT** this request. All records pertaining to Petitioner's incarceration at Pikeville Juvenile Facility **SHALL** be furnished to him.

7.    **Physical Evidence**

Petitioner claims he must investigate the physical and forensic circumstances of the offense to make a determination of whether counsel was ineffective for failing to investigate the physical evidence and/or whether the prosecution had in its possession evidence inconsistent with its claims that Petitioner was guilty. Petitioner claims he was unable to investigate this claim at the state court level because he was denied a full and fair post-conviction hearing. The Court finds Petitioner has

5

shown good cause and the Respondent **SHALL** provide access but not physical possession of the requested items to the Petitioner so that Petitioner may inspect all physical and forensic evidence.

8.     **Depositions**

Petitioner requests the depositions of the District Attorneys involved in the prosecution of the case, the Greenville County Criminal Court Clerk, and of Officer Henry Hines. Petitioner seeks to depose these parties to obtain evidence which may be revealed by the discovery which the Court has granted above. At this time, the reasons given by Petitioner to justify the taking of these depositions are not, in the Court's opinion, good cause and therefore, the Court **DENIES** Petitioner's request to depose the District Attorneys, Greenville County Criminal Court Clerk, and Officer Henry Hines.

**SO ORDERED.**

**ENTER.**

_____
United States Magistrate Judge

6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RECEIVED
IN ... S OFFICE

DEC 13 1995

ROBERT GLEN COE,                    )

   Petitioner,                 )

v.                                  )

RICKY BELL Warden,                  )

   Respondent.                 )

US DISTRICT COURT
M.D. DIST. TENN.

RECEIVED

NO. 3:92-0180
JUDGE NIXON

DEC 20 1995

Federal Public Defender's Off.
Nashville. Tennessee

ORDER TO TRANSMIT PHYSICAL EVIDENCE
AND ANALYSES OF PHYSICAL EVIDENCE

TO:   TENNESSEE BUREAU OF INVESTIGATION; AND
      TENNESSEE BUREAU OF INVESTIGATION CRIME LABORATORY
      WILLIAM J. DARBY, III, DIRECTOR
      3021 LEBANON ROAD
      P. O. BOX 2305
      DONELSON, TENNESSEE 37214

You are hereby directed, pursuant to 28 U.S.C. § 2254(e)
to transmit to the Clerk of the United States District Court for
the Middle District of Tennessee (Mr. Roger A. Milam, 800 U.S.
Courthouse, 801 Broadway, Nashville, TN 37203) any and all items of
physical evidence in your possession; any and all reports,
analyses, evaluation, or notes concerning the testing of any
physical evidence ever in your possession or custody; any and all
photographs, negatives, diagrams, pictures; and all other
information in the custody of your office or any agents, relating
in any manner to the investigation of the death of Carey Medlin,
and the prosecution of State of Tennessee v. Robert Glen Coe,
Shelby Co. Case Nos. B-73812, 73813, 73814, including any and all
information contained in files relating to that investigation. Such
information and evidence includes, but is not limited to documents

This document was entered on
the docket in compliance with
Rule 58 and/or Rule 79(a),
FRCP. on 12/20/95 by K Sanders    193

and/or information relating to the investigation and analysis of the following evidence:

    (1) Blue jeans of Robert Coe

    (2) Blue tank top of Robert Coe

    (3) Black leather belt of Robert Coe

    (4) Shoe strings of Robert Coe

    (5) Lock blade knife of Robert Coe

    (6) Clothing of Cary Medlin, including, but not limited to shirt, shorts, underwear

    (7) Pair of wooden shoes with white strap of Carey Medlin

    (8) Taped confession of Robert Coe (cassette tape)

    (9) All photographs and photographic negatives related to the crime

    (10) Head hair sample from victim Carey Medlin

    (11) Finger nail scrapings from left & right hands of Robert Coe

    (12) Pubic hair combings from Robert Coe

    (13) Pubic hair sample from Robert Coe

    (14) Head hair sample from Robert Coe

    (15) Chest Hair Sample from Robert Coe

    (16) Saliva sample from Robert Coe

    (17) Penile Swab from Robert Coe

    (18) Hair samples from seat of Robert Coe's car

    (19) Sample recovered from right hand of Cary Medlin

    (20) Hair sample recovered from abdomen of victim

    (21) Insect case recovered from Cary Medlin

(22) Finger print cards of Carey Medlin

(23) Material recovered from Robert Coe's car

(24) Nasal swabs including but not limited to samples and
slides from Carey Medlin

(25) Oral swabs including but not limited to samples and
slides from Carey Medlin

(26) Vaginal swabs including but not limited to samples
and slides from Carey Medlin

(27) Anal Swabs including but not limited to samples and
slides from Carey Medlin

(28) Perineal swabs including but not limited to samples
and slides from Carey Medlin

(29) All samples or slides containing semen or sperm
found on victim Carey Medlin

(30) All blood samples taken from Carey Medlin

(31) All Blood samples taken from Robert Coe

If any physical evidence once in your possession is no
longer in your possession, upon forwarding the physical evidence to
the Clerk of the Court, you shall, by letter, identify any such
evidence and inform the Clerk of the Court of the location of any
and all such physical evidence no longer in your possession and/or
the location, agency, or person to whom such evidence was
forwarded.

SO ORDERED AND ENTERED this ___19___ day of December,
1995.

3

JOHN T. NIXON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

APPROVED FOR ENTRY:

Paul R. Bottei
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
(615) 736-5047

Attorney for Petitioner

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**RECEIVED**

JUL 13 2001

Federal Public Defender's Office
Nashville, Tennessee

STEPHEN M. BELL,                          )
                                          )
    Petitioner,                           )
                                          )
                        )     No. 3:95-0600
v.                                        )     JUDGE HAYNES
                                          )
HOWARD CARLTON, Warden,                   )
                                          )
    Respondent.                           )

## O R D E R

Before the Court is petitioner's motion for discovery, (Docket Entry No. 54), to which

respondent replied. For the reasons explained in the Memorandum entered contemporaneously

herewith, the Court hereby **GRANTS** petitioner's motion. Specifically, the Court **GRANTS**

discovery of (1) Records of Tennessee Department of Corrections, pertaining to William

Davenport (2) Records of the Tennessee Department of Probation and Paroles, pertaining to

William Davenport (3) Records of the Metropolitan-Davidson County Jail, pertaining to William

Davenport and (4) Tennessee Bureau of Investigation Records, pertaining to Stephen M. Bell and

(5) Tennessee Bureau of Investigation Laboratory Reports, pertaining to Stephen M. Bell.

Respondent shall have twenty (20) days from the date of entry of this order to produce

these documents. Petitioner shall have forty five (45) days from the date of entry of this order to

file a further response to respondent's motion to dismiss or in the alternative for summary

judgment.

It is so **ORDERED**.

**ENTERED** this the _____12th_____ day of July 2001.

WILLIAM J. HAYNES, JR.
United States District Judge

This document was entered on
the docket in compliance with
Rule 58 and/or Rule 79(a).
FRCP, on 7/13/01 By _____

EXHIBIT 2

1

MAR 0 8 1996                    2/10/96

LEGAL COUNSEL

Sir:

This is in response to your reply, and though I thought I was descriptive enough for some interest to be sparked, being this is about murder case. I have the copy of what I sent you, and I in no way gave the impression that the case involving Jon Hall took place in prison. Jon Hall killed his wife, Billie Hall, in July of 1993. He did so by beating her to death (head trauma) and then dumped her in a swimming pool. He then stoled her van to escape capture, which he crashed. At the scene he then stoled the car of persons who stopped to give him assistance, which was occupied by a young boy, who was forced out a short time after. Jon Hall then drove that car to Texas, where his brother turned him in. Your office then sent agents to serve extradition paper and escort him back to tn. While in the county jail he caused much trouble and was found in possession of a hack saw blade, which he had used to start sawing out.

I know that all of this information is easily excessable to most anyone. And is not the information I feel is of importance. It on page #2. Oh yes, Jon Hall decommutated the phone line, on a pool I think; it was outside of the trailer house though.

CKuth                                    4/14/0

2    Jon was in a rage when he arrived to
the trailer, and was drunk. He had been
drinking since he called Billie earlier.
    He had been at the trailer everyday for a-
bout a week, working on his car, while all the
time trying to get Billie to take him back a-
gain.
    Jon said, the only way she'd even let me
back in the yard is because I told her I was
bringing her some money (order). I was living
on the streets, couldn't work steadly. She
wanted everything and I had nothing, nowhere
to live, no car and I couldn't be with my
children, I was the one who raised them (I think I
irked MN), I took care of them, Now that I can't
do anything for her, she has no use for me.
    I disconnected the phone line, shit I did it a lot
of times, or she'd call the cops. Playing games with
my life, it was time she knew how it felt to
feel what I did. Helpless and afraid, I was a game
I wanted her to feel the fear, her and her games.
She bit that one, she hated me and forced me
to hate, I tried to show her I could change, and
she used me. She had to pay, so I started, I couldn't stop.
    When I first met Jon, he told me that he was
a safe keeper. He was in here for killing his old
lady, the bitch played one too many games with
me, and paid the price, lost her life.

3    *Aaron*    2/10/96

He did mention something about a lil. pistol
but he was moved to another unit before I could
get it right, I won't make stories or tell you what
you want to hear, I let him feed me infor-
mation as he felt comfortable, and I gained
his trust. I was giving him information and
help (suppose), trust comes easy when you give
them something to hold against you,

I do know that Billie was going out to recon-
nect the phone line. She knew Jon was down
and on the verge of losing it.

He accused her of having another man, his
girl could call him daddy, like her girl did
him. She never loved him, and now she had
use for him, like he was a damn fool.

Right off, that's it. Besides my first hand
knowledge, He blew up in here twice, the sec-
ond time for the barber cutting his hair too
short, He ended up being restrained by officers,
and I still stick, I theory, threatening to kill
the barber and Sgt. Hunt (O.I.C.)

He is a dangerous man, he was raging
over so lil, And will kill Billie, her sister, his bro-
ther, neighbor and the living mother fuckers
who come got him and the ones who beat him
up in jail. His eyes and demeanor all that you
told her, told Billie, I wouldn't become his
friend in here, too likely to turn, and no matter
he wouldn't even be behind me.

4                    (still on)

You be the judge, but whatever the case, I am now minimum security; awaiting transfer to Ft. Pillow. And I don't want to jeopardy that. I've been on max too long, its getting time bad (26 months)!

Unfortunately, I sent the copies of the first few times, forgetting to write down the agents name who was/is directly involved.

I can't remember what county the murder took place in. And as for the D.A.'s name is in Raleigh N.C., I dealt directly with the:

*Attorney General* (not D.A.)

I can't find the           address or name. I did send for it last year though, and I got a letter back in a short time, offering their aid. I gave them this info: about the contract murder case I testified at! (3rd after 2 hung juries) Tammy Thompson hired a man named Joe to kill her wife's boyfriend in Fayetteville N.C. Trial took place in early 1991 (month I think), Tammy got a life sentence. And I was the only additional evidence in 3rd. trial. Tammy was from Panama Beach Fla. Joe worked for Tammy. (roofing)

The information on pages 2, 3 & 4 are not from any documents or newspapers, all from Jr. Halls mouth; I may know better, a piece more, but not right off. I know the drill, and what can be used in court, been there, done that!

[illegible]

As for the [illegible] incident, it was to give Roscoe Clayton the incentive to help because I was told that any R.M.S.I. staff [illegible] involved [illegible] a man named Benny [illegible] who killed a [illegible] inmate at [illegible] Center early last year. After being paid to [illegible] by [illegible] Quintana. Because the [illegible] had stolen from Quintana, [illegible] (the [illegible] money and jewelry in the theft). [illegible] bragged to me about it in the [illegible] of [illegible] and other. And Chico (Ramos) confirmed it by telling me that he had [illegible] Shorty Quintana) [illegible] made him a [illegible] and he [illegible] of the killing [illegible]. And that Shorty was [illegible] himself out by bragging and not keeping to the story they agreed on. Then Chico told me to tell [illegible] only to keep his mouth shut, and not to worry about him saying anything to investigators, [illegible] good, [illegible] anyone who really knows me. (Chico said)

And another [illegible] Shorty [illegible] me [illegible] my [illegible] to give Chico something, for about the 15th time that month. Chico said [illegible]

[illegible]

EXHIBIT 3



ASSISTANT DISTRICT ATTORNEYS GENERAL

DONALD H. ALLEN
SHAUN A. BROWN
LAWRENCE "NICK" NICOLA
JAMES W. THOMPSON
ALFRED L. EARLS
CHRISTOPHER J. SCHULTZ
ERNEST T. BROOKS, II

CRIMINAL INVESTIGATOR
JACK A. WILSON

VICTIM/WITNESS COORDINATOR
GEORGIA M. BOND

**JAMES G. (Jerry) WOODALL**
District Attorney General
State of Tennessee, 26th Judicial District
*Criminal Division*
P.O. BOX 2825
JACKSON, TENNESSEE 38302

SECRETARIES

ANGELA WINBUSH
BETTY NEWMAN
GABI LINDSEY
TONYA SHAVERS

COUNTIES

MADISON
CHESTER
HENDERSON

TELEPHONE

901-423-5800
FAX 901-424-9039

August 28, 1996

Jesse Ford
Attorney at Law
P.O. Box 1625
618 N. Highland Ave.
Jackson, Tn 38301

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK.

AUG 2 9 1996

BY _____
DEPUTY CLERK

Dear Jesse:

Please be advised that in addition to Latasha Marie
Whittington-Barrett, whose name was disclosed to you in
February as a possible witness against Jon Hall, the State
has been advised by Agent Byrd that another inmate of Jon
Hall may testify against Mr. Hall as to certain admissions
made by Jon Hall concerning murder of Billie Joe Hall. All
of the details of that statement are not available at this
office but Agent Byrd will give you any information you
request concerning that inmate. The name of the inmate has
not been confirmed to this office but we intend to meet with
Agent Byrd soon and obtain a written copy of the statement.
You are more than welcome to a copy of the statement.

Sincerely,

EXHIBIT 4




ASSISTANT DISTRICT ATTORNEYS GENERAL

DONALD H. ALLEN
SHAUN A. BROWN
LAWRENCE "NICK" NICOLA
JAMES W. THOMPSON
ALFRED L. EARLS
CHRISTOPHER J. SCHULTZ
ERNEST T. BROOKS, II

CRIMINAL INVESTIGATOR
JACK A. WILSON

VICTIM/WITNESS COORDINATOR
GEORGIA M. BOND

**JAMES G. (Jerry) WOODALL**
District Attorney General
State of Tennessee, 26th Judicial District
*Criminal Division*
P.O. BOX 2825
JACKSON, TENNESSEE 38302

SECRETARIES

ANGELA WINBUSH
BETTY NEWMAN
GARI LINDSEY
TONYA SHAVERS

COUNTIES

MADISON
CHESTER
HENDERSON

TELEPHONE

901-423-5800
FAX 901-424-9038

September 4, 1996

Mr. Jesse H. Ford
Attorney at Law
618 N. Highland Ave.
Jackson, TN 38301

RE:  STATE OF TENNESSEE VS. JON HALL
     HENDERSON COUNTY CIRCUIT COURT #94-342

Dear Jesse:

     Please find enclosed a copy of the statement given by
Latasha Marie Whittington Barrett.  I do not have a written
statement from Mr. Dutton as of this date.

                              Sincerely,

                              Al Earls
                              Assistant District Attorney
                              26th Judicial District

AL/gl

EXHIBIT 5



**ASSISTANT DISTRICT ATTORNEYS GENERAL**

DONALD H. ALLEN
SHAUN A. BROWN
LAWRENCE "NICK" NICOLA
JAMES W. THOMPSON
ALFRED L. EARLS
CHRISTOPHER J. SCHULTZ
ERNEST T. BROOKS, II

**CRIMINAL INVESTIGATOR**
JACK A. WILSON

**VICTIM/WITNESS COORDINATOR**
GEORGIA M. BOND

**JAMES G. (Jerry) WOODALL**
District Attorney General
State of Tennessee, 26th Judicial District
*Criminal Division*
P.O. BOX 2825
JACKSON, TENNESSEE 38302

**SECRETARIES**

ANGELA WINBUSH
BETTY NEWMAN
CARI LINDSEY
TONYA SHAVERS

**COUNTIES**

MADISON
CHESTER
HENDERSON

**TELEPHONE**

901-423-5800
FAX 901-424-9039

September 5, 1996

Jesse H. Ford
618 N. Highland Ave
Jackson, Tn  38301

Dear Jesse:

   Please find enclosed a copy of a statement given by Chris Dutton.

Sincerely,

Al Earls

EXHIBIT 6

3/-/96

Sir:

As I said, I will not do anything to keep me here at R.M.S.I., nothing. I am awaiting a transfer to another prison (minimum). And what I ask for, for my testimony, I can get through the judicial system. I was given concurrent sentences, but I'm doing consecutive "sentences." If my contracted plea bargains were honored, I would have already been up for parole. When I get to Fort Pillow, I will begin the process to have my plea bargains honored and begin an inner state compact to parole to another state. I could be of great use within the prison system as a reliable informant. And they use this and N.C. as a chance to become an informant for the F.B.I.! I know that I am not a priority in this battle against crime. And I have no delusions about my importance. But I do have a conscience and want to do some good. And I a survivor, I fit in places where most would or couldn't. I'm good at gaining the trust of the outlaw type, and as I said, I fit and well

About N.C., just write the attorney general's off in Raliegh. Give them my name and the therefor about the case I testified in 3/5/90 later. Chris A. Burton

EXHIBIT 7

*..PPROVED* ⟨signature⟩
*DATE* 9|2|15|74

### TENNESSEE BUREAU OF INVESTIGATION

*REPORTED: 11/07/94 RECEIVED: 11/07/94   TRANSCRIBED: 12/12/94*

TO:      5A-662-JA

FROM:    SA Brian  Byrd

SUBJECT:     Interview Oral of Cindy Connor

REFERENCE:   ! Death Investigation, Henderson County
             (S) Jon D. Hall
             (V) Billie Jo Williams

This is the interview of one of the daughters of the victim,
Billie Jo Hall as given to Sheriff Charles Woods and I at the
Henderson Count Sheriff's Department in the early morning
hours of July 30th 1994. All four were asked to give
information, however, Cindy Connor (dob 04/07/86) was the
only child to provide a detailed statement about events that
occurred in the hours prior.

Cindy stated that JON HALL her stepfather had came to the
front door and her mother let him in. She stated that her
mother warned  HALL that she did not want a fight and he said
that he wouldn't do anything to her. She added that he had
something in a bag. She further added that she thought it was
beer.

Cindy stated that after a while he told the all of the girls
to go to bed. She added that they all went to their bedrooms
but they didn't go to sleep. She stated that after she and
her sisters went to bed they began to fight.

Cindy explained that she heard her mother threaten to call
911 at which time HALL exclaimed "Go ahead and call!!"
Cindy stated that as the fight got louder she got up and saw
where HALL had pushed her mother down over a chair! She added
that she tried to help but he turned and threatened her. She
further added that she hit and bit HALL in an attempt to aid
her mother but he would not stop hitting her.

Cindy explained that her mother after all of this had blood
coming out of her nose? She stated that she didn'g know how
many times that he hit her but that it was several.

Cindy stated that at this point all of the girls were in the

The investigative records of the Tennessee Bureau of Investi-
gation are confidential by statute  (TCA 10-7-504). Unlawful
disclosure of this information is a misdemeanor (TCA 40-32-
101 and TCA 39-11-114).

EXHIBIT 8

..:PROVED
DATE  7|2|15|9y

TENNESSEE BUREAU OF INVESTIGATION

REPORTED: 11/07/94  RECEIVED: 11/07/94   TRANSCRIBED: 12/12/94

TO:     5A-662-JA

FROM:    SA Brian  Byrd

SUBJECT:   Interview Oral of Jennifer Connor

REFERENCE:   Death Investigation, Henderson County
             (S) Jon D. Hall
             (V) Billie Jo Williams


This is the interview of one of the daughters of the victim,
Billie Jo Hall as given to Sheriff Charles Woods and I at the
Henderson Count Sheriff's Department in the early morning
hours of July 30th 1994. Jennifer Connor, (dob 04/10/85) was
shaken but provided a brief statement concerning the incident
which had occurred with her mother just prior to the
discovery of her body.

Jennifer stated that JON HALL her stepfather had came to the
house in the night and her mother let him in. She stated that
they got into a fight and he started hitting her. She stated
that she tried to stop him by holding his hand to keep him
from hitting her mother but she couldnt hold his arm.


Jennifer explained that HALL had beat her mother and chased
her into the yard. She added that her mother sat down in the
grass by the sand box to catch her breath when he started
hitting her again. She stated that at this point she ran to
the nieghbors house and asked them to call the police. She
explained that Cindy had tried to call but HALL had done
something to the phone so that they couldn't get through.


Jennifer added that HALL had yelled that he would burn the
house before he let her have it.


Jennifer had nothing further to add.


                :stigative records of the Tennessee Bureau of Investi-
                are confidential by statute  (TCA 10-7-504). Unlawful
                sure of this information is a misdemeanor (TCA 40-32-
                 d TCA 39-11-114).

EXHIBIT 9

TENNESSEE BUREAU OF INVESTIGATION

REPORTED: 08/09/94  RECEIVED: 08/09/94    TRANSCRIBED: 08/09/94

TO:    5A-662-JA

FROM:    SA Brian Byrd

SUBJECT:    Preliminary Investigative Report

REFERENCE:    Homicide, Henderson County Tennessee
(S) Jon D. Hall
(V) Billie Jo Hall

This preliminary investigative report was predicated by a
complaint of homicide by the Henderson County Sheriff's
Department on 07/30/94. According to Sheriff's Office
investigators, JON D. HALL, of 525 Pleasant Hill Road,
Lexington Tennessee, murdered his wife (V) BILLIE JO HALL,
at the above mentioned address at approximately 11:30 pm on
the night of 07/29/94. JON HALL then stole his wife's red
mini-van and left the area presumably to avoid arrest.

I received notification of the complaint from SAC John Mehr
by telephone at my residence at approximately 01:15 am on the
morning of 07/30/94. After brief explanation from SAC Mehr, I
proceded to the Lexington area and after radio contact with
their communications, I met with Sheriff Charles Woods and
Investigator Brent Booth at the Methodist Hospital in
Lexington.

Upon reaching the hospital, Investigator Booth provided a
brief summary of the crime scene and detailed the events
described by witnesses at the scene. Booth explained that JON
HALL was an estranged husband who had been living with a
woman by the name of Darlene Brown. He added that there had
been several calls of disturbances at the Hall residence in
the past and that BILLIE HALL, the victim, had been forced to
file an order of protection against the subject previously in
the summer. Booth went on to explain that JON HALL had went
back to the house despite the orders of the court and talked
his way into the house. After sometime, he and the victim got
into an arguement and during this arguement the subject
proceded to beat the victim. He relentlessly beat her until
she ran out of the house. He gave chase and again beat her

The investigative records of the Tennessee Bureau of Investi-
gation are confidential by statute  (TCA 10-7-504). Unlawful
disclosure of this information is a misdemeanor (TCA 40-32-
101. and TCA 39-11-114).

until he finally threw her into the children's swimming pool.
Booth added that it was here that the responding officers
found the partially clothed body of the victim, BILLIE JO
HALL. Booth stated that she was floating face down in the
pool which was approximately two foot deep. He added that she
was wearing dark jogging pants and no shirt or bra. He
further stated that there was a small area of blood
consolidated in an area just under the face but near the
bottom of the pool. Booth added that there was a blood trial
and drag marks from the driveway down to the pool where the
victim was found.

It was decided that it would be better to examine the body
and conduct preliminary interviews first therefore allowing
time for the sun to come up and provide better lighting at
the scene.

The body was examined by the Henderson County Medical
Examiner and pronounced dead. He also requested an autopsy.
He stated that he had noted the body temperature at the time
she was found in the water at 20 degrees centigrade and the
water temperature at 25 degrees centigrade.

BILLIE HALL was apparantly beaten on the face and head
several times. There was no apparent sign of bludgeoning to
the head however, hair and blood made external examination
difficult. I noted that hands of the victim were cool to the
touch but had not set with rigor at the time of the
examination, ( approximately 02:30 hrs.) The victim's face
was swollen and bruised from apparent blows. Her hands show
little sign of trauma and no nails were noted missing. She
also showed some signs of scrapes and blows to her arms and
legs. However, the majority of the injury seemed to be
directed at her head. Further examination would be conducted
by the medical examiner's office in Memphis.

Following the victim's examination Sheriff Woods,
Investigator Booth and I interviewed the daughters of the
victim who were present at the time of the murder. The two
stated that they had witnessed that beating and that their
father JON HALL had killed their mother. They bascially
echoed the the same story which Booth had summarized prior to
me.

Following this Booth and I supplemented BOLOs which had been
sent out in reference to this case by contacting various

---

The investigative records of the Tennessee Bureau of Investi-
gation are confidential by statute  (TCA 10-7-504). Unlawful
disclosure of this information is a misdemeanor (TCA 40-32-
101 and TCA 39-11-114).

Page 02        File: 5A-662-JA        Vol: 01    Serial: 02

police departments across the United States where HALL might
run to. We contacted the following, Ligonier PA,
MI, and Belton TX to name a few. Sometime later in the
afternoon, HALL was picked up by the Belton Police Department
at his brothers residence. His brother, aware of the incident
had contacted police. HALL surrendered without a fight and
stated to the officers that the car he was in was stolen.

HALL was later waived his extradition and Depurty Rick
Lundsford, Investigator Booth and I went to Texas to bring
him back. Upon our arrival at the Bell County Sheriff's
office and introduction to HALL, he without provocation broke
down and cried saying that he had "done it" and that he was
"very sorry" or some words to that effect. He further added
that he had found out the day before that she, BILLIE HALL,
was dead. These statements were made voluntarily by the
subject and were a suprise to Booth and I as we had not asked
him for any statement. He stated that he would tell us
anything we wanted to know but as we proceded to conduct the
procedure of signing the rights waiver, he stated that he
would not give a statement without an attorney present,
therefore we halted any further contact with him.

HALL was transported back to the Henderson County Jail where
he now awaits a preliminary hearing.

Crime Scene report to be included later in this file.

For further information, contact the Henderson County
Sheriff's department.

The investigative records of the Tennessee Bureau of Investi-
gation are confidential by statute  (TCA 10-7-504). Unlawful
disclosure of this information is a misdemeanor (TCA 40-32-
101. and TCA 39-11-114).

EXHIBIT 10

DAUGHTERS OF BILLIE HALL

Jennifer  —  4|10|
Cindy  —  4|7|86
Stephanie  —  9|17|88
Jessica  —  6|22|91


SECOND INTERVIEW AT LAMBERT RESIDENCE  9|15|94
JENNIFER & CINDY


Momma took the batteries out of the fire alarms.
Her keys were in the kitchen counter. Keys were
always in her purse.


BLACK — ORANGE, GREEN YELLOW — JENNIFER
BLACK WHITE                    CINDY


3 WKS AGO JON SPEWED BEER ON FURNITURE
TO PROMOTE ARGUEMENT.

* MS LAMBERT SAID HE BODY SLAMMED HER ON PORCH &
BRAGGED ABOUT ON PHONE.


JENNIFER

He promised he wouldnt fight. Momma let him in.
We were watching Bugs Bunny.
It was late at night. He stayed somewhere around
an hour.
He dipped his finger in the peanut butter.
Drank two or three Beers.

JENNIFER   CONTINUED

They got in an agru orgument. He told us to go to bed.
He told her to call 911 —
Cindy Tried to CALL 911 but couldn't.

She fought him out to the pool.


CINDY

WE DON'T WANT TO SEE HIM AGAIN.
HE HURT OUR FEELING.
WOULD LIKE TO TELL HIM JUST WHAT HE DID
HE TOOK OUR MOMMY
THAT NIGHT I WISHED I COULD HELP MOMMY.
I STRUCK HIM, I TRIED TO HELP. BUT I COULDN'T
STOP HIM.
ALL I DID WAS BITE HIM.  〉   any bite marks?
                                          on TK.

JON SAID "DON'T CALL THE POLICE TO COME DOWN
HERE OR I'LL KILL YOU!"

EXHIBIT 11

CRIME SCENE VIDEOTAPE

FILED MANUALLY WITH THE CLERK

EXHIBIT 12



ASSISTANT DISTRICT ATTORNEYS GENERAL

SHAUN A. BROWN
JAMES W. THOMPSON
ALFRED L. EARLS
BILL R. MARTIN
JODY S. PICKENS
ANGELA R. SCOTT
ANNA M. BANKS
ROLF G. S. HAZLEHURST
CARRIE G. LAPE
NINA W. SEILER

CRIMINAL INVESTIGATOR
JACK A. WILSON

VICTIM/WITNESS COORDINATOR
GEORGIA BOND
JOANNA CLARK (ASSISTANT)

**JAMES G. (Jerry) WOODALL**
*District Attorney General*
*State of Tennessee, 26th Judicial District*
*Criminal Division*

P.O. BOX 2825
JACKSON, TENNESSEE 38302

SECRETARIES

ANGELA AUTRY
BETTY NEWMAN
GARI LINDSEY
KATHY BURNEY

COUNTIES

MADISON
CHESTER
HENDERSON

TELEPHONE
731-423-5800
FAX 731-424-9039

March 9, 2006

Janet Y. Santana
CHU Paralegal Specialist
Office of the Federal Public Defender
810 Broadway, Suite 200
Nashville, Tn  37203-3805

Re:  Inspection of Jon Hall case file Case No. 96-589

Mrs. Santana:

    We hereby deny your request to inspect the above named file.  The office of the
Federal Public Defender is not a citizen of the State of Tennessee and therefore cannot as
an institution seek inspection under that statute.  If you are relying upon the fact that you
represent Jon Hall in Federal Court then your request is also denied for the reasons set
forth in <u>Swift v. Campbell</u>, 159 S.W.3rd 565 as it would appear that you are attempting to
circumvent the federal rules of discovery for federal habeas corpus.  It also was brought
to our attention that Jon Hall has a pending habeas corpus in state court and therefore
discovery should be sought through the rules of discovery applicable to habeas corpus.

    Very truly yours,

*Jerry Woodall*

James G. (Jerry) Woodall
District Attorney General
26th Judicial District

EXHIBIT 13

Declaration of Janet Y. Santana

Declarant Janet Y. Santana swears as follows:

1. I am an adult resident citizen of Nashville, Davidson County, Tennessee.

2. I am currently employed as a paralegal for the Capital Habeas Unit in the Office of the Federal Public Defender, Middle District of Tennessee. As part of my duties, I collect records respecting our clients.

3. When working on the Jon Hall case, I was requested to obtain the autopsy report, including all x-rays and photographs, on Billie Jo Hall.

4. I first contacted the Shelby County Archives and left a message stating that I needed to get a copy of an autopsy. I received an e-mail from Vincent Clark, which stated that the procedures had changed, and that in order to get a "complete" autopsy file, with photographs and x-rays, I needed to contact the Medical Examiner's Office, either in writing or with a subpoena.

5. I then contacted the Medical Examiner's Office on September 5, 2005, and spoke to Ms. Kathy Fitts. It was during this conversation that I learned the number of the autopsy, #A94-430. Initially, Ms. Fitts told me that I didn't need to go through them, and that I did not need a subpoena, that I could just call the archives and get the file. When I told her what Mr. Clark had told me, Ms. Fitts suggested that I send her a request and she would request the file and send it to me. I faxed her a request on September 7, 2005. I did not receive any further communications from either Ms. Fitts or the Shelby County Medical Examiner's Office.

6. I began a second attempt to get the complete file on the Billie Jo Hall autopsy on October 4, 2006. I contacted the Shelby County Regional Forensic Center, and was told that Ms. Fitts no longer worked there and that the Medical Examiner's Office had been privatized. Ms. Beth Thomas told me that she would check on the file and call me back. While Ms. Thomas has not, as of the date of this Declaration called me back, I received the autopsy report, via e-mail, from Mr. Veasy of the Shelby County Archives on October 6, 2006. Mr. Veasy advised that the archives did not have any photographs or x-rays, and that if they existed, we would have to get them from the Medical Examiner's Office. I called Ms. Thomas twice more, and was told she was not able to come to the telephone.

7. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Janet Y. Santana
CHU Paralegal Specialist

Executed October 10, 2006