# ADDENDUM 1
## Volume 1

W2003-00669-CCA-R3-PD

# CIRCUIT COURT OF MADISON COUNTY
## – TO –
# COURT OF CRIMINAL APPEALS

JUDGE ___ROY B. MORGAN___ DIVISION ___I___

CIRCUIT COURT CLERK ___JUDY BARNHILL___

VOLUME ___I___ OF ___VIII___ VOLUMES

STATE OF TENNESSEE

VS.

JON HALL

CASE NO. C-00-422

| | | | |
|---|---|---|---|
| FELONY ☒ | MISDEMEANOR ☐ | ROR ☐ | TDOC ☒ |
| BOND ☐ | $_____ | INDIGENT ☐ | |
| POST CONVICTION ☒ | | HABEAS CORPUS ☐ | |

MR. ALFRED EARLS
ASSISTANCE DISTRICT ATTORNEY
P.O. BOX 2825
JACKSON, TN 38305

DANNY ELLIS
ATTORNEY AT LAW
P.O. BOX 3512
JACKSON, TN 38303

Attorney For: APPELLEE

Attorney For: APPELLANT

Attorney For:

Attorney For:

OFFENSE: FIRST DEGREE MURDER

SENTENCE DEATH


FILED
JUL 2 4 2003
Clerk of the Courts
Rec'd by C4J

Vol. 1

Filed the ___21___ day of ___JULY___ ___2003___

COURT OF CRIMINAL APPEALS

BY: T. ROBERSON

LAYCOOK, JACKSON

# I N D E X

AFFIDAVIT SUPPORTING DENIAL OF DUE PROCESS
AND IMPROPER WAIVER OF TRIAL IN HENDERSON
CTY                                                      135-139

AFFIDAVIT TO SUPPORT DENIAL OF EFFECTIVE
ASSISTANCE OF COUNSEL REGARDING
MISSTATEMENT OF LAW                                      140-152

CERTIFICATE &  SEAL                                      153

MEMORANDUM IN SUPPORT OF MOTION FOR
SUBSTITUTION OF COUNSEL                                  55-56

MOTION FOR CONTINUANCE                                   128-130

MOTION FOR CONTINUANCE                                   93-123

MOTION FOR EXTENSION TO FILE HIS AMENDED
PETITION                                                 61-72

MOTION FOR POST-CONVICTION RELIEF                        8-44

MOTION FOR SUBSTITUTION OF COUNSEL                       53-54

MOTION FOR THE ORDER  FOR THE SURRENDER OF
OF ATTORNEY WORK PRODUCT                                 83-84

MOTION TO APPOINT COUNSEL                                85-86

MOTION TO APPOINT COUNSEL                                90-91

MOTION TO FILE SUPPLEMENTAL POST-CONVICTION
RECORD                                                   131-134

MOTION TO WITHDRAW                                        76-82

ORDER  (FEBRUARY 13, 2001)                               74-75

ORDER                                                    89

ORDER  (SEPTEMBER 17, 2001)                              126-127

ORDER  SUBSTITUTING COUNSEL                              59-60

ORDER APPOINTING COUNSEL                                 87-88

ORDER APPOINTING COUNSEL (DECEMBER 15, 2000)             51-52

ORDER APPOINTING COUNSEL (APRIL 17, 2001)                92

ORDER STAYING EXECUTION                                      57-58

PETITION FOR RELIEF FROM CONVICTION OR
SENTENCE                                                      1-7

PETITIONER'S OBJECTION AND REBUTTAL RESPONSE
TO THE STATE'S RESPONSE AND MOTION TO DISMISS;
AND MOTION TO COMPEL ANSWER AND SANCTION
THE STATE                                                    48-50

PRO SE MOTION FOR APPOINTMENT OF COUNSEL                     45-46

STATE'S  MOTION FOR RULE 9 APPEAL                             125

STATE'S OPPOSTION TO MOTION FOR EXTENSION
TO FILE AMENDED PETITION                                      73

STATE'S RESPONSE AND MOTION TO DISMISS                        47

STATE'S RESPONSE AND MOTION TO DISMISS                       124

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
AT JACKSON

FILED
JUDY BARNHILL, CIRCUIT COURT CLERK
DEC 07 2000
DEPUTY CLERK
11:30 A.M.

JON HALL

v.                                          CASE NO. C00-422
                                            (POST-CONVICTION)
STATE OF TENNESSEE

PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

Mailing Address of Petitioner (including zip code) Riverbend Maximum Security Institution,
7475 Cockrill Bend Rd., Nashville, TN 37201-1010
Place of Confinement ___ Riverbend Maximum Security Institution

Department of Correction Number ___ 238941 _____

NOTICE: BEFORE COMPLETING THIS FORM, READ CAREFULLY THE
ACCOMPANYING    INSTRUCTIONS.

1.    Name and location (city and county) of court which entered the judgment of conviction or
sentence challenged___ Madison County Circuit Court, Jackson, TN _____

2.    Date of judgment of conviction ___ February 5, 1997 _____
3.    Case number ___ 96-589 _____

4.    Length of sentence Death _____

5.    Offense convicted of ___ First-degree murder _____
_____
_____

6.    What was your plea?  (Check One)
      (a)    Guilty ___
      (b)    Not Guilty x
      (c)    Not Guilty by reason of mental disease or defect ___
      (d)    Not Guilty and Not Guilty by reason of mental disease or defect _____
      (e)    Nolo contendere ____
      (f)    None ____

      If you entered a guilty plea to one count or indictment, and a not guilty plea to another
count or indictment, specify:

      (a)    Guilty plea counts: _____
      (b)    Not guilty plea counts: _____

7.    Kind of trial: (Check One)

      (a)    Jury x
      (b)    Judge only ___

8.    Did you testify at the trial

      Yes ___        No x

9.    Did you appeal from the judgment of conviction?

      Yes x        No ___

10.    If you did appeal, answer the following:

    (a)    As to the state court to which you first appealed, give the following information:

        (1)    Name of court __Tennessee Criminal Court of Appeals_____
        (2)    Result __Affirmed_____

        (3)    Date of result: _April 29, 1998_____
        (4)    Grounds raised on appeal sufficiency of evidence(guilt),exclusion of Cheryl
            Arbogast's testimony, admission of autopsy photos, constitutionality of
            aggravating factor (i)(5), sufficiency of the evidence to support the aggravating
            factor, death penalty inappropriate_____

            (Attach additional sheets if necessary)

    (b)    If you appealed to any other court, then as to the second court to which you
appealed, give the following information:

        (1)    Name of court __Tennessee Supreme Court_____

        (2)    Result__Affirmed_____

        (3)    Date of result __Nov. 15, 1999; rehearing denied Dec. 27, 1999_____

        (4)    Grounds raised on appeal Sufficiency of the evidence(guilt), sufficiency of the
            evidence to prove the aggravating circumstance, admission of the autopsy photos,
            jury instruction on unanimity of the jury on weighing aggravating circumstances
            and mitigating circumstances, exclusion of Cheryl Arbogast, court's refusal to
            remove flag at defendant's request, and proportionality review
            (Attach additional sheets if necessary)

    (c)    If you appealed to any other court, then as to the third court to which you
appealed, give the following information:

        (1)    Name of court_United States Supreme Court_____
        (2)    Result Certiorari denied_____
        (3)    Date of result___October 2, 2000_____
        (4)    Grounds raised on appeal unanimity requirement on life sentence violates 8th and
            14th Amendments, proportionality review conducted in Tennessee does not meet
            standards of due process guaranteed under the 14th Amendment
            (Attach additional sheets if necessary)

11.    If more than one (1) year has passed since the date of final action on your direct appeal by
the state appellate courts, state why the one (1) year statute of limitations should not bar your
claim.

_____
_____
_____

12.    Other than a direct appeal from the judgment(s) of conviction and sentence, have you
previously filed any petitions, applications, or motions with respect to the judgment(s) in any
state or federal court?

      Yes __      No _x_

13.    If your answer to Question 12 was Yes, then give the following information in regard to
the first such petition, application, or motion you filed:

    (a)    (1)    Name of court _____

        (2)    Nature of proceeding _____

(3)    Grounds raised _____

_____

_____

(Attach additional sheets if necessary)

(4)    Did you receive an evidentiary hearing on your petition, application or motion?

Yes ___        No ___

(5)    Result _____

(6)    Date of result _____

(b)    As to any second petition, application, or motion, give same information:

(1)    Name of court _____

(2)    Nature of proceeding _____

(3)    Grounds raised _____

_____

_____

(Attach additional sheets if necessary)

(4)    Did you receive an evidentiary hearing on your petition, application or motion?

Yes ___        No ___

(5)    Result _____

(6)    Date of result _____

(c)    Did you appeal the result of the action taken on any petition, application, or motion identified above to any appellate court:

(1)    First petition, etc.    Yes ___        No ___
(2)    Second petition, etc.    Yes ___        No ___

(d)    If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did into appeal: _____

_____

_____

14.    If you did not raise the grounds you raise here in your original prosecution and on your appeal from that prosecution, explain why your claim in this case has not been waived for failure to raise it on appeal. If the claim was raised, explain why your claim is not previously determined.

_____

_____

_____

15.    If you have previously filed a petition, application, or motion with respect to he judgment(s) in any court, explain why your claim in this case has not been waived for failure to raise it in that prior proceeding. If the claim was raised, explain why your claim is not previously

determined.

16.    Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information or by attaching separate pages.

### GROUNDS OF PETITION

Listed below are possible grounds for relief. Consider the ground(s) that apply in your case, and follow the instruction under the ground(s):

__(1)  Conviction was based on unlawfully induced guilty plea or guilty plea involuntarily entered without understanding of the nature and consequences of the plea.

__(2)  Conviction was based on use of coerced confession.

_x_ (3)  Conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure.

_x_ (4)  Conviction was based on use of evidence obtained pursuant to an unlawful arrest.

_x_ (5)  Conviction was based on a violation of the privilege against self incrimination.

_x_ (6)  Conviction was based on the unconstitutional failure of the prosecution to disclose to defendant evidence favorable to defendant.

__(7) Conviction was based on a violation of the protection against double jeopardy.

_x_ (8)  Conviction was based on action of a grand or petit jury that was unconstitutionally selected and impaneled.

_x_ (9) Denial of effective assistance of counsel.

__ (10) Newly discovered evidence.

_x_ (11) Illegal evidence.

_x_ (12) Other grounds.

THE LIST ABOVE DOES NOT INCLUDE ALL CONSTITUTIONAL VIOLATIONS. YOU MAY ADD ANY OTHERS YOU DEEM APPROPRIATE. ATTACH A SEPARATE SHEET OF PAPER LISTING EACH CONSTITUTIONAL VIOLATION THAT YOU CLAIM, WHETHER OR NOT IT IS LISTED ABOVE. UNDER EACH CLAIMED VIOLATION, LIST EACH AND EVERY FACT YOU FEEL SUPPORTS THIS GROUND. EXPLAIN IN DETAIL HOW YOU ARE PREJUDICED BY THE VIOLATION AND WHY YOU ARE ENTITLED TO RELIEF. BE SPECIFIC.

IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS: TENN. CODE ANN. § 40-30-202(c) LIMITS YOU TO ONLY ONE PETITION. TENN. CODE ANN. § 40-30-202(c) PROVIDES:

> This chapter contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition

shall be summarily dismissed.

17.    Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes __    No x .

18.    Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a)    At preliminary hearing __Public Defender for Henderson County__

(b)    At arraignment and plea _Clayton Mayo and Jesse H. Ford, III: 618 N. Highland St., Jackson, TN__

(c)    At trial ___Clayton Mayo and Jesse H. Ford, III: 618 N. Highland St., Jackson, TN

(d)    At sentencing _Clayton Mayo and Jesse H. Ford, III_

(e)    On appeal ___Clayton Mayo and Jesse H. Ford, III and Mark Donahoe: 312 E. Lafavette St. Jackson, TN and Donald E. Dawson, 460 James Robertson Pkwy, 2nd floor, Nashville, TN

(f)    In any post-conviction proceeding _____

(g)    On appeal from adverse ruling in a post-conviction proceeding

19.    Are you currently represented by counsel?

Yes __    No x

(a)    If Yes, give name and address, if known, of the attorney representing you.

(b)    If No, do you wish to have an attorney appointed?

Yes x    No __

(c)    Has any attorney assisted in drafting or given advice regarding petition for post-conviction relief?

Yes x    No __

If Yes, give name and address of attorney(s).

__Marjorie A. Bristol, Office of the Post-Conviction Defender, 460 James Robertson Pkwy., 2nd Floor, Nashville, TN 37243__

20.    In the judgment you are attacking, were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes__    No x

21.    Do you have any future sentence to serve after you complete the sentence imposed by the

IN THE CIRCUIT COURT OF THE TWENTY-SIXTH JUDICIAL DISTRICT

Of TENNESSEE

Jon Douglas Hall,          *
                           *
     Petitioner,           *
                           *
Vs.                        *     CASE NO. C 00-422
                           *     (POST-CONVICTION)
State of Tennessee,        *
                           *
     Respondent.           *
                           *

_____

MOTION FOR POST-CONVICTION RELIEF
_____

    Comes now the Petitioner, Jon Hall, and would state that the conviction of
first degree murder and sentence of death are null and void for the following
reasons:

I. INEFFECTIVE ASSISTANCE OF COUNSEL AT A "CRITICAL STAGE"

   A. INTRODUCTION / ILLEGAL ARREST

      1. That on July 29, 1994, the  Henderson County Sheriff's Department,
         (HCSD) Chief Deputy, Mr. Jerry Bingham, began to investigate the death
         of the Petitioner's wife Billie Hall. (See: T.E., V.II., P. 192; HCSD
         Chief Bingham first to arrive on the scene).[1]

      2. That on July 30, 1994, the Petitioner was arrested in Bell County,
         Texas at his brother's house, and Tennessee Bureau of Investigation
         (TBI) agent Brian Byrd, participated in the arrest & extradition
         process. See: (T.E., V.II., P. 206; Byrd / Arrest & Extradition).

      3. That on August 2, 1994, the Petitioner signed a waiver of extradition
         without the assistance of counsel. NOTE: See: Tn. Practice and Proc.,
         Raybin Series, Vol. 9, § 2.41 (Waiver of Extradition) (Nothing in this
         section shall be deemed to limit the rights of the accused to return
         voluntarily  and without formality to the demanding state, . . .).

      4. That on August 3, 1994, the Petitioner was handed over to three Tenn.
         State agents (TBI agent, Mr. Brian Byrd; HCSD investigator, Mr. Brent
         Booth; and HCSD deputy, Mr. Rick Lunsford), based upon two arrest
         warrants. The affidavit of complaint  supporting these two arrest
         warrants contained the following information:

         (a) WARRANT 2300: "Jon Hall did intentionally plan and kill Billie
             Hall. This act took place at  525  Pleasant Hill Road at the
             residence of  Billie  Hall in Henderson County. Signature of
             affiant: Brent Booth." (See: T.R., V. I  P. 111 ).[2]

         (b) WARRANT 2301: "On July 29, 1994, Jon Hall took Clinton E. Smith a
             child 12 yrs of age against his will and without permission of his
             parents. Signature of affiant: Brent Booth." (See: T.R., V. I
             P. 113 ).

                            FOOTNOTES
_____                                 _____

1. Reference  to  the  transcript of evidence will be designated by the
   abbreviation T.E.; the volume number will be designated by the abb.
   V. ___; and the Page number will be designated by the abb. P. ___,
   with  the  blank  space  being  the  actual  reference  point.

2. Reference to the  technical  record  will  be  designated  by  the
   abb. T.R., and the volume and page number will be abbreviated the
   same way as the above  reference  to  the  transcript  of evidence.

- 1 -

5. That the arrest and extradition process of the Petitioner was based on and started with the filing of the two aforementioned arrest warrants that were signed (rubber stamped) by Deputy Clerk, Denise Depriest. These affidavits prejudiced the Petitioner from having an important discovery tool. See e.g.,

   (a) The affidavit of complaint will alert prudent counsel to the State's primary witnesses and the facts of the offense. This may be of value in the preliminary hearing enabling the defense to call witnesses whom the state has not called. CITED: Tenn. Prac., Raybin series, volume 9, § 1.2; and

   (b) People v. Hodge, 53 N.Y.2d 313, 318–19, 423 N.E.2d 1060, 1063 N.Y.S. 2d 231–234 (1981) (Most important, early resort to that time-tested tool for testing truth, cross-examination, in the end may make the difference between conviction and exoneration).

6. That neither of the two aforementioned affidavits of complaint / warrants are valid under T.C.A. § 40-6-203 to § 40-6-205 because they failed to contain sufficient information to support an independent judgement of probable cause to support them, in violation of Tenn. R. Crim. P., 4 (b); Tennessee Constitution, Article 1, § 7 (Search and Seizure); and U.S.C.A. Const. Amend. 4. See e.g.,

   (a) State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989) (Tennessee law is clear that in determining whether or not probable cause supported issuance of a warrant, only information contained within the four corners of the affidavit may be considered);

   (b) State v. Tays, 836 S.W.2d 596 (Tn. Cr. App. 1992) (Test to determine whether probable cause to make arrest should be equally stringent as the test to determine whether probable cause to issue a search warrant);

   (c) Hatcher v. United States, 473 F.2d 321, 324 (6th Cir. 1973) (both Magistrate and reviewing court are restricted to the four corners of the affidavit);

   (d) Spinelli v. United States, 393 U.S. 410 (1969) (a factually sufficient basis for probable cause judgement must appear within the affidavit of complaint. If hearsay is relied upon, the basis for the credibility of the informant and his information must appear on the affidavit);

   (e) Jaben v. United States, 381 U.S. 214, 224, 85 S.Ct. 1365, 1370, 14 L.Ed.2d 345 (1965) (As the Supreme Court has so aptly put it, the affidavit must provide the affiant's answer to the Magistrate's hypothetical question "What makes you think that the defendant committed the offense charged "?); and

   (f) Gerstein v. Pugh, 420 U.S. 103, 120–121, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975) (The affidavit should provide specific, reliable information from which a magistrate may make an independent judgement that there is probable cause that (1) an offense has been committed; and (2) that the person to be arrested has committed it).

7. That on August 22, 1994, at approximately 8:55 A.M., the Petitioner met with two members of the Henderson County Public Defender's Office (Mr. Jack Hinson and Mr. Frank Stanfill), to discuss the details surrounding the death of Billie Hall. After a brief discussion with the two public defenders, HCSD investigator, Brent Booth came back into where this discussion was taking place and informed the attorneys that Magistrate, Mr. J.B. Johnson was ready to begin with the court proceedings and that we should go into the courtroom.

B. ILLEGAL WAIVER AND FRAUDULENT TRANSCRIPTS OF PRELIMINARY HEARING

1.  That shortly after the brief discussion with both public defenders, a preliminary hearing was held at approximately 9:00 A.M. on the first arrest warrant charging the Petitioner with the first degree murder of Billie Hall.

2.  That after attorney Mr. Hinson entered a plea of not guilty for the Petitioner, **District Attorney General, Jerry Woodall** made the following statement:

    (a) "J.W. - Your honor may I address to court. The defense council, the defense council stop participlying furthercist of the Preliminary Hearing, **the defendant waived kidnapping case to the Grand Jury for their consideration.** We want to proceed on the probably cause (inaudible)." [Sic]. (<u>See</u>: T.R., V. <u>I</u>, P. <u>50</u> ).

3.  **That the Petitioner never made an agreement with the public defenders or the prosecutor to waive the right to a preliminary hearing on the kidnapping charge.** That in order to prove this fact all you need to do is look at what was discussed at the end of the preliminary hearing to determine what was fraudulently omitted from the Petitioner's preliminary hearing transcript for his defense. (<u>See</u> e.g.: T.R. <u>I</u> , P. <u>58</u> ) which provides in pertinent part:

    (a) "P.D. - Your honor, we have been called to sign this waiver, (court room noise)."

    (b) "P.D. - Your honor, if the court pleases we would like to sign a waiver on the kidnapping. If **the court please** I am going ahead **at this point and waive that on his behalf.** Your honor, . . . "

4.  That by looking at the August 23, 1994 Jackson Sun news article that accurately portrays what occurred during the aforementioned discussion on the alleged waiver of a preliminary hearing on the kidnapping charge, it should be easy for anyone to be able to determine what had actually occurred to understand why the Public Defender had to change his position from: "[w]e would like to sign a waiver" to "[I] am going to ahead at this point and waive that on his behalf." (<u>See</u>: T.R., V. <u>I</u> P. <u>60</u>; Jackson Sun news article captioned: "Man accused of killing wife has hearing"). Which states in pertinent part:

    (a) "Hall appeared belligerent and agitated during the 45 minute hearing Monday. **At one point he refused to sign a form to waive his kidnapping charge to the grand jury.** "I'm not signing nothing." Hall said to his attorney, Jack Hinson of the district public defender's office."

5.  That the above listed statements referring to the Petitioner's preliminary hearing transcript were produced by Ms. Tonya Shavers from the Office Of The 26th Judicial District Attorney General. **The omitted testimony was intended to defraud the Petitioner from having an accurate record of this proceeding depicting the deprivation of his civil rights to a preliminary hearing on the kidnapping charge.**

    In short, the State defrauded the Petitioner of an accurate record of this proceeding to deprive him of the opportunity to be able to demonstrate legally viable appellate issues. The State acted in furtherance of said fraud by obtaining an indictment on the kidnapping charge knowing that the Petitioner never consented to a waiver of his constitutional right to a preliminary hearing. They also forged the transcript to conceal their actions in violation of T.C.A. § 39-14-114 (Forgery); T.C.A. § 39-16-402 (Official Misconduct); T.C.A. § 39-16-403 (2); (Official Oppression); Tenn. R. Crim. P., Rules 5 (d) (7), & (e) (Initial Appearance Before Magistrate); Tn. Const., Article 1, § 8 (No man to be disturbed but by law); Article 1, § 9 (Right of accused in criminal prosecution); Article 1, 14 (Prerequisites to criminal charge); Article 1, § 25 (Martial law - Punishment); Article XI, § 8 (General laws only to be passed); and United States Const., Article IV, § § 1, & 2 (1); and Amendments 4, 5, 6, 8, & 14.

C. INCONSISTENT STATEMENTS REGARDING MIRANDA WARNINGS AND SELF INCRIMINATION

1.  That in addition to failing to challenge the validity of the arrest warrants, the Public Defenders neglected to impeach the States only witness, TBI agent Brian Byrd. This witness had contradicted himself at the August 22, 1994 preliminary hearing on the first degree murder warrant during direct and cross-examination about the Petitioner's rights being read to him. (See: The Petitioner's preliminary hearing transcript which provides in pertinent part:

(a) DIRECT EXAMINATION OF BYRD BY PROSECUTOR JERRY WOODALL "VERBATIM"

    J.W.  Alright now. After he made that statement to you, I believe he did not know she was dead until the day before ?

    B.B.  That is the statement he made to us.

    J.W.  I did it. I did it. Now after that what did you do ?

    B.B.  **We discussed and read the rights waiver,** when through the sheet we got down to the part where he would sign the right waiver and give us a statement. He stated he would not an statement without counsel being present, **so we terminated the interview at that point.**

    J.W.  Alright so, after he allowed you to complete the memorandi, information, memoranda information he then ask attorney, and **you terminated the interview.** [Sic].

    B.B.  **Correct.**

    J.W.  Is that correct?

    B.B.  Correct.

    J.W.  What day was this?

    B.B.  This would have been on the 3rd, the day before the election.

    (See: T.R., V. __I__ , P. __54__ ).

(b) CROSS-EXAMINATION OF BYRD BY PUBLIC DEFENDER J. HINSON "VERBATIM"

    P.D.  O.K. And of today date, three, two and a half, three weeks later, that **individual has never been read his rights.**

    B.B.  **No, sir.**

    P.D.   Scrapes on the hand, you indicated that there was scrapes or scratches on the knuckles, fingers and hand. Was this on both hands?

    B.B.  Ah. To best of my knowledge it was.

    P.D.   Is there anything you have done in the past weeks that relates to the scrapes on the top of the hand that preserves that?

    B.B.  No.

    P.D.  You took no pictures of that?

    B.B.  To my knowledge, I don't think we did. No sir.

    P.D.  **Did you ask the defendant about that there** ?

    B.B.  **Yes, sir.**

    (See: T.R., V. __I__ , P. __58__ ).

- 4 -

2.   That the Petitioner contends that TBI agent, Brian Byrd committed
Perjury as defined by T.C.A. § 39-16-703 (a) (2) (Aggravated perjury),
when he made inconsistent statements as defined by T.C.A. § 39-16-707
(Inconsistent statements) surrounding the application of Miranda
warnings and cutting off custodial interrogation in order to admit an
alleged voluntary spontaneous statement. The Officers of the Court
allowed this self-impeached hearsay statement to be introduced into
evidence without a proper  objection from the ineffective defense
counsel in order to secre the bind-over commitment of the Petitioner
to await the action of the grand jury. This inexcusable dereliction
of duty ultimately violated the Petitioner's Constitutional Rights to
a full & fair preliminary hearing and prejudiced him throughout all of
the subsequent proceedings. See e.g.; Tenn. case law describing the
law and the rights to a preliminary hearing & potential opportunities
to be gained therefrom:

   (a) State v. Waugh, 564 S.W.2d 654, 659 (Tn. 1978) (Except for
   documentary proof of ownership and written reports of expert
   witnesses, probable cause to bind-over defendant to Grand Jury
   **must** be based upon legally competent evidence which would be
   admissible at trial; . . . But, if only evidence which would be
   inadmissible at trial is introduced at preliminary hearing,
   that hearing will fail in its function of screening out unfounded
   charges and will violate defendant's right to a preliminary
   hearing. T.C.A.  §  40-402, 40-604, 40-1116, 40-1117, 40-1131);

   (b) State v. McKeldin, 516 S.W.2d 85, 86 (Tn. 1974) (Every criminal
   lawyer "worth his salt" knows the overriding importance and the
   manifest advantages of a preliminary hearing. In fact the failure
   to exploit this golden opportunity to observe the manner, demeanor
   and appearance of the witnesses for the prosecution, to learn the
   precise details of the prosecution's case, and to engage in that
   event sometimes known as the "fishing expedition", would be an
   inexcusable dereliction of duty, in the majority of cases); and

   (c) Noland v. State, 568 S.W.2d 837 (Tn. Crim. App. 1978) (whether
   denial of preliminary hearing, including the denial of at
   least the prima facie portion of the case necessary to establish
   probable cause upon a preliminary hearing amounted to reversible
   error).

3.   That the Petitioner contends the Court, the District Attorney Gen.,
and the Public Defenders committed a dereliction of duty by failing
to act in a competent manner upon this egregious prejudicial error of
the Petitioner's right to be free from self-incrimination. Further,
this alleged voluntary spontaneous statement was printed in the local
newspapers and was probably broadcast by (WBBJ) television news
channel (7) or the local  radio stations in the surrounding area
before the grand jury proceedings had begun. See e.g.: T.R., V. _T_ ,
P. _60_ ; 8/23/94 Jackson Sun news article demonstrating the violation
of the Petitioner's right to be free from self-incrimination before
the grand jury). The Jackson Sun article provides in-pertinent part:

   (a) "Brian Byrd, a special agent with the Tennessee Bureau of
   Investigation, said he and two other investigators traveled Aug. 3
   to Belton, Texas - where Hall fled after the incident.

      When they questioned  Hall Aug. 3 the defendant "was very
   emotional. He began to cry and he said. 'I **did** it. I **did** it. I'm
   **so sorry. I'll tell you everything you need to know,**'" agent Byrd
   said.

      After reading Hall his rights, however, the defendant would
   not give a statement about his wife's death, said Byrd, who was
   the only witness called Monday by District Attorney General Jerry
   Woodall."

- 5 -

4. That the Petitioner finds that his fundamental right to a full and fair preliminary hearing on the charge of first degree murder warrant were violated by the Dist. Atty. Gen. when he failed to correct false testimony about the Petitioner's Miranda warnings and subsequent self-incrimination as discussed in supra I. (C) (1) (a), & (b). See e.g.;

(a) State v. Spurlock, 874 S.W.2d 602, 617-18 (Tn. Cr. App. 1993) (When state witness answers questions on either direct or cross-examination falsely, District Attorney General, or his or her assistant, has an affirmative duty to correct false testimony; whether District Attorney General solicited false testimony is irrelevant. U.S.C.A. Const. Amend. 14; Tennessee Constitution, Article 1, § 8, 9);

(b) State v. Spurlock, supra at 618 (If prosecution fails to correct false testimony of witness, defendant is denied due process of law as guaranteed by United States and Tennessee Constitutions. U.S.C.A. Const. Amend. 14; Tenn. Const. Art. 1, §§ 8,9); and

(c) United States v. Mendez-Ortiz, 810 F.2d 76, 78-79 (6th Cir. 1986) (The plain error doctrine is to be used in only "exceptional circumstances" and only where the error is so plain that "the trial judge & the prosecutor were derelict in countenancing it.")

D. THE DEPRIVATION OF THE PETITIONER'S CONSTITUTIONAL RIGHT TO REASONABLE BAIL

1. That in addition to finding that the Officers of the Court failed to provide the Petitioner with a full and fair preliminary hearing on the two arrest warrants, the Magistrate knowingly committed a fundamental prejudicial error by depriving the Petitioner of his Constitutional Right to bond. See Petitioner's preliminary hearing transcript, which provides in pertinent part:

(a) "P.D. - ... Your honor, I believe Mr. Hall is being held without bond and your honor I would respectively ask this court to set a bond for Mr. Hall he is entitled to a bond. He is a resident of Henderson, Lexington, Henderson County, Tennessee your honor he has been a resident how long ? Two years he has been a resident of Lexington and at any of that time he certainly has the judicial right for a bond to be set, with extra on the settlement." (See T.R., V. I , P. 58 ). [Sic].

(b) "J.W. - Your honor, the state would oppose bond being set, this is a charge of Murder in the First Degree which is a potential capitol in the State of Tennessee. Now kidnapping Mr Blake [sic] which obviously is very adamant, is a very serious case too. I would feel like based upon those factors alone the bond should, there should be no bond set, I want to make that point." (See T.R. V. I , P. 58 ). [Sic].

(c) "J.J. - The court going to hold action of the Grand Jury. Court going hold to Mr. Hall without a bond." (See T.R., V. I , P. 59 ). [Sic].

2. That by depriving the Petitioner of the his constitutional right to bail, the Court knowingly violated the Petitioner's Fifth Amendment Due Process Rights; Eighth Amendment Right to reasonable bail; and Fourteenth Amendment Right to Equal Protection. U.S.C.A. Const. Art. IV, § 2 (1); and Amend. 5, 8, & 14; and Tennessee Constitution Article 1, § 8, 16 & 25; and Article XI, § 2, & 8.

3. That by denying the Petitioner reasonable bail, the State gained an illegal tactical advantage to convict him of first degree murder and ultimately destroyed the Petitioner's defense theory of the lesser included offenses by bribing a State Prisoner (Mr. Chris Dutton) to testify against him at trial in violation of T.C.A. § 39-16-107 or Title 18 U.S.C.A. § 201 (c) (2) (Bribery). (See T.E., V. II , P. 222 thru 236 ).

- 6 -

4. That according to the District Attorney General, Jerry Woodall, the only compensation witness Chris Dutton was to receive in exchange for his truthful testimony in the Petitioner's trial, was a promise by the District Attorney General  to speak up for Mr. Dutton at his upcoming parole hearing. Under cross-examination Mr. Dutton lied about knowing what the definition of an informant was. See e.g., the following excerpt from the petitioner's trial transcripts which provides in pertinent part:

(a) DIRECT EXAMINATION OF DUTTON BY JERRY WOODALL "VERBATIM"

WOODALL - "In exchange for your truthful testimony, did I make any promises to you ?"

DUTTON - "You told me as long as I testified truthfully that you would speak at my parole hearing when the time came."

(See T.E., V. II , P. 230 ).

(b) CROSS-EXAMINATION OF DUTTON BY JESSE FORD III "VERBATIM"

FORD - "Mr. Dutton, would it be a safe assumption that you would be classified as an informant in the prison system ?"

DUTTON - "I'm not sure of the definition of that, sir."

(See T.E., V. II , P. 232 ).

5. That before the Petitioner's trial, Chris Dutton wrote to the District Attorney General, in this letter, dated in March of 1996, Mr. Dutton tries to describe what he wants in exchange for his testimony against the Petitioner, since his original plea bargains had not been honored. He made the following statement on this matter which provides in pertinent part:

"If my contract plea bargains were honored, I would have already been up for parole. . . . I could be of great use within the prison system as a reliable informant."

6. That the jury was not told the full extent of Dutton's motivation to to testify against the Petitioner. The Petitioner contends that the underlying reason why Mr. Dutton wanted to make a deal to testify against the Petitioner was the fact that Mr. Dutton was facing an enhanced sentence by T.D.O.C. for the offenses of aggravated assault and escape. Thus, the State failed to reveal the real deal by withholding this information about the enhanced punishment from the defense and the jury. See e.g., T.E., V. II , P. 223 , which provides in pertinent part:

WOODALL - "Now I notice there was an escape charge in this from Hamblin County."

DUTTON - "Yes, sir." / See also e.g.;

(a) Taylor v. Reynolds, 914 S.W.2d 516 (Tn. App. 1995) (T.D.O.C. policy 502.05 IV. (c)  which authorizes T.D.O.C. to enhance offender's parole or release eligibility date for a conviction of any attempted or actual escape with the use or threat of physical violence); and

(b) State v. Spurlock, supra at 620 (Citing Campbell v. Reed, 594 F.2d 8 ["the jury's verdict might have been different had it known the full extent of Miller's motivation to testify against Campbell"]; State v. Hall, 329 S.E.2d at 863 [". . . [A] reasonable doubt might well have been created."]);

Moreover, in addition to failing to try to impeach or correct Mr. Dutton, the jury was not given instructions that one of the things that the jury could consider in determining the credibility of a witness when evaluating the weight of the testimony is the fact of whether or not the witness is a convicted felon. See Tennessee Pattern Instructions on convicts as witnesses.

- 7 -

7. That the District Attorney General, his assistant, and the two defense
attorneys (Jesse Ford & Clayton Mayo) failed to impeach or correct
this known false testimony by this zealous witness. The Officers of
the Court let this testimony go un-corrected because (1) the answer
suited the State; (2) to keep Mr. Dutton from having his
credibility questioned; and (3) to insure that any doubts the jury may
have about the petitioner's defense theory of lesser included offense
would be destroyed, in violation of both the Supreme Court Rules, Rule
8 DR 7-102 (a) (3), & (4); the Petitioner's Constitutional Rights,
U.S.C.A. Const. Amend. 14; and Tennessee Const. Article 1, § 8, & 9.

E. THE PETITIONER WAS SUBJECTED TO ILLEGAL SEARCH AND SEIZURE

1. That the Petitioner was subjected to an illegal search and seizure of
his personal property in which the items seized did not have any real
significant value toward proving the facts of any of the crimes that
the Petitioner was subsequently indicted for.

2. That the Petitioner contends that this illegally seized evidence was
collected and utilized for the primary purpose of discovering the
Petitioner's background to be utilized against the Petitioner in any
subsequent sentencing hearing conducted, in violation of the "fruits of
a poisonous tree doctrine."

3. That since the Petitioner's arrest warrants were illegal (due to the
lack of reliable and factually sufficient information supporting the
probable cause determination), then the search warrant that was issued
should also be considered illegal. This belief is based upon the fact
that the affiant (Brent Booth) had made a conclusionary allegation of
having the [probable cause] information on the search warrant without
actually providing the required information to support the reliability
or the credibility of the informant or his information on the original
arrest warrant. Therefore, affiant Booth's conclusionary allegation
"that he has [probable cause for believing and does believe]" is only a
conclusionary allegation and the search warrant should be void (among
other reasons), in violation of T.C.A. § 40-6-101 et. seq. (Warrants-
etc.); Tenn. R. Crim. P., Rules 3 & 4; U.S.C.A. Const. Amend. 4, & 6;
and Tenn. Const. Article 1, § 8, & 9. See e.g.;

(a) Motion To Suppress (T.R., V. I , P. 106 thru 114 ); and

(b) Wong Sung v. United States, 371 U.S. 471, 487-88 (1963) (Fruits
of a poisonous tree doctrine; "We think it is clear that the
narcotics were 'come at by the exploitation of that illegality'
and hence they may not be used against Toy").

4. That it is due to the ineffective assistance of counsel at a critical
stage, that the State was able to exploit the fruits of all of this
illegally seized or tainted evidence and advance their investigation /
case against the Petitioner.

5. That after attorneys Jack Hinson and Frank Stanfill waived and / or
allowed the State to violate the Petitioner's Rights, they withdrew
from the Petitioner's case. (See T.R., V. I , P. 63 ; ORDER ON
MOTION TO WITHDRAW AS COUNSEL 2/21/95).

F. MEMORANDUM OF LAW SUPPORTING THE PETITIONER'S ALLEGATION OF INEFFECTIVE
ASSISTANCE OF COUNSEL AT A CRITICAL STAGE AUG. 22, 1994 PRELIMINARY HEARING

The purpose of the first interview with the defendant is fourfold. See
McBee v. State, 655 S.W.2d 191 (Tn. Crim. App. 1983) (Counsel should confer with
the client without delay and as often as necessary to elicit matters of defense
or to ascertain that potential defenses are unavailable; Further, counsel should
promptly advise the client of his rights and take all actions necessary to
preserve them). First defense counsel must learn all that the defendant knows
about the case, and the names and addresses of any potential witnesses. The
defendant must tell the defense counsel the truth if the defendant is made to
understand that defense counsel's duty is to exert all his efforts to insure the
defendant receives a fair trial, and that only lawfully obtained evidence is
introduced at trial. Even if defendant admits his guilt to defense counsel, it
is still defense counsel's duty to use his best efforts to defend the case.

Second, defense counsel should, even at this early stage, begin to gather information with which to attack the prosecution's case through motions to suppress evidence, attacks upon the admissibility of statements or confessions made by the defendant, and attacks upon the admissibility of any identifications of the defendant. Defense counsel should be searching for a possible violation of the defendant's constitutional rights in everything that the police did or didn't do. For example; Was the defendant illegally arrested ? If the defendant was illegally arrested, then any statements which may have been made to the police may be the product of an exploitation of the illegal arrest and may therefore be inadmissible at trial. In addition, the illegal arrest may "taint" evidence obtained later in the investigation.

Too many defense counsel wait for pretrial discovery before getting their investigation started on the case. Early investigation will yield far more satisfactory results for the defense. In short, more defense investigative effort should be expended as soon as counsel is retained or the public defender is assigned. See e.g. McBee v. State, supra, (Counsel must conduct appropriate investigations into both the facts and the law to determine what matters of defense can be developed). CITED: See: Tenn. Criminal Practice And Procedure, Raybin Series, Vol. 9, § 5.35 Interviewing The Defendant.

In McKeldin v. State, 534 S.W.2d 131, 133 (Tn. 1975) the Court of Criminal Appeals held; Defendant's representation by a nonlawyer at his preliminary hearing did not constitute prejudice per se, because the representation by a non-lawyer at the preliminary hearing was harmless error beyond a reasonable doubt. The following is an excerpt from the trial court judges order in this opinion, which provides in pertinent part:

"From the trial judge's 'Memorandum and Order,' we specifically note that he compared the facts brought out in the remand hearing with the transcript of the trial. He stated that the 'record nowhere indicates or suggests that the trial result would have been any different had the defendant had competent counsel at the preliminary hearing.' Among other things, he found there were no 'fatal weaknesses in the State's case, and none which could have been exposed at the preliminary hearing'; that 'there was probable cause for the defendant to be bound over to the grand jury'; that 'the magistrate's determination of bond did not prejudice the defendant at his subsequent trial'; that 'the defendant waived no rights at the preliminary hearing'; that the defendant 'did not testify, and gave no in-court confessions or admissions against interest which were subsequently used against him'; that 'there were no rights which might have been asserted (i.e., early psychiatric examination, controversion in search warrant, etc.) which were relevant to his case and / or which he was deemed to have waived by failure to assert them at the preliminary hearing'; that 'there were no witnesses at the preliminary hearing who did not appear, or was not available at trial.'"

## H. PREJUDICE SUFFERED BY THE PETITIONER UTILIZING MCKELDIN SUPRA CRITERIA

1. That there was not legally competent evidence submitted by the State at the Petitioner's August 22, 1994 preliminary hearing to bind him over, and the Officers of the Court committed fundamental error when they utilized his alleged statement as their prima facie evidence to determine probable cause, in violation of the usual rules of criminal procedure and evidence, as shown by Supra facts I. (A), (B), & (C).

2. That the Petitioner was subjected to self-incrimination before the grand jury had convened and this illegally obtained evidence was printed or even possibly broadcast throughout the surrounding communities, as shown by supra fact I. (C) (3).

3. That attorney, Jack Hinson improperly waived the Petitioner's constitutional rights to a preliminary hearing on the kidnapping warrant, as shown by supra fact I (B) (3).

4. That the preliminary hearing for the kidnapping warrant could have led to the important discovery materials of (1) the witness' demeanor towards testifying for the Petitioner; or (2) a description of the defendant's mental condition shortly after the alleged homicide. (See T.R., V. I , P. 5 , Indictment; and P. 113 ; Clinton E. Smith).

- 9 -

5. There was not an early psychiatric examination conducted for the defense, even though the Petitioner was put on psychiatric medication shortly after the August 22, 1994 preliminary hearing. See e.g., T.E., V. III , P. 332 to 233 , which provides the following:

DIRECT EXAMINATION OF DR. ZAGER BY CLAY MAYO ABOUT PSYCHIATRIC EXAM

Q. "Dr. Zager, when did you interview Mr. Hall" ?

A. "I first saw Mr. Hall in November of 1995. That was November 18th. It was approximately a year later I saw him again on November 1st of 1996, and I most recently interviewed him on January 3rd of this year."

Q. "And have you had the opportunity to review any records regarding Jon Hall" ?

A. "Yes. Not only did I have my own interview and psychological testing that I completed, in addition I reviewed records from the Middle Tennessee Mental Health Institute, forensic services division, where Mr. Hall was for approximately a month. I also had an opportunity to review records from the Riverbend Institution, mental health records. I had the opportunity to review reports of interviews that were conducted with people who knew Mr. Hall."

6. That according to the Petitioner's T.D.O.C. medical records, (form # CR-3355), the Petitioner was placed on an anti-depressant drug called imipramine for depression on September 24, 1994.

7. That it wasn't until after the Petitioner had been placed on the medication for depression, that he was admitted to Middle Tennessee Mental Health Institute, forensic division for the (30) day Court Ordered Psychiatric evaluation on February 23, 1995. See e.g, March 28, 1995 letter to the Honorable Whit S. Lafon, from M.T.M.H.I. Mr. Larry Southard (T.R., V. I , P. 19 and 20 ).

8. That due to the lengthy delay of the Petitioner's trial, the testimony of the only adult eyewitness (Mr. Herman McKinney) was irretrievably lost due to the failure of counsel to investigate or take a deposition of said witness before he died. (See e.g., T.R., V. II , P. 192 ).

9. That due to the lengthy delay of the Petitioner's trial, the testimony of the Petioner's brother, Jeff Hall, was irretrievably lost due to the failure of counsel to investigate or take a deposition of said witness before he died on July 4, 1995. (See e.g. T.E., V., III , P. 313 to 329 ; offer of proof of missing witness).

10. That the (3) three minor eyewitnesses memory was irretrievably lost or compromised due to their tender age and the passage of time. Thus, it is due to the failure of both the State and the court appointed defense counsel to put on this proof at the preliminary hearing, that the Petitioner was unjustly prejudiced from having this testimony preserved. This lost testimony would have been beneficial at trial to determine the validity of their trial testimony to determine whether or not their memory was compromised or the manifestation of ideas stemming from the passions and prejudices of outside influences. See e.g.; the following excerpts from the Petitioner's transcript, which provide in pertinent part:

(a) (8) YEAR OLD STEPHANIE HALL / ONE QUESTION TO QUALIFY AS A WITNESS

THE COURT: "What will happen if you don't tell the truth" ?

THE WITNESS: "I'll get a whippin'."

THE COURT: "You'll get a whippin'. All right, I believe she's qualified General.

(See T.E., V. III , P. 239 );

- 10 -

(b) <u>STEPHANIE HALL ON RECROSS-EXAMINATION BY FORD</u>

Q. "And have you talked to anybody about coming to court" ?

A. "Yes, sir."

Q. "Who did you talk to" ?

A. "I talked to the lady downstairs, my grandma and my sisters."

Q. "Have you talked to the police, these police right here," (indicating) ? "Is that who you call the police" ?

A. "Uh-huh."

Q. "How many times did you talk to them" ?

A. "Uh ..."

Q. "More than once" ?

A. "Yes, sir."

Q. "You talked to your grandmother about coming to court" ?

A. "Yes, sir."

Q. " More than once" ?

A. "Yes, sir."

Q. "You talk to your sister about it" ?

A. "Yes, Sir."

Q. "And you really didn't remember alot about what happened because you were six years old, and you just really know what somebody else told you about it, don't you" ?

A. "Yes, sir."

(<u>See</u> T.E. V. <u>III</u> , P. <u>251</u> , to <u>252</u> ); and

11. That another minor State eyewitness, Jennifer Lambert, (11 yrs. old) answered these same two questions asked to Stephanie as shown in supra fact I. (H) (10) (a), & (b) in the same manner. Although at first Jennifer denied talking to anyone else before court, and then after being coached, she finally answered these same questions in the same manner. (<u>See</u> T.E., V. <u>II</u>, P. <u>275</u> - <u>276</u> , "I'll get a spanking."; and P. <u>281</u> - <u>282</u> , Talked to "Mr. Woodall, & Police.").

12. That when it came to basic questions as to whether the Petitioner had (1) taken care of their basic needs; (2) was concerned about their little sister's health; and (3) whether the Petitioner had taken them anywhere while their mother was at work, the children basically denied having any knowledge of these simple facts. <u>See</u> e.g., the Petitioner's transcript which provides in-pertinent part:

(a) <u>STEPHANIE HALL ON CROSS-EXAMINATION BY MR. FORD</u>

Q. "Did Jon ever fix any meals for you'all or take you to McDonald's and get some food or things of that nature" ?

A. "I don't remember." . . .

Q. "Was Jon, or your dad, was he concerned about your younger sister and about her health" ?

A. "I don't remember."

(<u>See</u> T.E., V. <u>II</u> , P. <u>248</u> );

- 11 -

(b) <u>(10) YEAR OLD  CINDY LAMBERT UNDER CROSS-EXAMINATION  BY MR. FORD</u>

Q. "Okay. When your mother would work or go to school, would Jon take care of you and your sisters" ?

A. "No."

Q. "Never did. Never fixed any meals or anything of that nature" ?

A. "No."

Q. "Did he ever take you all anyplace when your mother worked" ?

A. "Not that I know of."

(<u>See</u> T.E., V. <u>II</u>, P. <u>266</u> ); and

(c) <u>(11) YEAR OLD JENNIFER LAMBERT UNDER CROSS-EXAMINATION BY MR. FORD</u>

Q. "Did Jon take you and the other girls down to Beech Lake one time" ?

A. "I don't remember." ...

Q. "Did he ever make you meals" ?

A. "I don't remember."

Q. "Don't remember that. Did he work" ?

A. "I don't know."

Q. "Have you talked to anybody about coming to court today and testifying" ?

A. "No, sir."

Q. "You haven't talked to anybody" ?

A. "I can't remember."

Q. "Take your time. Who did you talk to" ?

A. "Mr. Woodall."

Q. "Anybody else" ?

A. "Police."

(<u>See</u> T.E., V. <u>II</u>, P. <u>282</u> ).

13. That by comparing different parts of the Petitioner's transcripts, it should become clear, that the children were affected by outside influences to lie about whether the Petitioner had ever acted in the capacity of a father, or the children do not have a sound memory. To demonstrate that the children do not have a sound memory, or were the victims to outside influences, the Petitioner will show the following:

(a) <u>RANDY HELMS ON DIRECT EXAMINATION BY MR. MAYO DURING GUILT PHASE</u>

Q. "Mr. Helms, how do you know Mr. Hall" ?

A. "He worked for me at one time." ...

Q. "Mr. Helms when was it he worked for you" ?

A. "It was about in '93 through probably the middle part of 94'."

(<u>See</u> T.E., V. <u>III</u>, P. <u>344</u> );

- 12 -

(b) <u>RANDY HELMS ON DIRECT EXAMINATION BY MR. FORD / SENTENCING PHASE</u>

Q. "Did you ever observe Jon Hall with his children, with the four girls."

A. "Yes, sir."

Q. "And when or where would you observe them" ?

A. "Three or four different times when he was keeping the children like on Saturday, he brought them with him to work, and he asked me because he knew that wasn't in our policy, but he brought the kids with him when he came in to work on Saturdays, and a couple of them would stay with him where he was working, and maybe one or two stayed in the van and read or played with toys or whatever. But two or three different times when he was there he had all four of the kids with him." . . .

(<u>See</u> T.E., V. <u>IV</u>, P. <u>412</u> to <u>413</u> ); and

(c) <u>DR. JOE MOUNT ON DIRECT-EXAMINATION BY MR. MAYO</u>

Q. "Did you discuss with Mr. Hall his family, in particular his children" ?

A. "Yes, sir."

Q. "Did he express any feelings for them in your opinion" ?

A. "Yes, sir."

Q. "And in your opinion did he seem sincere about those feelings"?

A. "Yes, sir."

Q. "What were those feelings" ?

A. "Extremely concerned about his children, not being able to see them. In my opinion I think he cared a great deal about his children, just based on our interviews."

Q. "Did you talk to him about any of his children in particular" ?

A. "There was -- One that comes to mind is one that was handicapped. I'm not sure of the diagnosis that the child has, but I vaguely remember his concern about that child."

(<u>See</u> T.E., V. <u>IV</u>, P. <u>409 - 410</u> ).

14. That other examples of the Petitioner's actions that contradict the childrens' testimony demonstrated above at I (H) (12) (a), (b), & (c), can be shown through: (1) the testimony of Debbie Davis (<u>See</u> e.g.: T.E., V. <u>IV</u>, P. <u>423</u> to <u>425</u> ); and (2) the testimony of Carol Alexander (<u>See</u> T.E., V. <u>IV</u>, P. <u>432</u> to <u>433</u> ).

15. That when the Supreme Court of Tennessee addressed the Petitioner's mitigation in their decision on the sufficiency of the (i) (5) aggravating circumstance, the Court noted that the jury could have reasonably found that the Petitioner was a good worker, employee, and a caring, and nurturing father, which obviously contradicts all the childrens testimony on this matter. (<u>See</u> e.g., <u>State v. Jon Hall</u>, 8 S.W.3d 593 (Tn. 1999) ).

16. That based upon the foregoing facts demonstrating the children's dim memory about basic facts, the Petitioner contends that the State's minor eyewitnesses were not in fact competent witnesses, because they did not understand the nature of their oath, in violation of T.C.A. § 24-1-101 (Competency of witness); T.C.A. § 40-14-101 (Speedy trial – right to be heard); U.S.C.A. Title 18 § 3161 (c) (1); U.S.C.A. Title 6, § 222 (Dimming of memory); U.S.C.A. Const. Art. IV, § 2 (1), and Amend. 5, 6, & 14; Tenn. Const. Art. 1, § 8, 9, and Art. XI, 2 & 8 (<u>See</u> T.R., V. <u>I</u>, P. <u>145</u>, § 10. Motion For Fair & Speedy Trial).

17. That the Petitioner was prejudiced by the Magistrate's failure to set bond. By looking back at supra I (D), (1) (b), it is clear that the District Attorney General encouraged the Magistrate to hold the Petitioner without bond. This illegal civil in rem forfeiture had eventually provided the State with an illegal tactical advantage over the Petitioner, by giving the prosecutor the ability to call a prison informant and the opportunity to improperly influence young and impressionable minor witnesses to gain a wrongful conviction.

18. That had the Petitioner been provided with the effective assistance of counsel at a critical stage and assured all the safeguards that are provided by the Bill of Rights, the Petitioner would not have been unlawfully convicted of first degree murder and sentenced to death.

## II. JUDICIAL FRAUD WITH INTENT TO INJURE / MARITIME - ADMIRALTY LAW APPLIED

### A. INTRODUCTION / MOTION TO DISMISS - BASED ON NEWLY DISCOVERED EVIDENCE

1. That after the Petitioner was rushed through the 8/22/94 preliminary hearing by counsel, the Petitioner began studying the law for obvious reasons shown above and found that the Court was not providing the constitutional guarantees provided by the Bill of Rights.

2. That in an effort to try to rectify & prevent this official oppression of the Petitioner's constitutional rights, he submitted his own FRCP Rule 12 (b) (1) - (7) pretrial motion filed in the Henderson County trial court on September 23, 1996. (See Motion To Dismiss / Based On Newly Discovered Evidence; T.R., V. II , P. 153 - 155 ).

3. That in spite of the Petitioner's claim in this properly filed Motion To Dismiss / Based On Newly Discovered Evidence and its supporting documents, all of the Officers of the Court acted in furtherance of this said scheme & artifice to defraud the Petitioner from exercising a variety of constitutional rights under the maritime or admiralty jurisdiction, by neglecting to remove the maritime flags of war from the courtroom or sign a contract to guarantee these rights at the Petitioner's trial, in violation of Title 18, U.S.C., § 1346 (scheme or artifice to defraud); and Tennessee Constitution, Article 1, § 25 Martial law - punishment). See IV., V. IV. , P. 435 ; addressing pretrial Motion To Dismiss / Based On Newly Discovered Evidence. NOTE: Part of this discussion has been fraudulently edited from the transcript to impair and impede appealability of this claim.

### B. THE TENNESSEE SUPREME COURT COULD NOT HAVE PROPERLY ADDRESSED THIS ISSUE

1. That since the Clerk of Courts has failed to provide a complete copy of this aforementioned motion and its supporting documents in the technical record the Tennessee Supreme Court could not have properly considered the Petitioner's claim.

2. That in order to rectify the Clerk of Court's negligence, a true and exact copy of this motion and supporting documents shall be made as exhibits for this post-conviction petition and include the following: (1) Motion To Dismiss / Based On Newly Discovered Evidence, 4 pages listed as [EXHIBIT A]; (2) Contract For The Guarantee Of Constitutional Rights Of Jon Hall Under U.C.C., Title 3, U.S.C., Sec. 501, 2 pages [EXHIBIT B]; (3) Sworn Affidavit Of Circuit Court Judge / Contract, U.C.C. Title 3, Sec. 501, 1 page [EXHIBIT C]; (4) A Sworn Affidavit Under The American Flag of Peace, 3 pages [EXHIBIT D]; and (5) Acknowledgement Of Law, 1 page [Exhibit E].

3. That in addition to filing the aforementioned motion and supporting documents, the Petitioner gave the Officers of the Court prior notice that he was not going to join with the court displaying the maritime flags of war and tried to discuss how did the Madison County Court acquire jurisdiction of this case without the Petitioner's Consent. When Amy Mays transcribed the Petitioner's transcripts, all of this discussion had been unlawfully edited out, in violation of T.C.A. § 39-14-403 (Forgery). (See e.g.; T.E., V. I , P. 7-8 , erroneous change of venue / due process violations discussion).

- 14 -

C. THE TENNESSEE SUPREME COURT OVERLOOKED THE FUNDAMENTAL DIFFERENCES IN THE FACTS AND LAW PRESENTED BY THE PETITIONER THAT WOULD ENTITLE HIM RELIEF

1. That according to the Supreme Court of Tennessee, they considered the Petitioner's claim addressing what he perceived to be a flag of war. In construing this claim, the court cited (5) pro se federal civil cases that originated from other states. None of these cases cited by the Court addressed collusive or nonjoinder of a proper party or any type of constitutional provision like Tenn. Const., Art. 1, § 25 (Martial law - punishment). See, State v. Hall, 8 S.W.3d 593, n.6 (Tn. 1999) (Citing 5 pro se federal cases that failed to address the Petitioner's claim that the Court had lost subject matter jurisdiction due to the collusive misjoinder).

2. That one of the main cases cited by the Tennessee Supreme Court in the Petitioner's opinion is McCann v. Greenway, 952 F.Supp. 647, 650 (W.D.Mo. 1997) (Reviewing history of the American flag). In that case the court did not find any Executive order bearing on the question of the fringe on the flag.

3. That since the Clerk of Courts failed to provide the appellate court with a complete copy of the Petitioner's Motion To Dismiss / Based On Newly Discovered Evidence and conveniently omitted page 2, the Supreme Court could not have considered the Petitioner's citation pursuant to the Executive Order on the fringe of the flag that the McCann Court couldn't find. The Petitioner states that this Executive Order was already cited in his Motion To Dismiss and that this citation can be found under "Army Regulations October 1979 Section 840."

4. That according to the Petitioner's research, there are other relevant indications that the fringe on the American flag denote a military flag under Title 4 U.S.C.A. § 1, n.1 (The flag / Notes to decisions) which provides:

> "Placing of fringe on the national flag, the dimensions of the flag, and the arrangement of the stars are matters of detail not controlled by statute, but within the discretion of the President as commander-in-chief of the army and navy. 1925, 34 Op. Atty. Gen. 483." See also: 10 U.S.C.A., § 4594 (Herald svc.).

5. That in McCann v. Greenway, supra at 650, the court claimed that this issue is without heraldic significance. According to the Petitioner's research there is a heraldic proclamation that subjects prisoners to war tribunals regardless of citizenship. See Title 10, U.S.C.A., § 906 (Proclamation No. 2561, July 2, 1942, 7 F.R. 5101, 56 Stat. 1964).

6. That another example demonstrating the Petitioner's claim that the Court is not following the mandates of the Constitution & is instead circumventing its oath of office through the law on contracts under the maritime flags of war, can be found under Title 22, U.S.C., § 454. See e.g.,

(a) Texas v. Johnson, 109 S.Ct. 2533, 2551 (1989) (The flag identifies United States merchant ships; Title 22, U.S.C., § 454; and [t]he laws of the Union protect our commerce wherever the flag of the country may float [Citation omitted]) and

(b) Law of the flag - A term referring to the law of the nation whose flag is flown by a particular seagoing vessel. Certain maritime matters are determined according to the law of the country whose flag the vessel flies. Cited: Ballentine's Law Dictionary, Legal Assistant Edition, by Jack G. Handler, copyright 1994.

7. That the Petitioner also claimed that the "Golden Eagle Insignia" that sits on top of the Court's flag was another indication of artifice or part of the scheme to defraud him of the constitutional guarantees provided by the Bill Of Rights, but the court didn't even address this artifice. See Title 18, U.S.C., § 715 (Golden Eagle Insignia).

- 15 -

D. HOW DOES THE PRACTICE OF CONTRACTING UNDER THE MARITIME FLAG OF WAR DENY
   THE PETITIONER FROM PROTECTING HIS CONSTITUTIONAL RIGHTS TO HIS PREJUDICE

1. That by utilizing the Maritime flags of war under the Wars Powers Act
   Title 50, U.S.C., § 5 with an Executive Order like the proclamation
   described under Title 10, U.S.C., § 906 (proclamation 2561), a Judge
   is able to circumvent his oath of office by way of contracting under
   the maritime / admiralty jurisdiction to deny equal protection of the
   law by creating an implied quasi contract. These contracts deprive the
   accused citizen of being able to exercise most of his constitutionally
   guaranteed rights under what is commonly called the "discretionary
   jurisdiction." See West Group, Federal Criminal Code and Rules 2000
   Ed., page 14, Order Of December 26, 1944, Justice Frankfurter, which
   provides in pertinent part:

        "If the Court is not to be swamped, as it has in the past
        and is to do its best work, it must exercise rigorously its
        discretionary jurisdiction."

2. That both the State and Federal Courts have an ancillary jurisdiction.
   See e.g.,

   (a) In Tennessee the ancillary jurisdiction is called the Courts'
       "Other Jurisdiction." Tenn. Const., Article VI., § 2, n. 5. Cited
       under T.C.A., Volume 1;

   (b) State ex. rel. Kain v. Hall, 65 Tenn. 3 (1873) (The "other
       jurisdiction" referred to is kind of a mythical entity, thus far
       not clearly identified by the courts); and

   (c) In Federal Courts the ancillary jurisdiction is referred to as
       the "Supplemental Jurisdiction." Title 28, U.S.C., § 1367.

3. That this illegal practice allows the court to apply civil procedures
   to what is actually a criminal prosecution and unjustly blurs the
   constitutional guarantees of the Bill of Rights. See e.g., Georgetown
   Law Journal April 1997, Vol. 85, No. 4, P. 782-820, fn. 53, & 205 (The
   Destabilization of the Criminal - Civil Distinction; [Applying Civil
   Remedies To Criminal Prosecutions]) (fn. 53. The traditional concept
   of civil sanctioning... Q. Who's getting compensation through hybrid
   procedures ?; & fn. 205. Civil forfeitures "the unique constitutional
   problems" presented by parallel civil / criminal proceedings; arguing
   that prosecuters:ors filing actions to gain tactical advantages).

4. That this illegal practice of maritime / admiralty law is intended to
   deprive and thwart a citizen of the United States or a resident of
   Tennessee from utilizing certain fundamental rights before they have
   been lawfully convicted of a crime. This type of conduct creates a
   bill of attainder, in order to expedite court procedures without
   regard to the individual's rights, in violation of Tenn. Const. Art.
   I, § 8, 9, 13, 16, & 25; Art. X, § 1; Art. XI, § 2, 8, & 16; U.S.C.A.
   Art. I, § 9 Cl. 3, & 10; U.S.C.A. Const. Art. IV, § 2 (1); U.S.C.A.
   Art. VI, § 3; and U.S.C.A., Const. Amend. 1, 4, 5, 6, 8, 9, & 14.

5. That through these contracts and applying civil and criminal hybrid
   actions, the Court is given unlimited judicial discretion and the
   accused is vulnerable to arbitrary and capricious rulings. See e.g.,

   (a) Judicial Discretion - Refers to a judge's right to use their own
       judgement so long as they follow the law and do not act
       arbitrarily;

   (b) Browning-Ferris Ind. v. Kelco Disposal, Inc., 109 S.Ct. 2909, 2915
       (1989) (Simply put, the primary focus of the 8th Amendment was the
       potential for governmental abuse of its "prosecutorial" power, not
       concern with the extent or purposes of civil damages); and

   (c) Compare e.g.; suppra, I (D), (1) - (7) for violation and the
       prejudice the Petitioner experienced. NOTE: See Hall v. Pollard,
       Case no. 95-1204 (W.D.E.D. Jackson Tenn. 1995) (Cruel and unusual
       punishment endured while being held without bond, inter alia).

6. That by declaring war on crime and drugs on the citizens of the United States of America and the residents of the different states at peacetime and using civil / criminal hybrid laws, the President and the Governor are violating the United States Const., Article 1, § 10; and Tenn. Const., Article 1, § 25.

7. That some examples of the potential constitutional rights violations under this illegal civil / criminal hybrid type of prosecutions under martial law are: [1] Shifting the burden of proof, in violation of U.S.C.A., Const. Article IV, § 2 (1), and U.S.C.A., Const. Amend. 5, 6, 8, & 14; In Re Winship, 397 U.S. 358, (1970); [2] Denial of speedy trial, in violation of U.S.C.A., Const. Article IV, § 2 (1), U.S.C.A., Const. Amend. 5, 6, 8, & 14; Barker v. Wingo, 407 U.S. 1027 (1972); [3] Excessive fines / bail in violation of U.S.C.A., Const. Article IV, § 2 (1), & U.S.C.A. Const. Amend. 5, 8, 9, & 14; Austin v. United States, 509 U.S. 602 (1993); and [4] Loss of the presumption of innocence by imposing sanctions before a conviction, in violation of U.S.C.A. Const. Art. IV, § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 8, 9, & 14, Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963).

E. THE TRIAL COURT FAILED TO PROPERLY JOIN THE PETITIONER TO THE COURT AND LOST JURISDICTION OVER THE PETITIONER'S CRIMINAL CASE

1. That without prior notice or consent of the Petitioner, the trial court conducted a pretrial hearing and granted a change of venue on September 16, 1996, while the Petitioner was being held prisoner in Nashville, Tennessee (RMSI) without bond. The Petitioner was unjustly prejudiced from being able to make an knowing and intelligent decision on how to proceed and defend against his indictment, in violation of Title 28 U.S.C. § 1359 (Parties collusively joined or made); Tn. Const., Art. 1, § 8, & 9; & Art. XI, § 8; U.S.C.A., Const. Amend. 5, 6, & 14. See e.g.:

(a) "THE DEFENDANT: Yes, sir. I'm not trying to disrupt the court, but I can't understand why we're holding this hearing in Madison County when I was charged in Lexington."; (T.E., V. _I_, P. _7_ to _8_ );

(b) "THE COURT: Well your lawyers asked that a venue be changed due to the fact of the publicity such as --";

(c) "THE DEFENDANT: Well not --" ["on my behalf"] [missing testimony];

(d) "THE COURT: Just a minute. Such as the thing as the statement that you made which was given much _[8_ more publicity up there, and so if you note your objection to the change of venue, I assume that's what you're doing, and asking your lawyers, and I'll overrule that motion." NOTE: Incomplete transcript on this discussion.

(e) See T.R., V. _II_, P. _153_, 9/16/96 Order granting change of venue;

(f) Kentucky v. Stincer, 107 S.Ct. 2658, 2667 (1987) (The court has assumed that, even in a situation where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against a charge);

(g) State v. Upchurch, 620 S.W.2d 540 (Tenn. Crim. App. 1980) (Trial Court improperly transferred situs of trial, over defendant's objections, from county in which crimes were committed to different county, despite the fact that members of petit jury consisted of residents of county in which crimes were committed);

(h) Weakley ex. rel. Usery v. Pearce, 52 Tenn. 401 (1871) (The correct practice is to hear the witnesses for and against the change of venue, in open court, or to cause their depositions to be taken as in other cases, and affidavits in opposition to special circumstances) Cited: T.C.A. § 20-4-203 (Application for change);

(i) State v. Brown, 64 S.W.2d 841 (Tn. 1933) (The right of the accused to object to locality of trial is personal privilege which he may waive, and thereby confer jurisdiction on the court);

- 17 -

    (j)  <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added) (There can be no effective waiver of a fundamental constitutional right unless there is "an intentional relinquishment or abandonment of a known right or privilege.") and

    (k)  <u>United States v. Teque</u>, 953 F.2d 1525, 1533-34 (11th Cir. 1992) (A lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued.... In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to plea to be entered, whether to waive jury trial and whether the client will testify).

2.   That an example showing that the attorneys were not keeping the Petitioner informed of the proceedings can be shown, because around the same date as the change of venue hearing was allegedly conducted, the Petitioner was still in Nashville, Tennessee preparing his own defense motion that he submitted to the Henderson County, Tennessee Court. Since defense counsel failed to notify him of the Court's order granting a change of Venue. <u>See</u> T.R., V. <u>II</u> , P. <u>155</u> Motion To Dismiss / Based On Newly Discovered Evidence, sworn and subscribed by Davidson County, Tennessee Notary Public, Howard Brandon on 9/17/96 NOTE: This motion and supporting exhibits have already been discussed in supra, II. (B) (2).

3.   That in spite of the Petitioner's pre-trial Motion To Dismiss and its supporting documents being submitted to all of the Officers of the Court, they did not try to protect the Petitioner's rights under the law of the flag, by removing the fringe and the gold eagle artifices from the Court's flag. <u>See</u> 4 U.S.C.A., § 1 (United States flag).

4.   That as a precaution to this matter, the Petitioner wore an American Flag of Peace (Red, White, & Blue w/o artifices) with the field of stars facing towards the right throughout the whole trial beginning on February 3-5, 1997, pursuant to the law of the flag to express his intent to contract under the American Flag of Peace, to protect his Constitutional Rights. <u>See</u> supra, II (C), (6) (b) (Law of the flag). <u>See</u> T.C.A., § 4-1-301 (Tenn. flag w/o indication of said artifices).

5.   That at all times throughout these judicial proceedings, the State had the Petitioner unlawfully imprisoned and forcibly detained of his liberty without bond [by the plaintiff / State & other law enforcement agencies in collusion with the State] until solely by the reason of the force and duress of imprisonment and threat of capital punishment, the Court executed this collusive quasi judicial contract to impair and impede the exercise of rights, in violation of FRCP Rule 8, & 19. <u>See</u> T.E., V. <u>I</u> , P. <u>117</u> , "Mr. Hall is wearing leg restraints ...."

6.   That based upon the fact that the Officers of the Court brought the Petitioner into its maritime / admiralty jurisdiction without the properly expressed consent, and started applying civil law procedures to the criminal prosecution of the aforementioned criminal warrants, the court lost jurisdiction over the subject matter of this criminal prosecution under FRCP Rule 12 (b) (1) & (7), for the failure to join the petitioner to a civil lawsuit. <u>See</u> e.g.; Title 28 U.S.C., § 1359 (Parties collusively joined or made).

7.   That since none of the pro se litigants cited by the Tenn. Sup. Ct. in their opinion that addressed the Petitioner's issue had shown the reviewing court how the court's sitting in an admiralty jurisdiction would limit the State Courts jurisdiction or how the maritime flag could have disadvantaged them, those litigants had failed to state a claim upon which relief could be granted. <u>See</u> McCann, supra at 649.

9.   That it is therefore the Petitioner's position, that by the court's proceeding in its admiralty / discretionary jurisdiction to save time so as not to be swamped, the court had violated the Petitioner's due process right to be present at this change of venue hearing, wherein the judge had abused his discretion by changing the venue in which ultimately denied him equal protection of the law in violation of his oath of office. T.C.A., § 17-1-104; 28 U.S.C.A., § 453 (Judge's oath).

10. That for the above stated reasons, the Petitioner contends that his defense attorneys were acting in collusion with the prosecution to unlawfully enjoin him to the Madison County Court exercising its ancillary jurisdiction to impair and impede the exercise of his constitutional rights. See T.E., V. I , P. 179 , Plea entered by by defense attorney Mr. Ford, even though the defendant advised the Court he was not going to join with the court or be sworn in. See T.E., V. I , P. 8 , "I'm not testifying, Your Honor." ["I'm not going to join with the court"] [missing from the record]. See e.g.:

(a) "THE DEFENDANT: Your Honor, I'll testify if you take down the flag of war or sign that judicial contract." (T.E., V. III , P. 348 );

(b) "THE DEFENDANT: Here is the motion I told you I wanted to testify you would remove the flags of war, and here is the " [incomplete transcript / fraud]. (See T.E., V. IV , P. 435 ); and

(c) State v. Moore, 49 S.E. 1015, 57 W.Va. 146 (Some cases hold that one accused of a felony must plead in person, and that plea of not guilty by counsel, whether in the absence or presence of accused is a nullity. Cited: C.J.S. Vol. 22, § 452.

11. That since the trial court has collusively brought the Petitioner into its admiralty jurisdiction under duress and fraudulently disguised its true identity under the maritime flag of war, the Petitioner contends that the court has lost jurisdiction of: (1) the situs of the offense, (2) the jurisdiction over the person; and (3) the subject matter, in violation of T.C.A., § 39-12-206 (Forfeiture of property) and 28 U.S.C.A., § 2514 (Forfeiture of fraudulent claims).

## F. DEPRIVATION OF RIGHTS UNDER THE COURT'S DISCRETIONARY JURISDICTION

1. That the court was utilizing its discretionary jurisdiction to deny fundamental rights on February 9, 1996, when the Petitioner went before the court to address whether he would be able to cross-examine witnesses or make arguments on his own behalf. The request to exercise this fundamental right was unconstitutionally denied and deprived him of the opportunity to exercise this fundamental right, in violation of Tenn. Const. Art. 1, § 8, 9, 11, 13, & 25; Art. XI, § 2, 8, & 16; U.S.C.A., Const. Art. I, X (1) & (3); Art. IV., § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 9, 10, & 14. See e.g.:

(a) "MR. EARLS: Your Honor, he asked to represent himself in the past." (See T.E., V. II , 189 ). NOTE: Parts of this discussion have been fraudulently edited to prevent a successful appeal;

(b) State v. Burkhart, 540 S.W.2d 365 (1976) (If the interest of justice so requires, trial judges, in an **exceptional circumstance,** may permit criminal defendant who is represented by counsel to participate in the trial, including cross-examination of witnesses and the argument of his own defense, but that **discretion** should be exercised sparingly and with caution and only after judicial determination that the defendant is not seeking to disrupt orderly trial procedure and that he has the intelligence, ability and general competence to participate in his own defense); and

(c) Tennessee Constitution, Article 1, § 9 (Rights of the accused in criminal prosecutions), provides in part:

"That in all criminal prosecutions, the accused hath the right to be heard by himself **"and"** his counsel, ... [emphasis added].

2. That when the Burkhart court construed T.C.A. § 40-2402 [now § 40-14-101], the court construed away this constitutional provision, and gave this provision a whole new meaning, by stating in pertinent part:

"In all criminal prosecutions the accused has the **right to testify as a witness** in his own behalf and to be represented by counsel."

- 19 -

3.   That in order for the Burkhart Court to reach its decision in that
case, the Court utilized United States v. Plattner, 330 F.2d 271, 276
(1964) to render their opinion and deny relief. In Plattner the court
decided upon the following:

> "The right to counsel and the right to defend pro se in
> criminal cases form a single, inseparable bundle of rights, two
> faces of the same coin. Thus we find the choice between the two
> sometimes discussed in terms of waiver of the right to counsel,
> and sometimes **in terms of election to have a lawyer "or" to
> proceed pro se.** Viewed in this light the problem is simplicity
> itself."

> ".... Accordingly, in all cases of this type, no matter how
> indigent or other the defendant may phrase his prayer for relief
> for action by  the court, it is incumbent upon the presiding
> judge, by recorded colloquy with the defendant, to explain to the
> defendant; **that he has a choice between defense by a lawyer and
> defense pro se; ....**" [Emphasis added].

4.   That the Court's interpretation of this statute should insult all
accused citizen's and jurist's intelligence, because **"and"** cannot be
construed as **"or"**. The Webster's dictionary can clear up this fact.

5.   That by utilizing the excerpt from the Plattner Court, the Burkhart,
Court ultimately decided to follow this erroneous **judge-made law** to
deprive criminal defendants of their **fundamental rights**, and had in
this manner unlawfully shifted the burden of proof on the defendant
to prove that there are **exceptional circumstances** that exist in order
to exercise this fundamental constitutional right to personally manage
and conduct his own defense. See e.g.:

(a) Exum v. Griffi's Newborn Co., 144 Tenn. 239, 230 S.W. 729 (1919)
(It is the duty of the Supreme Court, where a statute is
susceptible of two interpretations, one in harmony with, and the
other in violation of the constitutional provisions, to give it
that interpretation in harmony with the constitution; but such
principle does not authorize the court to give an act an
interpretation merely to bring it within the constitutional
limitation, for where an act is unambiguous and susceptible of
only one interpretation, it must be given that construction,
according to its plain meaning, whatever the consequences, when
tested by the constitution);

(b) Bouldin v. Lockhart, 69 Tenn. 195 (1878); Keith v. Funding Board,
127 Tenn. 441, 155 S.W. 142 (1913), overruled on other grounds;
Foster v. Roberts, 142 Tenn. 350, 219 S.W. 729 (1919) (No tribunal,
general or special, legislative, judicial, or ministerial, may act
in violation of the constitution. It is supreme and paramount, and
to its mandates all must yield obedience); Cited, T.C.A., Volume 1,
1997 Supp., pages 363-64, n. 1, (General notes to Tn. Const.);

(c) Memphis Publishing Co. v. Leech, 539 F. Supp. 405 (W.D. Tenn. 1982)
(**A fundamental right is** involved where it is  explicitly or
implicitly guaranteed by the Constitution);

(d) Hovey v. Elliot, 167 U.S.409, 17 S.Ct. 841, 42 L.Ed. 215 (1897)
(The "due process of law" clause found in  the  14th Amendment
signifies the right to be heard in one's own defense); and

(e) Mr. Chief Justice White, before he became Chief Justice, wrote an
opinion in the case of Hovey v. Elliot, supra, which pointed out
grave  constitutional questions raised by attempting to **punish**
parties by depriving them of the right to try their lawsuits or to
defend against lawsuits brought against  them by others. Cited:
West Group, Federal Criminal Code and Rules 2000 Ed., page 16,
Order Of February 28, 1966.  The Petitioner contends that these
rules are in violation of T.C.A., § 16-3-403 and 28 U.S.C.A., §
2072 (Rules not to affect substantive rights).

6. That the judge-made law in <u>Burkhart</u>, is void on the ground of "vague-ness" and violation of due process because the conduct prohibited or commanded is expressed in terms "so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application." Moreover, the <u>Burkhart</u> decision, from the standpoint of administration, by its indefiniteness in expression of **"exceptional circumstances,"** fosters arbitrariness and discrimination with its enforcement. <u>See</u> e.g.; <u>Grayned v. Rockford</u>, 408 U.S. 104, 33 L.Ed.2d 222, 92 S.Ct. 2294, which provides:

> "[i]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policeman, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers and discriminatory application."

7. That the judges of the State of Tennessee have known that the holding in <u>Burkhart</u> is prone to arbitrary, capricious application and is being utilized to thwart an accused's ability to defend against a criminal charge in whatever manner he may choose would be best on such matters as: (1) what motions to file; (2) what witnesses to call for the defense; (3) the conduct of direct or cross-examination of these witnesses; and (4) the type of argument to be presented. This arbitrary and capricious application of an ad hoc decision can be shown by how the judges have interpreted the meaning of **"exceptional circumstances."** This shows that the judge's true desire or intent is to allow the prosecutors to gain another unconstitutional tactical advantage through this civil / criminal hybrid practice in order to gain a conviction. <u>See</u> judicial discretion applied e.g.:

> <u>State v. Franklin</u>, 714 S.W.2d 252 (Tenn. 1986) (defendant requested and was permitted by the trial court to make a closing argument to the jury in order to sabotage his own defense so that he could get transferred from Marion, Illinois prison (where he was in fear for his life) to a Tennessee prison).

G. <u>DENIAL OF RIGHT TO BE HEARD / DEFEND, FRAUD, AND PREJUDICE SUSTAINED</u>

1. That the transcript does not correctly portray a verbatim account of the Petitioner's request to represent himself after the defense atty. had already collusively joined him to the court. The Petitioner made a request to be able to participate at trial without lead counsel. This denied him of this fundamental right again and forced him to accept the services of a sabotage attorney, contrary to <u>Farretta v. California</u>, 422 U.S. 806 (1975). (<u>See</u> T.E., V. <u>II</u>, P. <u>186 to 191</u>, Motion To Dismiss Mr. Ford from case / request to self-representation with elbow counsel). NOTE: Parts of this discussion have been fraudulently edited from the transcript to deprive and injure the Petitioner from arguing this issue on appeal.

2. That the denial of the right to be heard / defend in any manner the Petitioner chose, had prejudiced him. The court appointed counsel was ineffective because they had: (1) made a remarkably limited effort to cross-examine all the State's witnesses; (2) failed to try to rebut most of the States misleading evidence / testimony; and (3) the record is void or unclear on many basic facts needed to present a clear picture of the hardships and conditions that caused the Petitioner to experience a very confused state of mind, subjecting him to abnormal behavior.

3. That if the Petitioner had been able to exercise his constitutional right, he would have been able to create reasonable doubt by being more thorough in the cross-examination of the State's eye-witnesses in order to rebut the misleading circumstantial evidence. Further, the Petitioner could have shown how dim the State's minor eye-witnesses' memories had become after the excessive passage of time. Moreover, the Petitioner had a more intimate knowledge of a variety of different facts that counsel neglected to investigate or was unwilling to pursue. (<u>See</u> T.E., V., <u>III</u> P. <u>311</u>, Defense Rests / Petitioner's own objection, inter alia omitted from the transcript with the intent to defraud).

4.   That if the Petitioner had been afforded his fundamental right to
participate and make his own decisions binding on the court (with the
assistance of counsel to provide sound legal advice), the Petitioner
contends that he would not have been convicted of first-degree murder.
This assumption is based on the grounds of the following deficiencies:
(1) counsel's failure to protect various state and federal rights;
(2) counsel's failure to subject the State's case to any meaningful
adversarial testing; (3) counsel's failure to suppress illegally
obtained evidence; (4) the failure to try and obtain a bail; (5) the
failure to suppress Chris Dutton's testimony as the fruit of the
of exploitation of no bail;   and (6) counsel's failure to present
sufficient evidence in support of the Petitioner's defense theory, in
violation of Tennessee Constitution, Article 1, § 9; and U.S.C.A.,
Const. Amend. 6.

H. THE DEPRIVATION OF A FAIR AND SPEEDY TRIAL CAUSED BY THE MAGISTRATE

1.   That shortly after appointed counsel failed to protect all of the
Petitioner's rights at the August 22, 1994 preliminary hearing, both
attorneys withdrew on their own without giving the Petitioner prior
notice. According to records the Petitioner acquired from attorney,
George Googe, attorney Frank Stanfill, submitted an "Order On Motion
To Withdraw," (sent to the court on February 21, 1995). The order
claims that due to the fact, that a potential conflict between the
Law Offices of Tom Anderson and the 26th Judicial District, Frank
Stanfill, is; therefore, no longer employed with the Public Defender's
Office. It has been close to six years since this order was submitted
and to this day the Petitioner still does not know what this alleged
potential conflict was all about.

2.   That based upon information and belief, the Petitioner believes that
Mr. Stanfill had taken over Mr. Hinson's position in the Henderson Co.
Public Defender's Office, around the same time as the Petitioner's
preliminary hearing was held on August 22, 1994. It is also believed
that Mr. Stanfill was fresh out of law school at this time and had
no jury trial experience. The Petitioner contends, that it is the
Court's failure to provide him with more experienced counsel that has
caused the Petitioner's unreasonable prejudicial delays in obtaining
a fair and speedy trial. See e.g.:

     State v. Simon, 635 S.W.2d 498 (Tn.1982) (Trial judge should
     appoint more experienced counsel).

NOTE: Attorney Jack Hinson handled the litigation at the preliminary
hearing, but there are no records of his withdrawal.

3.   That also due to the trial judge's dereliction of duty to appoint
more experienced counsel, that the Petitioner was unnecessarily
prejudiced from receiving an early psychiatric evaluation. This type
of prejudicial delay unconstitutionally deprived the Petitioner from
receiving a fair and accurate diagnosis of his condition by an
impartial, forensic psychiatrist at this critical stage in order to
insure and enable the Petitioner to present a proper defense to be
submitted to the jury. See supra, I. (H), (5), (6) & (7), for a more
detailed account of when the Petitioner received the psychiatric
treatment and evaluation.

I. THE DEPRIVATION OF A FAIR AND SPEEDY TRIAL AFTER SPEEDY TRIAL REQUESTED

1.   That on August 1, 1996, the Petitioner filed his own Motion For Fair
And Speedy Trial On All Untried Indictments pursuant to T.C.A., §
40-14-101 (Speedy Trial - Right To Be Heard), but the Clerk of Courts
has conveniently neglected to place this motion in the technical
record. Therefore, this 1 page motion shall be attached to this motion
& listed as the Petitioner's [EXHIBIT F]. (See T.R., V. I , P. 145 ,
Notice Of Motions, § 10. Motion For Fair And Speedy Trial On All
Untried Indictments) (See also T.R., V. I , P. 146 , State's
response to, Notice Of Motions, forwarded to Attorney, J. Ford on
August 20, 1996.

- 22 -

2. That on August 28, 1996, the Petitioner submitted a Motion For Defendant's Presence During All Proceedings Held, (See T.R., V. II, P. 149 ).

3. That in the Petitioner's Motion To Dismiss Based On Newly Discovered Evidence, the Petitioner alleged that under the flag of war, his constitutional right to a speedy trial was illegally suspended. (See T.R., V. II, P. 154, ).

4. That in spite of the Petitioner's own constitutionally proper and legally viable pretrial motions, the Court neglected to hold any type of hearing on the Petitioner's strategic defense motions. The court violated the Petitioner's due process right to be heard in regard to these matters, which is how the improper change of venue had occurred. (See T.E., V. I, P. 7 to 8 improper change of venue discussion).

5. That when the trial court granted the defense attorney's Motion For Continuance without regard to the Petitioner's Motion For A Speedy Trial, and allowed court appointed counsel to waive the Petitioner's rights to a speedy trial, the court violated the Petitioner's right to be heard, in violation of T.C.A. § 40-14-101 (Speedy Trial – Right To Be Heard); T.C.A., § 40-18-103 (Speedy Trial); Title 18 U.S.C.A. 3160 (Speedy Trial Act); Tennessee Constitution, Article 1, § 8, 9, 13, & 17; Article XI, § 2, 8, & 16; U.S.C.A., Const. Article IV, § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 8, 10, & 14.

6. That the Petitioner contends that there are so many errors made by the Court and its Officers surrounding the filing of the Motion To Dismiss / Based On Newly Discovered Evidence, and the Motion For Speedy Trial. This warrants an investigation into the Clerks Of Courts Office in both Henderson and Madison County. The investigation is needed in order to determine why all these improper errors have occurred that surround the filing of these pretrial motions and all the missing testimony in the trial transcripts regarding these issues.

7. That it is the Petitioner's belief, that all of the errors created in the record filed by the Clerk Of Courts is part of a scheme that was devised in order to thwart the Petitioner's ability to file any type of post judgement appeal. The Petitioner contends that there are at least 53 other pre-trial motions filed by attorneys missing from the technical record that were heard by the trial court on November 8, 1995.

8. That the Petitioner lost two important witnesses that could have aided in presenting a defense in this case as shown in supra, I. (H), (8) & (9). That it is due to court's errors and the appointed counsel's deficient representation of failing to provide a speedy trial, that has basically made it impossible for the Petitioner to be afforded a fair trial.

J. CONCLUSION / MEMORANDUM OF LAW IN SUPPORT OF THE PETITIONER'S FLAG ISSUE

It has long been established by the Supreme Court of the United States that the flag is a unique symbol in our history, one "[p]regnant with expressive content." Texas v. Johnson, 491 U.S. 397, 405 (1989). In Smith v. Goquen, 415 U.S. 566, 603 (1974), the Supreme Court said:

... "The United States flag flies over every federal courthouse in our nation, and is prominently displayed in almost every state or local building throughout the land. It asserts jurisdiction of the courts and is one visible embodiment of the national government, through which the laws of the nation and the guarantees of the constitution are enforced."

- 23 -

In <u>Halter v. Nebraska</u>, 205 U.S. 34, 43, 27 S.Ct. 419, 51 L.Ed. 696 (1907), the Supreme Court has said:

> "The flag is the symbol of the nation's power, the emblem of freedom in its truest and best sense, and that to all lovers of the country, the flag signifies government resting on the consent of the governed; liberty regulated by laws; protection of the weak against the strong; **security against the exercise of arbitrary power** and absolute safety for free institutions against foreign aggression. [Emphasis added].

The Constitution of the State of Tennessee, Article 1, § 25 (Martial law - Punishment), provides in pertinent part:

> "That no citizen of this State, except such as are employed in the Army of the United States, or militia in actual service shall be subjected to punishment under martial or military law."

The Petitioner, in accordance with Article 1, § 9 of the State of Tennessee, expressed his right to be heard and filed several pretrial motions on his own behalf to protect himself from being subjected to martial law. (<u>See</u> T.R., V. <u>II</u> , P. <u>153 - 155</u> ). But, the Court acted in furtherance of its custom to display the maritime flags of war and utilized its unconstitutional customs to deprive the Petitioner of his constitutional rights.

That all of the Officers of the Court acting in concert with each other under this custom have illegally deprived him of his ability to exercise this fundamental constitutional right. Passion, prejudice, neglect, and intolerance to this claim have collectively prevented the the laws of the state from being properly enforced. Even appellate counsel has tried to sabotage this claim by failing to present this issue properly to the Supreme Court, but due to the Officers of the Courts collective fraudulent conveyance in the record, this claim has not been properly and / or previously determined on the merits or waived. <u>See</u> e.g., <u>Hall v. Donahoe</u>, B.O.P.R., File # 22736-7-SG (provided to post-conviction public defender's office). In short, due to all the Court Officers passions, prejudice, neglect and intolerance toward this claim has ultimately violated the Petitioner's right to a fair trial, and a successful appeal, in violation of Tenn. Const., Art. 1, § 8, 9, 13 & 25; Art. XI, § 2, 8, & 16; U.S.C.A., Const. Art. IV. § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 8, 9, 10, & 14.

The Petitioner can prove that: (1) neither the State or Federal statutes on the flags require a fringe, rope, or golden eagle to assert the court's standard jurisdiction, (<u>See</u> e.g.: T.C.A., § 4-1-301; and Title 4 U.S.C.A., § 1); and (2) contrary to the holding in <u>McCann v. Greenway</u>, supra, the gold fringe, the rope, and the golden eagle do have heraldic significance that denote that a flag adorned with this decor is actually a military flag of war. <u>See</u> Title 10 U.S.C.A., § 4594 (a) (Furnishing of heraldic services), which provides:

> "Under regulations to be described by the Secretary of the Army, an authority designated by him may, upon the request of, and subject to approval by, the Secretary of another military department, design flags, badges, medals, seals, decorations, guidons, streamers, final pieces for flagstaffs, buttons, buckles, awards, trophies, marks, emblems, rosettes, scrolls, braids, ribbons, knots, tabs, cords, and similar items for the requesting department."

Also, in <u>McCann v. Greenway</u>, supra, the court could not fathom how the maritime flag of war could possibly limit the court's jurisdiction. The Petitioner does not claim that it limits the court's jurisdiction but enhances the court's jurisdiction to be able to apply civil / criminal hybrids without regard to State constitutional rights, thus the court is in excess of jurisdiction under Tennessee Constitution, Article 1, § 25.

- 24 -

That the McCann Court went even further by stating: "Jurisdiction is a matter of law, statute, and constitution, not a child's game wherein one's power is magnified or diminished by the display of some magic talisman." The Petitioner has claimed that the courts military flags are part of a scheme and artifice to defraud him by disguising the court's true identity or its "other jurisdiction," to sit in its maritime / admiralty jurisdiction over him to deprive him of various fundamental constitutional rights. Instead of the word "talisman," let us try to use the word "artifice," which provides:

> "An ingenious contrivance or devise of some kind, and, when used in a bad sense, it corresponds with trick or fraud. It implies craftiness and deceit, and imports some element of moral obliquity. Cited: Black's Law Dictionary.

Mr. Justice Brandeis, and Mr. Justice Holmes, added in their enormous influence to their notable dissents, in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). Mr. Justice Brandeis said:

> "In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the omnipresent teacher. For good or for ill, it teaches the whole people by example. Crime is contagious. If the government becomes the law breaker, it breeds contempt for the law; it invites anarchy." id. at 485, 48 S.Ct., at 575.

Wherefore, the Petitioner declares his sovereign immunity under the law of the American flag of peace to protect his constitutional rights. The Court was in excess of jurisdiction, wherein the Officer's of the Court moved in bad faith to collusively join him to the court's military or admiralty jurisdiction to deprive him of his state rights. Moreover, the Court lacks subject-matter jurisdiction for the offense of exceeding its State constitutionally limited jurisdiction. Finally, the lack of subject-matter provisions of Rule 12.07 and Rule 12.08, and can be asserted at any time. See e.g., Gillespie v. State, 619 S.W.2d 128 (Tn. App. 1981).

## III. MISCELLANEOUS INEFFECTIVE ASSISTANCE OF COUNSEL ERRORS

1. That on September 06, 1994, the Petitioner was subjected to cruel and unusual treatment when another Henderson County prisoner gave him a broken hack saw blade without the Petitioner asking said prisoner for it. Shortly thereafter, HCSD Investigator Barry Edgin, came into the Petitioner's cell looking for said hack saw blade. Then, Petitioner was placed back into his cell without his personal property and stripped of all clothing for seven days until he was transferred to Riverbend Maximum Security Institution (RMSI). The Petitioner has remained there ever since, except for the short time that was spent at the Madison County jail just prior to his trial on Feb. 3-5, 1997.

2. That the Petitioner believes that the hack saw blade incident was a set-up and that he was never given any type of disciplinary write-up or served an arrest warrant. That it was not until the Petitioner had been indicted for the offense of escape on October 03, 1994, that the Petitioner received a copy of an arrest warrant for the offenses of possession of implements of escape and attempted escape.

3. That the Petitioner was denied his procedural due process right to be present and the right to confront witnesses, when Judge Franklin Murchison signed an order to have the Petitioner transferred to the State Penitentiary on September 12, 1994. This gross negligence in failing to protect the Petitioner's rights caused irreparable injury to him and thwarted his ability to establish an adequate working rapport with all subsequent attorney's, and the deprivation of a speedy trial.

- 25 -

4.  That counsel for the Petitioner was ineffective for failing to move the Judge for an order to have him transferred back to a local county jail in order to prepare attorneys for trial.

5.  That counsel for the Petitioner was ineffective for failing to inform him of the nature of a court ordered psychiatric examination was. Additionally, counsel was ineffective for failing to file a motion to record all psychiatric examinations conducted in order to preserve evidence & to maintain the reliability of the truth-seeking function. See e.g., State v. Huskey, 964 S.W.2d 892, 898 (Tn. 1998).

6.  That counsel was ineffective for failing to protect the Petitioner's due process rights to be present at hearings that had a relation, reasonably substantial, to the fullness of the opportunity to defend against the charges brought against him. For example; (1) the Sept. 16, 1996 change of venue hearing; (2) October 14, 1996 continuance; and any other miscellaneous hearings conducted (suppression hearings, restraints, and any other hearing the Petitioner is unaware of.).

7.  That counsel for the Petitioner was ineffective for failing to file a Motion To Compel Identification Of Psychiatrist and / or Psychologist Treating Key Eyewitnesses (Jenny, Cindy, & Stephanie), because the mental state and condition at a time relevant to the events about which they were to testify was needed for potential impeachment. See e.g. State v. Carter, 682 S.W.2d 224 (Tn. Cr. App. 1984) (Rule 17, Tn. R. Crim. P.); State v. Barnes, 703 S.W.2d 611 (Tn. 1985) (Tn. S.Ct. has approved the cross-examination of key accusatory witnesses in criminal cases as to witness' mental state or time relevant to the events about which they have testified for purpose of impeachment. This type of discovery would have been very beneficial and could have been very crucial for the jury to determine whether the childrens memories is sound. See also, supra II., (H) (10), thru (18) (Prejudice / lost memory).

IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL – ATTORNEYS JESSE FORD & CLAYTON MAYO

1.  That counsel failed to select a jury consisting of a fair cross section of the community of the Petitioner's race and gender. That Petitioner is a white male, and counsel picked a jury of eleven women and one black man to stand in judgement in a domestic violence case.

2.  That counsel failed to utilize all of there preemptory and cause challenges, and despite news reports with the Petitioner accusing Jackson Madison County General Hospital for creating the majority of his problems, and over his in-chambers objections to counsel, the attorney's went ahead and allowed a juror from this hospital on the jury. See T.E., V. I , P. 40 , Juror, Ms. Rucker.

3.  That counsel failed to have the jury sequestered away from the victims family. See T.E., V. II , P. 188 .

4.  That trial attorneys failed to represent the Petitioner effectively in all aspects in presenting his case to the best of their knowledge of the facts and beliefs.

5.  That counsel failed to stand up for the Petitioner's right to be heard by himself and counsel, and failed to make court clerk make out a verbatim transcript depicting this request. See T. E., V. II , P. 186 thru 191 , request to participate on own behalf w/o Jesse Ford).

6.  That counsel failed to make proper objections and move to suppress or strike the testimony of TBI agent Byrd, and Chris Duttons as fruits of a poisonous tree.

7.  That counsel failed to present evidence in their custody and control to corroborate the Petitioner's defense.

8.  That counsel failed to rebut and/or correct misleading circumstantial evidence. Some evidence for example had nothing to do with the facts or crime, i.e. weight pin, and ashtray used as weapons. See T.E., V. 217 .

9. That counsel refused to give up the investigative files produced for the defense to thwart Petitioner's desire to represent himself.

10. That counsel failed to try to learn basic facts, and tried to control every topic of discussion, and refused to listen to the Petitioner's flag argument.

11. That counsel was ineffective by failing to include (53) motion into the technical record filed by previous attorney's in which trial counsel accepted. In short, counsel has exhibited very poor motion practice.

12. That counsel could not have done a thorough job of investigating the facts, and could not have begun their investigation until after they were put on the Petitioner's case at the 8/22/94 preliminary hearing.

13. That counsel failed to object to "nude" autopsy photos that made a female juror to sick too continue, and the transcripts have this break / discussion with the juror omitted from the transcripts. See State v. Collins, 986 S.W.2d 13, 21 (Tn. Crim. App. 1998) (prejudicial and inflamatory nude autopsy photos submitted reversible error).

14. That counsel failed to present proof in support of Sheyrl Arbogast's testimony during her offer of proof, and counsel failed to enter this same evidence / testimony at the sentencing phase where the usual rules of evidence are relaxed. The prosecutor even instructed him that this type of testimony could be presented at the sentencing phase, but he still failed to present this evidence to the jury. (See T.E., V. _III_ , P. _314_ , Sheyrl's testimony guilt phase; compare Sheyrl's testimony at the sentencing phase at T.E., V. _IV_ , P. _430-431_ ). See also State v. Odom, 928 S.W.2d 18, 27-28 (Tn. 1996) (Plain error found during sentencing phase, reversible error).

15. That counsel for the Petitioner failed to object to the judge's fundamental error or impermissible comment on the evidence, during the jury instructions on intoxication (misstatement of law). See e.g., State v. Brown, 553 S.W.2d 94, 96 (Tn. 1977) (Erroneous intoxication instruction is a fundamental error); State v. Eaves, 959 S.W.2d 601, 604-605 (Tn. Cr. App. 1997) (fundamental error / judge's impermissible comment on the evidence / giving jury an impression as to his opinion or feelings). See T.E., V. _III_ , P. _367_ , Intoxication is [ir]relevant to the culpable mental state. [Sic] [Emphasis added].

16. That counsel for the Petitioner failed to appeal the judges erroneous order in refusing to let trial attorney's withdrawal even after they violated Tn. R. S.Ct. Rule 8 by submitting privileged attorney-client mail to his motion to withdraw. See T.R. V. _II_ , P. _199-201_ .

17. That trial counsel willfully neglected to argue Petitioner's issues on appeal and certified a fraudulent transcript. See T.R., V. _II_ , P. _186 to 198_ , Post-trial motions.

18. That replacement appellate counsel was ineffective because he failed to find fundamental jury instruction error on intoxication and present it to the court on direct apeal in a timely manner.

19. That appellate counsel failed to properly correct the appellate record, and gave the Petitioner useless audio tapes that played at the wrong speed and to late to try to assist him with correcting the fraudulent transcripts.

20. That appellate counsel was ineffective for failing to correct the Petitioner's phone block after he forwarded a copy of useless audio tapes of the trial to assist in correcting the fraudulent record. See Casey v. Lewis, 43 F.3d 1261 (9th Cir. 1994) (Prisoner phone / atty.).

I swear under the penalty of perjury that the foregoing is true and correct, except what is based on information and belief as to those the Petitioner believes is true and correct.

_____  11/09/00
SIGNATURE OF PETITIONER / DATE EXECUTED

- 27 -

IN THE CIRCUIT ᶜᵘʳᵗ FOR THE TWENTY-SIXTH ᴬᴸ DISTRICT

HENDERSON COUNTY, AT LEXINGTON TENNESSEE

DIVISION I

JON HALL                          )
                                  )
V.                                ) DOCKET NO. 94-342, 94-452, 94-454
                                  )
STATE OF TENNESSEE                )

-----------------------------------------------------------------------
         MOTION TO DISMISS / BASED ON NEWLY DISCOVERED EVIDENCE
-----------------------------------------------------------------------

        Comes now the Movant / Defendant, Jon Hall, pursuant to rule 12 (a)
of the Tennessee Rules of Criminal Procedure, with a motion to dismiss
all supra indictments pursuant to the above listed case numbers; In
support of this motion and to apprise the court of newly discovered
evidence, and will show this court the following:

        1. On Febuary 9, 1996, Movant / Defendant, Jon Hall, (referred to
hereinafter as movant) went before this court pursuant to a pro-se
motion to act as co-counsel under State V. Burkhart, 541 S.W.2d 361;
in reference to 10/19/96 notorized motion to dismiss all indictments
pursuant to Waugh v. State 564 S.W.2d 654; As well as for a 1/11/96
notorized (motion to suppress) alleged confessions / statements / observances
and the seizure of property, etc..

        2. On the date in question (2/9/96), movant discovered that this
court was exercising its Judicial Authority under Maritime law. (after
2/9/96 hearing, after being advised through legal consultation) Unknowingly,
and unwillingly of consent to such jurisdiction, movant was coerced in-
side the sanctuary of the Bar, which fraudulently deprived movant of
his protected constitutional rights.

        3. Movant is a citizen of the United States of America. His flag
is the American Flag of Peace which hangs outside the courthouse under
the United States of America. Movant is a human being under the King-
dom of God of the United States of America. Movant reserves all United
States constitutional rights of his country and under the jurisdiction
of his flag.

        4. The Courts flag is a maritime flag of war. It has a gold eagle
on top and a gold braid around it.
        There is no United States constitutional rights in the sanctuary of
the Bar under the wars power act of 1933 by President Rosevelt. At
this point in time this Court lacks jurisdiction over the movant Rule
12 (b) (1) - (b) (7) under the Federal Rules of Civil Procedure; (1) The
Court lacks jurisdiction over the subject matter of movant, and (2) The
Court lacks jurisdiction over movants citizenHip under the American flag
of Peace.

                        1.        —        PC EXHIBIT [A]        —

5. The Movant is to be tried under a judicial setting under the American Flag of Peace.

6. The Movant has no contract with this court to be tried under a Maritime Court. (For e.g. see U.S.C. title 3 section 501).

7. Under the jurisdiction of the American Flag of Peace of the United States, "No war flag is allowed in the Court." (For e.g. see Army Regulations October 1979 section 840; See also, title 4 U.S.C. for proper display of the flag and title 36 section 176.

8. This Court cannot rule under two (2) different jurisdictions under two (2) different flags at the same time. By coercing Movant inside the Bar during prior stages of these proceedings, this Court created collusion under title 28 U.S.C. chapter 85 section 1359. Therefore, this Court has lost competent jurisdiction to try Movant for the crimes he is allegedly been indicted for.

9. Under title 42 U.S.C 1986, The eight (8) attorneys that have represented movant, has been ineffective as a direct result of their collusion with the court in forcing movant inside the Bar, and failure to engage their high standards of the law, and knowledge of the law under title 42 U.S.C. 1986. NOTES: (7) & (8).

10. Any future pleadings by movant and the Court in this action under a Maritime setting, would constitute deprivation under 18 U.S.C. section 242 to cause a United States citizen a constitutional injury under color of law, thus denying movants Fifth, Sixth and Fourteenth Amendment rights to equal protection and due process to a fair and speedy trial and deemed innocent until proven guilty.

11. Because this Court is now exercising its authority under a Maritime Flag, Movant is guilty until proven innocent under the WARS POWER ACT of 1933, and has no U.S. Constitutional Rights inside the Sanctuary of the Bar of this Court.

[ ARGUMENT ]

THE INTENT TO CAUSE MOVANT A DEPRIVATION OF CONSTITUTIONAL RIGHTS

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the constitution or the laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or his race, than are prescribed for the punishment of citizens, shall not be fined not more than $ 1000.00, or imprisoned not more than one year, or both; and if bodily injury results shall be fined under this title not more than 10 years, or both. (In-part, title 18 section 242).

THE POLICY AND / OR CUSTOM OF THIS COURT AND THE INTENT

TO CAUSE MOVANT A CONSTITUTIONAL INJURY :

The Judge is responsible for the set up of the courtroom. He brought the flag and / or **allowed the Maritime** Flag to be brought into the Courtroom before he had subject matter jurisdiction over movant. The Maritime Flag inside the sanctuary of this Courts Bar represents the suspension of movants United States constitutional rights also;

(1) The right to be deemed innocent until proven guilty;

(2) The right to a fair and speedy trial embodied by the Fifth, Sixth, and Fourteenth U.S. constitutional rights to equal protection and due process.

The Judges of this Court has a sworn oath (if not expired, which is unconstitutional) to administer justice under the constitution and the laws of the United States. 28 U.S.C. section 453, which states:

Each Justice or Judge of the United States shall take the following oath or affirmation before performing the duties of his office:

"I _____ _____, do solemnly swear (or **affirm**) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faith-fully and impartially discharge and perform all the duties incumbent upon me as _____ under the constitutions and laws of the United States. So help me God."

The phrase "Justice or Judge of the United States" **was** substituted for "Justices of the Supreme Court, Circuit Judges, and District Judges appearing in sections 372 and 451.

Since the Judge was acting under two (2) jurisdictions, under two different flags, this Court has lost competent Jurisdiction over **movant** (See e.g., actors acting in disguise, The Monroe Doctrine of 1871).

Now that this Court has used its policy and / or custom to trial movant under Maritime Law, Movant declares his sovereign immunity from prosecution under his American Flag of Peace of the United States, and under his sovereign belief under the Kingdom of his God. Movant is an ambassador under his flag of peace of the United States.

The intent to cause the movant a deprivation of his United States constitutional rights to his Fifth, Sixth, and Fourteenth Amendment rights can be mirrored under 42 U.S.C. title 1986, for the knowledge of the law when the judge brought the Maritime Flag into the Courtrom before having subject matter jurisdiction over movant, which shows and establishes intent under 42 U.S.C. 1946; (2) Policy and Custom of **exercising** Maritime Law under a judicial setting (See e.g., title 42 U.S.C. 1983, Chapter

3.

21 notes 333, 349, 350, 351, 352, and 355). This also constitutes
perjury of oath under title 18 U.S.C. section 1621.

## CONCLUSION

Wherefore, Movant moves this court to dismiss all supra indictments
for the lack of subject matter jurisdiction over movant, or in the
alternative, sign the attached Judicial contract pursuant to title 3
U.C.C. section 501, to preserve movants United States constitutional
rights.

Respectfully Submitted,

JON HALL

SWORN AND SUBSCRIBED BEFORE ME THIS THE _17_ DAY OF _____ 1996.
NOTORY PUBLIC _Howard Washington_
MY COMMISSION EXPIRES _____ My Commission Expires JULY 24, 1999

## CERTIFICATE OF SERVICE

I _Jon Hall_ , HEREBY CERTIFY THAT I HAVE MAILED A TRUE
AND EXACT COPY OF THE FOREGOING MOTION, JUDICIAL CONTRACT, AND THE
SUPPORTING AFFIDAVIT [ AMERICAN FLAG OF PEACE ] ON THIS THE ___ DAY
OF _sept_ 1996 TO: THE HONORABLE JUDGE WHIT S. LAFON, P.O. BOX 7411,
JACKSON TENNESSEE 38302; THE DISTRICT ATTORNEY, JERRY WOODAL, P.O. BOX
2825 JACKSON TENNESSEE 38302; THE CLERK OF COURTS, KENNY CAVNESS, LEX.
TENNESSEE 38351; AND ATTORNEYS FORD / MAYO, P.O. BOX 1625 JACKSON TENN.
38302.

DF-MOT # ~~11~~ 18

CERTIFICATE OF SERVICE / JUDICIAL CONTRACT, SWORN AFFIDAVIT, & MOTION

P 314 146 338

US Postal Service
ceipt for Certified Mail
Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to
Hon Whit S LaFon

Street & Number
PO Bx 7411

Post Office, State, & ZIP Code
Jackson TN 38302

| | |
|---|---|
| Postage | $ .64 |
| Certified Fee | 1.10 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | 1.10 |
| TOTAL Postage & Fees | $ 2.84 |
| Postmark or Date | 9/18/96 |

PS Form 3800, April 1995

SENDER:
• Complete items 1 and/or 2 for additional services.
• Complete items 3, 4a, and 4b.
• Print your name and address on the reverse of this form so that we can return this card to you.
• Attach this form to the front of the mailpiece, or on the back if space does not permit.
• Write "Return Receipt Requested" on the mailpiece below the article number.
• The Return Receipt will show to whom the article was delivered and the date delivered.

3. Article Addressed to:

Hon. Whit S. LaFon
Henderson/Madison Cty
Cf Judge for 26th Jud.
Dist. of Tenn.
PO Bx 744 Jackson, TN 38302

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X

PS Form 3811, December 1994

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

4a. Article Number
P314 146 338

4b. Service Type
☐ Registered          ☑ Certified
☐ Express Mail       ☐ Insured
☑ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery

8. Addressee's Address (Only if requested and fee is paid)

Domestic Return Receipt

DEPARTMENT OF CORRECTION
TRUST FUND ACCOUNT
PERSONAL WITHDRAWAL REQUEST

10-9-94
64.48          78913
9-13-96
$ 1.          DATE: 9-18-

PLEASE DEDUCT THE FOLLOWING AMOUNT FROM MY ACCOUNT:

One dollar and ninety two cents          DOLLARS

THE CHECK IS TO BE MAILED TO:

NAME
STREET ADDRESS
CITY, STATE,

THE PURPOSE OF THE WITHDRAWAL IS:

Stamps for legal mail
Ti woncal Dist Att'y Ford/anava, Henderson County Court
Jackson TN
Remy Caymess Bromston, Tn Jackson

Jon Hall          23894/
INMATE SIGNATURE          INMATE #

WITNESSED: M Fisco

APPROVED: ☑          SEP   1996
          YES    NO

REASON FOR DENIAL:

B Matthews
Warden/Director Designee

ORIGINAL-INMATE
COPY-TRUST FUND OFFICE
[31]

CR-2727 (7/9

CONTRACT FOR THE GUARANTEE OF CONSTITUTIONAL RIGHTS OF
JON HALL UNDER U.C.C. TITLE 3 U.C.C. SECTION 501

## PREAMBLE

I, _____, being the Circuit Court Judge for the
Twenty-Sixth judicial District of Tennessee, presiding over cases that
names Jon Hall as defendant, indictment numbers 94-342, 94-452, 94-454,
do hereby affirm by the endorsement of my signature upon this contract
verify this contract as being valid and binding upon me (Jon Hall),
and the Twenty-Sixth Judicial District Circuit Court, pursuant to the
United Commercial Code Title 3 U.C.C. Section 501 and article 1 of
the United States Constitution.

## TERMS OF CONTRACT

1. Having been charged with knowledge of the law that I, _____
_____, as a Circuit Court Judge, I'm bound to possess
pursuant to T.C.A. § 17-1-106 (a). I, _____, do hereby
swear under the penalty of perjury, pursuant to T.C.A. § 39-16-703, to
uphold, protect, and guard with zeal and diligence the constitutional
rights of the defendant, Jon Hall, indictment numbers 94-342, 94-452, &
94-454, and any other subsequent proceedings that Jon Hall is listed
as defendant, that are guaranteed him under the provisions of all
articles of his Fourth, Fifth, Sixth, and Fourteenth Amendments of the
United States constitution and any other subsequent Articles and Amend-
ments of the United States constitution that is guaranteed to the afore-
said Jon Hall as a sovereign citizen of the United States of America
that I as a Circuit Court Judge preside over.

2. Having been charged with knowledge of the law pursuant to title
42 U.S.C. section 1986, and the high standards of knowledge of the law
that I, _____, as a Circuit Court Judge I'm bound to
possess pursuant to T.C.A. § 17-1-106 (a), do hereby swear under the
penalty of perjury pursuant to T.C.A. § 39-16-703, to uphold, protect,
and guard with zeal and diligence the constitutional rights of defendant,
Jon Hall, indictment numbers 94-342, 94-452, & 94-454, and any other

[36]

PC EXHIBIT [B]

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

HENDERSON COUNTY AT LEXINGTON TENNESSEE

DIVISION I

COUNTY OF HENDERSON )
) PURSUANT TO 94-342, 94-452, 94-454
STATE OF TENNESSEE )

* SWORN AFFIDAVIT OF CIRCUIT COURT JUDGE / CONTRACT U.C.C. TITLE 3 SEC. 501 *

I _____, Circuit Court Judge presiding over case no. 94-342, 94-452, & 94-454 that names Jon Hall as defendant.

I have read and fully understand, and agree to all terms of the contract for the guarantee of constitutional rights of Jon Hall under U.C.C. title 3 section 501.

No coercion, threats or promises have been made to me to make said contract invalid and the signing is an exercise of unfettered freewill.

_____
WHIT S. LAFON
CIRCUIT COURT JUDGE
P.O. BOX 7411
JACKSON TENN. 38302

SWORN AND SUBSCRIBED BEFORE ME THIS THE _____ DAY OF _____ 1996.
NOTORY PUBLIC / CIRCUIT COURT CLERK _____
MY COMMISSION EXPIRES _____

DF-MOT # 18

88]

PC EXHIBIT [C]

3

**AFFIDAVIT**

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

HENDERSON COUNTY, AT LEXINGTON TENNESSEE

DIVISION I

| | |
|---|---|
| STATE OF TENNESSEE | ) |
| | ) |
| V. | ) DOCKET NO. 94-342, 94-452, 94-454 |
| | ) |
| JON HALL | ) |

| | |
|---|---|
| STATE OF TENNESSEE | ) |
| | ) — SS — JON HALL |
| COUNTY OF DAVIDSON | ) |

[ TO: Henderson County Court, District Attorney General, and Attorneys' ]
[            of record representing Movant / Affiant            ]

I _Jon Hall_ , after being duly sworn, depose and acknowledge the above listed citizens / representatives, acting under color of state law, and are representing me pursuant to 94-342, 94-452, & 94-454, that:

I am a citizen of the American Flag of Peace under the United States of the Kingdom of God of America. The American Flag is my sovereign Flag of Peace.

I reserve all United States constitutional rights of my country and under the jurisdiction of my Flag of Peace.

The Courts' Flag (for the Twenty-Sixth Judicial District) is the Maritime Flag of War. There is no constitutional rights inside the sanctuary of the Bar under the WARS POWER ACT of 1933. If I crossed or entered knowingly into this courts Bar, I would be giving up my United States constitutional rights under the WARS POWERS ACT.

At this point and time, this Court now lacks jurisdiction over Movants citizenship under the American Flag of Peace (which he now holds before this court).

[22]

1.

## ACKNOWLEDGEMENT OF LAW

ACKNOWLEDGEMENT OF LAW

To: The Honorable, Judge, Whit S. Lafon, Circuit Court Judge, for the Twenty-Sixth Judicial District of Tennessee, Division I, are hereby placed on notice by the Movant, Jon Hall, that failure to sign contract constitutes perjury of oath T.C.A. § 39-16-703 and establishes intent to deprive a citizen of his constitutional rights.

You are hereby charged with knowledge of the law pursuant to the authority of 42 U.S.C. 1986, and the high standards of knowledge of the law that you are bound to possess pursuant to T.C.A. § 17-1-106 (a).

This Court has brought the Movant, Jon Hall, under its Maritime jurisdiction by means of fraudulently concealing its true jurisdictional nature by failing to inform the said Movant before Movant entered the Bar.

The Court further perpetuated the fraudulent jurisdiction by displaying a Maritime War Flag, making the sanctuary of the Bar a Maritime War Court and requiring the Movant to state his name by implied authority that the court did not have.

Failure to observe these violations and sign this contract will give rise to a 42 U.S.C. civil rights action. Acknowledgement, respectfully submitted,

Jon Hall

Movant / Jon Hall # 238941, R.M.S.I.
7475 Cockrill Bend, Industrial Road,
Nashville Tennessee 37209-1010

SWORN AND SUBSCRIBED BEFORE ME THIS THE _17_ DAY OF _Sept_ 1996.
NOTORY PUBLIC _Howard Wayne Brandon_
MY COMMISSION EXPIRES _____ My Commission Expires JULY 24, 1999

## CERTIFICATE OF SERVICE

I _Jon Hall_ , hereby certify that I have included the foregoing acknowledgement of law, with the contract for the guarantee const. rights of Jon Hall, this the _18_ day ___ ___

PC EXHIBIT [E]

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

HENDERSON COUNTY AT LEXINGTON TENNESSEE,

DIVISION I

JON HALL                          )
                                  )
                                  )
V.                                ) DOCKET NO. 94-342, 94-452, 94-454
STATE OF TENNESSEE                )

MOTION FOR FAIR AND SPEEDY TRIAL ON ALL UNTRIED INDICTMENTS

Comes now the Defendant, Jon Hall, pursuant to Rule 12, to request final disposition on all untried indictments pending in the Twenty-Sixth Judicial District, pursuant to U.S.C.A. Const. amend. # 6, and Tennessee Codes Annotated § 40-14-101, Tennessee Constitution Article 1 § 9. This is the Defendant's, second attempt at receiving a Fair and Speedy Trial, See ; Defendants letter, marked RE: Dismissal / Pro-Se With Counsel, that was sent to the Honorable, Judge, Whit Lafon, on 12/27/95, which had contained exhibits listed on page 4. This letter / exhibits contained a letter to attorney's of record, sent to Carthel Smith, and Mike Moshier, by certified mail, specifically asking his Attorney's to file a Fair and Speedy trial for him.

Respectfully, submitted,

JON HALL # 238941
7475 COCKRILL BEND IND. RD.,
NASHVILLE TENNESSEE 37209-1010

SWORN AND SUBSCRIBED BEFORE ME THIS THE 25 DAY OF July 1996.
NOTORY PUBLIC _Howard Wayne Brandon_
MY COMMISSION EXPIRES  My Commission Expires JULY 24, 1999

CERTIFICATE OF SERVICE

I _Jon Hall_, hereby certify that I have mailed a true and exact copy of the foregoing motion to Assistant, District, Attorney, James Thompson at P.O. Box 2825, Jackson, Tennessee 38302, this the 1st day of Aug 1996.

DF-MOT # 16

PC EXHIBIT [F]

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE

FILED

JUDY BARNHILL, CIRCUIT COURT CLERK

DEC 07 2000

DEPUTY CLERK

11:30 A.M.

P.M.

| | | |
|---|---|---|
| JON HALL, | ) | |
| | ) | |
| Petitioner, | ) | Madison County No. 96-589 |
| v. | ) | |
| | ) | |
| STATE OF TENNESSEE, | ) | Post-Conviction No. C-00-422 |
| | ) | |
| Respondent. | ) | Death Penalty Post-Conviction |
| | ) | |

**PRO SE MOTION FOR APPOINTMENT OF COUNSEL**

Jon Hall submits this pro se motion seeking an order appointing counsel to represent him
in his post-conviction proceedings.

**INTRODUCTION**

Jon Hall was convicted in this Court of first-degree murder. He was sentenced to death.
On November 15, 1999, the Tennessee Supreme Court affirmed his sentence and on December
27, 1999, the Tennessee Supreme Court denied rehearing. On or about October 11, 2000,
Petitioner filed a petition for post-conviction relief in this Court.

**LEGAL STANDARD AND ARGUMENT**

"If a petitioner not represented by counsel requests counsel and the court is satisfied that
the petitioner is indigent as defined in § 40-14-201, the court **shall** appoint counsel to represent
the petitioner." Tenn. Code Ann. § 40-30-207(b)(1) (emphasis added). Jon Hall has filed, along
with this pro se motion, a pro se post-conviction petition which complies with the requirements
of Tenn. S. Ct. Rule 28. In this pro se post-conviction petition Jon Hall has requested the
appointment of counsel and he has asserted that he is indigent and unable to pay the costs of the
post-conviction proceedings. Pursuant to Tenn. Code Ann. § 40-30-207, the appointment of
counsel is mandatory upon the filing of such a petition.

It is appropriate for the Court to appoint, pursuant to this pro se motion, the Office of the
Post-Conviction Defender, 460 James Robertson Parkway, Second Floor, Nashville, TN 37243.
"It is the primary responsibility of the post-conviction defender to represent . . . . any person
convicted and sentenced to death in this state who is without counsel and who is unable to secure
counsel due to indigency . . ." Tenn. Code Ann. § 40-30-306(a). Rule 13 Section 1(h) of the
Rules of the Tennessee Supreme Court also mandates the appointment of the Post-Conviction

Defender in this matter. It is clear that the intent of Tenn. Code Ann. § 40-30-306(a) and Rule 13

Section 1(h) is that the Office of the Post-Conviction Defender should be appointed unless there

is a conflict. The Office of the Post-Conviction Defender is presumptively the appropriate public

defender organization to be appointed in a post-conviction case filed by an indigent petitioner

under a sentence of death.

CONCLUSION

Pursuant to the simultaneous filing of the pro se post-conviction petition and affidavit of

indigency, Jon Hall is statutorily entitled to have the Office of the Post-Conviction Defender

appointed to represent him in his post-conviction proceedings.

Jon Hall asks that this motion be heard at the soonest possible date.

Respectfully submitted,

Jon Hall, TDOC # 238941
Riverbend Maximum Security Institution
7475 Cockrill Bend Industrial Road
Nashville, TN 37209

CERTIFICATE OF SERVICE

This is to certify that a true and exact copy of the foregoing motion has been either hand
delivered or mailed via U.S. Mail, postage pre-paid, to James G. Woodall, District Attorney
General, P.O. Box 2825, Jackson, TN 38302-2825, this the 14th day of November, 2000.

Jon Hall, Pro se proper party

46

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
DIVISION I

JON HALL

VS.

STATE OF TENNESSEE

**FILED**

JUDY BARNHILL, CIRCUIT COURT CLERK

DEC 1 1 2000

DEPUTY CLERK
A.M. 3:35 P.M.

No: C00-422

### STATE'S RESPONSE AND MOTION TO DISMISS

Comes now the State of Tennessee by and through the Office of the

District Attorney General and in response to the above styled pleading states:

1. The State denies all allegations in the petition and demands strict proof thereof.

2. The State will rely upon waiver and previous determination of the issues.

3. The State denies that counsel for the petitioner was in any way ineffective.

Wherefore premises considered the State moves this Honorable Court to

deny the above styled petition.

Respectfully Submitted:

AL EARLS
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

### CERTIFICATE OF SERVICE

This is to certify that a true and exact copy of the foregoing has been
mailed to Jon Hall and Office of the Post Conviction Defender on or before the
filing date as affixed by the Clerk of this Court this the ____ day of December,
2000.

AL EARLS
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE

DIVISION I

Jon Hall,

PETITIONER,

Vs.

STATE OF TENNESSEE,

RESPONDENT.

CASE NO. C00-422 -I

FILED

JUDY BARNHILL CIRCUIT COURT CLERK

DEC 12 2000

DEPUTY CLERK

A.M. 3:05 P.M.

---

PETITIONER'S OBJECTION AND REBUTTAL RESPONSE TO THE
STATE'S RESPONSE AND MOTION TO DISMISS; AND
MOTION TO COMPEL ANSWER AND SANCTION THE STATE

---

Comes now the petitioner, Jon Hall, by and through himself to object and
respond to the State' Response And Motion To Dismiss. In support of this response
the petitioner shall state the following:

1. That the State's Response And Motion To Dismiss is based on the following
answers:

   (a) The State denies all allegations in the petition and demands strict
   proof thereof;

   (b) The State will rely upon waiver and previous determination of
   the issues; and

   (c) The State denies that counsel for the petitioner was in any
   way ineffective.

2. That as shown above in supra 1 (a) - (c), the State's blanket answer or
response to the petitioner's post-conviction complaint is non-responsive to each
of the allegations raised in the complaint, in violation of the mandatory duties
of the district attorney general. See: e.g., T.C.A. § 40-30-208 (d) (Answer or
response); Tennessee Rules of the Supreme Court, Rule 28 (5) (G); and Malone v.
State, 707 S.W.2d 541 (Tn. Cr. App. 1985) (The word "shall" clearly indicates the
intention to make such duties mandatory).

3. That the State's answer places an undue burden upon the court to properly
construe the petition and the State's answer together with the files, records,
transcripts, and correspondence relating to the judgement under attack, to enter
an appropriate order in accordance with the provisions of T.C.A. § 40-30-206
(Preliminary consideration); and T.C.A. § (Preliminary order), based on the law
as applied to the facts that would reasonably warrant the the State's position.

- 1 -

4. That the State's shotgun answer to the petitioner's petition is not based upon a reasonable prefiling investigation of the facts or the law as the assistant district attorney, Alfred Earls knows them to be and is sanctionable pursuant to Tennessee Rules of Civil Procedure, Rule 11. See: e.g., Andrews v. Bible, 812 S.W.2d 284 (Tn. 1991) (Test to determine whether attorney's conduct is sanctionable).

5. That the State's answer was made in bad-faith to: (1) deny the petitioner from receiving a meaningful or effective review during the court's preliminary consideration phase and / or at any type of subsequent proceeding based on the contested facts or law; (2) deny the petitioner from receiving the benefits of the effective assistance of counsel on post-conviction; and (3) circumvent the legislature's mandatory requirement of having to provide a specific answers to each of the petitioner's allegations, especially the answers regarding official misconduct, official oppression, and acting in concert with defense counsel to deprive him of fundamental constitutional rights in order to protect their own personal interests.

6. That without a proper answer or a stipulation to the facts and or law in this case may create an undue hardship on: (1) the taxpayers for having to provide expenses for forensic audio tape evalution experts for the defense to show that the State certified false transcripts; (2) the United States government for compelling the President to testify in regard to the added decor and the law on the United States flag; (3) the State of Tennessee for compelling the Governor to testify in regard to the added decor and law pertaining to the States flag; and (4) on the United States Supreme Court for compelling the United States Supreme Court, Chief Justice to testify in regard to how the courts invokes and utilizes its discretionary jurisdiction so as not to be swamped.

7. That in regard to the States answer that it will rely upon and previous determination of the issues the petitioner shall state:

    (a) That no grounds of relief for the petitioner have been waived for the failure to present it for determination before a competent jurisdiction in which the ground could have been presented, because the petitioner was precluded from having it presented to the court as the result of State action in violation of the State and Federal Constitutions. See: e.g., T.E., V. II , P. 186 to 191 (Motion to dismiss Atty. Ford); T.R., V. II , P. 186 to 198 (Post-trial motions - issues to raise); T.R., V. II , P. 199 to 201 (Atty. Motion To Withdraw, violation of Tn. S.Ct. Rule 8, DR 4-101 (B) (3) (unauthorized use of privileged info) DR 5-105 (A) (Interests impair judgement); DR 7-101 (A) (Representing a client zealously); EC 7-7 (Client's decision); T.R., V. II P. 217 (State's notice of appeal the trial courts decision to not permit counsel for the defense to withdraw), in violation of Tn. Const., Art. 1, § 8 & 9, Art. XI, § 2, 8, & 16; U.S.C.A. Const. Art. IV § 2 (1); and Amend. 5, 6, & 14; and

(b) That no grounds for relief have been previously determined based upon the merits due to: trial court fraud conveying incomplete records on the flag / fraud issue (already addressed in the original petition); the misstatement of law, because T.D.O.C. erroneously placed a phone block on the petitioner's phone access to appellate counsel; inter alia and counsel for the petitioner failed to act in a fiduciary manner under T.C.A. § 35-50-110 (Fiduciary powers) to protect the client's interests which violates Tenn. S.Ct. Rule 8, EC 7-7 (Duty of the Lawyer to the client), Tn. S.Ct. Rule 12 (errors assigned prior to argument); all in violation of T.C.A. § 16-3-403 (Rules not to affect substantive rights); T.C.A. § 39-13-206 (Appeal and review of death sentence); Tenn. Const., Article 1, § 8 & 9; Article XI, 2, 8, & 16; U.S.C.A. Const., Art. IV § (1), and Amend. 5, 6, 8, & 14.

Wherefore all the reasons set forth above, petitioner urges this court to issue an order requiring the state to: (1) perform the mandatory duties that are placed upon it under the Post-Conviction Procedure Act, and respond to all of the allegations in the petitioner's post-conviction petition; and (2) sanction the State by requiring the Dist. Att. General and his Assistant to withdraw, because their personal interests may impair or impede their independent judgement again.

Respectfully submitted,

Jon D. Hall # 238941
R.M.S.I. 7475 Cockrill Boulevard
Nashville Tennessee 37209-1048

CERTIFICATE OF SERVICE

I _____, hereby certify that a true and exact copy of the foregoing was delivered to: (1) James G. Jerry Woodall, District Attorney General for the 26th Judicial District of Tennessee Criminal Division, P.O. Box 2825; (2) The Office Of The Clerk for the Circuit Court of Madison County, Jackson Tenn. 38301; and (3) Office of The Post-Conviction Public Defender 460 James Robertson Parkway, Second Floor, Nashville Tenn. 37243-0505 via United States mail on this the 4th day of December 2000.

In the Circuit Court of Madison County
at Jackson, Tennessee, Division 1

JON HALL                              )
                                      )
vs.                                   )        DOC. No.:C 00-422
                                      )
                                               **FILED**
                                               JUDY BARNHILL, CIRCUIT COURT CLERK
STATE OF TENNESSEE                    )
                Defendant.            )              DEC 15 2000

                                               _____ _____
                                               DEPUTY CLERK        TR
                                               A.M. _____ 3:20 P.M.

## ORDER APPOINTING COUNSEL

   This cause came on to be heard on this date upon the application of the
defendant for appointed legal counsel pursuant to TCA 40-30-207 and 40-14-202.
Whereupon from the examination by the Court, it is found that the defendant is
indigent and that the District Public Defendant cannot represent this defendant due
to a conflict.

   IT IS THEREFORE ORDERED that the Honorable SCOTT G. KIRK, 25
East Main Street, Jackson, TN. 38301, is hereby appointed as counsel for the
indigent defendant as is provided by law. That the hearing in this cause is set for
March 12, 2001, at 8:00 p.m.

   This is the _14th_ day of December, 2000.

                                               _____
                                               Roy B. Morgan, Jr.
                                               Circuit Judge, Division I
                                               26th Judicial District

51

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been mailed, U. S. Postage paid, to the following: Scott Kirk, Attorney at Law, Al Earls,, Assistant District Attorney, P. O. Box 2825, Jackson, TN. 38302, and Jon Hall, #238941 Riverbend Maximum Security Institution, 7475 Cockrill Bend Road, Nashville, TN. 37201-1010.

This the 14th day of December, 2000.

Barbara A. Page
_____
Barbara A. Page

52

IN THE CIRCUIT COURT IN AND FOR MADISON COUNTY, TENNESSEE
DIVISION I

JON HALL,                          )
                                   )        **FILED**
        Petitioner,                )        JUDY BARNHILL, CIRCUIT COURT CLERK
                                   )
vs.                                )    NO. 00-422        DEC 2 8 2000
                                   )
STATE OF TENNESSEE,                )        _____
                                   )            DEPUTY CLERK
        Respondent.                )        A.M __1:42___ P.M.

---

## MOTION FOR SUBSTITUTION OF COUNSEL

Comes now, Scott G. Kirk, appointed counsel for Jon Hall in the above-
referenced matter, pursuant to the "Order Appointing Counsel" of the Court on
December 14, 2000, and moves the Court for an Order to substitute "The Office of the
Post-Conviction Defender" as counsel of record for the Petitioner in this matter. In
support thereof counsel would show as follows:

1.      That Jon Hall filed a Pro Se "Petitioner for Relief from Conviction or
Sentence" with the Clerk of this Court on December 7, 2000;

2.      That Mr. Hall's pro se Petition was accompanied by a pro se motion
requesting the appointment of counsel and specifically requesting the appointment of
the "Office of the Post Conviction Defender" pursuant to T.C.A. § 40-30-306(a) and
Tennessee Supreme Court Rule 13 § 1(h);

3.      That the Court entered an Order on December 14, 2000, appointing the
undersigned counsel for the Petitioner in this matter;

4.    That Jon Hall was convicted of First Degree Murder and sentenced to death on February 5, 1997, in this court in case number 96-589;

5.    That Mr. Hall has appealed to the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court and has petitioned the United States Supreme Court for review which was denied on October 2, 2000;

6.    That the undersigned is not certified by the State to handle death penalty cases and has not previously handled or been involved in the defense of a death penalty case at the trial level or appellate level and likewise has not handled a post-conviction petition arising from a death sentence case;

7.    That the "Office of the Post Conviction Defender" was specifically established in the State of Tennessee with the primary duty and responsibility to represent persons convicted and sentenced to death in this State who are unable to secure counsel due to indigency;

8.    That counsel has spoken with Majorie A. Bristol, a staff attorney, with the "Office of the Post Conviction Defender" and they are familiar with Mr. Hall's file and have previously assisted him in other appellate matters and are interested in properly presenting this matter before this Court;

9.    That counsel has spoken with the District Attorney General's office and they have no objection to the substitution of the "Office of the Post Conviction Defender" for current appointed counsel.

10.    That in addition counsel would rely on the attached Memorandum in support of this Motion.

54

WHEREFORE appointed counsel, Scott G. Kirk, respectfully moves the Court for an Order substituting the office of the "Post Conviction Defender" as counsel of record for the Petitioner in this matter, Jon Hall.

RESPECTFULLY SUBMITTED,

SCOTT G. KIRK
Attorney for Defendant
200 East Main Street Suite 110
P.O. Box 1486
Jackson, Tennessee 38302-1486
(901) 423-2229

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been mailed by U.S. Mail, postage prepaid, this 28th day of December, 2000 to: Alfred L. Earls, Assistant District Attorney General, P.O. Box 2825, Jackson, Tennessee 38302.

SCOTT G. KIRK

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
DIVISION I

| | | |
|---|---|---|
| JON HALL, | ) | |
| | ) | FILED |
| Petitioner, | ) | JUDY BARNHILL, CIRCUIT COURT CLERK |
| | ) | |
| vs. | ) | NO. C 00-422 |
| | ) | DEC 28 2000 |
| STATE OF TENNESSEE, | ) | |
| | ) | DEPUTY CLERK |
| Respondent. | ) | A.M. 1:42 P.M. |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUBSTITUTION OF COUNSEL**

Comes now appointed counsel, Scott G. Kirk, and submits this

memorandum in support of his motion for substitution of counsel on behalf of Jon

Hall. The Court has properly appointed counsel for Jon Hall in this Post

Conviction proceeding involving his conviction of First-Degree Murder and death

sentence from this Court on February 5, 1997, pursuant to the Post-Conviction

Act. At this time, counsel respectfully submits that T.C.A. § 40-30-306 and Rule

13 of the Tennessee Supreme Court Rules specifically mandate that the ""Office

of the Post-Conviction Defender"" should be appointed as counsel for Mr. Jon

Hall. Specifically in further support, counsel would show as follows:

1.    Tennessee Supreme Court Rule 13 § 1(h) provides that the Court

shall designate the Public Defender, the Post Conviction Defender, the staffs or

other attorneys employed by the State as appointed counsel in this matters if

available and qualified.

2.      In this matter, counsel respectfully submits that although the local public defenders office has a conflict, the Office of the Post-Conviction Defender meets the requirements of Rule 13 and should be appointed to represent Mr. Hall in that the "Office of the Post-Conviction Defender" is a separate office from the local Public Defender's office and as such would not have a conflict of interest in handling this matter and instead is available and desires to properly represent Mr. Hall.

3.      T.C.A. § 40-30-306 outlines the duties of the "Office of the Post-Conviction Defender" and specifically sets forth that it is the primary responsibility of the Post Conviction Defender to represent any person convicted and sentenced to death in this State who is without counsel and who is unable to secure counsel due to indigence.

4.      The Legislative history of the aforementioned statue which established the "Office of the Post-Conviction Defender" states that the office was created and given the primary responsibility for direct representation of indigent death sentenced inmates in State Post Conviction proceedings in order to assure the level of due process constitutionally required in capital cases with the primary concern being finality in capital cases.  It is further evident from the Legislative history of the Act that created the "Office of the Post-Conviction Defender" that the Legislature responded to the well recognized need for a high quality public defender organization experienced in capital case litigation with the office meant to serve as an integral part of the overall scheme for the fair administration of justice for death sentenced individuals in Tennessee.

Wherefore counsel respectfully submits that the "Office of the Post-

Conviction Defender" should be substituted for Scott G. Kirk in this matter to

represent Mr. Jon Hall in this Court with respect to his Petition for Post

Conviction Relief.

RESPECTFULLY SUBMITTED,

SCOTT G. KIRK
Attorney for Appellant
215 East Main Street
P.O. Box 1486
Jackson, Tennessee 38302-1486
(901) 423-2229

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been mailed by
U.S. Mail, postage prepaid, this _____ day of December, 2000 to: Alfred L.
Earls, Assistant District Attorney General, P.O. Box 2825, Jackson, Tennessee
38302.

SCOTT G. KIRK

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
DIVISION I

JON HALL

VS.                                        No: C00-422

STATE OF TENNESSEE

## ORDER STAYING EXECUTION

This cause having come before this Honorable Court upon petition for
Post-Conviction Relief wherein Jon Hall was sentenced to death in Madison
County Circuit Court Case No. 94-342 and Jon Hall having now filed a petition
for Post-Conviction Relief:

IT IS THEREFORE ORDERED that the execution of Jon Hall is stayed
pursuant to T.C.A.δ40-30-220 until further Ordered by this Court or a Court of
Competent jurisdiction.

IT IS FURTHER ORDERED that the Clerk of this Court deliver a certified
copy of this Order to Ricky Bell, Warden of Riverbend Maximum Security
Institution at 7475 Cockrill Bend Industrial Road, Nashville, TN 37243 and the
Office of the Attorney General Criminal Division at 425 5th Avenue North,
Nashville, TN 37243.

Enter this the 28th day of December, 2000.

HONORABLE ROY MORGAN, JR. JUDGE
CIRCUIT COURT JUDGE
26TH JUDICIAL DISTRICT

Approved for Entry:

AL EARLS
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

57

**CERTIFICATE OF SERVICE**

This is to certify that a true and exact copy of the foregoing has been

mailed to Mr. Scott Kirk, Attorney at Law, P.O. Box 1486, Jackson, TN 38301

this the 27 day of December, 2000.


AL EARLS
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

58

IN THE CIRCUIT COURT IN AND FOR MADISON COUNTY, TENNESSEE
DIVISION I

JON HALL,                          )
                                   )
        Petitioner,                )
                                   )
vs.                                )   NO. C-00-422
                                   )
STATE OF TENNESSEE,                )
                                   )
        Respondent.                )

*FILED*
JUDY BARNHILL, CIRCUIT COURT CLERK
JAN 09 2001
DEPUTY CLERK
A.M ___12:55___ P.M.

ORDER SUBSTITUTING COUNSEL

This cause came to heard upon the motion of Scott G. Kirk, appointed counsel

for Jon Hall in the presentation of his "Petition for Post-Conviction Relief" asking the

Court to permit him to withdraw and to substitute as attorneys for Jon Hall "The Office of

the Post-Conviction Defender" as counsel of record for Petitioner in this matter; and,

It appearing to the Court that for good cause shown that the motion is well taken

and that the "The Office of the Post-Conviction Defender" has been established in this

State to represent Defendants who receive a death sentence in their efforts for post-

conviction relief; and,

It further appearing to the Court that the State has no objection to the substitution

of the "The Office of Post-Conviction Defender" for local counsel, Scott G. Kirk; and,

It is therefore ordered that Scott G. Kirk is hereby permitted to withdraw as

counsel for record for the Petitioner, Jon Hall and the "The Office of the Post-Conviction

Defender" is hereby substituted as counsel for Jon Hall and they are hereby appointed

as his attorneys of record in this matter and a hearing in this matter has previously been

set by the Court for March 12, 2001, at 8:00 a.m. by Order of the Court of December 14,

2000.

Entered this the ___5ᵗʰ___ day of January, 2001.

_____
HONORABLE ROY B. MORGAN, JR.

APPROVED FOR ENTRY:

_____
SCOTT G. KIRK
Attorney for Defendant
215 East Main Street
P.O. Box 1486
Jackson, Tennessee 38302-1486
(901) 423-2229

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been mailed by U.S.
Mail, postage prepaid, this __4th__ day of January, 2001 to: **Alfred L. Earls**, Assistant
District Attorney General, P.O. Box 2825, Jackson, Tennessee 38302; **Marjorie A.
Bristol**, Staff Attorney, Office of the Post Conviction Defender, 460 James Robertson
Parkway, Second Floor, Nashville, Tennessee 37243; and **Jon Hall** #238941,
Riverbend Maximum Security Institution, 7475 Cockrill Bend Rd., Nashville, Tennessee
37201-1010.

_____
SCOTT G. KIRK

**FILED** c

JUDY BARNHILL, CIRCUIT COURT CLERK

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE

FEB 06 2001

8:35 _____ DEPUTY CLERK

A.M. _____ P.M.

|  |  |  |
|---|---|---|
| JON HALL, | ) | |
| | ) | |
| Petitioner, | ) | Madison County No. 96-589 |
| v. | ) | |
| | ) | C 00-422 |
| STATE OF TENNESSEE, | ) | Post-Conviction No. ~~CO422~~ |
| | ) | |
| Respondent. | ) | Death Penalty Post-Conviction |
| | ) | |

### MOTION FOR EXTENSION
### TO FILE HIS AMENDED PETITION

Petitioner, Jon Hall, pursuant to Article I, §§ 8 and 17, of the Tennessee Constitution; the

Fourteenth Amendment to the United States Constitution; Tennessee. Code Annotated 40-30-201,

*et seq.*; and his rights to a full and fair hearing and due process, moves for a one hundred and eighty

(180) days extension of time from now to file his amended post-conviction petition. Petitioner

submits that this extension is reasonable under the circumstances of this case as outlined below.

Regarding the propriety of seeking an extension of time in which to file an amended petition

and for an appropriate continuance of the currently set hearing date, the recent case of Russell

Strader, Jr. v. State, No. 03C01-9611-CC-00433 (Tenn. Cr. App., Jan. 8, 1998), 1998 WL 6932 (see

attached copy) construing the new Post-Conviction Act[1] time limits is relevant. That court held "it

is the general rule in Tennessee that statutory provisions which relate to the mode or time of doing

an act to which the statute applies are *not to be mandatory, but directory only*." (Emphasis added).

---

[1] The new Post-Conviction Procedure Act became effective May 10, 1995.

1

Id This general rule is especially applicable where there is no showing of prejudice. Sl. op,. p. 5.

The reasons in support of this motion are set forth as follows:

1.    On January 5, 2001, this Court entered an order appointing the Office of the Post-Conviction

Defender as counsel for Petitioner. Counsel never received a copy of that order. Mr. Scott

Kirk, however, the attorney who was briefly appointed to represent the Petitioner before

asking to withdraw, did inform counsel that he had been allowed to withdraw and that the

Office of the Post-Conviction Defender was appointed to represent Mr. Hall.

2.    It is counsel's understanding, after speaking with the Madison County Circuit Court Clerk's

Office and Judge Morgan's secretary, that no date for the filing of an amended post-

conviction petition was set; however, a date for a post-conviction hearing is on the docket

for March 12, 2001.

3.    The undersigned counsel and co-counsel Paul Morrow cannot in good conscience file an

amended petition that fairly and adequately raises all the claims of constitutional error and

the facts in support thereof by the date of the hearing, nor can counsel be prepared to proceed

with Petitioner's post-conviction hear by that time.

4.    On December 11, 2000, the Office of the Post-Conviction Defender moved to a new location.

It took nearly four weeks to get the computers in the office operational. The bulk of the

PCD operational case information are on computer files.

5.    The recent extraordinary workload, described below, of undersigned counsel and staff of the

Office of the Post-Conviction Defender, in addition to the move, requires an extension of

time to file this amended petition.

6.    Both counsel to this petition carry a caseload equal to any in this office, but Ms. Bristol has

2

had the additional responsibility to assist in the final stages of Mr. Workman's appeals.

7.    The Tennessee Supreme Court has set Mr. Workman's execution for January 31, 2001. The
      preparations for this defense effort have had a serious impact upon counsel's ability to fully
      investigate and prepare Petitioner's amended petition. The entire legal and investigative staff
      have performed extensive duties seven days a week with extraordinary overtime related to
      the impending execution.[2]

8.    Counsel has only begun to sort through the voluminous records in this case. Counsel would
      note that the Petitioner had a succession of three sets of two attorneys and that each set of
      attorneys records and contacts with the Petitioner is extensive. Counsel has not yet had time
      to begin an investigation of the facts and circumstances surrounding the conviction and
      sentence of Petitioner.

9.    Further investigation is also needed before counsel can adequately assess the need to present
      the factual basis needed to request funding for expert services from this Court. *See* Owens
      v. State, 908 S.W.2d 923, 928 (Tenn. 1997).

10.   All of these facts combined have made it impossible for undersigned counsel to complete the
      investigation necessary to file an amended post-conviction petition on Petitioner's within the
      next 180 days.

11.   Furthermore, counsel's statutory and ethical obligations to the petitioner can only be fulfilled
      if given additional time to adequately investigate the case before an amended petition is to
      be filed. Counsel is obligated to "interview relevant witnesses, including petitioner and prior

---

[2] Mr. Workman received a temporary stay of execution on January 26, 2001 which may
be lifted at any moment. Therefore, work regarding his case is ongoing.

3

counsel, and diligently investigate and present all reasonable claims." Tenn.Sup.Ct.R. 28 §
6(C)(2). The sweeping assignment issued to post-conviction counsel by Rule 28 § 6(C)(2)
is accompanied by counsel's ethical obligation to zealously represent his or her client "and
to present for adjudication any lawful claim, issue or defense." Tenn.Sup.Ct.R. 8, EC 7-1.

12.    The American Bar Association's Standards for Criminal Justice: The Defense

Function imposes upon post-conviction counsel the duties that attend the representation of

defendants at trial. The Defense Function § 4-8.5. Specifically, counsel must establish a

relationship with his or her client. The Defense Function § 4-3.1. Counsel must interview

his or her client. The Defense Function § 4-3.2. Counsel must promptly pursue available

procedure and engage in a motions practice to protect his or her client's rights. The Defense

Function § 4-3.6. Counsel must conduct a prompt investigation of the circumstances of the

case and to explore all avenues leading to facts relevant to the merits of the case and the

penalty, including efforts to secure information in the possession of the prosecution and law

enforcement authorities. The Defense Function § 4-4.1.

19.    The comprehensive nature of a competent and adequate post-conviction practice requires

additional time be granted in this case. The American Bar Association's Manual for

Attorney's Representing Death-Sentenced Prisoners in Post-Conviction Proceedings outlines

the extensive and complex effort required in order to provide competent and adequate capital

post-conviction litigation. "[C]ounsel must, essentially, prepare as though [post-conviction

proceedings represent a total re-litigation of the issues at trial.] [Counsel] must not only be

thoroughly familiar with the entire record below, [he or she] must also do a great deal of

independent factual investigation outside the record." Fins, Deborah, Manual for Attorney's

4

Representing Death-Sentenced Prisoners in Post-Conviction Proceedings, American Bar

Association, 1987, p. 2. Ms. Fins identifies the following among those efforts necessary for

adequate and competent capital post-conviction representation are: (1) obtain and thoroughly

review the pre-trial, trial and appellate record; (2) obtain and analyze trial-counsel's files; (3)

interview trial counsel; (4) obtain and analyze state and law enforcement files; (4) interview

client; (5) interview members of client's family and household; (6) interview others

including friends, neighbors, employers, co-workers, teachers, spouses and

girlfriends/boyfriends, crime-scene witnesses, investigating officers; (7) gather relevant

records for client and others including school, medical, military and prison records; (8)

consult with experts; and (9) visit crime-scene and examine physical evidence.

20.   A similar, comprehensive effort is outlined in the chapter devoted to state post-

conviction in The Tennessee Death Penalty Defense Manual: Tools for the Ultimate

Trial, 3rd Ed., Vol. III., Tennessee Association of Criminal Defense Lawyers, 1992.

21.   Counsel is unable to adequately fulfill the broad terms of these statutory and ethical

requirements within the allotted time, especially as they are heightened by the fact that

Petitioner faces the death penalty. The 1995 Post-Conviction Act applies to both capital and

non-capital post-conviction litigation. In this post-conviction case, where petitioner has been

sentenced to death, the issues which must be investigated and pled arise from the equivalent

of two trials: the guilt-innocence phase, and the penalty phase. See e.g. Lockett v. Ohio, 438

U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Counsel cannot identify, develop and

present all reasonable claims until after the required interviews and investigation have been

concluded. An extension of time for filing an amended petition is necessary to permit the

5

Office of the Post-Conviction Defender to meet its heightened statutory and ethical obligations.

22.    Tenn. Code Ann. § 40-30-207 (b)(2) provides for the filing of an amended petition in a post-conviction within 30 days of the entry of a preliminary order, but also allows for an extension of that time upon a showing of good cause. As previously noted, the Court of Criminal Appeals in Russell Strader, Jr. v. State, No. 03C01-9611-CC-00433 (Tenn. Cr. App., Jan. 8, 1998), 1998 WL 6932 (see attached copy) allows this Court to grant an extension of time where there is no showing of prejudice.

23.    The Post-Conviction Procedure Act limits all petitioners (capital and non-capital), to one (1) post-conviction petition. "In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment." T.C.A. § 40-30-202(c). This severe limitation mandates that post-conviction counsel explore every possible claim, as only those claims involving new scientific evidence of innocence or those which depend on newly identified constitutional law can be heard in successive post-conviction petitions. T.C.A. §§ 40-30-202(c), 40-30-217. The requested extension is necessary to adequately investigate, develop and prepare an amended post-conviction petition which merits the finality now imposed by the Post-Conviction Procedure Act.

24.    In addition, the 1996 Anti-Terrorism and Effective Death Penalty Act (AEDPA), severely truncated federal court review of state convictions on habeas corpus. One of the effects of the 1996 Act is to defer to state court fact-finding. AEDPA also limits the circumstances under which a petitioner is entitled to an evidentiary hearing on her claims in federal court. 28 U.S.C.A. §2254(e) provides:

6

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a determination of a
factual issue made by a State court shall be presumed to be correct. The applicant
shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State
court proceedings, the court shall not hold an evidentiary hearing on the claim
unless the applicant shows that - -

(A) the claim relies on - -

(i) a new rule of constitutional law, made retroactive to cases on collateral
review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through
the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and
convincing evidence that but for constitutional error, no reasonable fact finder would
have found the applicant guilty of the underlying offense.

25.    Counsel for the Petitioner must therefore be diligent in raising every known fact and issue
in his amended petition before this court to protect Mr. Hall's access to federal habeas corpus
review in the future. Failure to do so may result in a federal court finding that a claim was
defaulted or not properly exhausted in state court. Mr. Hall will be held on federal habeas
corpus review to the facts that are developed in state court.

7

judgment under attack?

    Yes __     No _x_

    (a)   If so, give name and location of court which imposed sentence to be served in the future: _____

    (b)   Give date and length of sentence to be served in the future:

    (c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

    Yes __     No __

22.   What date is this petition being given to prison authorities for mailing?

23.   That the petitioner has submitted his own issues on seperate Motion. see The attached Motion for Post-Conviction Relief.

Wherefore, petitioner prays that the court grant petitioner relief to which petitioner may be entitled in this proceeding.

### PETITIONER'S VERIFICATION UNDER OATH
### SUBJECT TO PENALTY FOR PERJURY

    I swear (or affirm) under penalty of perjury that the foregoing is true and correct.
Executed on __11/09/00__.

                                    _____
                                      Signature of Petitioner

**Appendix B.  Affidavit of Indigency.**

I, <u>Jon Halll</u>, do solemnly swear (or affirm) that because of my poverty, I am not able to bear the expenses of the action which I am about to commence.  I further swear (or affirm) that, to the best of my knowledge, I am justly entitled to the relief sought.

_____
Petitioner

SWORN TO AND SUBSCRIBED before me this
the _9_ day of _Nov._____, 2000.

_____
Notary Public

My Commission Expires SEPT. 29, 2001

My commission expires: _____

26.     Counsel cannot in good faith certify that all claims and facts in support of claims have been
        raised if forced to file an amended petition on February 1, 2001. Any amended petition filed
        on that date necessarily will be riddled with disclaimers to the effect that facts and claims
        remain unknown to counsel. Tennessee Rules of Supreme Court, 28, App. C provides for
        the "Certification of Counsel", to be signed by counsel on the petition's form. This
        certification reads in part: "I have thoroughly investigated the possible constitutional
        violations alleged by petitioner, . . . I have raised all non-frivolous constitutional grounds .
        . . I am aware that any ground not raised shall be forever barred.
        . . ."

27.     Petitioner under the current circumstances would be denied a full and fair hearing of his post-
        conviction claims for relief if forced to file his amended post-conviction petition on February
        1, 2001. The foregoing reasons establish good cause, beyond the press of other business, for
        extending the time for filing an amended post-conviction petition in this case. Tenn. Code
        Ann. § 207(b)(2). In the interests of justice and to insure that all issues are thoroughly
        reviewed as intended by the Post-Conviction Act, this Court should grant Petitioner's motion
        seeking a one hundred and eighty day (180) day extension for filing an amended post-
        conviction petition.

8

**WHEREFORE,** Petitioner respectfully moves this Court to enter an Order granting Petitioner a one hundred and eighty (180) day extension of time, in which to file an amended post-conviction petition in this case.

Respectfully Submitted,

MARJORIE A. BRISTOL, BPR 19988
Assistant Post-Conviction Defenders
530 Church Street, Suite 600,
Cornerstone Building,
Nashville, TN 372 43
(615) 741-9331
(615) 741-9430 fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of this motion was mailed, via U.S. Mail, postage pre-paid, and/or via facsimile followed by a copy sent via U.S. Mail postage pre-paid, delivered to District Attorney General James G. Woodall, 225 Martin Luther King Dr., P.O. Box 2825, Jackson, TN 38302-2825 on this 15+ day of February, 2001.

Marjorie A. Bristol

9

STATE OF TENNESSEE            )
                             )
                             )
COUNTY OF DAVIDSON            )

### AFFIDAVIT OF MARJORIE A. BRISTOL

Before me, the undersigned authority, personally appeared MARJORIE A. BRISTOL who upon

oath deposes and says:

1. My name is Marjorie A. Bristol. I am an attorney licensed to practice in good standing in the

State of Tennessee.

2. I certify that all of the facts contained in this motion are true to the best of my knowledge.

AFFIANT SAYS NOTHING MORE.

Marjorie A. Bristol

Sworn to and subscribed before me on
this _____ day of February, 2001

Notary Public

My Commission Expires: _____ My Commission Expires MAY 30, 2004

10

STATE OF TENNESSEE
**OFFICE OF THE POST CONVICTION DEFENDER**
530 Church St.
Suite 600
NASHVILLE, TENNESSEE 37243

Marjorie A. Bristol
Staff Attorney

Phone: 615-741-9331
Fax: 615-741-9430

Judy Barnhill
Circuit Court Clerk
515 Liberty St.
Jackson, TN 37301

February 5, 2001

Dear Ms. Barnhill:

Please find attached a motion to be filed in the post-conviction case of Jon Hall v. State
(#CO422). Thank you for your assistance in this matter. Please do not hesitate to call me at the
above number if you have any questions.

Sincerely,

Marjorie A. Bristol

IN THE CIRCUIT COURT OF MADISON COUNTY
DIVISION I

JON HALL                          )
                                  )
VS                                )    NO. C00-422
                                  )
STATE OF TENNESSEE                )

**STATE'S OPPOSITION TO MOTION FOR EXTENSION TO FILE AMENDED
PETITION**

Comes now the State of Tennessee by and through the Office of the District Attorney
General and in opposition to the above referenced motion states:

180 days is an unreasonable amount of time for an extension. While counsel may be
busy he is no more busy than any other party or the Court involved in this matter.

The Office of the Post Conviction Defender has been involved with this case longer
than the date of the order substituting them as counsel in this matter as statements from
former Scott Kirk to the Court in his motion for substitution indicate. The state's original
copy of the post conviction petition while allegedly pro se was received in an envelope
with the Post Conviction Defender's return address.

Wherefore premises considered the State hereby requests that the Court deny the above
styled pleading.

Respectfully Submitted

Assistant District Attorney

Certificate of Service

I hereby certify that a true and exact copy of the foregoing was delivered to Office of the
Post Conviction Defender on or before the filing date as affixed by the Clerk of this Court
this the 12th day of February ,2,001.

Assistant District Attorney

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE

**FILED**
JUDY BARNHILL, CIRCUIT COURT CLERK
FEB 13 2001
EE
DEPUTY CLERK
A.M.
2:35
P.M.

| | | |
|---|---|---|
| JON HALL, | ) | |
| | ) | |
| Petitioner, | ) | Madison County No. 96-589 |
| v. | ) | |
| | ) | C-00-422 |
| STATE OF TENNESSEE, | ) | Post-Conviction No. ~~C-0422~~ |
| | ) | |
| Respondent. | ) | Death Penalty Post-Conviction |

### ORDER

This matter is before the Court on Petitioner's motion for a one hundred and eighty (180) day extension of time to file the amended post-conviction petition in this case. This Court having reviewed the motion of Petitioner, and otherwise being sufficiently advised, and good cause having been demonstrated by Petitioner, it is hereby ordered that Petitioner's motion is **GRANTED**.

It is hereby **ORDERED** that the date for the filing of Petitioner's amended petition is extended for one hundred and eighty (180) days. Petitioner's amended petition is due on or before the _6th_ day of _August_, 20001. The hearing in this cause is re-set to September 10, 2001, @ 8:00 am

ENTERED this _6th_ day of _February_, 2001

_____
Judge Roy B. Morgan, Jr.

Submitted for entry this 1st day of February, 2001:

_Marjorie A. Bristol_

MARJORIE A. BRISTOL, BPR 19988
Assistant Post-Conviction Defenders
530 Church Street, Suite 600,
Cornerstone Building,
Nashville, TN 372 43
(615) 741-9331
(615) 741-9430 fax

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of this motion was mailed, via U.S. Mail, postage pre-paid, and/or via facsimile followed by a copy sent via U.S. Mail postage pre-paid, delivered to District Attorney General James G. Woodall, 225 Martin Luther King Dr., P.O. Box 2825, Jackson, TN 38302-2825 on this ___ day of February, 2001.

_Marjorie A. Bristol_

Marjorie A. Bristol

FILED C

JUDY BARNHILL, CIRCUIT COURT CLERK

MAR 07 2001

DEPUTY CLERK

A.M. 1:00 P.M.

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE

JON HALL,                          )
                                   )
            Petitioner,            )    Madison County No. 96-589
                                   )
v.                                 )
                                   )
STATE OF TENNESSEE,                )    Post-Conviction No. ~~CO422~~
                                   )    C 00 -422
            Respondent.            )    Death Penalty Post-Conviction
                                   )

## MOTION TO WITHDRAW

Counsel for Petitioner must respectfully move this court to be allowed to withdraw from

further representing Petitioner based upon a conflict of interest. The Code of Professional

Responsibility, specifically Sup. Ct. R. 8, DR 5-105 (B), requires that counsel move to withdraw

from any further representation of Petitioner. The Code of Professional Responsibility,

specifically Sup. Ct. R. 8, DR 4-101 (B), also precludes counsel for Petitioner from revealing the

nature of that conflict of interest. *See* Mills v. Crane, 1987 WL 9165, *4 ( Tenn. Ct. App. 1987)

(perm. app. denied July 27, 1987) (copy attached) ("The obligation of an attorney to preserve the

confidences and secrets of a client stands as a bedrock principle of the Anglo-American legal

system.").

Respectfully Submitted,

MARJORIE A. BRISTOL, BPR 19988
Assistant Post-Conviction Defender
530 Church Street, Suite 600,
Cornerstone Building,
Nashville, TN 372 43
(615) 741-9331
(615) 741-9430 fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of this motion was mailed, via U.S. Mail, postage pre-paid, and/or via facsimile followed by a copy sent via U.S. Mail postage pre-paid, delivered to District Attorney General James G. Woodall, 225 Martin Luther King Dr., P.O. Box 2825, Jackson, TN 38302-2825 on this 5ᵗʰ day of March, 2001.

Marjorie A. Bristol

1987 WL 9165                                          Page 8
(Cite as: 1987 WL 9165 (Tenn.Ct.App.))
C

Only the Westlaw citation is currently available.

SEE COURT OF APPEALS RULES 11 AND 12

Court of Appeals of Tennessee, Eastern Section.

William R. MILLS and wife Mary Margaret Mills,
Plaintiffs-Appellants,
v.
Donald E. CRANE, Individually, Donald E. Crane,
Incorporated, and Bank of Roane
County, Defendants-Appellees.

April 10, 1987.
Permission to Appeal Denied by Supreme Court July
27, 1987.

Roane Chancery, C.A. # 66, Billy Joe White,
Chancellor, (Sitting by Interchange).

Gerald Largen, Kingston, for plaintiffs-appellants.

J. Polk Cooley6 and Pat Rice Fritts, Rockwood, for
Cranes.

William A. Simms, Knoxville, for Bank of Roane
County.

OPINION

GODDARD, Judge.

*1 In this suit, seeking damages principally in tort,
William R. Mills and his wife Mary Margaret Mills
appeal dismissal of their action for failure to
prosecute. By their issues on appeal they contend
the Court was in error in not granting a continuance,
in failing to specify in its dismissal for failure to
prosecute that the dismissal would not operate "as an
adjudication upon the merits," and in not
disqualifying counsel for Defendants Crane because
of prior representation of the Millses and their
family.

This case was initially filed on June 14, 1984, and
was continued on one occasion because of the illness
of counsel for Donald E. Crane and Donald E.
Crane, Inc. Thereafter, subsequent to numerous
discovery depositions being taken and various
motions for summary judgment being made and
overruled, set for trial on June 11, 1986. It appears
that on the day before trial Gerald Largen,
representing the Millses, initiated a conference call
with the Chancellor and counsel for the Defendants

to advise them that Mr. Mills was ill and would be
unable to proceed the next day.

Counsel was advised to obtain the appropriate
medical reports relative to Mr. Mills' physical
condition and the matter would be considered on the
morning of trial.

The next day Mr. Largen filed the following
affidavit of Mr. Mills:

Now comes William R. Mills and makes oath that
he is unable to appear and prosecute his case against
Donald E. Crane and Donald E. Crane, Inc., and
the Bank of Roane County because of his physical
condition; that he sought and received treatment at
the Oak Ridge Hospital last evening and has been in
consultation with his usual physician, Dr. Catherine
Boatwright, and feels that it would be injurious to
his health to undergo the stress of an appearance in
Court at this time; and, he is accordingly, due to
his health, unable to appear and give testimony, or
otherwise advise with his legal counsel.

He also presented a medical report dated June 10
from Catherine A. Boatwright of Chattanooga who
had treated Mr. Mills through the years, which
stated the following:

Above patient is unable to sit for long periods of
time now because of swelling of feet and diabetic
neuropathy pain.

It does not appear that Dr. Boatwright had
examined Mr. Mills on the date of the report.
There was also presented in evidence a report from
Methodist Medical Center of Oak Ridge of the same
date, which shows that certain tests were
administered, and that he was seen by an emergency
room physician. The patient information sheet
prepared by the Medical Center on the same
occasion shows that as of 7:25 p.m. Mr. Mills'
blood pressure was 182/110 and that at 8:45 p.m.
his blood pressure was 180/110 in the right arm and
170/108 in the left. His blood sugar was 307.
Also noted on this information sheet was the
following unsigned instructions:

Stay on diet--Decrease salt Increase NPH insulin 5
units daily Follow sugars carefully Contact Dr.
Bunick & Martin for follow-up this week.

*2 The Court, after receiving the material above set
out and listening to the arguments of counsel, then

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1987 WL 9165                                          Page 9
(Cite as: 1987 WL 9165, *2 (Tenn.Ct.App.))

stated the following:

THE COURT: It doesn't matter what's happened
in this lawsuit before. It's obvious to the Court ---I
read the complaint and now the answer and all the
motions involved in this lawsuit, and it's a very
large claim. It obviously involves personalities. It
obviously will be a difficult lawsuit to try. it's just a
situation that I need evidence and I need something
to go on on a motion to continue. On the
conference call yesterday, Mr. Largen was relating
the information he had, that his client was unable to
appear, unable to stand trial. The defense counsel
stated we had seen him all over the place, walking
and sitting at his store and things of that nature. I
just have to have more than what's before me to rule
that the plaintiff is entitled to a continuance. What's
happened in this lawsuit before on continuances, it
doesn't mean a thing. First of all, I wasn't in any
of the previous cases. And the very least that I
think the Court should look at or have before it is
the plaintiff testifying that--as to his present
condition. If he cannot obtain adequate medical,
which what's before me now is not adequate, I think
the very least that I have to have is him testifying.
And if he says that he's ill, counsel will respect him
and not put him under any duress. But that's the
least that I am going to require, that he himself
convince the Court that he is unable to stand the
three-day trial.

MR. LARGEN: Well, Your Honor, if you will
give me a few minutes, I will see if he is able to
come over here.

The Court then stood in recess to enable Mr.
Largen to contact his client. After doing so, Mr.
Largen advised the Court that Mr. Mills "just
doesn't feel he is in any condition to come in and
testify today."

Whereupon the Court overruled the motion. The
Court's action was prompted by several reasons,
including the fact that Mr. Crane had traveled from
Mexico, where he was then residing, for the purpose
of trial, and that no medical report was forthcoming
showing that appearing in trial court would be
detrimental to Mr. Mills' health, even though he had
seen the emergency room physician on the night
before. An additional reason, which may have
been the principal one, was because Mr. Mills
refused to come to court to let the Court observe
him and hear his testimony relative to his physical
condition. This, despite the reports that Mr. Mills
had been seen "all over the place, walking and

sitting at his store and things of that nature."

After the Court had overruled the motion for
continuance, the following occurred:

MR. LARGEN: ... if Your Honor please, we are
not in the position to proceed further, because I
don't have a client.

THE COURT: I assume you're taking a voluntary
nonsuit?

MR. LARGEN: No, Your Honor. I assumed you
would dismiss or failure to prosecute.

THE COURT: All right. We dismiss for failure
to prosecute.

*3 MR. LARGEN: Thank you, Your Honor.

Returning to the issues on appeal, we note that the
granting or refusing to grant a continuance rests
within the sound discretion of the Court, and the
Trial Court's decision will not be reversed in the
absence of a clear showing of abuse of discretion.
Morrow v. Drumwright, 202 Tenn. 307, 304
S.W.2d 313 (1957); Barber & McMurry v. Top-
Flite Development, 720 S.W.2d 469
(Tenn.App.1986).

Under the facts of the present case above detailed
we find no abuse of discretion in the Trial Court's
action.

As to issue two, Rule 41 of the Tennessee Rules of
Civil Procedure, as pertinent to this appeal, provides
as follows:

41.02. Involuntary Dismissal-Effect Thereof.(1)
For failure of the plaintiff to prosecute or to comply
with these rules or any order of court, a defendant
may move for dismissal of an action or of any claim
against him.

....

(3) Unless the court in its order for dismissal
otherwise specifies, a dismissal under this
subdivision and any dismissal not provided for in
this Rule 41, other than a dismissal for lack of
jurisdiction or for improper venue or for lack of an
indispensable party, operates as an adjudication upon
the merits.

Thus, a dismissal for failure to prosecute without
more operates as an adjudication on the merits. It

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1987 WL 9165                                                        Page 10
**(Cite as: 1987 WL 9165, \*3 (Tenn.Ct.App.))**

may well have been that because of the difficulty in
again serving Mr. Crane, who was then residing in
Mexico, counsel felt it was the wisest course to rely
upon reversing the Trial Court for failing to grant a
continuance rather than taking a non-suit, or it may
have been that counsel was unaware of the
provisions of Rule 41. However that may be, it is
clear that the Court's dismissal was in accordance
with counsel's assumption. This being the case,
even if the Court's failure to limit the effect of the
dismissal for failure to prosecute was error, it was
invited error, which under Rule 36 of the Tennessee
Rules of Appellate Procedure is not subject to
reversal.

Before leaving this point, we also observe that no
post-judgment motion was made relative to this point
even though counsel was sent a copy of the proposed
order on June 12, 1986, almost three weeks before
its entry on June 30.

The last issue was determined on the basis of
affidavits submitted by Mr. Mills and Mr. Cooley,
counsel for Crane and the Crane Corporation. Mr.
Mills' affidavit in support of his motion to disqualify
alleges generally that Mr. Cooley started handling
affairs for the Mills family after joining the law firm
formerly headed by Judge McCluen with his
representation continuing "up until very recently."
The following matters were specifically set out,
wherein it was contended Mr. Cooley acted as
counsel:

1. A condemnation suit concerning the Interstate
Highway No. 40.

2. A damage suit by Ross claiming $250,000-00
damages for which Mr. cooley received a fee of
approximately $12,000.00.

3. The Mays horse back suit.

4. Matters connected with the right-of-way for
Roane Electric Corporation on affiant's mother's
property.

\*4 5. The deed work concerning the Butler
property.

6. Numerous and sundry contracts and agreements.

Mr. Cooley's affidavit in opposition stated as to the
condemnation case that it was handled to its
conclusion by his former law partner, Judge
McCluen, even after he had been elected judge.

The affiant conceded that he had worked with Judge
McCluen on the case.

The Ross damage suit was concluded in August
1972, which was the last time that Mr. Cooley was
employed by Mr. Mills or his wife.

In the horseback suit Mr. Cooley represented Mr.
Mills' insurance company.

In the right-of-way controversy Mr. Cooley
represented Tennessee Products Corporations'
successor, Roane Electric Furnace,in negotiating
modifications of a right-of-way agreement with Mr.
Mills' mother.

Mr. Cooley was not aware of item 5 relative to any
deed work as to Butler property, although he
conceded he may have handled other contracts and
agreements with some of the Millses, but has no
present recollection of such representation.

Mr. Cooley further states that "he has no
knowledge as to any of the issues in the current
lawsuit which have come to him through any past
relationship with William R. Mills or any of his
family."

The Chancellor, after reviewing the affidavits, was
of the opinion that there was insufficient cause for
removing Mr. Cooley as counsel.

We have found only one Tennessee case that
addresses issue three. In Autry v. State, 1
Tenn.Crim.App. 95, 97, 430 S.W.2d 808, 809
(1967), Judge Walker of the Court of Criminal
Appeals, speaking in general terms, stated the
following:

While this question is not found in our reported
cases in a criminal case, it has been passed upon in
other jurisdictions. It has long been firmly
established, both in the Canons of Professional
Ethics and by judicial opinions, that attorneys cannot
represent conflicting interests or undertake to
discharge inconsistent duties. When an attorney has
once been engaged and received the confidences of
his client, he cannot enter the service of those
whose interests are adverse to that of his client or
former client. The rule is a rigid one, and it is well
that it is so. An attorney cannot be permitted to
participate in the prosecution of a criminal case if,
by reason of his professional relation with the
accused, he has acquired knowledge of facts upon
which the prosecution is predicated, or which are

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1987 WL 9165                                          Page 11
(Cite as: 1987 WL 9165, *4 (Tenn.Ct.App.))

closely interwoven therewith.

Two cases from sister states are more specific. In National Texture Corp. v. Hymes, 282 N.W.2d 890, 894 (1979), the Supreme Court of Minnesota stated the following:

An attorney should not use information he received in the course of representing a client to the disadvantage of that client.   In this regard, the attorney should exercise care to prevent disclosure of confidences and secrets of one client to another and decline employment that would require such disclosure.      ABA    Code    of    Professional Responsibility EC 4-5.   See, also, id.   **DR 4-101**. This obligation to preserve the secrets and confidences imparted by a client continues even after the termination of employment. ABA Code of Professional Responsibility EC 4-6. An attorney should similarly refrain from representing a party in an action against the former client where There is an appearance of a conflict of interest or a possible violation of confidence, even if such may not be true in fact. 2 American Bar Association Committee on Ethics and Professional Responsibility, Informal Ethics Opinions 23 (1975).    The purpose for disqualification of an attorney in such situations is to ensure the attorney's absolute fidelity and to guard against inadvertent use of confidential information. Ceramco, Inc. v. Lee Pharmaceuticals, 510 F.2d 268, 271 (2 Cir.1975).

*5 The test generally applied to determine the existence of a conflict of interest is whether there is a substantial relationship between the subject matters of a pending action and those matters in which the attorney is alleged to have previously represented the client. Redd v. Shell Oil Co., 518 F.2d 311 (10 Cir.1975); T.C.   Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D.N.Y. 1953). Once the substantial relationship test is met, it will be assumed that confidences bearing on the subject matter of the current representation were disclosed. Richardson v. Hamilton International Corp., 469 F.2d 1382, 1385 (3 Cir.1972), certiorari denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); T.C.   Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265, 268 (S.D.N.Y.1953).

The other case, Reardon v. Marlayne, Inc., 395 A.2d 255 (1978), although authored by a Judge of the Superior Court of New Jersey, was affirmed by the Superior Court, Appellate Division, 400 A.2d 490 (1979).   The Judge of the Superior Court laid down the following rule (395 A.2d at 257):

The obligation of an attorney to preserve the confidences and secrets of a client stands as a bedrock principle of the Anglo-American legal system. it is universally recognized by Canon 4 of the ABA Code of Professional Responsibility, and has been codified by our court rules.   D.R. 4-101. The resolution of the instant case depends upon its application to the particular facts herein involved, viewed in the light of the further admonition of the Canon that attorneys must avoid even the appearance of impropriety.    Canon 9 of the ABA Code of Professional Responsibility.

It is clear that an attorney may not appear against a former client in the same litigation.   In re Blatt, 42 N.J. 522, 201 A.2d 715 (1964).    And this is so even where the new representation is by his firm and not the disqualified attorney personally. Opinion No. 313, 98 N.J.L.J. 753 (1975).    The application becomes more difficult however, when the new representation involves a different case and here the rule has been laid down that an attorney may not appear in substantially related matters.    Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562, 570 (2 Cir.1973); American Roller Company v. Budinger, 513 F.2d 982, 984 (3 Cir.1975).    The standard was best articulated in T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D.N.Y.1953) where the court said:

"I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.   The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.   It will not inquire into their nature and extent.   Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." (Id. at 268-269)

*6 The transaction giving rise to this suit was an aborted sale of real estate owned by the Millses to the Crane Corporation in the fall of 1983, culminating in a contract dated November 4, 1983. Upon considering the nature of this suit (see appendix for 19 separate counts seeking relief) and applying the facts shown by the affidavits to the case law above noted, we conclude the Trial Court was not in error in failing to disqualify counsel for the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1987 WL 9165
(Cite as: 1987 WL 9165, *6 (Tenn.Ct.App.))

Cranes.

For the foregoing reason the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against the Plaintiffs and their surety.

FRANKS, J., and INMAN, Special Judge, concur.

### APPENDIX

COUNT I: The defendant, Donald E. Crane, Inc., is guilty of breach of contract.

COUNT II: The defendant, Bank of Roane County, is guilty of violation of T.C.A. § 47-15-113, by inducing, or procuring, the breach of said contract.

COUNT III: All defendants are guilty of the tort of conspiracy.

COUNT IV: All defendants are guilty of the legal tort of deceit.

COUNT V: All defendants are guilty of the equitable tort of fraud.

COUNT VI: The Bank of Roane County is guilty of the tort of libel through the publication of the aforementioned foreclosure notice.

COUNT VII: The Bank of Roane County is guilty of the tort of slander, and/or libel in its dealings with the Small Business Association.

COUNT VIII: The defendant, Crane, is guilty of a violation of the federal bankruptcy act by the fraudulent inducement of the withdrawal of complainants' petition.

COUNT IX. All defendants are guilty of conspiracy to defraud the third party beneficiaries.

COUNT X: The defendant, Crane, is guilty of the common law action of conversion or trover as to the merchandise inventory and stock-in-trade which has been converted, and the proceeds of the sale thereof.

COUNT XI: All defendants are guilty of the common law act of conversion or trover insofar as the equipment, machinery, and fixtures are concerned.

COUNT XII: All defendants are guilty of the common law act of trespass.

COUNT XIII: The defendant, Crane, is answerable in an action for common law debt upon the promissory note exhibited hereto.

COUNT XIV: The defendant, bank, is answerable in an action for debt for all monies paid to them by complainants, or on their account, since the time of the notification of the contract with Crane.

COUNT XV: All defendants are answerable to an action in debt on behalf of the third party beneficiaries to the contract.

COUNT XVI: All parties are guilty of breach of the implied covenant of fair dealing.

COUNT XVII: The conduct of all the defendants is so outrageous and shocking and outside the accepted course of civilized behavior as to make them all guilty of the tort of outrageous conduct.

COUNT XVIII: All defendants are guilty of such inequitable and unconscienable activities and conduct as to require equitable relief.

COUNT XIX: All defendants are guilty of such outrageous and unconscienable conduct as to require the award of punitive, or exemplary, damages.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE

Jon Hall,                                        )
                                                 )
        Petitioner,                              )   Madison County 96-589
                                                 )
Vs.                                              )   Post-Conviction No. C-00-422-I
                                                 )
STATE OF TENNESSEE,                              )   Death Penalty Post-Conviction
                                                 )
        Respondent.                              )

FILED
JUDY BARNHILL CIRCUIT COURT CLERK
MAR 08 2001
DEPUTY CLERK
A.M. 2:35 P.M.

MOTION FOR THE ORDER FOR THE SURRENDER OF ATTORNEY WORK PRODUCT

Comes now the Petitioner, Jon Hall, by and through himself to request this
Honorable Court for an Order pursuant Tennessee Supreme Court Rule 8, DR-2-110
(A) (2) for the surrender of all the "Attorney Work Product" including all papers
and property of Jon Hall to be released to him promptly from the State Of Tenn.
Office Of The Post-Conviction Public Defender. In Support of this motion the
Petitioner shall show forth the following:

1. That attorney's from the State Of Tenn., Office Of The Post-Conviction
Public Defender began a fiduciary relationship with the petitioner shortly after
the Tennessee Supreme Court petition for rehearing of his direct appeal was
denied on December 27, 1999;

2. That during the course of this fiduciary relationship, the Petitioner
has signed numerous release forms for the release of various records pursuant to
the Madison County first-degree murder conviction and has worked with their
investigators gathering crucial statements and evidence, etcetera for the
preparation of an amended complaint that is due on the 6th of August 2001;

3. That based upon information and belief provided by attorney Marjorie
Bristol on March 2, 2001, a conflict of interest has arisen and requires this
Public Defender's Office to withdraw pursuant to T.C.A. § 40-30-307;

4. That due to the excessive amount of conflicts that have arisen in this
case requiring the services of over (12) attorneys to date to withdraw for one
reason or another, the petitioner cannot make knowing and intelligent decision
in regards to trusting any other court appointed fiduciaries in this matter.
Therefore, he cannot and does not intelligently accept substitute counsel without
having the requested indexed attorney work product to make this determination;

- 1 -

5. That due to the nature of the case and the ramifications stemming from an execution in the event of an unsuccessful post-conviction review occur, the Petitioner contends he has State and Federal Due Process and Equal Protection Constitutional Rights for a personal copy of all papers and property in the custody and control of the State Of Tennessee Post-Conviction Public Defender's Office to insure equal access to the courts. See: e.g. Crawford v. Logan, 656 S.W.2d 360, 363 (Tenn. 1983) (Client files / DR 2-110 (A) (2) );

7. That a complete copy of this file is further needed to determine exactly who knew, what, where, when, why, and how these attorney's acted in what manner in order to be able to effectively assist or present these facts in a court of law in an intelligent manner.

6. That a complete set of indexed files in this matter is needed to insure nothing will be overlooked that could be beneficial to assist another attorney if the Petitioner later determines that it will be necessary and / or wise to accept another attorney;

WHEREFORE, the Petitioner respectfully requests this Honorable Court to sign the attached order requiring the State Of Tennessee, Post-Conviction Public Defenders Office to surrender everything in their custody and control in this matter to him personally to insure Petitioner his Due Process & Equal Protection of the law in regard to his preparing or assisting himself in this matter.

Respectfully submitted,

Jon D. Hall # 238941
R.M.S.I. U-2 C-103
7475 Cockrill Bend Blvd.
Nashville, Tenn. 37209-1048

I ___Jon D. Hall___ ,, declare under the penalty of perjury under the laws of the State of Tennessee that the foregoing is true and correct except for the assertions made under belief and information and as to those are believed to be true and correct. Further affiant sayeth not.

CERTIFICATE OF SERVICE

I ___Jon D. Hall___ , hereby certify that I have mailed a true and exact copy of the foregoing motion and attached order to: (1) Office of the Clerk, Ms. Judy Barnhill, Criminal Justice complex 515 S. Liberty Street Jackson, Tenn. 38301; (2) James G. (Jerry) Woodall, District Attorney General, 26th Judicial District of Tennessee, Criminal Division, P.O. Box 2825 Jackson, Tenn. 38302; and (3) State Of Tennessee, Office Of The Post-Conviction Public Defender, C/O Ms. Marjorie Bristol, 530 Church Street, Suite 600 Nashville, Tenn. 37243, via United States mail on this the __5th__ day of March 2001.

- 2 -

FILED

JUDY BARNHILL, CIRCUIT COURT CLERK

MAR 22 2001

DEPUTY CLERK

A.M. 12:30 P.M.

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT
MADISON COUNTY, TENNESSEE

JON HALL,                          )
                                   )
            Petitioner,            )     Madison County No.  96-589
                                   )
v.                                 )
                                   )     C 00-422
STATE OF TENNESSEE,                )     Post-Conviction No.  ~~CO422~~
                                   )
            Respondent.            )     DEATH PENALTY CASE
                                   )

## MOTION TO APPOINT COUNSEL

Paul N. Buchanan moves this Court to appoint him as attorney representing the

Petitioner, Jon Hall, in this cause for the following reasons:

1.    As this Court is aware, a conflict of interest has arisen between the Post Conviction

      Defender's Office and Mr. Hall.  Appointment of new counsel is therefore necessary.

2.    I am an attorney licensed to practice law in Tennessee with experience in capital post-

      conviction cases and was previously employed by the Office of the Post-Conviction

      Defender.  My schedule and current case load will permit me to spend the time

      necessary to properly prepare this case.

3.    I have already begun establishing an attorney-client relationship with Mr. Hall by

      consulting with Mr. Hall on a separate but somewhat related matter.  In hope and

      anticipation of being appointed to Mr. Hall's case, I have already begun familiarizing

      myself with the case.

4.    I have practiced law from October, 1975, and was Board Certified in Criminal Law in

      Texas from 1981-1996.  I have handled 6 post-conviction cases in various stages, and

      have tried three capital cases at the trial court level.  I am currently working on one

      capital post-conviction case in Tennessee.

      WHEREFORE, I request appointment to represent the Petitioner in his post-conviction

proceedings.

                              Respectfully submitted,

                              Paul N. Buchanan, BPR 017697
                              1526 Crockett Hills Blvd.
                              Brentwood, Tennessee 37027
                              615-370-3709

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of this motion was mailed, via U.S. Mail, postage pre-paid, and/or via facsimile followed by a copy sent via U.S. Mail postage pre-paid, delivered to District Attorney General James G. Woodall, 225 Martin Luther King Dr., P.O. Box 2825, Jackson, TN 38302-2825 on this 22 day of March, 2001.

*Paul Buchanan*

Paul N. Buchanan

In the Circuit Court of Madison County
at Jackson, Tennessee, Division I

JON HALL                          )
                                  )
vs.                               )        DOC. No.: C00-422
                                  )                (96-589)
                                  )
STATE OF TENNESSEE                )
                Defendant.        )

## ORDER APPOINTING COUNSEL

This cause came on to be heard on this date upon the application of the
defendant for appointed legal counsel pursuant to TCA 40-30-207 and 40-14-202.
Whereupon from the examination by the Court, it is found that the defendant is
indigent and that the Office of Post Conviction Defender cannot represent this
defendant due to a conflict.

IT IS THEREFORE ORDERED that the Honorable LINDA S. TAYLOR,
206 East Main Street, Jackson, TN. 38301, is hereby appointed as counsel for the
indigent defendant as is provided by law.  This case is set for hearing on MONDAY,
SEPTEMBER 10, 2001, AT 8:00 A.M.

This is the 26th day of March, 2001.

Roy B. Morgan, Jr.
Circuit Judge, Division I
26th Judicial District

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been mailed, U. S. Postage paid, to the following: Honorable Linda S. Taylor  , Attorney at Law, Assistant District Attorney, Al Earls,  P. O. Box 2825, Jackson, TN.  38302.

This the 26th day of March, 2001.

_____

Barbara A. Page

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT
MADISON COUNTY, TENNESSEE

| | | |
|---|---|---|
| JON HALL, | ) | |
| | ) | |
| Petitioner, | ) | Madison County No. 96-589 |
| v. | ) | |
| | ) | |
| STATE OF TENNESSEE, | ) | Post-Conviction No. CO422 |
| | ) | |
| Respondent. | ) | Death Penalty Post-Conviction |

## ORDER

This matter is before the Court on counsel for Petitioner's motion to withdraw due to a

conflict of interest. The Court, having been apprised that an irreconcilable conflict of interest exists,

**GRANTS** the motion.

It is hereby **ORDERED** that the Office of the Post-Conviction Defender be allowed to

withdraw from further representation of Mr. Hall.

ENTERED this 26ᵗᴴ day of March , 2001

_____
Judge Roy B. Morgan, Jr.

Submitted for entry:

_____
MARJORIE A. BRISTOL, BPR 19988
Assistant Post-Conviction Defender
530 Church Street, Suite 600,
Cornerstone Building,
Nashville, TN 372 43
(615) 741-9331
(615) 741-9430 fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of this order was mailed, via U.S. Mail, postage
pre-paid, and/or via facsimile followed by a copy sent via U.S. Mail postage pre-paid, delivered to
District Attorney General James G. Woodall, 225 Martin Luther King Dr., P.O. Box 2825, Jackson,
TN 38302-2825 on this 23ʳᵈ day of March, 2001.

_____
Marjorie A. Bristol

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
AT JACKSON

| | | |
|---|---|---|
| JON HALL, | ) | |
| | ) | |
| Petitioner, | ) | R.D. No. 96-589 |
| | ) | |
| VS. | ) | Post-Conviction No. C00-422 |
| | ) | |
| STATE OF TENNESSEE, | ) | Death Penalty Case |
| | ) | |
| Respondent. | ) | |

---

MOTION TO APPOINT CO-COUNSEL

---

Comes now, Linda Sesson Taylor, Attorney at Law and states unto the Court as follows:

1. That on or about the 23rd day of March, 2001, this Court notified the Movant that she was being appointed to represent the above named Defendant on his post-conviction appeal.

2. That subsequent to said appointment the Movant has learned that the Petitioner has had two other attorneys, both of whom were allowed to withdraw after encountering difficulties with the Petitioner.

3. That the volume of the Petitioner's file indicates that it will be a difficult and time consuming case which will be rendered even more burdensome because of the travel required and the time constraints on the Movant as a result of her current case load.

4. Further, the Movant is currently undergoing a course of medical treatment that precludes frequent travel to Nashville and will severely curtail her normal work schedule for the next three months.

5. That the Movant request that the Court appoint Patrick Buchanan as Co-Counsel for the Petitioner for the following reasons:

a. Mr. Buchanan is a duly licensed attorney in the State of Tennessee with experience in capital post-conviction cases and was previously employed by the Office of the Post-Conviction Defender. His schedule is such that he has the time necessary to properly prepare this case.

b. He has already established a relationship with Mr. Hall and has some familiarity with this case.

c. He is in Nashville and would not incur the additional time and travel expenses.

d. That it would be in the best interest of justice and judicial economy to appoint Mr. Buchanan.

e. That the Movant needs the additional resources to effectively prosecute this appeal.

WHEREFORE, PREMISES CONSIDERED, the Movant prays that the Court appoint Mr. Paul N. Buchanan as Co-Counsel of record in the above styled case.

RESPECTFULLY SUBMITTED:

LINDA SESSON TAYLOR      #010303
Attorney at Law
206 E. Main Street, Suite 202
Jackson, TN 38301
(731) 424-5767

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was mailed, postage prepaid, to the District Attorney General or one of his/her agents on this the 16th day of April, 2001.

LINDA SESSON TAYLOR

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
AT JACKSON

JON HALL,                              )
                                       )
        Petitioner,                    )       R.D. No. 96-589
                                       )
VS.                                    )       Post-Conviction No. C00-422  – I
                                       )
STATE OF TENNESSEE,                    )       Death Penalty Case
                                       )
        Respondent.                    )

---

### ORDER APPOINTING CO-COUNSEL

---

This cause came on to be heard before the Honorable Roy Morgan, on a Motion to

Appoint Co-Counsel, statements of the Movant and the entire record as a whole.

It appeared and the Court did make the following findings:

a. That the complexity of this case warrants the appointment of Co-Counsel.

b. That it would be in the best interest of justice to appoint another attorney to

provide additional resources and manpower.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Paul N.

Buchanan is appointed as Co-Counsel for the Petitioner, Jon Hall.

ENTERED this the _16th_ day of April, 2001

                                       JUDGE

APPROVED FOR ENTRY:

LINDA SESSON TAYLOR
Attorney at Law
206 E. Main Street, Suite 202
Jackson, TN 38301
(731) 424-5767

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Order was mailed

postage prepaid, to the District Attorney General and Mr. Paul N. Buchanan, Esq., on this

the _24_ day of April, 2001.

                                       LINDA SESSON TAYLOR

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

MADISON COUNTY AT JACKSON, TENNESSEE



Jon Douglas Hall,                                          *

    Petitioner,                                      *

                                            *

Vs.                                                        *    CASE NO. C00-422-I

STATE OF TENNESSEE,                                        *    (DEATH PENALTY CASE)

    Respondent.                                      *

                                            *

<u>MOTION FOR CONTINUANCE</u>

      Comes now the petitioner, Jon Hall, by and through himself and hereby requests this Court grant a continuance in the above matter and in support of this motion, petitioner would state and show unto the Court the following:

      1. That on the 6th day of February 2001, Judge Roy B. Morgan, Jr., filed an order in the above listed matter setting an August 6, 2001 due date for the petitioner's amended complaint.

      2. That on March 23, 2001, a hearing was held on Ms. Marjorie A. Bristol's (BPR # 19988) Motion To Withdraw.

      3. On March 23, 2001, the petitioner Mr. Hall, refused to accept the services of counsel and wanted to represent himself in this matter.

      4. On April 19, 2001, Attorney Paul Buchanan sent the petitioner a letter informing him that Mr. Buchanan was appointed as counsel in this matter as well as a Ms. Taylor, in spite of the petitioner's objection on March 23, 2001.

      5. That despite the petitioner's Motion For The Order For The Surrender of Attorney Work Product, previous counsel and new counsel have not complied with fulfilling this request, because this Court willfully refused to sign the order.

      6. That without a complete file the petitioner cannot adequately prepare or complete an amended complaint even with the aid of an assistant, due to the inability to be able to make knowing and intelligent decisions in regards to what issues to present in a court of law.

      7. How does this court expect a prisoner sentenced to death effectively present or assist counsel with preparing an amended complaint without the necessary tools to guide him in the right direction, to determine what can and cannot be utilized to rebut the State's illegal conviction ?

- 1 -

8. Thus, until the petitioner is provided with all of the records or the proper materials, an amended complaint cannot be filed correctly and in violation of the Petitioner's due process rights under both the State and Federal Constitutions.

WHEREFORE, the petitioner prays that this court get with the program, sign the order for the surrender of attorney work product and grant the petitioner a continuance of (90) ninety days past the surrender of the attorney work product.

Respectfully submitted,

Jon Douglas Hall

Jon Douglas Hall # 238941
RMSI U-2 C-103
7475 Cockrill Bend Blvd.
Nashville, Tennessee 37209-1048

I _____Jon Hall_____ , hereby swear under the penalty of perjury under the laws of the State Of Tennessee, that the foregoing is true and correct.

Sworn and Subscribed before me on this the _____ day of August 2001.

Notary Public _____OFF Duty (will have My copies Notarized ASAP)._____

My Commission Expires _____

CERTIFICATE OF SERVICE

I _____Jon Hall_____ , hereby certify that I have mailed a true and exact copy of the foregoing motion to: (1) Office of the Clerk, Ms. Judy Barnhill, Criminal Justice Complex 515 South Liberty Street Jackson, Tennessee 38301; (2) James G. (Jerry) Woodall, District Atty. General, P.O. Box 2825 Jackson, Tennessee 38302, via United States mail on this the 1st day of August 2001.

- 2 -

Jon Hall # 238941
RMSI U-2 C-103
7475 Cockrill Bend Blvd.
Nashville, Tennessee 37209-1048

Ms. Judy Barnhill, Clerk
Madison County Court
Criminal Justice Complex
515 South Liberty Street
Jackson, Tn. 38301

Dear Ms. Barnhill,

Please find the enclosed: (1) Motion For Continuance; (2) Motion For Post-Conviction Relief; and (3) self-addressed stamped envelope. Marjorie Bristol should have already submitted the original copy of the Motion For Post-Conviction Relief, when she filed my skeletal motion with attachments, but when I received the copy she received from the court, my copy of the motion was not marked filed. Please return a stamp filed copy of the two aforementioned motions.

If the original copy of the Motion For Post-Conviction Relief is marked filed, would it be possible if I got a copy of the original motion marked filed (due to the fact that all I have is the carbon copy)?

Thank you for your time and assistance in this matter.

Respectfully submitted,

Jon Hall # 238941

I _____Jon Hall_____, hereby swear under the penalty of perjury under the laws of the State of Tennessee, that the foregoing is true and correct.

Sworn and Subscribed before me on this the _____ day of August 2001.

Notary Public _____OFF DUTY (will have my copies notarized ASAP)._____

My Commission Expires _____

CERTIFICATE OF SERVICE

I _____Jon Hall_____, hereby certify that I have mailed a true and exact copy of the foregoing motion to the Office of the Clerk, Ms. Judy Barnhill, Criminal Justice Complex 515 South Liberty Street Jackson, Tennessee 38301, via United States mail on this the _1st_ day of August 2001.

IN THE CIRCUIT COURT OF THE TWENTY-SIXTH JUDICIAL DISTRICT

Of TENNESSEE

Jon Douglas Hall,

    Petitioner,

Vs.

State of Tennessee,

    Respondent.

CASE NO. ___C-00-422___
(POST-CONVICTION)

---

MOTION FOR POST-CONVICTION RELIEF

---

Comes now the Petitioner, Jon Hall, and would state that the conviction of first degree murder and sentence of death are null and void for the following reasons:

## I. INEFFECTIVE ASSISTANCE OF COUNSEL AT A "CRITICAL STAGE"

### A. INTRODUCTION / ILLEGAL ARREST

1. That on July 29, 1994, the Henderson County Sheriff's Department, (HCSD) Chief Deputy, Mr. Jerry Bingham, began to investigate the death of the Petitioner's wife Billie Hall. (See: T.E., V.II., P. 192; HCSD Chief Bingham first to arrive on the scene).[1]

2. That on July 30, 1994, the Petitioner was arrested in Bell County, Texas at his brother's house, and Tennessee Bureau of Investigation (TBI) agent Brian Byrd, participated in the arrest & extradition process. See: (T.E., V.II., P. 206; Byrd / Arrest & Extradition).

3. That on August 2, 1994, the Petitioner signed a waiver of extradition without the assistance of counsel. NOTE: See: Tn. Practice and Proc., Raybin Series, Vol. 9, § 2.41 (Waiver of Extradition) (Nothing in this section shall be deemed to limit the rights of the accused to return voluntarily and without formality to the demanding state, . . .).

4. That on August 3, 1994, the Petitioner was handed over to three Tenn. State agents (TBI agent, Mr. Brian Byrd; HCSD investigator, Mr. Brent Booth; and HCSD deputy, Mr. Rick Lunsford), based upon two arrest warrants. The affidavit of complaint supporting these two arrest warrants contained the following information:

   (a) WARRANT 2300: "Jon Hall did intentionally plan and kill Billie Hall. This act took place at 525 Pleasant Hill Road at the residence of Billie Hall in Henderson County. Signature of affiant: Brent Booth." (See: T.R., V. _I_ P. _111_ ).

   (b) WARRANT 2301: "On July 29, 1994, Jon Hall took Clinton E. Smith a child 12 yrs of age against his will and without permission of his parents. Signature of affiant: Brent Booth." (See: T.R., V. _I_ P. _113_ ).

---
#### FOOTNOTES
---

[1] Reference to the transcript of evidence will be designated by the abbreviation T.E.; the volume number will be designated by the abb. V. ___; and the Page number will be designated by the abb. P. ___, with the blank space being the actual reference point.

[2] Reference to the technical record will be designated by the abb. T.R., and the volume and page number will be abbreviated the same way as the above reference to the transcript of evidence.

- 1 -

5.  That the arrest and extradition process of the Petitioner was based on
    and started with the filing of the two aforementioned arrest warrants
    that were signed (rubber-stamped) by Deputy Clerk, Denise Depriest.
    These insufficient affidavits prejudiced the Petitioner from having an
    important discovery tool. See e.g.:

    (a)  The affidavit of complaint will alert prudent counsel to the
         States' primary witnesses and the facts of the offense. This may
         be of value in the preliminary hearing enabling the defense to
         call witnesses whom the state has not called. CITED: Tenn. Prac.,
         Raybin series, volume 9, § 1.2; and

    (b)  People v. Hodge, 53 N.Y.2d 313, 318-319, 423 N.E.2d 1060, 1063
         N.Y.S. 2d 231-234 (1981) (Most important, early resort to that
         time tested tool for testing truth, cross-examination, in the end
         may make the difference between conviction and exonaration).

6.  That neither of the two aforementioned affidavits of complaint /
    warrants are valid under T.C.A. § 40-6-203 to § 40-6-205 because they
    failed to contain sufficient information to support an independent
    judgement of probable cause to support them, in violation of Tenn. R.
    Crim. P., Rule 4 (b); Tennessee Constitution Article I, § 7 (Search
    and Seizure); and U.S.C.A. Const. Amend. 4. See e.g.:

    (a)  State v. Jacumin, 778  S.W.2d 430, 432  (Tn. 1989) (Tennessee
         law is clear that in determining whether or not probable cause
         supported issuance of a warrant, only information contained within
         the four corners of the affidavit may be considered);

    (b)  State v. Tays, 836 S.W.2d 596 (Tn. Cr. App. 1992) (Test to
         determine whether probable cause to make arrest should be equally
         stringent as the test to determine whether probable cause to issue
         a search warrant);

    (c)  Hatcher v. United States, 473 F.2d 321, 324  (6th Cir. 1973)
         (both Magistrate and any reviewing court are restricted to the
         four corners of the affidavit);

    (d)  Spinelli v. United States, 393 U.S. 410 (1969) (a factually
         sufficient basis for probable cause judgement must appear within
         the affidavit of complaint. If hearsay is relied upon, the basis
         for the credibility of the informant and his information must
         appear on the affidavit);

    (e)  Jaben v. United States, 381 U.S. 214, 224, 85 S.Ct. 1365, 1370, 14
         L.Ed.2d 345 (1965) (As the Supreme Court has so aptly put it, the
         affidavit must provide the affiant's answer to the magistrate's
         hypothetical question "What makes you think that the defendant
         committed the offense charged ?"); and

    (f)  Gerstein v. Pugh, 420 U.S. 103, 120-121, 95 S.Ct. 854, 866, 43
         L.Ed.2d 54 (1975) (The affidavit should provide specific,
         reliable information from which a magistrate may make an
         independent judgement that there is probable cause that (1) an
         offense has been committed and (2) that the person to be arrested
         has committed it).

7.  That on August 22, 1994, at approximately 8:55 A.M., the Petitioner
    met with two members of the Henderson County Public Defender's Office
    (Mr. Jack Hinson and Mr. Frank Stanfill), to discuss the details
    surrounding the death of Billie Hall. After a brief discussion with
    the two public defenders, HCSD investigator, Brent Booth came back
    into where this discussion was taking place and informed the
    attorneys that Magistrate, Mr. J.B. Johnson was ready to begin with
    the court proceedings  and that we should go into the courtroom.

- 2 -

## B. ILLEGAL WAIVER AND FRAUDULENT TRANSCRIPTS OF PRELIMINARY HEARING

1. That shortly after the brief discussion with both public defenders, a preliminary hearing was held at approximately 9:00 A.M. on the first arrest warrant charging the Petitioner with the first degree murder of Billie Hall.

2. That after attorney Mr. Hinson entered a plea of not guilty for the Petitioner, **District Attorney General, Jerry Woodall** made the following statement:

   (a) "J.W. - Your honor may I address to court. The defense council, the defense council stop participying furthercist of the Preliminary Hearing, **the defendant waived kidnapping case to the Grand Jury for their consideration.** We want to proceed on the probably cause (inaudible)." [Sic]. (See: T.R., V. I , P. 51 ).

3. That **the Petitioner never made an agreement with the public defenders or the prosecutor to waive the right to a preliminary hearing on the kidnapping charge.** That in order to prove this fact all you need to do is look at what was discussed at the end of the preliminary hearing to determine what was fraudulently omitted from the Petitioner's preliminary hearing transcript for his defense. (See e.g.: T.R. I , P. 59 ) which provides in pertinent part:

   (a) "P.D. - Your honor, we have been called to sign this waiver, (court room noise)."

   (b) "P.D. - Your honor, if the court pleases we would like to sign a waiver on the kidnapping. If **the court please I am going ahead at this point and waive that on his behalf.** Your honor, . . . "

4. That by looking at the August 23, 1994 Jackson Sun news article that accurately portrays what occurred during the aforementioned discussion on the alleged waiver of a preliminary hearing on the kidnapping charge, it should be easy for anyone to be able to determine what had actually occurred to understand why the Public Defender had to change his position from: "[w]e would like to sign a waiver" to "[I] am going to ahead at this point and waive that on his behalf." (See: T.R., V. I P. 60 ; Jackson Sun news article captioned: "Man accused of killing wife has hearing"). Which states in pertinent part:

   (a) "Hall appeared belligerent and agitated during the 45 minute hearing Monday. At **one point he refused to sign a form to waive his kidnapping charge to the grand jury. "I'm not signing nothing."** Hall said to his attorney, **Jack Hinson of the district public defender's office.**"

5. That the above listed statements referring to the Petitioner's preliminary hearing transcript were produced by Ms. Tonya Shavers from the Office Of The 26th Judicial District Attorney General. **The omitted testimony was intended to defraud the Petitioner from having an accurate record of this proceeding depicting the deprivation of his civil rights to a preliminary hearing on the kidnapping charge.**

   In short, the State defrauded the Petitioner of an accurate record of this proceeding to deprive him of the opportunity to be able to demonstrate legally viable appellate issues. The State acted in furtherance of said fraud by obtaining an indictment on the kidnapping charge knowing that the Petitioner never consented to a waiver of his constitutional right to a preliminary hearing. They also forged the transcript to conceal their actions in violation of T.C.A. § 39-14-114 (Forgery); T.C.A. § 39-16-402 (Official Misconduct); T.C.A. § 39-16-403 (2); (Official Oppression); Tenn. R. Crim. P., Rules 5 (d) (7), & (e) (Initial Appearance Before Magistrate); Tn. Const., Article 1, § 8 (No man to be disturbed but by law); Article 1, § 9 (Right of accused in criminal prosecution); Article 1, 14 (Prerequisites to criminal charge); Article 1, § 25 (Martial law - Punishment); Article XI, § 8 (General laws only to be passed); and United States Const., Article IV, § § 1, & 2 (1); and Amendments 4, 5, 6, 8, & 14.

- 3 -

C. INCONSISTENT STATEMENTS REGARDING MIRANDA WARNINGS AND SELF INCRIMINATION

1. That in addition to failing to challenge the validity of the arrest warrants, the Public Defenders neglected to impeach the States only witness, TBI agent Brian Byrd. This witness had contradicted himself at the August 22, 1994 preliminary hearing on the first degree murder warrant during direct and cross-examination about the Petitioner's rights being read to him. (See: The Petitioner's preliminary hearing transcript which provides in pertinent part:

(a) DIRECT EXAMINATION OF BYRD BY PROSECUTOR JERRY WOODALL "VERBATIM"

J.W. Alright now. After he made that statement to you, I believe he did not know she was dead until the day before ?

B.B. That is the statement he made to us.

J.W. I did it. I did it. Now after that what did you do ?

B.B. **We discussed and read the rights waiver**, when through the sheet we got down to the part where he would sign the right waiver and give us a statement. He stated he would not an statement without counsel being present, **so we terminated the interview at that point.**

J.W. Alright so, after he allowed you to complete the memorandi, information, memoranda information he then ask attorney, and **you terminated the interview.** [Sic].

B.B. **Correct.**

J.W. Is that correct?

B.B. Correct.

J.W. What day was this?

B.B. This would have been on the 3rd, the day before the election.

(See: T.R., V. I , P. 55 ).

(b) CROSS-EXAMINATION OF BYRD BY PUBLIC DEFENDER J. HINSON "VERBATIM"

P.D. O.K. And of today date, three, two and a half, three weeks later, **that individual has never been read his rights.**

B.B. **No, sir.**

P.D. Scrapes on the hand, you indicated that there was scrapes or scratches on the knuckles, fingers and hand. Was this on both hands?

B.B. Ah. To best of my knowledge it was.

P.D. Is there anything you have done in the past weeks that relates to the scrapes on the top of the hand that preserves that?

B.B. No.

P.D. You took no pictures of that?

B.B. To my knowledge, I don't think we did. No sir.

P.D. **Did you ask the defendant about that there ?**

B.B. **Yes, sir.**

(See: T.R., V. I , P. 59 ).

- 4 -

2. That the Petitioner contends that TBI agent, Brian Byrd committed Perjury as defined by T.C.A. § 39-16-703 (a) (2) (Aggravated perjury), when he made inconsistent statements as defined by T.C.A. § 39-16-707 (Inconsistent statements) surrounding the application of Miranda warnings and cutting off custodial interrogation in order to admit an alleged voluntary spontaneous statement. The Officers of the Court allowed this self-impeached hearsay statement to be introduced into evidence without a proper objection from the ineffective defense counsel in order to secre the bind-over commitment of the Petitioner to await the action of the grand jury. This inexcusable dereliction of duty ultimately violated the Petitioner's Constitutional Rights to a full & fair preliminary hearing and prejudiced him throughout all of the subsequent proceedings. See e.g.; Tenn. case law describing the law and the rights to a preliminary hearing & potential opportunities to be gained therefrom:

(a) State v. Waugh, 564 S.W.2d 654, 659 (Tn. 1978) (Except for documentary proof of ownership and written reports of expert witnesses, probable cause to bind-over defendant to Grand Jury **must** be based upon legally competent evidence which would be admissible at trial; . . . But, if only evidence which would be inadmissible at trial is introduced at preliminary hearing, that hearing will fail in its function of screening out unfounded charges and will violate defendant's right to a preliminary hearing. T.C.A. § 40-402, 40-604, 40-1116, 40-1117, 40-1131);

(b) State v. Mckeldin, 516 S.W.2d 85, 86 (Tn. 1974) (Every criminal lawyer "worth his salt" knows the overriding importance and the manifest advantages of a preliminary hearing. In fact the failure to exploit this golden opportunity to observe the manner, demeanor and appearance of the witnesses for the prosecution, to learn the precise details of the prosecution's case, and to engage in that event sometimes known as the "fishing expedition", would be an inexcusable dereliction of duty, in the majority of cases); and

(c) Noland v. State, 568 S.W.2d 837 (Tn. Crim. App. 1978) (whether denial of preliminary hearing, including the denial of at least the prima facie portion of the case necessary to establish probable cause upon a preliminary hearing amounted to reversible error).

3. That the Petitioner contends the Court, the District Attorney Gen., and the Public Defenders committed a dereliction of duty by failing to act in a competent manner upon this egregious prejudicial error of the Petitioner's right to be free from self-incrimination. Further, this alleged voluntary spontaneous statement was printed in the local newspapers and was probably broadcast by (WBBJ) television news channel (7) or the local radio stations in the surrounding area before the grand jury proceedings had begun. See e.g.: T.R., V. I , P. 60 ; 8/23/94 Jackson Sun news article demonstrating the violation of the Petitioner's right to be free from self-incrimination before the grand jury). The Jackson Sun article provides in-pertinent part:

(a) "Brian Byrd, a special agent with the Tennessee Bureau of Investigation, said he and two other investigators traveled Aug. 3 to Belton, Texas - where Hall fled after the incident.

When they questioned Hall Aug. 3 the defendant "was very emotional. He began to cry and he said. '**I did it. I did it. I'm so sorry. I'll tell you everything you need to know,**'" agent Byrd said.

After reading Hall his rights, however, the defendant would not give a statement about his wife's death, said Byrd, who was the only witness called Monday by District Attorney General Jerry Woodall."

- 5 -

4.  That the Petitioner finds that his fundamental right to a full and fair preliminary hearing on the charge of first degree murder warrant were violated by the Dist. Atty. Gen. when he failed to correct false testimony about the Petitioner's Miranda warnings and subsequent self-incrimination as discussed in supra I. (C) (1) (a), & (b). See e.g.;

(a) State v. Spurlock,  874 S.W.2d 602, 617-18  (Tn. Cr. App. 1993) (When state witness answers questions on either direct or cross-examination  falsely, District Attorney General, or his or her assistant, has an affirmative duty to correct false testimony; whether District Attorney General solicited false testimony is irrelevant. U.S.C.A. Const. Amend. 14;  Tennessee Constitution, Article 1, §  8, 9);

(b) State v. Spurlock, supra at 618 (If prosecution fails to correct false testimony of witness, defendant is denied due process of law as guaranteed by United States and Tennessee Constitutions. U.S.C.A. Const. Amend. 14;  Tenn. Const. Art. 1,  §§  8,9);  and

(c) United States v. Mendez Ortiz, 810 F.2d 76, 78-79 (6th Cir. 1986) (The plain error doctrine is to be used in only "exceptional circumstances" and only where the error is so plain that "the trial judge & the prosecutor were derelict in countenancing it.")

D. THE DEPRIVATION OF THE PETITIONER'S CONSTITUTIONAL RIGHT TO REASONABLE BAIL

1.  That in addition to finding that the Officers of the Court failed to provide the Petitioner with a full and fair preliminary hearing on the two arrest warrants, the Magistrate knowingly committed a fundamental prejudicial error by depriving the Petitioner of his Constitutional Right to bond. See Petitioner's preliminary hearing transcript, which provides in pertinent part:

(a) "P.D. - ... Your honor, I believe Mr. Hall is being held without bond and your honor I would respectively ask this court to set a bond for Mr. Hall he is entitled to a bond. He is a resident of Henderson, Lexington, Henderson County, Tennessee your honor he has been a resident how long ? Two years he has been a resident of Lexington and at any of that time he certainly has the judicial right for a bond for a bond to be set, with extra on the settlement." (See T.R., V. _I_, P. _58_ ). [Sic].

(b) "J.W. - Your honor, the state would oppose bond being set, this is a charge of First Degree which is a potential capitol in the State of Tennessee. Now kidnapping Mr Blake [sic] which obviously is very adamant, is a very serious case too. I would feel like based upon those factors alone the bond should, there should be no bond set, I want to make that point." (See T.R. V. _I_, P. _58_ ). [Sic].

(c) "J.J. - The court going to hold action of the Grand Jury. Court going  hold to Mr. Hall without a bond." (See T.R., V. _I_, P. _59_ ). [Sic].

2.  That by depriving the Petitioner of the his constitutional right to bail, the Court knowingly violated the Petitioner's Fifth Amendment Due Process Rights; Eighth Amendment Right to reasonable bail; and Fourteenth Amendment Right to Equal Protection. U.S.C.A. Const. Art. IV, § 2 (1); and Amend. 5, 8, & 14; and Tennessee Constitution Article I, § 8, 16 & 25; and Article XI, § 2, & 8.

3.  That by denying the Petitioner reasonable bail, the State gained an illegal tactical advantage to convict him of first degree murder and ultimately destroyed the Petitioner's defense theory of the lesser included offenses by bribing a State Prisoner (Mr. Chris Dutton) to testify against him at trial in violation of  T.C.A.  § 39-16-107 or Title 18 U.S.C.A. § 201 (c) (2) (Bribery). (See T.E., V. _II_, P. _222 thru 236_ ).

- 6 -

4.  That according to the District Attorney General, Jerry Woodall, the only compensation witness Chris Dutton was to receive in exchange for his truthful testimony in the Petitioner's trial, was a promise by the District Attorney General to speak up for Mr. Dutton at his upcoming parole hearing. Under cross-examination Mr. Dutton lied about knowing what the definition of an informant was. See e.g., the following excerpt from the petitioner's trial transcripts which provides in pertinent part:

(a) DIRECT EXAMINATION OF DUTTON BY JERRY WOODALL "VERBATIM"

WOODALL - "In exchange for your truthful testimony, did I make any promises to you ?"

DUTTON - "You told me as long as I testified truthfully that you would speak at my parole hearing when the time came."

(See T.E., V. II , P. 230 ).

(b) CROSS-EXAMINATION OF DUTTON BY JESSE FORD III "VERBATIM"

FORD - "Mr. Dutton, would it be a safe assumption that you would be classified as an informant in the prison system ?"

DUTTON - "I'm not sure of the definition of that, sir."

(See T.E., V. II , P. 232 ).

5.  That before the Petitioner's trial, Chris Dutton wrote to the District Attorney General, in this letter, dated in March of 1996, Mr. Dutton tries to describe what he wants in exchange for his testimony against the Petitioner, since his original plea bargains had not been honored. He made the following statement on this matter which provides in pertinent part:

"If my contract plea bargains were honored, I would have already been up for parole. . . . I could be of great use within the prison system as a reliable informant."

6.  That the jury was not told the full extent of Dutton's motivation to to testify against the Petitioner. The Petitioner contends that the underlying reason why Mr. Dutton wanted to make a deal to testify against the Petitioner was the fact that Mr. Dutton was facing an enhanced sentence by T.D.O.C. for the offenses of aggravated assault and escape. Thus, the State failed to reveal the real deal by withholding this information about the enhanced punishment from the defense and the jury. See e.g., T.E., V. II , P. 223 , which provides in pertinent part:

WOODALL - "Now I notice there was an escape charge in this from Hamblin County."

DUTTON - "Yes, sir." / See also e.g.;

(a) Taylor v. Reynolds, 914 S.W.2d 516 (Tn. App. 1995) (T.D.O.C. policy 502.05 IV. (c) which authorizes T.D.O.C. to enhance offender's parole or release eligibility date for a conviction of any attempted or actual escape with the use or threat of physical violence); and

(b) State v. Spurlock, supra at 620 (Citing Campbell v. Reed, 594 F.2d 8 ["the jury's verdict might have been different had it known the full extent of Miller's motivation to testify against Campbell"]; State v. Hall, 329 S.E.2d at 863 [". . . [A] reasonable doubt might well have been created."]);

Moreover, in addition to failing to try to impeach or correct Mr. Dutton, the jury was not given instructions that one of the things that the jury could consider in determining the credibility of a witness when evaluating the weight of the testimony is the fact of whether or not the witness is a convicted felon. See Tennessee Pattern Instructions on convicts as witnesses.

- 7 -

103

7. That the District Attorney General, his assistant, and the two defense attorneys (Jesse Ford & Clayton Mayo) failed to impeach or correct this known false testimony by this zealous witness. The Officers of the Court let this testimony go un-corrected because (1) the answer suited the State; (2) to keep Mr. Dutton from having his credibility questioned; and (3) to insure that any doubts the jury may have about the petitioner's defense theory of lesser included offense would be destroyed, in violation of both the Supreme Court Rules, Rule 8 DR 7-102 (a) (3), & (4); the Petitioner's Constitutional Rights, U.S.C.A. Const. Amend. 14; and Tennessee Const. Article 1, § 8, & 9.

E. THE PETITIONER WAS SUBJECTED TO ILLEGAL SEARCH AND SEIZURE

1. That the Petitioner was subjected to an illegal search and seizure of his personal property in which the items seized did not have any real significant value toward proving the facts of any of the crimes that the Petitioner was subsequently indicted for.

2. That the Petitioner contends that this illegally seized evidence was collected and utilized for the primary purpose of discovering the Petitioner's background to be utilized against the Petitioner in any subsequent sentencing hearing conducted, in violation of the "fruits of a poisonous tree doctrine."

3. That since the Petitioner's arrest warrants were illegal (due to the lack of reliable and factually sufficient information supporting the probable cause determination), then the search warrant that was issued should also be considered illegal. This belief is based upon the fact that the affiant (Brent Booth) had made a conclusionary allegation of having the [probable cause] information on the search warrant without actually providing the required information to support the reliability or the credibility of the informant or his information on the original arrest warrant. Therefore, affiant Booth's conclusionary allegation "that he has [probable cause for believing and does believe]" is only a conclusionary allegation and the search warrant should be void (among other reasons), in violation of T.C.A. § 40-6-101 et. seq. (Warrants-etc.); Tenn. R. Crim. P., Rules 3 & 4; U.S.C.A. Const. Amend. 4, & 6; and Tenn. Const. Article 1, § 8, & 9. See e.g.;

(a) Motion To Suppress (T.R., V. I , P. 106 thru 114 ); and

(b) Wong Sung v. United States, 371 U.S. 471, 487-88 (1963) (Fruits of a poisonous tree doctrine; "We think it is clear that the narcotics were 'come at by the exploitation of that illegality' and hence they may not be used against Toy").

4. That it is due to the ineffective assistance of counsel at a critical stage, that the State was able to exploit the fruits of all of this illegally seized or tainted evidence and advance their investigation / case against the Petitioner.

5. That after attorneys Jack Hinson and Frank Stanfill waived and / or allowed the State to violate the Petitioner's Rights, they withdrew from the Petitioner's case. (See T.R., V. I , P. 63 ; ORDER ON MOTION TO WITHDRAW AS COUNSEL 2/21/95).

F. MEMORANDUM OF LAW SUPPORTING THE PETITIONER'S ALLEGATION OF INEFFECTIVE ASSISTANCE OF COUNSEL AT A CRITICAL STAGE AUG. 22, 1994 PRELIMINARY HEARING

The purpose of the first interview with the defendant is fourfold. See McBee v. State, 655 S.W.2d 191 (Tn. Crim. App. 1983) (Counsel should confer with the client without delay and as often as necessary to elicit matters of defense or to ascertain that potential defenses are unavailable; Further, counsel should promptly advise the client of his rights and take all actions necessary to preserve them). First defense counsel must learn all that the defendant knows about the case, and the names and addresses of any potential witnesses. The defendant must tell the defense counsel the truth if the defendant is made to understand that defense counsel's duty is to exert all his efforts to insure the defendant receives a fair trial, and that only lawfully obtained evidence is introduced at trial. Even if defendant admits his guilt to defense counsel, it is still defense counsel's duty to use his best efforts to defend the case.

Second, defense counsel should, even at this early stage, begin to gather information with which to attack the prosecution's case through motions to suppress evidence, attacks upon the admissibility of statements or confessions made by the defendant, and attacks upon the admissibility of any identifications of the defendant. Defense counsel should be searching for a possible violation of the defendant's constitutional rights in everything that the police did or didn't do. For example; Was the defendant illegally arrested ? If the defendant was illegally arrested, then any statements which may have been made to the police may be the product of an exploitation of the illegal arrest and may therefore be inadmissible at trial. In addition, the illegal arrest may "taint" evidence obtained later in the investigation.

Too many defense counsel wait for pretrial discovery before getting their investigation started on the case. Early investigation will yield far more satisfactory results for the defense. In short, more defense investigative effort should be expended as soon as counsel is retained or the public defender is assigned. See e.g. McBee v. State, supra, (Counsel must conduct appropriate investigations into both the facts and the law to determine what matters of defense can be developed). CITED: See: Tenn. Criminal Practice And Procedure, Raybin Series, Vol. 9, § 5.35 Interviewing The Defendant.

In McKeldin v. State, 534 S.W.2d 131, 133 (Tn. 1975) the Court of Criminal Appeals held; Defendant's representation by a nonlawyer at his preliminary hearing did not constitute prejudice per se, because the representation by a non-lawyer at the preliminary hearing was harmless error beyond a reasonable doubt. The following is an excerpt from the trial court judges order in this opinion, which provides in pertinent part:

"From the trial judge's 'Memorandum and Order,' we specifically note that he compared the facts brought out in the remand hearing with the transcript of the trial. He stated that the 'record nowhere indicates or suggests that the trial result would have been any different had the defendant had competent counsel at the preliminary hearing.' Among other things, he found there were no 'fatal weaknesses in the State's case, and none which could have been exposed at the preliminary hearing'; that 'there was probable cause for the defendant to be bound over to the grand jury'; that 'the magistrate's determination of bond did not prejudice the defendant at his subsequent trial'; that 'the defendant waived no rights at the preliminary hearing'; that the defendant 'did not testify, and gave no in-court confessions or admissions against interest which were subsequently used against him'; that 'there were no rights which might have been asserted (i.e., early psychiatric examination, controversion in search warrant, etc.) which were relevant to his case and / or which he was deemed to have waived by failure to assert them at the preliminary hearing'; that 'there were no witnesses at the preliminary hearing who did not appear, or was not available at trial.'"

H. PREJUDICE SUFFERED BY THE PETITIONER UTILIZING MCKELDIN SUPRA CRITERIA

1.  That there was not legally competent evidence submitted by the State at the Petitioner's August 22, 1994 preliminary hearing to bind him over, and the Officers of the Court committed fundamental error when they utilized his alleged statement as their prima facie evidence to determine probable cause, in violation of the usual rules of criminal procedure and evidence, as shown by Supra facts I. (A), (B), & (C).

2.  That the Petitioner was subjected to self-incrimination before the grand jury had convened and this illegally obtained evidence was printed or even possibly broadcast throughout the surrounding communities, as shown by supra fact I. (C) (3).

3.  That attorney, Jack Hinson improperly waived the Petitioner's constitutional rights to a preliminary hearing on the kidnapping warrant, as shown by supra fact I (B) (3).

4.  That the preliminary hearing for the kidnapping warrant could have led to the important discovery materials of (1) the witness' demeanor towards testifying for the Petitioner; or (2) a description of the defendant's mental condition shortly after the alleged homicide. (See T.R., V. I , P. 5 , Indictment; and P. 113 ; Clinton E. Smith).

- 9 -

5. There was not an early psychiatric examination conducted for the defense, even though the Petitioner was put on psychiatric medication shortly after the August 22, 1994 preliminary hearing. See e.g., T.E., V. III , P. 332 to 233 , which provides the following:

DIRECT EXAMINATION OF DR. ZAGER BY CLAY MAYO ABOUT PSYCHIATRIC EXAM

Q. "Dr. Zager, when did you interview Mr. Hall" ?

A. "I first saw Mr. Hall in November of 1995. That was November 18th. It was approximately a year later I saw him again on November 1st of 1996, and I most recently interviewed him on January 3rd of this year."

Q. "And have you had the opportunity to review any records regarding Jon Hall" ?

A. "Yes. Not only did I have my own interview and psychological testing that I completed, in addition I reviewed records from the Middle Tennessee Mental Health Institute, forensic services division, where Mr. Hall was for approximately a month. I also had an opportunity to review records from the Riverbend Institution, mental health records. I had the opportunity to review reports of interviews that were conducted with people who knew Mr. Hall."

6. That according to the Petitioner's T.D.O.C. medical records, (form #, CR-3355), the Petitioner was placed on an anti-depressant drug called imipramine for depression on September 24, 1994.

7. That it wasn't until after the Petitioner had been placed on the medication for depression, that he was admitted to Middle Tennessee Mental Health Institute, forensic division for the (30) day Court Ordered Psychiatric evaluation on February 23, 1995. See e.g, March 28, 1995 letter to the Honorable Whit S. Lafon, from M.T.M.H.I. Mr. Larry Southard (T.R., V. I , P. 19 and 20 ).

8. That due to the lengthy delay of the Petitioner's trial, the testimony of the only adult eyewitness (Mr. Herman McKinney) was irretrievably lost due to the failure of counsel to investigate or take a deposition of said witness before he died. (See e.g., T.R., V. II , P. 192 ).

9. That due to the lengthy delay in the Petitioner's trial, the testimony of the Petioner's brother, Jeff Hall, was irretrievably lost due to the failure of counsel to investigate or take a deposition of said witness before he died on July 4, 1995. (See e.g. T.E., V., III , P. 313 to 329 ; offer of proof of missing witness).

10. That the (3) three minor eyewitnesses memory was irretrievably lost or compromised due to their tender age and the passage of time. Thus, it is due to the failure of both the State and the court appointed defense counsel to put on this proof at the preliminary hearing, that the Petitioner was unjustly prejudiced from having this testimony preserved. This lost testimony would have been beneficial at trial to determine the validity of their trial testimony to determine whether or not their memory was compromised or the manifestation of ideas stemming from the passions and prejudices of outside influences. See e.g.; the following excerpts from the Petitioner's transcript, which provide in pertinent part:

(a) (8) YEAR OLD STEPHANIE HALL / ONE QUESTION TO QUALIFY AS A WITNESS

THE COURT: "What will happen if you don't tell the truth" ?

THE WITNESS: "I'll get a whippin'."

THE COURT: "You'll get a whippin'. All right, I believe she's qualified General.

(See T.E., V. III , P. 239 );

- 10 -

19C

(b) STEPHANIE HALL ON RECROSS-EXAMINATION BY FORD

Q. "And have you talked to anybody about coming to court" ?

A. "Yes, sir."

Q. "Who did you talk to" ?

A. "I talked to the lady downstairs, my grandma and my sisters."

Q. "Have you talked to the police, these police right here," (indicating) ? "Is that who you call the police" ? .

A. "Uh-huh."

Q. "How many times did you talk to them" ?

A. "Uh ..."

Q. "More than once" ?

A. "Yes, sir."

Q. "You talked to your grandmother about coming to court" ?

A. "Yes, sir."

Q. " More than once" ?

A. "Yes, sir."

Q. "You talk to your sister about it" ?

A. "Yes, Sir."

Q. "And you really didn't remember alot about what happened because you were six years old, and you just really know what somebody else told you about it, don't you" ?

A. "Yes, sir."

(See T.E. V. III , P. 251 , to 252 ); and

11. That another minor State eyewitness, Jennifer Lambert, (11 yrs. old) answered these same two questions asked to Stephanie as shown in supra fact I. (H) (10) (a), & (b) in the same manner. Although at first Jennifer denied talking to anyone else before court, and then after being coached, she finally answered these same questions in the same manner. (See T.E., V. II , P. 275 - 276 , "I'll get a spanking."; and P. 281 - 282 , Talked to "Mr. Woodall, & Police.").

12. That when it came to basic questions as to whether the Petitioner had (1) taken care of their basic needs; (2) was concerned about their little sister's health; and (3) whether the Petitioner had taken them anywhere while their mother was at work, the children basically denied having any knowledge of these simple facts. See e.g., the Petitioner's transcript which provides in-pertinent part:

(a) STEPHANIE HALL ON CROSS-EXAMINATION BY MR. FORD

Q. "Did Jon ever fix any meals for you'all or take you to McDonald's and get some food or things of that nature" ?

A. "I don't remember." . . .

Q. "Was Jon, or your dad, was he concerned about your younger sister and about her health" ?

A. "I don't remember."

(See T.E., V. II , P. 248 );

- 11 -

107

(b)  (10) YEAR OLD CINDY LAMBERT UNDER CROSS-EXAMINATION BY MR. FORD

Q. "Okay. When your mother would work or go to school, would Jon take care of you and your sisters" ?

A. "No."

Q. "Never did. Never fixed any meals or anything of that nature" ?

A. "No."

Q. "Did he ever take you all anyplace when your mother worked" ?

A. "Not that I know of."

(See T.E., V. II , P. 266 ); and

(c) (11) YEAR OLD JENNIFER LAMBERT UNDER CROSS-EXAMINATION BY MR. FORD

Q. "Did Jon take you and the other girls down to Beech Lake one time" ?

A. "I don't remember." ...

Q. "Did he ever make you meals" ?

A. "I don't remember."

Q. "Don't remember that. Did he work" ?

A. "I don't know."

Q. "Have you talked to anybody about coming to court today and testifying" ?

A. "No, sir."

Q. "You haven't talked to anybody" ?

A. "I can't remember."

Q. "Take your time. Who did you talk to" ?

A. "Mr. Woodall."

Q. "Anybody else" ?

A. "Police."

(See T.E., V. II , P. 282 ).

13. That by comparing different parts of the Petitioner's transcripts, it should become clear, that the children were affected by outside influences to lie about whether the Petitioner had ever acted in the capacity of a father, or the children do not have a sound memory. To demonstrate that the children do not have a sound memory, or were the victims to outside influences, the Petitioner will show the following:

(a) RANDY HELMS ON DIRECT EXAMINATION BY MR. MAYO DURING GUILT PHASE

Q. "Mr. Helms, how do you know Mr. Hall" ?

A. "He worked for me at one time." ...

Q. "Mr. Helms when was it he worked for you" ?

A. "It was about in '93 through probably the middle part of 94'."

(See T.E., V. III , P. 344 );

- 12 -

(b)  RANDY HELMS ON DIRECT EXAMINATION BY MR. FORD / SENTENCING PHASE

Q. "Did you ever observe Jon Hall with his children, with the four girls.

A. "Yes, sir."

Q. "And when or where would you observe them" ?

A. "Three or four different times when he was keeping the children like on Saturday, he brought them with him to work, and he asked me because he knew that wasn't in our policy, but he brought the kids with him when he came in to work on Saturdays, and a couple of them would stay with him where he was working, and maybe one or two stayed in the van and read or played with toys or whatever. But two or three different times when he was there he had all four of the kids with him." . . .

(See T.E., V. _IV_ , P. _412_ to _413_ ); and

(c)  DR. JOE MOUNT ON DIRECT-EXAMINATION BY MR. MAYO

Q. "Did you discuss with Mr. Hall his family, in particular his children" ?

A. "Yes, sir."

Q. "Did  he  express  any feelings for them in your opinion" ?

A. "Yes, sir."

Q. "And in your opinion did he seem sincere about those feelings"?

A. "Yes, sir."

Q. "What were those feelings" ?

A. "Extremely concerned about his children, not being able to see them. In my opinion I think he cared a great deal about his children, just based on our interviews."

Q. "Did you talk to him about any of his children in particular" ?

A. "There was -- One that comes to mind is one that was handicapped. I'm not sure of the diagnosis that the child has, but I vaguely remember his concern about that child."

(See T.E., V. _IV_ , P. _409 – 410_ ).

14. That other examples of the Petitioner's actions that contradict the childrens' testimony demonstrated above at I (H) (12) (a), (b), & (c), can be shown through: (1) the testimony of Debbie Davis (See e.g.: T.E., V. _IV_ , P. _423_ to _425_ ); and (2) the testimony of Carol Alexander (See T.E., V. _IV_ , P. _432_ to _433_ ).

15. That when the Supreme Court of Tennessee addressed the Petitioner's mitigation in their decision on the sufficiency of the (i) (5) aggravating circumstance, the Court noted that the jury could have reasonably found that the Petitioner was a good worker, employee, and a caring, and nurturing father, which obviously contradicts all the childrens testimony on this matter. (See e.g., State v. Jon Hall, 8 S.W.3d 593 (Tn. 1999) ).

16. That based upon the foregoing facts demonstrating the children's dim memory about basic facts, the Petitioner contends that the State's minor eyewitnesses were not in fact competent witnesses, because they did not understand the nature of their oath, in violation of T.C.A. § 24-1-101 (Competency of witness); T.C.A. § 40-14-101 (Speedy trial - right to be heard); U.S.C.A. Title 18 § 3161 (c) (1); U.S.C.A. Title 6, § 222 (Dimming of memory); U.S.C.A. Const. Art. IV, § 2 (1), and Amend. 5, 6, & 14; Tenn. Const. Art. 1, § 8, 9, and Art. XI, 2 & 8 (See T.R., V. _I_ , P. _145_ , § 10. Motion For Fair & Speedy Trial).

- 13 -

103

17. That the Petitioner was prejudiced by the Magistrate's failure to set bond. By looking back at supra I (D), (1) (b), it is clear that the District Attorney General encouraged the Magistrate to hold the Petitioner without bond. This illegal civil in rem forfeiture had eventually provided the State with an illegal tactical advantage over the Petitioner, by giving the prosecutor the ability to call a prison informant and the opportunity to improperly influence young and impressionable minor witnesses to gain a wrongful conviction.

18. That had the Petitioner been provided with the effective assistance of counsel at a critical stage and assured all the safeguards that are provided by the Bill of Rights, the Petitioner would not have been unlawfully convicted of first degree murder and sentenced to death.

II. JUDICIAL FRAUD WITH INTENT TO INJURE / MARITIME – ADMIRALTY LAW APPLIED

A. INTRODUCTION / MOTION TO DISMISS – BASED ON NEWLY DISCOVERED EVIDENCE

1. That after the Petitioner was rushed through the 8/22/94 preliminary hearing by counsel, the Petitioner began studying the law for obvious reasons shown above and found that the Court was not providing the constitutional guarantees provided by the Bill of Rights.

2. That in an effort to try to rectify & prevent this official oppression of the Petitioner's constitutional rights, he submitted his own FRCP Rule 12 (b) (1) – (7) pretrial motion filed in the Henderson County trial court on September 23, 1996. (See Motion To Dismiss / Based On Newly Discovered Evidence; T.R., V. II , P. 153 – 155 ).

3. That in spite of the Petitioner's claim in this properly filed Motion To Dismiss / Based On Newly Discovered Evidence and its supporting documents, all of the Officers of the Court acted in furtherance of this said scheme & artifice to defraud the Petitioner from exercising a variety of constitutional rights under the maritime or admiralty jurisdiction, by neglecting to remove the maritime flags of war from the courtroom or sign a contract to guarantee these rights at the Petitioner's trial, in violation of Title 18, U.S.C., § 1346 (scheme or artifice to defraud); and Tennessee Constitution, Article 1, § 25 Martial law - punishment). See T.R., V. IV. , P. 435 ; addressing pretrial Motion To Dismiss / Based On Newly Discovered Evidence. NOTE: Part of this discussion has been fraudulently edited from the transcript to impair and impede appealability of this claim.

B. THE TENNESSEE SUPREME COURT COULD NOT HAVE PROPERLY ADDRESSED THIS ISSUE

1. That since the Clerk of Courts has failed to provide a complete copy of this aforementioned motion and its supporting documents in the technical record the Tennessee Supreme Court could not have properly considered the Petitioner's claim.

2. That in order to rectify the Clerk of Court's negligence, a true and exact copy of this motion and supporting documents shall be made as exhibits for this post-conviction petition and include the following: (1) Motion To Dismiss / Based On Newly Discovered Evidence, 4 pages listed as [EXHIBIT A]; (2) Contract For The Guarantee Of Constitutional Rights Of Jon Hall Under U.C.C., Title 3, U.S.C., Sec. 501, 2 pages [EXHIBIT B]; (3) Sworn Affidavit Of Circuit Court Judge / Contract, U.C.C. Title 3, Sec. 501, 1 page [EXHIBIT C]; (4) A Sworn Affidavit Under The American Flag of Peace, 3 pages [EXHIBIT D]; and (5) Acknowledgement Of Law, 1 page [Exhibit E].

3. That in addition to filing the aforementioned motion and supporting documents, the Petitioner gave the Officers of the Court prior notice that he was not going to join with the court displaying the maritime flags of war and tried to discuss how did the Madison County Court acquire jurisdiction of this case without the Petitioner's Consent. When Amy Mays transcribed the Petitioner's transcripts, all of this discussion had been unlawfully edited out, in violation of T.C.A. § 39-14-403 (Forgery). (See e.g.; T.E., V. I , P. 7-8 , erroneous change of venue / due process violations discussion).

- 14 -

C. THE TENNESSEE SUPREME COURT OVERLOOKED THE FUNDAMENTAL DIFFERENCES IN THE FACTS AND LAW PRESENTED BY THE PETITIONER THAT WOULD ENTITLE HIM RELIEF

1. That according to the Supreme Court of Tennessee, they considered the Petitioner's claim addressing what he perceived to be a flag of war. In construing this claim, the court cited (5) pro se federal civil cases that originated from other states. None of these cases cited by the Court addressed collusive or nonjoinder of a proper party or any type of constitutional provision like Tenn. Const., Art. 1, § 25 (Martial law - punishment). See, State v. Hall, 8 S.W.3d 593, n.6 (Tn. 1999) (Citing 5 pro se federal cases that failed to address the Petitioner's claim that the Court had lost subject matter jurisdiction due to the collusive misjoinder).

2. That one of the main cases cited by the Tennessee Supreme Court in the Petitioner's opinion is McCann v. Greenway, 952 F.Supp. 647, 650 (W.D.Mo. 1997) (Reviewing history of the American flag). In that case the court did not find any Executive order bearing on the question of the fringe on the flag.

3. That since the Clerk of Courts failed to provide the appellate court with a complete copy of the Petitioner's Motion To Dismiss / Based On Newly Discovered Evidence and conveniently omitted page 2, the Supreme Court could not have considered the Petitioner's citation pursuant to the Executive Order on the fringe of the flag that the McCann Court couldn't have. The Petitioner states that this Executive Order was already cited in his Motion To Dismiss and that this citation can be found under "Army Regulations October 1979 Section 840."

4. That according to the Petitioner's research, there are other relevant indications that the fringe on the American flag denote a military flag under Title 4 U.S.C.A. § 1, n.1 (The flag / Notes to decisions) which provides:

   "Placing of fringe on the national flag, the dimensions of the flag, and the arrangement of the stars are matters of detail not controlled by statute, but within the discretion of the President as commander-in-chief of the army and navy." 34 Op. Atty. Gen. 483." See also: 10 U.S.C.A., § 4594 (Herald svc.).

5. That in McCann v. Greenway, supra at 650, the court claimed that this issue is without heraldic significance. According to the Petitioner's research there is a heraldic proclamation that subjects prisoners to war tribunals regardless of citizenship. See Title 10, U.S.C.A., § 906 (Proclamation No. 2561, July 2, 1942, 7 F.R. 5101, 56 Stat. 1964).

6. That another example demonstrating the Petitioner's claim that the Court is not following the mandates of the Constitution & is instead circumventing its oath of office through the law on contracts under the maritime flags of war, can be found under Title 22, U.S.C., § 454. See e.g.,

   (a) Texas v. Johnson, 109 S.Ct. 2533, 2551 (1989) (The flag identifies United States merchant ships; Title 22, U.S.C., § 454; and [t]he laws of the Union protect our commerce wherever the flag of the country may float [Citation omitted]) and

   (b) Law of the flag - A term referring to the law of the nation whose flag is flown by a particular seagoing vessel. Certain maritime matters are determined according to the law of the country whose flag the vessel flies. Cited: Ballentine's Law Dictionary, Legal Assistant Edition, by Jack G. Handler, copyright 1994.

7. That the Petitioner also claimed that the "Golden Eagle Insignia" that sits on top of the Court's flag was another indication of artifice or part of the scheme to defraud him of the constitutional guarantees provided by the Bill Of Rights, but the court didn't even address this artifice. See Title 18, U.S.C., § 715 (Golden Eagle Insignia).

- 15 -

D. HOW DOES THE PRACTICE OF CONTRACTING UNDER THE MARITIME FLAG OF WAR DENY
   THE PETITIONER FROM PROTECTING HIS CONSTITUTIONAL RIGHTS TO HIS PREJUDICE

1. That by utilizing the Maritime flags of war under the Wars Powers Act
   Title 50, U.S.C., § 5 with an Executive Order like the proclamation
   described under Title 10, U.S.C., § 906 (proclamation 2561), a Judge
   is able to circumvent his oath of office by way of contracting under
   the maritime / admiralty jurisdiction to deny equal protection of the
   law by creating an implied quasi contract. These contracts deprive the
   accused citizen of being able to exercise most of his constitutionally
   guaranteed rights under what is commonly called the "discretionary
   jurisdiction." See West Group, Federal Criminal Code and Rules 2000
   Ed., page 14, Order Of December 26, 1944, Justice Frankfurter, which
   provides in pertinent part:

        "If the Court is not to be swamped, as it has in the past
        and is to do its best work, it must exercise rigorously its
        discretionary jurisdiction."

2. That both the State and Federal Courts have an ancillary jurisdiction.
   See e.g.,

   (a) In Tennessee the ancillary jurisdiction is called the Courts'
       "Other Jurisdiction." Tenn. Const., Article VI., § 2, n. 5. Cited
       under T.C.A., Volume 1;

   (b) State ex. rel. Kain v. Hall, 65 Tenn. 3 (1873) (The "other
       jurisdiction" referred to is kind of a mythical entity, thus far
       not clearly identified by the courts); and

   (c) In Federal Courts the ancillary jurisdiction is referred to as
       the "Supplemental Jurisdiction." Title 28, U.S.C., § 1367.

3. That this illegal practice allows the court to apply civil procedures
   to what is actually a criminal prosecution and unjustly blurs the
   constitutional guarantees of the Bill of Rights. See e.g., Georgetown
   Law Journal April 1997, Vol. 85, No. 4, P. 782-820, fn. 53, & 205 (The
   Destabilization of the Criminal - Civil Distinction; [Applying Civil
   Remedies To Criminal Prosecutions]) (fn. 53. The traditional concept
   of civil sanctioning... Q. Who's getting compensation through hybrid
   procedures ?; & fn. 205. Civil forfeitures "the unique constitutional
   problems" presented by parallel civil / criminal proceedings; arguing
   that prosecutors filing actions to gain tactical advantages).

4. That this illegal practice of maritime / admiralty law is intended to
   deprive and thwart a citizen of the United States or a resident of
   Tennessee from utilizing certain fundamental rights before they have
   been lawfully convicted of a crime. This type of conduct creates a
   Bill of attainder, in order to expedite court procedures without
   regard to the individual's rights, in violation of Tenn. Const. Art.
   I, § 8, 9, 13, 16, & 25; Art. X, § 1; Art. XI, § 2, 8, & 16; U.S.C.A.
   Art. I, § 9 Cl. 3, & 10; U.S.C.A. Const. Art. IV, § 2 (1); U.S.C.A.
   Art. VI, § 3; and U.S.C.A., Const. Amend. 1, 4, 5, 6, 8, 9, & 14.

5. That through these contracts and applying civil and criminal hybrid
   actions, the Court is given unlimited judicial discretion and the
   accused is vulnerable to arbitrary and capricious rulings. See e.g.,

   (a) Judicial Discretion - Refers to a judge's right to use their own
       judgement so long as they follow the law and do not act
       arbitrarily;

   (b) Browning-Ferris Ind. v. Kelco Disposal, Inc., 109 S.Ct. 2909, 2915
       (1989) (Simply put, the primary focus of the 8th Amendment was the
       potential for governmental abuse of its "prosecutorial" power, not
       concern with the extent or purposes of civil damages); and

   (c) Compare e.g.; suppra, I (D), (1) - (7) for violation and the
       prejudice the Petitioner experienced. NOTE: See Hall v. Pollard,
       Case no. 95-1204 (W.D.E.D. Jackson Tenn. 1995) (Cruel and unusual
       punishment endured while being held without bond, inter alia).

- 16 -

6.  That by declaring war on crime and drugs on the citizens of the United States of America and the residents of the different states at peace-time and using civil / criminal hybrid laws, the President and the Governor are violating the United States Const., Article 1, § 10; and Tenn. Const., Article 1, § 25.

7.  That some examples of the potential constitutional rights violations under this illegal civil / criminal hybrid type of prosecutions under martial law are: **[1]** Shifting the burden of proof, in violation of U.S.C.A., Const. Article IV, § 2 (1), and U.S.C.A., Const. Amend. 5, 6, 8, & 14; In Re Winship, 397 U.S. 358, (1970); **[2]** Denial of speedy trial, in violation of U.S.C.A., Const. Article IV, § 2 (1), U.S.C.A., Const. Amend. 5, 6, 8, & 14; Barker v. Wingo, 407 U.S. 1027 (1972); **[3]** Excessive fines / bail in violation of U.S.C.A., Const. Article IV, § 2 (1), & U.S.C.A. Const. Amend. 5, 8, 9, & 14; Austin v. United States, 509 U.S. 602 (1993); and **[4]** Loss of the presumption of innocence by imposing sanctions before a conviction, in violation of U.S.C.A. Const. Art. IV, § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 8, 9, & 14, Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963).

E. THE TRIAL COURT FAILED TO PROPERLY JOIN THE PETITIONER TO THE COURT AND LOST JURISDICTION OVER THE PETITIONER'S CRIMINAL CASE

1.  That without prior notice or consent of the Petitioner, the trial court conducted a pretrial hearing and granted a change of venue on September 16, 1996, while the Petitioner was being held prisoner in Nashville, Tennessee (RMSI) without bond. The Petitioner was unjustly prejudiced from being able to make an knowing and intelligent decision on how to proceed and defend against his indictment, in violation of Title 28 U.S.C. § 1359 (Parties collusively joined or made), Tn. Const., Art. 1, § 8, & 9; & Art. XI, § 8; U.S.C.A., Const. Amend. 5, 6, & 14. See e.g.:

    (a) "THE DEFENDANT: Yes, sir. I'm not trying to disrupt the court, but I can't understand why we're holding this hearing in Madison County when I was charged in Lexington."; (T.E., V. _I_, P. _7_ to _8_ );

    (b) "THE COURT: Well your lawyers asked that a venue be changed due to the fact of the publicity such as --";

    (c) "THE DEFENDANT: Well not --" ["on my behalf"] [missing testimony];

    (d) "THE COURT: Just a minute. Such as the thing as the statement that you made which was given much _[8_ more publicity up there, and so if you note your objection to the change of venue, I assume that's what you're doing, and asking your lawyers, and I'll over-rule that motion." NOTE: Incomplete transcript on this discussion.

    (e) See T.R., V. _II_, P. _153_, 9/16/96 order granting change of venue;

    (f) Kentucky v. Stincer, 107 S.Ct. 2658, 2667 (1987) (The court has assumed that, even in a situation where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against a charge);

    (g) State v. Upchurch, 620 S.W.2d 540 (Tenn. Crim. App. 1980) (Trial Court improperly transferred situs of trial, over defendant's objections, from county in which crimes were committed to different county, despite the fact that members of petit jury consisted of residents of county in which crimes were committed);

    (h) Weakley ex. rel. Usery v. Pearce, 52 Tenn. 401 (1871) (The correct practice is to hear the witnesses for and against the change of venue, in open court, or to cause their depositions to be taken as in other cases, and affidavits in opposition to special circumstances) Cited: T.C.A. § 20-4-203 (Application for change);

    (i) State v. Brown, 64 S.W.2d 841 (Tn. 1933) (The right of the accused to object to locality of trial is personal privilege which he may waive, and thereby confer jurisdiction on the court);

- 17 -

(j) <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 58 S.Ct. 1019, 1023, 82 L.Ed.
1461 (1938) (emphasis added) (There can be no effective waiver of
a fundamental constitutional right unless there is "an intentional
relinquishment or abandonment of a known right or privilege.") and

(k) <u>United States v. Teque</u>, 953 F.2d 1525, 1533-34 (11th Cir. 1992)
(A lawyer shall abide by a client's decisions concerning the
objectives of representation ... and shall consult with the client
as to the means by which they are to be pursued.... In a criminal
case, the lawyer shall abide by the client's decision, after
consultation with the lawyer, as to plea to be entered, whether to
waive jury trial and whether the client will testify).

2.  That an example showing that the attorneys were not keeping the
Petitioner informed of the proceedings can be shown, because around
the same date as the change of venue hearing was allegedly conducted,
the Petitioner was still in Nashville, Tennessee preparing his own
defense motion that he submitted to the Henderson County, Tennessee
Court. Since defense counsel failed to notify him of the Court's order
granting a change of venue. See T.R., V. II , P. 155 Motion To
Dismiss / Based On Newly Discovered Evidence, sworn and subscribed by
Davidson County, Tennessee Notary Public, Howard Brandon on 9/17/96
NOTE: This motion and supporting exhibits have already been discussed
in supra, II. (B) (2).

3.  That in spite of the Petitioner's pre-trial Motion To Dismiss and its
supporting documents being submitted to all of the Officers of the
Court, they did not try to protect the Petitioner's rights under the
law of the flag, by removing the fringe and the gold eagle artifices
from the Court's flag. See 4 U.S.C.A., § 1 (United States flag).

4.  That as a precaution to this matter, the Petitioner wore an American
Flag of Peace (Red, White, & Blue w/o artifices) with the field of
stars facing towards the right throughout the whole trial beginning on
February 3-5, 1997, pursuant to the law of the flag to express his
intent to contract under the American Flag of Peace, to protect his
Constitutional Rights. See supra, II (C), (6) (b) (Law of the flag).
See T.C.A., § 4-1-301 (Tenn. flag w/o indication of said artifices).

5.  That at all times throughout these judicial proceedings, the State
had the Petitioner unlawfully imprisoned and forcibly detained of his
liberty without bond [by the plaintiff / State & other law enforcement
agencies in collusion with the State] until solely by the reason of
the force and duress of imprisonment and threat of capital punishment,
the Court executed this collusive quasi judicial contract to impair
and impede the exercise of rights, in violation of FRCP Rule 8, & 19.
See T.E., V. I , P. 117 , "Mr. Hall is wearing leg restraints ...."

6.  That based upon the fact that the Officers of the Court brought the
Petitioner into its maritime / admiralty jurisdiction without the
properly expressed consent, and started applying civil law procedures
to the criminal prosecution of the aforementioned criminal warrants,
the court lost jurisdiction over the subject matter of this criminal
prosecution under FRCP Rule 12 (b) (1) & (7), for the failure to join
the petitioner to a civil lawsuit. See e.g.; Title 28 U.S.C., § 1359
(Parties collusively joined or made).

7.  That since none of the pro se litigants cited by the Tenn. Sup. Ct.
in their opinion that addressed the Petitioner's issue had shown the
reviewing court how the court's sitting in an admiralty jurisdiction
would limit the State Courts jurisdiction or how the maritime flag
could have disadvantaged them, those litigants had failed to state a
claim upon which relief could be granted. See McCann, supra at 649.

9.  That it is therefore the Petitioner's position, that by the court's
proceeding in its admiralty / discretionary jurisdiction to save time
so as not to be swamped, the court had violated the Petitioner's due
process right to be present at this change of venue hearing, wherein
the judge had abused his discretion by changing the venue in which
ultimately denied him equal protection of the law in violation of his
oath of office. T.C.A. § 17-1-104; 28 U.S.C. § 453 (Judge's oath).

10. That for the above stated reasons, the Petitioner contends that his defense attorneys were acting in collusion with the prosecution to unlawfully enjoin him to the Madison County Court exercising its ancillary jurisdiction to impair and impede the exercise of his constitutional rights. See T.E., V. _I_ , P. _179_ , Plea entered by by defense attorney Mr. Ford, even though the defendant advised the Court he was not going to join with the court or be sworn in. See T.E., V. _I_ , P. _8_ , "I'm not testifying, Your Honor." ["I'm not going to join with the court"] [missing from the record]. See e.g.:

   (a) "THE DEFENDANT: Your Honor, I'll testify if you take down the flag of war or sign that judicial contract." (T.E., V. _III_ , P. _348_ );

   (b) "THE DEFENDANT: Here is the motion I told you I wanted to bring you would remove the flags of war, and here is the " [incomplete transcript / fraud]. (See T.E., V. _IV_ , P. _435_ ); and

   (c) State v. Moore, 49 S.E. 1015, 57 W.Va. 146 (Some cases hold that one accused of a felony must plead in person, and that plea of not guilty by counsel, whether in the absence or presence of accused is a nullity. Cited: C.J.S. Vol. 22, § 452.

11. That since the trial court has collusively brought the Petitioner into its admiralty jurisdiction under duress and fraudulently disguised its true identity under the maritime flag of war, the Petitioner contends that the court has lost jurisdiction of: (1) the situs of the offense, (2) the jurisdiction over the person; and (3) the subject matter, in violation of T.C.A., § 39-12-206 (Forfeiture of property) and 28 U.S.C.A., § 2514 (Forfeiture of fraudulent claims).

F. DEPRIVATION OF RIGHTS UNDER THE COURT'S DISCRETIONARY JURISDICTION

1. That the court was utilizing its discretionary jurisdiction to deny fundamental rights on February 9, 1996, when the Petitioner went before the court to address whether he would be able to cross-examine witnesses or make arguments on his own behalf. The request to exercise this fundamental right was unconstitutionally denied and deprived him of the opportunity to exercise this fundamental right, in violation of Tenn. Const. Art. 1, § 8, 9, 11, 13, & 25; Art. XI, § 2, 8, & 16; U.S.C.A., Const. Art. I, X (1) & (3); Art. IV., § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 9, 10, & 14. See e.g.:

   (a) "MR. EARLS: Your Honor, he asked to represent himself, in the past." (See T.E., V. _II_ , _189_ ). NOTE: Parts of this discussion have been fraudulently edited to prevent a successful appeal;

   (b) State v. Burkhart, 540 S.W.2d 365 (1976) (If the interest of justice so requires, trial judges, in an **exceptional circumstance**, may permit criminal defendant who is represented by counsel to participate in the trial, including cross-examination of witnesses and the argument of his own defense, but that **discretion** should be exercised sparingly and with caution and only after judicial determination that the defendant is not seeking to disrupt orderly trial procedure and that he has the intelligence, ability and general competence to participate in his own defense); and

   (c) Tennessee Constitution, Article 1, § 9 (Rights of the accused in criminal prosecutions), provides in part:

      "That in all criminal prosecutions, the accused hath the right to be heard by himself **"and"** his counsel, ... [emphasis added].

2. That when the Burkhart court construed T.C.A. § 40-2402 [now § 40-14-101], the court construed away this constitutional provision, and gave this provision a whole new meaning, by stating in pertinent part:

      "In all criminal prosecutions the accused has the **right to testify as a witness** in his own behalf and to be represented by counsel."

- 19 -

3. That in order for the Burkhart Court to reach its decision in that case, the Court utilized United States v. Plattner, 330 F.2d 271, 276 (1964) to render their opinion and deny relief. In Plattner the court decided upon the following:

> "The right to counsel and the right to defend pro se, in criminal cases form a single, inseparable bundle of rights, two faces of the same coin. Thus we find the choice between the two sometimes discussed in terms of waiver of the right to counsel, and sometimes **in terms of election to have a lawyer "or" to proceed pro se**. Viewed in this light the problem is simplicity itself."

> ".... Accordingly, in all cases of this type, no matter how indigent or other the defendant may phrase his prayer for relief for action by the court, it is incumbent upon the presiding judge, by recorded colloquy with the defendant, to explain to the defendant; **that he has a choice between defense by a lawyer and defense pro se**; ...." [Emphasis added].

4. That the Court's interpretation of this statute should insult all accused citizen's and jurist's intelligence, because **"and"** cannot be construed as **"or"**. The Webster's dictionary can clear up this fact.

5. That by utilizing the excerpt from the Plattner Court, the Burkhart, Court ultimately decided to follow this erroneous judge-made law to deprive criminal defendants of their **fundamental rights**, and had in this manner unlawfully shifted the burden of proof on the defendant to prove that there are **exceptional circumstances** that exist in order to exercise this fundamental constitutional right to personally manage and conduct his own defense. See e.g.:

(a) Exum v. Griffi's Newborn Co., 144 Tenn. 239, 230 S.W. 729 (1919) (It is the duty of the Supreme Court, where a statute is susceptible of two interpretations, one in harmony with, and the other in violation of the constitutional provisions, to give it that interpretation in harmony with the constitution; but such principle does not authorize the court to give an act an interpretation merely to bring it within the constitutional limitation, for where an act is unambiguous and susceptible of only one interpretation, it must be given that construction, according to its plain meaning, whatever the consequences, when tested by the constitution);

(b) Bouldin v. Lockhart, 69 Tenn. 195 (1878); Keith v. Funding Board, 127 Tenn. 441; 155 S.W. 142 (1913), overruled on other grounds; Foster v. Roberts, 142 Tenn. 350, 219 S.W. 729 (1919) (No tribunal, general or special, legislative, judicial, or ministerial, may act in violation of the constitution. It is supreme and paramount, and to its mandates all must yield obedience); Cited, T.C.A., Volume 1, 1997 Supp., pages 363-64, n. 1, (General notes to Tn. Const.);

(c) Memphis Publishing Co. v. Leech, 539 F. Supp. 405 (W.D. Tenn. 1982) (**A fundamental right is** involved where it is explicitly or implicitly guaranteed by the Constitution);

(d) Hovey v. Elliot, 167 U.S.409, 17 S.Ct. 841, 42 L.Ed. 215 (1897) (The "due process of law" clause found in the 14th Amendment signifies the right to be heard in one's own defense); and

(e) Mr. Chief Justice White, before he became Chief Justice, wrote an opinion in the case of Hovey v. Elliot, supra, which pointed out grave constitutional questions raised by attempting to **punish** parties by depriving them of the right to try their lawsuits or to defend against lawsuits brought against them by others. Cited: West Group, Federal Criminal Code and Rules 2000 Ed., page 16, Order Of February 28, 1966. The Petitioner contends that these rules are in violation of T.C.A., § 16-3-403 and 28 U.S.C.A., § 2072 (Rules not to affect substantive rights).

- 20 -

6. That the judge-made law in Burkhart, is void on the ground of "vague-
ness" and violative of due process because the conduct prohibited or
commanded is expressed in terms "so vague that people of common
intelligence must necessarily guess at its meaning and differ as to
its application." Moreover, the Burkhart decision, from the standpoint
of administration, by its indefiniteness in expression of **"exceptional
circumstances,"** fosters arbitrariness and discrimination with its
enforcement." See e.g.; Grayned v. Rockford, 408 U.S. 104, 33 L.Ed.2d
222, 92 S.Ct. 2294, which provides:

> "[i]f arbitrary and discriminatory enforcement is to be
> prevented, laws must provide explicit standards for those who
> apply them. A vague law impermissibly delegates basic policy
> matters to policeman, judges, and juries for resolution on an
> ad hoc and subjective basis, with the attendant dangers and
> discriminatory application."

7. That the judges of the State of Tennessee have known that the holding
in Burkhart is prone to arbitrary, capricious application and is being
utilized to thwart an accused's ability to defend against a criminal
charge in whatever manner he may choose would be best on such matters
as: (1) what motions to file; (2) what witnesses to call for the
defense; (3) the conduct of direct or cross-examination of these
witnesses; and (4) the type of argument to be presented. This
arbitrary and capricious application of an ad hoc decision can be
shown by how the judges have interpreted the meaning of **"exceptional
circumstances."** This shows that the judge's true desire or intent is
to allow the prosecutors to gain another unconstitutional tactical
advantage through this civil / criminal hybrid practice in order to
gain a conviction. See judicial discretion applied e.g.:

> State v. Franklin, 714 S.W.2d 252 (Tenn. 1986) (defendant requested
> and was permitted by the trial court to make a closing argument to
> the jury in order to sabotage his own defense so that he could get
> transferred from Marion, Illinois prison (where he was in fear for
> his life) to a Tennessee prison).

G. DENIAL OF RIGHT TO BE HEARD / DEFEND, FRAUD, AND PREJUDICE SUSTAINED

1. That the transcript does not correctly portray a verbatim account of
the Petitioner's request to represent himself after the defense atty.
had already collusively joined him to the court. The Petitioner made
a request to be able to participate at trial without lead counsel.
This denied him of this fundamental right again and forced him to
accept the services of a sabotage attorney, contrary to Farretta
v. California, 422 U.S. S.Ct. 806 (1975). (See T.E., V. II , P. 186
to 191 , Motion To Dismiss Mr. Ford from case / request to self-
representation with elbow counsel). NOTE: Parts of this discussion
have been fraudulently edited from the transcript to deprive and
injure the Petitioner from arguing this issue on appeal.

2. That the denial of the right to be heard / defend in any manner the
Petitioner chose, had prejudiced him. The court appointed counsel was
ineffective because they had: (1) made a remarkably limited effort to
cross-examine all the State's witnesses; (2) failed to try to rebut
most of the States misleading evidence / testimony; and (3) the record
is void or unclear on many basic facts needed to present a clear
picture of the hardships and conditions that caused the Petitioner to
experience a very confused state of mind, subjecting him to abnormal
behavior.

3. That if the Petitioner had been able to exercise his constitutional
right, he would have been able to create reasonable doubt by being
more thorough in the cross-examination of the State's eye-witnesses
in order to rebut the misleading circumstantial evidence. Further, the
Petitioner could have shown how dim the State's minor eye-witnesses'
memories had become after the excessive passage of time. Moreover, the
Petitioner had a more intimate knowledge of a variety of different
facts that counsel neglected to investigate or was unwilling to
pursue. (See T.E., V., III P. 311 , Defense Rests / Petitioner's
own objection, inter alia omitted from the transcript with the intent
to defraud).

- 21 -

4.  That if the Petitioner had been afforded his fundamental right to
participate and make his own decisions binding on the court (with the
assistance of counsel to provide sound legal advice), the Petitioner
contends that he would not have been convicted of first-degree murder.
This assumption is based on the grounds of the following deficiencies:
(1) counsel's failure to protect various state and federal rights;
(2) counsel's failure to subject the State's case to any meaningful
adversarial testing; (3) counsel's failure to suppress illegally
obtained evidence; (4) the failure to try and obtain a bail; (5) the
failure to suppress Chris Dutton's testimony as the fruit of the
of exploitation of no bail;  and (6) counsel's failure to present
sufficient evidence in support of the Petitioner's defense theory, in
violation of Tennessee Constitution, Article 1, § 9; and U.S.C.A.,
Const. Amend. 6.

H.  THE DEPRIVATION OF A FAIR AND SPEEDY TRIAL CAUSED BY THE MAGISTRATE

1.  That shortly after appointed counsel failed to protect all of the
Petitioner's rights at the August 22, 1994 preliminary hearing, both
attorneys withdrew on their own without giving the Petitioner prior
notice. According to records the Petitioner acquired from attorney,
George Googe, attorney Frank Stanfill, submitted an "Order On Motion
To Withdraw," (sent to the court on February 21, 1995). The order
claims that due to the fact,  that a potential conflict between the
Law Offices of Tom Anderson and the 26th Judicial District, Frank
Stanfill, is; therefore, no longer employed with the Public Defender's
Office. It has been close to six years since this order was submitted
and to this day the Petitioner still does not know what this alleged
potential conflict was all about.

2.  That based upon information and belief, the Petitioner believes that
Mr. Stanfill had taken over Mr. Hinson's position in the Henderson Co.
Public Defender's Office, around the same time as the Petitioner's
preliminary hearing was held on August 22, 1994. It is also believed
that Mr. Stanfill, was fresh out of law school at this time and had
no jury trial experience. The Petitioner contends, that it is the
Court's failure to provide him with more experienced counsel that has
caused the Petitioner's unreasonable prejudicial delays in obtaining
a fair and speedy trial. See e.g.:

    State v. Simon, 635 S.W.2d 498 (Tn.1982) (Trial judge should
    appoint more experienced counsel).

NOTE: Attorney Jack Hinson handled the litigation at the preliminary
hearing, but there are no records of his withdrawal.

3.  That also due to the trial judge's dereliction of duty to appoint
more experienced counsel, that the Petitioner was unnecessarily
prejudiced from receiving an early psychiatric evaluation. This type
of prejudicial delay unconstitutionally deprived the Petitioner from
receiving a fair and accurate diagnosis of his condition by an
impartial, forensic psychiatrist at this critical stage in order to
insure and enable the Petitioner to present a proper defense to be
submitted to the jury. See supra, I. (H), (5), (6) & (7), for a more
detailed account of when the Petitioner received the psychiatric
treatment and evaluation.

I.  THE DEPRIVATION OF A FAIR AND SPEEDY TRIAL AFTER SPEEDY TRIAL REQUESTED

1.  That on August 1, 1996, the Petitioner filed his own Motion For Fair
And Speedy Trial On All Untried Indictments pursuant to T.C.A., §
40-14-101 (Speedy Trial - Right To Be Heard), but the Clerk of Courts
has conveniently neglected to place this motion in the technical
record. Therefore, this 1 page motion shall be attached to this motion
& listed as the Petitioner's [EXHIBIT F]. (See T.R., V. I , P. 145 ,
Notice Of Motions, § 10. Motion For Fair And Speedy Trial On All
Untried Indictments) (See also T.R., V. I , P. 146 , State's
response to, Notice Of Motions, forwarded to Attorney, J. Ford on
August 20, 1996.

- 22 -

2. That on August 28, 1996, the Petitioner submitted a Motion For Defendant's Presence During All Proceedings Held, (See T.R., V. <u>II</u>, P. <u>149</u>).

3. That in the Petitioner's Motion To Dismiss Based On Newly Discovered Evidence, the Petitioner alleged that under the flag of war, his constitutional right to a speedy trial was illegally suspended. (See T.R., V. <u>II</u>, P. <u>154</u>, ).

4. That in spite of the Petitioner's own constitutionally proper and legally viable pretrial motions, the Court neglected to hold any type of hearing on the Petitioner's strategic defense motions. The court violated the Petitioner's due process right to be heard in regard to these matters, which is how the improper change of venue had occurred. (See T.E., V. <u>I</u>, P. <u>7 to 8</u> improper change of venue discussion).

5. That when the trial court granted the defense attorney's Motion For Continuance without regard to the Petitioner's Motion For A Speedy Trial, and allowed court appointed counsel to waive the Petitioner's rights to a speedy trial, the court violated the Petitioner's right to be heard, in violation of T.C.A. § 40-14-101 (Speedy Trial – Right To Be Heard); T.C.A., § 40-18-103 (Speedy Trial); Title 18 U.S.C.A. 3160 (Speedy Trial Act); Tennessee Constitution, Article 1, § 8, 9, 13, & 17; Article XI, § 2, 8, & 16; U.S.C.A., Const. Article IV, § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 8, 10, & 14.

6. That the Petitioner contends that there are so many errors made by the Court and its Officers surrounding the filing of the Motion To Dismiss Based On Newly Discovered Evidence, and the Motion For Speedy Trial. This warrants an investigation into the Clerks Of Courts Office in both Henderson and Madison County. The investigation is needed in order to determine why all these improper errors have occurred that surround the filing of these pretrial motions and all the missing testimony in the trial transcripts regarding these issues.

7. That it is the Petitioner's belief, that all of the errors created in the record filed by the Clerk Of Courts is part of a scheme that was devised in order to thwart the Petitioner's ability to file any type of post judgement appeal. The Petitioner contends that there are at least 53 other pre-trial motions filed by attorneys missing from the technical record that were heard by the trial court on November 8, 1995.

8. That the Petitioner lost two important witnesses that could have aided in presenting a defense in this case as shown in supra, I. (H), (8) & (9). That it is due to court's errors and the appointed counsel's deficient representation of failing to provide a speedy trial, that has basically made it impossible for the Petitioner to be afforded a fair trial.

J. <u>CONCLUSION / MEMORANDUM OF LAW IN SUPPORT OF THE PETITIONER'S FLAG ISSUE</u>

It has long been established by the Supreme Court of the United States that the flag is a unique symbol in our history, one "[p]regnant with expressive content." <u>Texas v. Johnson</u>, 491 U.S. 397, 405 (1989). In <u>Smith</u> v. Goguen, 415 U.S. 566, 603 (1974), the Supreme Court said:

... "The United States flag flies over every federal courthouse in our nation, and is prominently displayed in almost every state or local building throughout the land. It asserts jurisdiction of the courts and is one visible embodiment of the national government, through which the laws of the nation and the guarantees of the constitution are enforced."

- 23 -

In Halter v. Nebraska, 205 U.S. 34, 43, 27 S.Ct. 419, 51 L.Ed. 696 (1907), the Supreme Court has said:

> "The flag is the symbol of the nation's power, the emblem of freedom in its truest and best sense, and that to all lovers of the country, the flag signifies government resting on the consent of the governed; liberty regulated by laws; protection of the weak against the strong; **security against the exercise of arbitrary power** and absolute safety for free institutions against foreign aggression. [Emphasis added].

The Constitution of the State of Tennessee, Article 1, § 25 (Martial law - Punishment), provides in pertinent part:

> "That no citizen of this State, except such as are employed in the Army of the United States, or militia in actual service shall be subjected to punishment under martial or military law."

The Petitioner, in accordance with Article 1, § 9 of the State of Tennessee, expressed his right to be heard and filed several pretrial motions on his own behalf to protect himself from being subjected to martial law. (See T.R., V. II , P. 153 - 155 ). But, the Court acted in furtherance of its custom to display the maritime flags of war and utilized its unconstitutional customs to deprive the Petitioner of his constitutional rights.

That all of the Officers of the Court acting in concert with each other under this custom have illegally deprived him of his ability to exercise this fundamental constitutional right. Passion, prejudice, neglect, and intolerance to this claim have collectively prevented the the laws of the state from being properly enforced. Even appellate counsel has tried to sabotage this claim by failing to present this issue properly to the Supreme Court, but due to the Officers of the Courts collective fraudulent conveyance in the record, this claim has not been properly and / or previously determined on the merits or waived. See e.g., Hall v. Donahoe, B.O.P.R., File # 22736-7-SG (provided to post-conviction public defender's office). In short, due to all the Court Officers passions, prejudice, neglect and intolerance toward this claim has ultimately violated the Petitioner's right to a fair trial, and a successful appeal, in violation of Tenn. Const., Art. 1, § 8, 9, 13 & 25; Art. XI, § 2, 8, & 16; U.S.C.A., Const. Art. IV. § 2 (1); and U.S.C.A., Const. Amend. 5, 6, 8, 9, 10, & 14.

The Petitioner can prove that: (1) neither the State or Federal statutes on the flags require a fringe, rope, or golden eagle to assert the court's standard jurisdiction, (See e.g.: T.C.A., § 4-1-301; and Title 4 U.S.C.A., § 1); and (2) contrary to the holding in McCann v. Greenway, supra, the gold fringe, the rope, and the golden eagle do have heraldic significance that denote that a flag adorned with this decor is actually a military flag of war. See Title 10 U.S.C.A., § 4594 (a) (Furnishing of heraldic services), which provides:

> "Under regulations to be described by the Secretary of the Army, an authority designated by him may, upon the request of, and subject to approval by, the Secretary of another military department, design flags, badges, medals, seals, decorations, guidons, streamers, final pieces for flagstaffs, buttons, buckles, awards, trophies, marks, emblems, rosettes, scrolls, braids, ribbons, knots, tabs, cords, and similar items for the requesting department."

Also, in McCann v. Greenway, supra, the court could not fathom how the maritime flag of war could possibly limit the court's jurisdiction. The Petitioner does not claim that it limits the court's jurisdiction but enhances the court's jurisdiction to be able to apply civil / criminal hybrids without regard to State constitutional rights, thus the court is in excess of jurisdiction under Tennessee Constitution, Article 1, § 25.

- 24 -

That the McCann Court went even further by stating: "Jurisdiction is a matter of law, statute, and constitution, not a child's game wherein one's power is magnified or diminished by the display of some magic talisman." The Petitioner has claimed that the courts military flags are part of a scheme and artifice to defraud him by disguising the court's true identity or its "other jurisdiction," to sit in its maritime / admiralty jurisdiction over him to deprive him of various fundamental constitutional rights. Instead of the word "talisman," let us try to use the word "artifice," which provides:

"An ingenious contrivance or devise of some kind, and, when used in a bad sense, it corresponds with trick or fraud. It implies craftiness and deceit, and imports some element of moral obliquity. Cited: Black's Law Dictionary.

Mr. Justice Brandeis, and Mr. Justice Holmes, added in their enormous influence to their notable dissents, in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). Mr. Justice Brandeis said:

"In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the omnipresent teacher. For good or for ill, it teaches the whole people by example. Crime is contagious. If the government becomes the law breaker, it breeds contempt for the law; it invites anarchy." id. at 485, 48 S.Ct., at 575.

Wherefore, the Petitioner declares his sovereign immunity under the law of the American flag of peace to protect his constitutional rights. The Court was in excess of jurisdiction, wherein the Officer's of the Court moved in bad faith to collusively join him to the court's military or admiralty jurisdiction to deprive him of his state rights. Moreover, the Court lacks subject-matter jurisdiction for the offense of exceeding its State constitutionally limited jurisdiction. Finally, the lack of subject-matter provisions of Rule 12.07 and Rule 12.08, and can be asserted at any time. See e.g., Gillespie v. State, 619 S.W.2d 128 (Tn. App. 1981).

III. MISCELLANEOUS INEFFECTIVE ASSISTANCE OF COUNSEL ERRORS

1. That on September 06, 1994, the Petitioner was subjected to cruel and unusual treatment when another Henderson County prisoner gave him a broken hack saw blade without the Petitioner asking said prisoner for it. Shortly thereafter, HCSD Investigator Barry Edgin, came into the Petitioner's cell looking for said hack saw blade. Then, Petitioner was placed back into his cell without his personal property and stripped of all clothing for seven days until he was transferred to Riverbend Maximum Security Institution (RMSI). The Petitioner has remained there ever since, except for the short time that was spent at the Madison County jail just prior to his trial on Feb. 3-5, 1997.

2. That the Petitioner believes that the hack saw blade incident was a set-up and that he was never given any type of disciplinary write-up or served an arrest warrant. That it was not until the Petitioner had been indicted for the offense of escape on October 03, 1994, that the Petitioner received a copy of an arrest warrant for the offenses of possession of implements of escape and attempted escape.

3. That the Petitioner was denied his procedural due process right to be present and the right to confront witnesses, when Judge Franklin Murchison signed an order to have the Petitioner transferred to the State Penitentiary on September 12, 1994. This gross negligence in failing to protect the Petitioner's rights caused irreparable injury to him and thwarted his ability to establish an adequate working rapport with all subsequent attorney's, and the deprivation of a speedy trial.

- 25 -

4. That counsel for the Petitioner was ineffective for failing to move the Judge for an order to have him transferred back to a local county jail in order to prepare the attorneys for trial.

5. That counsel for the Petitioner was ineffective for failing to inform him of the nature of what a court ordered psychiatric examination was. Additionally, counsel was ineffective for failing to file a motion to record all psychiatric examinations conducted in order to preserve evidence & to maintain the reliability of the truth-seeking function. See e.g., State v. Huskey, 964 S.W.2d 892, 898 (Tn. 1998).

6. That counsel was ineffective for failing to protect the Petitioner's due process rights to be present at hearings that had a relation, reasonably substantial, to the fullness of the opportunity to defend against the charges brought against him. For example; (1) the Sept. 16, 1996 change of venue hearing; (2) October 14, 1996 continuance; and any other miscellaneous hearings conducted (suppression hearings, restraints, and any other hearing the Petitioner is unaware of.).

7. That counsel for the Petitioner was ineffective for failing to file a Motion To Compel Identification Of Psychiatrist and / or Psychologist Treating Key Eyewitnesses (Jenny, Cindy, & Stephanie), because the mental state and condition at a time relevant to the events about which they were to testify was needed for potential impeachment. See e.g. State v. Carter, 682 S.W.2d 224 (Tn. Cr. App. 1984) (Rule 17, Tn. R. Crim. P.); State v. Barnes, 703 S.W.2d 611 (Tn. 1985) (Tn. S.Ct. has approved the cross-examination of key accusatory witnesses in criminal cases as to witness' mental state or time relevant to the events about which they have testified for purpose of impeachment). This type of discovery would have been very beneficial and could have been very crucial for the jury to determine whether the childrens memories was sound. See also, supra II., (H) (10), thru (18) (Prejudice / lost memory).

IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL - ATTORNEYS JESSE FORD & CLAYTON MAYO

1. That counsel failed to select a jury consisting of a fair cross section of the community of the Petitioner's race and gender. That Petitioner is a white male, and counsel picked a jury of eleven women and one black man to stand in judgement in a domestic violence case.

2. That counsel failed to utilize all of their preemptory and cause challenges, and despite news reports with the Petitioner accusing Jackson Madison County General Hospital for creating the majority of his problems, and over his in-chambers objections to counsel, the attorney's went ahead and allowed a juror from this hospital on the jury. See T.E., V. I , P. 40 , Juror, Ms. Rucker.

3. That counsel failed to have the jury sequestered away from the victims family. See T.E., V. II , P. 188 .

4. That trial attorneys failed to represent the Petitioner effectively in all aspects in presenting his case to the best of their knowledge of the facts and beliefs.

5. That counsel failed to stand up for the Petitioner's right to be heard by himself and counsel, and failed to make court clerk make out a verbatim transcript depicting this request. See T. E., V. II , P. 186 thru 191 , request to participate on own behalf w/o Jesse Ford.

6. That counsel failed to make proper objections and move to suppress or strike the testimony of TBI agent Byrd, and Chris Duttons as fruits of a poisonous tree.

7. That counsel failed to present evidence in their custody and control to corroborate the Petitioner's defense.

8. That counsel failed to rebut and/or correct misleading circumstantial evidence. Some evidence for example had nothing to do with the facts or crime, i.e. weight pin, and ashtray used as weapons. See T.E., V. 217 .

- 26 -

9.  That counsel refused to give up the investigative files produced for the defense to thwart Petitioner's desire to represent himself.

10. That counsel failed to try to learn basic facts, tried to control every topic of discussion, and refused to listen to the Petitioner's flag argument.

11. That counsel was ineffective by failing to include (53) motions into the technical record filed by previous attorney's in which trial counsel accepted. In short, counsel has exhibited very poor motion practice.

12. That counsel could not have done a thorough job of investigating the facts, and could not have begun their investigation until after they were put on the Petitioner's case at the 8/22/94 preliminary hearing.

13. That counsel failed to object to "nude" autopsy photos that made a female juror to. sick too continue, and the transcripts have this break / discussion with the juror omitted from the transcripts. See State v. Collins, 986 S.W.2d 13, 21 (Tn. Crim. App. 1998) (prejudicial and inflamatory nude autopsy photos submitted reversible error).

14. That counsel failed to present proof in support of Sheryl Arbogast's testimony during her offer of proof, and counsel failed to enter this same evidence / testimony at the sentencing phase where the usual rules of evidence are relaxed. The prosecutor even instructed him that this type of testimony could be presented at the sentencing phase, but he still failed to present this evidence to the jury. (See T.E., V. III , P. 314 , Sheryl's testimony guilt phase; compare Sheryl's testimony at the sentencing phase at T.E., V. IV , P. 430-431 ). See also State v. Odom, 928 S.W.2d 18, 27-28 (Tn. 1996) (Plain error found during sentencing phase, reversible error).

15. That counsel for the Petitioner failed to object to the judge's fundamental error or impermissible comment on the evidence, during the jury instructions on intoxication (misstatement of law). See e.g., State v. Brown, 553 S.W.2d 94, 96 (Tn. 1977) (Erroneous intoxication instruction is a fundamental error); State v. Eaves, 959 S.W.2d 601, 604-605 (Tn. Cr. App. 1997) (fundamental error / judge's impermissible comment on the evidence / giving jury an impression as to his opinion or feelings). See T.E., V. III , P. 367 , Intoxication is [ir]relevant to the culpable mental state. [Sic] [Emphasis added].

16. That counsel for the Petitioner failed to appeal the judge's erroneous order in refusing to permit trial attorney's withdrawal even after they violated Tn. R. S.Ct. Rule 8 by submitting privileged attorney-client mail in his motion to withdraw. See T.R. V. II , P. 199-201 .

17. That trial counsel willfully neglected to argue Petitioner's issues on appeal and certified a fraudulent transcript. See T.R., V. II , P. 186 to 198 , Post-trial motions.

18. That replacement appellate counsel was ineffective because he failed to find fundamental jury instruction error on intoxication and present it to the court on direct apeal in a timely manner.

19. That appellate counsel failed to properly correct the appellate record, and gave the Petitioner useless audio tapes that played at the wrong speed and to late to try to assist him with correcting the fraudulent transcripts.

20. That appellate counsel was ineffective for failing to correct the Petitioner's phone block after he forwarded a copy of useless audio tapes of the trial to assist in correcting the fraudulent record. See Casey v. Lewis, 43 F.3d 1261 (9th Cir. 1994) (Prisoner phone / atty.).

I swear under the penalty of perjury that the foregoing is true and correct, except what is based on information and belief as to those the Petitioner believes is true and correct.

_Jon Hall_        _august 1, 2002_
SIGNATURE OF PETITIONER / DATE EXECUTED

- 27 -

123

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE **FILED** C
DIVISION I    **JUDY BARNHILL, CIRCUIT COURT CLERK**

JON HALL )
)
VS. )    No. C-00-422
)
STATE OF TENNESSEE )

AUG 0 7 2001

DEPUTY CLERK

A.M ___ 1:20 ___ P.M.

## STATE'S RESPONSE AND MOTION TO DISMISS

Comes now the State of Tennessee by and through the Office of the District Attorney
General and in response to the above styled pleading states:

1. The state hereby enters a general denial of all allegations and will rely upon
   waiver and previous determination of the issues.

2. The Court gave the petitioner until August 6th, 2001 to file an amended petition
   but the State has not received any copies of such amended petitions.

3. Should the State receive any amended petitions the State reserves the right to
   enter an amended response.

Wherefore premises considered the State moves this Honorable Court to deny
the above styled pleading.

Respectfully Submitted

Assistant District Attorney

Certificate of Service

I hereby certify that a true and exact copy of the foregoing was mailed or
delivered to Linda Taylor on or before the filing date as affixed by the Clerk of
this Court this the 7th day of August 2001.

Assistant District Attorney

124

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE **FILED**

DIVISION I

JUDY BARNHILL, CIRCUIT COURT CLERK

| | | |
|---|---|---|
| JON HALL | ) | |
| | ) | SEP 1 7 2001 |
| VS | ) | NO. C-00-422 |
| | ) | DEPUTY CLERK |
| STATE OF TENNESSEE | ) | 9:20 |
| | | A.M. _____ P.M. |

## STATE'S MOTION FOR RULE 9 APPEAL

Comes now the State of Tennessee by and through the Office of the District Attorney General and hereby moves this Honorable Court to permit the State to take an appeal of the trial Court's ruling granting a continuance and extension of time to file amendments in the above styled matter and states as grounds the following:

1.  The Court has already granted a continuance that extended beyond the legal limit set by the Tennessee Supreme Court in rule 28 of the Supreme Court Rules governing post conviction petitions.
2.  The Court's extension is beyond the limit set by statute in T.C.A. § 40-30-206 and 209.

Wherefore premises considered the State moves this Honorable Court to grant its application to appeal the decision of the Court in this matter.

Respectfully Submitted

Assistant District Attorney

Certificate of Service

I hereby certify that a true and exact copy of the foregoing was mailed or delivered to Linda Taylor on or before the filing date as affixed by the Clerk of this Court this the 17th day of September, 2001.

Assistant District Attorney

125

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
AT JACKSON

JON HALL,

    Petitioner,    )    Madison County No. 96-589
)
VS.    )    Post-Conviction No. CO-422
)    C-00-422
STATE OF TENNESSEE,    )
)
    Respondent.    )

*JUDY BARNHILL, CIRCUIT COURT CLERK*
*FILED*
*SEP 17 2001*
*DEPUTY CLERK*
*11:35 A.M.*
*P.M.*

ORDER

This cause came on to be heard on the 10TH day of September, 2001, upon the

Motion of Counsel for the Defendant for a continuance. It also appeared and the Court

did note in the record that the Defendant has also filed a motion for continuance.

It appeared that the motion was well taken.

IT IS THEREFORE ORDERED that the cut-off date for any amendments to the

Petition filed in this cause shall be November 1st 2001.

IT IS FURTHER ORDERED that this cause shall be put back on the calendar for

hearing on the 15th day of January, 2002 at 8:00 a.m.

ENTERED this the _14th_ day of September, 2001.

_____
ROY B. MORGAN, JR.

APPROVED FOR ENTRY:

_____
AL EARLS
Assistant District Attorney General
P.O. Box 2825.
Jackson, TN 38302
(731) 423-5800

_____
PAUL N. BUCHANAN #017697
LINDA SESSON TAYLOR #010303
Attorneys for Defendant
1526 Crockett Hills Blvd.
Nashville, TN 37027

126

(615)370-4503

206 East Main Street
Jackson, TN 38301
(731) 424-5767

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE

JON HALL,                          )
                                   )
            Petitioner,            )      Madison County  No.  96-589
                                   )
v.                                 )
                                   )
STATE OF TENNESSEE,                )      Post-Conviction No.  CO422
                                   )           C - 00 -422
            Respondent.            )      DEATH PENALTY CASE
                                   )

## MOTION FOR CONTINUANCE

TO THE HONORABLE JUDGE OF SAID COURT:

    Comes now, Jon Hall, Movant, by and through his attorneys of record, through appointed

counsel, Mr. Paul N. Buchanan, and moves this Honorable Court to continue the hearing which

the Court now has set for September 10, 2001.  As grounds for such request, Movant would

show as follows:

I.

    Undersigned counsel has never received any written notice of this setting, and was only

made aware of it in September 7, 2001.  For this and other reasons stated below, Petitioner is not

ready for trial.

II.

    Further, Mr. Buchanan was only appointed in April of 2001 as counsel in this cause.

There are NINE (9) legal boxes of materials to sort through and become familiar with.

Undersigned counsel has read the trial transcripts of this trial and digested same. What still

needs to be done consists of more investigation, appointment of experts, taking of the above-

reference deposition, and the amendment of the petition.  There are family members and

witnesses in California, North Carolina, Texas, Tennessee, and Kentucky that still need to be

interviewed.  Some witnesses still need to be found.   Undersigned counsel has worked

diligently, but concedes  that there has to be more work done to get this case ready for trial.  This

is easily a case that needs a thousand hours of case preparation, which is not unusual in the

"usual" capital murder case, but is especially important in this case in light of the long criminal

history of trials and acquittals and the incredible length of this trial.

    Additionally, when the Post-Conviction Defenders Office was replaced, they took some

time in copying the file for their records. Undersigned Counsel did not receive the boxes until

early May, 2001. In fact, the last box was delivered only August 8, 2001.

Wherefore, premises considered, Movant prays this Honorable Court will set this Motion

for hearing and grant same and continue this cause for so long as the evidence merits.

Respectfully submitted,

Paul N. Buchanan
Attorney at Law
1526 Crockett Hills Blvd.
Brentwood, Tennessee 37027
(615) 370-4503
BOPR: 017697

## CERTIFICATE OF SERVICE

I, Paul Buchanan, certify that a copy of the forgoing motion was delivered to all counsel

of record on the ___10___ day of ___Sept___, 2001.

Paul Buchanan

**IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE**

| | | |
|---|---|---|
| **JON HALL,** | ) | |
| | ) | |
| **Petitioner,** | ) | **Madison County No. 96-589** |
| **v.** | ) | |
| | ) | |
| **STATE OF TENNESSEE,** | ) | **Post-Conviction No. CO422** |
| | ) | |
| **Respondent.** | ) | **DEATH PENALTY CASE** |
| | ) | |

### ORDER

Be it remembered that on the _____ day of _____, 2001, came on

to be heard the foregoing Motion for Continuance filed by the Petitioner and it being the opinion

of the Court that it should in all things be granted, it is , therefore,

ORDERED, ADJUDGED, and DECREED that the above cause is continued from

September 10, 2001 until_____ _____.

_____
Judge Presiding

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

MADISON COUNTY AT JACKSON, TENNESSEE

FILED

JUDY BARNHILL, CIRCUIT COURT CLERK

NOV 01 2001

DEPUTY CLERK

A.M 12:25 P.M.

Jon Douglas Hall,

    Petitioner,

Vs.                    CASE NO. C-00-422-I
                        (DEATH PENALTY CASE)

STATE OF TENNESSEE,

    Respondent.

## MOTION TO FILE SUPPLEMENTAL POST-CONVICTION RECORD

Comes now the petitioner Jon Hall, by and through himself to file his supplemental record to support his post-conviction relief issues to prevent a procedural default. To support this position the petitioner relies on Clemmons v. Delo, 124 F.3d 944, 948 (8th Cir. 1997) (fairly present claims in state court); and the following:

1. On November 09, 2000, the petitioner completed a skeletal "Petition For Relief From Conviction Or Sentence," and provided his attorney Ms. Marjorie Bristol with an attached 27 page Motion For Post-Conviction Relief with its supporting exhibits [A thru F]. See: e.g. Petition For Relief From Conviction Or Sentence at statement # 23;

2. Shortly after the filing of the Petition For Relief From Conviction Or Sentence, was filed in Madison County, Ms. Marjorie Bristol and Paul Morrow of the post-conviction public defender's office filed a Motion To Withdraw;

3. On March 23, 2001, the Court held a hearing to determine the merits of counsel's Motion To Withdraw, and over the petitioner's objection appointed Ms. Taylor to represent the petitioner for this matter to circumvent:   (1)  the Petitioner's Objection And Rebuttal Response To The State's Response And Motion To Dismiss And Motion To Compel Answer And Sanction The State, filed December 12, 2000; and (2) Motion For The Order For The Surrender Of Attorney Work Product, filed March 08, 2001;

4. Additionally on March 23, 2001, the Court upheld its February 6, 2001, Order giving post-conviction counsel until August 6, 2001, to file an amended post-conviction petition;

5. On April 17, 2001, the Court appointed Paul Buchanan as Co-Counsel, because Ms. Linda Taylor is not qualified to handle a death penalty appeal (according to Mr. Buchanan);

- 1 -

131

6. On August 6, 2001, the petitioner filed a Motion For Continuance to file a post-conviction petition, because counsel had failed to address his July 3, 2001 letter asking counsel to file a supplemental post-conviction petition, rather than an amended petition;

7. On September 10, 2001, a scheduled evidentiary hearing was held to address the petitioner's post-conviction petition, but due to counsel's default (failure to file any type of post-conviction petition), the Court granted the petitioner's Motion For Continuance filed on August 6, 2001;

THEREFORE, the petitioner contends that he has instructed his counsel in writing and orally to file a supplemental petition for post-conviction relief to properly lay all the necessary groundwork to support all the issues that have been presented for review in the 27 Motion For Post-Conviction Relief.

<u>WAIVER AND PREVIOUS DETERMINATION</u>

Petitioner asserts the following in rebuttal of presumption that the claims for post-conviction relief in his petition are waived under Tenn. Code Ann. § 40-30-206 (g). To the extent that a ground for relief presented has not, but arguably could have been presented to this Court, the Tennessee Court of Criminal Appeals, or the Tennessee Supreme Court in prior proceedings, the ground(s) have not been waived within the meaning of T.C.A. § 40-30-206 (g) because:

1. The trial and / or appellate counsel had provided constitutionally inadequate assistance of counsel, an allegation that could not have been presented for determination in any prior proceedings;

2. State action in violation of Article I, §§ 8 and 9; and U.S.C.A. Const. Amend. 6 and 14, - specifically, the failure to preserve evidence for examination or failure to turn over exculpatory evidence, <u>Brady v. Maryland</u>, 83 S.Ct. 1194 (1963); <u>Kyles v. Whitley</u>, 115 S.Ct. 1555 (1995);

3. Of rulings of the trial court on the manner and scope of discovery and the content of the record which prevented or impeded the Petitioner from presenting the ground(s) for relief properly, <u>Campbell v. State</u>, 904 S.W.2d 594, 596-597 (Tn. 1995) (appeal issues); <u>Clemmons v. Delo</u>, 124 F.3d 944, 947-947 (1997) (fairly present claims to the court). <u>See</u>: e.g., Technical Record, pages 188 to 201 (post-trial motions); and 216 (Order Overruling Motion To Withdraw);

4. Of rulings of the Supreme Court (denial of petitioner to make oral arguments) or the manner it suppressed the Brief Of The Proper Party from the record which prevented or impeded the Petitioner on presenting his war flag issue properly after counsel made a perfunctory argument without even making reference to the technical record. <u>Clemmons v. Delo</u>, 124 F.3d 944, 947-948 F.n. # 4 (1997) (dismiss counsel - fairly present claims to State Court);

- 2 -

5. Petitioner never had a full opportunity to raise & argue grounds for relief because of State action, in violation of T.C.A. § 40-30-213 (Petitioner unconstitutionally denied appeal procedure);

6. The petitioner, did not knowingly or understandingly fail to present the ground(s) for a determination, because he was not advised of or did not reasonably understand; (i) the existence of the ground(s) for relief; (ii) the legal principles implicated by the ground(s) for relief; (iii) the facts relating to the ground(s) for relief; (iv) the reasons why the grounds for relief should not be presented; and / or (iv) the effect of failing to present the ground(s) for relief in a timely manner on the scope of state or federal post-conviction review;

7. There are facts that exist that have not yet ever been discovered and / or have never been considered by any court that support the petitioner's ground(s) for relief and the failure to discover those facts is not attributable to any action or inaction on the petitioner's part but of factors beyond his control, such as ineffective assistance of counsel and / or state misconduct;

8. Tennessee Courts have not uniformly applied Sup. Ct. Rule 12, and T.C.A. 39-13-206 (a) (1) (Appeal and review of death penalty) and to find the ground(s) for relief waived in the petitioner's case & not others would constitute a violation of Petitioner's right to equal protection under the law as guaranteed by the 14th Amend. to the United States Const., & Art. XI, § 8 of the Tn. Constitution. See: e.g. State v. Odom, 928 S.W.2d 18, 29 n. 7 (Tn. 1996) (Sua sponte review of error); and Maes v. Thomas, 46 F.3d 979, 986 (1995) (Procedural rules must be applied evenhandedly to all similar cases);

9. To the extent that one or more of the grounds has been presented to either this court, the Tennessee Court of Criminal Appeals, or the Tennessee Supreme Court in prior proceedings, the ground has not been previously determined within the meaning of T.C.A. § 40-30-206 (h) because of:

(a) Petitioner's counsel was ineffective investigating, researching, & presenting the ground(s) for relief pre-trial, at trial, in motion for new trial, or on appeal properly, and / or his counsel failed to apprise him of the ground(s) for relief or their relevance to the case;

(b) Prosecutorial misconduct in delaying or denying discovery which impeded or prevented trial and / or appellate counsel from researching, investigating, and presenting the ground(s) for relief fully and completely;

(c) The procedures or standards employed by the courts in prior review of the ground(s) for relief were themselves deficient, defective, in violation of state law, and / or unconstitutional; and

(d) Petitioner was unconstitutionally denied access to the court / counsel during the appellate process, in violation of T.C.A. § 40-30-213 (Petitioner unconstitutionally denied appeal procedure).

- 3 -

WHEREFORE, the Petitioner wishes to submit the below listed affidavit[s] with the supporting

exhibit[s] to support and supplement the post-conviction record:

AA. AFFIDAVIT SUPPORTING DENIAL OF DUE PROCESS AND IMPROPER WAIVER OF TRIAL IN HENDERSON COUNTY;

      A. MR. SMITH AND MR. MOSIER'S MOTION FOR A CHANGE OF VENUE
      B. STATE'S RESPONSE TO MOTION FOR A CHANGE OF VENUE
      C. NOVEMBER 8, 1995 - MOTION HEARING / CHANGE OF VENUE
      D. APRIL 9, 1996 - HENDERSON COUNTY MOTION (TRANSFER DEFENDANT TO MADISON COUNTY)
      E. AUG. 30, 1996 - MOTION FOR DEFENDANT'S PRESENCE DURING ALL PROCEEDINGS HELD
      F. SEPT. 3, 1996 - MOTION TO RENEW MOTION FOR A CHANGE OF VENUE
      G. SUPPLEMENTAL MOTION FOR A CHANGE OF VENUE (WORK PRODUCT; UNSIGNED AFFIDAVIT)
      H. MOTION TO DETERMINE PRIOR TO TRIAL COMPETENCY OF WITNESSES
      I. SEPTEMBER 16, 1996 - ORDER / CHANGE OF VENUE - FILED SEPTEMBER 23, 1996
      J. TENNESSEE DEPARTMENT OF CORRECTION - ARRIVAL DEPARTURE SHEET
      K. FEBRUARY 3, 1997 - TRANSCRIPT OF EVIDENCE / OBJECTION TO CHANGE OF VENUE
      L. MR. HALL'S POST-TRIAL MOTIONS ATTACKING JURISDICTION, ETCETERA
      M. MOTION TO ALLOW COUNSEL & CO-COUNSEL WITHDRAW - WITH ATTY. / CLIENT MAIL
      N. ORDER - OVERRULING COUNSEL'S MOTION TO WITHDRAW
      O. ARGUMENT I. SUPPORTING DENIAL OF DUE PROCESS AND IMPROPER WAVER OF TRIAL IN HENDERSON CO.


BB. AFFIDAVIT TO SUPPORT DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL REGARDING MISSTATEMENT OF LAW

      A. WHETHER THERE IS A REASONABLE PROBABILITY THAT, BUT FOR COUNSEL'S UNPROFESSIONAL ERRORS
        REGARDING A MISSTATEMENT OF LAW, THE OUTCOME OF THE PROCEEDINGS WOULD'VE BEEN DIFFERENT ?;

      B. TENNESSEE UNIFORM TRAFFIC ACCIDENT REPORT.


CC. AFFIDAVIT TO SUPPORT DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL AND APPEAL

      A. INSTITUTION GRIEVANCE # 99-0151 OR TOMIS # 86632;
      B. INSTITUTION GRIEVANCE # 99-0422 OR TOMIS # 88516;
      C. MARCH 24, 1999 LETTER TO ATTORNEY MARK DONAHOE; and
      D. APRIL 28, 1999 LETTER TO JON HALL REGARDING MISSTATEMENT OF LAW.


    For the foregoing reasons, the Petitioner asserts that all the issues raised in the 27 page

Motion For Post-Conviction Relief shall be heard and his conviction should be set aside.


                       Respectfully submitted,

                       _Jon Hall_

Sworn and subscribed before me on this the 18 day of October 2001.

Notary Public _____

My Commission Expires: 7-12-05 _____


                CERTIFICATE OF SERVICE


    I _Jon Douglas Hall_ , that I have mailed a true and exact copy of the foregoing

motion to: (1) Ms. Judy Barnhill, Criminal Justice Complex 515 South Liberty Street Jackson, Tenn.

38301; (2) James G. (Jerry) Woodall, District Atty. Gen., P.O. Box 2825 Jackson, Tenn. 38302, via

prepaid United States mail on this the 22ND day of October 2001.

XC: FILE

             - 4 -

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT ~~BY BARNHILL, CIRCUIT COURT CLERK~~

MADISON COUNTY AT JACKSON, TENNESSEE

FILED

NOV 01 2001

DEPUTY CLERK

A.M. 12:25 P.M.

| | | |
|---|---|---|
| Jon Douglas Hall, | * | |
| Petitioner, | * | |
| | * | |
| Vs. | * | CASE NO. C00-422-I |
| | * | (DEATH PENALTY CASE) |
| STATE OF TENNESSEE, | * | |
| | * | |
| Respondent. | * | |

AFFIDAVIT SUPPORTING DENIAL OF DUE PROCESS AND IMPROPER WAIVER OF TRIAL IN HENDERSON COUNTY

STATE OF TENNESSEE
                      -SS-
COUNTY OF DAVIDSON

I _Jon Douglas Hall_ , being duly sworn according to law, hereby state the following:

1. In June of 1995, Mr. Hall's new counsel of record, Mr. Carthel Smith and Mike Mosier, filed over fifty (50) pre-trial motions on Mr. Hall's behalf prior to meeting with Mr. Hall, including a Motion For A Change Of Venue - (without affidavits). See: e.g., Change Of Venue EXHIBIT [A], Motion For A Change Of Venue, listed as pages 01 - 02.

2. On July 10, 1995, the State responded to Mr. Smith and Mr. Mosier's Motion For A Change Of Venue, citing three (3) grounds opposing the motion, which were: (1) that there were not any supporting affidavits submitted with this motion as required by Tenn. R. Crim. P., Rule 21 (b); (2) the motion fails to state a sufficient basis to grant a change of venue; and (3) that the publicity concerning this case has not been any greater than any other murder case with similar circumstances. See: e.g., Change Of Venue EXHIBIT [B], State's Response, listed as page 03.

3. On November 8, 1995, a pretrial evidentiary hearing was held to address the merits of over (50) fifty motions filed by attorneys Mr. Smith and Mr. Mosier, including DF-MOT # 15, Motion For A Change Of Venue, which was denied by the Court. See: e.g., Change Of Venue EXHIBIT [C], Motions hearing November 8, 1995, listed as pages 04 - 07.

4. On April 9, 1996, Mr. Hall was transported to Madison County, because counsel filed a motion in Henderson County Court to have Mr. Hall brought to the Madison County Court for a hearing regarding a transfer of custody to one of the local jails for trial preparation. See: e.g., Change Of Venue EXHIBIT [D], Motion - transfer Mr. Hall's custody to local jail for trial preparation, listed as page 08 - 09.

- 1 -

5. On April 9, 1996, Mr. Hall was very concerned with why this motion regarding a transfer of custody for pretrial preparation was being held at Madison County Courthouse in Jackson, Tennessee. Mr. Hall asked Mr. Ford and Mr. Mayo, "why is this hearing being held in Madison County instead of Henderson County ?"

6. On April 9, 1996, attorneys Mr. Ford and Mayo explained to Mr. Hall: (1) that only the pretrial proceedings were going to be held in Madison County; (2) that the pretrial motions hearings were being conducted in Madison County as a matter of convenience; and (3) the reason that it was a matter of convenience to hold the hearing in Madison County, was that all of the Officers of the Court have their main office in Madison County, at Jackson.

7. On April 9, 1996, Mr. hall instructed his attorneys, Mr. Jesse Ford and Mr. Clayton Mayo, that if Madison County was being considered to be the locality of the trial, or if the Judge would not consider a change of venue of approximately (100) one-hundred miles away from where all the bad press was being generated, then don't bother with trying to get a change of venue.

8. On April 9, 1996, Mr. Hall explained to attorneys Mr. Ford and Mr. Mayo, that the reasons he did not want a change of venue in the Madison County forum were: (1) the alleged victim, Mrs. Billie Jo Hall, had worked at Jackson Madison County Hospital; (2) that Mr. Helms, a witness and Mr. Hall's ex-boss, was a distinguished and well liked owner / operator of the local Chrysler dealership in Lexington and his word would go far in Henderson County; and (3) that the Jackson Sun Newspaper was the main local news media generating most of the bad press in this case.

9. On August 30, 1996, Mr. Hall filed a Motion For Defendant's Presence During All Proceedings Held, in hope that he would be included in all of the proceedings held to protect his constitutional rights. See: e.g., Change Of Venue EXHIBIT [E], listed as page 10, Motion For Defendant's Presence During All Proceedings Held; or Technical Record, page 149.

10. On September 3, 1996, without Mr. Hall's knowledge or consent, attorney Jesse Ford filed a Motion To Renew Motion For A Change Of Venue. Mr. Ford submitted this motion on Mr. Hall's behalf in spite of the specific instructions given by Mr. Hall on April 9, 1996, to leave the change of venue issue alone. See: e.g., Change Of Venue EXHIBIT [F], listed as page 11, Motion To Renew Motion For A Change Of Venue - within 26Th Judicial District; or Technical Record Page 150.

- 2 -

11. That attorneys Jesse Ford and Clayton Mayo did not: (1) try to obtain Mr. Hall's written consent to waive his right to a trial in Henderson County (to impress upon him the significance of the constitutional right being relinquished as evidence of Mr. Hall's consent to forego that right); (2) contemporaneously inform / send Mr. Hall a copy of counsel's Motion To Renew Motion For A Change Of Venue in September of 1996; and (3) inform him that the Court had granted a change of venue until January of 1997. See: e.g., Change Of Venue EXHIBIT [G], Mr. Ford's work product (Supplemental Motion For A Change Of Venue - with the unsigned affidavit / consent form of Jon Hall), listed as pages 12 - 16.

12. Instead of acting adversely towards defense counsel's motion for a change of venue (without any supporting affidavits), the Assistant District Attorney, Mr. Alfred Earls, responded to Mr. Ford's motion on Sept. 6, 1996, by filing a Motion To Determine Prior To Trial Competency Of Witnesses. This motion was submitted directly to the Madison County Court jurisdiction before the court granted the change of venue on Sept. 16, 1996, without holding an evidentiary hearing. See: e.g., Change Of Venue EXHIBIT [H], Sept. 6, 1996, Motion To Determine Prior To Trial The Competency Of Witnesses, listed as page 17; or Technical Record, page 151.

13. The trial court abused its discretion when it: (1) assumed from a silent record that Mr. Ford invoked the wishes of his client to abandon the right to a trial in Henderson County; (2) failed to make a careful determination that Mr. Jon Hall had personally made a knowing and intelligent decision to waive his right to a trial in Henderson County; and (3) granted Mr. Jesse Ford's Motion To Renew Motion For A Change Of Venue, without holding an evidentiary hearing. See: e.g., Change of venue EXHIBIT [I], Order - granting change of venue filed Sept. 23, 1996, listed as page 18; or Technical Record, page 152.

14. Mr. Hall was denied his due process right to be present at an evidentiary hearing on Mr. Ford's Motion To Renew Motion For A Change Of Venue, and his presence had a relation reasonably substantial, to the fullness of his opportunity to defend against the charges brought against him in Henderson County. To demonstrate the denial of this right, Mr. Hall asked RMSI, U-2 Mgr. Mr. James Croody, to check the records for the month of September of 1996, when the court granted a change of venue. Mr. Croody responded to this request by providing a computer printout showing Mr. Hall's whereabouts during the month of September in 1996. The computer printout indicates that: (1) Mr. Hall was in State custody, being held as a pretrial detainee at the TDOC / RMSI facility in Nashville, Tennessee during the entire month of September of 1996; and (2) Mr. Hall was not transported anywhere during the month of September 1996. See: e.g., Change Of Venue EXHIBIT [J], TDOC / RMSI computer printout arrival / departure sheet, listed as page 19.

- 3 -

16. Before a jury was selected in Madison County on February 3, 1997, Mr. Hall personally voiced his objection to the change of venue and stated, "I'm not trying to disrupt the court, but I can't understand why we're holding this hearing in Madison County when I was charged in Lexington." See: e.g., Change Of Venue EXHIBIT [K], Transcript - Hall's objection to change of venue, listed as pages 20 - 21.

17. Mr. Hall explained to the Court: (1) that it was not right for the court to change the venue "ex parte;" (2) that the last time Mr. Hall had heard anything about the change of venue was on Nov. 8, 1995, when the court said it would consider a change of venue if the circumstances changed, or when a problem developed with the prospective jury in Henderson County; (3) that Mr. Ford did not renew a change of venue within the 26Th Judicial District on Mr. Hall's behalf; (4) that Mr. Smith and Mr. Mosier, were no longer on this case, therefore their motion for a change of venue was irrelevant; (5) that he asked the court to move the trial back to Henderson County (denied); and (6) that Mr. Hall would not be joining with this Court (or words to this affect).

18. That the transcript provided by Court Reporter, Ms. Amy Mays, is not a verbatim reproduction of all the testimony presented during the in-chambers conference on February 3, 1997 in regards to the change of venue issue. The omission of this pertinent testimony from the record is a fraud upon the Court and a bad faith endeavor to deprive Mr. Hall of the appropriate means to avail himself of the attorney's improper waiver and the Court's abuse of discretion regarding the jurisdiction of the court in subsequent appeals.

19. Instead of supporting Mr. Hall's objection to the Court's usurpation of jurisdiction in Madison County, Mr. Ford acted in furtherance of his improper waiver of Mr. Hall's fundamental rights to a trial in Henderson County, by entering a plea on behalf of Mr. Hall. Nevertheless, Mr. Hall did not participate in the proceedings by testifying and was ultimately prejudiced from being able to rebut the State's erroneous theory of premeditation. See: e.g., Transcript Of Evidence, Vol. I, page 179 (not guilty plea entered by Mr. Ford on behalf of Mr. Hall). See also: Volume III., pages 347 - 349, (guilt phase - decision not to testify); and Vol. IV., pages 435 - 436 (sentencing phase - decision not to testify).

20. Although Mr. Ford would not support Mr. Hall's position on appeal due to the obvious conflict of interest created by counsel's improper waiver, Mr. Hall put forth a good faith effort to create a record of the court's improper usurpation of jurisdiction. See: e.g., Change of Venue EXHIBIT [L], Mr. Hall's post-trial motions attacking the jurisdiction of the court, listed as pages 22 - 32.

- 4 -

21. Mr. Hall's efforts to put forth a proper record of the attorney's improper conduct was futile in light of the Court's denial of counsel's motion to withdraw (with attorney-client privileged mail attached to it), in violation of Tn. R. Sup. Ct., Rule 8, DR 4-101 and EC 4-5. See: e.g. Change Of Venue EXHIBIT [M], Motion To Allow Counsel And Co-Counsel To Withdraw, listed as pages 33 - 35; or Technical Record, pages 199-201. See also: Change Of Venue EXHIBIT [N], Order - denial of counsel's motion to withdraw, listed as page 36; or Technical Record, page 216.

22. Mr. Jesse Ford and Mr. Clayton Mayo, were finally dismissed by the Court of Criminal Appeals on April 2, 1998, based upon the fact that Mr. Hall filed a federal lawsuit against the prosecutor, the trial court, and counsel (State v. Jerry Woodall, et. al., 1-98-1037). The Court of Criminal Appeals appointed Mr. Mark Donahoe and Mr. Scott Pietrowski, from the law Offices of Spragins, Barnett, Cobb, & Butler to represent Mr. Hall on appeal to the Supreme Court on April 2, 1998.

23. Although the appointment of Mr. Donahoe eliminated the conflict of interest with trial counsel, the appointment of attorneys from the Law Offices Of Spragins, Barnett, Cobb, & Butler established a new conflict of interest. Lewis Cobb was in a contract with the city of Jackson; therefore, all of Mr. Hall's attempts to get appellate counsel to pursue any of his legally viable issues were ignored by Mr. Cobb's agent Mr. Donahoe.

24. In short, all of Mr. Hall's legally viable issues were not properly presented to the Court by counsel, due to the underlying conflicts of interest created by the actions of the Officers of the Court in the Twenty-Sixth Judicial District.

25. That the Court lost jurisdiction over the offense during the course of these proceedings due to the failure to afford due proces and lack of effective assistance of counsel. To support this statement, Mr. Hall has compiled an argument in support the claims in this affidavit. See: e.g., Change Of Venue EXHIBIT [O], Argument, listed as pages 37 -

26. See: Appendix with EXHIBITS [A - O], listed as pages 01 -   .

WHEREFORE, I  ⟨signature: Jon Douglas Hall⟩ , hereby swear under the penalty of perjury pursuant to the laws of the State Of Tennessee, that the foregoing facts and the attached exhibits are true, correct, and based upon personal knowledge or belief of the facts stated herein.

Sworn and Subscribed before me this the ⟨3⟩ day of August 2001.

Notary Public ⟨signature⟩

My Commission Expires My Commission Expires SEPT 29, 2001

- 5 -

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

MADISON COUNTY AT JACKSON, TENNESSEE

Jon Douglas Hall,                              *

   Petitioner,                              *

                                   *

Vs.                                            * CASE NO. C-00-422-I
                                 * (DEATH PENALTY CASE)
STATE OF TENNESSEE,                            *

   Respondent.                              *

**FILED**

JUDY BARNHILL, CIRCUIT COURT CLERK

NOV 01 2001

DEPUTY CLERK

P.M.
A.M. 12:25

---

AFFIDAVIT TO SUPPORT DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL REGARDING MISSTATEMENT OF LAW

STATE OF TENNESSEE
       -SS-
COUNTY OF DAVIDSON

I _Jon Douglas Hall_ , being duly sworn according to law, hereby state the following:

1. On February 3, 1997, the petitioner's defense attorney Mr. Jesse Ford laid out his defense theory which can be summarized with basically one paragraph:

"The proof will show that on this particular evening, Jon Hall was going to his residence to try to reconcile with his wife. The proof will show that, in fact, he was taking money out there to pay child support. That was his purpose of going out there to pay his child support. Sure, emotions came forward. We can't deny that Mrs. Hall met her death. We're simply stating that this was not planned, deliberate, something acted upon with cool purpose after reflection in judgement. The proof will not bear that out." See: e.g., Transcript Of Evid., pages 179–180.

2. In order to prove this point, defense counsel Mr. Clayton Mayo, called an expert witness (Ms. Donna Lynne Zager, Ph.D.), to negate the mens rea element of culpable mental state. Ms. Zager testified during the guilt phase of trial, that Mr. Hall was diagnosed with depression and alcohol dependence. These factors were compounded by personality characteristics and various psycho-social stressors. In her opinion, Mr. Hall had acted in an impulsive manner in killing Mrs. Hall, rather than a preconceived plan. See: e.g., Transcript Of Evidence, Volume III., pages 333–335.

3. On February 4, 1997, the jury selected to hear the first degree murder case listed as the State v. Jon D. Hall, 8 S.W.3d 593 f.n. 1 (Tenn. 1999) was charged with a misstatement of law in regards to the intoxication defense as provided by T.C.A. § 39-11-503 (Intoxication). See: e.g., Transcript of Evidence, Volume III., pages 366-368, which provided in pertinent part: "Intoxication is [IRRELEVANT] to the essential element of the defendants culpable mental state." [SIC].

- 1 -

4. According to T.C.A. § 39-11-301 (a) (1) (Requirement of culpable mental state), the general law provides that: "A person commits an offense who acts intentionally, knowingly, recklessly, or with criminal negligence, as the definition of the offense requires, with respect to each element of the offense."

5. According to T.C.A. § 39-11-201 (a) (2) (Burden of proof), the general law provides that: "no person may be convicted of an offense unless ... the culpable mental state required ... is proven beyond a reasonable doubt." Evidence tending to make the existence of a certain mental state "more probable or less probable" is relevant under Tenn. R. Crim. P., Rule 401. As such the evidence was admissible pursuant to Tenn. R. Crim. P., Rule 402.

6. The Judge's instruction served to obviate consideration by the jury of relevant evidence essential to the defense's theory which amounted to an impermissible comment on the evidence, in violation of Tennessee Constitution, Article 6, § 9.

7. The instructions given to the jury by the trial court does not provide the clear and distinct exposition of the law required in Tennessee and as such interfere with the right to trial by jury in violation of Tenn. R. Crim. P., Rule 23.

8. The record clearly establishes that petitioner's counsel failed to make a contemporaneous objection pursuant to the Judge's misstatement of law regarding the intoxication defense. This error adversely affects the petitioner's right to a fair trial by a jury. See: e.g., argument number II. Whether There Is A reasonable Probability That, But For Counsel's Unprofessional Errors Regarding A Misstatement Of Law, The Outcome Of The Proceedings Would Have Been Different ?, LISTED AS EXHIBIT A.

9. That the petitioner did not know the judge had made a misstatement of law regarding the issue on the intoxication defense at trial, nor did he personally try to waive the issue for any type of tactical strategy.

10. Moreover, counsel failed to demonstrate to the jury how much the petitioner's judgement was impaired by the affects of alcohol. The police report shows that Mr. Hall's mental condition had deteriorated to point of causing him to loose control of a 1993 Dodge Caravan. The weather conditions are listed as clear and the accident consisted of the van hitting a fixed object head-on (tree). The accident occurred within two or three miles from the petitioner's home and the roadway was a dry, level straightaway. The contributing factor was shown to be caused by driver error (disregarding a posted stop sign at "T" intersection). Additionally the report indicates that the accident occurred on July 29, 1994, at 12:00 P.M. (within a few minutes of the alleged homicide). See: e.g., Tennessee Uniform Traffic Accident Report, LISTED AS EXHIBIT B.

- 2 -

141

11. That counsel's unprofessional errors had a pervasive effect on the inferences that may be drawn from the evidence which altered the entire evidentiary picture. The government did not have to prove every element of the offense beyond a reasonable doubt & the jury was not compelled to perform its constitutional role, in violation of the Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; Article I, §§ 6, 8, 9, 16, 17, & 19 and Article 6 § 9 of the Tennessee Constitution.

12. There is a reasonable possibility that if the Petitioner had constitutionally effective representation at trial, he could have been found guilty of a lesser charge, thus satisfying the prejudicial prong of Strickland v. Washington 104 S.Ct. 2052 (1984); Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

CERTIFICATION

I ___Jon Douglas Hall___, hereby certify that I have mailed a true and exact copy of the foregoing Affidavit To Support Denial Of Effective Assistance of Counsel Regarding A Misstatement Of Law and supporting exhibits to: Attorney Paul Buchanan, at 1526 Crockett Hills Blvd. Brentwood, Tennessee 37027, via United States mail on this the 22nd day of October 2001.

WHEREFORE, I ___Jon Hall___, hereby swear under the penalty of perjury pursuant to the laws of the State Of Tennessee, that the foregoing facts and the attached exhibits are true, correct, and based upon personal knowledge or belief of the facts stated herein.

Sworn and Subscribed before me on this the ___ day of October 2001.

Notary Public _____

My Commission Expires ___7-12-05___

XC: FILE

- 3 -

<u>ARGUMENT</u>

II. WHETHER THERE IS A REASONABLE PROBABILITY THAT, BUT FOR COUNSEL'S UNPROFESSIONAL ERRORS
REGARDING A MISSTATEMENT OF LAW, THE OUTCOME OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT ?

In <u>Strickland</u>, the United States Supreme Court held that "An error by counsel, even if
professionally unreasonable, does not warrant setting aside the judgement of a criminal
proceeding if the error had no effect on the judgement." 466 U.S. at 691, 104 S.Ct. 2052. An
error must be prejudicial to the defense before reversal on this basis will be warranted. <u>See</u>:
Id. at 692, 104 S.Ct. 2052. The test for prejudice is whether "there is a reasonable probability
... [that], but for counsel's errors, the result of the proceeding would have been different."
Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the
outcome." Id. at 696.

The Supreme Court offered the following guidance on determining whether prejudice has been
established:

> In making this determination, a court ... must consider the totality of the evidence
> before the judge or jury. Some of the factual findings will have been unaffected by the
> errors, and the factual findings that were affected will have been affected in different
> ways. Some errors will had a pervasive effect on the inferences that may be drawn from the
> evidence, altering the entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is
> more likely to have been affected by errors than one with overwhelming record support. Id.
> at 695-96, 104 S.Ct. 2052.

Simply put, the error must be of a degree that deprives the defendant of a fair trial and calls
into question the reliability of the outcome. A reasonable probability of being found guilty
of a lesser charge satisfies the prejudice prong of Strickland. <u>See</u> e.g., <u>State v. Burns</u>, 6
S.W.3d 453, 463 (Tn. 1999); <u>State v. Zimmerman</u>, 823 S.W.2d 220, 227 (Tn. Cr. App. 1991).

At trial, attorneys Jesse Ford and Clayton Mayo, did not deny Mr. Hall's involvement in
the alleged homicide, nor did they enter a plea of insanity. Mr. Ford and Mr. Mayo's theory of
defense was, at the time of the killing, Mr. Hall could not and did not formulate the specific
intent required to commit premeditated murder.

- -

EXHIBIT [A]

PAGE 01

Dr. Lynne Donna Zager, a clinical psychologist, interviewed Mr. Hall three times after his arrest. She testified during the guilt phase of trial and diagnosed Mr. Hall as depressed and suffering from alcohol dependence. In addition, she noted he had personality characteristics of paranoia and dependency. In Dr. Zager's opinion, at the time of Mrs. Hall's death, that Mr. Hall suffered from depression and alcohol intoxication. These factors were compounded by his personality characteristics and various psycho-social stressors, including a sick child, loss of employment with the resulting financial problems, his impending divorce, and the terminal illness of a brother. Dr. Zager testified that, in her opinion, the defendant had acted in an impulsive manner in killing his wife, rather than pursuant to a preconceived plan.

The use of testimony to negate the existence of mens rea, as Mr. Hall's counsel attempted, is not an affirmative defense and does not result in acquittal unless there is a failure to establish intent for the offense and for all of its lesser-included counterparts. See: e.g., United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987) cert. denied, 484 U.S. 1011, 98 L.Ed.2d 660, 108 S.Ct. 710 (1988). A type of diminished capacity defense most often refers to evidence that negates the mens rea element of a crime, such as premeditation or malice. See: e.g., United States v. Frisbee, 623 F. Supp. 1217, 1220 (N.D. Ca. 1985). Another type of diminished capacity defense allows a defendant to show a lack of not only the specific intent required to commit the offense, but a lack of total capacity to form any mens rea as well. See: e.g., United States v. Pohlot, supra at 903. Neither form of diminished capacity can be used as a justification or an excuse for a crime. Rather, it is an attempt to prove that the defendant, incapable of the requisite intent of the crime charged, is innocent of that crime, but may be guilty of a lesser one. See: e.g., United States v. Cameron, 907 F.2d 1051, 1067 (11th Cir. 1990).

The jury for Mr. Hall's trial was instructed in pertinent part, that: "Intoxication is irrelevant to the issue of the essential element of the defendant's culpable mental state." See: e.g., Transcript Of Evidence, Volume III., page 367.

- -

EXHIBIT [A]

PAGE 02

144

According to Tennessee Pattern Instructions, Criminal 40.02: "intoxication is relevant to the essential element of the defendant's culpable mental state." Additionally, under Tenn. Code Ann. § 39-11-503 (a) provides: "voluntary intoxication is not a defense to prosecution for an offense, evidence of such intoxication may be admitted to negate culpable mental state."

The general law provides that "no person may be convicted of an offense unless . . . the culpable mental state required . . . is proven beyond a reasonable doubt," Tenn. Code Ann. § 39-11-201 (a) (2) (1991 Repl.). Evidence tending to make the existence of that mental state "more probable or less probable" is relevant. Tenn. R. Evid., Rule 401. As such it is admissible under Tenn. R. Evid., Rule 402. See: e.g., State v. Leroy Hall, 958 S.W.2d 679, 689 (Tn. 1997).

To find otherwise would deprive a criminal defendant of the right to defend against one of the essential elements of every case. In effect, an instruction to the jury telling them that intoxication is irrelevant, would deprive the defendant of the means to challenge an aspect of the prosecution's case and would remove the burden of proof on that element, in contravention of constitutional and statutory law. U.S.C.A. Const. Amends. 5, 6, & 14. The law presumes sanity, but it does not presume mens rea. Due process requires that the government prove every element of the offense beyond a reasonable doubt. See: e.g., In Re Winship, 397 U.S. 358, 363-64, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1970).

Tennessee has long adhered to the rule that a defendant's intoxication may reduce first degree murder to second degree murder. See: e.g., State v. Pirtle, 28 Tenn. 663 (1849). This is so, because intoxication may be sufficient to prevent the forming of a premeditated or deliberate design to kill. See: e.g., State v. Bullington, 532 S.W.2d 556 (Tenn. 1976). Intoxication may be a complete defense where it results in a "habitual or fixed madness." See: e.g., Harper v. State, 334 S.W.2d 933 (1960). As such, the intoxication would be a possible mental disease or defect with respect to the insanity defense. See: e.g., Burns. v. State, 591 S.W.2d 780 (Tn. 1979).

-  -

EXHIBIT [A]

PAGE 03

**145**

Premeditation is a question of fact to be determined by the jury from all the circumstances of the case. See: e.g., State v. Story, 608 S.W.2d 599, 601 (Tn. 1980). The issue of a defendant's inability to control his conduct is a question to be determined by the jury. See: e.g., State v. Stacey, 601 S.W.2d 696 (Tn. 1980).

In criminal cases, there is a positive duty upon a trial judge to give the jury a complete charge on the law applicable to the facts of the case. See: e.g., State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). A defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court. See: e.g., Casey v. State, 491 S.W.2d 90, 94 (Tn. Cr. App.) cert. denied (Tn. 1972).

In the case at bar, Mr. Hall's only defense was an attack on the sufficiency of the evidence of intent as required for the various degrees of homicide. He had a constitutional and statutory right to offer relevant evidence to challenge any element of the state's case. Dr. Lynne Zager's testimony demonstrated that Mr. Hall's ability to control his conduct in accordance to the law had been compromised from the affects of alcohol and / or depression. In this manner, Dr. Zager's unrebutted expert testimony supported a diminished capacity defense and served as an attack on the State's proof of the essential elements in the alleged offense. Her testimony was relevant and admissible for consideration by the jury. The judge's misstatement of law served to obviate consideration by the jury of this relevant evidence and was an essential part of the defense and amounted to an impermissible comment on the evidence, in violation of Tenn. Const. Art. 6, § 9.

To conform to due process of the law, defendants are entitled to have the validity of their convictions appraised on consideration of the case ... as the issues were determined in the trial court. Cole v. Arkansas, 332 U.S. 196, 202, 68 S.Ct. 514, 517, 92 L.Ed.2d 644 (1948). A trial that was fundamentally unfair at the time it took place, because the jury was not compelled to perform its constitutionally required role, cannot be rendered fundamentally fair in retrospect by what amounts to nothing more than an appellate review of the sufficiency of the evidence.

EXHIBIT [A]

PAGE 04

In State v. Brown, 553 S.W.2d 94, 96 (Tn. 1977) the Supreme Court of Tennessee concluded that: "Instruction given in first-degree murder prosecution on intoxication defense was erroneous in that it omitted rule that intoxication can negate finding of premeditation essential to the conviction for first-degree murder. State v. Bullington, supra. The failure to apply intoxication to the issue of premeditation and the mental state of the appellant could easily mislead the jury. This is fundamental error."

This situation is analogous to that in State v. Phipps, 883 S.W.2d 138 (Tn. Cr. App. 1994). In Phipps, the Court Of Criminal Appeals ordered a new trial because the jury instructions, taken as a whole, failed to fairly and adequately submit the issues and applicable law to the jury.

Errors which affect the fairness and the integrity of the trial should be rectified even when the defense fails to make a contemporaneous objection or fails to include the issue in motion for new trial. See: e.g., State v. Wooden, 658 S.W.2d 553, 559 (Tn. Crim. App. 1983). An error which has affected the rights may be noticed at anytime...." Tenn. R. Crim. P., Rule 52 (b). A "substantial right" is one of fundamental proportions and is constitutional in nature. See: e.g., State v. Goins, 705 S.W.2d 648 (Tenn. 1986); State v. Brown, 693 S.W.2d 369 (Tenn. Crim. App. 1985). An error that prejudices the judicial process, striking at the "fundamental fairness, honesty, or public reputation of the trial" always warrants some measure of relief. United States v. Causey, 834 F.2d 1277 (6th Cir. 1987); See: Tenn. R. App. P. Rule 36 (b).

A trial judge is obligated to "be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury. See: e.g., State v. Suttles, 767 S.W.2d 403, 407 (Tenn. 1989). "It is natural that the jurors should be anxious to know the mind of the court, and follow it. Therefore, a court cannot be too cautious in its inquiries. See: e.g., Donald v. State, 89 Tenn. 161, 14 S.W. 487, 488 (1890).

EXHIBIT [A]

PAGE 05

147

An improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial. Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736-37 (1977). An omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of law. See: e.g. United States v. Hooks, 781 F.2d 1166 (6th Cir. 1986).

The judge's instruction served to obviate consideration by the jury of relevant evidence essential to the defense theory and amounted to an impermissible comment on the evidence, in violation of Tennessee Constitution Article 6, § 9. See: e.g. State v. Phipps, 883 S.W.2d 138, 151 (Tenn. Crim. App. 1994).

The instructions on the elements of the offenses and reasonable doubt are insufficient in this instance to overcome the effect of this erroneous instruction. Taken as a whole, the jury charge given by the trial court does not provide the clear and distinct exposition of the law required in Tennessee and as such interferes with the right to trial by jury in violation of Tenn. R. Crim. P., Rule 23. See: e.g., State v. McAfee, 737 S.W.2d 304 (Tenn. Crim. App. 1987).

In order to resolve this issue, it is necessary to answer six questions: First, whether the trial judge erred, when he misquoted the law in regards to the defense theory of intoxication ?; Second, was counsel ineffective for failing to object to the misstatement of law or assigning this error in a motion for new trial ?; Third, did the combined errors of the Court & Mr. Hall's counsel remove the governments burden of proof of every element of the offense ?; Fourth, was Mr. Hall's right to trial by jury undermined by the combined errors ?; Fifth, whether there is a reasonable probability that, but for counsel's unprofessional errors the results of the proceedings would have been different ?; and Six, whether a trial that was fundamentally unfair at the time it took place, be rendered fundamentally fair by what amounts to nothing more than an appellate review of the sufficiency of the evidence to determine the prejudicial affect of counsel's unprofessional errors ?

EXHIBIT [A]

PAGE 06

RECEIVED AUG 18 1994

# TENNESSEE UNIFORM TRAFFIC ACCIDENT REPORT

PAGE 1 of 2

| NOT USE THIS BLOCK | DOCUMENT CONTROL NUMBER (DO NOT USE) | LOCAL AGENCY USE | REFERENCE NUMBER |
|---|---|---|---|
| | | | 2365011 |

| REPORTING AGENCY | NAME OF INVESTIGATING AGENCY | HIT AND RUN? | SOLVED? |
|---|---|---|---|
| 1 ☒ THP 3 ☐ SO 2 ☐ CPD 4 ☐ OTHER | | 1 ☒ YES 2 ☐ NO | 1 ☐ YES 2 ☐ NO |

| DATE OF ACCIDENT | | | DAY OF ACCIDENT | TIME OF ACCIDENT | POLICE NOTIFIED | POLICE ARRIVED | INVESTIGATION COMPLETE? |
|---|---|---|---|---|---|---|---|
| MO | DAY | YR | SUN M T W THU F S | 1 ☐ AM 2 ☒ PM | 1 ☒ AM 2 ☐ PM | 1 ☒ AM 2 ☐ PM | 1 ☒ YES 2 ☐ NO |
| 07 | 30 | 94 | 1 2 3 4 5 6 7 | 12:00 | 12:55 | 1:00 | |

| | TYPE ACCIDENT | PROPERTY | TOTAL VEHICLES | TOTAL KILLED | TOTAL INJURED | TOTAL UNINJURED | PHOTOS TAKEN? | IF YES, BY WHOM? |
|---|---|---|---|---|---|---|---|---|
| 1 ☐ FATAL 2 ☐ INJURY 3 ☒ DAMAGE | | | | | | | 1 ☐ YES 2 ☒ NO | POLICE OTHER |

| COUNTY | CODE | ☐ IN ☒ NEAR CITY LIMITS | CODE | 1 ☐ URBAN |
|---|---|---|---|---|
| HENDERSON | 39 | or 7 MILES ☐ N ☒ S ☐ E ☐ W of CITY: Lexington | 01 | ☒ RURAL |

| OCCURRED ON: STREET, HWY. NAME, OR ROUTE NUMBER | SR. NO. | AT INTERSECTION WITH: | SR. NO. | 3 ☐ BUSINESS |
|---|---|---|---|---|
| Wildersville Timberlake Rd | | Wildersville Rd | | 4 ☐ RESIDENTIAL |

| OR: NEAREST INTERSECTION, BRIDGE, RR CROSSING (HOUSE NO.—CITY ONLY) | | POSTED SPEED | |
|---|---|---|---|
| FEET OR MILES ☐ N ☐ E ☐ S ☐ W | MILE POST | VEH 1 | VEH 2 | 5 ☐ SCHOOL |

| ☐ NON-INTERSECTION 3 ☐ BRIDGE 4 ☐ UNDERPASS | TENN. DEPT. OF TRANSPORTATION USE ONLY | | | | | |
|---|---|---|---|---|---|---|
| ☐ INTERSECTION 5 ☐ RAMP ☐ RR/ING GRADE X-ING NO 6 ☐ PRIVATE PROPERTY | CO NO | ROUTE NUMBER | SPC CASE | CO SEQ | LOG MILE | LOC | FXOB |

| VEH. 1 | YEAR | MAKE | MODEL | COLOR | BODY TYPE | BODY CODE | VIN |
|---|---|---|---|---|---|---|---|
| | 93 | Dodge | Caravan | Red | VAN | 21Y | 2B4GH2534PR368880 |

| LICENSE PLATE NO. | STATE | YEAR | VEH. PULLING TRAILER? | TRAILER CODE | VEH. DISABLED? | VEH. TOWED? | IF TOWED, WHERE? |
|---|---|---|---|---|---|---|---|
| VVG-134 | TN | 94 | 1 ☐ YES 2 ☒ NO | | 1 ☒ YES 2 ☐ NO | 1 ☒ YES 2 ☐ NO | Fishers Wrecker-Lex. TN |

| VEHICLE GOING ON | OFFICER'S ESTIMATED AMOUNT OF DAMAGE | "X" POINT OF INITIAL IMPACT (Shade Damaged Areas) |
|---|---|---|
| ☐ N ☐ S ☒ E ☐ W on Wilder-Timberlake Rd | 1 ☐ UNDER $400    3 ☒ OVER $400 | |

| DRIVER'S NAME | FIRST | MI | LAST | DOB MO DAY YR | DRIVER LICENSE NO. | STATE |
|---|---|---|---|---|---|---|
| | JON | D. | HALL | 08 05 64 | 7256469 | TN |

| DRIVER'S ADDRESS | CITY | STATE | ZIP | TELEPHONE NO. |
|---|---|---|---|---|
| 505 Pleasant Hill Rd - | Lexington, TN | | 38351 | 968-6158 |

| LICENSE CLASS/TYPE | ENDORSEMENT CODE(S) | RESTRICTION CODE(S) | RESTRICTIONS COMPLIED WITH? | SEX | RACE | DRIVER RESIDENCE | |
|---|---|---|---|---|---|---|---|
| D | | | 1 ☐ YES 2 ☐ NO | 1 ☒ M 2 ☐ F | 1 ☒ WHITE 2 ☐ BLACK 3 ☐ OTHER | 1 ☐ LESS 25 MI. 2 ☐ OVER 25 MI. | 3 ☐ OUT OF STATE |

| OWNER'S NAME | ☐ SAME AS DRIVER | FIRST | MI | LAST | DOB MO DAY YR | DRIVER LICENSE NO. | STATE |
|---|---|---|---|---|---|---|---|
| | | Billie | J. | Hall | 07 20 64 | 5724/357 | TN |

| OWNER'S ADDRESS | CITY | STATE | ZIP | TELEPHONE NO. | SPECIAL VEHICLE USAGE (Enter Code) | CMV |
|---|---|---|---|---|---|---|
| Same as above | | | | 768-6158 | O | ☐ YES ☒ NO |

10 ☐ UNDERCARRIAGE
11 ☐ UNKNOWN
12 ☐ ROLLED
13 ☐ NON-CONTACT

| VEH. 2 | YEAR | MAKE | MODEL | COLOR | BODY TYPE | BODY CODE | VIN |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| LICENSE PLATE NO. | STATE | YEAR | VEH. PULLING TRAILER? | TRAILER CODE | VEH. DISABLED? | VEH. TOWED? | IF TOWED, WHERE? |
|---|---|---|---|---|---|---|---|
| | | | 1 ☐ YES 2 ☐ NO | | 1 ☐ YES 2 ☐ NO | 1 ☐ YES 2 ☐ NO | |

| VEHICLE GOING ON: | OFFICER'S ESTIMATED AMOUNT OF DAMAGE | "X" POINT OF INITIAL IMPACT (Shade Damaged Areas) |
|---|---|---|
| ☐ N ☐ S ☐ E ☐ W | 1 ☐ UNDER $400    3 ☐ OVER $400 | |

| DRIVER'S NAME | FIRST | MI | LAST | DOB MO DAY YR | DRIVER LICENSE NO. | STATE |
|---|---|---|---|---|---|---|
| | | | | | | |

| DRIVER'S ADDRESS | CITY | STATE | ZIP | TELEPHONE NO. |
|---|---|---|---|---|
| | | | | |

| LICENSE CLASS/TYPE | ENDORSEMENT CODE(S) | RESTRICTION CODE(S) | RESTRICTIONS COMPLIED WITH? | SEX | RACE | DRIVER RESIDENCE | |
|---|---|---|---|---|---|---|---|
| | | | 1 ☐ YES 2 ☐ NO | 1 ☐ M 2 ☐ F | 1 ☐ WHITE 2 ☐ BLACK 3 ☐ OTHER | 1 ☐ LESS 25 MI. 2 ☐ OVER 25 MI. | 3 ☐ OUT OF STATE |

| OWNER'S NAME | ☐ SAME AS DRIVER | FIRST | MI | LAST | DOB MO DAY YR | DRIVER LICENSE NO. | STATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| OWNER'S ADDRESS | CITY | STATE | ZIP | TELEPHONE NO. | SPECIAL VEHICLE USAGE (Enter Code) | CMV |
|---|---|---|---|---|---|---|
| | | | | | | ☐ YES ☐ NO |

10 ☐ UNDERCARRIAGE
11 ☐ UNKNOWN
12 ☐ ROLLED
13 ☐ NON-CONTACT

| CITATIONS ISSUED? | DRIVER NO. | COURT DIV. | COURT DATE | DRIVER NO. | COURT DIV. | COURT DATE |
|---|---|---|---|---|---|---|
| 1 ☐ YES 2 ☒ NO | CHARGES | | CITATION NO. | CHARGES | | CITATION NO. |

| INVESTIGATING OFFICER RANK & NAME (Print Name) | BADGE NO. | DIST/ZONE | CAR NO. | REPORT DATE |
|---|---|---|---|---|
| Trooper Michael E. Melton | 619 | 08 | 8873 | MO 08 DAY 12 YR 94 |

SF-0394 (8-91)    RDA 1348

EXHIBIT [B]

PAGE 07

149

COPY

## PEDESTRIAN ACTION ("x" all that apply)

- Pedestrian Action - NONE ("x" one)
- Crossing at Intersection—with signal
- Same - Against Signal
- Same - No Signal
- Same - Diagonally
- Crossing Not at Intersection
- Was Crosswalk Available? 1 ☐ YES 2 ☐ NO
- Was Crosswalk Marked? 1 ☐ YES 2 ☐ NO
- Was Pedestrian Within Crosswalk Markings or Extension of Sidewalk Lines? 1 ☐ YES 2 ☐ NO
- Coming from Behind Parked Cars
- Standing in Safety Zone
- Getting On or Off Other Vehicle
- Pushing or Working on Vehicle
- Other Working in Roadway
- Playing in Roadway
- Lying in Roadway
- Walking in Roadway
    - a. With Traffic
    - b. Against Traffic
- Was Sidewalk Available? 1 ☐ YES 2 ☐ NO
- Walking Beside Roadway
    - a. With Traffic
    - b. Against Traffic
- Was Sidewalk Available? 1 ☐ YES 2 ☐ NO
- Was Pedestrian on Sidewalk? 1 ☐ YES 2 ☐ NO
- Not in Roadway, Other

(explain)

## ACCIDENT INVOLVED

| | |
|---|---|
| 1 | ☐ Motor Vehicle/Other Motor Vehicle |
| 2 | ☐ Motor Vehicle/Railroad Train |
| 3 | ☐ Motor Vehicle/Farm Implement |
| 4 | ☐ Motor Vehicle/Animal Drawn Vehicle |
| 5 | ☐ Motor Vehicle/Bicycle |
| 6 | ☐ Motor Vehicle/Other Pedalcycle Type Pedalcycle? |
| 9 | ☐ Motor Vehicle/Animal |
| 8 | ☐ Motor Vehicle/Pedestrian |
| 9 | ☐ Motor Vehicle Miscellaneous Actions Type Action? |
| 10 | ☐ Loose Vehicle Overturned in Roadway |
| 11 | ☐ Overturned |
| 12 | ☒ Struck Fixed Object _Pole_ Type Object? |
| 13 | ☐ Other |

(explain)

## OTHER PROPERTY DAMAGED?

☒ YES  ☐ NO     If YES :  PUBLIC / PRIVATE

AMOUNT OF DAMAGE (ESTIMATE)

☒ UNDER $400  ☐ OVER $400

OWNER NAME

ADDRESS

DESCRIBE PROPERTY

## TYPE OF COLLISION

| | |
|---|---|
| 1 | ☒ Head-on |
| 2 | ☐ Rear-end |
| 3 | ☐ Angle |
| 4 | ☐ Sideswipe - Same Direction |
| 5 | ☐ Sideswipe - Opposite Direction |
| 7 | ☐ Other |

(explain)

## LIGHT CONDITIONS

| | |
|---|---|
| 1 | ☐ Dawn |
| 2 | ☐ Daylight |
| 3 | ☐ Dusk |
| 5 | ☒ Dark (No Street Lights) |
| 6 | ☐ Dark (Street Lights On) |
| 4 | ☐ Dark (Street Lights Off) |

## WEATHER CONDITIONS

| | |
|---|---|
| 1 | ☒ Clear |
| 2 | ☐ Cloudy |
| 3 | ☐ Foggy |
| 4 | ☐ Raining |
| 5 | ☐ Snowing |
| 6 | ☐ Other |

## ROADWAY TYPE-1 ("x" one)

VEH
1 2
1 ☐ ☐ Interstate
2 ☐ U S Route
3 ☐ State Route
4 ☒ County Route
5 ☐ Municipal Route
6 ☐ Other

(explain)

## ROADWAY TYPE-2 ("x" all that apply)

VEH
1 2
1 ☐ One Way
2 ☐ Ramp (Entrance/Exit)
3 ☒ Two Lane
4 ☐ Four Lane
5 ☐ Divided Lanes
By What
6 ☐ Other

(explain)

## ROADWAY HAZARDS ("x" all that apply)

VEH
1 2
5 ☒ No Apparent Hazards
6 ☐ Defective Shoulders
7 ☐ Holes, Deep Ruts
8 ☐ No or Obscured Pavement Markings
9 ☐ Loose Material on Surface
8 ☐ Construction/Maintenance Zone
7 ☐ Other Hazards

## TRAFFIC CONTROLS

No Controls
Traffic Light
Flashing Yellow Light
Flashing Red Light
Lane Use Control
Stop Sign
☒ 4 Way Stop
Yield
Construction Zone
RR Crossing Signal
RR Flasher
RR Gates

## ROADWAY SURFACE TYPE

VEH
1 2
1 ☒ Asphalt
2 ☐ Concrete
3 ☐ Brick
4 ☐ Gravel
5 ☐ Dirt
6 ☐ Other

(explain)

## ROADWAY SURFACE CONDITIONS

VEH
1 2
1 ☒ Dry
2 ☐ Wet
3 ☐ Snow
4 ☐ Ice
5 ☐ Mud
6 ☐ Other

(explain)

## ROADWAY CHARACTER ("x" two)

VEH
1 2
6 ☐ Curve
7 ☒ Straight

1 ☐ Upgrade
2 ☐ Downgrade
3 ☒ Level

Was Traffic Control Working?
Yeh 1 ☒ YES - NO
Veh 2 ☒ YES - NO

Was Traffic Controls Functioning Properly?
Yeh 1 ☒ YES - NO
Veh 2 ☐ YES - NO

## DRIVER CONTRIBUTING FACTORS ("x" all that apply)

DRIVER
VEH
1 2
5 ☐ ☐ None
6 ☐ ☐ Drinking
1 ☐ ☐ Speeding
7 ☐ ☐ Failure to Yield
1 ☐ ☐ Following too Closely
14 ☐ ☐ Reckless Driving
1 ☐ ☐ Improper Passing
☒ ☐ Improper Turn
8 ☐ ☐ Disregard Signal or Sign
☐ ☐ Wrong Side of Road
17 ☐ ☐ Wrong Way
☐ ☐ Weather
13 ☐ ☐ Vision Obstructed
    By What?
30 ☒ ☐ Other _Lost Control_
(explain)

## CONDITION OF DRIVER or PEDESTRIAN ("x" all that apply)

1 2
2 ☐ ☐ Had Not Been Drinking
1 ☐ ☐ Had Been Drinking
3 ☐ ☐ Physical Defect
4 ☐ ☐ Ill (Sick)
☐ ☐ Ability Not Impaired
☐ ☐ Ability Impaired
10 ☐ ☐ Apparently Asleep
☐ ☐ Apparently Drugged
☐ ☐ Apparently Normal
11 ☒ ☐ Unknown if Drinking
☐ ☐ Other
(explain)

## TYPE OF ACTION ("x" all that apply)

DRIVER
VEH
1 2
1 ☐ Going Straight
☐ Negotiating Curve
16 ☐ Passing or Overtaking Another Vehicle
3 ☐ Right Turn to Private Drive
2 ☐ Right Turn to Street
☐ Right Turn on Red Permitted
20 ☐ Right Turn on Red Not Permitted
21 ☐ Left Turn to Private Drive
☐ Left Turn to Street
22 ☐ Turning From Wrong Lane
6 ☐ Slowing or Stopped for Signal or Stop
5 ☐ Slowing or Stopped for Turning Traffic
☐ Slowing or Stopped for Entering Traffic
8 ☐ Slowing or Stopped Other
(Explain)
10 ☐ Starting in Traffic
11 ☐ Starting from Parked Position
12 ☐ Stopped in Traffic Lane
7 ☐ Road (Legally-U? YES 2 ☐ NO
14 ☐ Backing from Drive
15 ☐ Backing from On-Street Parking Space
17 ☐ Entering from Private Drive
16 ☐ Other
(explain)

## HAZARDOUS CARGO

Did Accident Involve Hazardous Cargo? 1 ☐ YES 2 ☒ NO
(If yes, "x" all that apply)
VEH
1 2
0 ☐ NONE
1 ☐ Explosives
2 ☐ Gases
3 ☐ Flammable Liquids
4 ☐ Flammable Solids
5 ☐ Oxidizers
6 ☐ Etiologic Materials
7 ☐ Radioactive Materials
8 ☐ Corrosives
9 ☐ Misc
(explain)

## VEHICLE CONDITION ("x" all that apply)

VEH 1  VEH 2
Was vehicle insured
prior to investigation? ☐ YES ☐ NO
☒ NO
Was vehicle burned? ☐ YES ☐ YES
☒ NO ☒ NO
Was vehicle modified? ☐ YES ☐ YES
If yes, explain ☒ NO ☐ NO

## VEHICLE DEFECTS

VEH 1  VEH 2
Did officer check for ☐ YES ☐ YES
defects? ☒ NO ☐ NO

("x" all that apply)
VEH
1 2
8 ☒ No Apparent Defects
☐ Defective Brakes
☐ Defective Steering Mechanism
☐ Defective Tires
☐ Defective Headlights
10 ☐ Defective Signal Lights
☐ Defective Tail Lights
☐ Defective Other Lights
(explain)
5 ☐ Other

ADD REMARKS AUG 18 1994

| DO NOT USE THIS BLOCK | DOCUMENT CONTROL NUMBER (DO NOT USE) | | LOCAL AGENCY USE | PAGE 2 of 2 |

**VEH NO. 1**
X 1 DRIVER
☐ 2 PASSENGER
☐ 3 PEDESTRIAN

NAME  Tom D. Hall
ADDRESS SAME AS: ☐ DRIVER ☐ OWNER OF VEHICLE
OR _____ ZIP _____
TAKEN TO ___ N/A ___ BY
MEDICAL FACILITY (AMBULANCE SERVICE NAME OR PRIVATE PARTY)

(The remaining vehicle/passenger entry rows are blank forms with columns: Age, Sex, Injury Code, Seating Position, Ejected, Seat Belt, Helmet, Alcohol [Test, Result, Refused], Drugs [Test, Result, Refused])

**LIST BELOW ALL CHILD PASSENGERS UNDER FOUR (4) YEARS OF AGE**

(Child passenger rows blank — columns: Age, Sex, Injury Code, Seating Position, Ejected, Seat Belt, Helmet, Held, CHILD RESTRAINT DEVICE [Available, Used, Used Properly])

**WITNESSES**

(1) Name  Gregory Harold Rush      Age 37   Race W   Sex M
Address  Box 7 - Wildersville, TN 38388          968-0777
                                    (Business Phone)   (Residence Phone)

(2) Name _____      Age ___ Race ___ Sex ___
Address _____
                                    (Business Phone)   (Residence Phone)

(3) Name _____      Age ___ Race ___ Sex ___
Address _____
                                    (Business Phone)   (Residence Phone)



REFERENCE NUMBER

2365011

DESCRIBE WHAT HAPPENED:

Veh 1 was north bound on Wildersville-Timberlake Rd. this roadway dead ended into the Wildersville Rd. There was a stop sign at the intersection, but Veh 1 did not heed and crossed thru the intersection. There Veh 1 went over an embankment and struck a tree and there rolled on to a stop at the bottom. The driver exited walked back to the roadway and there he did steal another vehicle and drove off. HCS to make charges.

COLLISION DIAGRAM

INDICATE NORTH
BY ARROW

Embankment

Wildersville Rd.

STOP

Wildersville-Timberlake Rd.

INVESTIGATOR'S SIGNATURE    DATE 08/12/94

REPORT REVIEWED BY    DATE 8-?-9?

EXHIBIT [B]

PAGE 10

152

## CERTIFICATE & SEAL

**STATE OF TENNESSEE**

**COUNTY OF MADISON**

I, Judy Barnhill, Clerk of the Circuit Court for the County of Madison, in the State aforesaid, do certify that the foregoing is a correct transcript of the record and proceedings had in said Court in the case heretofore prosecuted and determined therein between **JON HALL** APPELLANT **and** **STATE OF TENNESSEE** , APPELLEE, as the same remains of record in said Court.

**STATE OF TENNESSEE**

**COUNTY OF MADISON**

In testimony whereof, I subscribe my name and affix the seal of said Court at office, in Jackson, Tennessee the **21ST** DAY OF **JULY** in the year Two Thousand Three in the 224th year of American Independence.

_Judy Barnhill_
JUDY BARNHILL, CLERK