# ADDENDUM 1
## Volume 2

W2003-00069-CCA-R3-PD

# CIRCUIT COURT OF MADISON COUNTY
## – TO –
## COURT OF CRIMINAL APPEALS

JUDGE ___ROY B. MORGAN___ _____ DIVISION ___I___

CIRCUIT COURT CLERK ___JUBY BARNHILL___ _____

VOLUME ___II___ OF ___VIII___ VOLUMES

STATE OF TENNESSEE

VS.                                    CASE NO. C-00-422

JON HALL

| | | | | | | |
|---|---|---|---|---|---|---|
| FELONY | XX | MISDEMEANOR | ☐ | ROR | ☐ | TDOC ☒ |
| BOND | ☐ | $_____ | | INDIGENT | ☐ | |
| POST CONVICTION | XX | | | HABEAS CORPUS | | ☐ |

MR. ALFRED EARLS                      MR. DANNY ELLIS
ASSISTANCE DISTRICT ATTORNEY          ATTORNEY AT LAW
P.O. BOX 2825                         P.O. BOX 3512
JACKSON, TN  38305                    JACKSON, TN  38303

Attorney For: APPELLEE              Attorney For: APPELLANT

Attorney For:                       Attorney For:

OFFENSE: FIRST DEGREE MURDER

SENTENCE: DEATH

FILED
JUL 2 4 2003
Clerk of the Courts
Rec'd By: _____

$Vol. 2$

Filed the ___21st___ day of ___JULY_____, ___2003___ .

COURT OF CRIMINAL APPEALS

BY: ___T. ROBERSON_____

# I N D E X

AFFIDAVIT SUPPORTING DENIAL OF DUE PROCESS
AND IMPROPER WAIVER OF TRIAL IN HENDERSON
COUNTY                                                   154-198

AFFIDAVIT TO SUPPORT DENIAL OF EFFECTIVE
ASSISTANCE OF COUNSEL & APPEAL                           199-225

AMENDED MOTION FOR CONTINUANCE                           278-283

AMENDED PETITION                                         226-276

ARGUMENT TO SUPPORT  REASONS WHY GROUNDS
FOR RELIEF WERE NOT PRESENTED IN PREVIOUS
PROCEEDINGS                                              294-303

CERTIFICATE & SEAL                                           304

MOTION TO SUPPLEMENT THE RECORD AND
SUBMIT CLAIMS FAIRLY IN THE STATE COURT                  286-293

ORDER GRANTING CONTINUANCE                               284-285

STATE'S RESPONSE AND MOTION TO DISMISS
AMENDED PETITION                                             277



IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

MADISON COUNTY AT JACKSON, TENNESSEE

Jon Douglas Hall,

    Petitioner,

Vs.

STATE OF TENNESSEE,

    Respondent.

*
*
*
*   CASE NO. C00-422-1
*   (DEATH PENALTY CASE)
*
*
*

FILED

JUDY BARNHILL, CIRCUIT COURT CLERK

NOV 01 2001

DEPUTY CLERK

A.M. 12:25 P.M.

APPENDIX

AFFIDAVIT SUPPORTING DENIAL OF DUE PROCESS AND IMPROPER WAIVER OF TRIAL IN HENDERSON COUNTY

| EXHIBITS | PAGE NO. | BRIEF DESCRIPTION OF EXHIBITS |
|---|---|---|
| A | 01 – 02 | MR. SMITH AND MR. MOSIER'S MOTION FOR A CHANGE OF VENUE |
| B | 03 | STATE'S RESPONSE TO MOTION FOR A CHANGE OF VENUE |
| C | 04 – 07 | NOVEMBER 8, 1995 – MOTIONS HEARING / CHANGE OF VENUE |
| D | 08 – 09 | APRIL 9, 1996, – HENDERSON CO. MOTION (TRANSFER DEFENDANT TO MADISON CO.) |
| E | 10 | AUG. 30, 1996 – MOTION FOR DEFENDANT'S PRESENCE DURING ALL PROCEEDINGS HELD |
| F | 11 | SEPTEMBER 3, 1996 – MOTION TO RENEW MOTION FOR A CHANGE OF VENUE |
| G | 12 – 16 | SUPPLEMENT MOTION FOR A CHANGE OF VENUE (WORK PRODUCT; UN-SIGNED AFFIDAVIT) |
| H | 17 | MOTION TO DETERMINE PRIOR TO TRIAL COMPETENCY OF WITNESSES |
| I | 18 | SEPTEMBER 16, 1996 – ORDER / CHANGE OF VENUE – FILED SEPTEMBER 23, 1996 |
| J | 19 | TENNESSEE DEPARTMENT OF CORRECTION – ARRIVAL / DEPARTURE SHEET |
| K | 20 – 21 | FEBRUARY 3, 1997 – TRANSCRIPT OF EVIDENCE / OBJECTION TO CHANGE OF VENUE |
| L | 22 – 32 | MR. HALL'S POST-TRIAL MOTIONS ATTACKING JURISDICTION, ETCETERA |
| M | 33 – 35 | MOTION TO ALLOW COUNSEL & CO-COUNSEL WITHDRAW – WITH ATTY. / CLIENT MAIL |
| N | 36 | ORDER – OVERRULING COUNSEL'S MOTION TO WITHDRAW |
| O | 37 – 43 | ARGUMENT – TO SUPPORT DENIAL OF DUE PROCESS AND IMPROPER WAIVER OF TRIAL |

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE                )
                                  )
V.                                : CRIM. NOS. 94-342, 94-452 and 94-454.
                                  )
JON HALL                          )

MOTION FOR CHANGE OF VENUE

COMES NOW the Defendant, JON HALL, by and through his attorneys, Mike Mosier and Carthel L. Smith, and respectfully moves this Honorable Court for a change of venue in this cause. In support of his motion, the Defendant would state and show as follows:

1. That the Defendant is a resident and citizen of Lexington, Henderson County, Tennessee. That the alleged victim was a resident and citizen of Lexington, Henderson County, as are the alleged victim's family. That the offenses with which the Defendant is charged occurred in Lexington, Henderson County, Tennessee.

2. That certain major newspapers in the area of Henderson County, Tennessee, and surrounding counties have published and circulated newspaper articles describing the acts with which the Defendant is charged, and these papers include a significant portion of the evidence to the Defendant, the admissibility of which has not been considered by this Court. This information has unfairly and severely prejudiced the Defendant.

3. Similar publicity was broadcast over area radio and television stations in Madison County, Tennessee, and the surrounding areas describing the acts with which the Defendant is charged.

4. The circumstances surrounding the alleged offenses in this case, including the various descriptions of the alleged victim before, during and after the commission of the alleged offenses has evoked great passion and unfair prejudice to the Defendant in this community. That contemporary community standards are such that the commission of crimes similar to the ones alleged in the indictment result in constant focus, attention and publicity contrary to the amount of focus, attention and publicity than would be attributed if the alleged offenses had occurred in a more urban community.

5. That to try the Defendant in Henderson County, where the community feeling is strongly set against the Defendant, would violate the Defendant's right to a fair trial by an impartial jury, which is guaranteed to the Defendant by the Sixth and Fourteenth Amendments to the united States Constitution as well as the Constitution of the State of Tennessee.

WHEREFORE, the Defendant, pursuant to Rule 21 of the Tennessee Rules of Criminal Procedure, moves this Honorable Court to grant him an evidentiary hearing on the issue raised in this motion, and, following the hearing, enter an order transferring this case to another County within the judicial district.

*No affidavits as required by Rule 21(b)*

COV – EXHIBIT [A]

01

RESPECTFULLY SUBMITTED,

_____

MIKE MOSIER, ATTORNEY AT LAW
P. O. Box 1623
204 West Baltimore
Jackson, Tennessee 38302
(901) 424-6616


_____

CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church Street
Lexington, Tennessee 38351
(901) 968-2561


APPOINTED ATTORNEYS FOR
THE DEFENDANT, JON HALL


CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and exact copy of the foregoing Motion for Change of Venue to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson, Tennessee 38302-2825, on this the _____ day of June, 1995.


_____
MIKE MOSIER


DF-MOT 15

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE            )
                              )
v.                            )            No. 94-342, 452, 454
                              )
JON HALL                      )

### STATE'S RESPONSE TO MOTION FOR CHANGE OF VENUE

Comes now the State of Tennessee by and through the office of the District Attorney and respectfully moves this Honorable Court to deny the Motion for Change of Venue and support states:

1.   The defendant has filed no affidavits in support of his motion which aver facts constituting the alleged undue excitement or other cause upon which the motion is based.  These affidavits are required by Rule 21 (b) T.R. Crim. P.

2.   The motion fails to state sufficient basis to grant a change of venue.

3.   The amount of publicity concerning this case has not been any greater than any other murder involving similar circumstances.

Wherefore premise considered the State respectfully moves this Honorable Court to deny the change of venue.

                              Respectfully submitted,

                              _____
                              ASSISTANT DISTRICT ATTORNEY
                              26TH JUDICIAL DISTRICT


### Certificate of Service

I hereby certify that I have mailed or delivered a true copy of the foregoing to Mr. Mike Mosier, Attorney at Law, P.O. Box 1623, 204 W. Baltimore, Jackson, TN 38302-1623 and Mr. Carthel Smith, Attorney at Law, 85 E. Church, Lexington, TN 38351, this the _10_ day of July, 1995.

                              _____
                              ASSISTANT DISTRICT ATTORNEY
                              26TH JUDICIAL DISTRICT

COV - EXHIBIT [B]

03

000816
157

```
 1        IN THE CRIMINAL COURT OF HENDERSON COUNTY, TENNESSEE

 2                    AT LEXINGTON, DIVISION I

 3

 4   STATE OF TENNESSEE

 5

 6   VS.                              No. 94-342

 7

 8   JON HALL

 9

10   _____

11                         MOTIONS

12                    NOVEMBER 8, 1995

13   _____

14

15

16

17

18

19

20

21                        AMY MAYS

22                   OFFICIAL COURT REPORTER

23        MADISON COUNTY COURTHOUSE - THIRD FLOOR

24             JACKSON, TENNESSEE  38301

25                     (901)423-6039

                           1
```

COV - EXHIBIT [C]

04

```
 1                    APPEARANCES

 2            Before the Honorable WHIT LAFON, Judge

 3   For the State:

 4            MR. JAMES G. WOODALL

 5            MR. AL EARLS

 6            MR. JAMES W. THOMPSON

 7            District Attorney General's Office

 8            Lowell Thomas State Office Building

 9            Jackson, Tennessee  38301

10   For the Defendant:

11            MR. CARTHEL L. SMITH, JR.

12            Attorney at Law

13            85 East Church

14            Lexington, Tennessee  38351

15                    -and-

16            MR. MIKE MOSIER

17            Mosier & Morris

18            204 West Baltimore

19            Jackson, Tennessee  38301

20                 * * * * *

21

22

23

24

25
```

2

COV - EXHIBIT [C]

05

159

1          MR. MOSIER:  Your Honor, the next motion,

2    Defense Motion Number 15, a motion for a change of

3    venue.  We filed that motion, Your Honor, and for the

4    reasons set out therein and for the information

5    contained in the affidavits which Mr. Smith has filed,

6    we would ask the Court to consider changing the

7    location of this trial from Henderson County to some

8    county that has not been exposed to the newspaper

9    articles, the television news items.  We feel like that

10   in a small county such as Henderson County, that these

11   folks here have been exposed to the facts about this

12   case, and they've been exposed to some accounts that

13   may not be accurate and --

14         THE COURT:  Mr. Mosier, let me say this to

15   you.  As far as a change of venue, the Court at the

16   present time is going to deny that motion.  In the

17   event of the trial it develops that we have some

18   problems, why then I might agree to consider it at that

19   time.  At the present time the motion is overruled.

20         MR. MOSIER:  Thank you, Your Honor.

21         Defense Motion Number 16, Motion to Suppress

22   will be --

23         MR. WOODALL:  We don't even have any

24   affidavits.  I know how the Court has ruled, and I

25   think that's a proper ruling, but we have yet to

16

COV - EXHIBIT [C]

06

160

1    receive any affidavits.

2            THE COURT:  What's that now?

3            MR. SMITH:  I'll see that they get them.

4            MR. WOODALL:  We have not yet received any

5    affidavits.  I understand Your Honor's ruling but --

6            THE COURT:  He's not presented any, so I'm

7    overruling the motion.

8            MR. WOODALL:  Well, what I'm saying to the

9    Court is, Mr. Mosier said that based upon the

10   affidavits filed he was asking for a change of venue.

11   Your Honor I think correctly ruled.  We'll attempt to

12   pick a jury, and if we can we'll proceed; if we can't,

13   we'll reconsider it at the appropriate time.

14           THE COURT:  That's right.  That's my ruling.

15           MR. MOSIER:  Your Honor, just to clear it up,

16   Mr. Smith has filed certain affidavits, and I just

17   haven't made them available to Mr. Woodall.

18           THE COURT:  All right.

19

20

21

22

23

24

25

                                    17

COV - EXHIBIT [C]

07

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

FILEI
KENNY LAVNESS - CIR.

MAR 2 1

BY_____
DEPUTY CL

STATE OF TENNESSEE          )
                            )
VS.                         )        NO. 94-342
                            )
JON HALL                    )

_____

                        MOTION
_____

    Comes now the Defendant, JON HALL, by and through his attorneys of record, Jesse H. Ford, III and Clayton F. Mayo, and requests this Honorable Court to have JON HALL, the defendant in the above styled case, brought to Madison County Circuit Court on the 9th day of April, 1996, for a motions hearing in this matter. He is currently incarcerated at the Riverbend Maximum Security Institute in Nashville, Tennessee.

    WHEREFORE, PREMISES CONSIDERED, that the Warden of the Department of Corrections release JON HALL to the Sheriff of Madison County, or one of his duly appointed deputies, in order that he be in Circuit Court on the 9th day of April, 1996, for a motions hearing in his case.

    DATED this the _____th_ day of _March_____, 1996.

                  Respectfully submitted,


                  _____
                  JESSE H. FORD, III
                  Attorney for Defendant
                  618 N. Highland Avenue
                  P.O. Box 1625
                  Jackson, TN  38302-1625
                  (901) 422-1375


                  _____
                  CLAYTON F. MAYO
                  Attorney for Defendant
                  618 N. Highland Avenue
                  P.O. Box 1625
                  Jackson, TN  38302-1625
                  (901) 422-1375

COV - EXHIBIT [D]

08

000118

162

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

FILED
KENNY CAVNESS · CIR.

MAR 2 1

BY _____
DEPUTY CL

STATE OF TENNESSEE          )
                            )
VS.                         )          NO. 94-342
                            )
JON HALL                    )

_____

MOTION

_____

Comes now the Defendant, JON HALL, by and through his attorneys of record, Jesse H. Ford, III and Clayton F. Mayo, and requests this Honorable Court to have JON HALL, the defendant in the above styled case, brought to Madison County Circuit Court on the 9th day of April, 1996, for a motions hearing in this matter. He is currently incarcerated at the Riverbend Maximum Security Institute in Nashville, Tennessee.

WHEREFORE, PREMISES CONSIDERED, that the Warden of the Department of Corrections release JON HALL to the Sheriff of Madison County, or one of his duly appointed deputies, in order that he be in Circuit Court on the 9th day of April, 1996, for a motions hearing in his case.

DATED this the 5th day of March, 1996.

Respectfully submitted,

_____
JESSE H. FORD, III
Attorney for Defendant
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

_____
CLAYTON F. MAYO
Attorney for Defendant
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

COV - EXHIBIT [D]

08

000118

162

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing
was served on Mr. Al Earls, Assistant District Attorney, P.O. Box
2825, Jackson, TN 38302, by mailing the same with sufficient
postage to insure proper delivery this the _____ day of
_____, 1996.


_____
JESSE H. FORD, III


_____
CLAYTON F. MAYO


COV - EXHIBIT [D]

09

000119

164

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

HENDERSON COUNTY AT LEXINGTON, TENNESSEE

DIVISION I

FILED
KENNY CAVNESS - CIRCUIT C

AUG 3 0 1996

BY_____
DEPUTY CLERK

JON HALL                          )
                                  )
V.                                ) DOCKET NO. 94-342, 94-452, 94-452
                                  )
STATE OF TENNESSEE                )

---

MOTION FOR DEFENDANT'S PRESENCE DURING ALL PROCEEDINGS HELD

---

Comes now the defendant, Jon Hall, pursuant to Rule # 10 (a) of the Tennessee Rules of Criminal Procedure to be present during all of the criminal proceedings to be had in this matter. The defendant would further like to stipulate that He will be present during any and all competency hearings pursuant to State v. Suttles, 767 S.W.2d 403, for any and all Witnesses, scheduled to testify for the State.

Respectfully submitted,

Jon Hall

Sworn and subscribed before me this the 27 day of August 1996.
Notory Public Herbert Wayne Brandon
My commission expires _____ My Commission Expires JULY 24, 1999

CERTIFICATE OF SERVICE

I ___Jon Hall___, hereby certify that I have mailed a true, and exacct copy of the foregoing motion to Jim Thompson, Assistant, Distrct, Attorney, P.O. Box 2825, Jackson Tennessee 38302, this the 28 day of Aug 1996.

COV - EXHIBIT [E]

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE,          )                          FILE
                             )              KENNY CAVNESS · C
VS.                          )         No. 94-342; 94-452
                             )           and 94-454        SEP 1
JON HALL,                    )
                             )                    BY_____
                             )                       DEPUTY

--------------------------------------------------------------------

MOTION TO RENEW MOTION FOR CHANGE OF VENUE

--------------------------------------------------------------------

Comes now the Defendant, Jon Hall, by and through his
attorneys of record, Jesse H. Ford, III and Clayton F. Mayo, and
renews the motion previously filed herein for change of venue
pursuant to Rule 21 of the Tennessee Rules of Criminal Procedure as
follows:

1.    That the Defendant hereby renews his previous Motion for
Change of Venue which was filed in the above matter which basically
sets forth grounds for change of venue from another county within
this judicial district due to prejudicial publicity the Defendant
has received in Henderson County, Tennessee.

2.    The Defendant hereby incorporates herein by reference
those allegations which were set forth in the original motion.

Based on the foregoing, the Defendant, pursuant to Rule 21 of
the Tennessee Rules of Criminal Procedure, would move this
Honorable Court for a change of venue to another county within this
judicial district.

Dated, this the 3rd day of September, 1996.

                              Respectfully submitted,


                              _____
                              JESSE H. FORD, III  009775
                              Attorney for Defendant
                              P. O. Box 1625
                              Jackson, TN  38302-1625
                              (901) 422-1375


CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing
was served on Mr. Al Earls, Assistant District Attorney, P. O. Box
2825, Jackson, Tennessee 38302 by mailing the same with sufficient
postage to insure proper delivery this the 3rd day of September,
1996.


                              _____
COV - EXHIBIT [F]             JESSE H. FORD, III

11

                                                    166

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
DIVISION I

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| Plaintiff, | ) | |
| VS. | ) | NO. 94-342 |
| | ) | |
| JON HALL, | ) | |
| Defendant. | ) | |

Supplemental MOTION FOR CHANGE OF VENUE

Comes now your Defendant, JON HALL, and his attorney, CLAYTON F. MAYO, and JH Pro se, through the record, and moves this Court to grant a motion for a change of venue for the following reasons:

1.   Defendant, JON HALL, is charged with the offense of:

(a). First Degree Murder;

(b). 2 counts of Theft of Property;

(c). Especially Aggravated Kidnapping;

2.   That the Court has jurisdiction to hear this case;

3.   Defendant contends that he cannot receive a fair trial for the following reasons:

(a). That there is much and extreme public hostility over this crime in this Court's jurisdiction;

(b). That there is much public outrage over the nature of this crime;

(c). That prejudicial news reporting and editorials have disclosed inadmissible evidence;

(d). That the public assumes because of the newspaper reporting, editorials and television coverage that Defendant is guilty of this crime;

(e). That there has been an extreme amount of publicity regarding this case which cannot help but prejudice the people that will be the jury pool in this Court's jurisdiction;

(f). That the public is convinced as evidenced by many conversations heard by Defendant and Defendant's attorneys that Defendant is guilty of the charges he is facing;

(g). That there is a reasonable likelihood that the Defendant will not receive a fair trial as a result of pre-trial publicity, see Sheppard v. Maxwell, 384 U.S. 333, 363 (1966);

COV - EXHIBIT [G]

12

000573

16 000057

4.    This Court has the authority and discretion to change the venue, ~~pursuant to Federal Rules of Criminal Procedure 21.~~

WHEREFORE, DEFENDANT PRAYS that this Court grant a change of venue to the Circuit Court of _____ County, in _____, Tennessee.

DATED this the ____ day of _____, 1996.

Respectfully submitted,

_____
CLAYTON F. MAYO, BPR# 014138
Attorney at Law
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

_____
JESSE H. FORD, III BPR# 009775
Attorney for Defendant
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

CERTIFICATE OF SERVICE

I hereby certify that I have either mailed or personally delivered a true copy of the foregoing to Mr. Al Earls, Assistant District Attorney, P.O. Box 2825, Jackson, Tennessee 38302, this the ____ day of _____, 1996.

_____
CLAYTON F. MAYO

_____
JESSE H. FORD, III

AFFIDAVIT

CLAYTON F. MAYO, being duly sworn, deposes and says:

1.    He is the attorney for the Defendant herein and makes this Affidavit in support of a Motion for a Change of Venue.

2.    Affiant asked fifty (50) individuals selected at random on the streets of Jackson, Tennessee and Bolivar, Tennessee whether they had or had not, seen or heard any of the pre-trial publicity concerning the case. One hundred percent had seen and/or heard the publicity.

3.    Of those who had seen the pre-trial publicity, ninety

168

COV - EXHIBIT [G]

13

000574

percent believed that the Defendant was guilty and ten percent had formed no opinion. All stated that the vast majority of persons in Madison and Hardeman Counties believed the Defendant guilty but refused to execute affidavits to that affect because of the criticism in the assistance rendered the Defendant, even in the mere obtaining a change of venue, would engender. All requested that their names not be used. In many of these conversations, it has been stated that if Dennis Harris committed these acts, he deserved to die.

4.    Included among those people interviewed were persons of the following applications:    store owners,    barbers,    teachers, clerks, farmers, factory workers, bankers, salesmen, and persons in a variety of management positions.

DATED this the ____ day of _____ 1992.

_____
CLAYTON F. MAYO

Sworn to and subscribed before me this the ____ day of _____, 1992.

_____
NOTARY PUBLIC

My Commission Expires: _____

<u>AFFIDAVIT</u>

I, JON HALL, being first duly sworn, depose and say:

1.   I am the Defendant in the above titled action and I make this Affidavit in support of my motion for change of venue.  I can not have a fair and impartial trial in the City of Lexington, Tennessee, because of the publicity against me, public outrage over the offense of which I am charged, and prejudicial news reporting and editorials that have implicated me and disclosed inadmissible evidence.

2.   <u>The Jackson Sun</u> is a newspaper widely circulated in the City of Jackson; attached hereto, marked exhibits are news articles which appeared in <u>The Jackson Sun</u> on the following dates:

```
Exhibit #1 - 04/01/92;        Exhibit #13- 04/09/92
Exhibit #2 - 04/01/92;        Exhibit #14- 04/10/92;
Exhibit #3 - 04/02/92;        Exhibit #15- 04/12/92;
Exhibit #4 - 04/02/92;        Exhibit #16- 04/14/92;
Exhibit #5 - 04/02/92;        Exhibit #17- 04/17/92;
Exhibit #6 - 04/02/92;        Exhibit #18- 04/27/92;
Exhibit #7 - 04/02/92;        Exhibit #19- 04/28/92;
Exhibit #8 - 04/03/92;        Exhibit #20- 05/01/92;
Exhibit #9 - 04/04/92;        Exhibit #21- 06/28/92;
Exhibit #10- 04/05/92;        Exhibit #22- 06/30/92;
Exhibit #11- 04/06/92;        Exhibit #23- 07/01/92;
Exhibit #12- 04/07/92;        Exhibit #24- 07/21/92.
                              Exhibit #38- 07/28/92
```

Furthermore, <u>The Commercial Appeal</u> is a newspaper widely circulated in the city of Jackson and all the various counties in which this court draws its jury pool; attached hereto, marked exhibits are news articles which appeared in <u>The Commercial Appeal</u> on the following dates:

```
Exhibit #25- 04/01/92;        Exhibit #30- 04/10/92;
Exhibit #26- 04/02/92;        Exhibit #31- 04/11/92;
Exhibit #27- 04/03/92;        Exhibit #32- 05/01/92;
Exhibit #28- 04/05/92;        Exhibit #33- 06/28/92;
Exhibit #29- 04/06/92;        Exhibit #34- 06/30/92.
```

Such inflammatory news stories could not help but prejudice the people of this Court's jurisdiction against me.

3.   Additionally, <u>The Tennessean</u> is a newspaper widely circulated in the City of Jackson; attached hereto, marked exhibits are news articles which appeared in <u>The Tennessean</u> on the following dates:

```
Exhibit #35- 04/01/92
Exhibit #36- 04/02/92
```

4.   Finally, the <u>Hardeman County Leader</u> is a newspaper that is widely circulated in this area; attached hereto, marked exhibit is a news article which appeared in the <u>Hardeman County Leader</u> on the following date:

COV - EXHIBIT [G]
15

170

Exhibit #37- 07/02/9

5.    That WBBJ, a television station that is in the city of Jackson, is broadcasted throughout the area from which the jurors are drawn.  On the 10th and 11th days of July, 1992 at 6 and 10 o'clock p.m. in a news broadcast transmitted over said station (Exhibit #39), coverage was broadcast regarding my case.

6.    In view of the adverse pre-trial publicity which has been given to the case I can not obtain a fair and impartial trial in the city of Lexington and request a change of venue.

_____
JON HALL

    Sworn to and subscribed before me this the ____ day of _____, 1992.

_____
NOTARY PUBLIC
My Commission Expires:_____

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE            )
                              )
v.                            )            No.94-342
                              )
JON HALL                      )

### MOTION TO DETERMINE PRIOR TO TRIAL
### THE COMPETENCY OF WITNESSES

Comes now the State of Tennessee by and through the Office
of the District Attorney General and moves this Honorable Court
to determine pre-trial whether certain witnesses will be allowed
to testify and in support of that motion the State would show
that said witnesses are minor children ten years old and under
and that should the Court rule that said witnesses are not able
to testify the State will need time to file necessary appeals.

FILED

SEP 18 1996

JO...    ...CIRCUIT COURT CLERK
         DEPUTY CLERK
                              A.M.

Respectfully Submitted:

AL EARLS
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

### Certificate of Service

I hereby certify that I have mailed or delivered a true copy
of the foregoing to Mr. Jay Ford, Attorney at Law, 618 N.
Highland Ave., Jackson, TN 38301, this ____ day of September,
1996.

AL EARLS
ASSISTANT DISTRICT ATTORNEY
26th JUDICIAL DISTRICT

COV - EXHIBIT [H]

172

17                                              151

FILE
KENNY COMBS, C

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE     SEP 2 3

BY_____
                                                            DEPUTY

STATE OF TENNESSEE,          )
                             )
VS.                          )          No. 94-342; 94-452
                             )              and 94-454
JON HALL,                    )

_____

                              ORDER
_____

     This matter came on for hearing on this the _____ day of
September, 1996, before the Honorable Whit S. LaFon.  After
considering the Motion for Change of Venue and Defendant's renewal
of the motion for change of venue, the Court finds that the motion
is well taken and should be granted.  The Court further finds that
the venue of the trial should be changed from Lexington, Henderson
County, Tennessee to Jackson, Madison County, Tennessee.

     IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the
Defendant's Motion for Change of Venue is well taken and is hereby
granted and that the venue of the matter is moved from Lexington,
Henderson County, Tennessee to Jackson, Madison County, Tennessee.

     Enter, this the __16__ day of September, 1996.

                                   _____
                                   WHIT S. LAFON, Judge

APPROVED FOR ENTRY:

_____
AL EARLS
Assistant District Attorney
P. O. Box 2825
Jackson, TN  38302

_____
JESSE H. FORD, III    009775
Attorney for Defendant
P. O. Box 1625
Jackson, TN  38302

COV - EXHIBIT [I]

18

1 73

152

```
                          ARRIVAL/DEPARTURE                 DATE  01 16 9
                             SELECT                         TIME  09 35 40
   TOMIS ID:  00238241   HALL, JOHN
     STATUS:  ACTV   SEX:  M   RACE:  W     AGE:  33   DOB  00/05/1943
  S   MOVE DATE/TIME     A/D   FROM/TO              MOVE REASON
  ---------------------  ---   -------              -----------
   03/20/1997 10:00 PM    A    052   RMSI    RETNO  RETURN - NO CHARGES
   03/19/1997 12:30 PM    D    RMSI  057     OUTNO  OUT TO COURT - NO CHARGES
   02/04/1997 11:30 AM    A    057   RMSI    NEWAD  NEW ADMISSION
   12/05/1996 03:30 PM    D    RMSI  057     SARET  SAFEKEEPING RETURNED
   04/02/1996 04:45 PM    A    039   RMSI    SAREC  SAFEKEEPING RECEIVED
   04/02/1996 07:19 AM    D    RMSI  057     SARET  SAFEKEEPING RETURNED
   02/09/1996 04:21 PM    A    039   RMSI    SAREC  SAFEKEEPING RECEIVED
   02/09/1996 06:33 AM    D    RMSI  039     SARET  SAFEKEEPING RETURNED
   11/08/1995 04:07 PM    A    039   RMSI    SAREC  SAFEKEEPING RECEIVED
   11/08/1995 06:41 AM    D    RMSI  039     SARET  SAFEKEEPING RETURNED
  SEARCH
  NEXT FUNCTION:        DATA:
  F1-HELP       F8-PAGEDOWN  F9-QUIT      F11-SUSPEND

  TOP OF LIST
```

COV - EXHIBIT [J]

19

174

1   -- I had two lawyers that you weren't satisfied with

2   and we changed those, and two more and we changed

3   those. We have now Mr. Ford and Mr. Mayo, and when

4   we're out here in the court, if you wish to say

5   anything, you say it to your lawyer. You're not to

6   make any statements in court. Now in the event -- I

7   hope we have no problem at all, but in the event that

8   you don't behave yourself, conceivably you can be

9   removed from the room or gagged. I don't want to have

10  to do that, but I want to warn you now that any

11  statements on your behalf that you wish to have said,

12  you confer with your lawyers, you'll have time, and let

13  them say it. But now, you're not to be making

14  statements, because if you do I'll deal with you. You

15  understand?

16          THE DEFENDANT: Yes, sir. I'm not trying to

17  disrupt the court, but I can't understand why we're

18  holding this hearing in Madison County when I was

19  charged in Lexington.

20          THE COURT: Well your lawyers asked that a

21  venue be changed due to the fact of the publicity such

22  as --

23          THE DEFENDANT: Well not --

24          THE COURT: Just a minute. Such as the thing

25  as the statement that you made which was given much

.7

COV - EXHIBIT [K]

20

175

1    more publicity up there, and so if you note your

2    objection to the change of venue, I assume that's what

3    you're doing, and asking your lawyers, and I'll

4    overrule that motion.

5            Now is there anything else?

6            MR. FORD:  One other thing, Your Honor

7    please.  The Attorney General had extended an offer to

8    Mr. Hall which he rejected, and I want to place that on

9    the record.

10            MR. WOODALL:  He needs to be put under oath.

11            MR. FORD:  Right.

12    .        THE COURT:  Raise your right hand, Mr. Hall.

13    Do you swear if you're asked questions to tell the

14    truth?

15            THE DEFENDANT:  I'm not testifying, Your

16    Honor.

17            THE COURT:  Well, if you give a question, do

18    you swear you'll tell the truth -- if you answer a

19    question?

20            THE DEFENDANT:  I'm bound by the Lord to tell

21    the truth.

22            THE COURT:  All right, go ahead.

23            MR. FORD:  Mr. Hall, did we, Mr. Mayo and I,

24    tell you that the Attorney General had extended an

25    offer in this case to you?  Life with the possibility

8

COV - EXHIBIT [K]

21

176

IN THE CRIMINAL COURT OF APPEALS

AT JACKSON TENNESSEE

JON HALL                              )
    APPELLANT                         ) 26th JUDICIAL DIST., DIV. I
                                      ) HENDERSON CO. NO.# 94-342
V.                                    ) MADISON CO. NO.# 96-589
                                      )
STATE OF TENNESSEE                    ) C.C.A. NO.# _____
    APPELLEE                          )

FILED
MAR 05 1997
JOE G. IVEY, CIRCUIT COURT CLERK
A.M._____ DEPUTY CLERK

---

## MOTION IN ARREST OF JUDGEMENT

---

Comes now the appellant pursuant to Rule 34, Tenn. R. Crim. P., and moves the Court to arrest the Judgement in this case upon the following grounds:

1. The Court is without jurisdiction of the offense charged, because, the Appellant never consented to be tried in the County of Madison, from an offense alleged to have been committed in Henderson County.

2. The Court is without jurisdiction of the offense charged, because, this Court is without subject-matter jurisdiction. The Court was exercising its jurisdiction under maratime law. The Court had no authority to try, and / or sentence the Appellant, without his consent to contract with this court to be sentenced under the said maratime jurisdiction; Therefore, this Court had no power to hear the criminal proceeding before it. (See; e.g., Davis v. Davis, 9 Ill. App.3d 922, 293 N.E.2d 399, 405). [See also; appellate brief, 96-6624; Ex. No. [26-38] .

It cannot be acquired or implied (through constructive knowledge and consent) that Appellant knowingly consented to said maratime and personal jurisdiction of this court at the time he was tried and sentenced, (See; e.g., Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091.

The intent to deprive Appellant of his constitutional rights that are relevent to this cause, can be shown by policy and / or custom of the officers of this Court. (See; e.g., 42 U.S.C. § 1983 notes; 319-337).

1.

MOTION FOR ARREST OF JUDGEMENT

CONCLUSION

In the United States, the Office of the Attorney General is one which is provided by the constitutional and statutory provisions of the various states, and where the powers and duties of the Attorney General are fixed by the constitution, a statute interfering therewith is invalid. Murphy v. Yates, 348 A.2d 837, Md. 475, 84 A.L.R. 3d 1.

Appellant did not have a contract with this Court to be tried and sentenced under maritime jurisdiction, which had to be declared, and made known to the petitioner if the Court was legally to retain subject-matter jurisdiction over the case. Otherwise, a maritime contract relates to buisness of navigation. Hageman Const. Co. v. Bassett, D.C. Mo. 30 F. Supp. 813, 815.

Because Appellant did not consent to either Madison Co. Venue, or a maritime contract with the Court, it constituted a voidable contract, Depner v. Joseph Zukinhlouses, 13 Cal. App. 2d 124, 56 P.2d 574-75.

A contract which is void, which never had any legal affect, and such contract cannot in any manner have life breathed into it. See; National Union Indemnity Co. v. Bruce Bros., 44 Ariz. 454, 38 P.2d 648, 652.

Furthermore, T.C.A § 40-30-203; States: Ground for relief. Sec. (a). Relief under this chapter shall be granted when the conviction or the sentence is void, or voidable, because of the abridgement of any right guaranteed by the constitution of this State or the constitution of the United States.

Wherefore, Appellants sentence should be vacated and dismissed.

Respectfully submitted,

COUNSEL FOR APPELLANT ?

JON HALL / APPELLANT

CERTIFICATE OF SERVICE

I _____, hereby certify that I have mailed a true and exact copy of the foregoing motion to; 26th Dist. Atty., Jerry Woodal, P.O. Box 2825, Jackson Tenn. 38302; Office of the State Atty. General, 450 James Robertson Parkway, Nash. Tenn. 37219; Office of the Clark, Criminal Court of appeals, P.O. Box 909, Jackson Tenn., 38302, on the ___ day of March 1997, by U.S. First Class postage.

2.

COV - EXHIBIT [L]

23

189

178

IN THE CRIMINAL COURT OF APPEALS
AT JACKSON TENNESSEE

JON HALL                  )
    APPELLANT             )  26th JUDICIAL DIST., DIV. I
                   FILED  )  HENDERSON CO. NO.# 94-342
V.                        )  MADISON CO.# 96-589
          MAR 05 1997     )  C.C.A. NO.# _____
                          )
STATE OF TENNESSEE    JOE CLINTNEY, CIRCUIT COURT CLERK
    APPELLEE              DEPUTY CLERK  )
                    A.M. _____  )

─────────────────────────────────────────────

MOTION FOR NEW TRIAL / AMENDMENT

─────────────────────────────────────────────

Comes now the Appellant, with or without counsel, (to protect
his rights), and moves the Court to grant him a new trial for the
reasons as follows:

1. Whether the trial judge erred in refusing to sign a contract
pursuant to Title 3, U.C.C. section 501, to retain subject-matter of
this case.

2. Whether the trial judge erred in refusing to remove the "U.S.
Flags of War" from the Court, with the intent to deprive a United
States citizen of his U.S. Constitutional rights, in addition, denying
the Appellant from testifying on his own behalf, prejudicing him the
right to a fair and impartial trial.[See: T.C.A. § 23-1-109].

3. Whether the trial judge erred in holding EX-PARTE held motion
hearings, depriving the Appellant from; protecting / asserting his ideas
in presenting a defense in this matter, prejudicing him of a fair,
and impartial trial.[See: T.C.A. § 23-1-109].

4. Whether the trial judge erred in forcing the Appellant to
wear leg restraints during the jury selection process.

5. Whether the trial judge erred in allowing persons other than
the jury pool, sit amongst the potential jurors, during the selection
process, to wit; the parents of the deceased, Bill and Valeria Lambert,
sat amongst the jury pool during the complete selection process, and
was permitted to breaks with the jury panel, before being impaneled
to sit upon the jury for this cause. [See: T.C.A. § 22-2-310 ].

1.

COV - EXHIBIT [L]                                              190

24                                                    179

MOTION FOR NEW TRIAL / AMENDMENT PRO-SE

6. Whether the trial judge erred in removing jurors for cause, under the Witherspoon v. Illinois, 391 U.S. 510 (1968), but failed to remove one juror because of bias, (co-worker of the deceased) and the only juror to admit a domestic violence history during the voir dire process. [See: T.C.A. § 22-1-105 (affinity) ].

7. Whether the trial judge erred in permitting an (11) women, and (1) Black male, jury panel to sit upon the jury in this cause, to decide the fate of the Appellant, to which is a (32) year old, white male.

8. Whether the trial judge erred in denying the Appellant from dismissing Jesse Ford, after the jury selection, but before the state began to present testimony for this cause. (NOTE: conflict of interest) [See: T.C.A. § 23-2-101 (5) ].

9. Whether the Appellant lost presumption of innocence, during the jury selection / individual voir dire stage. State v. Grace, 493 S.W.2d 47 476 (Tenn. 1973).

10. Whether the trial judge erred in allowing the Appellant to obtain medical records from the center for child development center, in order to rebutt the childrens claim, that; Appellant did not baby-sit them, during the trial for this cause, or allow him to get the records to present his attorneys to submit into evidence.

11. Whether the trial judge erred in NOT holding a pretrial evident-iary hearing, for the Appellants Habeas corpus pleading, federal court docket # 3:96-0940, & Sixth circuit # 96-6524, Henderson Co. No.# ? .

12. Whether the trial judge erred in refusing to dismiss the indictment, for the alleged errors at the preliminary hearing, pursuant to Rule 5, of the Tenn. R. Crim. P., Haugh v. State, 564 S.W.2d 654

13. Whether the denial of discovery of at least the prima facie, portion of the states case necessary to establish probable cause, will amount to reversible error, at a preliminary hearing. Note: Tenn. R. of Crim. P., Rule 5.9, Nolan v. State, 568 S.W.2d 837.

14. Whether trial judge erred in dismissing the indictment, because the state advanced its case upon illegally obtained evidence at the preliminary hearing, to which the Magistrate made PLAIN ERROR, when the judge bound over the appellant on the illegally obtained evidence, and the said evidence was printed in the local news, in violation of the Appellants Fourth, Fifth, Sixth, and Fourteenth U.S. Constitution Amendments.

2.

MOTION FOR NEW TRIAL / AMENDMENT PRO-SE

15. Whether the trial judge erred in providing a fair and speed trial for the Appellant, to which the appellant was denied (2) two witnesses, Jeff Hall, & Herman Mckinney, in this matter, NOTE: Brothe and next door neighbor, to which had first hand knowledge of the alleged incident, and the main caregiver to the children, while the descendant worked 7:00 P.M. to 7:00 A.M., 3 days one week, and four the alternating week, plus overtime routinely, while attending Jackson State Community College, Mon., Wed., and Fri., 8:00 A.M. to approx. 3:30 P.M. for (2) years.

16. Whether the trial judge erred in changing the county of venu without the Appellants consent, and over his objection.

17. Whether the trial judge properly permitted flight to be used as an aggravating circumstance. See: State v. Williams, 690 S.W.2d 517 533 (Tenn. 1985).

18. Whether the trial judge erred in refusing to allow Appellant to make a statement before the sentence was read, to place on the record any and all claims of error, for appeal purposes.[See: T.C.A. § 2

Respectfully submitted,

Sworn before me the 29 day of Feb 1997.
Notary Public _Howard Wayne Bandon_ ][ _Jon Hall_
My Comm. Exp. _My Commission Expires JULY 24, 1999_    JON HALL / APPELLANT

COUNSEL FOR APPELLANT ?

---

CERTIFICATE OF SERVICE

I _Jon Hall_, hereby certify that I have sent a true and exact copy of the foregoing motion to; 26th Dist. Atty. Jerry Woodal; P.O. Box 2825, Jackson Tenn. 38302; Office of the State Atty. General 450 James Robertson Parkway, Nash. Tenn. 37219; Office of the Clerk for the Criminal Court of Appeals, P.O. Box 909, Jackson Tenn. 388302, and his Atty. of record Clayton Mayo, P.O. Box 1625, Jackson Tenn., 38302. On this the 3Rd day of March 1997, by U.S. 1st class mail.

3.

COV - EXHIBIT [L]

IN THE CRIMINAL COURT OF APPEALS
AT JACKSON TENNESSEE

JON HALL                            )
    APPELLANT                       )   26th JUDICIAL DIST., DIV. I
                                    )   HENDERSON CO. NO. # 94-342
V.                                  )   MADISON CO. # 96-589
                                    )   C&C.A. NO. # _____
STATE OF TENNESSEE                  )
    APPELLEE                        )

**FILED**
MAR 05 1997
JOE GAFFNEY, CIRCUIT COURT CLERK
DEPUTY CLERK
A.M.

---

MOTION FOR NEW TRIAL / PRO-SE / AMENDMENT

---

The Appellant _Jon Hall_, hereby swears under the penalty of perjury that the foregoing statement of facts are true to the best of his knowledge belief, and ability to express such facts, as stated in his MOTION FOR NEW TRIAL / AMENDMENT. This affidavit in support, has prepared, and duly sworn to, on this the 28th day of Feb 1997.

The Appellant states;

1. That He filed exhibits no. # [26-38], in appellate brief docket 96-6624, to protect His United States Constitutional rights, under his sovereign "Flag of Peace" of America, before He was brought into the said maratime courtroom setting. Further, the Appellant let it be known that He would testify in his own behalf, if; The trial judge would, either sign the judicial contract for the guarantee of constitutional rights under U.C.C. title 3 section 501, exhibit no. # [36-38], or remove the "Flags of War", in order for the court to retain subject-matter jurisdiction.

2. That He displayed and stood behind a true and exact version of the American flag, pursuant to 4 U.S.C. title 36 section 176, and expressed his desire to testify in his behalf, if the judge would guard, and protect his rights, pursuant to article VI, §§ 3 and 4, of the Tennessee Constitution, and / or provided by T.C.A. § 17-1-106, by removing the American, and Tennessee flags with the gold braid around it, as stated in court, and by motion. (See; exhibit no. # 31, for proof).

L

COV - EXHIBIT [L]

27

193

**182**

3. That there was a conflict of interest between the Appellant, and the lead counsel, (Jesse Ford), because, there was no meaningful sense of loyalty to the Appellants interests, pertaining to pre-trial issues, (Motions, Venue, Jury selection, discovery, & Witnesses),, inste there was a strong sense that Mr. Ford was sympathetic to the Courts and the Prosecutors position on these issues, and failed to assert th proper attention to the Appellants requests in this matter. Further, tl Attorney, would not confide with Him with respect to defense strategy, or insist upon his presence during the pre-trial sessions.

4. That the parents of the descendant, (Bill & Valeria Lambert), sat amongst the jury pool during the entire jury selection process, tc which, the Appellant made mention to it, but was told by Mr. Ford that, because they were not witnesses for this cause, they could sit anywhere they pleased. Note: Mr. Woodal had to have known that, this was highly prejudicial, exposing the jury pool to "extraneous prejucial information". See: T.C.A. § 22-2-310 (Irregularities - Investigation by Judge)

5. That Madison County Court Officers, forced the Appellant to wear locking leg restraints to which: The Jackson Sun stated that, "A shackled Hall, wearing gray slacks, and a light blue cotton shirt with an American flag pocket protector, seemed to grow weary of the repeated trips to the jury room during the selection process." (Note: Pg. 3A, Tuesday Febuary 4, 1997 edition).

6. That he tried to have jurors removed for cause, (1) for 'her association with Jackson Madison County Hospital, (last place of employ- ment of the deceased, and (2) for her participation in a domestic violence incident, to which was overlooked / ignored during the voir dire process.

7. That He did not want to be tried by a jury of (11) women, and (1) black man, because it cannot be assumed that, a cross-section of the jurors from Henderson, and / or Madison Co., would consist of the exclusion of white males, esspecially on the eve of the O.J. Simpson Civil Trial / Verdict. (See: Statement of Fact, No. # 3.)

8. That He attempted to dismiss Jesse Ford, prior to the states presentation of witness, but was overruled by the trial judge.

2.

9. That before the jury was seated, the Appellants presumption c innocence, was lost, by the way the individual voir dire questioning was handled in this matter, for the qualifcatins of the prospective jurors attitude toward capitol punishment, under the guidelines stated in Witherspoon v. Illinois, 391 U.S. 510 (1968). SEE ALSO: Tennessee constitution, in its Declaration of Rights, Article 1 Section 6, whic declares that; the right of trial shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors.

10. That He tried to obtain the medical records from the center for child development, date 4/3Q/92 & 6/15/93, to present to either His Attorney, or the Court, during a jury out session, but was deni access to said records by both Madison County jailer, officer Reed, during court break, (lunch) and by trial judge Whit Lafon, upon a open court, (jury out) session, prior to the re-convening after lunch. Therefore, prejudicing the Appellant from presenting important evidence, that would enlighten the jury as to how much the testimony of the states (3) minor witnesses has been impaired, (competency issue), or instructed to inflame the passions, (used as a victim impact statement, rather than an admission of relevant evidence) to persuade the jury to convict the accused of FIRST DEGREE MURDER.

11. That He has submitted Habeas Corpus petition, (federal court docket no. 3:96-0940) (T.D.O.C. legal mail postage withdrawal form no. 78754) to the Henderson Co. Court, to preserve & prevent the court from overlooking the errors that occurred during the "critical stages" in order to protect and eliminate prejudicial errors, from inflicting an erroneous judgement against him. NOTE: SEE: Griffin v. Illinois, 351, U.S. 12, 76 S.Ct. 585, 100 L.ed. 891 (1956). "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." (Three-day Capitol case, including selection of jury, guilt innocence, & sentencing proceedings).

12. That He has filed all of the motions included in the Habeas Corpus petition, and appeal, because, the public defenders assigned to His case were assumptively pre-occupied with other matters, and allowed the Magistrate to make "PLAIN ERROR" pertaining to His Fourt, Fifth, Sixth, & Fourteenth U.S. Const. Due Process, & Equal Protection rights.

3.

13. - 14. That States witness was impeached during the prelimi
hearing, in this matter, (See: exhibit "A" pg. 6., for miranda i
& See; cross-exam of same issue on pg. 10.) because, he knew th
failed to secure waiver, and that appellant had requested the ass
of an attorney, and tried to make a "co-erced, custodial interrog
into a "voluntary spontaneous statement" in order to prevent the c
from having an accurate version of the states (3) minor eyewitnes
prejudice the defendant from having discovery, and prepare the chil
to support the states argument for FIRST DEGREE MURDER.

Further, as pointed out in Habeas corpus petition exhibit "C"
the state was allowed to advance their case based upon the illega
obtained confession, in violation of the Tenn. R. Crim. P. Rule 5
Waugh v. State, supra, and said evidence was printed in the local
and surrounding counties newspaper, on Aug. 23, 1994, before the G
Jury convened in this matter on Oct. 6, 1994, in violation of the
the Appellants Fourth, Fifth, Sixth, and Fourteenth U.S. Const. Due
Process, and Equal Protection rights.

15. The Appellant was prejudiced by several things that should
have, and could have been eliminated had he had the services of a
competent attorney at a critical stage. Two witnesses in this matter
Jeff Hall 1/29/56 - 7/4/95, and Herman mckinney, D.O.B. and passing
unknown, died before giving testimony in this matter.

Further the Appellant adds that Herman Mckinney, (next door neig
and eyewitness to incident), knew who was the primary caretaker of
the children, and would have been able to substantiate the claims of
the Appellant now states as true, that the Appellant stayed at home,
as the (4) childrens guardian from the end of 1991-1993, (full time)
as shown by the medical records from the child development center, a
up to march of 1994, as the main caregiver, for the children at
night, while the mother worked the 7:00 P.M. to 7:00 A.M. shift, als
the Appellant states that He watched the children as much as needed
up to and including July of 1994. Further the Appellant contends that
in conjunction with what the children say about daycare, and a baby-
sitter, (Jessica), was the only one enrolled in a daycare facility, &
that the next door neighbor was the babysitter (Pam Foreman), only
when school let out in 1994, and occassionally on evenings in 1994,
because she was a minor herself (14). Therefore, the Appellant states
he was the primary caregiver of the minor children.

4.

13. - 14. That States witness was impeached during the prelimir
hearing, in this matter, (See: exhibit "A" pg. 6., for miranda is
& See; cross-exam of same issue on pg. 10.) because, he knew th
failed to secure waiver, and that appellant had requested the ass:
of an attorney, and tried to make a "co-erced, custodial interrog:
into a "voluntary spontaneous statement" in order, to prevent the <
from having an accurate version of the states (3) minor eyewitness
prejudice the defendant from having discovery, and prepare the chil
to support the states argument for FIRST DEGREE MURDER.

Further, as pointed out in Habeas corpus petition exhibit "C"
the state was allowed to advance their case based upon the illega
obtained confession, in violation of the Tenn. R. Crim. P. Rule 5
Waugh v. State, supra, and said evidence was printed in the local
and surrounding counties newspaper, on Aug. 23, 1994, before the G:
Jury convened in this matter on Oct. 6, 1994, in violation of the
the Appellants Fourth, Fifth, Sixth, and Fourteenth U.S. Const. Due
Process, and Equal Protection rights.

15. The Appellant was prejudiced by several things that should
have, and could have been eliminated had he had the services of a
competent attorney at a critical stage. Two witnesses in this matte.
Jeff Hall 1/29/56 - 7/4/95, and Herman mckinney, D.O.B. and passing
unknown, died before giving testimony in this matter.

Further the Appellant adds that Herman Mckinney, (next door neig
and eyewitness to incident), knew who was the primary caretaker of
the children, and would have been able to substantiate the claims o
the Appellant now states as true, that the Appellant stayed at home
as the (4) childrens guardian from the end of 1991-1993, (full time
as shown by the medical records from the child development center, i
up to march of 1994, as the main caregiver, for the children at
night, while the mother worked the 7:00 P.M. to 7:00 A.M. shift, al
the Appellant states that He watched the children as much as needed
up to and including July of 1994. Further the Appellant contends tha
in conjunction with what the children say about daycare, and a baby-
sitter, (Jessica), was the only one enrolled in a daycare facility,
that the next door neighbor was the babysitter (Pam Foreman), only
when school let out in 1994, and occasionally on evenings in 1994,
because she was a minor herself (14). Therefore, the Appellant states
he was the primary caregiver of the minor children.

4.

NOTE: Clerk has placed (2) two page (4) four in this technical record (mistake).

COV - EXHIBIT [L]

16. That He never consented to a change of venue to Madison
County, and told His Attorneys that: If the trial judge was not
going to permit a change of venue (approx. 100 miles minimum), from
Henderson Co., (jackson sun and WBBJ) news area, hold the trial in
Henderson County, as opposed to where the news was being transmitted

17. That He did not commit the alleged act with premeditation,
and there was not an attempt to steal anything, and the Appellant
has a legal claim of right to the alleged stolen vehicle, because,
it was purchased at His previous place of employment, He made payment
on the vehicle, and was still married to the owner, He had and His
own keys to the van, and was insured and listed as a driver, on
the state farm insurance agency in Mckenzie Tennessee. Further, the
Appellant did not commit the ALLEGED first degree murder, during fil

Therefore, the appellant contends that Flight should not have be
used as an aggravating circumstance, to which in reality, serves no
aggravating circumstance to warrant the imposition of the death penal
and does not believe that it was applied to this case properly, in
which the legislators intended to be used to warrant capitol punishme
6

Wherefore, the affiant Jon Hall, contends that for the enclosed
stated reasons, that this Honorable Court, should review these issues,
in order to render a fair verdict, or at least, remand this case,
back to the Circuit Court for new trial, and appoint a neutral defen
attorney without any political affiation with the 26th Judicial Distric
in order for the Appellant to get a fair and impartial trial, in
this matter, (as far from the false prejudicial publicity as legally
possible) Further the affiant saith not:

Respectfully submitted,

_Jon Hall_

Affiant / Appellant Jon Hall

SWORN AND SUBSCRIBED BEFORE ME THIS THE 28TH DAY OF FB 1997.
NOTORY PUBLIC _____
MY COMMISSION EXPIRES 23 SEP 2000

5.

IN THE CIRCUIT ~~FILED~~ OF MADISON COUNTY, TENNESSEE

STATE OF TENNESSEE,

VS.                                              No. 96-589

JON HALL,

_____

MOTION TO ALLOW COUNSEL AND CO-COUNSEL TO WITHDRAW

_____

Comes now Jesse H. Ford, III and Clayton F. Mayo and move the
Court to allow them to withdraw as attorneys of record in the above
matter and would state in support of said motion as follows:

1.    Attached hereto and incorporated herein as Exhibit 1 to
the motion is a recent correspondence from Jon Hall.

2.    The correspondence indicates that he does not want co-
counsel to continue with his representation and that he is highly
dissatisfied with counsel's representation.

3.    Based on the foregoing counsel and co-counsel request an
order of this Court allowing them to withdraw as attorneys of
record in the above styled matter.

Dated, this the 6th day of March, 1997.

                              Respectfully submitted,


                              JESSE H. FORD, III   009775


                              CLAYTON F. MAYO   014138

                              Attorneys for Defendant
                              P. O. Box 1625
                              Jackson, TN  38302-1625
                              (901) 422-1375


CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing
was served on Mr. Al Earls, Assistant District Attorney, P. O. Box
2825, Jackson, Tennessee 38302 and Mr. Jon Hall, R.M.S.I. J-2-A-
110, 7475 Cockrill Bend Ind. Rd., Nashville, Tennessee 37209-1010
by mailing the same with sufficient postage to insure proper
delivery this the 6th day of March, 1997.

JON HALL

R.M.S.I.  U-2-A-110

7475  Cockrill  Bend  Ind.  Rd.

Nash.  Tenn.  37209-1010

Clayton  Mayo

618  N.  Highland

P.O.  Box  1625

Jackson  Tenn.  38302

To  Clayton  Mayo;

    Dear  Sir,  enclosed  you  will  find  six  motions  that  I  want  filed
in  my  behalf;  (1)  Notice  of  Appeal  (2)  Motion  for  preservation  of
records / evidence  (3)  Motion  for  transcript  of  prior  trial  (4)  Motion
for  Judgement  of  Acquittal  (5)  Motion  in  Arrest  of  Judgement  (6)  The
Pro-Se  Amendment / Motion  for  New  Trial.  I  will  be  sending  them  to
the  addresses  listed  on  the  certificate  service,  on  the  same  day  I
send  you  these  six  motions  and  this  letter.  Please  sign  them  and
file  them  on  record.

    As  you  know  I  was  displeased  on  how  Jesse  Ford,  presented  a
defense  for  me.  It  does  not  take  a  genius  to  figure  out  that  Jesse
Ford  was  not  acting  in  my  best  interests.  I  know  you  said  that  you
were  not  able  to  present  motions  etc.  on  my  behalf,  because  he  was
the  lead  counsel.  Well  I  do  not  intend  on  having  Jesse  Ford  represent
me  on  a  public  drunk  charge,  much  less  my  appeal.  He  failed  to  ask
important  questions  like,  to  Byrd,  Whose  maps  were  they  in  the  car ?
A.  THE  SMITH'S;  2.  Why  didn't  he  question  byrd  more  about  my  shoes ?
Byrd  stated  at  the  preliminary  hearing  that  he  took  shoes  into  evidence
Byrds  memory  sucked  at  the  pre-lim,  and  I  believe  it  was  selectively
bad  when  anything  we  needed  to  get  in.  (I  Know),  he  had  also  told
me  he  was  going  to  get  the  deputy  from  Bell  Co.  Texas  to  testify,
Where's  them  records ?  3.  Why  didn't  he  ask  Randy  anymore  questions ?
Randy  could  have  cleared  up  the  van  pymt.  issue,  He  also  knew  that
I  picked  up  a  clutch  on  tues.  and  borrowed  a  floor  jack,  to  install
it,  to  which  he  went  out  later  and  pulled  it  out  from  under  the
car  proving  that  I  was  out  at  the  house  several  days  that  week  to
to  work  on  the  white  lebaron.  He  could've  asked  the  girls  that  also.
He  could've  asked  brenda / dawn  who  watched  the  girls  almost  all  the
time,  even  when  we  lived  in  Hunt.  &  when  they  visited  me  at  lexington

1.

I could go on & on, esspecially not digging deeper into why cindy said I pushed my way in when he knew that I called before went out, he could have proved that Jerry Woodal, was soliciting false testimony, I wonder if its because he threw my case, and d want anything pertaining to the truth come out. I KNOW, that was sorryest trial advocacy litigation that I have ever seen. I could represented myself better on august 23, 1994, after my preliminary, before being treated for depression. If you really care, you will show me by getting me my records that I have requested several ti along with a copy of this trial transcript, motion hearings transcr (which have to be included into the record for appellate review)... So I can point out the errors, that Jesse Ford, enjoyes inserting into this case. If not I do not feel that you are going to repr me effectively, pertaining to the truth. I'm hesitant to even allow you to represent me because you sat there and didn't make Jay act right. Although for some reason, I don't feel that; Jay did the ri thing, in presenting a purported defense, without its reality. But i you don't want the obligation, I don't blame you, just let me know Just please sign my six motions, and make sure Jesse Ford Stays ou of my case, I can't deal with BENEDICT ARNOLD, anymore... I'll just keep on filing my motions pro-se, & complain to the B.O.P.R. until I get an atty. to present a proper defense, and waste every tax pa dollar I can, until someone listens to the truth...

Well this isn't very professional, but it explains to you why I feel the way I do, not to mention, not mentioning anything to me about Chris Dutton, until he testified, thats like him failing to impeach Byrd with the pre-lim transcript, or giving me records to mak a defense, since I've been here in Nash., Clay I gotta go before I start really expressing my discontent with Ford, for not presenting my case, and holding Jerry Woodal's hand to give me the DEATH SENTENCE, I hope he feels as good as I do about Billie, not being here, and my girls not having parents, and brainwashing my kids to lie against me for your political cause. MAY GOD HAVE MERCY ON THE DECEIVERS, WHEN THEIR TIME HAS COME. Psalm 31, in Jesus name I Pray, Amen.

Jon Hall

Sworn before me this the 24 day of Feb. 1997.
Notory Public Herbert Wayne Crowder
My Commission expires My Commission Expires JULY 24, 1999

COV - EXHIBIT [M]

35

201

190

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE

STATE OF TENNESSEE,

VS.                                                    No. 96-589

JON HALL,

FILED
MAR 27 1997
JOE GAFFNEY, CIRCUIT COURT CLERK
DEPUTY CLERK
A.M.

---

ORDER OVERRULING MOTION FOR COUNSEL TO WITHDRAW

This matter came on for hearing on this the 20th day of March, 1997, before the Honorable Whit S. LaFon, Judge, on the motion of Jesse H. Ford, III and Clayton F. Mayo that they be allowed to withdraw as counsel of record in the above matter.  The Court finds that the motion is not well taken and overrules the same.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that the motion to withdraw as counsel of record is hereby overruled and denied.

ENTER, this the _27_ day of _March_, 1997.

_____
WHIT S. LAFON, Judge

APPROVED FOR ENTRY:

_____
AL EARLS
Assistant District Attorney
P. O. Box 2825
Jackson, TN  38302

_____
CLAYTON F. MAYO
Attorney for Defendant
P. O. Box 1625
Jackson, TN  38302

_____
JESSE H. FORD, III     009775
Attorney for Defendant
P. O. Box 1625
Jackson, TN  38302

COV - EXHIBIT [N]

216
191

ARGUMENT

I.   DID THE TRIAL COURT LOOSE JURISDICTION OF THE OFFENSE IN THE COURSE OF THE PROCEEDINGS
     DUE TO THE FAILURE TO AFFORD DUE PROCESS ?

On October 3, 1994, the Grand Jury of Henderson County indicted Jon Douglas Hall for the
premeditated murder of Billie Jo Hall. See: e.g., Indictment at Technical Record, page 2. The
Circuit Court of Henderson County acquired jurisdiction pursuant to T.C.A. § 16-10-102 (Criminal
jurisdiction); and T.C.A. § 41-1-108 (Original jurisdiction).

Article I, section 9, of the Tennessee Constitution grants an accused criminal defendant
the following:

> "That in all criminal prosecutions, the accused hath the right to be heard by himself
> and his counsel; to demand the nature and cause of the accusation against him, and to have
> a copy thereof, to meet the witnesses face to face, to have the compulsory process for
> obtaining witnesses in his favor, and in prosecutions by an indictment or presentment, a
> speedy public trial, by an impartial jury of the county in which the crime shall have been
> committed, and shall not be compelled to give evidence against himself."

This article of the Tennessee Constitution has been interpreted to require that the accused
be tried in the county in which the crime is alleged to have been committed. See: e.g., Chadwick
v. State, 296 S.W.2d 857, 859 (Tn. 1956).

In June of 1995, Mr. Carthel Smith and Mr. Mosier filed over fifty pretrial motions on
Mr. Hall's behalf prior to meeting with Mr. Hall, including a Motion For A Change Of Venue,
(without an affidavit). See: e.g., Affidavit Supporting Denial Of Due Process And Improper Waiver
Of Trial In Henderson County, Change Of Venue EXHIBIT [A], pages 01 - 02 (Counsel's Motion For A
Change Of Venue). On July 10, 1995, Assist District Attorney Mr. Alfred Earl's, filed the State's
Response To Motion For A Change Of Venue citing (3) three grounds in opposition to the change of
venue. See: e.g., Change Of Venue EXHIBIT [B], page 03 (State's Response To Motion For A Change
Of Venue).

- 1 -

COV - EXHIBIT [0]

On November 8, 1995, a pretrial evidentiary hearing was held to address the merits of over (50) fifty motions filed by attorneys Mr. Smith and Mr. Mosier, including DF-MOT # 15, Motion For A Change Of Venue, which was denied by the Court. See: e.g., Change Of Venue EXHIBIT [C], listed as pages 04-07 (Court's denial of Motion For A Change Of Venue - Denied / no affidavits).

On April 9, 1996, Mr. Hall was transported to Madison County because his counsel filed a motion in Henderson County Court to have Mr. Hall brought to the Madison County Court for a hearing regarding a transfer of custody to one of the local jails for trial preparation. See: e.g., Change Of Venue EXHIBIT [D], listed as page 08 - 09 (Motion - transfer Hall's custody).

When Mr. Hall was at the evidentiary hearing on counsel's motion to transfer custody to a local jail for trial preparation, he had an opportunity to meet with counsel before the hearing and asked them, "why is this motion hearing being held at Madison County in Jackson, Tennessee ?" Mr. Ford and Mr. Mayo informed him of the following information: (1) that only the pretrial hearings were going to be heard in Madison County; (2) that the hearings being held in Jackson as a matter of convenience; and (3) the reason it was a matter of convenience to hold these hearings in Jackson was, because all the Officers of the Court have their main office in Madison County, at Jackson, Tennessee.

During the discussion with counsel on April 9, 1996, Mr. Hall orally expressed his dislike to the Madison County forum. Mr. Hall informed Mr. Ford and Mr. Mayo, that: (1) if Madison County was going to be considered as the locality of the trial, then to leave the change of venue issue alone; (2) he did not want to be tried in Madison County; (3) that Billie Jo Hall had worked at the ambulance service in Jackson; (4) that Randy Helms (witness / Mr. Hall's ex-boss) was a distinguished and well liked owner / operator of the local Chrysler dealership in Lexington whose word would go far in Henderson County; and (5) the Jackson Sun was the local news media creating most of the false adverse publicity in this case.

- 2 -

COV - EXHIBIT [O]

38

On August 30, 1996, Mr. Hall filed a Motion For Defendant's Presence During All Proceedings Held, in hope that he would be included in all of the proceedings held in order to protect his constitutional rights. See: e.g., Change Of Venue EXHIBIT [E], listed as page 10 (Motion For Defendant's Presence During All Proceedings Held).

**i. Did Counsel Abide By Hall's Decisions Regarding The Objectives Of Representation ?**

On September 3, 1996, without Mr. Hall's knowledge or consent, Jesse Ford filed a Motion To Renew Motion For A Change Of Venue (within the 26TH Judicial District). The motion didn't have a supporting affidavit as required by Tenn. R. Crim. P., Rule 21 (b), nor did it state any new grounds to request a change of venue. See: e.g., Change Of Venue EXHIBIT [F], listed as page 11 (Motion To Renew Motion For A Change Of Venue).

That attorney's Mr. Ford and Mr. Mayo did not: (1) try to obtain a written consent / waiver form before he decided to abandon Mr. Hall's constitutional right to a trial in Henderson County; (2) contemporaneously inform and / or send Mr. Hall a copy of counsel's Motion To Renew Motion For A Change Of Venue in September of 1996; and (3) did not inform him that the Court had granted a change of venue until January 21, 1996. See: e.g., Mr. Ford's Atty. Work Product (Supplemental Motion For A Change Of Venue - unsigned affidavit / consent form of Jon Hall), listed as EXHIBIT [G], pages 12 - 16.

Instead of acting adversely towards defense counsel's motion for a change of venue (without any supporting affidavits), the Assistant District Attorney Mr. Alfred Earls, responded to Mr. Ford's motion on September 6, 1996, by filing a Motion To Determine Prior To Trial Competency Of Witnesses. This motion was submitted directly to the Madison County Court jurisdiction before the court decided to grant a change of venue on Sept. 16, 1996, without holding an evidentiary hearing. See: e.g., Change Of Venue EXHIBIT [H], listed as page 17 (Motion To Determine Prior To Trial Competency Of Witnesses).

- 3 -

COV - EXHIBIT [0]

After consultation, a criminal lawyer is required to abide by his client's decision, as to the plea to be entered, whether to waive jury trial and whether the client will testify. See: e.g., Tegue v. United States, 953 F.2d 1525, 1533-1534 (1992). Also the lawyer is required to abide by a client's decision concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued. Id. So, the accused has the ultimate authority to make certain fundamental decisions ... whether to plead guilty, waive a jury, testify ... or take an appeal .... See: e.g., Barnes v. Jones, 103 S.Ct. 3308, 3312 (1983). Thus the record indicates, that Mr. Ford did not abide by his client's decision to leave the change of venue issue alone and in a collusive manner, waived Mr. Hall's personal privilege to a trial in Henderson Co. See: e.g., State v. Brown, 64 S.W.2d 841 (Tn. 1933).

**ii.   Did The Trial Court Abuse Its Discretion By Failing To Afford Mr. Hall Due Process Rights ?**

The trial court abused its discretion when it: (1) assumed from the silent record that Mr. Ford invoked the wishes of his client to abandon the right to a trial in Henderson County; (2) failed to make a careful determination that Mr. Jon Hall had personally made a knowing and intelligent decision to waive his right to a trial in Henderson County; and (3) granted Mr. Jesse Ford's Motion To Renew Motion For A Change Of Venue, without holding an evidentiary hearing. See: e.g., Change of venue EXHIBIT [I], Order - granting change of venue filed Sept. 23, 1996, listed as page 18; or Technical Record, page 152.

According to T.C.A., Volume 4, (1997 Supp.), § 20-4-203 (Application for a change of venue), "The change of venue is not a matter of arbitrary discretion resting upon some uncontrollable whim, caprice, or possible bias of the judge, but is a judicial act to be performed in the mode presented by law and in no other mode." Weakley ex rel. Ussery v. Pearce, 52 Tenn. 401 (1871). "The correct practice is to hear witnesses for and against a change of venue, in open court, or to cause their depositions to be taken as in any other case, and affidavits in opposition." Id.

- 4 -

COV - EXHIBIT [0]

40

1 9 5

The Court has assumed that, even where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation reasonably substantial, to the fullness of his opportunity to defend against a charge." See: e.g., Snyder v. Massachusetts, 54 S.Ct. 330, 332 (1934).

To demonstrate the denial of this right, Mr. Hall asked RMSI, U-2 Mgr. Mr. James Croody, to check the records for the month of September of 1996, when the court granted a change of venue. Mr. Croody responded to this request by providing a computer printout that indicates Mr. Hall's whereabouts during the month of Sept. in 1996. The computer printout proves that: (1) Mr. Hall was in State custody, being held as a pretrial detainee at the TDOC / RMSI facility in Nashville, Tennessee during the month of September in 1996; and (2) Mr. Hall was not transported anywhere during the month of September 1996, (when the court granted a change of venue). See: e.g., Change Of Venue EXHIBIT [J], TDOC / RMSI computer printout arrival / departure sheet, listed as page 19.

**iii. Did The Court Err When It Assumed Counsel Invoked The Wishes Of The Client To Waive Venue ?**

The right to trial by an impartial jury of the county in which the crime shall have been committed is fundamental to the American Scheme of justice. See: e.g., Tennessee Constitution, Article 1, § 9; and U.S.C.A. Const. Amend. 6. The right of the accused to object to locality of trial is a personal privilege. See: e.g., State v. Brown, 64 S.W.2d 841 (Tn. 1933).

A written waiver by a defendant is intended to impress upon a defendant the significance of the right relinquished and provide evidence of his consent to forego that right. Although an oral stipulation on the record may satisfy the rule absent a written waiver, it must appear from the record that the defendant personally gave express consent in open court. See: e.g., United States v. Taylor, 498 F.2d 390, 392 (6th Cir. 1974).

- 5 -

COV - EXHIBIT [O]

41

196

The waiver of any constitutional right is always a very serious matter and should only be accepted after a careful determination by the trial court that the waiver was knowingly and intentionally made. See: e.g., Estrada v. United States, 457 F.2d 255, 256 (7th Cir. 1972). The finding of waiver by the trial court may not be assumed by a silent record, nor may it be implied. See: e.g., Patton v. United States, 50 S.Ct. 253, 263 (1930). CITED: State v. Ellis, 953 S.W.2d 216, 221 (Tn. Cr. App. 1997).

Instead of supporting Mr. Hall's objection to the Court's usurpation of jurisdiction in Madison County, Mr. Ford acted in furtherance of his improper waiver of Mr. Hall's fundamental rights to a trial in Henderson County, by entering a plea on behalf of Mr. Hall. Nevertheless, Mr. Hall did not participate in the proceedings by testifying and was ultimately prejudiced from being able to rebut the State's erroneous theory of premeditation. See: e.g., Transcript Of Evidence, Vol. I, page 179 (not guilty plea entered by Mr. Ford on behalf of Mr. Hall). See also: Volume III., pages 347 – 349, (guilt phase – decision not to testify); and Vol. IV., pages 435 – 436 (sentencing phase – decision not to testify).

Some cases hold that one accused of a felony must plead in person, and that plea of not guilty by counsel, whether in absence or presence of accused is a nullity. See: e.g., State v. Moore, 49 S.E. 1015, 57 W.Va. 146. CITED: C.J.S. Volume 22, § 452.

It cannot be implied, that Mr. Hall acquiesced the change of venue by failing to protest. Before a jury was selected in Madison County on February 3, 1997, Mr. Hall personally voiced his objection to the change of venue. The transcript indicates Mr. Hall stated, "I'm not trying to disrupt the court, but I can't understand why we're holding this hearing in Madison County when I was charged in Lexington." See: e.g., Change Of Venue EXHIBIT [K], listed as pages 20–21.

- 6 -

COV - EXHIBIT [o]

42

197

Mr. Hall explained to the Court: (1) that it was not right for the court to change the venue "ex parte;" (2) that the last time Mr. Hall had heard about the change of venue was on Nov. 8, 1995, when the court said it would consider a change of venue if the circumstances changed, or if a problem developed with a jury in Henderson County; (3) that Mr. Ford did not renew a change of venue on Mr. Hall's behalf; (4) that Mr. Smith and Mr. Mosier, were no longer on this case, therefore their motion for a change of venue was irrelevant; (5) he wanted the court to move the trial back to Henderson Co.; and (6) that Mr. Hall would not be joining with this Court.

That the transcript provided by Court Reporter, Ms. Amy Mays, is not a verbatim reproduction of all the testimony presented during the in-chambers conference on February 3, 1997 in regards to the change of venue issue. The omission of this pertinent testimony from the record is a fraud upon the Court and a bad faith endeavor to deprive Mr. Hall of the appropriate means to avail himself of the attorney's improper waiver and the Court's abuse of discretion on appeal.

CONCLUSION

There can be no effective waiver of a fundamental constitutional right unless there is "an intentional relinquishment or abandonment of a known right or privilege. See: e.g., Johnson v. Zerbst, 58 S.Ct. 1019, 1023 (1938). The Court's jurisdiction was lost in the course of these proceedings due to the failure to afford due process. Id. at 1023-1024. CITED: State ex. rel. Anglin v. Mitchell, 575 S.W.2d 284 (Tenn. 1979).

Trial court improperly transferred the situs of trial, over defendant's objection, from county in which crimes were commited to different county. The appellant's conviction is void. See: e.g., State v. Upchurch, 620 S.W.2d 540 (Tenn. Crim. App. 1980).

The full faith and credit clause does not prevent inquiry into whether a judgement may be founded on, and impeachable for, a manifest fraud. U.S.C.A. Const. Article 4 § 1. See: e.g., Cole v. Cunningham, 133 U.S. 107, S.Ct. 269, 33 L.Ed. 538 (1890).

- 7 -

COV - EXHIBIT [0]

43

1̇98

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

MADISON COUNTY AT JACKSON, TENNESSEE

JON DOUGLAS HALL,                     *

    PETITIONER,                   *

                        *

Vs.                                   *  CASE NO. COO-422-I
                              *  (DEATH PENALTY CASE)

STATE OF TENNESSEE,                   *

    RESPONDENT.                   *

FILED
JUDY BARNHILL, CIRCUIT COURT CLERK
NOV 01 2001
DEPUTY CLERK
A.M. 12:35 P.M.

<u>AFFIDAVIT TO SUPPORT DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL & APPEAL</u>

STATE OF TENNESSEE
             -SS-
COUNTY OF DAVIDSON

    I _Jon Douglas Hall_____, BEING DULY SWORN ACCORDING TO LAW, HEREBY STATE THE FOLLOWING:

1. ON JANUARY 15, 1999, THE PETITIONER / AFFIANT (HEREINAFTER REFERRED TO AS MR. HALL) SUBMITTED A GRIEVANCE TO THE TENNESSEE DEPARTMENT OF CORRECTIONS (TDOC) AT THE RIVERBEND MAXIMUM SECURITY INSTITUTION (RMSI), TO ALERT THE GOVERNMENTAL ENTITY THAT SEVERAL INMATES WERE EXPERIENCING AN ONGOING PROBLEM WITH THEIR TELE-PHONE SYSTEM.

2. THE TDOC's INTERNAL AFFAIRS OFFICER, MR. BILL MCCLESKY ACKNOWLEDGED THAT THERE WAS A STATE WIDE PROBLEM WITH THE PHONE SYSTEMS, AND MR. HOWARD BRANDON THE GRIEVANCE CHAIRPERSON GAVE THE FOLLOWING RESPONSE AND / OR REASON TO MR. HALL's GRIEVANCE: "CONCUR WITH SUPERVISOR's RESPONSE. GRIEVANCE IS DEEMED INAPPROPRIATE DUE TO MORE THAN ONE (1) SUBJECT OR INCIDENT."

3. THAT MR. HALL APPEALED THE CHAIRPERSON's RESPONSE TO: (1) WARDEN RICKY BELL, WHICH AGREED WITH MR. BRANDON's PROPOSED RESPONSE TO MR. HALL's GRIEVANCE ON JANUARY 27, 1999; AND (2) THE ASSISTANT COMMISSIONER OF OPERATIONS, MR. JIM ROSE, WHICH DENIED THE APPEAL WITHOUT COMMENT ON FEBRUARY 8, 1999. <u>SEE</u>: E.G., MR. HALL's INSTITUTION GRIEVANCE NUMBER 99-0151 OR TOMIS GRIEVANCE NUMBER (86632) (LISTED AS EXHIBIT A, PAGES 1 THRU 5).

- 1 -

4. ON FEBRUARY 24, 1999, TDOC INTERNAL AFFAIRS OFFICER, MR. BILL McCLESKY SENT MR. HALL A NOTICE THAT THE STATE WAS NOT ABLE TO VALIDATE HIS ATTORNEY, MR. MARK DONAHOE'S PHONE NUMBER, AND FOR THIS REASON THE STATE HAD MR. DONAHOE'S PHONE NUMBER BLOCKED FROM MR. HALL'S APPROVED CALL LIST. NOTE: THE PHONE BLOCK CREATED A SITUATION BEYOND MR. HALL'S CONTROL TO RECTIFY, AND THE STATE WOULD ONLY ACCEPT THE ATTORNEY'S COOPERATION, WHICH DID NOT OCCUR AS SHOWN BY DOCUMENTARY EVIDENCE.

5. ON FEBRUARY 24, 1999, MR. HALL FILED ANOTHER GRIEVANCE TO THE TDOC AT RMSI TO ALERT THIS GOVERNMENTAL ENTITY THAT IT HAD MADE AN EGREGIOUS ERROR BY BLOCKING ATTORNEY MARK DONAHOE'S PHONE NUMBER FROM HIS APPROVED CALL LIST.

6. ON MARCH 1, 1999, ACTING WARDEN MR. ROBERT WALLER ACKNOWLEDGED MR. HALL'S GRIEVANCE AND STATED IN PART: "UNLESS YOUR ATTORNEY MEETS THESE REQUIREMENTS THE NUMBER WILL REMAIN BLOCKED."

7. ON MARCH 9, 1999, THE CHAIRPERSON, MR. HOWARD BRANDON MADE THE FOLLOWING STATEMENT IN REGARDS TO THIS GRIEVANCE: "CONCUR WITH THE SUPERVISOR'S RESPONSE."

8. AFTER A HEARING ON THIS MATTER, MR. HALL SUPPLEMENTED THE GRIEVANCE AND APPEALED THE GRIEVANCE BOARD'S DECISION TO: (1) RICKY BELL, WHICH AGREED WITH THE BOARD'S PROPOSED RESPONSE TO DENY MR. HALL'S GRIEVANCE ON MARCH 17, 1999; AND (2) THE ASSISTANT COMM. OF OPERATIONS, JIM ROSE, WHICH DENIED THE APPEAL WITHOUT A COMMENT ON MARCH 31, 1999. SEE: E.G., A COPY OF MR. HALL'S INSTITUTION GRIEVANCE No. 99-0422 OR TOMIS GRIEVANCE No. 88516 (LISTED AS EXHIBIT R, PAGES 6 THRU 15).

9. THAT WHILE MR. HALL WAS EXPERIENCING THE PHONE BLOCK AND GOING THROUGH THE GRIEVANCE PROCESS AS PREVIOUSLY DISCUSSED, MR. HALL WAS WORKING WITH HIS ATTORNEY ON HIS ERRONEOUS CONVICTION OF FIRST DEGREE MURDER & SENTENCE OF DEATH DURING THE AUTOMATIC DIRECT APPEAL STAGE IN THE TENN. SUPREME COURT PURSUANT TO T.C.A. § 39-13-206 (APPEAL AND REVIEW OF DEATH SENTENCE).

10. THAT SHORTLY AFTER THE MARCH 17, 1999 GRIEVANCE BOARD HEARING PURSUANT TO GRIEVANCE # 99-0422, MR. HALL FOUND A FUNDAMENTAL JURY INSTRUCTION ERROR ON THE INTOXICATION DEFENSE SUBMITTED TO THE JURY. SEE: E.G., STATE V. JON HALL, 8 S.W.3D 593 FN. # 1 (TENN. 1999) (INTOXICATION IS IRRELEVANT TO THE ISSUE OF THE ESSENTIAL ELEMENT OF THE DEFENDANT'S CULPABLE MENTAL STATE / FAILURE TO RAISE THIS ISSUE IN PREVIOUS PROCEEDINGS CONSTITUTES WAIVER, AND WE DECLINE TO ADDRESS THEM AT THIS TIME. TN. R. APP. P. 3 (E); TN. R. APP. P. 36 (A)).

- 2 -

11. THE OPINION OF THE SUPREME COURT IS CLEARLY WRONG ON THE ISSUE OF WAIVER. SEE: E.G., STATE V. BROWN, 553 S.W.2D 94 (TN. 1977) (FAILURE TO APPLY INTOXICATION TO ELEMENT OF PREMEDITATION & MENTAL STATE COULD EASILY MISLEAD THE JURY. THIS IS FUNDAMENTAL ERROR); SEE ALSO: T.C.A. § 16-3-403 (RULES NOT TO AFFECT SUBSTANTIVE RIGHTS); AND STATE V. EAVES, 959 S.W.2D 601, 604-605 (TN. CR. APP. 1997) (ERROR THAT PREJUDICES JUDICIAL PROCESS, STRIKING AT FUNDAMENTAL FAIRNESS, HONESTY OR PUBLIC REPUTATION OF TRIAL, ALWAYS WARRANTS SOME MEASURE OF RELIEF, EVEN IN THE ABSENCE OF OBJECTION AT TRIAL); AND MAES V. THOMAS, 46 F.3D 979, 986 (1995) (THE PROCEDURAL RULES MUST BE APPLIED EVENHANDEDLY TO ALL SIMILAR CLAIMS).

12. THE DEPRIVATION OF ACCESS TO THE COURTS VIA THE TELEPHONE / COUNSEL HAS CREATED A PROPER CLAIM FOR POST-CONVICTION RELIEF. SEE: E.G., T.C.A. § 40-30-213 (PETITIONER UNCONSTITUTIONALLY DENIED APPEAL PROCEDURE); AND CHING V. LEWIS, 895 F.2D 608, 609 (1990) (PRISON POLICIES THAT UNNECESSARILY ABRIDGE THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO ACCESS COURTS / ATTORNEYS ARE UNCONSTITUTIONAL).

13. THIS ERROR CAN ALSO BE ATTRIBUTED TO THE LACK OF EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL. MR. HALL WANTED HIS ATTORNEY MARK DONAHOE TO SUBMIT THE JURY INSTRUCTION ERROR IN COUNSEL'S BRIEF. SEE: E.G., (MR. HALL'S MARCH 24, 1999 LETTER TO DONAHOE; "ASSERT ERRONEOUS JURY INSTRUCTION ERROR TO THE SUPREME COURT," LISTED AS EXHIBIT C, PAGES 16 THRU 21.

14. ON APRIL 29, 1999, THE SUPREME COURT SET ORAL ARGUMENTS TO BE HELD ON JUNE 2, 1999. IF COUNSEL WOULD HAVE RAISED THE ISSUE BEFORE THE CASE WAS SET FOR ORAL ARGUMENT, IT WOULD HAVE AFFECTED THE OUTCOME OF THE APPEAL. SEE: E.G., STATE V. NESBITT, 978 S.W.2D 872, 877 FN. 1, 2, & 3 (TN. 1998) (RULE 12 - RAISE ISSUE BEFORE ORAL ARGUMENT SET; AND T.C.A. § 39-13-206); SEE ALSO: CAMPBELL V. STATE, 904 S.W.2D 594, 596-97 (TENN. 1995) (PETITIONER THAT CLAIMS INEFFECTIVE ASSISTANCE OF COUNSEL CAN ESTABLISH THE PREJUDICE PRONG OF STRICKLAND V. WASHINGTON, BY A DEMONSTRATION SHOWING THAT IF A SPECIFIC ISSUE WOULD HAVE BEEN ADDRESSED PROPERLY IN THE APPELLATE BRIEF, IT WOULD HAVE AFFECTED THE OUTCOME OF THE APPEAL.

15. AS SHOWN BY MR. HALL'S MARCH 24, 1999 LETTER, MR. DONAHOE DIDN'T ABIDE BY MR. HALL'S INSTRUCTION TO HIM TO RAISE THE JURY INSTRUCTION ERROR TO THE SUPREME COURT (BEFORE THE ORAL ARGUMENT WAS SET ON APRIL 29, 1999). THE RECORD WILL SHOW THAT MR. DONAHOE WAITED UNTIL THE DAY BEFORE ORAL ARGUMENT WAS SET BY THE SUPREME COURT TO RESPOND TO MR. HALL'S MARCH 24, 1999 LETTER.

- 3 -

16. On April 28, 1999, Mr. Donahoe finally responded to the aforementioned letter that discusses the newly discovered jury instruction error regarding the intoxication defense; and (2) states that he had not requested a phone block and that he took steps trying to correct the phone problem Mr. Hall was complaining about as indicated in grievance number 99-0422. In short, Mr. Donahoe had made the ultimate decision to wait until oral arguments to present the issue to the Supreme Court, because Mr. Hall was basically held incommunicado from counsel due to the phone block. See: e.g., Mr. Donahoe's April 28, 1999 letter to Mr. Hall responding to these issues, LISTED AS EXHIBIT D, pages 22 and 23.

17. The Petitioner contends that the following allegations were not waived in a previous proceeding pursuant to the Post Conviction Procedure Act under T.C.A. § 40-30-206 (g), because: (1) trial and appellate counsel provided constitutionally inadequate assistance of counsel under Article I, § 6, 8, 9, 16, 17, and 19 of the Tennessee Constitution; (2) the actions of a governmental agency had prevented or impeded the Respondent from having adequate access to court / attorney to be able to make knowing and intelligent tactical decision(s) regarding these matters being addressed on appeal under T.C.A. § 40-30-213 (Petitioner unconstitutionally denied appeal procedure); and (3) The procedures employed by the courts in prior review of the ground(s) for relief were themselves deficient, defective, in violation of state law and / or unconstitutional.

WHEREFORE, the Petitioner _Jon Douglas Hall_ , is hereby sworn under the penalty of perjury under the laws of the State of Tennessee, that the foregoing facts and attached exhibits are true, correct, and based upon personal knowledge of the events stated herein.

## CERTIFICATE OF SERVICE

I _Jon Douglas Hall_, hereby certify that I have served a true and exact copy of the foregoing Affidavit To Support Denial Of Effective Assistance Of Counsel & Appeal, to Attorney Paul Buchanan, address: 1526 Crockett Hill's Blvd. Brentwood, Tenn. 37027, by delivering a copy of the said document to him (APRIL) during a legal visit at RMSI on this the 9th day of Oct. 2001.

XC: FILE                          - 4 -



STATE OF TENNESSEE
**DEPARTMENT OF CORRECTION**
4TH FLOOR RACHEL JACKSON BLDG.
320 SIXTH AVENUE NORTH
NASHVILLE, TENNESSEE 37243-0465

## MEMORANDUM

Inmate Name: _____Jon Hall_____         TDOC Number: __238941__

Institution: _____BMSI_____         Housing Unit: _____2_____

Institution Grievance Number: _99-0151_    TOMIS Grievance Number: __86632__

Commissioner's Response and Reasons:

The response of the Chairperson is appropriate.

In order to meet the definition of a grievance and provide for an investigation, review, and response, a complaint must specify the manner in which the grievant was affected by an alleged incident. The complaint shall not address multiple issues and must be submitted within 7 days of an alleged incident which caused to complaint to be made.

☐  Concur with Warden    ☐  Concur with Supervisor    ☒  Appeal Denied

_2/8/99_
/ Date

_Jim Rose_
Assistant Commissioner, Operations

GR-2

EXHIBIT [A] PAGE 01

8663Z

## INMATE GRIEVANCE RESPONSE

Jon Hall _____ 238941 _____ RMSI _ 2 _ 99-0151
NAME            NUMBER        INSTITUTION & UNIT   GRIEVANCE NUMBER

Summary of Evidence and Testimony Presented to Committee Grievant
is complaining about the use of phones
and Main Library.

Inmate Grievance Committee's Proposed Response and Reasons Per Policy 501.01,
grievance is deemed inappropriate due to
more than one subject. Grievant is complaining
about the phones and the Law Library.

1/26/99 _____ Anobel Scanlon _____ _____
DATE            CHAIRMAN              MEMBER

_____     _____     _____
MEMBER              MEMBER              MEMBER

=========================================================================

Warden's Response:  Agrees with Proposed Response       ☒
                    Disagrees with Proposed Response    ☐

If Disagrees, Reason(s) for Disagreement _____

_____

_____

Action Taken:
DATE   1-27-99 _____     WARDEN'S SIGNATURE   Ricky I. Bell
Do you wish to appeal this response?   X  YES _____ NO  See attached Supp.
If yes:  Sign, date, and return to chairman for processing.  Grievant may at-
         tach supplemental clarification of issues or rebuttal/reaction to
         previous responses if so desired.

Jon Hall _____     1/28/99 _____     _____
GRIEVANT              DATE                WITNESS

=========================================================================

Commissioner's Response and Reasons _____

_____

_____

_____

DATE _____     SIGNATURE _____

Distribution Upon
Final Resolution:  1.  Grievant   3.  Grievance Committee
                   2.  Warden     4.  Commissioner (if ap-
                                      plicable)
                                                            (Rev. 7/87)

— EXHIBIT [A] PAGE 02 —

204

INMATE GRIEVANCE

                                              INSTITUTION
NAME  Jon Hall                  NUMBER  238941        & UNIT  R.M.S.I. U-2

DESCRIPTION OF PROBLEM  Ongoing problem with the "Lock-Tel" telephone system. Most

recent problem $ 3:00 O'Clock P.M. January 15, 1999.  See; attached CR-1394 continuation

sheet with a list of Unit two A-Pod inmates, petitioning R.M.S.I. / T.D.O.C. for the

proper access to the phone to consult with their attorney's in this egregious situation.

REQUESTED SOLUTION  We want a more reliable phone system, like the one used by the

unit management, that does not fail every couple of days. Or have internal affairs look

into the constant deprivation of phone privileges, and other deprivation of services at

R.M.S.I., like the extremely slow law library service, from the main law library.

SIGNATURE OF GRIEVANT  _Jon Hall_    Jon Hall    DATE    January 15, 1999
===================================================================

   8 66 32             To be Completed by Grievance Clerk
  99-0151             1/19/99          _Donald Eslick_
Grievance Number        Date Received        Signature of Grievance Clerk

Inmate Grievance Committee's Response Due Date____1/28/99____

Authorized Extension_____
              New Due Date          Signature of Grievant
===================================================================
                  Inmate Grievance Response

Summary of Supervisor's Response/Evidence_____

_____

_____

Chairperson's Response and Reasons _Concurs with Supervisor_
_response Grievance is denied inappropriate due_
_to more than one subject or incident_

_____

Date _1/22/99_                  Chairperson _____

Do you wish to appeal this response?        X YES        ___NO

If yes:  Sign, date, and return to chairman for processing within five (5)
         days of receipt of first-level response.

__Jon Hall__              _1-23-99_            _____
      GRIEVANT                DATE                WITNESS

Distribution Upon  1.  Grievant  3.  Grievance Committee
Final Resolution:  2.  Warden    4.  Commissioner (if ap-

—  EXHIBIT [A] PAGE 03    —

INMATE GRIEVANCE CONTINUATION SHEET

DESCRIPTION OF PROBLEM:    (Ongoing phone problem with "Lock-Tel" telephone system)

T.C.A. § 4-5-201 (Petition / Request For Declaratory Order Against Phone Co.)

We the below listed inmates, with the sentence of death, have read Jon Hall's
January 15, 1999 Grievance on the phone system, and agree with his complaint fully.
Because, since the adoption of this phone company, we have received approximately
75 % increase in inoperative phones in this unit. We therefore, ask that R.M.S.I. /
T.D.O.C. find out and fix the ongoing problem with our phones, so we can consult
with our attorney's in an appropriate and timely manner. Note: We are also having
trouble with our access to law books from the main library — which is just another
way / form, we are being denied access to the courts to redress our complaints.
(Note: Law library is just a side issue for requested relief, for internal affairs
investigation; not grounds for dismissal of greivance of inoperative phones).

( PETITIONER'S SIGNATURE / INMATE NUMBER / DATE EXECUTED)

| | |
|---|---|
| 1. Richard Taylor | 13. |
| 2. | 14. Victor C. Cazes |
| 3. Roy Keough #276493. | 15. |
| 4. Vincent Nesbit #250488 | 16. |
| 5. | 17. |
| 6. Henry Hodges 102143 | 18. |
| 7. Tattoo EDDIE 121832 | 19. |
| 8. | 20. |
| 9. Kennath Henderson 250126 | 21. |
| 10. Jon Hall #238941 1/15/99 | 22. |
| 11. Terry Davidson 99263 | 23. |
| 12. Billy Neely #214764 | 24. |
| Robert Coe 92166 | |
| Dennis Suttles 109165 | |

CR-1394 (4/86)
Page 2 of 2 pages                                                    RDA-1167

EXHIBIT [A] PAGE 04

ITS

McCloskey

RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE _1/9/99_                 Please respond to the attached grievance, indi-
    86632                     cating any action taken. Date due _1/22/99_
_99-0151_          _Jon    Hall_                        _238941_
GRIEVANCE NUMBER            INMATE NAME              INMATE NUMBER

Phone problems are reported when the
work orders are received. There has
been problems reported state wide
about the phones cutting off during
the calls. I can not address the
problem from Jan. 15 at 3:00 pm
since he did not state what
occurred

ignature _Bill McClesk_                  Date _1-20-99_

EXHIBIT [A] PAGE 05

STATE OF TENNESSEE
DEPARTMENT OF CORRECTION
4TH FLOOR RACHEL JACKSON BLDG.
320 SOUTH AVENUE NORTH
NASHVILLE, TENNESSEE 37243-0465

99-1281-
II

*Note: See McCraw v. Coughlin, 64 F.2d 112 (2d Cir. 1983) (Records in the Warden's custody & control such as Mailing Records, Grievances etc.)*

MEMORANDUM

Inmate Name: _____Jean Hall_____    TDOC Number: __23894l__

Institution: _____RMSI_____    Housing Unit: ____2____

Institution Grievance Number: 99-0422    TOMIS Grievance Number: 85516

Commissioner's Response and Reasons:

The response of the Committee is appropriate.

☐ Concur with Warden    ☐ Concur with Supervisor    ☒ Appeal Denied

*GRIEVANCE Committee decision*

3/3/99
Date

_____
Assistant Commissioner, Operations

1999 MAY 17 PM 3:45  FILED  DAVIDSON CO. CHANCERY CT.  D.C. & M.

EXHIBIT [B] PAGE 6

15
208

INMATE GRIEVANCE RESPONSE

| Jon Hall | 238941 | RMSI | 2 | 99-0422 (86516) |
|----------|--------|------|---|------------------|
| NAME | NUMBER | INSTITUTION & UNIT | | GRIEVANCE NUMBER |

Summary of Evidence and Testimony Presented to Committee *Inmate is complaining about his atty/number being severed*

Inmate Grievance Committee's Proposed Response and Reasons *Board concurs that there was no policy violation.*

| 3/17/99 | | |
|---------|---------|---------|
| DATE | CHAIRMAN | MEMBER R. Cartwright |
| MEMBER | MEMBER Clark Isom | MEMBER |

=====================================================

Warden's Response:   Agrees with Proposed Response  ☒
                     Disagrees with Proposed Response  ☐

If Disagrees, Reason(s) for Disagreement _____

Action Taken: _____

DATE  3/17/99 _____    WARDEN'S SIGNATURE _____

Do you wish to appeal this response?    X  YES ____ NO  See attached supplement

If yes:  Sign, date, and return to chairman for processing.  Grievant may at-
tach supplemental clarification of issues or rebuttal/reaction to
previous responses if so desired.

_____  3/1/99  _____
GRIEVANT            DATE            WITNESS

Note: Board Minutes incomplete; no mention of my court order; shown to Board. See Supp.

Commissioner's Response and Reasons _____

DATE _____    SIGNATURE _____

Distribution Upon
Final Resolution:  1.  Grievant    3.  Grievance Committee
                   2.  Warden      4.  Commissioner (if ap-
                                       plicable)

CR-1393 (Rev. 7/87)                              RDA-1167

EMERGENCY
INMATE GRIEVANCE

NAME **Jon Hall**  NUMBER 238941  INSTITUTION & UNIT **R.M.S.I. U-2**

DESCRIPTION OF PROBLEM  On February 24, 1999 Bill Moleary wrongfully removed my
court appointed attorney, Mr. Mark Donahoe's phone number off my list. The name of his
law office is: Spragins, Barnett, Cobb, & Butler, Mark's BOPR No. is 14049. The address
of his law office is: P.O. Box 2004 Jackson Tn. 38302. You'all have numerous records in
your possession that document his visit 7/29/98, and his acceptance of my calls, & mail.
REQUESTED SOLUTION

I want his number placed on my phone list immediately. You'll have not even tried to
validate this number, and the attorney has accepted at least a dozen calls from me collect
in the past year. This is my direct appeal in a DEATH PENALTY CASE. You'all have no right
to get into my legal affairs and block my access to my attorney.
SIGNATURE OF GRIEVANT  Jon Hall  DATE  February 24, 1999
=================================================================

88516
99-0422

To be Completed by Grievance Clerk

2/26/99  Donald Elliot

Grievance Number     Date Received     Signature of Grievance Clerk

Inmate Grievance Committee's Response Due Date  3/9/99

Authorized Extension

New Due Date     Signature of Grievant
=================================================================

Inmate Grievance Response

Summary of Supervisor's Response/Evidence

Chairperson's Response and Reasons  Concurr with the
supervisor response

Date  3/9/99     Chairperson

Do you wish to appeal this response?  X  YES     NO

If yes:  Sign, date, and return to chairman for processing within five (5)
days of receipt of first-level response.

Jon Hall     3/9/99
GRIEVANT     DATE     WITNESS

Distribution Upon  1.  Grievant  3.  Grievance Committee
Final Resolution: 2.  Warden  4.  Commissioner (if ap-
plicable)
CR-1394 (Rev 7/87)
Page 1 of 2 pages     RDA-1167

RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE 2/26/99        Please respond to the attached grievance, indi-
cating any action taken.  Date due 3/7/99

99-0122            JON HALL            238941
GRIEVANCE NUMBER    INMATE NAME        INMATE NUMBER

Sgt. Meredith did not block Mr. Donahue's number.
The Department of Corrections has contracted Opus
Telecom to verify all attorney numbers. Mr. Donahue
did not respond nor return the telephone calls
when Opus Telecom attempted to reach him
for verification. If Mr. Hall wishes to have the
block removed from his number he will need
to send the warden a letter or fax stating
he will accept calls from you and he
will need to include his Board of Professional
Responsibility number with this, as you
were informed by the Notice you received.
Unless your attorney meets these requirements
the number will remain blocked.

Signature Robert Wathe              Date 3-1-99

CR-3148 (7/87)

EXHIBIT [B] PAGE 9

10/19/98

# STATE OF TENNESSEE



F&A/OIR TELECOMMUNICATIONS

MEMORANDUM

TO:      Julie Burrowes

FROM:    Fred Rouse

RE:      State of Tennessee, Opus Correctional Inmate Phone Number Validation Plan:
         Phase 1, Validation of Attorney Numbers Already Allowed in the ITS

Per our recent communications, the following will be the procedure for the Attorney Number
Validation.

For the first phase of the validation process, Opus Correctional Inc., (OCI), will follow the
procedure in this letter for numbers that have been entered into the Inmate Telephone System
(ITS) up through September 30, 1998 as allowed attorneys numbers. These are calls that are
flagged by the system to not be recorded..

OCI customer service will retrieve all allowed attorney phone numbers from the ITS. The
customer support staff will call the listed numbers and ask the responding party to transmit a
letter on law firm letterhead, stating that they will receive calls from the inmate that has
designated them as their attorney. OCI will ask that the letter be sent to customer service within
seven working days. OCI will rely on the authenticity of each letter it receives in response to a
validation request. OCI will maintain all of the letters in its files for your inspection.

In the event that OCI is unable to validate an attorney number due to an out of service message,
no answer, no receipt of a validation letter from the responding party within seven working days
as requested, or such other reason, OCI customer service will block use of the number and notify
the appropriate Warden in writing of the numbers which could not be validated and have been
blocked. The Warden will notify OCI in writing within thirty (30) days of receipt of notice from
OCI whether or not the number should be reinstated to "allow" status. Should OCI not receive
notice from the Warden, OCI will not remove any blocked numbers from the inmate phone
number list, Rather, the block will remain in place with the block reason being 'not approved'.
Numbers with the block reason 'not approved' will not be changed to 'allow' status or removed
from the list unless Opus subsequently receives written directions from the appropriate Warden
or written confirmation of the validity of the number from the attorney's office.

10/19/06

Should the status of any number change, due to information provided to the State, the State should notify OCI and OCI will make the requested adjustment to the list. OCI will not be responsible for any damages or inconvenience which results from blocking any number which OCI is unable to validate using the above process, or if it is subsequently determined that any of the letters that OCI relied upon for validation were erroneous, inauthentic or otherwise invalid.

2A110

Inmate Telephone List
Attorney Number Verification

Inmate Name ___JOHN  HALL___ : DOC Number __23894)

Attorney Name  MARK  DONAHUE

This is to advise that the State has not been able to validate the attorney phone number
listed above. . This phone number has been blocked from your call list and will not be
released until confirmation has been received from the Attorney.  This number can be
reactivated by having the attorney send or fax notice to the address listed below, a
statement on their business letterhead stating that they are willing to accept calls from you.

Send to          Warden Ricky J. Bell
Address          Riverbend Maximum Security Institution
                 7475 Cockrill Bend Industrial Road
                 Nashville, Tn. 37243-0471
                 Fax:  (615) 350-3400

This notice was given to _John Hall_____ on this date ___2-24-95__,

by _Bill M Leshy_ Employee.

IMPORTANT:  The attorney will need to include his BPR (Board of Professional
            Responsibility) Number on the letter in order for the number to
            be reactivated.

EXHIBIT [B] PAGE 12          —

214
~21

RIVERBEND MAXIMUM SECURITY INSTITUTION
INMATE GRIEVANCE HEARING
MINUTES

HEARING LOCATION:    Unit 2

DATE:                March 17,1999

BOARD MEMBERS PRESENT: Howard Brandon, Chairperson
                       Charles Tracy, Staff Member
                       CO Johnson, Staff Member
                       Ronald Cartwright, Inmate Member
                       Eric Pendleton, Inmate Member

GRIEVANT'S NAME & NUMBER:   Jon Hall # 238941

R.M.S.I.  GRIEVANCE NUMBER: 99- 0422

TOMIS GRIEVANCE ID:        # (88516)

The Board Chairperson read the Grievance, the Supervisor Response and the Chair's
Response and Reasons, in their entirety to the Board Members.

Brandon-    Anything else you would like to add?

Grievant-   Call Mr. Mcleskey to the hearing.

Brandon     Denied.

Grievant-   You are saying that all of attorney's are off my list?

Brandon-    If they have not been confirmed as attorneys.

Grievant-   You are blocking my access to court, you have not tried
            to valedate my attorney's #'s.

Cartwright- Have you contacted your attorney to let him know the
            problem that you are having why you having why you
            cannot call him? Your attroney needs to fax a letter
            head letter to get it confirmed that he is your attorney.

BOARD'S SUGGESTED RESPONSE: Board concur that there is no policy
violation.

SUBJECT: DEPRIVATION OF ACCESS TO ATTORNEY'S
3/19/99

INMATE GRIEVANCE CONTINUATION SHEET

DESCRIPTION OF PROBLEM: The minutes of the testimony presented at the second level of review is a farce and mockery of the verbal testimony presented during the 3/17/99 hearing with the designed effect to deprive adequate review in any further proceedings. For example, when I asked to question Mr. Bill McClusky to make a record of his role in removing my attorney's phone no. from my call list to establish policy violation 301.01 (V) (Reprisal) for filing grievance no. 99-0151, or Tomis no. (86632) (On the malfunctioning phones); he denied the request, and stated: "That I had to give him (Mr. Brandon) twenty four (24) hours notice of my intent to call said respondent (Mr. McCluskey)." If Mr. Brandon was following the TDOC Grievance procedures handbook (Rev. 12/1/96) page 11 states in part: "The Chairperson shall notify the inmate grievant, and the staff respondent involved of the time, place and members of the committee scheduled to participate at least 48 hours prior to the meeting. * * * The committee will hear verbal presentation from the grievant, respondents, and their witnesses and review any pertinent written material." Therefore, it is his responsibility to have him present.

Due to the fact that unit two no longer has a photocopy machine in the unit, there is no way that I was going to leave the Board my documentary evidence to attach to my grievance in support, although I had provided the board with an opportunity to examine several documents in support of my position, the minutes of the meeting do not reflect this event / opportunity to examine said documents. Therefore, I shall recall the documents and their contents to establish my clear cut 6th Amend. Const Right to access to my attorney's. The first document that I offered the board to examine is a ORDER from the Court of criminal appeals, filed April 2, 1998 which states in pertinent part: "Counsel states that a conflict of interest has arisen due to the fact that the appellant has filed a federal lawsuit naming Counsel as defendants. Having reviewed the motion of counsel, and for good cause shown, it is hereby ORDERED that Clayton F. Mayo and Jesse H. Ford, III, are hereby relieved of any further representation of the appellant in this appeal. **** Accordingly, since the record reflects that the appellant is indigent, it is further ORDERED that Mark Donahoe of Jackson, Tennessee, is hereby appointed to represent the appellant should an appeal to the Supreme Court occur." (IN PART)

Besides reading and showing this court (on the date 4/2/98) I inserted the fact that despite my having a federal lawsuit against attorney's Mr. Ford, and Mr. Mayo I can still call these attorney's office (901) 422-1375, even though they are not representing me; calls made to Ford's office 3/10/99; 3/17/99; 3/18/99; & 3/19/99.

CR-1394 (4/86)
Page 2 of 2 pages
RDA-1167

SUPPLEMENTARY GRIEVANCE NO. 99-00293 TO 062
SUBJ.: DEPRIVATION OF ACCESS TO ATTORNEY'S
INMATE GRIEVANCE CONTINUATION SHEET

3/19/99

DESCRIPTION OF PROBLEM: **In addition to the April 2, 1998 C.C.A. Court ORDER,**
I showed the Board a true copy of the Tennessee Supreme Court's ORDER dated February
22, 1999 which limited the issues for review of oral arguments scheduled to be heard
in June of 1999, that further stated that the appellant shall have (30) thirty-days
to file a supplemental brief on said issues before hearing the oral arguments, in
which the (30) days started tolling on February 22, 1999; to support my claim of
an emergency grievance pursuant to policy 501.01 (VI.) (C) (Substantial risk or
injury / irreparable harm) by removing my capitol case attorney's phone number
from my calling list, without giving me the opportunity to call attorney and make
arrangements to have them validate their authorization of their title, board no.,
and verification of thier position as my capitol case attorney, during this direct-
appeal, so I could discuss several matters such as the denial of my "Brief of the
proper party and exhibits"; and the fraudulent trial transcripts / audio tapes,
to discuss what to put in this new brief.

In Richard Taylor's grievance no. 99-0229 Tomis # (87229), form no. CR-3148
(Response of supervisor etc.) dated 1/27/99, Mr. Robert Waller, stated in-part:
"It is our responsibility to provide a climate for inmates and attorney's to have
access to each other."

The memorandum you utilize in support of your position giving Opus Telephone
Company the right to block my phone call by computer "Error code 34" which states:
"The telephone number entered, has been removed from your telephone list at the
called party's request." WITHOUT ANY PRIOR WARNING, BEFORE BLOCKING SAID NUMBER
FROM CALLING LIST, VIOLATES MY SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL. Furthermore, trying to put this validation process off on the telephone
company does not excuse TDOC / RMSI conduct for violating my rights. The TDOC /
RMSI is responsible for the known erroneous and negligent conduct of it's sublet
contractors. I doubt that Error code 34 (called part's request)is accurate due to
the Tenn. Supreme Court Rule 8 (Counsel's duty to represent client zealously and
keeping client reasonably informed. In addition to that, I showed the board my
most recent letter from the attorney's dated 2/15/99 which stated in-part: "Again,
I hope the the recording quality is not too distracting. I look forward to your
input on any discrepancies you may find. And always, feel free to contact me if
you should have any questions. With best regards, I remain, Mark Donahoe."

WHEREFORE, the grievance boards handling of this case violates it's own
policy procedures, 501.01 (V) second sentence (Fair / resolved at lowest level).

CR-1394 (4/86)
Page 2 of 2 page

RDA-1167

EXHIBIT [B] PAGE 15

24

Jon Hall # 238941
R.M.S.I. U-2 A-110
7475 Cockrill Bend Ind. Rd.
Nashville Tenn. 37209-1010
(615) 350-3100 Ext. 3187
March 24, 1999

Mr. Mark Donahoe
Atty. At Law
312 Lafayette St.
P.O. Box 2004
Jackson Tn. 38302
(901) 424-0461

Re;    (a) Mark's March 23, 1999 letter; (b) Ascertain / fraudulent tapes;
(c) Resolve phone problem; (d) Assert erroneous jury instructions to
Supreme Court; (e) Stop Madison County from extorting money from my
trust fund account; and (f) draft letter and explain the steps taken
to resolve matters / questions.

Dear Mark,

Hello. I'm going to start this letter off by addressing your March 23, 1999
letter in response to my February 24, 1999 letter. In the first paragraph you
stated, that "it took a special recorder in order to play the tapes and that [you]
dubbed exact copies off on to audio tapes that [I] could play." Only the first two
tape you provided me with (Marked Jury 1 & 2), are recorded at the normal / standard
audio cassette recording speed. The other seven sound like a "33" Lp album played
at a "45" single record speed. Therefore, seven of the nine audio tapes are of
little use to me. If I were to send those last seven tapes out to anybody that
could transfer the tapes onto another cassette at the standard speed, R.M.S.I.
would not let them into me unless they came through an attorney as legal mail.

Now onto the second paragraph, where you discuss the ineffective assistance
of counsel issue. Well, one of the main reasons that I'm so concerned about this
issue is; because, when I went to the madison county court for my motion for a
new trial, the trial judge would not entertain Mr. Ford's & Mr. Mayo's "Motion
to withdraw. So, I filed a pro se T.R.A.P. Rule 10 appeal which challenged the
effective assistance of counsel, without having a copy of the transcripts. The
C.C.A. denied the motion before my transcript was ever filed, and never gave any
specific reason. When I sent it to the Supreme Court, the court waited until the
transcripts were filed, and claimed they reviewed the entire record, and denied
my request to have Mr. Ford & Mr. Mayo removed from my case. That's why I am so
interested in a true copy of the "Motion For New Trial Hearing" audio tapes. I'm
pretty sure I discussed this with Scott. Alot of my attorney complaints are not
portrayed in the transcript that you provided me with. Therefore, I'm not sure
that the court will allow me to raise it again on post-conviction. That's why I
figured, that if you'all would have raised the issue, there more likely to listen.
NOTE: Why wasn't the jury charged with diminished capacity / responsibility ?

-1-

— PETITIONER'S EXHIBIT [C]

EXHIBIT [C] - PAGE 16

Mr. Mark Donahoe
Page 2
March 24, 1999

In the third paragraph of your letter, you said that you consulted with two other attorney's about raising the ineffective assistance of counsel claim. Well, unless they have access to my case file, and know about my T.R.A.P., Rule 10 appeal to the appeals court[s]. They would not be able to give an appropriate hypothesis.

In regards to the fourth paragraph of your letter, you try to give me the same argument that Scott tried to give me, (recorder not switched on at first). It didn't fly when he threw it up, and it don't fly now. Like you said, you were not there. The part about the change of venue over my objection is partially portrayed in their, and their is only one short spot where the judge walked over my testimony. Believe me, I know I made a bigger stink about the judge changing the venue, during a hearing in which I didn't attend. Further, I had basically demanded that he change the situs of the trial to the Henderson County forum. There is not enough blank space in the tapes you provided for me, to make all the different complaints about the change of venue in the tapes, so I know that the tapes have been spliced / altered at that spot. Therefore, I know it isn't because the tape recorder couldn't pick up my voice. Moreover, in the same area of the transcripts, where the judge was asking if I turned down the offer of life with the possibility of parole, I made a sarcastic remark, that, that was all Mr. Ford ever wanted to talk to me about, and not my case. Almost all of my derogatory remarks toward Mr. Ford have been removed from the transcripts. I know that I said several more things that are not depicted on those tapes. I'll bet my life on the fact, that the first tape you provided for me has been tampered with. So, what are you going to do about it ?

Now in the fifth paragraph in your letter, you ask for money for sending out the tapes. Tell me how much it would cost, and I'll ask one of these christian volunteers that come up to death row, to help me put up the money, since the Court will not spend money, to prove that they have committed a fraud against me. So, get an estimate, and I'll do the rest. I'm extremely limited as to making phone calls / arrangements that I would normally be able to do if I wasn't incarcerated.

In your sixth paragraph you mention the pre-trial / post-trial hearing audio tapes, I've explained to you that I want a copy of the August 22, 1994 preliminary hearing audio tapes, to show the fraud that was committed in preparing the preliminary hearing transcripts, which also show a pattern of abuse, by the state. I know that your problem is that you do not want to do your duty as per Tenn. Rules of the Supreme Court Rule 8 (Duty on exposing fraud), due to the employer / state relationship. Don't let those good old boys pull you down. I'm not going to stop until I get some relief... I have also told you that I wanted the February 9, 1996 pre-trial hearing addressing my BURKHART motion, and the judge persuading me into accepting the services of Jesse Ford, by promising me that he was a good attorney and at the top of the bar. He also said that he would look after my interests, by making sure that the attorney would do what I asked of him. Also, I want the audio tape of the May 20, 1997 "Motion for a new trial" hearing, because I know things are missing from that transcript in which your office has provided me with. Not only will it show a continued abuse / pattern of fraudulent misconduct, it will help me make my case, in the event that the Courts don't want to entertain my ineffective assistance of counsel claim, due to my filing a T.R.A.P. Rule 10 appeal when I tried to shake Mr. Ford from my case.

EXHIBIT [C] PAGE 17                                          130

Mr. Mark Donahoe
Page 3
March 24, 1999
————————————

Then in the seventh paragraph you mention the supplemental brief you filed
on my behalf, without even talking to me about it. After filing two prior briefs
for me, it would seem that you would have expected to hear my two cents worth, as
usual. Especially after I submitted a (170) page brief. Could it be that you would
not validate / authorize your phone number to be on my calling list, in an effort
for you to file anything you want without my approval ? When I call your office,
the operator / automated assistance states: "the number entered has been removed
from your list at the called parties request, Error code "34". Why didn't you'all
validate myour phone number to be placed on my calling list, so we could discuss
my case. On February 24, 1999, I received a notice from internal affairs, which
informed me in writing that your number was being removed from my calling list,
because you would not validate / authorize your number to remain on my call list.
I would have wrote you sooner about the number being removed from my list, but I
had just sent out my 2/24/99 letter addressing the false / edited audio tapes,
before I had received the internal affairs notice later that evening, and I did
not want to send you another directive letter, until I got my answer back from
you on those tapes. Furthermore, I tried to have my mother send word to you via
the phone, expecting faster service, and I didn't want to have to send another
notorized / certified letter on this problem. But, I did not get it accomplished
like I wanted, and this prison staff wouldn't correct the problem even after I
showed them the April 2, 1998 C.C.A. Court ORDER naming you as my attorney of
record, along with the S.Ct. February 22, 1999 Court order giving me (30) days
to file the last brief that you'all filed on my behalf.

Needless to say, I'm not to happy with this situation. Therefore, I want to
you to write me and tell me if the telephone company or the prison has tried to
contact you in regards to this matter. I have some interesting news, that it
would have been nice if you would have presented it in my brief. That is, when
you look at the jury instructions for the only defense that my previous sabotage
attorney's presented for me, i.e., Intoxication. You will see that the judge made
a plain error in presenting those instructions. See: Transcript of Evidence, vol.
III., page 367 Lines 18 - 20, which provides:

Intoxication is irrelevant to the issue of the essential element
of the defendant's culpable mental state.

According to the T.P.I. Crim. 40.02 jury instructions, it states; that Intoxication
is relevant to the issue of the essential element of the defendant's culpable
mental state. So, not only do I have trial judge error, but I also have another
ineffective assistance of counsel claim for failing to recognizing and correcting
a plain error under Tenn. R. Crim. P. 52, and T.R.A.P., Rule 36. See: e.g. State
v. Phipps, 883 S.W.2d 138, 158 (1994) which provides, (in-part):

"Moreover, the instructions in this case did not simply limit the
use of evidence. It suggested that the evidence was of no consequence,
since the appellant was not pleading insanity. The instructions had
effectively removed the appellant's defense theory, which is an accepted
one in Tennessee, from the jury's consideration.[23]"

EXHIBIT [C] PAGE 18

131[?]
220

Mr. Mark Donahoe
page 4
March 24, 1999
_____

_See also_: _State v. Phipps_, supra note 23, which provides:

    23.   The third circuit suggested that an instruction which precluded the jury from considering evidence of mental state to ascertain whether the requisite mental state was proven would not be sanctioned by the United States Supreme Court. _Pohlot_, 827 F.2d at 901 (Citing _Leland v. Oregan_, 343 U.S. 790, 96 L.Ed. 1302, 72 S.Ct. 1002 (1952).

    Now, back to the eighth paragraph in your letter, in which you mention the Court's order of limiting my issues for oral arguments. All I have to say is; it's seems extremely strange that I filed that brief on February 22, 1999, and on the same day the Court orders a limit on every issue that I raise to keep you from presenting my side of the story, and that it doesn't want to hear anything more about their fraud. They know if the judge's got ahold of that information, they would have to recuse themselves from my case, or dismiss the charges against me. I don't know why you didn't assert T.C.A. § 16-3-403 (Rules not to affect rights), when you filed the original argument, I gave that cite to you. Note: For the record I'm talking about issue VI (Removal of the war flag, violates 5th, 6th, & 14th United States Constitutional Amendments).

    Finally as to the ninth paragraph in your letter, about Fed. R. Crim. P. Rule 60 to challenge the aforementioned issues. Technically, that is a federal district court if they are flying the United States flag, and the U.S. Constitution provides an **arising under** clause, in which the court uses as a supplemental type jurisdiction to circumvent Tennessee Constitutional Rights under the maritime flag of war. That's gives the court discretion to violate state constitutional rights in circumstances like BURKHART. Read my brief, and the plain dictates of Tenn. Constitution Article 1, § 9 which states (in-part): "The accused hath the right to be heard by himself and his counsel." The plain dictates of the constitution says and, only the federal constitution says requires you to make an unequivocal choice to proceed pro-se or through counsel. That judge made law is a fraud. _See_: T.C.A. § 16-3-403 (Rules not to affect substantive rights). Read my Brief, it lays it out for you, even if it is a little redundant, but I'm not an english major. But it shows you the laws, look up the word **artifice**, fits like a glove. Surely there is a Tennessee Rule of court, gives you the opportunity to challenge an erroneous court order, if you don't like the Federal rules. Do I have to get the Tenn. Rules of Court and show you it's cross-reference to Federal R. Crim. P. Rule 60?

    Now that I'm done addressing your letter in full, let's top off this thing with Tennessee Rules of the Supreme Court, Rule 8 and get some of the already listed problems and some other ones on their way to being resolved. Please take care of the following issues / problems:

    1. Since March of 1997, the Madison County Court has been extorting money from my account. Enclosed in this letter you will find a copy of an attorney drafted motion, captioned: "Notice of Claim Of Exemption From Garnishment." This motion came from the Office Of Post-Conviction Public Defender, C/O Mr. Donald Dawson, 460 James Robertson Parkway Second Floor Nashville Tenn. 37243. I tried to have Jesse Ford correct the problem, but he failed as my fiduciary.

132

EXHIBIT [C] PAGE 19

221

Mr. Mark Donahoe
Page 5
March 24, 1999
-----------------

2. I need you to send a fax / notice to Warden Ricky Bell, R.M.S.I. 7475
Cockrill Bend Ind. Rd. Nashville Tenn. 37243-0471; Fax no. (615) 350-3400, and
give him instructions / orders not to interfere with my constitutional right to
access to my attorney's. You will need to include your Board of professional
responsibility number, when you give him your approval to be allowed on my phone
list. After I jumped the prison staff about the removal of your phone number,
they provided a memorandum on how to contact Opus Correctional/Lec Tel Telephone
company for customer service by calling 1-800-363-1879 business hours Mon. thru
Fri. at 7:30 A.M. to 4:00 P.M. on March 22, 1999 to resolve phone problems.

3. I would like you to ascertain the audio tapes of both pre-trial and post-
trial hearings for the following hearings; (1) 8/22/94 Preliminary Hearing; (2)
2/9/96 Appointment of Mr. Ford / Burkhart motion; and (3) March 20, 1997 Motion
For A New trial; as discussed in the bottom paragraph of page (2) two of this
letter.

4. I would like to know how my T.R A.P  Rule 10 appeal in the appellate
courts will effect my later filing of ineffective assistance of counsel claims ?

5. How do you plan on presenting my newest issue on jury instructions, now
that the State has interfered with my ability to contact you during this direct
appeal matter, and you were not able to give / assert the claim in your arguments /
brief and present formal notice in a timely manner on said issue ? NOTE: See :
Duncan v. State, 698 S.W.2d 63 (Tenn. 1985) (Plain errors can be addressed at
anytime); and See also State v. Seagraves, 837 S.W.2d 615 (1992) KEY 1134; and

6. I would like a thorough letter addressing each and every complaint, so
that I can determine who is at fault for blocking my access to courts, and an
explanation as to what has been done to correct each of the aforementioned issues,
or what steps will have to be taken in order to correct said legal matters.

Thank you for your time, and diligent response to the aforementioned issues,
I hope that I haven't upset you, but I've got to get things under control, and
since I can't use the phone, this is what I'm left with. It sure would have been
easier to handle this matter over the phone.

With best regards, I remain,

Your  very truly,

Jon Hall

Sworn and subscribed before me on this the 31 day of March 1999.

Notary Public _____

My Commission expires _____ My Commission Expires SEPT. 29, 2001

XC: File / Executed on the 1st day of April 1999.

EXHIBIT [C] PAGE 20

133

Z 735 272 389

**Receipt for
Certified Mail**

No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

| | | |
|---|---|---|
| Sent to MR. MARL DONAHOE | | |
| Street and No. ATTY. AT LAW P.O. BOX 2004 | | |
| P.O., State and ZIP Code JACKSON, TN. 38302 | | |
| Postage | $ | .55 |
| Certified Fee | | 1.40 |
| Special Delivery Fee | | |
| Restricted Delivery Fee | | |
| Return Receipt Showing to Whom & Date Delivered | | 1.25 |
| Return Receipt Showing to Whom, Date, and Addressee's Address | | |
| TOTAL Postage & Fees | $ | 3.20 |
| Postmark or Date SENT BACK TO TO I/M HALL TO MAIL OUT 3/31/99 | | Given to c/o Remy 3/31/99 TR mailing 3/31 TA |

PS Form 3800, March 1993

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

MR. MARL DONAHOE
ATTY. AT LAW
P.O. BOX 2004
JACKSON, TN. 38302

4a. Article Number
Z 735 272 389

4b. Service Type
☐ Registered          ☐ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD
☐ Date of Delivery

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X

7. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994          Domestic Return Receipt

REC. - 4/2/99

EXHIBIT [C] PAGE 21

134

223

LAW OFFICES

## SPRAGINS, BARNETT, COBB & BUTLER, PLC

312 EAST LAFAYETTE STREET
P.O. BOX 2004
JACKSON, TENNESSEE 38302-2004
. 901-424-0461
800-339-6177

JAMES F. BUTLER
CHARLES H. BARNETT, III**
LARRY A. BUTLER
LEWIS L. COBB*
CATHERINE B. CLAYTON
J. ALAN RHENEY
C. MARK DONAHOE**
JERRY P. SPORE
TERESA G. COBB
MICHAEL B. MCWHERTER
DANIEL J. TAYLOR
R. SCOTT PIETROWSKI'
VINCENT K. SEILER

TELECOPIER NUMBERS
901-424-0562
901-427-1246

R. HEARN SPRAGINS (1902-1970)
CARMACK MURCHISON (1902-1983)

*City Attorney for City of Jackson

**Certified as Civil Trial Specialist b
the Tenn. Comm. on CLE and NBTA

* Certified as Criminal Trial Specialist by
the Tenn. Comm. On CLE and NBTA

Also Licensed in
' MISSISSIPPI, LOUISIANA
² MISSISSIPPI

April 28, 1999

Mr. Jon Hall - #238941
RMSI U-2-A-110
7475 Cockrill Bend Ind. Rd.
Nashville, TN 37209-1010

      Re:    State v. Jon Hall - Appeal
            Supreme Court of Tennessee at Jackson
            Cause No. 02S01-9805-CC00048

Dear Jon:

      We have not requested to be taken off of your phone list. I will send a letter to the Department of Corrections at your facility, instructing them that we did not request you to be taken off the list.

      We will file a motion with the trial judge requesting him to authorize release of the tapes of the Motion for New Trial.

      As we have communicated previously, your concerns with regard to previously raising ineffective assistance on the TRAP 10 Appeal during the trial will not affect your ability to raise that on post-conviction. The reason it is better to raise on post-conviction is that you can have a hearing at your post-conviction motion and you can present evidence at the hearing even if it didn't make it on to the tapes of what transcribed at your trial. You have the ability to call as witnesses at that hearing your previous lawyers and anyone else that is necessary in order to make the proper record. We do not have the ability to do that in the current appeal. The current appeal will deal only with what is on the transcripts from your trial. Because you are able to make a much better record at the post-conviction hearing, it is the proper place to raise your post-conviction arguments for ineffective assistance of counsel in this case. Please remember that you must raise all post-conviction issues in your post-conviction motion. You only get one shot at a post-conviction motion.

      With regard to your new issue on the inadequate jury instruction, unless your counsel made objection at the time of the instruction, the state and the court could very well have taken the position that because it was not objected to that it was waived. I am not saying that this would have happened but that would certainly have been what I would have argued had I been on the other side. This issue is a correct issue as you have noted for the post-conviction motion, if our appeal is not successful.

EXHIBIT [D] PAGE 22

Page 2

We will also file a motion requesting the preliminary hearing audio tapes if they are still available. Typically those are not kept very long after the preliminary hearing is over. However, we will file a motion with the judge requesting those and if he grants it, we will attempt to obtain copies of those. We will also, pursuant to your request, request that the judge release all pretrial motion tapes in addition.

We were limited in the issues to be presented and briefed in the supplemental brief by the Court's previous order limiting the oral argument in the case.

Once again, I have no personal knowledge that this office or anyone connected with it notified the phone company or the prison to take you off of your phone list.

We have discussed extensively your claimed issue with regard to the flag. As you can see from the brief, we addressed the flag issue and did our best to turn that into a First Amendment Claim that would be treated seriously by the Court. We have actually raised the flag issue, however, the Court has determined that they do not need oral argument on that issue.

Thank you very much for your letters to us and I hope we continue to communicate in writing. It is always easier to look back at a written communication and respond, then to try and remember what was discussed on the telephone. We have, however, attempted to correct the telephone problem as previously noted.

I have also attached a copy of the State's supplemental brief for your review.

With best regards, I remain

Yours very truly,

SPRAGINS, BARNETT, COBB & BUTLER, PLC

By _____
C. MARK DONAHOE

CMD:sk
Enclosure

EXHIBIT [D] PAGE 23

FILED
JUDY BARNHILL, CIRCUIT COURT CLERK
DEPUTY CLERK
NOV 01 2001
A.M. 2:15 P.M.

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
AT JACKSON

| | | |
|---|---|---|
| JON HALL, | ) | |
| | ) | |
| Petitioner, | ) | Madison County No. 96-589 |
| v. | ) | |
| | ) | |
| STATE OF TENNESSEE, | ) | Post-Conviction No. CO422 |
| | ) | |
| Respondent. | ) | DEATH PENALTY CASE |
| | ) | |

### AMENDED PETITION

Petitioner hereby adopts by reference all of the claims previously raised in his *pro se* Post-Conviction Petition previously filed in this Court, as well as his own issues attached to that petition entitled "Motion for Post-Conviction Relief". In addition to the claims raised therein, the Petitioner now amends his Petition to include the following grounds for relief.[1]

### PROCEDURAL HISTORY

Jon Hall was convicted of first degree premeditated murder in this Court in 1997 and sentenced to death. On direct appeal, the Supreme Court of Tennessee affirmed the trial court. State v. Hall, 8 S.W.3rd 593 (Tenn. 1999). Hall's petition for writ of certiorari to the United States Supreme Court was denied on October 2, 2000. Hall v. Tennessee, 531 U.S. 837, 121 S.Ct. 98 (2000).

### REQUIREMENTS OF SUPREME COURT RULE 28

---

[1] The Petitioner notes that there will be some necessary reiteration of certain claims previously raised in his pro se Petition for Post-Conviction Relief in order to provide clarification or further support.

1

*Mailing Address of Petitioner :*    Mr. Jon Douglas Hall, TNDOC # 238941

Riverbend Maximum Security Institution

7475 Cockrill Bend Industrial Road

Nashville, TN 37209-1010


*Place of Confinement:*    Riverbend Maximum Security Institution


*Department of Correction Number:*  238941


1.  *Name and location (city and county) of court*

*which entered the judgment of conviction or*

*sentence which is being challenged by this petition:*    Judge Whit Lafon,

Madison    County    Circuit

Court,    Jackson,    Madison

County, Tennessee.


2.  *Date of judgment of conviction:*    February 5, 1997.


3.  *Case number:*    96-589


4.  *Length of sentence:*    Sentenced to death by electrocution.


5.  *Offense of which Petitioner was convicted:*    First Degree Premeditated Murder.


6.  *What was Petitioner's plea?*    Not Guilty.


7.  *Kind of trial:*    Jury


8.  *Did Petitioner testify at the trial?*    No


2

9.    *Did Petitioner appeal from*

*the judgment of conviction?*                          Yes

10.    *Appellate history.*

(a)    *As to the state court to which Petitioner first appealed, give the following*
*information:*

(1)    *Name of court:*                          Court   of   Criminal   Appeals   of
Tennessee, Jackson.

(2)    *Result:*                          Conviction affirmed.

(3)    *Date of result:*                          April 29, 1998.

(4)    *Grounds raised on appeal:*

1.  Sufficiency of the convicting evidence;

2.  Exclusion of witness testimony;

3.  Admission of photographs;

4.  Constitutionality of the aggravating circumstance;

5.   Sufficiency of the aggravating evidence; and

6.  Appropriateness of the death penalty

(b)    *If Petitioner appealed to any other court, then as to the second court to which*
*Petitioner appealed, give the following information:*

(1)    *Name of court:*                          Supreme Court of Tennessee,
Jackson.

3

(2)    *Result:*                          Affirmed.

(3)    *Date of result:*                  November 15, 1999.

(4)    *Grounds raised on appeal:*

    1.    The evidence fails to support the finding of the jury that Jon Douglas Hall committed first-degree premeditated murder.

    2.    The trial court committed reversible error when it allowed horrifying and gruesome photographs to be introduced into evidence at the punishment phase.

    3.    The evidence presented during the penalty phase was insufficient to support the aggravated circumstance that the murder was heinous, atrocious, or cruel within the meaning of Tenn. Code Ann. Sec. 39-13-204 (I)(5).

    4.    The trial court erred in instructing the jury that it must agree unanimously in order to impose a life sentence.

    5.    The trial court erred during the guilt phase of the trial by not allowing Cheryl Arbogast to testify as to Jon Hall's state of mind immediately prior to and on July 29, 1994..

    6.    The trial court's failure to honor Jon hall's reasonable request for removal of the flag violated the Defendant's Fifth. Sixth, and Fourteenth Amendment rights to testify on his own behalf.

(c)    *If Petitioner appealed to any other court, then as to the third court to which Petitioner appealed, give the following information:*

(1)    *Name of court:*                   Supreme Court of the United States of America..

4

229

(2)    *Result:*                        Petition for Writ of Certiorari Denied.

(3)    *Date of result:*               October 2, 2000.

11.    *More than one (1) year did not pass from the date of final action on direct appeal by the*
       *state appellate courts.*

12.    *Petitioner has not previously filed any petitions, applications, or motions with respect to his*
       *1997 conviction and sentence, save and except his pro-se petition.*

13.    *Not applicable.*

14.    *Arguments regarding the waiver and/or previous determination are asserted in a separate*
       *section of this amended petition.*

15.    *Not applicable.*

16.    *The grounds justifying relief from Petitioner's conviction and sentence are asserted in a*
       *separate section of this amended petition.*

17.    *Petitioner does not have another petition or appeal currently pending in another court*
       *regarding his 1997 conviction and sentence.*

18.    *Give the name and address, if known, of each attorney who represented Petitioner at the*
       *following stages of the case that resulted in the judgment under attack:*

(a)    *At preliminary hearing:*        Public Defender of Henderson County
(b)    *At arraignment and plea:*       Clayton Mayo and Jesse H. Ford, III,
                                        618   N.   Highland   St.,   Jackson,

5

230

Tennessee

(c)    *At trial and sentencing:*    Clayton Mayo and Jesse H. Ford, III, 618 N. Highland St., Jackson, Tennessee

(d)    *On direct appeal:*    Clayton Mayo and Jesse H. Ford, III, 618 N. Highland St., Jackson, Tennessee; Mark Donahoe, 312 E. Lafayette St., Jackson, Tennessee

(g)    *On Petition for Writ of Certiorari:*    Don Dawson, 530 Church Street, Suite 600, Nashville, TN 37243

19.    *Petitioner is currently represented by:*    1) Linda Sesson-Taylor, 206 E. main St., Jackson, Tennessee 38301

2) Paul N. Buchanan, 1526 Crockett Hills Blvd. Brentwood, Tennessee 37027

20.    *No*

21.    *No*

22.    *Not applicable.*

## GROUNDS FOR RELIEF

Petitioner moves the Court to grant him relief from his 1997. murder conviction and one death sentence because, for the reasons outlined below, the conviction and sentence are void or

6

231

voidable due to an abridgement of Petitioner's rights guaranteed by the Constitution of Tennessee and the Constitution of the United States.

## I.    ISSUE I.--INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's 1997 murder conviction and one death sentence is invalid and should be vacated because he did not receive effective assistance of counsel, as required by or necessary to the enforcement of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 8, 9, 16, 17 and 19 of the Tennessee Constitution. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). At trial, the Petitioner was represented by appointed counsel, Mr. Clayton Mayo and Mr.Jesse H. Ford, III, 618 N. Highland St., Jackson, Tennessee.[2] The deficiencies in Counsel's performance and the prejudice resulting from such deficiencies include, but are not limited to, the following:

1.  Counsel failed to adequately investigate the mental history of Defendant. Had they done so, they could have prepared adequate psychiatric testimony showing a diminished mental capacity that was consistent with a charge of manslaughter, perhaps insanity, and certainly a Defendant undeserving of the death penalty.

2.  Counsel failed to adequately petition for funds for various experts, including psychiatric experts.

3.  Counsel failed to establish the proper working relationship with Petitioner. Counsel met with Petitioner only a few times prior to the trial and they did not consistently maintain communication with Petitioner. Had Counsel fulfilled this duty, (ABA Def. Funct. 4-3.1; ABA Death Penalty Guidelines 11.4.2) Petitioner would have been able to provide Counsel with valuable investigative assistance, including details that would support defense strategies, including facts which established this crime to be manslaughter or possibly insanity.

4.  Counsel failed to be aware of (through experience, training or research) the law applicable to Petitioner's case, as evidenced by the deficiencies in Counsel's performance outlined in this petition. Had Counsel fulfilled this duty (ABA Def. Funct. 4-3.8; ABA Death Penalty Guidelines 9.1) they would have prepared and

---

[2] References to "counsel" in this Amended Petition refer to both trial attorneys.

7

presented the legitimate defenses available to Petitioner, such as manslaughter or insanity.

5.    Counsel failed to maintain their workload at the level acceptable to handling a capital murder trial (ABA Death Penalty Guidelines 6.1). Counsel continued to carry their full criminal practice throughout their representation of Petitioner and neither withdrew from nor declined representation in other matters.

6.    Counsel failed to adequately prepare for their representation of Petitioner, including but not limited to:

a)    Counsel failed to properly interview Petitioner (ABA Def. Funct. 4-3.2; ABA Death Penalty Guidelines 11.4.2). Counsel met with Petitioner only a few times during the course of representation of Petitioner. Had Counsel fulfilled this duty they would have established the rapport necessary to elicit from Petitioner valuable information leading to and supporting defense theories and mitigation.

b)    Counsel failed to properly investigate (ABA Def. Funct. 4-4.1; ABA Death Penalty Guidelines 11.4.1), including but not limited to:

(1)    Counsel failed to identify, locate and interview all relevant witnesses (ABA Death Penalty Guidelines 11.4.1(D)(1)(3)(a)-(c)), including but not limited to crime scene witnesses, expert witness and mitigation witnesses.

(2)    Counsel failed to identify, gather and examine the necessary documents, records and physical evidence (ABA 11.4.1(D)(1)(a)-(c), (D)(2)(a)-(e), (D)(4)-(6)), including but not limited to: arrest reports, reports of forensic testing, any recorded or memorialized version of statements made by Petitioner and others, autopsy reports, physical evidence seized by the state, viewing the crime scene, and prior

8

criminal records of Petitioner and other witnesses.

Had Counsel fulfilled this duty they would have uncovered legitimate defenses for Petitioner. Proper preparation also would have produced valuable evidence tending to impeach the testimony and credibility of the state's witnesses. Had Counsel prepared properly, they also would have strengthened Petitioner's position in any plea negotiations. Campbell v. Marshall, 769 F.2d 314, 318 (6th Cir. 1985)(The Court noted in dicta that certain evidence would have "borne upon the defense counsel's negotiating power in arriving at a plea.").

7.     Counsel failed to engage in the motions practice necessary to protect Petitioner's rights (ABA Def. Funct. 4-3.6; ABA Death Penalty Guidelines 11.5.1(B)), including but not limited to:

(a)     Counsel failed to file sufficient pre-trial motions challenging the constitutionality of the sentencing provisions of Tennessee's murder statute, especially the portions relating to the death sentence and the manner in which it is to be carried out. Had Counsel fulfilled this duty Petitioner would not have faced the death penalty. Tennessee's sentencing statute is arbitrary and capricious and is therefore a violation of the Eighth and Fourteenth Amendments to the Untied States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 Article XI, § 8 of the Tennessee Constitution.

(1)     The sentencing statute provides insufficient guidance to the jury concerning what standard of proof the jury should use in making the determination that the aggravating factors outweigh the mitigating circumstances.

(2)     The sentencing statute does not sufficiently narrow the population of defendants convicted of first degree murder who are eligible for a

9

234

sentence of death.

(3)   The sentencing statute does not sufficiently limit the jury's discretion because once the jury finds the existence of one aggravating factor, the jury can impose a sentence of death no matter what evidence of mitigation is shown.

(4)   The sentencing statute limits the jury's discretion to exercise mercy by requiring the jury to impose a sentence of death if it finds that the aggravating factors outweigh the mitigating factors.

(5)   The sentencing statute fails to ensure that non-statutory mitigating factors are given the same weight as statutory mitigating factors by not requiring that the jury be given written instructions on the equal weight of non-statutory mitigating factors.

(6)   The sentencing statute does not require the jury to make the ultimate determination that the appropriate punishment is a death sentence.

(7)   The sentencing statute does not require that the jury be instructed in writing that it may impose a life sentence on the basis of mercy alone.

(8)   The sentencing statute does not provide a way to correct, by written instructions or the presentation of evidence, juror's common misperceptions regarding the actual terms of a life-sentence and the death sentence, the cost of incarceration and the cost of executions, the death penalty's failure to deter murders, and the painful nature of death by electrocution.

(9)   The sentencing statute prevents effective review on appeal because it

10

235

does not require the jury to make specific findings with respect to the presence or absence of mitigating circumstances and with specificity regarding the presence of aggravating circumstances.

(10)   The sentencing statute provides for a punishment, death, which is cruel and unusual.

(11)   The sentencing statute provides for methods of execution, electrocution and lethal injection, which are cruel and unusual.

(12)   The sentencing statute is applied in a discriminatory manner – unfairly affecting racial, gender, geographic, economic and political classes.

(13)   The sentencing statute does not provide an adequate method for proportionality and arbitrariness review by the Tennessee Supreme Court.

(14)   The sentencing statute has been applied by prosecutors in a manner that represents an abuse of their discretion because the statutes do not provide uniform standards for application of the death sentence.

(15)   The sentencing statute has produced violations of the equal protection clauses of the state and federal constitutions because they do no provide uniform standards for qualifying jurors for service on capital juries.

(16)   The sentencing statute permits the introduction of unreliable evidence in support of aggravating circumstances and in rebuttal of mitigating factors.

11

(17)    The sentencing statute allows the state to make the final closing
        argument to the jury in the penalty phase of the trial.

(18)    The sentencing statute does not require that the jury be instructed in
        writing regarding the consequences of its failure to reach a unanimous
        verdict in the penalty phase.

(19)    The sentencing statute requires the jury to agree to a unanimous
        verdict in order to impose a life sentence.

(20)    By restricting the discretion of the jury to life (which the jury might
        believe is any number of years, including as low as five or six) or
        death, and not allowing the jury to fix the penalty at life without
        parole or life without parole for a fixed number of years the statute
        denies the discretion of the sentencer mandated by the Eighth and
        Fourteenth Amendments to the United States Constitution and Article
        I, §§ 8 and 16 of the Constitution of Tennessee. Lockett v. Ohio, 438
        U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

(21)    The statute did not require the court to instruct the jury on all
        mitigating circumstances raised by the evidence.

(22)    The statute violates the Sixth, Eighth and Fourteenth Amendment to
        the United States Constitution and Article I, §§ 6, 8, 9, and 16 of the
        Tennessee Constitution, because the heinous, atrocious or cruel
        aggravating factor  under Tenn. Code Ann. § 39-13-204(i)(5) is
        vague and overbroad and thus fails to narrow the scope of those
        individuals guilty of first degree or felony murder who are eligible of
        the death penalty.  Moreover, the definitions provided in the
        instructions in this case, as required by State v. Williams, 690 S.W.2d

12

517 (Tenn. 1985), are a mere tautology and do not provide the necessary clarity to provide the required narrowing of those eligible for death.

(23)    The statute violates Petitioner's rights because death by electrocution and lethal injection constitute cruel and unusual punishment, and because it requires the Petitioner to elect his method of execution.

(a)    Execution by electrocution or lethal injection is neither immediate nor painless and therefore is cruel and unusual punishment under Article I, § 16 of the Tennessee Constitution and the Eighth Amendment to the United States Constitution. See, Fierro v. Gomez, 77 F.3d 301 (9th Cir. 1996)(holding that death by lethal gas is cruel and unusual punishment).

(b)    Electrocution using Tennessee's electric chair and protocol is particularly cruel and unusual as according to Dr. John P. Wikswo, Jr., Professor of Living State Physics and Professor of Physics at Vanderbilt University, and others, the peculiar design of Tennessee's electric chair and procedures recommended for the use of Tennessee's electric chair would result in prolonged and agonizing pain to the person being electrocuted.

(24)    The statute violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 8 and 16 of the Constitution of Tennessee as the requirements of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), that the discretion to impose death must be closely confined to avoid

13

23

arbitrariness, those of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) that the sentencer must have unlimited discretion not to impose death, and of Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), that the death penalty must be imposed "fairly, and with reasonable consistency or not at all, have proven impossible to administer in practice, and thus, there is no way to constitutionally administer the death penalty. Callins v. Collins, 510 U.S. 1141, 114 S.Ct. 1127, 1128-1138, 127 L.Ed.2d 435 (1994)(Justice Blackman, dissenting from the denial of certiorari).

(25)     The statute violates the Fourth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 16 and 17 of the Tennessee Constitution as it impinges on Petitioner's fundamental right to life. The right to life is a fundamental constitutional right and the punishment of death is not necessary to promote any compelling state interest in punishing Petitioner nor has the state shown that there are no less restrictive means of punishing him.

(a)     Counsel filed inadequate pre-trial motions seeking the state's compliance with constitutional, statutory and local discovery obligations. Had Counsel fulfilled this duty they would have obtained valuable mitigation evidence and evidence which would impeach the state's witnesses.

(b)     Counsel failed to file pre-trial motions seeking preservation of all law enforcement rough notes and a complete copy of the District Attorney General's file, both for in camera inspection and later use on post-conviction. Counsel's failure to file such a motion severely handicapped Petitioner's post-

14

conviction efforts from which Petitioner should be granted relief.

(c)    Counsel filed inadequate and untimely pre-trial motions seeking the resources necessary for their representation of Petitioner, including appropriate sentencing investigative assistance, appropriate funding for a mitigation specialist who could guide the preparation of a sentencing case, jury selection assistance and expert witnesses able to address forensic issues in this case, Petitioner's life history and Petitioner's mental condition. See Tenn. Sup. Ct. R. 13; Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.ED.2d 53 (1985). Had Counsel fulfilled this duty, valuable mitigation evidence would have been developed and presented.

(d)    Counsel filed inadequate pre-trial motions seeking special voir dire rules, including but not limited to the right to submit a comprehensive jury questionnaire and the right to conduct individual voir dire as to death qualification of the venire members. Had Counsel fulfilled this duty they would have been able to develop the information necessary to properly select the jury.

(e)    Counsel failed to file pre-trial motions charging the prosecution with abuse of discretion in seeking the death penalty and asserting the disproportionate application of the death penalty in Petitioner's case. Had Counsel fulfilled this duty the death notice in Petitioner's case may have been

15

withdrawn or dismissed.

(f)     Counsel failed to file pre-trial motions challenging the proportionality of the death sentence in Petitioner's case. Had Counsel fulfilled this duty the case may have been dismissed.

(g)     Counsel failed to file objections challenging jury instructions and failed to file proposed jury instructions, including but not limited to the following:

(1)     Counsel failed to object to jury instructions which equated "reasonable doubt" with "moral certainty" and permitted conviction upon a "satisfactory conclusion" of Petitioner's guilt.

(2)     Counsel failed to object to a jury instruction which misstated the law regarding the necessity for a unanimous verdict in order for Petitioner to receive a life sentence.

(3)     Counsel failed to seek an instruction clarifying that a life sentence means "life" and that a death sentence means "death;" that these sentences will be carried out.

(4)     Counsel failed to seek an instruction clarifying that the decision regarding sentence is to be made by individual jurors; that the jury does not have to be unanimous regarding sentence.

(5)     Counsel failed to seek instructions clarifying the law regarding sentencing factors: (i)   an instruction

16

clarifying that only statutory aggravating factors are to be considered; (ii) an instruction defining aggravating factors; (iii) an instruction defining mitigating circumstances, including listing all non-statutory mitigating circumstances; (iv) an instruction clarifying how aggravating circumstances are to be weighed; (v) an instruction establishing that the jury must find, unanimously, the existence of aggravating circumstances beyond a reasonable doubt; (vi) an instruction establishing that mitigating circumstances may be found by a single juror; (vii) an instruction clarifying that Petitioner began the sentencing phase of the trial under the presumption that no aggravating circumstances existed in his case; (viii) an instruction that the first degree murder conviction itself is not an aggravating circumstance; (ix) an instruction clarifying that evidence put on to establish mitigating circumstances cannot be used to establish aggravating circumstances.

(6)    Counsel failed to seek an instruction establishing that lingering doubt regarding Petitioner's guilt may serve as a non-statutory mitigating circumstance.

(7)    Counsel failed to seek an instruction establishing that doubts regarding the appropriate sentence are to be resolved in favor of a life sentence.

(8)    Counsel failed to seek an instruction establishing that the jury may base its decision on mercy, sympathy

17

242

and compassion.

(9)     Counsel failed to file a proposed verdict form that listed all mitigating circumstances raised by the evidence, statutory and non-statutory, and which required to jury to specifically state what mitigating circumstances were found to exist by any juror, and failed to object to the verdict form used by the court.

Had Counsel fulfilled this duty prejudicial and/or illegal jury instructions may have been kept from the jury and accurate, fair instructions may have been presented. Moreover, an appropriate verdict form would have preserved issues for appeal and collateral attack.

(h)     Counsel failed to file pre-trial motions seeking the right to allocution for Petitioner. Had Counsel fulfilled this duty Petitioner may have been able to speak for his own life, providing valuable insight into his life history and background.

(i)     Counsel failed to file pre-trial motions seeking to limit the state's proof at the sentencing hearing to specific aggravating circumstances. See Cozzolino v. State, 584 S.W.2d 765, 767-68 (Tenn. 1979). Had Counsel fulfilled this duty, improper and prejudicial evidence presented by the state during the sentencing may have been excluded.

(j)     Counsel failed to timely subpoena witnesses or evidence. Tenn. R. Crim. P. 17. Had Counsel fulfilled this duty,

18

243

valuable evidence would have been available to support defense theories and mitigation.

(k)   Counsel failed to properly file motions to preserve the testimony produced at the preliminary hearing. Had they done so, valuable impeachment testimony would have been preserved for future use.

(l)   Counsel failed to file pre-trial sufficient motions challenging Petitioner's illegal arrest, detention, and interrogation in Texas, and his subsequent transfer from Texas to Tennessee. Had Counsel done so, Petitioner's indictment may have been dismissed and/or all evidence gathered pursuant to Petitioner's illegal arrest and interrogation would have been suppressed.

(m)   Counsel failed to file pre-trial motions challenging the constitutionality of Tennessee's murder statute. Had Counsel fulfilled this duty Petitioner's indictment may have been dismissed and/or these constitutional issues would have been preserved in the record for consideration on appeal and in post-conviction. Specifically, Counsel did not file motions challenging the constitutionality of Tennessee's murder statute on these grounds:

(1)   Tennessee's murder statute is applied in a discriminatory manner, unfairly affecting racial, gender, geographic, economic and political classes.

(2)   Tennessee's murder statute has produced violations of equal protection guarantees of the state and federal

19

244

constitutions because it does not provide uniform standards for qualifying jurors for service in murder juries.

(3)    Tennessee's murder statute was vague and failed to fulfill the requirements of Article II, § 17 of the Tennessee Constitution, which prohibits the enactment of any bill which embraces more than one subject which is to be expressed in the title of the bill. Tenn. Code Ann. § 39-13-202 contains more than one subject and the title of the statute gives no notice of some of the subjects addressed by the statute. State v. Hailey, 505 S.W.2d 712 (Tenn. 1974).

(n)    Counsel failed to file a pre-trial motion seeking a bill of particulars pursuant to Tenn. R. Crim. P. 7(c). Had counsel fulfilled this duty they would have been able to identify evidence supporting viable defense theories and would have been better equipped to rebut the state's case.

(o)    Counsel failed to file adequate pre-trial motions seeking the state's compliance with constitutional, statutory and local rules governing the disclosure of discovery. Had Counsel fulfilled this duty they would have obtained all of the available evidence, some of which would have supported viable defense theories and some of which would have impeached state witnesses. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763,

20

31 L.Ed.2d 104 (1972); Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Tenn. R. Crim. P. 16.

(p)     Counsel failed to file adequate pre-trial motions and motions in limine seeking special voir dire rules, including but not limited to the right to submit a jury questionnaire and the right to conduct individual voir dire. State v. Claybrook, 736 S.W.2d 95 (Tenn. 1987). Had Counsel fulfilled this duty they would have been able to develop the information necessary to properly select the jury.

(q)     Counsel failed to file pre-trial motions challenging the legality and constitutionality of the process by which the grand and petit juries were selected in Petitioner's case. Specifically, Counsel failed to assert that the venire did not represent a cross-section of the community. Had Counsel fulfilled this duty the indictment in this case may have been dismissed and the jury ultimately seated in Petitioner's case would have been more free of biases for the prosecution.

(r)     Counsel failed to file objections to the jury instructions proffered by the state and given by the court and failed to file proposed jury instructions, including but not limited to the following:

        (1)     Counsel failed to object to jury instructions which shifted the burden of proof of an element of the crime to the Petitioner.

21

246

(2)    Counsel failed to object in a pre-trial motion to jury instructions which required the jury to presume the truthfulness of witnesses, thereby violating the jury's prerogative to assess the credibility of witnesses and determine facts.

(3)    Counsel failed to request in a pre-trial motion that the court instruct the jury on the elements of all lesser included offenses.

(4)    Counsel failed to object to jury instructions that improperly defined premeditation and the presumption of innocence.

(5)    Counsel were ineffective for not objecting to the failure to instruct the jury that it must find, as an element of the (i)(5) aggravating factor of "heinous atrocious or cruel (HAC)," that the Petitioner *intended* to inflict serious physical abuse. Absent such instructions, the HAC aggravating circumstance found by the jury in this case was unconstitutional. Wade v. Calderon, 29 F.3d 1312, 1320 (9th Cir.), *cert. denied*, 115 S.Ct. 923 (1995). The Petitioner asserts that trial counsel was constitutionally ineffective under the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution for not requesting such a clarifying instruction.

Had Counsel fulfilled this duty prejudicial and/or illegal jury instructions may have been kept from the jury and accurate, fair

22

instructions may have been presented in their place.

(s)    Counsel failed to timely subpoena witnesses or evidence.
       See Tenn. R. Crim. P. 17. Had Counsel fulfilled this duty,
       valuable evidence would have been available at the trial to
       support viable defense theories.

(t)    Counsel failed to file an adequate motion for judgment of
       acquittal.    Had Counsel fulfilled this duty, the court would
       have entered a judgment of acquittal regarding the
       premeditated murder charge in this matter.

(u)    Counsel failed to file a motion seeking an order which would
       have required the state to elect which of two murder counts as
       to each deceased would go to the jury.  Had Counsel fulfilled
       this duty they would have been able to more narrowly present
       a defense and the court may have dismissed the case against
       Petitioner.

(v)    Counsel failed to file necessary post-trial motions, including
       but not limited to:

       (1)    Counsel failed to file adequate motions seeking a
              continuance of the date for filing a motion for new
              trial and for the hearing on the motion for new trial.
              Counsel failed to secure the time necessary to
              adequately investigate, develop and present new
              evidence that supported viable defense theories.

       (2)    Counsel failed to file a motion seeking production of

23

a complete transcript of the trial prior to the date for
filing a motion for new trial.

(3)    Counsel failed to file an adequate and comprehensive
motion for new trial, neglecting to assert significant
evidence and numerous legal issues.

Had Counsel fulfilled this duty the court may have granted a motion
for new trial. Moreover, counsel would have preserved additional
issue for appeal and collateral review which would have resulted in
Petitioner's being relieved from his conviction and sentence.

(w)    Counsel failed to file a motion to dismiss and/or a motion to
arrest the judgment on the ground that Tennessee's murder
statute was unconstitutional.

8.    Counsel failed to develop and pursue a comprehensive defense theory for the trial.
(ABA Death Penalty Guidelines 11.7.1(A) and (B)). Significant evidence which
supported a viable defense theory, including Petitioner's crime being that of
manslaghter or possibly insanity, was available to Counsel.

9.    Counsel failed to competently select the jury for the trial (ABA Death Penalty
Guidelines 11.7.2(A) and (B)), including but not limited to:

(a)    Counsel failed to conduct an adequate voir dire which would have
exposed biases prejudicial to Petitioner which were held by some of
the jurors: failing to discover jurors who were relatives and close
friends of law enforcement officials, failing to discover jurors who
had been victims of crime or were close to crime victims. Had
Counsel fulfilled this duty they would have been able to more
effectively exercise peremptory strikes to exclude jurors with biases

24

249

against Petitioner.

(b)     Counsel failed to challenge, for cause, those jurors who held some
        kind of bias against Petitioner, his case, or any class or group to
        which he belongs.  Had Counsel fulfilled this duty the jurors with
        biases against Petitioner would have been excluded and Petitioner's
        peremptory strikes could have been strategically applied.

(c)     Counsel failed to object to the state's discriminatory use of its
        peremptory challenges to strike African-Americans, men, poor people
        or the unemployed, and other cognizable groups.  Batson v.
        Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State
        v. Butler, 795 S.W.2d 680 (Tenn. Crim. App. 1990).  Had Counsel
        fulfilled this duty the jury in Petitioner's case would have represented
        a fair cross-section of the community.

(d)     Counsel failed to conduct an adequate voir dire, especially with
        respect to the "death qualification" of the jurors.  Counsel failed to
        object to the exclusion of jurors who held general opposition to the
        death penalty and failed to properly voir dire those jurors in an effort
        to rehabilitate them as viable panelists.  In the same vein, Counsel
        failed to seek to exclude jurors whose opinions would lead them to
        impose the death penalty in every case.  Witherspoon v. Illinois, 391
        U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).  Had Counsel
        fulfilled this duty Petitioner's jury would have been composed of a
        fair cross-section of society, including those with reservations about
        capital punishment, a fact relevant to the guilt/innocence phase of the
        trial because it is well established that jurors who are inclined to
        impose the death penalty are also more inclined to convict.

25

(e) Counsel failed to object to the state's incorrect presentation, during voir dire, of the definitions of the elements of the charge, burdens of proof, and definitions of sentencing terms.

10. Counsel failed to competently argue motions at the pre-trial and post-trial motions hearings. Specifically, Counsel failed to present evidence in support of the various motions. Counsel also failed to cite legal authority in support of some of the various motions.

11. Counsel did not competently perform during opening and closing arguments during the guilt/innocence phase of the trial, including but not limited to:

(a) Counsel failed to object to the state's improper, inflammatory, prejudicial, inappropriate and misleading or inaccurate statements concerning the law, the evidence and Petitioner during opening and closing arguments. Had Counsel fulfilled this duty the court may have corrected the errors in the state's comments and presentation of evidence.

(b) Counsel failed to adequately and accurately argue the evidence and law in their opening and closing arguments to the guilt/innocence phase of the trial. Had Counsel fulfilled this duty the jury would have been better exposed to the defensive theory that this case was manslaughter or that the Defendant was insane at the time of the commission of the offense.

12. Counsel failed to adequately object to the state's presentation of prejudicial, misleading, false and inappropriate evidence at the guilt/innocence phase of the trial. Counsel also failed to adequately object to the state's inappropriate methods of introducing evidence at the guilt/innocence phase of the trial, including but not limited to the state's extensive practice of leading witnesses on direct-examination. Counsel did not move for a mistrial on the basis that the state's extensive practice of

26

leading witnesses rendered the state's evidence unreliable and the entire proceeding
fundamentally flawed.

13.    Counsel failed to adequately cross-examine the state's witnesses during the
guilt/innocence phase of the trial. Significant opportunities existed for Counsel to
demonstrate the falsity of the testimony of the state's witnesses and to impeach the
credibility of the state's witnesses. (ABA Def. Funct. 4-7.6). Had Counsel fulfilled
this duty the jury may have concluded that the state had not met its burden of proof.

14.    Counsel failed to present, during Petitioner's case at the guilt/innocence phase of the
trial, significant evidence in existence at that time which supported viable defense
theories, including but not limited to: manslaugher or insanity.

15.    Counsel failed to conduct post-trial juror interviews, in order to develop potential
issues for Petitioner's motion for a new trial.

16.    Counsel failed to raise the objections necessary to preserve issues for appellate
review. Had Counsel fulfilled this duty, error in Petitioner's trial proceedings may
have been available for consideration on appeal and in post-conviction proceedings.

17.    Counsel failed to properly challenge the admissibility of the testimony of the minor
children who testified in this case. Counsel failed to properly object and make the
court aware of the proper test for the admissibility of the testimony of children of
tender years.

18.    Counsel failed to withdraw from this case. At the time of trial, a conflict had
developed between counsel and the Petitioner so as to cause Petitioner to file a
grievance against counsel with the Tennessee Board of Professional Responsibility.
Knowing this, counsel failed to try to have themselves properly excused from
representation. The subsequent performance reflects this hostility toward Petitioner.

19.    Counsel failed to secure the preliminary hearing testimony. Failing to do so left

27

valuable impeachment testimony of the state's witnesses unusable.

20. Counsel held numerous hearings without fully informing Petitioner.

21. Counsel failed to properly withdraw a change of venue motion when instructed to do so by Petitioner. Failing this caused this trial to be tried in Madison County, where publicity and conditions were far worse than Henderson County, Tennessee. Counsel failed to object to the trial proceeding in Madison County. Had Counsel acted consistent with the wishes of their client, a different result would have been obtained.

22. Counsel failed to properly introduce much testimony that should have been known to them at the time of trial. Specifically, mitigation investigations had been done which had alerted them to much mitigation testimony which was ignored by them. Additionally, Counsel failed to introduce the dying declaration of Petitioner's brother. Had they properly used this testimony and presented it in a history to a psychiatrist, the outcome of this trial would have been different.

23. Counsel failed to properly inform the Petitioner of the consequences of testifying in his own behalf. Had they done so, Petitioner would have testified and the result of the trial would have been different.

24. Counsel asked for continuances against the wishes of Petitioner. Petitioner desired a speedy trial and was denied one because of the actions of counsel.

28

General's prejudicial statements in argument at the trial. Counsel did not
fully develop this issue with proper legal research and support from the
record. Had Counsel fulfilled this duty, Petitioner would have been granted
a new trial by the Tennessee Supreme Court.

(c)     Insufficiency of the evidence, necessarily invoking the due process clause of
the Fourteenth Amendment to the United States Constitution. Jackson v.
Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See Article
I, § 8 of the Tennessee Constitution. Counsel did not fully develop this issue
with proper legal research and support from the record. Had Counsel fulfilled
this duty, Petitioner would have been granted a new trial by the Tennessee
Supreme Court.

2.     Counsel failed to raise the following issues on appeal. Had Counsel fulfilled this
duty Petitioner would have been granted a new trial by the Tennessee Supreme Court
or Court of Appeals.

(a)     Improper voir dire – A number of potential jurors were dismissed by the court
and by the state for improper reasons including the juror's general opposition
to the death penalty as well as racial, gender and class bias. Counsel also
failed to raise a challenge to the unconstitutional jury selection process,
including but not limited to the fact that the grand and petit juries were not
selected from a  fair cross-section of the community and that the death
qualification of the jury produced a jury biased in favor of convicting
Petitioner.

(b)     Unconstitutionality of Tennessee's Capital Murder Statute – This crucial
issue is asserted in the broadest possible terms in capital appeals and it is
founded on federal and state constitutional provisions. Counsel neglected the
following meritorious arguments with respect to this issue which specifically

29

General's prejudicial statements in argument at the trial. Counsel did not
fully develop this issue with proper legal research and support from the
record. Had Counsel fulfilled this duty, Petitioner would have been granted
a new trial by the Tennessee Supreme Court.

(c)     Insufficiency of the evidence, necessarily invoking the due process clause of
the Fourteenth Amendment to the United States Constitution. Jackson v.
Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See Article
I, § 8 of the Tennessee Constitution. Counsel did not fully develop this issue
with proper legal research and support from the record. Had Counsel
fulfilled this duty, Petitioner would have been granted a new trial by the
Tennessee Supreme Court.

2.      Counsel failed to raise the following issues on appeal. Had Counsel fulfilled this
duty Petitioner would have been granted a new trial by the Tennessee Supreme Court
or Court of Appeals.

(a)     Improper voir dire – A number of potential jurors were dismissed by the
court and by the state for improper reasons including the juror's general
opposition to the death penalty as well as racial, gender and class bias.
Counsel also failed to raise a challenge to the unconstitutional jury selection
process, including but not limited to the fact that the grand and petit juries
were not selected from a fair cross-section of the community and that the
death qualification of the jury produced a jury biased in favor of convicting
Petitioner.

(b)     Unconstitutionality of Tennessee's Capital Murder Statute – This crucial
issue is asserted in the broadest possible terms in capital appeals and it is
founded on federal and state constitutional provisions. Counsel neglected the
following meritorious arguments with respect to this issue which specifically

30

2 5

address the arbitrary and capricious nature of Tennessee's Capital Murder Statute (Tenn. Code Ann. § 39-13-201 and 39-13-202)

(1)    These statutes are applied in a discriminatory manner – affecting racial, gender, geographic, economic and political groups unfairly.

(2)    These statutes have produced violations of the equal protection clauses of the state and federal constitutions because they do not provide uniform standards for qualifying jurors for service on capital juries.

(3)    These statutes are vague and fail to fulfill the requirements of Article II, § 17 of the Tennessee Constitution, which prohibits the enactment of any bill which embraces more than one subject which is to be expressed in the title of the bill. Tenn. Code Ann. § 39-13-202 contains more than one subject and the title of the statute gives no notice of some of the subjects addressed by the statute. State v. Hailey, 505 S.W.2d 712 (Tenn. 1974).

(c)    Petitioner's murder conviction was obtained in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 8, 9 and 16 of the Tennessee Constitution because the jury was improperly instructed as to the law applicable to the case. Judging the instructions as a whole, the jury was erroneously instructed on essential issues regarding the guilt/innocence phase of Petitioner's trial, undermining the fairness of the trial itself. Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993); Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct.

31

2'·6

2450, 61 L.Ed.2d 39 (1979). The instructions in Petitioner's case produced a complete miscarriage of justice.

(1)     The court's instructions shifted the burden of proof of an element of the crime to the Petitioner.

(2)     The court's instructions equated "reasonable doubt" with "moral certainty."

(3)     The court's instructions required the jury to presume the truthfulness of witnesses, thereby violating the jury's prerogative to assess the credibility of witnesses and determine facts.

(4)     The court did not instruct the jury on the elements of all lesser included offenses.

(5)     The court's instructions improperly defined the presumption of innocence.

4.     Petitioner's murder conviction and death sentence violated the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution because of the following errors in the voir dire proceedings.

(1)     The court failed to order a mistrial due to the state's discriminatory use of its peremptory challenges to strike African-Americans, men, poor people or the unemployed, and other cognizable groups. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Butler, 795 S.W.2d 680 (Tenn. Crim. App. 1990).

32

(2)    The court failed to conduct an adequate voir dire, especially with respect to the "death qualification" of the jurors. The court failed to adequately question jurors who were being excluded due to their general opposition to the death penalty and thereby failed to determine whether the excluded jurors could have upheld the law in this case. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Had the court done so, Petitioner's jury would have been composed of a fair cross-section of society, including those with reservations about capital punishment, a fact relevant to the guilt/innocence phase of the trial because it is well established that jurors who are inclined to impose the death penalty are also more inclined to convict.

(3)    The court failed to order a mistrial on the basis of, or seek to correct, the state's incorrect presentation, during voir dire, of the definitions of the elements of the charge, burdens of proof, and definitions of sentencing terms.

5.    Petitioner's first degree felony murder conviction violated the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16 and 17 of the Tennessee Constitution because it was premised on a vague and inadequate indictment. Specifically, the indictment in Petitioner's case failed to give Petitioner notice of the offense for which he was charged.

6.    Petitioner's murder conviction and death sentence violated the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution because the court abused its discretion and/or misapplied the law and facts in the following ways, including but not limited to:

(1)    The court denied a number of Petitioner's pretrial, trial and post-trial

33

motions, and Petitioner's motion for a new trial.

(2)     The court permitted the state to systematically exclude cognizable groups from the jury, including African-Americans and men.

(3)     The court did not voir dire the jury for racial or class bias.

(4)     The court improperly excluded jurors based on their general opposition to the death penalty

7.     Petitioner's murder conviction violated the Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution, because of flaws in the process by which the jury was assembled in this case; identifiable groups were under-represented in the venire panel and the jury.  Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); State v. Porterfield, 746 S.W.2d 441 (Tenn.), cert. denied, 486 U.S. 1017 (1988).

8.     Petitioner's first degree felony murder conviction violated the Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution because the jurors were influenced by extraneous and prejudicial influences. State v. Fuino, 608 S.W.2d 892, 895 (Tenn. Crim. App. 1980).

3.   Counsel failed to obtain all necessary portions of the transcript and record for appeal.

4.   Counsel failed to reduce their work-load to the level acceptable for handing a capital murder appeal.  Counsel continued to carry their full criminal and civil practices throughout his representation of Petitioner and neither withdrew from nor declined representation in other matters.

34

III.    ISSUE III.--COUNSEL WERE INEFFECTIVE FOR FAILING TO MOVE TO
STRIKE THE DEATH PENALTY AS A PUNISHMENT BECAUSE IT VIOLATES
TREATIES WHICH HAVE BEEN RATIFIED BY THE UNITED STATES, AND
VIOLATES ESTABLISHED INTERNATIONAL LAW

Article VI, clause 2 of the United States Constitution, the Supremacy Clause, was violated

when Petitioner's rights under treaties to which the United States is bound and customary

international law were disregarded.   United States v. Belmont, 301 U.S. 324 (1937), The Paquete

Habana, 175 U.S. 677, 700 (1900); *see* Breard v. Greene, 118 S. Ct. 1352, 1355 (1998).  Those rights

35

include the right to be represented by competent legal counsel during his defense.[3] Counsel failed to file any motions asserting petitioner's rights under international law, including, but not limited to,

1.    His rights under treaties ratified by the United States. Treaties are the supreme law of the land, and the rights guaranteed under them preempt any contradictory state laws. U. S. Const., Art. VI, cl.2; *see, e.g.*, Breard v. Greene, 118 S. Ct. 1352, 1355 (1998). Those treaties include:

(a)    International Covenant on Civil and Political Rights, Dec. 19, 1966, G.A. Res. 2200, U.N. GAOR, Supp. No. 16 at 52, U.N. Doc. A/6316 (1967), 999 U.N.T.S. 171, art. 24 [hereinafter ICCPR], which was ratified by the United States on June 8, 1992;

(b)    The International Convention on the Elimination of All Forms of Racial Discrimination, Mar. 7, 1966, G.A. Res. 2106A, U.N. GAOR, 20th Sess., Supp. No. 14 at 47, U.N. Doc. A/6014 (1965) [hereinafter Race Convention], which was ratified by the United States on October 21, 1994; and

(c)    The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10 1984, G.A. Res. 39/46, U.N. GAOR, 39th Sess., Supp. No. 51, at 197, U.N. Doc. 39/51 (1984) [hereinafter Torture Convention], which was ratified by the Untied States on October 21, 1994.

2.    Trial counsel were also ineffective for failing to move to strike the death penalty for its violation of treaties entered into and signed by the President of the United States. The President's action in the area of foreign relations, including the rights guaranteed under these treaties, preempts any contradictory state law. United States v. Belmont, 301 U.S. 324 (1937). Those treaties include:

(a)    The American Convention on Human Rights, Nov. 22, 1969, O.A.S.T.S.No. 36, O.A.S. Off. Riec. OEA/Ser. L./V./II.23/Doc. 21 Rev. 6 [hereinafter American Convention] signed on June 1, 1977;

(b)    The Convention on the Elimination of All Forms of Discrimination Against Women, Dec. 18, 1979, G.A. Res. 34/180, U.N. GAOR, 34th Sess., Supp. No. 46 at

---

[3] ICCPR, art. 14(3); American Convention, art. 8(2).

193, U.N. Doc. A/34/46 (1979) [hereinafter Women's Convention], which was signed on July 17, 1988; and

(c)     The International Covenant on Economic, Social and Cultural Rights, Dec. 15, 1966, 1976, 999 U.N.T.S. 3 [hereinafter Economic Covenant], which was signed on October 5, 1977.

3.     Trial counsel were also ineffective for failing to move to strike the death penalty for its violation of Petitioner's rights under customary international law.  Customary international law and *jus cogens* norms are binding upon the courts as the law of the land.  "The law of nations . . . is part of the law of the land." The Paquete Habana, 175 U.S. 677, 700 (1900).  Evidence of customary international laws can be found, *inter alia*, in other treaties and international proclamations neither signed nor ratified by the United States, including but not limited to:

(a)     The American Declaration of the Rights and Duties of Man, May 2, 1948, Res. XXX, at 38, Final Act, Ninth Int'l Conf. of American States, Bogata, Columbia, Mar. 30-May 2, 1948 (Pan-Am 1948), O.A.S. Off. Rec. OEA/Ser. L./V./ II.23/Doc. 21 Rev. 6 (1979), Art. XX [hereinafter American Declaration] and

(b)     Universal Declaration of Human Rights, G.A. Res. 217, U.N. GAOR, 3d Sess., pt.1, U.N. Doc. A/810 (1948) [hereinafter Universal Declaration].

Those rights guaranteed to petitioner through treaties and customary international law that counsel failed to raise, include, but are not limited to:

1.     The right to life[4];

2.     The right to be free from racial discrimination[5];

3.     The right to be free from discrimination on the basis of economic status[6];

4.     The right not to be sentenced to death for this crime because it was not sufficiently serious to warrant a sentence of death[7];

5.     The right not to be put to death by electrocution, because death by electrocution

---

[4] ICCPR, art. 6(1); American Declaration, art. I; Universal Declaration, art. 3; American Convention, art. 4(1).

[5] ICCPR, arts. 3, 14(1), 16, and 26; Universal Declaration, arts. 1, 2, 6, and 7; American Declaration, art. II; American Convention, arts. 3 and 24; Race Convention.

[6] ICCPR art. 26; *see* ICCPR, arts. 3, 14(1), and 16; Universal Declaration, arts. 1, 2, 6, and 7; American Declaration, art. II; American Convention, arts. 3 and 24; Economic Convention.

[7] ICCPR, art. 6(2); American Convention, art.4(2).

constitutes cruel, inhumane and degrading punishment[8];

6.    The right to not be executed by lethal injection, because death by lethal injection constitutes cruel, inhumane and degrading punishment[9];

7.    The right to a fair and impartial trial[10];

8.    The right to be presumed innocent until proven guilty according to law[11];

9.    The right to detailed notice of the charges against him/ her[12];

10.    The right to adequate time and resources in which to prepare his defense[13];

11.    The right to obtain the attendance of witnesses to testify in his/her defense[14];

12.    The right to examine witnesses against him/her[15]; and;

13.    The right to be free of coercion to confess guilt[16].


## IV.    ISSUE IV. OTHER CONSTITUTIONAL RIGHTS VIOLATED

Petitioner is entitled to have his conviction and sentence vacated because the following violations of his state and constitutional rights have rendered Petitioner's conviction and sentence void and/or voidable.  Tenn. Code Ann. § 40-30-203.

---

[8] ICCPR, arts. 7, 10, and 16; Universal Declaration, art. 5; American Declaration, art. XXV, American Convention, art. 5; Torture Convention.

[9] ICCPR, arts. 7,10, and 16; Universal Declaration, art. 5; American Declaration, art. XXV, American Convention, art. 5; Torture Convention.

[10] ICCPR, art. 14; Universal Declaration, art. 10; American Declaration, art. XV, art. XVII; American Convention, art. 8.

[11] ICCPR, art. 14(2); Universal Declaration, art. 11(1); American Declaration, art. XXVI; American Convention, art. 8(2).

[12] ICCPR, art. 9(2); American Convention, art. 8(2).

[13] ICCPR, art. 14(3); Universal Declaration art. 11(1); American Convention, art. 8(2); *see also* American Convention, art. 8(2)("the right . . . to obtain the appearance, as witnesses, of experts of other persons who may throw light on the facts.").

[14] ICCPR, art. 14(3)("To examine. . . the witnesses against him and to obtain the attendance and examination of witnesses on this behalf *under the same conditions as witnesses against him.*)(emphasis added); American Convention, art. 8(2); *see also* Universal Declaration, art. 11(1)(The right to "all the guarantees necessary for his defence.").

[15] ICCPR, art. 14(3)("To examine. . . the witnesses against him and to obtain the attendance and examination of witnesses on this behalf *under the same conditions as witnesses against him.*)(emphasis added); American Convention, art. 8(2); *see also* Universal Declaration, art. 11(1) (The right to "all the guarantees necessary for his defence.").

[16] ICCPR, art. 14(3); American Convention, art. 8, (2-3).

1.    The evidence was insufficient to support a finding that Petitioner was guilty, beyond
      a reasonable doubt, of all essential elements of the crime of which he was convicted.
      The evidence was also insufficient to support the jury's conclusion that five statutory
      aggravating circumstances exist in this case and that they outweigh the mitigating
      factors presented by Petitioner. In the absence of sufficient evidence, Petitioner's
      conviction and sentence are a violation of the rights guaranteed by the Sixth, Eighth
      and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7,
      8, 9, 10, 16, 17 and 19 of the Tennessee Constitution. Jackson v. Virginia, 443 U.S.
      307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

2.    The proportionality review conducted by the Tennessee Supreme Court violated the
      Sixth, Eighth and Fourteenth Amendments to the United States Constitution and
      Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution.

      (a)    At the time of the Tennessee Supreme Court's proportionality review in
             Petitioner's case, mandated by Tenn. Code Ann. § 39-13-206, Tenn. Sup. Ct.
             R. 12 provided that a specified form "shall be completed in its entirety" and
             "included in the technical record." The Rule 12 proportionality review form
             is not part of the technical records in Petitioner's case.

      (b)    At the time of the Tennessee Supreme Court's proportionality review in
             . Petitioner's case, the Rule 12 forms of other first degree murder conviction,
             which are to serve as the baseline for the Tennessee Supreme Court's
             proportionality review, were incomplete and therefore have not been
             completed in their entirety as required by Tenn. Sup. Ct. R. 12.

      (c)    At the time of the Tennessee Supreme Court's proportionality review in
             Petitioner's case, mandated by Tenn. Code Ann. § 39-2-206, the Tennessee
             Supreme Court had access to fewer than 20% of the Rule 12 forms "from
             . similar cases," which are to provide the baseline for the Court's

39

· proportionality review.

(d)     The proportionality review process in Petitioner's case failed to provide due process or assistance of counsel as the material facts used for the determination of proportionality were unknown to Petitioner and Petitioner's Counsel were not permitted an opportunity to comment, add to, or object to those facts.

3.     The conviction and death sentence in this matter are unconstitutional under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution, because of flaws in the process by which the jury was assembled which resulted in the under-representation of identifiable groups in the venire panel and the jury. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); State v. Porterfield, 746 S.W.2d 441 (Tenn.), cert. denied, 486 U.S. 1017 (1988). The process by which the jury was assembled in Petitioner's case also constitutes a due process violation in that the terms of Tennessee's jury assembly statute were not met in a number of ways. Tenn. Code Ann. § 22-2-201 to -308.

4.     Death by electrocution or lethal injection is cruel and unusual punishment instituted in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 8 and 16 of the Tennessee Constitution.

5.     The conviction and death sentence in this matter were unconstitutional under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution, because the jurors considered and/or were exposed to extraneous and prejudicial information. State v. Funio, 608 S.W.2d 892, 895 (Tenn. Crim. App. 1980).

6.     Petitioner's murder conviction and death sentence are unconstitutional because Tennessee's murder and death penalty statutes are constitutionally defective. The constitutional defects include, but are not limited to, the following:

40

2₅5

(a)     Tennessee's murder statute is vague and failed to fulfill the requirements of Article II, § 17 prohibits the enactment of any bill which embraces more than one subject which is to be expressed in the title of the bill. Tenn. Code Ann. § 39-13-202 contains more than one subject and the title of the statute gives no notice of some of the subjects addressed by the statute. State v. Hailey, 505 S.W.2d 712 (Tenn. 1974).

(b)     Tennessee's death penalty statute violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, § 16 of the Tennessee Constitution because it provides for the sentence of death by electrocution and lethal injection, which are cruel and unusual. Tenn. Code Ann. § 40-23-114.

(c)     Tennessee's death penalty statute provides insufficient guidance to the jury concerning what standard of proof the jury should use in making the determination that the aggravating circumstances outweigh the mitigating circumstances.

(d)   ·  Tennessee's death penalty statute does not sufficiently limit the exercise of the jury's discretion, because once the jury finds the existence of one aggravating factor, it can impose a sentence of death no matter what evidence of mitigation is shown.

(e)     Tennessee's death penalty statute limits the jury's discretion to exercise mercy by requiring the jury to impose a sentence of death if it finds that the aggravating factors outweigh the mitigating factors.

(f)     Tennessee's death penalty statute fails to ensure that non-statutory mitigating factors are given the same weight as statutory mitigating factors by failing to require that the jury be given written instructions on the equal weight of non-

41

statutory mitigating factors.

(g)     Tennessee's death penalty statute does not require the jury to make the ultimate determination that the appropriate punishment is a death sentence.

(h)     Tennessee's death penalty statute does not require that the jury be instructed in writing that it may impose a life sentence on the basis of mercy alone.

(i)     Tennessee's death penalty statute does not provide a way to correct, by written instructions or the presentation of evidence, jurors' common misperceptions regarding the actual terms of life sentences and death sentences, the cost of incarceration, the cost of execution, the death penalty's deterrent effect, and the painful nature of death by electrocution

(j)     Tennessee's death penalty statute prevents effective review on appeal because they do not require the jury to make specific findings with respect to the presence or absence of mitigating factors.

(k)     Tennessee's death penalty statute provides for a punishment, death, which is cruel and unusual.

(l)     Tennessee's death penalty statute provides for a method of execution, electrocution and lethal injection, which are cruel and unusual.

(m)     Tennessee's death penalty statute is applied in a discriminatory manner – unfairly affecting racial, gender, geographic, economic and political classes.

(n)     Tennessee's death penalty statute does not provide an adequate method for proportionality and arbitrariness review by the Tennessee Supreme Court.

42

(o)     Tennessee's death penalty statute has been applied by prosecutors in a manner that abuses their discretion because the statutes do not provide uniform standards for application of the death sentence.

(p)     Tennessee's death penalty statute has produced violations of the equal protection clauses of the state and federal constitutions because it does not provide uniform standards for qualifying jurors for service on capital juries.

(q)     Tennessee's death penalty statute permits the introduction of unreliable evidence in support of aggravating factors and in rebuttal of mitigating factors.

(r)     Tennessee's death penalty statute allows the state to make closing arguments to the jury in the penalty phase.

(s)     Tennessee's death penalty statute does not require that the jury be instructed regarding the consequences of its failure to reach a unanimous verdict in the penalty phase.

(t)     Tennessee's death penalty statute requires the jury to agree to a unanimous verdict in order to impose a life sentence.

7.     Petitioner's murder conviction and death sentence were obtained in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution because the jury was improperly instructed as to the law applicable to the case. The erroneous instructions went to essential issues of guilt/innocence and the sentence and they affected the fairness of the trial itself. Judging the instruction as a whole, Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993); Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the instructions in Petitioner's case caused a complete miscarriage of justice. The errors in the

43

2 8

guilt/innocence and sentencing instructions in Petitioner's case include, but are not limited to, the following:

(a)         Guilt/Innocence Instructions –

     (1)    The trial court improperly instructed the jury that "reasonable doubt" should be equated with "moral certainty."

     (2)    The trial court improperly failed to adequately instruct the jury on the lesser included offenses.

     (3)    The trial court improperly instructed the jury that it was required to presume the truthfulness of witnesses, thereby violating the jury's prerogative to assess the credibility of witnesses and determine facts.

     (4)    The trial court improperly instructed the jury regarding the definitions of "premeditation" and the presumption of innocence.

(b)         Sentencing Instructions –

     (1)    The trial court improperly instructed the jury that it must reach a unanimous verdict in order for Petitioner to receive a life sentence.

5.         Petitioner's murder conviction and death sentence violated the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 of the Tennessee Constitution because of errors in the voir dire proceedings, including but not limited to the following:

(a)         The state impermissibly struck jurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1989).

44

(b)    The trial court permitted a flawed death qualification, impermissibly striking jurors for cause based on their general opposition to the death penalty. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

(c)    The trial court failed to strike, for cause, those jurors who held some kind of bias against Petitioner, his case, or any class or group to which Petitioner belongs.

6.    The death sentence was imposed in Petitioner's case in violation of the Sixth, Eighth and Fourteenth Amendment to the United States Constitution and Article I, §§ 6, 8, 9, and 16 of the Tennessee Constitution, because the heinous, atrocious or cruel aggravating factor under Tenn. Code Ann. § 39-13-204(i)(5) is vague and overbroad and thus fails to narrow the scope of those individuals guilty of first degree or felony murder who are eligible of the death penalty. Moreover, the definitions provided in the instructions in this case, as required by State v. Williams, 690 S.W.2d 517 (Tenn. 1985), are a mere tautology and do not provide the necessary clarity to provide the required narrowing of those eligible for death.

7.    Death by electrocution constitutes cruel and unusual punishment.

(a)    T.C.A. § 40-23-114 at the time specified electrocution as an authorized method of carrying out a sentence of death in Tennessee. Execution by electrocution is neither immediate nor painless and therefore is cruel and unusual punishment under Article I, § 16 of the Tennessee Constitution and the Eighth Amendment to the United States Constitution. See, Fierro v. Gomez, 77 F.3d 301 (9th Cir. 1996)(holding that death by lethal gas is cruel and unusual punishment).

(b)    Electrocution using Tennessee's electric chair and protocol is particularly

45

cruel and unusual as according to Dr. John P. Wikswo, Jr., Professor of
Living State Physics and Professor of Physics at Vanderbilt University, and
others the peculiar design of Tennessee's electric chair and procedures
recommended for the use of Tennessee's electric chair would result in
prolonged and agonizing pain to the person being electrocuted.

8.   The death penalty violates the Eighth and Fourteenth Amendments to the United
     States Constitution and Article I, §§ 8 and 16 of the Constitution of Tennessee as the
     requirements of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346
     (1972), that the discretion to impose death must be closely confined to avoid
     arbitrariness, those of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973
     (1978) that the sentencer must have unlimited discretion not to impose death, and of
     Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), that the
     death penalty must be imposed "fairly, and with reasonable consistency or not at all,
     have proven impossible to administer in practice, and thus, there is no way to
     constitutionally administer the death penalty. Callins v. Collins, 510 U.S. 1141, 114
     S.Ct. 1127, 1128-1138, 127 L.Ed.2d 435 (1994)(Justice Blackman, dissenting from
     the denial of certiorari).

9.   The death penalty violates the Fourth, Sixth, Ninth and Fourteenth Amendments to
     the United States Constitution and Article I, §§ 6, 7, 8, 9, 16 and 17 of the Tennessee
     Constitution as it impinges on Petitioner's fundamental right to life. The right to life
     is a fundamental constitutional right and the punishment of death is not necessary to
     promote any compelling state interest in punishing petitioner nor has the state shown
     that there are no less restrictive means of punishing him.

271

## STATEMENT REQUIRED BY TENN. CODE ANN. § 40-30-204(e)

Petitioner asserts the following allegations of fact explaining why each ground for relief raised in this petition was not previously presented in any earlier proceedings.

1.   The ineffective assistance of counsel claims raised by Issues One, Two, and Three of this Petition could not have been presented for determination in any prior proceeding and are not waived. First, these claims assert a challenge to the effectiveness of the attorneys who were representing Petitioner in the only proceedings that preceded the present action. It would have been impossible for these attorneys to allege their own ineffectiveness due to an inherent conflict of interest. Second, while claims of ineffective assistance of counsel may be raised on direct appeal, Tennessee courts discourage that practice as one "fraught with peril." Thompson v. State, 958 S.W.2d 156, (Tenn. Crim. App. 1997) (citing State v. Sluder, No. 1236, slip op. at 16 (Tenn. Crim. App., March 14, 1990)). An appellant "runs the risk of having the issue resolved 'without an evidentiary hearing which, if held, might be the only way that harm could be shown – a prerequisite for relief in ineffective trial counsel claims.'" Id. (quoting Jimmy Wyane Wilson v. State, No. 909, slip op. at 10 (Tenn. Crim. App., May 29, 1991)). The Tennessee Court of Criminal Appeals has surmised that the Tennessee Supreme Court may refuse to consider, as premature, ineffective assistance of counsel claims raised on direct

47

appeal. Id. For these reasons, claims raised by Issues One, Two, and Three are not waived. Tenn. Code Ann. § 40-30-206(g).

2.    To the extent that this Court concludes that any issue raised in this Petition was not presented at a prior proceeding where that issue could have been presented, Petitioner did not personally, with knowledge and understanding, waive those issues. Contrary to the ruling of the Tennessee Supreme Court in House v. State, 911 S.W.2d 705 (Tenn. 1995), the absence of a personal, knowing and understanding waiver on the part of Petitioner precludes waiver of the claims raised in this petition.

(a)    The Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 8 and 16 of the Tennessee Constitution preclude application of the House waiver standard to claims involving fundamental rights, as do all the issues raised in this petition. The Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 8 and 16 of the Tennessee Constitution preclude a court from reaching a conclusion with respect to the waiver of claims from a silent record. For a waiver of fundamental rights to be effective, the record must affirmatively demonstrate a knowing and understanding waiver of such rights. The record contains no such demonstration, and therefore, the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 8 and 16 of the Tennessee Constitution preclude the Court from concluding that Petitioner waived the above claims.

(b)    Ineffective assistance of counsel excuses the failure of Petitioner's counsel to raise claims at trial and on direct appeal. Petitioner had a constitutionally protected right to effective assistance of counsel at his trial and on his direct appeal. Counsel provides ineffective assistance by failing to raise claims that have a reasonable probability that had they been raised, the result of Petitioner's trial would have been different. For the reasons stated in Issues

48

One through Four of this petition, counsel's failure to raise these claims constitutes a deficient performance. Because Petitioner therefore received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution, he is excused from any failure to present the above claims at his trial or on direct appeal.

3.   This Court cannot apply the waiver statute to avoid addressing the merits of any claims raised in this petition. In prior cases, Tennessee court have routinely addressed the merits of claims that were subject to the waiver defense. To address the merits of waived claims in those cases but not address the merits of potentially waived claims in this case would constitute a violation of Petitioner's right to equal treatment under the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article XI, § 8 of the Tennessee Constitution.

4.   The proportionality issue is not waived because the Supreme Court had a duty at the time of the direct appeal to conduct proportionality review. Petitioner submits that for the reasons stated that review was constitutionally deficient. Moreover, Petitioner has a right to be free from a fundamentally unfair and disproportional sentence of death.

5.   Issues Three and Four involve issues of fundamental fairness in the judicial process and therefore should be considered by this court as the Petitioner should not be required to sacrifice his life when fundamental errors infect his conviction and sentence.

6.   Issues Three and Four involve the constitutionality of the death penalty in this case. This is an area in which the law is constantly changing and thus many of the subparts are subject to new law exceptions to waiver.

49

7.    Issue Four involves the constitutionality of the instructions given   at the guilt/innocense phase of the trial. Many of these instructions have been subject to new law exceptions to waiver.

8.    Issue One involves newly discovered evidence that was available to petitioner only after his direct appeal was completed.

9.    Issue Four involve issues of new law and fundamental rights which protect them from the doctrine of waiver under T.C.A. § 40-30-202(b)(1

## CONCLUSION

For the foregoing reasons Petitioner submits that he is entitled to have his  murder conviction and death sentence vacated and/or set aside.

Respectfully Submitted,

Paul N. Buchanan
1526 Crockett Hills Blvd.
Brentwood, Tennessee 37027
(615) 370-4503
BOPR: 017697

Linda Sesson-Taylor   010303
206 E. Main St.
Jackson, Tennessee 38301

### CERTIFICATE OF COUNSEL

I, Paul N. Buchanan, certify that I have investigated the possible constitutional violations alleged by petitioner, however, that investigation is not complete. I have raised all non-frivolous claims known to me at this time. I am aware that any ground not raised shall be forever barred by application of Tenn. Code Ann. § 40-30-206(g). This case involves at least 9 boxes of documents. The extensive record of Petitioner requires further investigation far beyond the "normal" capital case. Current counsel has only been working on this case a little over 7 months. I understand the requirements of this certificate as set out in Supreme Court Rule 28 and respectfully submit that I cannot ethically sign the certificate as set out in the rule as I do not know whether I have raised all available non-frivolous issues and would assume that I have not done so, as the investigation into this case remains ongoing.

Paul N. Buchanan
B.P.R. # 017697

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing amended petition was delivered to the Office of the District Attorney General for Madison County, Tennessee, at Jackson, Tennessee, this 1st day of November, 2001.

Paul N. Buchanan

51

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
DIVISION I

FILED
JUDY BARNHILL, CIRCUIT COURT CLERK

JON HALL                              )
                                      )
VS.                                   )    No. C-00-422
                                      )
STATE OF TENNESSEE                    )

NOV 21 2001

DEPUTY CLERK

A.M. 3:05 P.M.

## STATE'S RESPONSE AND MOTION TO DISMISS AMENDED PETITION

Comes now the State of Tennessee by and through the Office of the District Attorney
General and in response to the above styled pleading states:

1. The issue of ineffective assistance of counsel should be denied because it fails to
   state with any particularity sufficient facts to support the allegation. A mere
   allegation of ineffectiveness without more is a mere conclusory statement which
   should be denied without a hearing.

2. The state will rely upon waiver and previous determination of the issues.

3. The state denies all other allegations in the petition and amendments.

4. The amendment should be disallowed pursuant to T.C.A. § 40-30-207 et.seq. as
   untimely.

Wherefore premises considered the State moves this Honorable Court to deny
the above styled pleading.

Respectfully Submitted

Assistant District Attorney

Certificate of Service

I hereby certify that a true and exact copy of the foregoing was mailed or
delivered to Linda Taylor on or before the filing date as affixed by the Clerk of
this Court this the 21st day of November, 2001.

Assistant District Attorney

FILED

JUDY BARNHILL, CIRCUIT COURT CLERK

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
AT JACKSON

DEC 20 2001

CF

DEPUTY CLERK

A.M. 12:25 P.M.

| | | |
|---|---|---|
| JON HALL, | ) | |
| | ) | |
| Petitioner | ) | Madison County No. 96-589 |
| | ) | |
| VS. | ) | Post-Conviction No. CO422 |
| | ) | |
| STATE OF TENNESSEE | ) | |
| | ) | |
| Respondent | ) | |

---

AMENDED MOTION FOR CONTINUANCE

---

This cause came on to be heard on the 10th day of December, 2001, at which time the Court indicated that it would not here this motion unless, Mr. Paul Buchanan, Dr. Caruso and Ms. Higuera were present. This motion was reset for January 2nd, 2001.

1. The Counsel for the Petitioner states that this is an extraordinarily complex case that took nearly two years to try. It contains in excess of 45 file boxes of documents.

2. The affidavit of Dr. Caruso sets out the difficulties that he anticipates in preparing this case for trial. See attached.

3. Ms. April Higuera has not been able to complete her investigation.

4. The State of Tennessee has failed to file a detailed response and the Assistant Attorney General indicates that he does not intend to file any further pleadings. The Petitioner avers that the response is inadequate.

5. The Counsel for the Petitioner, Paul Buchanan, desires to attend a seminar from January the 4th through the 11th which will aid the preparation of the Petitioner's case.

6. Further, that there a conflict has developed between counsel and Linda Taylor desires to withdraw.

7. A continuance will not prejudice either party.

WHEREFORE PREMISES CONSIDERED THE PETITIONER PRAYS that he be granted a continuance for the reasons stated hereinabove.

RESPECTFULLY SUBMITTED:

LINDA SESSON TAYLOR

2 ? 8

Attorney at Law
925 N. Highland Ave.
Jackson, TN 38301
(731) 424-5767

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was hand

delivered to Al Earls, this the 20th day of December, 2001.

LINDA SESSON TAYLOR

IN THE CIRCUIT COURT OF THE 26TH JUDICIAL DISTRICT,
MADISON COUNTY, TENNESSEE

JON HALL                                ]
                                            Madison County Co. 96-589
V.                                      ]
                                            Post-Conviction No. CO422
STATE OF TENNESSEE                      ]


**AFFIDAVIT OF PSYCHIATRIST KEITH CARUSO, M.D.**

STATE OF TENNESSEE          ]

COUNTY OF MADISON           ]

      Comes now the Affiant, Keith Caruso, M.D., and after being duly sworn, affirms

the following, which is true to the best of my knowledge, information and belief:

1. I am medical doctor and psychiatrist licensed in the state of Tennessee. My

    address is 9005 Overlook Boulevard, Brentwood, Tennessee 37027.

2. I have been appointed by the Court to assist Mr. Paul Buchanan and Ms.

    Linda Sesson Taylor, attorneys for Mr. Jon Hall, in the appeal of his

    conviction. I had discussed a plan for the case with Mr. Buchanan on October

    1, 2001, in which I detailed what my examination of Mr. Hall would entail,

    including several lengthy interviews with the defendant and possibly family

    members and a review of records. I also stated that the impulsive nature of

    the crime suggested that laboratory studies (such as levels of serotonin

    metabolites in the Appellant's cerebrospinal fluid), radiological studies (such

    as MRI), and neuropsychological testing may be necessary in order to

    complete the examination. As these services can be costly, I would prefer to

    have the opportunity to perform a relatively in depth evaluation of the

Appellant before recommending a "shotgun approach" to the evaluation, as these studies may not be necessary, depending on my findings.

3. I have only received word of the Administrative Offices of the Courts approval of my services in this case today (and have yet to receive a copy of that order), leaving a total of 45 days in which to complete the evaluation. Between the volume of the case file delivered to me (two 3 ¾ inch binders), my previously scheduled appointments, upcoming court appearances, speaking engagements, and family obligations during the Holidays, this will not be possible. In the best of circumstances, these evaluations generally require in the range of 120 days to complete. What appeared to be possible at my October 1, 2001 meeting with Mr. Hall is just not possible at this late of a date.

FURTHER AFFIANT SAITH NOT.

Keith A. Caruso, M.D.
Affiant

STATE OF TENNESSEE          ]
COUNTY OF WILLIAMSON     ]

Sworn to and subscribed before me this 30th day of November 2001.

NOTARY PUBLIC      My commission expires June 25, 2005

281

# APRIL D. HIGUERA

**Professional Legal Investigations**
615-969-0267

AprilHigueraPI@aol.com

Criminal & Civil                                      P.O. Box 198683
Licensed P.I., Tennessee                              Nashville, TN  37219


November 13, 2001


Paul A. Buchanan, Esq.
1526 Crockett Hills Blvd.
Brentwood, TN  37027

      **Re:    Jon Douglas Hall**

Dear Paul:

      I have enclosed typed notes of my interviews with Jon to date (Oct. 9 – Nov. 9, 2001). I am
sending a copy to Dr. Caruso for his information as well.

      As you are aware, funding for investigation has been exhausted, and there is a lot more work to
do, including interviewing family members, friends, co-workers and percipient witnesses. I also have
merely scratched the surface of reviewing the files you brought to me (9 boxes). I will hold off on
providing services until more funding is acquired, however, I will continue to visit with Jon briefly about
once a week. I feel that Jon needs the attention, and I would like to do what I can to keep him calm and
satisfied that we are working for him.

      Jon has not yet been visited by Dr. Caruso. Please let me know what Dr. Caruso may need me to
help with once he has had an opportunity to assess the mitigation already gathered.

      I look forward to seeing you soon.

Sincerely,

April D. Higuera

Enclosures
cc:    Keith Caruso, M.D. (w/encl.)

# THE CENTER FOR AMERICAN AND INTERNATIONAL LAW

### (formerly The Southwestern Legal Foundation)

Announces



## CAPITAL TRIAL ADVOCACY PROGRAM

TO BE HELD AT
THE CONNALLY CENTER
THE UNIVERSITY OF TEXAS
SCHOOL OF LAW
AUSTIN, TEXAS
JANUARY 4-11, 2002

*In cooperation with:*

The University of Texas School of Law

The Texas Defender Service

The Texas Criminal Defense
Lawyers Association

American Bar Association's
Death Penalty Representation Project

American Bar Association
Section of Litigation

National Association of Criminal
Defense Lawyers

## SCHOLARSHIP ASSISTANCE

**For information about scholarships for this program, please turn to the registration page.**

Approved for Entry:

Paul N. Buchanan, BPR 017697
1526 Crockett Hills Blvd.
Brentwood, Tennessee 37027
615-370-4503



IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE

AT JACKSON

Jon Hall,

 Petitioner

Vs.

STATE OF TENNESSEE,

 Respondent.

MADISON COUNTY NO. 96-589

POST CONVICTION NO. C00-422-I

---

MOTION TO SUPPLEMENT THE RECORD AND SUBMIT CLAIMS FAIRLY IN THE STATE COURTS

I. INTRODUCTION

 Comes now the petitioner, Jon Hall, by and through himself commensurate with Article I, § 9 of the Tennessee Constitution and the Sixth Amendment of the United States Constitution, to supplement the record with (5) structural defects fairly in the state courts. See, e.g., Cole v. State, 798 S.W.2d 261 (Tn. Crim. App. 1990). In support of this motion, the petitioner shall show forth:

 1. The petitioner has looked over what appointed counsel has filed for the petitioner in these proceedings, and the petitioner has found that counsel approach to the defective reasonable doubt jury instructions as presented is meritless under the holding of State v. William Hall, 976 S.W.2d 121, 158-159, 170-171 (Tn. 1998) (defective reasonable jury instruction NOT CHALLENGED with the charged language "the mind rest easily"). See, e.g., counsel's amended petition, issue one (ineffective assistance of counsel), page 16., § (g) (1), and issue two (inefective assistance of counsel on appeal) page 33., § (6) (1);

 2. That the defective reasonable doubt jury instruction issues should be properly challenged so that justice can be done by testing the language in the state courts fairly. See, e.g. Rickman v. Dutton, 864F. Supp. 686 (M.D. Tenn. 1994) (Defective reasonable doubt jury instructions CHALLENGED WITH the language "the mind rest easily" - a structural defect on the government's burden of proof);

 3. The petitioner contends, that his trial counsel were ineffective under (1989 ABA guidelines, 11.7.3) and (1989 ABA guidelines 11.9.1 (A), & (B)), for failing to object and preserve the listed errors on appeal for proper post-conviction review;

 4. The petitioner contends, that appellate counsel was ineffective under (ABA guidelines 11.9.2 (A) & (D)), for failing to be familiar with all state and federal appellate and post convictions remedies available, and make intelligent tactical decisions regarding how to properly raise the listed errors in previous roceedings, that trial counsel failed to protect or preserve;

- 1 -

5. The petitioner contends, that his post-conviction counsel was ineffective under (1989 ABA guidelines, 11.9.3 (A), & (C)), by failing to be familiar with all state and federal appellate and post-conviction remedies available to the petitioner and present all arguably meritorious issues properly in counsel's amended petition as indicated above;

6. That the petitioner respectfully requests this Court to: (1) order that counsel investigate and / or present any and all of the following meritorious claims properly within the aforementioned (1989 ABA guidelines); (2) accept each of the petitioner's claims; and (3) compel the 26th Judicial District Attorney, to serve upon the petitioner (himself), an answer in compliance with T.C.A. § 40-30-208 (d), as discussed previously by his own motion on December 12, 2000.

II. <u>STRUCTURAL DEFECTS IN THE PETITIONER'S TRIAL THAT DEFY HARMLESS ERROR ANALYSIS</u>

The petitioner contends, that (5) five structural defects and / or fundamental constitutional errors, had a pervasive effect on the inferences that may be drawn from the evidence, which altered the entire evidentiary picture of the trial. Had counsel raised the following issues in their motion for new trial or assigned the fundamental errors in their brief, the court would have relieved the petitioner of the fundamentally unjust incarceration and sentence of death. See, e.g., Momon v. State, 18 S.W.3d 152, 165-166 (Tenn. 1999) (Only a very limited class of errors have been found to be structural," and subject to automatic reversal). The recognized structural defects in the petitioner's case that defy harmless error analysis, are as follows:

(1) The misstatement of law in reference to intoxication defense provided under Tenn. Code Ann. § 39-11-503 (Intoxication). See, e.g., State v. Phipps, 883 S.W.2d 138, 150-151 (Tenn. Crim. App. 1994) ((1) jury instruction served to obviate consideration of defense theory interfered with the right to trial by jury, citing State v. Bobo, 814 S.W.2d 353, 357 (Tenn. 1991); and (ii) the instructions amounted to an impermissible comment on the evidence, thus establishing another structural defect, i.e., denial of an impartial judge). See, e.g., State v. Benson, 973 S.W.2d 202, 207 (Tenn. 1998). See: e.g., "Affidavit To Support denial Of Effective Assistance Of Counsel Regarding Misstatement Of Law;

(2) Jury instructions which equated the language of "reasonable doubt" with "moral certainty" and permits a conviction upon a "satisfactory conclusion" in conjunction with the languge to let the "mind rest easily"). See, e.g., Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 2082, 124 L.Ed.2d (1993) (defective reasonable doubt instruction); Rickman v. Dutton, 864 F. Supp. 686 (M.D. Tenn. 1994) (defective reasonable doubt instruction); See, e.g., Transcript of Evidence, Volume III., pages 353-354 (Reasonable doubt); pages 354 (moral certainty); page 365 (Satisfactory conclusion); and 353-354 (Mind rest easily);

(3) Denial of right to be present at hearing regarding the improper change of venue. See, e.g., State ex rel. Anglin v. Mitchell, 575 S.W.2d 284, 287-288 (Th. 1979) (a court's jurisdiction at beginning of trial may be lost in course of proceeding due to it's failure to afford defendant due process of law); State v. Muse, 967 S.W.2d 764, 768 (Tenn. 1998) (denial of right to be present at jury selection). See also: "Affidavit Supporting Denial Of Due Process And Improper Waiver Of Trial In Henderson County;" and

(4) Denial of right to be heard / self representation at trial and on appeal. See, e.g., McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial). See also: Transcript of Evidence, Volume II., page (He has asked to represent himself in the past - trial level); and "Argument To Support Reasons Why Grounds For Relief Were Not Presented In Previous Proceedings," (challenging Burkhart). See, Donahoe's file, pages 272-73, 268-69, 296, & 407-08 (request to be heard on appeal).

## III. WAIVER PROVISION

None of these error(s) have been waived within the meaning the meaning of T.C.A. § 40-30-206 (g), because: (1) the trial court and the appellate courts fraudulently applied the unconstitutional judge made law in State v. Burkhart, 541 S.W.2d 365 (Tenn. 1976) to prevent and impede the petitioner from exercising his state's rights; (2) ineffective assistance of trial and appellate counsel excuse the petitioner from any failure to present the claims in a previous proceeding, had counsel challenged these errors at trial, in their motion for new trial, or on appeal properly, the petitioner would have been relieved of the unjust first degree murder and sentence of death; and (3) the procedures employed by the courts in prior review of these ground(s) were themselves deficient, defective, and violate the petitioner's right to equal protection of the laws. See e.g., State v. William Hall, 976 S.W.2d 121, 172-173 (Tenn. 1998) (Sua sponte review of death sentence in Odom, case reversed).

## IV. PROCEDURAL DEFAULT

On direct appeal, the Tennessee Supreme Court affirmed the petitioner's conviction after reviewing the entire record for error. In State v. Jon Hall, 8 S.W.3d 593, (Tenn. 1999), the Supreme Court explained the scope of its review as follows in pertinent part:

"Dr. Lynn Donna Zager, a clinical psychologist, interviewed the defendant several times after his arrest. She diagnosed him as depressed and suffering from alcohol dependence. In addition, she noted personality characteristics of paranoia and dependency. In Dr. Zager's opinion, at the time of the killing the defendant suffered from depression and alcohol intoxication." Id. at 598.

"During oral argument, the defendant raised two additional issues for the first time: first, whether the trial court erred in permitting the State to use a mannequin as demonstrative evidence to document the location and extent of the victim's injuries, and second, whether the trial court erred during the guilt phase by instructing the jury, in regards to the intoxication defense, that "[i]ntoxication is irrelevant [sic] to the issue of the essential element of the Defendant's culpable mental state." Neither the use of the mannequin nor the misstatement of the pattern jury instructions were objected to at trial. Moreover, they were not listed as errors in either the Motion for New Trial or in the appeal to the Court of Criminal Appeals. We find that the failure to raise these issues in previous proceedings constitutes waiver, and we decline to address them at this time. Tenn. R. App. P. 3 (e); Tenn. R. App. P. 36 (a)." Id. at 596, n. 1;

"After thoroughly reviewing the record of the trial, the legal principles at issue, and the arguments of the parties, we find no error. The defendant's conviction and sentence are affirmed." Id. at 596.

Although the Supreme Court of Tennessee declined to address the following errors: (1) the "misstatement of law regarding the intoxication defense;" (2) the "denial of an impartial judge" claim; (3) failed to notice the error regarding the petitioner's "reasonable doubt" claim; (4) the "denial of the right to be present" regarding the illegal change of venue; and (5) the "denial of the right to be heard," there cannot be a legitimate waiver of these said claims for failing to raise them in a previous proceeding.

- 3 -

288

The Tennessee Supreme Court is under the obligation to consider "fundamental error" in jury instructions, any alleged bar to consideration of these claim would not be "independent" of federal law. See, e.g., State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982); State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975). See also: State v. Ogle, 666 S.W.2d 58, 60 (Tenn. 1984) (Tennessee Supreme Court also reviews claims of plain error).

It is evident that there is not a firmly established state procedural rule requiring the petitioner to object to the constitutionality of the jury instructions at trial. See, Capri Adult Cinema v. State, 537 S.W.2d 896, 900 (Tenn. 1976) ("Constitutional issues may be raised for the first time on appeal"). Similarly, on direct appeal petitioner was not required by Tenn. Code Ann. § 39-13-206 to allege issues as errors under any specific instances, as the Tennessee Supreme Court was "bound . . . to consider any errors in the record, whether there has been an assignment [of error] or not." See, e.g., James v. State, 385 S.W.2d 86, 90 (Tenn. 1964) (Tennessee Supreme Court reviews entire record on direct appeal under Tenn. Code Ann. § 40-3409), cert. denied, 381 U.S. 941, 85 S.Ct. 1777, 14 L.Ed. 2d 705 (1965), cited with approval in Adams v. State, 547 S.W.2d 553, 557 (Tenn. 1977).

The Supreme Court has recognized that where a defendant has been sentenced to death, the Court has recognized it is under a duty to "automatically review" the sentence, which imposes the burden on the Court to consider any alleged error, whether called to the trial court's attention or not. See, e.g., State v. Duncan, 698 S.W.2d 63, 67-68 (Tenn. 1985) cert. denied, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed. 2d 348 (1986). See also: State v. William Hall, 976 S.W.2d 121, 172-173 (Tenn. 1998) (In Odom, the Court without the benefit of argument from either party and without the development of facts supporting the circumstance's application, raised the (i) (8) issue sua sponte and held the jury erred in applying (i) (8); The State argued in its petition to rehear that it was never provided with an opportunity to brief and argue the application of the aggravating circumstance).

Any failure by the Petitioner attorneys may also be excused because failure to reach the merits of the claim could result in a "fundamentally unjust incarceration." Murray v. Carrier, 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (citing Engle v. Issac, 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed. 778 (1982)). As the Federal District Court of Tennessee has recognized, an improper "reasonable doubt" instruction is a structural error which necessarily renders a conviction fundamentally unfair. See Rickman v. Dutton, 864 F.Supp. 686 (M.D. Tenn. 1994) (quoting Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 2082-83, 124 L.Ed. 2d 182 (1993). Because the petitioner was prejudiced as a result, his claim is not procedurally defaulted.

- 4 -

285

V. MERITS OF THE PETITIONER'S CLAIM REGARDING THE DEFECTIVE REASONABLE DOUBT JURY INSTRUCTION

The Constitution requires the government to "prove beyond a reasonable doubt every element of a charged offense." Victor v. Nebraska, 511 U.S. ___, 114 S.Ct 1239, 1242, 127 L.Ed. 2d 583 (1994) (quoting In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). However, no particular form of words are constitutionally mandated when advising the jury of the government's burden of proof. Victor, 114 S.Ct. at 1243. Instead, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." Id. (citation omitted). To evaluate the constitutionality of a jury instruction, "the proper inquiry is not whether the instruction could have been applied in [sic] unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." Id. (citation omitted) (emphasis in original).

In the instant case, the petitioner alleges that his constitutional rights were violated by the following jury instruction:

"Reasonable doubt is that doubt engendered by investigation of all the proof in the case and an inability after such investigation to let the [mind rest easily] as to the certainty of guilt. Reasonable doubt does not mean a capricious, possible or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any charge, but [moral certainty] is required, and this certainty is required as to every proposition of proof requisite to constitute the offense." (Petitioner's Trial Transcript, pages 353-354). State v. William Hall, 976 S.W.2d 121, 159 (Tn. 1998) ("mind rest easily" not challenged).

Later in the charge, the trial court presented the following language immediately after trying to explain to the jury in reference to "circumstantial evidence" in conjuction with and applying the [reasonable doubt] instruction. The court said:

"It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury beyond a reasonable doubt of all the facts necessary to constitute the crime charged. Before the verdict of guilty is justified, the circumstances, taken together, must be of a conclusive nature and tendency leading the whole to a [satisfactory conclusion] and producing, in effect, a moral certainty the defendant and no one else committed the offense." (Petitioner's Trial Transcript, page 365). State v. Hall, 976 S.W.2d 121, 159 (Tenn. 1998)("Satisfactory conclusion" language challenged).

The petitioner contends, that this [reasonable doubt] instruction is similar to the instruction held to be unconstitutional in Cage v. Louisiana, 498 U.S. 3, 111 S.Ct. 328, 112 L.Ed.2d 339 (1991).

In Cage v. Louisiana, 498 U.S. 39, 40, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1991). the jury was provided with the following [reasonable doubt] instruction:

"If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty.

- 5 -

290

The United States Supreme Court held that the instruction in Cage allowed a reasonable juror to find guilt based on a degree of proof below that required by the Constitution. Id. 330. In particular, the Court took exception to language in the instruction which equated [reasonable doubt] with [grave uncertainty] and an [actual substantial doubt], and which stated that what was required was a [moral certainty], rather than a [evidentiary certainty], that the defendant was guilty. Id. at 329-30.

The Supreme Court has recently held that the term [moral certainty] does not, itself render a [reasonable doubt] instruction unconstitutional. See Victor, 114 S.Ct. at 1247-48. For example, reference to the phrase [moral certainty] is constitutionally permissible where the rest of the instruction [lends content to the phrase], Id. at 1247, and indicates the government's proper burden of proof. In Victor, the Court thus upheld the constitutionality of a [reasonable doubt] instruction that stated:

> "Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after, the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

Victor, 114 S.Ct. at 1244 (emphasis in original). The Court expressly found that the [abiding conviction] language, when used in conjunction with reference to [moral certainty], properly stated the government's burden of proof. Id. at 1247. However, the Court recognized that an instruction which requires only that jurors be [morally certain] of a defendant's guilt impermissibly suggests that [a standard of proof lower than the due process requires or . . . conviction on factors other than the government's proof]. Id.

The Court found that unlike the instruction in Victor, 114 S.Ct. at 1247, the entire [reasonable doubt] instruction in this case does not lend content to the phrase, "[M]oral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense." (Petitioner's Transcript, page 354). Moreover, the instruction contains yet another ambiguous phrase in that "reasonable doubt" is defined as [an inability after such investigation [of all the proof in the case] to let the [mind rest easily] upon the certainty of guilt." Id. Federal Court Judge Nixon found that the [moral certainty] language in conjunction with the [mind rest easily] language suggests to any reasonable juror "a lower burden of proof than what is constitutionally required."

The jury-instruction error in this case is not subject to harmless error review. Sullivan, 113 S.Ct. at 2082. Furthermore, relief on this claim is not barred under Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 1075, 103 L.Ed.2d 334 (1989), that habeas relief is unavailable where the petitioner is requesting a "new rule" of constitutional criminal procedure, because the application of a general principle applied in the case was not dictated by precedent existing when the defendant's conviction became final. Penry v. Lynaugh, 492 U.S. 302, 314, 109 S.Ct. 2934, 2944, (1989).

- 6 -

The petitioner is not seeking a "new rule" of law, but merely application of the principle announced in Winship, 397 U.S. 358, 90 S.Ct. 1068, that the jury only convict him with proof beyond a reasonable doubt that he was guilty. Although Tennessee courts were apparently not addressing challenges based on this principle at the time of his trial, the principle was well-settled at the time of his trial and through the duration of his state proceedings. Relief is not barred on the basis of non-retroactivity, because, it would have been unreasonable for any judge to deny the petitioner relief, if the claim had been reasonably available to him at an earlier point. See, e.g., Stringer, 112 S.Ct. at 1140 (federal relief available if the state courts' interpretation of existing precedent objectively unreasonable).

NOTE: The aforementioned argument starting at the beginning of page (4) four, was inspired and created from excerpts in Rickman v. Dutton, No. 3:85-0256 (M.D. Tn. 9/2/94), slip opinion, pages 41-48.

## V. MERITS OF THE PETITIONER'S CLAIM REGARDING DENIAL OF JURY TRIAL AND IMPARTIAL JUDGE

In order to prevent needless repetition of the law and the arguments referring to the structural defects regarding the denial of the right to a trial by jury, and the denial of right to an impartial judge, can be easily recognized by referring to the petitioner's affidavit, filed 11/01/01. See e.g., "Affidavit To Support Denial Of Effective Assistance Of Counsel Regarding Misstatement Of Law," and its attached exhibits. The only supplement needed in support of this claim / affidavit, is, the application of the Seventh Amendment of the United States Constitution, for a proper review.

## VI. MERITS OF THE PETITIONER'S CLAIM REGARDING DENIAL OF THE RIGHT TO BE HEARD / SELF-REPRESENTATION

In order to prevent needless repetition of the law and arguments referring to the structural defects regarding the denial of the right to be heard / self-representation at trial, and on appeal, can be easily recognized by referring to the petitioner's argument submitted in conjunction with this, "Motion to Supplement The Record And Submit Claims Fairly In The State Courts." See e.g., "Argument To Support Why Grounds For Relief Were Not Presented In Previous Proceedings," and its supporting exhibits, that shall be introduced by counsel at the evidentiary hearing on May 15, 2002.

## VII. MERITS OF PETITIONER'S CLAIM REGARDING DENIAL OF RIGHT TO BE PRESENT

In order to prevent needless repetition of the law and the arguments referring to the structural defect regarding the denial of the right to be present, can be easily recognized by referring to the petitioner's affidavit filed November 01, 2001. See e.g., "Affidavit Supporting Denial Of Due Process And Improper Waiver Of Trial In Henderson County," and its supporting appendix.

- 7 -

202

## VIII. CONCLUSION

The petitioner finds, that he has been denied his rights under the Fifth, Sixth, Seventh, Eighth, Tenth, and Fourteenth Amendments, and Article(s) I., § 9, cl. 3, Article I., § 10 cl. 1, and Article IV., § 2, of the United States Constitution; and Articles I., § 8, 9, 11, 13, 16, 17, 21, 25, & 34, Article VI., § 9, and Article XI., § 2, 8, & 16, of the Tennessee Constitution, because he was denied the effective assistance of counsel at trial and on appeal. Counsel failed to protect and preserve the petitioner's personal property and allowed the State to commit the following structural errors: (1) denial of the right to be heard by himself, to explain the case, in his own way at trial and on appeal (bill of attainder); (2) denied the right to a jury trial, when the petit jury was improperly instructed, that his only defense theory "intoxication," was irrelevant; (3) was convicted on the basis of unconstitutional "reasonable doubt" instructions, which constitutes (ex post facto laws); (4) denied the right to an impartial judge; and (5) denied the right to be present, when his presence had a relation, reasonably substantial, to the fullness of an opportunity to defend against a charge.

Respectfully submitted,

/Jon Hall # 238941
R.M.S.I. U-2 C-103
7475 Cockrill Bend Blvd.
Nashville, Tenn. 37209-1048

## CERTIFICATION

I ___Jon Hall___, hereby swear under the penalty of perjury under the laws of the State of Tennessee, that the foregoing facts are true, correct, and based upon personal knowledge of the facts stated herein. Sworn on this the 23ʳᵈ day of Jan. 2002.

I ___Jon Hall___, hereby certify that I have served a true and exact copy of the foregoing, "Motion To Supplement The Record And Submit Claims Fairly In The State Courts," to: (1) Ms. Judy Barnhill, Criminal Justice Complex, 515 South Liberty Street – Jackson, Tenn. 38301; and (2) Alfred Earl's, Assistant District Attorney, P.O. Box 2825 – Jackson, Tenn. 38302, via United States mail on this the 23ʳᵈ day of Jan. 2002. Further affiant sayeth not.

## REASONABLE DOUBT JURY INSTRUCTION CHALLENGE

ISSUE: Counsel failed to object to jury instructions which equated "reasonable doubt" with "moral certainty" and permitted conviction upon a "satisfactory conclusion" and to let the "mind rest easily" as to the certainty of guilt. CITED: Rickman v. Dutton, 864 F.Supp. 686 (M.D. Tn. 1994) (quoting Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 2082 124 L.Ed. 2d (1993)). RICKMAN V. BELL, 131 F.3D 1150 (6TH CIR. 1997) GROSECLOSE V. BELL, 130 F.3D 1161 (6TH CIR. 1997).

- 8 -

293

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

MADISON COUNTY AT JACKSON, TENNESSEE

Jon Douglas Hall,

    Petitioner,

Vs.

STATE OF TENNESSEE,

    Respondent.

FILED
JUDY BARNHILL, CIRCUIT COURT CLERK
JAN 28 2002
DEPUTY CLERK
A.M. 3:20 P.M.

*
*
*
*
*   MADISON COUNTY NO. 96-589
*
*   POST CONVICTION NO. C00-422-I
*
*
*

---

ARGUMENT TO SUPPORT REASONS WHY GROUNDS FOR RELIEF WERE NOT PRESENTED IN PREVIOUS PROCEEDINGS

---

Comes now the petitioner Jon Hall, by and through himself to file his, "Argument To Support Reasons Why Grounds For Relief Were Not Raised In Previous Proceedings." In support of this position the petitioner relies on the findings in Clemmons v. Delo, 124 F.3d 944, 948 (8th Cir. 1997); and on the unconstitutional judge made law cited in State v. Burkhart, 541 S.W.2d 365 (Tn. 1976).

I. PRELIMINARY BACKGROUND OF SUPPORTING CASE LAW

2. HABEAS KEY 380.1

Petitioner fairly presented Brady v. Maryland, issue, arising from prosecutions alleged withholding of exculpatory evidence, even though that issue wasn't raised in appeal from denial of post conviction relief, and thus there was no procedural default barring habeas relief; counsel appointed to represent petitioner in post conviction proceeding refused petitioner's request to raise that issue, and the petitioner attempted to raise it himself in supplemental brief, but the State Supreme Court refused leave to file that brief.

[1, 2] After counsel had been appointed to represent Clemmons on his 29.15 appeal (counsel different from the lawyer who had represented him in post conviction trial court), Clemmons wrote the new lawyer to request he be kept informed. He specifically stated he wanted all of his appeal issues preserved. Appointed counsel, however, filed a brief in the 29.15 appeal without giving Clemmons an opportunity to review it and without including all of the issues previously raised in the trial court. Petitioner then wrote counsel and instructed him to file a supplemental brief raising the additional issues. Clemmons specifically drew the attention of counsel to the danger that issues not raised would later be held not to have been properly presented.

"I want you to lay the groundwork so if the Missouri Supreme Court refused to hear [the un-briefed issues] the record will clearly show we tried to present them." Letter dated December 26, 1989.

- 1 -

Clemmons then made a motion in the Missouri Supreme Court for leave to file a supplemental brief
pro se. This motion recites that appointed counsel had filed a brief raising only six points, that
Clemmons had requested in writing that every other ground preserved by the record also be raised,
and that counsel had refused this request. It asks the court to accept a number of documents "as a
supplemental brief in this cause." The court denied the pro se motions without comment. The documents
referred to in the motion included the Brady, issue now under discussion.

As noted above, we agree with the state that mistakes made by counsel in the post conviction
proceedings do not constitute "cause" for habeas purposes. The initial question, though is not
whether there is cause to excuse a procedural default, but whether there was a default in the first
place. In other words, did Clemmons fairly present his Brady, claim in the state courts ? In the
perhaps unique circumstances of this case, we think the answer is yes.

* * * The fact remains that Clemmons called the attention of the Missouri Supreme Court to his
Brady claim, among many others. We do not know what else he could have done as a practical matter,
to present his claims to that court for decision on the merits.[4]

FOOTNOTE # 4. He could have fired his attorneys then filed his pro se brief. * * * He had no way
of knowing whether such a motion would be granted. He could of concluded it would not
be in his best interests to risk not having a lawyer to argue his case. We assume that
the Supreme Court does not normally order release of inmates to argue their case pro se.


II. COMPARE: SPECIFIC INSTANCES OF SAME TYPE OF CONDUCT DESCRIBED IN CLEMMONS V. DELO


1. Pursuant to the petitioner's case i.e., State v. Jon Hall, 8 S.W.3d 593 (Th. 1999), the
petitioner wrote to counsel, Mr. Jesse Ford and Mr. Clayton Mayo on July 3, 1997. The petitioner
instructed counsel to raise several issues, including the trial judge's abuse of discretion regarding
the illegal change of venue to Madison County, Tennessee over a personal objection. (Ford's file,
pages 1171-1176). The petitioner's July 3, 1997 letter provides the following in pertinent part:

"Please submit the appropriate transcripts and references to the transcripts pursuant
to T.R.A.P. Rule 24, note 21. State v. Draper, 800 S.W.2d 489 (Tenn. Crim. App. 1990); and
T.R.A.P., Rule 27 (g), nota 4. State v. Killebrew, 760 S.W.2d 228 (Tenn. Crim. App. 1988),
in support of my appellate issues. Since jurisdiction has to be established in all courts,
I make the main issue to be presented in this matter, issue no. 16, of the Amended motion
for new trial. I sent your office in the cert. return receipt correspondence # P-360-921-320
received 3/5/97. The law, and argument that needs to be submitted in this issue is; that the
Trial Judge abused his discretion in overruling the appellant's in-chamber objection, forcing
the appellant to be tried in Madison County, Denton, 46 Tenn. 539 (1869); State v. Upchurch,
620 S.W.2d 540 (Tenn. Crim. App. 1980) (Tenn. Rules of Crim. P., Rule 18 1997 edition);
Minnesota v. Murphy, 465 U.S. 420, 435, n.7 (1984) (dictum) (Venue). See also: State v.
Barnes v. Jones, 665 F.2d 427 (1981), 103 S.Ct. at 3314. Criminal Law Key 641.14 (7)
(Client's decisions) S.Ct. Rule 8, EC 7-8, and the Model Rules of Professional Conduct Rule
1.3 Chicago American Bar Association, Jan. 30, 1980) ). Therefore, the Trial Judge had no
authority to overrule my OBJECTION."

- 2 -

2. On May 15, 1998, the Petitioner wrote a letter to his new counsel, Mr. Mark Donahoe. This very first letter to counsel alerted counsel to the specific issues that the petitioner wanted to be presented in the Tennessee Supreme Court. The petitioner sent this letter to his new counsel after the Court of Criminal Appeals made a (2) part decision, i.e.: (1) remove trial counsel Mr. Ford and Mr. Mayo, and appoint Mr. Donahoe to represent the petitioner on appeal to the Tennessee Supreme Court; and (2) the affirmation of the trial court's first degree murder conviction and sentence of death on April 29, 1998. See: e.g. May 15, 1998 letter to counsel in Mr. Donahoe's file at pages 818-819. The letter also contained the following documents: (1) Hall v. Woodall, et. al., 1-98-1037, with its supporting documents (Donahoe's file pages 662-683); and (2) Hall v. Woodall, Sixth circuit Court of Appeals number 98-5344, (Donahoe's file pages 602-649). This May 15, 1998 letter states in part:

> "In addition to the petition to rehear, I am enclosing a copy of Hall v. Woodall, et. al., 1-98-1037 with supporting exhibits, excluding exhibit [3] "Transcript of Evidence, docket # 96-589 Madison County, 2/3/97, . . .. Also included in this letter / package is a copy of Sixth Circuit brief 98-5344, which is still pending. These documents will brief you on several issues that I will be expected to be presented in future appeals. If you do not intend on pursuing these issues and correcting the record in this case, I'll understand, but expect that you return my pleadings and voluntarily withdraw from further representation."
> NOTE: Technical Record, pages 102, 149, and 180 - 198 contain relevant pro se motions filed.

3. On July 15, 1998, the Petitioner sent Mr. Donahoe a letter requesting to get a copy of the technical record to be able to comply with counsel's idea of filing a supplemental brief to the Supreme Court of Tennessee to address the various issues that counsel should have raised in their brief. See: e.g. July 15, 1998 letter to counsel in Donahoe's file, pages 804 - 805. Mr. Donahoe responded to the petitioner's letter on July 24, 1998. See: e.g. Donahoe's file pages 529 - 530. Mr. Donahoe's July 24, 1998 letter states in pertinent part:

> "I am sorry those cases won't be of assistance to you on direct appeal. But I feel that it is extremely important to let you know that we will not be arguing any of these issues on your direct appeal, as they do not have merit and will only irritate the court. Therefore, if you want the Court to hear your issues prior to your post-conviction phase, we will make every effort to assist you in preparing your own supplemental brief."

4. On March 8, 1999, the Supreme Court of tennessee filed an order regarding the supplemental brief the petitioner filed. (Donahoe's file pages 407-408). This order states the following:

> "The appellant, proceeding pro se, has filed a "Motion Of The Proper Party To Supplement The Record," and several "Exhibits." The record indicates, however, that the appellant's appeal is pending before this Court and that the appellant is represented by counsel. A defendant who is represented by counsel on appeal in this Court may not simultaneously proceed pro se.
>
> Accordingly, after due consideration, it is ORDERED that the motion is denied and that the pro se documents shall be stricken from the record." Riley Anderson, Chief Justice.

- 3 -

296

5. In order to try to circumvent the Court's unconstitutional ruling, the petitioner filed his own "Motion To Withdrawal Counsel – Replacement By Court," under Tenn. R. Crim. P., Rule 44, (Donahoe file pages 272-273). Additionally, the appellant filed a "T.R.A.P., Rule 13 (b) Consideration Of Issues Not Presented For Review," (Donahoe's file pages 268-269) to adopt all issues filed by counsel and supplement the appeal with his supplemental brief entitled, "Brief Of The Proper Party," (Donahoe file, page 1669 [incomplete file]).

6. On May 24, 1999, the Supreme Court of Tennessee filed an order in regards to the appellant's "Motion To Withdrawal Counsel – Replacement By Court," (Donahoe's file, page 296). This order states:

> "The appellant has filed a pro se "Motion To Withdrawal Counsel," requesting that this Court instead appoint appellant as counsel of record. The record indicates, however, that this case has been briefed and is set for oral argument in Nashville on June 2, 1999. The record further indicates that the appellant has filed similar pro se documents while being represented by counsel and that these pro se documents were stricken from the record pursuant to this Court's order. Given this case has been briefed and is ready for oral argument, any complaints appellant has about his present counsel should be properly addressed at post-conviction.
>
> Accordingly, after due consideration,  it is ORDERED that the motion is denied." Signed by Riley Anderson, Chief Justice.

7. The petitioner contends that after reviewing both the pro se motions and the supplemental "Brief Of The Proper Party," submitted in the Supreme Court (improperly struck from the record), that everything possible has been done to present several appellate issues fairly in the State Courts.

8. In this light, the petitioner contends that several of his issues were fairly and properly before the Court's for due consideration under the Tennessee Constitution, Article 1, § 9. The waiver provisions of Tenn. Code Ann. § 40-30-204 (e), should not be applied to several issues briefed by him in this case. As a practical matter, there is nothing else that could have done to raise these issues in previous proceedings.

NOTE: T.C.A. § 40-30-204 (e), provides: The petitioner shall include allegations of fact supporting each claim for relief set forth in the petition and allegations of fact why each ground for relief was not previously presented in any earlier proceeding. The petition and any amended petition shall be verified under oath. Affidavits, records or other evidence available to the petitioner supporting the allegations of the petition may be attached to it.

9. In short, the petitioner contends that the unconstitutional application of the judge made law in State v. Burkhart, 541 S.W.2d 365 (Tenn. 1976), and counsel's failure to deal with the petitioner in good faith by protecting all of his rights and asserting all of the claims he was entitled to, improperly precluded these issues from being presented fairly in any previous proceedings.

- 4 -

2‸7

III. ARGUMENT IN SUPPORT OF CLAIM STATE V. BURKHART, 541 S.W.2d 365 (Tenn. 1976) IS UNCONSTITUTIONAL

In United States v. Plattner, 330 F.2d 271, 276 (2nd Cir. 1964), the Court of Appeals addressed the question of whether or not the language provided in the Fifth and Sixth Amendments of the United States Constitution grants a defendant the right to defend pro se and be represented by counsel simultaneously. The Court determined that, implicit in the Fifth and Sixth Amendments is the right of the accused to personally manage and conduct his own defense. However, the Court determined that neither the Fifth or Sixth Amendment grants the accused the right to be represented by counsel and simultaneously defend pro se. See: e.g. Plattner, supra at 276, which provides in pertinent part:

"The right to counsel and the right to defend pro se in criminal cases form a single, inseparable bundle of rights, two faces of the same coin. Thus we find the choice between the two sometimes in terms of waiver of the right to counsel, and sometimes in terms of election to have a lawyer OR to proceed pro se. Viewed in this light the problem is simplicity itself.

".... Accordingly, in cases of this type, no matter how indigent or other the defendant may phrase his prayer for relief for action by the court, it is incumbent upon the presiding judge, by recorded colloquy with the defendant, to explain to the defendant; that he has a choice between defense by a lawyer and defense pro se; ...." [Emphasis added]

In State v. Burkhart, 541 S.W.2d 365 (Tenn. 1976), the Supreme Court of Tennessee adopted the Second Circuit Court of Appeals approach in Plattner, supra, at 276, to determine whether or not a criminal defendant had the right to defend himself and simultaneously be represented by counsel. The problem with this approach is, that the Second Circuit Court of Appeals did not have to address the precise language explicitly provided under Article 1, § 9 of the Tennessee Constitution. This constitutional provision provides, in pertinent part, that:

"[T]he accused hath the right to be heard by himself AND his counsel; . . . and shall not be compelled to give evidence against himself."

The Supreme Court of Tennessee decided, that with the adoption, in 1887, of T.C.A. § 40-2402 (now T.C.A. § 40-14-101) making a defendant a competent witness in his own behalf, the rights of criminal defendants were expanded.

The Supreme Court of Tennessee held that, with the adoption of T.C.A. § 40-2402, today a criminal defendant continues to have essentially the same rights. The only difference is that criminal trial procedure has been refined and in the process, the defendant has gained the right to be a sworn witness testifying in his own behalf. Paraphrased, the constitutional provision might now read:

"In all criminal prosecutions the accused hath the right to testify as a witness in his own behalf and to be represented by counsel." See e.g. Burkhart supra at 371.

- 5 -

248

The Burkhart Court has also held, that: "If the interests of justice so require, the trial judge, in exceptional circumstances, may permit the defendant to participate in the trial, including the cross-examination of witnesses, and the argument of his own defense, but this discretion should be exercised sparingly and with caution and only after a judicial determination that the defendant is (1) not seeking to disrupt orderly trial procedure; and (2) that the defendant has the intelligence, ability and general competence to participate in his own defense. Id. at 371.

The petitioner contends, that the judge made law in Burkhart, supra, is void on the ground of vagueness and violative of due process because the conduct prohibited or commanded is expressed in terms "so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application." The Court's vague statement in Burkhart, supra indicating that if a criminal defendant can demonstrate an "exceptional circumstance," in order to participate at trial, including the cross examination of witnesses, or argue his own defense, from the standpoint of administration, by its indefiniteness in its expression fosters arbitrariness and discrimination in its enforcement. See e.g. Grayned v. Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294 (1972), which provides:

> "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegate basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, with the attendant dangers and discriminatory application."

The "exceptional circumstance" rule of judge made law in Burkhart, supra at 371, is clearly void on the ground of vagueness and violative of due process because the conduct commanded or expressed is in terms that are "so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application. The foundation of this argument is clearly demonstrated in State v. Melson, 638 S.W.2d 342, 359 (Tn. 1982), which provides in pertinent part:

> "We do not find that the length of the trial or the involvement of the death penalty constitute 'exceptional circumstances.' If hybrid representation were to be allowed in every lengthy and / or capital case, then by definition it could not be granted 'sparingly and with caution.' Burkhart, 541 S.W.2d at 371. We shall not set forth what would constitute exceptional circumstances."

In State v. Muse, 637 S.W.2d 468 (Tenn. 1982), the Supreme Court held in pertinent part: "Trail Court did not err in refusing to hear defendant's pro se motions, where motions were filed at a time when defendant was represented by counsel and where motions were not filed in accordance with the Rules of Criminal Procedure, nor in compliance with local rules of the trial court. . . . Appellant was represented by counsel at the time he filed his pro se motions. He cannot represent himself and have counsel. State v. Burkhart, 541 S.W.2d 365 (Tenn. 1976). There is no merit in this issue and it is overruled." NOTE: State v. Cole, 629 S.W.2d 915, (Tn. Cr. App. 1981) (fraudulent appeal rights).

- 6 -

THE SUPREME LAW OF THE LAND – ARTICLE VI., § 2, OF THE UNITED STATES CONSTITUTION

It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide the operation of each. So if a law be in opposition of the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is the very essence of the judicial duty. . . . . Marbury v. Madison, 1 Cranch 137, 177-178, 2 L.Ed. 60 (1801).

The judicial power of the United States is extended to all cases arising under the constitution. Could it be the intention of those who gave this power, to say that in using it, the constitution should not be looked into ? That a case arising under the constitution should be decided without examining the instrument under which it arises ? . . .. The constitution declares that no bill of attainder or ex post facto laws be passed. If, however, such a bill should be passed and a person should be prosecuted under it, must the court condemn those victims whom the constitution endeavors to preserve ? Marbury v. Madison, supra at 178-179.

In Hoovey v. Elliot, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), Justice White, wrote an opinion that pointed out grave constitutional questions raised by attempting to punish parties by depriving them of the right to try their lawsuits or to defend against lawsuits brought against them by others.

A "fundamental right" is involved in an equal protection challenge where it is explicitly or implicitly guaranteed by the Constitution. Memphis Publishing Company v. Leech, 539 F.Supp. 405, 412 (W.D. Tenn. 1982). See: e.g., Article 1, § 9, of the Tennessee Constitution.

A bill of Attainder is a legislative act which inflicts punishment without a judicial trial. If the punishment be less than death, the act is termed a bill of pains and penalties. Cummings v. Missouri, 71 U.S. 277, 18 L.Ed. 356 (1866). COMPARE: The Bail Reform Act of 1984, Title 18 § 3141-3150 (1994). Cited: United States v. Salerno, 107 S.Ct. 2095 (1987); and the 1975 Release From Custody and Bail Reform Act. CITED: Tenn. Raybin, Practice and Procedures, Vol. 9, § 4.3 (Right to bail – capital and non capital offenses), in violation of the 8th U.S. Const. Amendment. Shifting the burden of proof by applying civil law to criminal proceedings. NOTE: Burkhart, supra, shifts the burden of proof by commanding a defendant to show "exceptional circumstances" exist to utilize a hybrid defense.

– 7 –

From these and many other selections which it might be made, it is apparent, that the framers of the constitution contemplated that instrument as a rule for the government of courts, as well as of the legislature. Why otherwise does it direct the judges to take an oath to support it ? This oath certainly applies, in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support ! <u>Marbury v. Madison</u>, supra at 179-180.

The oath of office, too, imposed by the legislature, is completely demonstrative of the legislative opinion on this subject. It is these words:

"I _____, do solemnly swear (or affirm) that I WILL ADMINISTER JUSTICE WITHOUT RESPECT TO PERSONS, AND DO EQUAL RIGHT TO THE POOR AND RICH, AND THAT I WILL FAITHFULLY DISCHARGE AND PERFORM ALL THE DUTIES INCUMBENT UPON ME as _____ under the Constitutions and Law of the United States and of the State of Tennessee. So help me God." Title 28 U.S.C. § 453; and Tenn. Code Ann. § 17-1-104. COMPARE: T.C.A. § 8-18-113.

Why does a judge swear to discharge his duties agreeably to the constitution of the United State, if that constitution forms no rule for his government ? If its closed upon him and cannot be inspected by him. If such be the real state of things, this is worse than solemn mockery. To prescribe, or take this oath, becomes equally a crime. . . .. Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void, and the courts, as well as other departments, are bound by that instrument. The rule must be discharged. <u>Marbury v. Madison</u>, 1 Cranch 137, 180, 2 L.Ed. 60 (1801).

No tribunal, general or special, legislative, judicial, or ministerial, may act in violation of the constitution. It is supreme and paramount, and to its mandates all must yield obedience. <u>Bouldin v. Lockhart</u>, 69 Tenn. 195 (1878); <u>Keith v. Funding Board</u>, 127 Tenn. 441, 155 S.W. 142 (1913), overruled on other grounds, <u>Foster v. Roberts</u>, 142 Tenn. 350, 219 S.W.2d 729 (1919).

<u>HISTORICAL PRECEDENTS REGARDING SELF-REPRESENTATION AND OTHER LAW SUPPORTING ARGUMENT</u>

In <u>Martinez v. California</u>, 120 S.Ct. 684, 688 (2000), the Supreme Court had re-visited the historical evidence relied upon by Farreta v. California, identifying the right of self-representation and said, in pertinent part:

"A government's recognition of an indigent defendant's right to represent himself was comparable to bestowing upon the homeless beggar a "right" to take shelter in the sewers of paris. Not surprisingly, early precedent demonstrates that this "right" was not always used to the defendant's advantage as a shield, but rather <u>was often employed by the prosecution as a sword.</u>

- 8 -

The courts have no right to give to statutes a meaning not deducible from the unambiguous language used. State ex rel. Jones v. Howard, 139 Tenn. 73, 201 S.W. 139 (1917). It is the duty of the Supreme Court, where a statute is susceptible to two interpretations, one in harmony with, and the other in violation of the constitutional provisions, to give it that interpretation in harmony with the constitution; but such principle does not authorize the court to give an act an interpretation merely to bring it within the constitutional limitation, for where the act is unambiguous and susceptible of only one interpretation, it must be given that construction, according to its plain meaning, whatever be the consequences, when tested by the constitution. Exum v. Griffi's Newborn Co., 144 Tn. 239, 230 S.W. 601, 603 (1921). COMPARE: T.C.A. § 40-14-101 (Right to be heard –speedy trial).

OTHER PROCEDURES EMPLOYED BY THE COURTS UNCONSTITUTIONALLY REGARDING WAIVER

In State v. Odom, 928 S.W.2d 10 (Tenn. 1996), the Supreme Court without the benefit of argument from either party and without the development of facts supporting the circumstances application, raised the (i) (8) issue sua sponte under T.C.A. § 39-13-206 (a) (1) and Supreme Court Rule 12, and held the jury erred in applying the (i) (8) aggravating circumstance. The Court reversed Odom's death sentence. See: e.g. State v. William Hall, 976 S.W.2d 121, 172-173, n. 1 (Tenn. 1998).

In State v. Jon Hall, 8 S.W.3d 593, 596 n.1 (Tenn. 1999), the Supreme Court said in pertinent part:

> "During oral argument, the defendant raised two additional issues for the first time: . . .. Second, whether the trial court erred during the guilt phase by instructing the jury, in reference to the intoxication defense, that "[i]ntoxiacation is irrelevant [sic] to the issue of the essential element of the Defendant's culpable mental state." Neither the use of the mannequin nor the misstatement of the pattern jury instruction were objected to at trial. Moreover, they were not listed as errors in either the Motion For New Trial or in the appeal to the Court of Criminal Appeals. We find that failure to raise these issues in previous proceedings constitutes waiver, and we decline to address them at this time. Tenn. R. App. P., Rule 3 (e); Tenn. R. App. P., Rule 36 (a)." NOTE; See: Affidavit To Support Denial Of Effective Assistance Of Counsel And Appeal.

Tennessee Code Annotated, Section § 16-3-403 (Rules not to affect substantive rights – consistency with constitution), provides in pertinent part:

> "The rules prescribed by the Supreme Court pursuant to § 16-3-402, shall not abridge, enlarge or modify any substantive right, and shall be consistent with the constitutions of the United States & the State of Tennessee. State v. Ellis, 598 S.W.2d 826 (Tn. Crim. App. 1980).

One of the requirements of an adequate and independent procedural bar. See e.g., Lambrix v. Singletary, 520 U.S. 518, 522-523, 117 S.Ct. 1517 (1997), is that the State courts must have applied it consistently, see e.g. Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981 (1988). "The procedural rules must be applied evenhandedly to all similar claims." Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995). CITED: Romano v. Woodruff, 239 F.3d 1156, 1170 (2001).

– 9 –

2n -

CONCLUSION

The petitioner and residents of Tenn. have been fraudulently misrepresented by the judge made law in Burkhart, in violation of Tn. R. Civ. P., Rule 9. The Court has maliciously compelled citizens to make a choice, i.e. whether to have a lawyer OR proceed pro se. By adopting the Flattner, decision at 276, the Bukhart Court intentionally misrepresented the law. The residents of this State have been misled to believe, that the Court tested the explicit language of Article I, § 9, by utilizing federal subject-matter law. The history behind Article I, § 9, informs us, that this Article does not require us to make such a choice. See e.g. Momon v. State, 18 S.W.3d 152, 158 (Tn. 2000), which provides:

"In other words, the Constitution guarantees to every prisoner the right to explain the case made against him, in his own way. Citing Wilson v. State, 3 Heiskell 198, 50 Tenn. 232, (1871).

The petitioner contends that the following allegations were not waived in a previous proceeding under the Post Conviction Procedure Act in T.C.A. § 40-30-206 (g), because: (1) the actions of both the trial and appellate courts application of the unconstitutional judge made law in Burkhart, supra, prevented the Petitioner from exercising his State's rights, in violation of Article I, §§ 8, 9, 11, 17, 19 and 25; and Article XI, §§ 2, & 16 of the Tenn. Const. and U.S.C.A. Const. Article IV., § 2 cl. 1; Article VI., Cl. 2, and Amend. 1, 5, 6, 8, 10, & 14; (2) trial and appellate counsel is being used by the prosecution as a sword, rather than a shield, and thus counsel hasn't been required to provide effective assistance of counsel, in violation of Article I, §§ 6, 8, 9, 16, 17, and 19, of the Tenn. Const. and U.S.C.A. Const. Amend. 1, 5, 6, 8, 10, and 14; and (3) the procedures employed by the courts in prior review of the petitioner's ground(s) have not been applied uniformly and to find that his ground(s) for relief are waived and not in others constitutes a violation of his right to equal protection of the laws under U.S.C.A. Const. Amend. 14 and Article XI, § 8 of the Tenn. Constitution.

Respectfully submitted,

Jon Hall # 238941
7475 Cockrill Bend Blvd.
Nashville, Tenn. 37209-1048

I _____, hereby swear under the penalty of perjury under the laws of the State of Tennessee, that the forgoing facts and or the listed excerpts are true, correct, and based upon personal knowledge of the events stated herein. Sworn on this the 23rd day of Jan. 2002.

I _____, hereby certify that I have served a true and exact copy of the foregoing Argument to: (1) Ms. Judy Barnhill, Criminal Justice Complex 515 South Liberty Street - Jackson, Tenn. 38301; and (2) Alfred Earls, Assistant Dist. Atty., P.O. Box 2825 - Jackson, Tenn. 38302, via United States mail on this the 23rd day of Jan. 2002.

- 10 -

**CERTIFICATE & SEAL**

**STATE OF TENNESSEE**

**COUNTY OF MADISON**

I, Judy Barnhill, Clerk of the Circuit Court for the County of Madison, in the State aforesaid, do certify that the foregoing is a correct transcript of the record and proceedings had in said Court in the case heretofore prosecuted and determined therein between **JON HALL** APPELLANT **and** **STATE OF TENNESSEE** , APPELLEE, as the same remains of record in said Court.

**STATE OF TENNESSEE**

**COUNTY OF MADISON**

In testimony whereof, I subscribe my name and affix the seal of said Court at office, in Jackson, Tennessee the **21ST** DAY OF **JULY** in the year Two Thousand Three in the 224th year of American Independence.

Judy Barnhill
JUDY BARNHILL, CLERK