IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

<table>
<tr><td>JON HALL,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Petitioner,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>vs.</td><td>)</td><td>No. 05-1199-JDB-egb</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>WAYNE CARPENTER, Warden, Riverbend</td><td>)</td><td></td></tr>
<tr><td>Maximum Security Institution,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Respondent.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
DENYING CERTIFICATE OF APPEALABILITY
AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On February 4, 2013, the United States Court of Appeals for the Sixth Circuit remanded this case in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (Electronic Case Filing ("ECF") No. 128.) The Court initially directed Petitioner, Jon Hall, to brief the issues related to *Martinez*, but subsequently held the briefing in abeyance pending the decision of the United States Supreme Court addressing a related issue in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). (ECF Nos. 129 & 131.) On May 28, 2013, the Supreme Court decided *Trevino*. On August 30, 2013, Hall filed a brief on the *Martinez* issues. (ECF No. 136.) On October 15, 2013, Petitioner filed a notice of filing for the declaration of Frankie Stanfill, Petitioner's pre-trial counsel. (ECF No. 139.) On October 30, 2013, Respondent[1] filed a supplemental brief addressing *Martinez* and *Trevino*.

---

[1] The Respondent at that time was Warden Ricky Bell, (*See* ECF Nos. 140 & 142), but is now Warden Wayne Carpenter.

(ECF No. 140.)   On November 20, 2013, Hall filed a notice of supplemental authority.   (ECF No. 141.)   On February 4, 2014, Respondent, Wayne Carpenter, submitted documents related to the state post-conviction proceedings.   (ECF No. 144.)   On March 19, 2014, Petitioner filed a notice of supplemental authority, (ECF No. 146), and on July 11, 2014, a notice of additional supplemental authority.   (ECF No. 147.)

## I.   BACKGROUND

On February 5, 1997, Hall was convicted of first-degree murder in the Circuit Court of Madison County, Tennessee for the 1994 death of his estranged wife, Billie Jo Hall, and sentenced to death.   *State v. Hall*, No. 02C01-9703-CC-00095, 1998 WL 208051, at *1 (Tenn. Crim. App. Apr. 29, 1998).   Petitioner had the same counsel at trial, for the new trial motion, and on direct appeal.   (*See* ECF No. 136 at 4.)

### A.   *Pro Se* Petition for Post-Conviction Relief

On December 7, 2000, the inmate filed a *pro se* petition for relief from conviction or sentence in the Circuit Court of Madison County, Tennessee.   (ECF No. 144-1 at PageID 1842–73.)[2]   He alleged ineffective assistance of counsel at a "critical stage" related to his arrest and extradition process, preliminary hearing, bail proceedings, illegal search and seizure. (*Id.* at PageID 1847–60.)   Petitioner addressed the "denial of right to be heard" and complained of his counsel's ineffectiveness in relation to cross-examination of the State's witnesses, the failure to rebut misleading evidence/testimony, and the lack of "basic facts" or evidence "needed to present a clear picture of the hardships and conditions that caused the Petitioner to experience a very confused state of mind, subjecting him to abnormal behavior." (*Id.* at PageID 1867.)   He

---

[2] "PageID" references are used for ease of location with documents filed as part of the state court record or as exhibits.

asserted that his trial counsel failed to: (1) protect various state and federal rights; (2) subject the State's case to any meaningful adversarial testing; (3) suppress illegally obtained evidence; (4) try and obtain a bail; (5) suppress Chris Dutton's testimony as the fruit of the exploitation of no bail; and (6) present sufficient evidence in support of Petitioner's defense theory. (*Id.* at PageID 1868.) Hall complained of pre-trial counsel, Frank Stanfill's, lack of experience, the resulting "unreasonable prejudicial delays in obtaining a fair and speedy trial," and of the prejudice Petitioner suffered from an early psychiatric evaluation. (*Id.*) He alleged numerous other incidents of ineffective assistance related to counsel's failure to have him transferred to a local county jail to prepare for trial, inform him of the nature of a court-ordered psychiatric examination, record the examination, require that he be present at hearings, and file a motion to compel identification of the psychiatrist or psychologist treating key witnesses. (*Id.* at PageID 1871–72.)

Petitioner alleged that his trial counsel, Jesse Ford and Clayton Mayo, were ineffective because they failed to:

1. Select a jury consisting of a fair cross section of the community of the petitioner's race and gender;

2. Utilize all peremptory and cause challenges and allow Juror Rucker from Jackson Madison County General Hospital;

3. Have the jury sequestered away from the victim's family;

4. Represent Petitioner effectively in all aspects in presenting his case;

5. Stand up for Petitioner's rights to be heard by himself and counsel and require the court clerk to make out a verbatim transcript depicting this request;

6. Make proper objections and move to suppress or strike the testimony of TBI Agent Byrd and Chris Dutton as fruits of the poisonous tree;

7. Present evidence in their custody and control to corroborate Petitioner's defense;

3

8.  Rebut or correct misleading circumstantial evidence, especially evidence that had nothing to do with the facts or crime;

9.  Give up investigative files produced for the defense to thwart Petitioner's desire to represent himself;

10. Learn basic facts and listen to Petitioner's flag argument;

11. Include motions by previous attorneys in the technical record;

12. Investigate facts;

13. Object to "nude" autopsy photos that made a female juror too sick to continue;

14. Present proof in support of Sheryl Arbogast's testimony and admit this same evidence at the sentencing phase;

15. Object to the judge's fundamental error or impermissible comment on the evidence during jury instructions; and

16. Appeal the judge's erroneous order refusing to let trial attorneys withdraw.

(*Id.* at PageID 1872–73.)

On November 1, 2001, Hall filed an affidavit to support the ineffective assistance of counsel claim regarding a misstatement of law.   (*Id.* at PageID 1981–83.)

**B.      Amended Petition for Post-Conviction Relief**

On November 1, 2001, Petitioner's counsel filed an amended petition for post-conviction relief.   (ECF No. 144-2 at PageID 2071–2121.)   In Issue 1 of the Amended Petition, the inmate presented the following ineffective assistance of counsel claims:

1.  Counsel failed to adequately investigate the mental history of Defendant. Had they done so, they could have prepared adequate psychiatric testimony showing a diminished mental capacity that was consistent with a charge of manslaughter, perhaps insanity, and certainly a Defendant undeserving of the death penalty.

2.  Counsel failed to adequately petition for funds for various experts, including psychiatric experts.

4

3. Counsel failed to establish the proper working relationship with Petitioner. Counsel met with Petitioner only a few times prior to the trial[,] and they did not consistently maintain communication with Petitioner. Had Counsel fulfilled this duty, (ABA Def Funct. 4-3.1; ABA Death Penalty Guidelines 11.4.2) Petitioner would have been able to provide Counsel with valuable investigative assistance, including details that would support defense strategies, including facts which established this crime to be manslaughter or possibly insanity.

4. Counsel failed to be aware of (through experience, training-or research) the law applicable to Petitioner's case, as evidenced by the deficiencies in Counsel's performance outlined in this petition. Had Counsel fulfilled this duty (ABA Def. Funct. 4-3.8; ABA Death Penalty Guidelines 9.1) they would have prepared and presented the legitimate defenses available to Petitioner, such as manslaughter or insanity.

5. Counsel failed to maintain their workload at the level acceptable to handling a capital murder trial (ABA Death Penalty Guidelines 6:1). Counsel continued to carry their full criminal practice throughout their representation of Petitioner and neither withdrew from nor declined representation in other matters.

6. Counsel failed to adequately prepare for their representation of Petitioner, including but not limited to:

   a) Counsel failed to properly interview Petitioner (ABA Def. Funct. 4-3.2; ABA Death Penalty Guidelines 11.4.2). Counsel met with Petitioner only a few times during the course of representation of Petitioner. Had Counsel fulfilled this duty they would have established the rapport necessary to elicit from Petitioner valuable information leading to and supporting defense theories and mitigation.

   b) Counsel failed to properly investigate (ABA Def. Funct. 4-4.1; ABA Death Penalty Guidelines 11.4.1), including but not limited to:

      (1) Counsel failed to identify, locate and interview all relevant witnesses (ABA Death Penalty Guidelines ll.4.l(D)(l)(3)(a)-(c)),including but not limited to crime scene witnesses, expert witness and mitigation witnesses.

      (2) Counsel failed to identify, gather and examine the necessary documents, records and physical evidence (ABA 11.4.1(D)(l)(a)-(c), (D)(2)(a)-(e), (D)(4)-(6)), including but not limited to: arrest reports, reports of forensic testing, any recorded or memorialized version of statements made by Petitioner and others, autopsy reports, physical evidence seized by the state, viewing the

5

crime scene, and prior criminal records of Petitioner and other witnesses.

Had Counsel fulfilled this duty they would have uncovered legitimate defenses for Petitioner. Proper preparation also would have produced valuable evidence tending to impeach the testimony and credibility of the state's witnesses. Had Counsel prepared properly, they also would have strengthened Petitioner's position in any plea negotiations. Campbell v. Marshall, 769 F.2d 314, 318 (6th Cir. 1985) (The Court noted in dicta that certain evidence would have "borne upon the defense counsel's negotiating power in arriving at a plea.").

7. Counsel failed to engage in the motions practice necessary to protect Petitioner's rights (ABA Def. Funct. 4-3.6; ABA Death Penalty Guidelines 11.5.l(B)), including but not limited to:

(a) Counsel failed to file sufficient pre-trial motions challenging the constitutionality of the sentencing provisions of Tennessee's murder statute, especially the portions relating to the death sentence and the manner in which it is to be carried out. Had Counsel fulfilled this duty Petitioner would not have faced the death penalty. Tennessee's sentencing statute is arbitrary and capricious and is therefore a violation of the Eighth and Fourteenth Amendments to the Untied (sic) States Constitution and Article I, §§ 6, 7, 8, 9, 10, 16, 17 and 19 Article XI, § 8 of the Tennessee Constitution.

(1) The sentencing statute provides insufficient guidance to the jury concerning what standard of proof the jury should use in making the determination that the aggravating factors outweigh the mitigating circumstances.

(2) The sentencing statute does not sufficiently narrow the population of defendants convicted of first degree murder who are eligible for a sentence of death.

(3) The sentencing statute does not sufficiently limit the jury's discretion because once the jury finds the existence of one aggravating factor, the jury can impose a sentence of death no matter what evidence of mitigation is shown.

(4) The sentencing statute limits the jury's discretion to exercise mercy by requiring the jury to impose a sentence of death if it finds that the aggravating factors outweigh the mitigating factors.

(5) The sentencing statute fails to ensure that non-statutory mitigating factors are given the same weight as statutory mitigating factors by not requiring that the jury be given written instructions on the equal weight of non-statutory mitigating factors.

(6) The sentencing statute does not require the jury to make the ultimate determination that the appropriate punishment is a death sentence.

(7) The sentencing statute does not require that the jury be instructed in writing that it may impose a life sentence on the basis of mercy alone.

(8) The sentencing statute does not provide a way to correct, by written instructions or the presentation of evidence, juror's common misperceptions regarding the actual terms of a life-sentence and the death sentence, the cost of incarceration and the cost of executions, the death penalty's failure to deter murders, and the painful nature of death by electrocution.

(9) The sentencing statute prevents effective review on appeal because it does not require the jury to make specific findings with respect to the presence or absence of mitigating circumstances and with specificity regarding the presence of aggravating circumstances.

(10) The sentencing statute provides for a punishment, death, which is cruel and unusual.

(11) The sentencing statute provides for methods of execution, electrocution and lethal injection, which are cruel and unusual.

(12) The sentencing statute is applied in a discriminatory manner - unfairly affecting racial, gender, geographic, economic and political classes.

(13) The sentencing statute does not provide an adequate method for proportionality and arbitrariness review by the Tennessee Supreme Court.

(14) The sentencing statute has been applied by prosecutors in a manner that represents an abuse of their discretion because the statutes do not provide uniform standards for application of the death sentence.

(15) The sentencing statute has produced violations of the equal protection clauses of the state and federal constitutions because they do no[t] provide uniform standards for qualifying jurors for service

on capital juries.

(16)     The sentencing statute permits the introduction of unreliable evidence in support of aggravating circumstances and in rebuttal of mitigating factors.

(17)     The sentencing statute allows the state to make the final closing argument to the jury in the penalty phase of the trial.

(18)     The sentencing statute does not require that the jury be instructed in writing regarding the consequences of its failure to reach a unanimous verdict in the penalty phase.

(19)     The sentencing statute requires the jury to agree to a unanimous verdict in order to impose a life sentence.

(20)     By restricting the discretion of the jury to life (which the jury might believe is any number of years, including as low as five or six) or death, and not allowing the jury to fix the penalty at life without parole or life without parole for a fixed number of years the statute denies the discretion of the sentencer mandated by the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 8 and 16 of the Constitution of Tennessee. Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L.Ed.2d 973 (1978).

(21)     The statute did not require the court to instruct the jury on all mitigating circumstances raised by the evidence.

(22)     The statute violates the Sixth, Eighth and Fourteenth Amendment to the United States Constitution and Article I, §§ 6, 8, 9, and 16 of the Tennessee Constitution, because the heinous, atrocious or cruel aggravating factor under Tenn. Code Ann. § 39-13-204(i)(5) is vague and overbroad and thus fails to narrow the scope of those individuals guilty of first degree or felony murder who are eligible of the death penalty. Moreover, the definitions provided in the instructions in this case, as required by State v. Williams, 690 S.W.2d 517 (Tenn. 1985), are a mere tautology and do not provide the necessary clarity to provide the required narrowing of those eligible for death.

(23)     The statute violates Petitioner's rights because death by electrocution and lethal injection constitute cruel and unusual punishment, and because it requires the Petitioner to elect his method of execution.

(a) Execution by electrocution or lethal injection is neither immediate nor painless and therefore is cruel and unusual punishment under Article I, § 16 of the Tennessee Constitution and the Eighth Amendment to the United States Constitution. See, Fierro v. Gomez, 77 F.3d 301 (9th Cir. l996) (holding that death by lethal gas is cruel and unusual punishment).

(b) Electrocution using Tennessee's electric chair and protocol is particularly cruel and unusual as according to Dr. John P. Wikswo, Jr., Professor of Living State Physics and Professor of Physics at Vanderbilt University, and others, the peculiar design of Tennessee's electric chair and procedures recommended for the use of Tennessee's electric chair would result in prolonged and agonizing pain to the person being electrocuted.

(24) The statute violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 8 and 16 of the Constitution of Tennessee as the requirements of Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), that the discretion to impose death must be closely confined to avoid arbitrariness, those of Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L.Ed.2d 973 (1978) that the sentencer must have unlimited discretion not to impose death, and of Eddings v. Oklahoma, 455 U.S. 104, 102 S. Ct. 869, 71 L.Ed.2d 1 (1982), that the death penalty must be imposed "fairly, and with reasonable consistency or not at all,["] have proven impossible to administer in practice, and thus, there is no way to constitutionally administer the death penalty. Callins v. Collins, 510 U.S. 1141, 114 S. Ct. 1127, 1128-1138, 127 L.Ed.2d 435 (l994) (Justice Blackm[u]n, dissenting from the denial of certiorari).

(25) The statute violates the Fourth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 7, 8, 9, 16 and 17 of the Tennessee Constitution as it impinges on Petitioner's fundamental right to life. The right to life is a fundamental constitutional right and the punishment of death is not necessary to promote any compelling state interest in punishing Petitioner nor has the state shown that there are no less restrictive means of punishing him.

(a) Counsel filed inadequate pre-trial motions seeking the state's compliance with constitutional, statutory and local discovery obligations. Had Counsel fulfilled this duty they

9

would have obtained valuable mitigation evidence and evidence which would impeach the state's witnesses.

(b)     Counsel failed to file pre-trial motions seeking preservation of all law enforcement rough notes and a complete copy of the District Attorney General's file, both for in camera inspection and later use on post-conviction. Counsel's failure to file such a motion severely handicapped Petitioner's post-conviction efforts from which Petitioner should be granted relief.

(c)     Counsel filed inadequate and untimely pre-trial motions seeking the resources necessary for their representation of Petitioner, including appropriate sentencing investigative assistance, appropriate funding for a mitigation specialist who could guide the preparation of a sentencing case, jury selection assistance and expert witnesses able to address forensic issues in this case, Petitioner's life history and Petitioner's mental condition. See Tenn. Sup. Ct. R. 13; Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 84 L.ED.2d 53 (1985). Had Counsel fulfilled this duty, valuable mitigation evidence would have been developed and presented.

(d)     Counsel filed inadequate pre-trial motions seeking special voir dire rules, including but not limited to the right to submit a comprehensive jury questionnaire and the right to conduct individual voir dire as to death qualification of the venire members. Had Counsel fulfilled this duty they would have been able to develop the information necessary to properly select the jury.

(e)     Counsel failed to file pre-trial motions charging the prosecution with abuse of discretion in seeking the death penalty and asserting the disproportionate application of the death penalty in Petitioner's case. Had Counsel fulfilled this duty[,] the death notice in Petitioner's case may have been withdrawn or dismissed.

(f)     Counsel failed to file pre-trial motions challenging the proportionality of the death sentence in Petitioner's case. Had Counsel fulfilled this duty[,] the case may have been dismissed.

(g)     Counsel failed to file objections challenging jury instructions and failed to file proposed jury instructions,

including but not limited to the following:

(1)    Counsel failed to object to jury instructions which equated "reasonable doubt" with "moral certainty" and permitted conviction upon a "satisfactory conclusion" of Petitioner's guilt.

(2)    Counsel failed to object to a jury instruction which misstated the law regarding the necessity for a unanimous verdict in order for Petitioner to receive a life sentence.

(3)    Counsel failed to seek an instruction clarifying that a life sentence means "life" and that a death sentence means "death" that these sentences will be carried out.

(4)    Counsel failed to seek an instruction clarifying that the decision regarding sentence is to be made by individual jurors; that the jury does not have to be unanimous regarding sentence.

(5)    Counsel failed to seek instructions clarifying the law regarding sentencing factors: (i) an instruction clarifying that only statutory aggravating factors are to be considered; (ii) an instruction defining aggravating factors; (iii) an instruction defining mitigating circumstances, including listing all non-statutory mitigating circumstances; (iv) an instruction clarifying how aggravating circumstances are to be weighed; (v) an instruction establishing that the jury must find, unanimously, the existence of aggravating circumstances beyond a reasonable doubt; (vi) an instruction establishing that mitigating circumstances may be found by a single juror; (vii) an instruction clarifying that Petitioner began the sentencing phase of the trial under the presumption that no aggravating circumstances existed in his case; (viii) an instruction that the first degree murder conviction itself is not an aggravating circumstance; (ix) an instruction clarifying that evidence put on to establish mitigating circumstances cannot be used to establish aggravating circumstances.

(6)     Counsel failed to seek an instruction establishing that lingering doubt regarding Petitioner's guilt may serve as a non-statutory mitigating circumstance.

(7)     Counsel failed to seek an instruction establishing that doubts regarding the appropriate sentence are to be resolved in favor of a life sentence.

(8)     Counsel failed to seek an instruction establishing that the jury may base its decision on mercy, sympathy and compassion.

(9)     Counsel failed to file a proposed verdict form that listed all mitigating circumstances raised by the evidence, statutory and non-statutory, and which required to jury to specifically state what mitigating circumstances were found to exist by any juror, and failed to object to the verdict form used by the court.

Had Counsel fulfilled this duty[,] prejudicial and/or illegal jury instructions may have been kept from the jury and accurate, fair instructions may have been presented. Moreover, an appropriate verdict form would have preserved issues for appeal and collateral attack.

(h)     Counsel failed to file pre-trial motions seeking the right to allocution for Petitioner. Had Counsel fulfilled this duty Petitioner may have been ·able to speak for his own life, providing valuable insight into his life history and background.

(i)     Counsel failed to file pre-trial motions seeking to limit the state's proof at the sentencing hearing to specific aggravating circumstances. See Cozzolino v. State, 584 S.W.2d 765, 767-68 (Tenn. 1979). Had Counsel fulfilled this duty, improper and prejudicial evidence presented by the state during the sentencing may have been excluded.

(j)     Counsel failed to timely subpoena witnesses or evidence. Tenn. R. Crim. P. 17. Had Counsel fulfilled this duty, valuable evidence would have been available to support defense theories and mitigation.

(k)     Counsel failed to properly file motions to preserve the testimony produced at the preliminary hearing. Had they

done so, valuable impeachment testimony would have been preserved for future use.

(1)    Counsel failed to file pre-trial sufficient motions challenging Petitioner's illegal arrest, detention, and interrogation in Texas, and his subsequent transfer from Texas to Tennessee. Had Counsel done so, Petitioner's indictment may have been dismissed and/or all evidence gathered pursuant to Petitioner's illegal arrest and interrogation would have been suppressed.

(m)    Counsel failed to file pre-trial motions challenging the constitutionality of Tennessee's murder statute. Had Counsel fulfilled this duty Petitioner's indictment may have been dismissed and/or these constitutional issues would have been preserved in the record for consideration on appeal and in post-conviction. Specifically, Counsel did not file motions challenging the constitutionality of Tennessee's murder statute on these grounds:

    (1)    Tennessee's murder statute is applied in a discriminatory manner, unfairly affecting racial, gender, geographic, economic and political classes.

    (2)    Tennessee's murder statute has produced violations of equal protection guarantees of the state and federal constitutions because it does not provide uniform standards for qualifying jurors for service in murder juries.

    (3)    Tennessee's murder statute was vague and failed to fulfill the requirements of Article II, § 17 of the Tennessee Constitution, which prohibits the enactment of any bill which embraces more than one subject which is to be expressed in the title of the bill. Tenn. Code Ann. § 39-13-202 contains more than one subject and the title of the statute gives no notice of some of the subjects addressed by the statute. State v. Hailey, 505 S.W.2d 712 (Tenn. 1974).

(n)    Counsel failed to file a pre-trial motion seeking a bill of particulars pursuant to Tenn. R. Crim. P. 7(c). Had counsel fulfilled this duty they would have been able to identify evidence supporting viable defense theories and would have

been better equipped to rebut the state's case.

(o)     Counsel failed to file adequate pre-trial motions seeking the state's compliance with constitutional, statutory and local rules governing the disclosure of discovery. Had Counsel fulfilled this duty they would have obtained all of the available evidence, some of which would have supported viable defense theories and some of which would have impeached state witnesses. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963); California v. Trombetta, 467 U.S. 479, 104 S. Ct. 2528, 81 L.Ed.2d 413 (1984); Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); Kimmelman v. Morrison, 477 U.S. 365, 106 S. Ct. 2574, 91 L.Ed.2d 305 (1986); Tenn. R Crim. P. 16.

(p)     Counsel failed to file adequate pre-trial motions and motions in limine seeking special voir dire rules, including but not limited to the right to submit a jury questionnaire and the right to conduct individual voir dire. State v. Claybrook, 736 S.W.2d 95 (Tenn. 1987). Had Counsel fulfilled this duty they would have been able to develop the information necessary to properly select the jury.

(q)     Counsel failed to file pre-trial motions challenging the legality and constitutionality of the process by which the grand and petit juries were selected in Petitioner's case. Specifically, Counsel failed to assert that the venire did not represent a cross-section of the community. Had Counsel fulfilled this duty the ·indictment in this case may have been dismissed and the jury ultimately seated in Petitioner's case would have been more free of biases for the prosecution.

(r)     Counsel failed to file objections to the jury instructions proffered by the state and given by the court and failed to file proposed jury instructions, including but not limited to the following:

    (1)     Counsel failed to object to jury instructions which shifted the burden of proof of an element of the crime to the Petitioner.

    (2)     Counsel failed to object in a pre-trial motion to jury instructions which required the jury to presume the truthfulness of witnesses, thereby violating the jury's

prerogative to assess the credibility of witnesses and determine facts.

(3)     Counsel failed to request in a pre-trial motion that the court instruct the jury on the elements of all lesser included offenses.

(4)     Counsel failed to object to jury instructions that improperly defined premeditation and the presumption of innocence.

(5)     Counsel were ineffective for not objecting to the failure to instruct the jury that it must find, as an element of the (i)(5) aggravating factor of "heinous atrocious or cruel (HAC)," that the Petitioner *intended* to inflict serious physical abuse. Absent such instructions, the HAC aggravating circumstance found by the jury in this case was unconstitutional. Wade v. Calderon, 29 F.3d 1312, 1320 (9th Cir.), *cert. denied*, 115 S. Ct. 923 (1995). The Petitioner asserts that trial counsel was constitutionally ineffective under the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution for not requesting such a clarifying instruction.

Had Counsel fulfilled this duty prejudicial and/or illegal jury instructions may have been kept from the jury and accurate, fair instructions may have been presented in their place.

(s)     Counsel failed to timely subpoena witnesses or evidence. See Tenn. R. Crim. P. 17. Had Counsel fulfilled this duty, valuable evidence would have been available at the trial to support viable defense theories.

(t)     Counsel failed to file an adequate motion for judgment of acquittal. Had Counsel fulfilled this duty, the court would have entered a judgment of acquittal regarding the premeditated murder charge in this matter.

(u)     Counsel failed to file a motion seeking an order which would have required the state to elect which of two murder counts as to each deceased would go to the jury. Had Counsel fulfilled this duty[,] they would have been able to more narrowly present a defense[,] and the court may have

15

dismissed the case against Petitioner.

(v)     Counsel failed to file necessary post-trial motions, including but not limited to:

   (1)     Counsel failed to file adequate motions seeking a continuance of the date for filing a motion for new trial and for the hearing on the motion for new trial. Counsel failed to secure the time necessary to adequately investigate, develop and present new evidence that supported viable defense theories.

   (2)     Counsel failed to file a motion seeking production of a complete transcript of the trial prior to the date for filing a motion for new trial.

   (3)     Counsel failed to file an adequate and comprehensive motion for new trial, neglecting to assert significant evidence and numerous legal issues.

Had Counsel fulfilled this duty[,] the court may have granted a motion for new trial. Moreover, counsel would have preserved additional issue[s] for appeal and collateral review which would have resulted in Petitioner's being relieved from his conviction and sentence.

(w)    Counsel failed to file a motion to dismiss and/or a motion to arrest the judgment on the ground that Tennessee's murder statute was unconstitutional.

8.    Counsel failed to develop and pursue a comprehensive defense theory for the trial. (ABA Death Penalty Guidelines 11.7.l(A) and (B)). Significant evidence which supported a viable defense theory, including Petitioner's crime being that of mansla[u]ghter or possibly insanity, was available to Counsel.

9.    Counsel failed to competently select the jury for the trial (ABA Death Penalty Guidelines l l.7.2(A) and (B)), including but not limited to:

(a)     Counsel failed to conduct an adequate voir dire which would have exposed biases prejudicial to Petitioner which were held by some of the jurors: failing to discover jurors who were relatives and close friends of law enforcement officials, failing to discover jurors who had been victims of crime or were close to crime victims. Had

16

Counsel fulfilled this duty[,] they would have been able to more effectively exercise peremptory strikes to exclude jurors with biases against Petitioner.

(b)     Counsel failed to challenge, for cause, those jurors who held some kind of bias against Petitioner, his case, or any class or group to which he belongs. Had Counsel fulfilled this duty[,] the jurors with biases against Petitioner would have been excluded and Petitioner's peremptory strikes could have been strategically applied.

(c)     Counsel failed to object to the state's discriminatory use of its peremptory challenges to strike African-Americans, men, poor people or the unemployed, and other cognizable groups. <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986); <u>State v. Butler</u>, 795 S.W.2d 680 (Tenn. Crim. App. 1990). Had Counsel fulfilled this duty[,] the jury in Petitioner's case would have represented a fair cross-section of the community.

(d)     Counsel failed to conduct an adequate <u>voir dire</u>, especially with respect to the "death qualification" of the jurors. Counsel failed to object to the exclusion of jurors who held general opposition to the death penalty and failed to properly <u>voir dire</u> those jurors in an effort to rehabilitate them as viable panelists. In the same vein, Counsel failed to seek to exclude jurors whose opinions would lead them to impose the death penalty in every case. <u>Witherspoon v. Illinois</u>, 391 U.S. 510, 88 S. Ct. 1770, 20 L.Ed.2d 776 (1968). Had Counsel fulfilled this duty[,] Petitioner's jury would have been composed of a fair cross-section of society, including those with reservations about capital punishment, a fact relevant to the guilt/innocence phase of the trial because it is well established that jurors who are inclined to impose the death penalty are also more inclined to convict.

(e)     Counsel failed to object to the state's incorrect presentation, during <u>voir dire</u>, of the definitions of the elements of the charge, burdens of proof, and definitions of sentencing terms.

10.    Counsel failed to competently argue motions at the pre-trial and post-trial motions hearings. Specifically, Counsel failed to present evidence in support of the various motions. Counsel also failed to cite legal authority in support of some of the various motions.

11.    Counsel did not competently perform during opening and closing arguments during the guilt/innocence phase of the trial, including but not limited to:

17

(a)     Counsel failed to object to the state's improper, inflammatory, prejudicial, inappropriate and misleading or inaccurate statements concerning the law, the evidence and Petitioner during opening and closing arguments. Had Counsel fulfilled this duty[,] the court may have corrected the errors in the state's comments and presentation of evidence.

(b)     Counsel failed to adequately and accurately argue the evidence and law in their opening and closing arguments to the guilt/innocence phase of the trial. Had Counsel fulfilled this duty the jury would have been better exposed to the defensive theory that this case was manslaughter or that the Defendant was insane at the time of the commission of the offense.

12.    Counsel failed to adequately object to the state's presentation of prejudicial, misleading, false and inappropriate evidence at the guilt/innocence phase of the trial. Counsel also failed to adequately object to the state's inappropriate methods of introducing evidence at the guilt/innocence phase of the trial, including but not limited to the state's extensive practice of leading witnesses on direct-examination. Counsel did not move for a mistrial on the basis that the state's extensive practice of leading witnesses rendered the state's evidence unreliable and the entire proceeding fundamentally flawed.

13.    Counsel failed to adequately cross-examine the state's witnesses during the guilt/innocence phase of the trial. Significant opportunities existed for Counsel to demonstrate the falsity of the testimony of the state's witnesses and to impeach the credibility of the state's witnesses. (ABA Def. Funct. 4-7.6). Had Counsel fulfilled this duty[,] the jury may have concluded that the state had not met its burden of proof.

14.    Counsel failed to present, during Petitioner's case at the guilt/innocence phase of the trial, significant evidence in existence at that time which supported viable defense theories, including but not limited to: manslaugh[t]er or insanity.

15.    Counsel failed to conduct post-trial juror interviews, in order to develop potential issues for Petitioner's motion for a new trial.

16.    Counsel failed to raise the objections necessary to preserve issues for appellate review. Had Counsel fulfilled this duty, error in Petitioner's trial proceedings may have been available for consideration on appeal and in post-conviction proceedings.

17.    Counsel failed to properly challenge the admissibility of the testimony of

the minor children who testified in this case. Counsel failed to properly object and make the court aware of the proper test for the admissibility of the testimony of children of tender years.

18.    Counsel failed to withdraw from this case. At the time of trial, a conflict had developed between counsel and the Petitioner so as to cause Petitioner to file a grievance against counsel with the Tennessee Board of Professional Responsibility. Knowing this, counsel failed to try to have themselves properly excused from representation. The subsequent performance reflects this hostility toward Petitioner.

19.    Counsel failed to secure the preliminary hearing testimony. Failing to do so left valuable impeachment testimony of the state's witnesses unusable.

20.    Counsel held numerous hearings without fully informing Petitioner.

21.    Counsel failed to properly withdraw a change of venue motion when instructed to do so by Petitioner. Failing this caused this trial to be tried in Madison County, where publicity and conditions were far worse than Henderson County, Tennessee. Counsel failed to object to the trial proceeding in Madison County. Had Counsel acted consistent with the wishes of their client, a different result would have been obtained.

22.    Counsel failed to properly introduce much testimony that should have been known to them at the time of trial. Specifically, mitigation investigations had been done which had alerted them to much mitigation testimony which was ignored by them. Additionally, Counsel failed to introduce the dying declaration of Petitioner's brother. Had they properly used this testimony and presented it in a history to a psychiatrist, the outcome of this trial would have been different.

23.    Counsel failed to properly inform the Petitioner of the consequences of testifying in his own behalf. Had they done so, Petitioner would have testified and the result of the trial would have been different.

24.    Counsel asked for continuances against the wishes of Petitioner. Petitioner desired a speedy trial and was denied one because of the actions of counsel.[3]

(ECF No. 144-2 at PageID 2077–98.)

An evidentiary hearing was held over the course of four days: May 15–16, 2002,

---

[3] There appear to be additional allegations of ineffective assistance of trial counsel, but the top of the page seems to be cut off on the copy scanned into CM-ECF. (*See* ECF No. 144-2 at PageID 2098–99.)

September 4, 2002, and November 4, 2002. (*See* ECF No. 144-7 at PageID 2822.) On February

20, 2003, the post-conviction trial court denied post-conviction relief. (*Id.* at PageID 2822–74.)

### C. Post-Conviction Appeal

Hall filed a notice of appeal on March 4, 2003. (*Id.* at PageID 2875.) The Tennessee

Court of Criminal Appeals addressed the following ineffective assistance of trial counsel claims on

appeal of the denial of post-conviction relief:

1. failure to properly present an intoxication defense;

2. failure to establish the victim as the aggressor;

3. failure to preserve the testimony of Jeff Hall;

4. failure to submit evidence of the petitioner's habit of disconnecting telephone lines;

5. failure to adequately present the mental health issue;

6. failure to present proof that the petitioner was a good father and evidence of other good acts of the petitioner;

7. failure to develop a defense strategy; and

8. failure to interview all potential witnesses.

*Jon Hall v. State,* No. W2003-00669-CCA-R3-PD, 2005 WL 22951, at *27 (Tenn. Crim. App. Jan.

5, 2005) (*See* ECF No. 144-17 at PageID 3952–57.) On January 5, 2005, the Tennessee Court of

Criminal Appeals affirmed the decision of the post-conviction trial court. *Hall*, 2005 WL 22951

at *1, *38. (ECF No. 144-19.) Petitioner's application for permission to appeal to the Tennessee

Supreme Court was denied on June 20, 2005. (*Id.*)

### D. Habeas Petition

The inmate alleged ineffective assistance of trial counsel in Claim 13 of his amended

habeas petition, specifically alleging that defense counsel:

1.      Failed to obtain and present evidence from Hall's family and other sources (including Carol Alexander, Kathy Hugo, Debbie Davis, Jay Hall, Jeff Hall, Sheryl Arbogast, Joel Hall, Beth Hall, Carla Ulery, Scott Smith, school records) respecting Mr. Hall's social history (¶ 259);

2.      Failed to obtain and present evidence from Hall's family, friends, acquaintances, doctors, prison and jail personnel providing an explanation for the homicide (¶ 260);

3.      Failed to obtain and present evidence that at the time of the offense, a biologically driven deficit interfered with his ability to exercise reflection and judgment for his actions (¶ 261);

4.      Failed to obtain a change of venue (¶ 262.1);

5.      Failed to keep the trial in Henderson County (¶ 262.2);

6.      Selected a jury consisting of eleven women and one man (¶ 262.3);

7.      Failed to correct District Attorney Woodall's voir dire intimation that a first-degree murder required a death sentence (¶ 262.4);

8.      Failed to correct Judge LaFon's statement that the jury sentence would be advisory (¶ 262.5);

9.      Failed to correct Judge LaFon's statement that the only purpose of the trial would be to ascertain guilt (¶ 262.6);

10.     Agreed to the striking for cause of juror Bozza (¶ 262.7);

11.     Failed to object to Billie Hall's family members sitting with prospective jurors during voir dire (¶ 262.8);

12.     Failed to establish that Hall disconnected telephone lines to Billie Hall's house so Billie Hall wouldn't call the police and inform them that Hall was violating a protection order (¶ 262.9);

13.     Failed to establish that Chris Dutton's testimony was a lie (¶ 262.10);

14.     Failed to establish that the testimonies of Hall's daughters were not accurate (¶ 262.11);

15.     Failed to demonstrate that crime scene photographs presented to the jury were inaccurate (¶ 262.12);

16.     Failed to establish that Dr. O.C. Smith's testimony was inaccurate and unfounded (¶ 262.13);

17.     Failed to preserve Jeff Hall's testimony about [Jon] Hall's mental state in the days and weeks prior to the Billie Hall homicide (¶ 262.14);

18.     Failed to present at the sentencing stage the testimony of Sheryl Arbogast about what Jeff Hall told her about [Jon] Hall's mental state in the days and weeks prior to the homicide (¶ 262.15);

19.     Failed to establish that [Jon] Hall was not capable of assisting in his defense (¶ 262.16);

20.     Told Judge LaFon that Hall had knowingly and voluntarily waived his right to testify (¶ 262.17);

21.     Failed to recognize the difference between premeditation and deliberation under Tennessee law (¶ 262.18);

22.     Inaccurately referred to a Bible passage respecting the crucifixion of Jesus Christ (¶ 262.19);

23.     Failed to challenge proportionality review (¶ 262.20); and

24.     Failed to raise at trial and on appeal any claim that "this Court rules is procedurally defaulted." (¶ 264).

(ECF No. 15 at 55–61.) Hall alleged that trial counsel were rendered ineffective by the State's pre-trial manufactured evidence that Michelle Hays Elliott said that he said "I'm going to kill that bitch;" that Petitioner told Latasha Whittington-Barrett that he killed Billie Hall to have sole possession of money he expected to accrue from a lawsuit; and that the inmate told Darlene Britain that he intended to grind Billie Hall into "hamburger meat." (ECF No. 15 at 60–61, ¶ 263.)

### E.     Habeas Proceedings Related to Petitioner's Ineffective Assistance of Trial Counsel Claims

Respondent argued that Petitioner raised only eight of the twenty-five grounds of ineffective assistance of counsel alleged in his habeas petition in the Tennessee state courts. (ECF No. 19 at 30.) Respondent filed a motion for judgment on the pleadings in this case. (ECF

No. 90-1.)  He averred that, in the Tennessee state courts, Petitioner raised ineffective assistance of trial counsel claims alleging that counsel failed to:

(1)     properly present an intoxication defense;
(2)     establish the victim as the aggressor;
(3)     preserve the testimony of Jeff Hall;
(4)     present evidence of the petitioner's habit of disconnecting telephone lines;
(5)     properly present the mental health issue;
(6)     present evidence that petitioner was a good father and evidence of other good acts;
(7)     develop a defense strategy; and
(8)     interview all potential witnesses.

(*Id*. at 26.)  Warden Carpenter insisted that these claims were "arguably interspersed through petitioner's ineffective assistance of counsel claim," but all other claims not contained within these eight claims were procedurally defaulted.  (*Id.*)

The issues identified by Respondent are those specified in the Tennessee Court of Criminal Appeals' decision affirming the post-conviction trial court.  *See Hall*, 2005 WL 22951, at *27. This Court examined those claims that were clearly exhausted on the merits.  (ECF No. 110 at 88.)

Petitioner maintained that the state failed to meet its burden of showing that portions of his ineffective assistance of counsel claims (Claim 13) were procedurally defaulted.  (ECF No. 100 at 121–23.)[4]  This Court held that Petitioner failed to demonstrate cause and prejudice with regard to the unexhausted ineffective assistance of counsel claims:

8.   Remaining Ineffective Assistance of Counsel Claims

Petitioner's claims in his habeas petition, to the extent that they have not been addressed above, are procedurally defaulted because Petitioner failed to exhaust these claims and failed to demonstrate cause and prejudice or that a miscarriage of justice would result if the Court fails to review these claims.

---

[4] Petitioner did not argue ineffective assistance of post-conviction counsel as cause to excuse the procedural default.

(ECF No. 110 at 123.) This Court addressed the allegations in ¶¶ 259–62 of the Amended Petition on the merits. (*Id.* at 88–123.)[5]

## II. *MARTINEZ & TREVINO*

In 2012, the United States Supreme Court issued its decision in *Martinez*, which recognized a narrow exception to the rule stated in *Coleman*[6] "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding . . . ." *Martinez*, 132 S. Ct. at 1320. In such cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* The Supreme Court emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . ." *Id.* The requirements that must be satisfied to excuse a procedural default under *Martinez* are as follows:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino*, 133 S. Ct. at 1918 (emphasis and revisions in the original).

*Martinez* arose under an Arizona law that did not permit ineffective assistance claims to be

---

[5] The Court made specific references to ¶¶ 259, 260, 260.1, 260.2, 260.3, 260.3.4, 260.6, 261, 262.9, 262.14, 262.15 in the order denying the petition. (*Id.* at 88, 91, 99, 102, 108, 111, 117, 121.)

[6] *Coleman v. Thompson*, 501 U.S. 722 (1991).

raised on direct appeal. In its subsequent decision in *Trevino*, the Supreme Court extended its holding in *Martinez* to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." *Id.* at 1921. Thus, *Trevino* modified the fourth requirement stated for overcoming a procedural default. Recently, the Sixth Circuit in *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014), held that ineffective assistance of state post-conviction counsel can establish cause to excuse a Tennessee prisoner's procedural default of a substantial federal habeas claim that his trial counsel was constitutionally ineffective. *Id.* at 789; *Wallace v. Sexton*, 570 F. App'x 443, 453 (6th Cir. 2014) ("Tennessee's procedural framework directs defendants to file ineffective-assistance claims in post-conviction proceedings rather than on direct appeal, and thus it falls into the *Martinez–Trevino* framework.").

In *Martinez*, the Supreme Court stated, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 132 S. Ct. at 1318–19 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)); *see Miller-El*, 537 U.S. at 336 ("[R]easonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'") (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). *Martinez* elaborated on what it meant for a claim to be "substantial":

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319. *Martinez* requires that a petitioner's claim be rooted in "'a potentially legitimate claim of ineffective assistance of trial counsel.'" *Cook v. Ryan*, 688 F.3d 598, 610 (9th Cir. 2012) (quoting *Lopez v. Ryan*, 678 F.3d 1131, 1138 (9th Cir. 2012)), *cert. denied*, 133 S. Ct. 55 (2012). The petitioner must show a "substantial" claim of ineffective assistance, and this requirement applies as well to the prejudice portion of the ineffective assistance claim. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 752 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 998 (2014). *See Hoak v. Idaho*, No. 1:09-CV-00389-EJL, 2013 WL 5410108, at *7 (D. Idaho Sept. 25, 2013) ("*Martinez* requires the district court to review but not determine whether trial counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to determine only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them."); *see also Gunter v. Steward,* No. 2:13-CV-00010, 2014 WL 2645452, at *13 (M.D. Tenn. June 13, 2014) ("[I]n many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*."). The Supreme Court and the Sixth Circuit have not provided guidance as to how district courts reviewing habeas petitions are to implement the rulings in *Martinez* and *Trevino*. *See id.* at *12.

This Court must take into account the standards related to ineffective assistance of trial counsel to determine whether a claim is "substantial." To be "substantial" under *Martinez*, a claim must have "some merit" based on the controlling standard for ineffective assistance of counsel stated in *Strickland v. Washington*, 466 U.S. 668 (1984). 132 S. Ct. at 1318–19. To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's

representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 194 (2011) (citing *Strickland*, 466 U.S. at 689). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[7] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Richter*, 131 S. Ct. at 787–88 (quoting *Strickland*, 466 U.S. at 693). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

## III. ANALYSIS

Hall argues that *Martinez* and *Trevino* apply to:

- procedurally defaulted claims of ineffective assistance of trial counsel;

- procedurally defaulted claims of ineffective assistance of appellate counsel, prosecutorial misconduct, and/or withholding of exculpatory evidence; and

- unexhausted assertions of ineffective assistance of counsel as cause for the default

---

[7] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

of other substantive claims.

(ECF No. 136 at 17–18.) Petitioner outlines the claims that Respondent or the Court have found to be procedurally defaulted and asserts that he can show cause and prejudice under *Martinez* for such issues. (*Id.* at 18–20.)[8]

### A. Ineffective Assistance of Appellate Counsel Claims (Amended Petition ¶ 264)

The allegation in Claim 13, Paragraph 264, is a general assertion of ineffective assistance of counsel for failure to raise at trial and/or on appeal any claim that this Court rules is procedurally defaulted. (ECF No. 15 at 61.) The holding in *Martinez* does not encompass claims that appellate counsel was ineffective. *See Martinez*, 132 S. Ct. at 1319 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial."). The Sixth Circuit in *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013), stated "[u]nder *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel." *But see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1295–96 (9th Cir. 2013) (extending the equitable principle in *Martinez* to Sixth Amendment claims of appellate-counsel ineffective assistance). Petitioner is denied relief under *Martinez* to the extent he seeks review of his procedurally defaulted ineffective assistance of appellate counsel claims.

---

[8] Hall refers to multiple claims of ineffective assistance of trial (Claim 13) and other "non-ineffectiveness" claims (Claims 1–9, 11, 14, 15, 18, and 19). (ECF No. 136 at 19.) However, he fails to make a specific argument about how *Martinez* allows him to overcome procedural default for each of these claims. The Court will only address those specific claims for which Petitioner has presented a *Martinez* argument.

## B.    "Non-Ineffectiveness" Claims

The inmate also contends that the "non-ineffectiveness" claims that the Court found to be procedurally defaulted should be reevaluated under *Martinez* because ineffective assistance of trial and/or appellate counsel provide cause for the default.   (ECF No. 136 at 16–20.)   He relies on Justice Scalia's dissent in *Martinez* to argue that the rationale of *Martinez* is not limited to ineffective assistance of trial counsel cases.   (*Id.* at 15–16, 52–53.)   Petitioner argues Scalia's rationale for the application of *Martinez* as it relates to his claims of prosecutorial misconduct, withheld exculpatory evidence, false testimony, and false evidence.   (*See* ECF No. 15, Claims 4, 5, & 8, Amended Petition ¶¶ 227–40, 247–48; *see* ECF No. 136 at 52–53.)   The Warden responds that the Supreme Court and Sixth Circuit have made clear that *Martinez* and *Trevino* do not apply to any type of claim other than for ineffective assistance of trial counsel.   (ECF No. 140 at 17–18.)

*Martinez* is limited to ineffective assistance of trial counsel claims, *see supra* pp. 24–25. *See Martinez*, 132 S. Ct. at 1320; *see Moore v. Mitchell*, 708 F.3d 760, 784–85 (6th Cir. 2013) ("[T]he Court repeatedly emphasized the 'limited nature' of its holding, which 'addresse[d] only the constitutional claims' present where the state has banned a defendant from raising his ineffective assistance of trial counsel claim on direct appeal.") (quoting *Martinez*, 132 S. Ct. at 1320); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel.").   The Court will not give *Martinez* an expansive holding to grant Petitioner merits review of procedurally defaulted "substantive, non-ineffectiveness claims" for which he argues ineffective assistance of trial counsel "as cause" to excuse a procedural default.

C.    **Ineffective Assistance of Trial Counsel Claims**

1.    **Failure to Establish Petitioner's Incompetence to Stand Trial (Amended Petition ¶ 262.16)**

Hall alleges that trial counsel "[f]ailed to establish that Mr. Hall was not capable of assisting his defense."   (ECF No. 15 at 60.)   He asserts that the prosecution and his appointed counsel saw red flags indicating that he was not competent to stand trial.   (ECF No. 136 at 20–30.) Petitioner argues that that Dr. J. Douglas Bremner, a professor of psychiatry and behavioral sciences at Emory University School of Medicine, found that he was not competent to stand trial "[i]n fact and law" "because he did not have the ability to consult with his many lawyers with a reasonable degree of rational understanding so as to assist them in preparing his defense and he did not [have] a rational as well as factual understanding of the proceedings against him."   (ECF No. 136 at 21; *see* ECF No. 136-2 at PageID 1735.)   The inmate states that Terry A. Maroney, a tenured professor of law and a professor of medicine, health, and society at Vanderbilt University, stated:

> I saw a number of red flags that suggest that Mr. Hall has been, and likely remains, adjudicatively incompetent. In my view, it is very likely that he suffers from both cognitive distortions and major emotional pathology. Either of these factors might in isolation be sufficient to destroy competence. In combination, which is what I perceive to be likely in Mr. Hall's case, they are even more pernicious.

(ECF No. 136 at 21; *see* ECF No. 136-3 at PageID 1738.)   Petitioner relies on Dr. Ruben Gur's findings that he has substantial structural and functional brain damage, that 61% of his brain regions function abnormally, and that he was likely unable "to modulate his emotional behavior in response to situational demands."   (ECF No. 136 at 23; *see* ECF Nos. 102-34 through 102-36.) He contends that the "real world behaviors and cognitive abilities" resulting from the brain damage were Petitioner's striking behaviors including belligerence and agitation with his counsel,

the judge, and the victim's sister. (ECF No. 136 at 23–25; *see* ECF No. 136-4.)

Petitioner concludes that he was "simply unable to communicate with his attorneys, and they with him," suffered distorted perceptions about the criminal process, could not identify his own best self-interest, and was unable to reason through options. (ECF No. 136 at 25–28.) He claims that the effect of his inability to communicate or reason was "particularly devastating given his lack of a criminal history," the murder arising from a tempestuous marriage, and the death penalty. (*Id.* at 27–28.) The inmate insists, based on Bremner's observations, that his behavior was "not willful but evidence of Mr. Hall's incapacity for logical thought and his cognitive deficits and emotional misperceptions." (*Id*. at 28; ECF No. 136-2 at PageID 1734.)

Petitioner argues that there is significant medical evidence of his brain damage and that the behavioral evidence of his inability to work with his attorneys is even more compelling. (ECF No. 136 at 28.) He submits that the legal principles governing competency to stand trial have been settled for decades and the facts demonstrate that he was not competent to stand trial at every stage of the proceedings including in post-conviction. (*Id.* at 28–30.) Petitioner asserts that the issue of competence was never raised, never investigated with prior counsel, and appropriate mental health testing was never pursued. (*Id*. at 29–30.) Hall maintains that he has a substantial claim that trial counsel was ineffective for failing request a competency hearing and to establish that he was incompetent to stand trial. (*Id.* at 30.)

The Warden counters that Petitioner raised a related claim of ineffectiveness for failure to properly evaluate Petitioner's mental health which was found to be meritless by the post-conviction court and on appeal of the denial of post-conviction relief, *see* supra pp. 20 and 23. (ECF No. 140 at 18 n.6.); *See Hall*, 2005 WL 22951, at *31–34. Respondent contends that Petitioner has "navigated the Tennessee Court system raising legal claims through numerous *pro*

*se* appeal*s"* and "littered" the trial court technical record with "his reasonably cogent *pro se* legal analysis." (ECF No. 140 at 19.) According to Respondent, Petitioner was evaluated by five psychological experts throughout his state court proceedings, none of whom made findings that supported a theory of incompetence. (*Id.*); *See Hall*, 2005 WL 22951, at *3, 12, 14–18. Thus, Petitioner's claims that he was not competent to stand trial are not credible and not supported by the evidence. (ECF No. 140 at 19.)

Various attorneys were appointed to represent Hall throughout the pretrial proceedings. (*See* ECF No. 136-8 at PageID 1749–50.) He provides the declaration of pre-trial counsel Stephen Spracher, Carthel Smith, and Michael Mosier to support his claim that he was incompetent to stand trial. (ECF Nos. 136-5, 136-8, & 136-10.) Jesse Ford and Clayton Mayo were the attorneys who represented Petitioner at trial. He was evaluated by Western Mental Health and also by Middle Tennessee Health Institute and determined to be competent to stand trial. *Hall*, 2005 WL 22951, at *8. Lynn Zager, a clinical psychologist, also worked with defense counsel and made no determination that Petitioner was incompetent. *See id.* at *3. Further she found no evidence to support an insanity defense. *See id.* at *10. Additionally, in the seventeen years since Petitioner's trial, he has been evaluated by neuropsychologist Pamela Auble, psychiatrist Keith Caruso, and psychiatrist Kimberly Stafford, none of whom expressed concerns about Petitioner's competence. *Id.* at *14–21. It was reasonable for Petitioner's trial counsel to rely on the mental health professional's determination that their client was competent to stand trial.

Although Bremner now provides a declaration in support of Petitioner's ineffective assistance claim, Bremner's September 2008 report was filed as an exhibit in response to the motion for judgment on the pleadings and did not address the inmate's competence. (*See* ECF No. 102-39.) Bremner addressed the effect of childhood neglect and abuse on the development of

Petitioner's brain and whether he had the ability to commit first-degree premeditated murder. (*Id.* at PageID 1269, 1277.) It was not until the August 27, 2013 declaration that Bremner was "informed of facts about Mr. Hall's representation and his behaviors" and came to the conclusion that Petitioner was incompetent to stand trial. (ECF No. 136-2 at PageID 1732.) Bremner does not appear to have reviewed the conclusions of mental health professionals who evaluated Petitioner at or near the time of his trial to determine his competence at the time of trial.[9] The professor's conclusions about Petitioner's competence come nine years after the trial of this matter and with no indication that Bremner has ever met Petitioner. (*See* ECF No. 102-39 at PageID 1269 (the terms of engagement were "to review certain psychological evaluations . . ., including a neuropsychological report by Dr. Ruben Gur, an overview of Mr. Hall's personal history, and the facts and circumstances surrounding the death of Mr. Hall's wife . . . .")); *see also* ECF No. 136-2 at PageID 1732 ("In addition to the information set out in the 2008 Report, I have been informed of facts about Mr. Hall's representation about his behaviors, information upon which psychiatrists customarily rely to reach a medical opinion. . . . I also had brief telephone conversations with Mr. Hall's federal counsel.").

Given the initial determination of competence, the opinions of mental health professionals that evaluated Petitioner throughout his state court proceedings, and no finding or even question of mental incompetence being raised during that time, the Court does not find that trial counsel's performance was unreasonable in relying on the opinions of mental health professionals and failing to establish that Petitioner was incompetent to stand trial. Petitioner's claim of ineffective assistance of counsel related to failure to establish Petitioner's incompetence is not substantial.

---

[9] Bremner reviewed a summary of Auble's 2002 testing and a 2008 letter from Gur. (*See* ECF No. 102-39 at PageID 1269.)

The claim is procedurally defaulted and DENIED.

### 2. Jury Instructions (Amended Petition ¶¶ 250, 250.1, 250.2, 250.3, 264)

Hall claims that *Martinez* applies to his otherwise procedurally-defaulted challenges and ineffective assistance claims involving jury instructions in which the trial court improperly and unconstitutionally limited consideration of intoxication evidence, misdefined "intentional", and improperly defined "reasonable doubt." (ECF No. 136 at 30.) Respondent asserts that Petitioner raised the failure to object to jury instructions as a claim in the initial review post-conviction proceeding. (ECF No. 140 at 18.) He avers that *Martinez* does not apply to appellate counsel's failure to pursue a claim on post-conviction appeal. (*Id.*) Respondent further points out that this Court denied Petitioner's freestanding jury instruction claims because the inmate was not prejudiced from any error. (*Id.* at 19; *see* ECF No. 110 at 65–69.)

#### a. The Intoxication Instruction (Amended Petition ¶¶ 209.19.3 & 250.3)

The allegation in Claim 13 ¶ 264 of the Amended Petition is a general assertion of ineffective assistance of counsel for failure "to raise at trial and/or on appeal any claim that 'this Court rules is procedurally defaulted.'" (ECF No. 15 at 61.) Petitioner presents this argument in conjunction with Amended Petition ¶ 209.19.3 and Claim 9 ¶ 250.3, neither of which allege ineffective assistance of trial counsel. (*See* ECF No. 136 at 30–36; *see* ECF No. 15 at 43, 54.) Paragraph 209.19.3 is a factual allegation related to the jury instruction on intoxication:

> 209.19.3. Intoxication itself is generally not a defense to prosecution for an offense. If a person voluntarily becomes intoxicated and while in that condition commits an act which would be a crime if he or she were sober, he or she is fully responsible for his or her conduct. It is the duty of persons to refrain from placing themselves in a condition which poses a danger to others . . . . Intoxication is irrelevant to the issue of the essential element of the Defendant's culpable mental state. Judge LaFon said the last sentence of this quote twice.

(ECF No. 15 at 43.)  Paragraph 250.3 states that, at the guilt stage, Judge LaFon "[g]ave an intoxication instruction that nullified Mr. Hall's intoxication defense."  (*Id.* at 54.)  As stated supra pp. 24, 29–30, *Martinez* is limited to ineffective assistance of trial counsel claims. Petitioner generically alleges a Sixth Amendment violation in Amended Petition ¶ 250.3, but fails to specifically include a claim of ineffective assistance of trial counsel in the Amended Petition. (*See* ECF No. 15 at 54.)[10]

Trial counsel's failure to object to jury instructions was raised in the initial post-conviction proceedings, *see* supra pp. 11–12.  (*See* ECF No. 144-2 at PageID 2086–88.)[11]  The inmate's post-conviction appellate counsel did not exhaust the claim on appeal, *see* supra p. 20.  Because ineffective assistance of counsel related to the jury instructions was raised by post-conviction counsel in the initial-review collateral proceeding, *Martinez* does not apply.

Further, the claim is not "substantial" under *Martinez* because the Court determined that Petitioner did not suffer "substantial and injurious effect" from the intoxication jury instruction. (*See* ECF No. 110 at 69.)  Without the ability to show prejudice, he is not entitled to *Martinez* relief.  The allegation of ineffective assistance of counsel related to the intoxication jury instruction is procedurally defaulted and DENIED.

> **b.** **"Intentional" Jury Instruction (Amended Petition ¶¶ 209.19.2 & 250.2)**

---

[10] Pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), Petitioner must "specify all grounds for relief available" and "state the facts supporting each ground."

[11] Petitioner's allegations of ineffective assistance of trial counsel that were raised in the post-conviction proceedings did not specifically relate to the intoxication jury instruction.  (*See* ECF No. 144-2 at PageID 2086–88.)  The post-conviction appellate court addressed the issue of whether counsel failed to present an intoxication defense properly.  *See Hall*, 2005 WL 22951, at *20, 27–28.

Petitioner uses the general assertion of ineffective assistance of counsel for failure "to raise at trial and/or on appeal any claim that this Court rules is procedurally defaulted" under Claim 13 ¶ 264 to assert an ineffective assistance of counsel claim related to the jury instruction about intent. (*See* ECF No. 136 at 35–37; *see* ECF No. 15 at 61.)   He argues that his trial and appellate counsel were ineffective for failing to properly challenge the definition of "intentional" because it relieved the prosecution of its burden of proof.   (*See* ECF No. 136 at 35.)   In ¶ 250.2 of the Amended Petition, the inmate claims that Judge LaFon gave a jury instruction on intent that allowed the jury to find Petitioner intentionally killed Billie Hall when he only intended to strike her.   (ECF No. 15 at 54.)[12]   Paragraph 209.19.2 is a factual allegation that is tied to ¶ 250.2 and provides the jury instruction at issue:

> 209.19.2. A person acts intentionally with respect to the nature of his conduct or the result of his conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result;

(ECF No. 15 at 43.)   The Court will not grant *Martinez* relief for Petitioner's allegations of a substantive trial error or ineffective assistance of appellate counsel related to this instruction, *see* supra pp. 28–30.

Hall generally posits a Sixth Amendment violation, but fails to specifically state a claim of ineffective assistance of trial counsel in the amended habeas petition.   (*See* ECF No. 15 at 43, 54.) Trial counsel's failure to object to jury instructions directly related to "the burden of proof of an element of the crime" was raised in the initial post-conviction proceedings, *see* supra p. 14.   (*See* ECF No. 144-2 at PageID 2091.)   Petitioner's post-conviction appellate counsel did not exhaust

---

[12] To say that Petitioner merely intended to strike Billie Hall is an understatement.   In addition to the drowning and manual strangulation, Billie Hall suffered a fractured nose, blunt trauma to the head, skin tears, bruises, scrapes to the chest, abdomen, genitals, extremities, arms, legs, and back with "eighty-three areas of separate wounds to the body indicat[ing] that the victim had received an extensive and painful beating."   *Hall*, 1998 WL 208051, at *4.

the claim on appeal, *see* supra p. 20.   Because ineffective assistance of counsel related to the jury instructions was raised by post-conviction counsel in the initial-review collateral proceeding, *Martinez* does not apply.

The jury instruction read:

> A person acts intentionally with respect to the nature of his conduct or the result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

(*See* ECF No. 136 at 36.)   Petitioner argues that, in defining the essential element of "intentional," the instruction allowed the jury to find that Petitioner "intentionally" killed the victim merely by concluding that he intended to "engage in the conduct" that caused her death.   (*Id.*)   He maintains that this instruction is unconstitutional and that his claim has some merit and is substantial under *Martinez*.   (*Id.* at 36–37.)

The Tennessee Supreme Court has held that a proper jury instruction defining "intentionally" would not include the nature-of-conduct and circumstances surrounding the conduct language.   *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005).   The court stated that first degree premeditated murder is a "result-of-conduct" offense, but found no authority that the erroneous instruction lessened the State's burden of proof.   *Id.* at 58–61.   Counsel cannot be deemed ineffective for failing to object to the jury instruction.   *See Davidson v. State*, No. M2010-02663-CCA-R3-PD, 2013 WL 485222, at *39 (Tenn. Crim. App. Feb. 7, 2013), *aff'd in part, rev'd in part & remanded*, ___ S.W.3d ____, No. M2010-02663-SC-R11-PD, 2014 WL 6645264 (Tenn. Nov. 17, 2014), *petition for cert. filed*, No. 14-8522 (U.S. Feb. 23, 2015). Petitioner's claim that counsel's failure to object to the "intentional" jury instruction is also not substantial under *Martinez* because he cannot demonstrate prejudice.

The allegations related to the definition of "intentional" in the jury instructions are

procedurally defaulted and DENIED.

###### c. Reasonable Doubt Jury Instruction (Amended Petition ¶¶ 209.19.1 & 250.1)

Petitioner uses the general assertion of ineffective assistance of counsel for failure "to raise at trial and/or on appeal any claim that this Court rules is procedurally defaulted" under Claim 13 ¶ 264 to assert an ineffective assistance of counsel claim related to the "reasonable doubt" jury instruction. (*See* ECF No. 136 at 37–39.) Paragraph 209.19.1 is a factual allegation that provides the jury instruction that is connected to Claim 9:

> 209.19.1 Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such an investigation to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a capricious, possible or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense;

(ECF No. 15 at 43, 54.) Hall insists that Amended Petition ¶ 209.19.1 and Claim 9, ¶ 250.1 assert a claim of ineffective assistance of trial and appellate counsel related to the meaning of "reasonable doubt" and "moral certainty" as stated in the jury instruction. (*See* ECF No. 136 at 37–39; *see* ECF No. 15 at 43, 54.) The Court will not grant *Martinez* relief for Petitioner's allegations of a substantive trial error or ineffective assistance of appellate counsel related to this instruction, *see* supra pp. 28–30.

The inmate alleges a Sixth Amendment violation in Amended Petition ¶ 250.3, but fails to specifically state a claim of ineffective assistance of trial counsel in the Amended Petition. (*See* ECF No. 15 at 54.) His post-conviction counsel alleged that trial counsel failed to object to jury instructions related to reasonable doubt and moral certainty in the initial review post-conviction proceeding, *see* supra p. 11. (*See* ECF No. 140 at 18; ECF No. 144-2 at PageID 2086.) Petitioner's post-conviction appellate counsel did not exhaust the claim on appeal, *see* supra p. 20.

Because ineffective assistance of counsel related to the jury instructions was raised by post-conviction counsel in the initial-review collateral proceeding, *Martinez* does not apply.

Petitioner's argument that his claim related to the "reasonable doubt" jury instruction is substantial also fails. The Sixth Circuit has upheld the constitutionality of a similar reasonable doubt jury instruction. *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997)[13]; *see Morris v. Bell*, No. 07-1184-JDB, 2011 WL 7758570, at *33–36 (W.D. Tenn. Sept. 29, 2011) (finding that the reasonable doubt penalty phase jury instruction had been upheld by the Sixth Circuit and the inmate's arguments were without merit). In *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001), the Sixth Circuit held that "[c]haracterizing reasonable doubt as 'substantial doubt' or 'not a mere possible doubt' does not violate due process." *Id.* at 436–37 (citing *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)); *see also White v. Mitchell*, 431 F.3d 517, 533–34 (6th Cir. 2005) (finding there was no constitutional violation based on an instruction advising that "[r]easonable doubt is not mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt"). Therefore, Petitioner cannot demonstrate prejudice for his counsel's failure to challenge this jury instruction.

Hall argues that his claim is substantial based on the trial court's use of the language "satisfactory conclusion" of guilt and instruction to the jurors to decide the case "as you think truth

---

[13] The trial court instructed the jury as follows:

> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense.

*Austin*, 126 F.3d at 846.

and justice dictate" to bolster his argument related to the reasonable doubt jury instruction. (ECF No. 136 at 38–39.) However, Petitioner did not present these allegations in his habeas petition and, therefore, is not entitled to habeas relief based on these contentions. *See* Habeas Rule 2. Further, the inmate alleged that counsel failed to object to the jury instruction that permitted conviction upon a "satisfactory conclusion" of Petitioner's guilt in his Amended Petition for Post-Conviction Relief. (ECF No. 144-2 at PageID 2086.) Therefore, even if the Court were to consider this claim adequately pled, ineffective assistance of post-conviction counsel cannot be "cause" for the procedural default under *Martinez*.

The allegations related to the reasonable doubt jury instruction are procedurally defaulted and DENIED.

### 3. Failure to Challenge the False and Misleading Testimony of Chris Dutton (Amended Petition ¶ 262.10)

Petitioner claims that his trial counsel "[f]ailed to establish that Chris Dutton's testimony was a lie." (ECF No. 15 at 59.) He also argues that Dutton made "all sorts of outlandish claims about what he claimed Jon Hall told him about the offense." (ECF No. 136 at 40.) Petitioner further asserts that his trial counsel failed to investigate Dutton's background to establish that he was mentally ill, a liar, and that his testimony was false. (*Id.*) He insists that "[h]ad trial counsel simply looked into Dutton's criminal history and obtained Dutton's prison records, trial counsel would have uncovered extensive evidence that could have been used [to] devastate Dutton on cross-examination" including information that

- Dutton admitted he was possessed by a legion of demons (ECF No. 102-10 at PageID 1116–17);

- Dutton suffered hallucinations, a history of psychotic thinking, suicide attempts, a long history of using LSD, PCP, and heroin (ECF No. 102-11 at PageID 1124; ECF No. 102-12);

40

- Dutton hears voice and demons "telling him all kinds of stuff" and has been hearing voices since he was twelve years old (ECF No. 102-13[14]);

- Dutton attempted suicide and was housed in a prison psychiatric unit (ECF Nos. 102-14 through ECF No. 102-16); and

- Dutton has a long history of mental health problems including antisocial personality disorder and a treatment with numerous psychotropic medications (ECF Nos. 102-17 & 102-18).

(ECF No. 136 at 40–41.)

Hall asserts that, had counsel properly investigated, they would have been able to cross-examine the witness with extensive evidence that he was lying when he claimed to not be "looking for benefits and had no idea what an informant was." (*Id.* at 41.) Petitioner contends that counsel could have cross-examined Dutton with proof that he was working for the government, seeking benefits, and knew that he could get assistance based upon his story against Petitioner, including evidence that:

- Dutton boasted that he knew how the informant system worked and was ready to become an informant for the FBI (ECF No. 102-2);

- when Dutton was trying to get out of administrative segregation, he again sought to contact the FBI for assistance (ECF No. 102-19 at PageID 1139);

- Dutton testified for the State of North Carolina in the *State v. Tammie Thompson* and received numerous benefits, including being quickly released from maximum security in Tennessee, sent to the Knox Community Service Center, given two furloughs, and released early from prison (ECF Nos. 102-20 through 102-23);

- Dutton received additional prison time including time for assaulting a corrections officer (ECF Nos. 102-24 through 102-26);

- Dutton was depressed and looking to get out of segregation when he claimed he obtained information on Petitioner in late 1995[15]; and

---

[14] Petitioner incorrectly cited ECF No. 102-32.

[15] Petitioner's reference to ECF No. 102-29 may be incorrect.

- Dutton "was lavished with extraordinary benefits by the Tennessee Department of Correction" after he provided information against Petitioner including quick release from administrative segregation, hasty transfer from Riverbend Maximum Security Institution to minimum security at Cold Creek Correctional Facility, and a job "after which he boasted that he was going to be paroled." (ECF Nos. 102-28 through 102-33);

(ECF No. 136 at 41–43.)

He insists that "[g]iven this abundance of impeachment evidence", counsel was ineffective for failing to cross-examine Dutton using this evidence. (*Id.* at 43.) Respondent did not directly address Petitioner's argument as it relates to Dutton except to note that this Court found "the claims related to the impeachability of state witnesses were found to be non-material" in regard to Petitioner's *Brady* claims. (ECF No. 140 at 19.)

This Court determined that much of the information that the inmate asserts was impeachment evidence that trial counsel should have used to impeach Dutton was not material under *Brady* and the state's failure to disclose such information did not prejudice Petitioner. (ECF No. 110 at 35–46.) Hall's trial counsel questioned Dutton about being an informant. (ECF No. 21, Add. 2, Vol. 2, pp. 232–33; *see* ECF No. 110 at 41.) The Court stated, "the jury was aware that Dutton was a criminal, that he sought parole in exchange for his testimony, and that he testified in other cases. This information was sufficient to alert the jury that Dutton's testimony may not be credible." (*Id.* at 43.) Just as Petitioner cannot demonstrate prejudice from the failure to disclose this information, he cannot establish prejudice from counsel's failure to impeach Dutton on this evidence. His claim is not substantial under *Martinez*.

Petitioner's allegations related to trial counsel's failure to challenge Dutton's testimony are procedurally defaulted and DENIED.

### 4. Failure to Challenge the Misleading Testimony of Petitioner's Daughters (Amended Petition ¶ 262.11)

Hall contends that his trial counsel failed to establish that Petitioner's daughters' testimony was not accurate. (ECF No. 15 at 59.) He argues that his trial counsel could have secured evidence for use to cross-examine Petitioner's daughters and demonstrate that he attacked and killed Billie Hall "following a drunken blow-up, wherein [Petitioner] didn't deliberate or premeditate or act intentionally, as required for a finding of first-degree murder." (ECF No. 136 at 43–44.) Petitioner submits that his counsel would have learned that he did not barge into the house and immediately attack and kill the victim. (*Id.* at 44.) He asserts that the investigation would have established that "Momma let [Petitioner] in"; "[h]e promised not to fight" and did not immediately attack her. (*Id.*) The inmate contends that he "stayed somewhere around an hour" and "drunk two or three beers" before a fight erupted. (*Id.*) Because he was in "a drunken rage", he maintains he was guilty of "at most, second-degree murder." (*Id.*)

Respondent did not directly address Petitioner's argument about ineffective assistance of counsel related to Petitioner's daughter's testimony. The Warden argues that this Court found "the claims related to the impeachability of state witnesses were found to be non-material" in regard to Petitioner's *Brady* claims. (ECF No. 140 at 19.) This Court stated that evidence that Petitioner was drinking and that time lapsed from his arrival at Billie Hall's home was presented at trial. (ECF No. 110 at 48.) The Court further noted, "this is not information about which Petitioner can claim he had no knowledge. [Petitioner] was present for these events and able to advise his counsel of the discrepancies in information or testify himself." (*Id.*) The Court held that the omission was not "of sufficient significance to result in the denial of defendant's right to a fair trial." (*Id.* at 49 (internal quotation marks and citation omitted)).

Similar to the *Brady* claim about Petitioner's daughters' testimony, counsel's performance with regard to their testimony did not prejudice him. Cynthia Lambert initially testified that Petitioner pushed his way in the house (ECF No. 21, Add. 2, Vol. 2, p. 260), but on cross-examination, she admitted that she did not remember whether he forced his way in. (*Id.* at 269–70.) Lambert also related that Petitioner and Billie Hall did not fight when he first arrived at the house and that he brought some beer and drank it. (*Id.* at 269.) On cross-examination, she admitted that Petitioner had brought beer with him to the house and started drinking in her presence. *Hall*, 2005 WL 22951, at *27.

The post-conviction trial court and the Tennessee Court of Criminal Appeals addressed Petitioner's claims that counsel failed to establish the victim as the aggressor including the evidence related to whether he forced his way into the home and immediately attacked Billie Hall,

> The petitioner contended that trial counsel should have presented evidence that the victim was the aggressor in their relationship. The trial court acknowledged the facts as presented at trial, including that the petitioner forced his way into the victim's home, attacked her as her children watched in horror, informed the children that he would kill their mother if they called for help, chased the victim after she escaped, dragged her down the walkway, and held her under the water in the children's swimming pool. The trial court concluded that trial counsel were aware of the relevant facts and that they made a tactical decision not to attack the victim at trial. It also concluded that introduction of any evidence as to the victim's role as first aggressor would have had little to no legal significance as there was no proof that the victim provoked the petitioner at the time of her murder and that any attempt to argue to the contrary would have resulted in the immediate and irrevocable alienation of the jury. In a related issue, the trial court noted that the state possessed a great deal of negative information about the petitioner that was not introduced at the trial. The trial court concluded that had trial counsel pursued an attack of the victim's character, the state would have taken the opportunity to reveal many facts which would have harmed the petitioner much more than presenting evidence concerning the victim's past behavior would have benefitted him.

*Id.* at *24.

The post-conviction appellate court addressed Petitioner's argument that the victim was the

aggressor; counsel's strategic decision not to attack the victim; and the argument that he was intoxicated and acting in an impulsive, rather than intentional and premeditated manner;

### B. Counsel failed to establish the victim as the aggressor

The petitioner asserts that the post-conviction testimony of his siblings "and the Brittains clearly establish that the victim was capable of goading the petitioner." He contends that this evidence established provocation and was essential to establish the circumstances for voluntary manslaughter. Trial counsel testified that they made a strategic decision not to attack the character of the victim because it ran the risk of alienating the jury. Mr. Mayo also said that as best as he could recall, the victim's acts against the petitioner were not severe enough to imply that his conduct was reasonable. Both Mr. Mayo and Mr. Ford stated that the petitioner was the only reliable source to establish the victim's acts of violence but that he refused to testify.

Briefly summarized, the facts established that the petitioner disconnected the telephone lines, forced his way into the victim's home, and violently attacked her as the children jumped on his back, bit him, and pleaded for him to stop hurting their mother. The fight continued outside, where the petitioner dragged the victim across the driveway and to the back of the house. There, he held her under the water in the children's swimming pool. No evidence showed that the victim provoked the petitioner immediately before his actions that resulted in her death. The trial court concluded that in light of these facts, evidence of the victim's prior acts of aggression upon the petitioner would not have assisted counsel in establishing that the victim was the first aggressor on this occasion. Additionally, the trial court found that the testimony of Dr. Zager and Randy Helms communicated to the jury that the petitioner was emotionally distraught and acting in an impulsive manner.

During the petitioner's trial, counsel attempted to negate the element of premeditation by presenting evidence of mental health issues and intoxication rather than attempt to establish the provocation necessary to support a voluntary manslaughter verdict. The state possessed a sufficient amount of information reflecting prior acts of violence by the petitioner against the victim, but did not seek introduction of this evidence at trial. However, had the defense attempted to establish the victim as the first aggressor, the state could have presented such information to discredit any indication that the victim provoked the petitioner. The defense strategy not to portray the victim as the aggressor was reasonable, given the risk of the backlash from attacking the deceased victim's character. *See, e.g.*, Heiman v. State, 923 S.W.2d 622, 627 (Tex. Crim. App. 1995) (stating it was sound trial strategy to refrain from attacking the victim's character as it was conceivable that the jury would have found this strategy repugnant). Accordingly, the petitioner has failed to establish that counsel was deficient by failing to pursue this theory of defense. He is not entitled to relief as to this claim.

*Id.* at *28–29.

There was clearly evidence presented at trial, even on cross-examination, that Petitioner arrived at the home with beer, was drinking, and attacked Billie Hall after some period of time passed. Hall's trial counsel stated that he made a strategic decision not to attack the victim Billie Hall because of the information that might be presented about his character. Further, counsel was able to address credibility issues with Cynthia Lambert without alienating the jury by attacking a child who has lost her mother in a gruesome murder. Trial counsel attempted to negate the intent aspect of the crime with evidence of intoxication and impulsivity. Trial counsel's performance was reasonable, and given the facts, of the case, Petitioner cannot demonstrate prejudice. His claim is not substantial under *Martinez*.

The allegations related to trial counsel's failure to challenge Petitioner's daughter's testimony are procedurally defaulted and DENIED.

### 5. Failure to Have Petitioner Testify and Allowing an Invalid Waiver of Hall's Right to Present Such Testimony (Amended Petition ¶ 262.17)

The inmate alleges that trial counsel was ineffective for telling Judge LaFon that he had knowingly and voluntarily waived his right to testify. (ECF No. 15 at 60.) Petitioner claims that he possessed a fundamental constitutional right to testify on his own behalf, and only a knowing and intelligent waiver by Petitioner himself could waive that right. (ECF No. 136 at 45.) He asserts that his trial counsel "not only failed to protect and enforce [his] fundamental right to testify, he became an accomplice in depriving Mr. Hall of that right." (*Id.*) Petitioner further argues that he clearly expressed his desire to testify on his own behalf although he placed "nonsensical conditions" of removing the "flag or war" or signing a "judicial contract" on that desire. (*Id.* at 46.) He insists that "no sentient jurist could consider those conditions a knowing

46

and intelligent exercise of reason." (*Id.*) Petitioner states that his counsel failed to argue that Petitioner's "bizarre demands demonstrated that Hall was not knowingly and intelligently doing anything, let alone waiving a fundamental right." (*Id.*) He also submits that his counsel did not ask the trial court if it were willing to take down the flag that Petitioner found offensive and "sign a harmless piece of paper" that he deemed important or assert that a failure of the court to do so would result in the arbitrary denial of Petitioner's fundamental right to testify. (*Id.* at 46–47.) He contends that, instead of protecting Petitioner, his counsel stripped him of that right by telling the Court that he and Petitioner fully discussed the matter and the client was freely giving up his right to testify. (*Id.* at 47.)

Petitioner maintains that he was prejudiced because, had he testified, he would have told the jury that:

- he did not go to Billie Hall's house to kill her, but to reconcile;

- he did not barge into the house and force his way into the back bedroom;

- he did not plot Billie's homicide;

- he was besieged by circumstances troubling his life, including the pending death of his brother, the special needs of his daughter, the anxiety of severe financial strain, the deterioration of his relationship with Billie, and the struggle of trying to get by without an automobile, job, or home; and

- the events in his life "had just piled up, and after suffering sleep deprivation, drinking beer, smoking marijuana, and taking Stay Alert pills, he lost it."

(*Id.* at 47–48.) He asserts that, after hearing his testimony, at least one juror would have refused to find him guilty of premeditated murder. (*Id.* at 48.)

Petitioner further argues that he could have told the jury about the tragic events of his life and the events that led to Billie Hall's death had he testified at the sentencing stage. (*Id.*) He contends that at least one juror would have voted to sentence him to a sentence less than death had

the jury heard this testimony. (*Id.*) Respondent answers that Petitioner refused to testify because there was an American flag in the courtroom, and he has not stated why his counsel is responsible for that choice. (ECF No. 140 at 19.)

This Court addressed Petitioner's right to testify and whether there had been a valid waiver of that right and found no constitutional violation. (ECF No. 110 at 56–59.) Further, much of the evidence that Petitioner claims he would have testified about was in the record. There was evidence that he went to the house to discuss a reconciliation, that he disconnected the phone lines outside the house, and that he pushed his way into the room where Billie Hall and the children were watching television. *Hall*, 2005 WL 22951, at *1, 2, 24, 28. There was testimony that Petitioner had made comments about his threats "to grind [his wife] up as hamburger meat" and that he wanted his wife to suffer. *Id.* at *13, 37. There was also evidence that the inmate was depressed, had been drinking that night and that he suffered personality characteristics of paranoia and dependency and "psycho-social stressors including a sick child, loss of employment with the resulting financial problems, his impending divorce, and the terminal illness of a brother." *State v. Hall*, 8 S.W.3d 593, 598 (Tenn. 1999). There was expert testimony that Petitioner was "depressed, remorseful, suicidal and extremely concerned about his children" and that he suffered "an adjustment disorder with mixed emotional features (anxiety and depression) and 'substance abuse of dependence by history.'" *Id.* at 598–99.

In contrast to the proof that Petitioner views as favorable to him, there is the evidence that

> the victim sustained at least eighty-three separate wounds, including several blows to the head, a fractured nose, multiple lacerations, and bruises and abrasions to the chest, abdomen, genitals, arms, legs and back. Abrasions on the victim's back were consistent with having been dragged across pavement. Dr. Smith described some of the injuries to the victim's arms, legs and hands as defensive wounds.

*Hall*, 2005 WL 22951, at *2. Still, these injuries did not result in Billie Hall's death:

the primary cause of death was asphyxia resulting from a combination of manual strangulation and drowning. [Smith] could not say with certainty that either strangulation or drowning was the exclusive cause of death. Evidence supporting strangling as a contributing cause of death included bruising on the left and right sides of Mrs. Hall's neck, hemorrhaging in the neck muscles around the hyoid bone in the neck, and bleeding in the thyroid gland, which indicated that extensive compression had been applied to the neck. Evidence supporting drowning as a contributing cause of death was water found in both Mrs. Hall's stomach and in her bloodstream. The water in her stomach could have collected when Mrs. Hall swallowed water as she was being drowned. The water in her bloodstream would have entered when she took water into her lungs, and the water passed through the lungs into her bloodstream.

*Hall*, 8 S.W.3d at 597.   The evidence also revealed that:

> When the children tried to enter the room, they found the door blocked. The three oldest children, Jennifer, Cynthia and Stephanie, persisted in their efforts to get into the room and finally succeeded. They attempted to stop the defendant from hurting their mother. When Mrs. Hall told the children to go to a neighbor's house, the defendant told them that if they went for help, "he was going to kill Mama." He also told Mrs. Hall, a college student, that she would never live to graduate. Cynthia and Stephanie tried to use the telephone to call for help, but they discovered the telephones would not work. At that point, they went to a neighbor's house where they called 911. Jennifer, the oldest child, was the last to leave the house, carrying her sister Jessica. Before she left, she saw her mother and the defendant leave the bedroom and go outside. She watched the defendant drag her mother, "kicking and screaming," to the small pool in the back yard.

*Id.* at 596–97.

Petitioner's testimony, if presented, would have been subject to a credibility determination and a weighing and balancing against the aggravating factors and evidence presented in the case. His testimony would not have created a reasonable probability of a different outcome.   Because his right to testify was not violated and he suffered no prejudice from his failure to testify, Petitioner's claim of ineffective assistance of counsel related to his right to testify is not substantial under *Martinez*.

### 6. Failure to Keep the Venue in Henderson County (Amended Petition ¶ 262.2)

Hall alleged that his counsel failed to keep the trial in Henderson County. (ECF No. 15 at 59.) He argues that his claim that trial counsel was ineffective for failing to keep the venue in Henderson County when it was Petitioner's wish to be tried in Lexington is a substantial claim. (ECF No. 136 at 49.) Petitioner insists that he did not waive, "*and there is no record*" that he waived, his right to be tried in Henderson County, Tennessee. (*Id.* at 51.) He claims that he was not given an opportunity to be heard on the issues and that Madison County simply had no jurisdiction to try him. (*Id.* at 51–52.)

The Warden counters that Petitioner's counsel's failure to request a change of venue was raised as an ineffectiveness claim in the initial-review post-conviction proceeding. (ECF No. 140 at 18.) Respondent contends that appellate counsel's failure to raise the issue on post-conviction appeal is outside the scope of *Martinez*. (*Id.*)

Respondent is correct. In the Amended Petition for Post-Conviction Relief, counsel alleges that he "failed to properly withdraw a change of venue motion when instructed to do so by Petitioner." (ECF No. 144-2 at PageID 2098.) Therefore, ineffective assistance of post-conviction counsel cannot serve as cause for the procedural default of the claim. *Martinez* does not apply.

Respondent also argues that the Court previously determined that Petitioner's venue claims were properly exhausted in state court but were without merit. (ECF No. 140 at 19; *see* ECF No. 110 at 24–28.) The Court found that the Sixth Amendment vicinage right refers to federal judicial districts and have never been defined to apply to states. (*Id.* at 26.) The Court further stated that Petitioner is entitled to relief only if he can demonstrate that he was denied due process in the form

of "a fundamentally fair trial." (*Id.* at 27.) The Court also held that Hall had not shown that being tried before a Madison County jury prejudiced any constitutional right. (*Id.*) Petitioner has not demonstrated prejudice from being tried before a Madison County jury, especially where there were issues related to pretrial publicity. His trial counsel determined that a change of venue was "absolutely necessary" after reading newspaper articles. *See Hall*, 2005 WL 22951, at *13. Petitioner's claim of ineffective assistance related to the change of venue is also not substantial under *Martinez*.

The allegations of ineffective assistance of counsel related to the change of venue are procedurally defaulted and DENIED.

### 7. Failure to Investigate and Introduce Evidence of Brain Damage and Mental Illness (Amended Petition ¶¶ 259-61)

The inmate argues that, to the extent this Court has denied relief on his claim that counsel was ineffective for failing to investigate and introduce evidence of Petitioner's brain damage and mental illness and/or Petitioner's social history, *Martinez* allows full consideration of the mitigating evidence and the grant of habeas relief. (ECF No. 136 at 53–56.) He relies on the Ninth Circuit's ruling in *Dickens v. Ryan*, 688 F.3d 1054 (9th Cir. 2012), to assert that his post-conviction counsel failed to present all the evidence in support of his claims, and he is entitled to a full hearing on his ineffectiveness claim under *Martinez* with consideration of all the new evidence not presented in the post-conviction proceedings. (*Id.* at 53–54.) Petitioner asserts that for the guilt-phase claims, the new evidence includes: the testimony of Bremner and Ruben Gur and Magnetic Resonance Imaging (MRI) and Positron Emission Topography (PET) scans. (*Id.* at 54.) He contends that this evidence shows that Petitioner suffers significant brain damage which limits his ability to control his behavior and modulate his impulses; that the brain damage rendered

51

him unable to act with deliberation; and that Petitioner was incompetent to stand trial.  (*Id.* at 54–55.)  Petitioner also asserts that this evidence supports the sentencing phase ineffectiveness claims also and that additional evidence from Professor Terry Maroney[16], and the psycho-social history of Petitioner including the testimony of Petitioner's family members should be presented. (*Id.* at 55.)  He submits that his trial counsel failed to conduct an adequate mitigation investigation and failed to prepare a complete psycho-social history which resulted in the failure to uncover severe childhood abuse and neglect which likely caused Petitioner's significant brain damage from which his ability to regulate and control his responses is disrupted.  (*Id.* at 55–56.)

In the Amended Petition for Post-Conviction Relief, Petitioner's post-conviction counsel alleged that his trial counsel failed to adequately investigate the mental history of Defendant and was ineffective as it relates to the mitigation investigation, *see* supra pp. 4–5, 9–10, 12, and 19. (ECF No. 144-2 at PageID 2077–78, 2085, 2088–89, 2098.)  Petitioner alleged that, "had counsel done so, they could have prepared adequate psychiatric testimony showing a diminished mental capacity that was consistent with a charge of manslaughter, perhaps insanity, and certainly a Defendant undeserving of the death penalty."  (*Id.* at 2077.)  On post-conviction appeal, Petitioner alleged that his trial counsel failed to present the mental health issue properly, provide a complete mitigation history, and obtain services of a psychiatrist.  *See Hall*, 2005 WL 22951, at *31–34.  Because these issues were raised in the initial post-conviction proceedings, ineffective assistance of post-conviction counsel under *Martinez* does not apply to these claims.

Further, this Court addressed the evidence presented by Bremner and Gur in the context of evaluating Petitioner's post-conviction ineffectiveness claims related to his mental health and the

---

[16] Maroney had not personally evaluated Petitioner and was not "professionally qualified to proffer a diagnosis of mental illness or other disability."  (*See* ECF No. 136-3 at PageID 1738 n.2.)

mitigation case. (ECF No. 110 at 105–16.) The evidence revealed that Petitioner was evaluated by several mental health professionals at trial and in the post-conviction proceedings: Lynn Zager, Joe Mount, Keith Caruso, and Pamela Auble, and the State presented the testimony of Kimberly Stalford to rebut their conclusions. (*Id.* at 105–07.) The Court stated

> his counsel presented evidence through Dr. Zager that Petitioner suffered from depression and alcohol dependence, had personality characteristics of paranoia and dependence, suffered psycho-social stressors, and acted in "an impulsive manner versus a well-thought out plan." (D.E. 21, Add. 2, Vol. 3, p. 333–35.) Dr. Zager's diagnosis of Petitioner is consistent with the conclusions of Drs. Gur and Bremner. Neither Dr. Gur nor Dr. Bremner diagnosed Petitioner with a particular mental illness, but they explained how the physical structure of his brain may have affected his behavior. Ultimately, their opinion was no different from Dr. Zager's that the inmate could not form the specific intent to commit first degree murder and that he acted in an impulsive manner. Even if counsel were found deficient because he did not investigate and present evidence of brain damage, Petitioner was not prejudiced.

*Id.* at 115–16. The Court also found that that the evidence Petitioner claims could have been presented to obtain a more complete social history was repetitive of what had already been presented, and the failure to present that evidence was not prejudicial to Petitioner. *Id.* at 110.

Hall's claim is not substantial for the reasons stated. The allegations of failure to investigate and introduce evidence of brain damage and mental illness are not entitled to further consideration based on *Martinez*.

**D.      Discovery Issues**

Petitioner asserts that he is entitled to discovery to establish cause for the procedural default of his claims. (ECF No. 136 at 56–60; *see* ECF No. 147.) As his claims are not entitled to merits consideration under *Martinez*, Petitioner's request for discovery deserves no further attention.

## IV.     CONCLUSION

Upon further consideration on remand, Petitioner is not entitled to habeas relief based on *Martinez.*   Thus, the amended petition is DENIED.

## V.     APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El*, 537 U.S. at 335; *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005).   The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.   Habeas Rule 11.   A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.   28 U.S.C. §§ 2253(c)(2) & (3).   A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."   *Miller-El*, 537 U.S. at 336; *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).   A COA does not require a showing that the appeal will succeed.   *Miller-El*, 537 U.S. at 337 (internal quotation marks omitted); *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011).   Courts, however, should not issue a COA as a matter of course.   *Bradley*, 156 F. App'x at 773.

The Court previously denied Petitioner a COA.   (*See* ECF No. 110 at 131–34.)   On remand, the Court again finds that reasonable jurists could not disagree about the resolution of his claims and DENIES a COA.

Federal Rule of Appellate Procedure 24(a)(3) provides that a party who was permitted to

proceed *in forma pauperis* in the district court may proceed on appeal *in forma pauperis* unless the district court certifies that an appeal would not be taken in good faith or otherwise denies leave to appeal *in forma pauperis*. In this case, for the same reasons it denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[17]

IT IS SO ORDERED this 30th day of March, 2015.


s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[17] If Petitioner files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this order. *See* Fed. R. App. 24(a)(5)