

~~0230T-9805-66-0048~~

# CIRCUIT COURT OF MADISON COUNTY
## – TO –
## COURT OF CRIMINAL APPEALS

JUDGE___WHIT LAFON_____    DIVISION___I____

CIRCUIT COURT CLERK___JOE GAFFNEY_____

VOLUME ___I_____ OF ___VII___VOLUMES

STATE OF TENNESSEE

VS.                                        CASE NO.   ·96-589

JON DOUGLAS HALL_____

| | | | | |
|---|---|---|---|---|
| FELONY | ☒ MISDEMEANOR ☐ | ROR | ☐ TDOC | ☒ |
| BOND | ☐ $_____ | INDIGENT | ☐ | |
| POST CONVICTION | ☐ | HABEAS CORPUS | | ☐ |

MR. JERRY WOODALL                MR JESSE HILL FORD III
MR. AL EARLS                     MR. CLAYTON F. MAYO
DISTRICT ATTORNEY GENERAL'S OFFICE    FORD & MAYO
LOWELL THOMAS STATE OFFICE BUILDING   618 N HIGHLAND
JACKSON TN  38301                JACKSON TN  38301
_____          _____
Attorney For:  APPELLEE/APPELLANT    Attorney For: APPELLEE/APPELLANT
CASE WAS APPEALED BY BOTH STATE AND DEFENDANT

# W1997-00023-SC-DDT-DD

_____          _____
Attorney For:                    Attorney For:

OFFENSE: FIRST DEGREE MURDER

SENTENCE: TDOC/DEATH

FILED
AUG 0 7 1997
Clerk of the Courts

Filed the __7+h__ day of _____AUGUST_____, 1997___

COURT OF CRIMINAL APPEALS

BY: _____

LAYCOOK, JACKSON

I N D E X

AFFIDAVIT                                                                    144

AFFIDAVIT FOR ENTRY OF DEFAULT                                               172

AFFIDAVIT THAT RESPONDENT'S ARE NOT IN THE MILITARY SERVICE                  173

CERTIFICATE AND SEAL                                                         236

EX PARTE ORDER APPROVING EMPLOYMENT OF MITIGATION SPECIALIST                 141

EX PARTE MOTION FOR FURTHER INVESTIGATION SERVICES                           142

EX PARTE ORDER FOR FURTHER INVESTIGATION SERVICES                            143

EX-PARTE ORDER FOR ADDITIONAL JURY CONSULTANT SERVICES                       178

INDICTMENT                                                                   1-5

JUDGMENT                                                                     179

LETTER FROM MIDDLE TN MENTAL HEALTH INSTITUTE TO JUDGE                       19-20

MOTION FOR CONTINUANCE                                                 7, 156-163

MOTION FOR THE COURT TO CONSIDER ALL MOTIONS AND OBJECTIONS BY
THE DEFENSE IN LIGHT OF A HIGHER STANDARDS OF DUE PROCESS AND
RELIABILITY THAT ATTACHES IN DEATH PENALTY CASES                             8

MEMORANDIUM IN SUPPORT OF MOTION FOR THE COURT TO CONSIDER ALL
MOTIONS AND OBJECTIONS BY THE DEFENSE IN LIGHT OF A HIGHER
STANDARD OF DUE PROCESS AND RELIABILITY THAT ATTACHES IN DEATH
PENALTY CASES                                                                9-18

MOTION FOR EXCULAPTORY EVIDENCE - JENCKS ACT                                 25-26

MOTION TO PROHIBIT DISPLAY OF PHOTOGRAPHS OF THE DECEASED                    27-28

MOTION TO PRESERVE EVIDENCE                                                  29

MOTION TO DISMISS AND ABATE THE INDICTMENT                            31-33, 104-105

MOTION TO DISMISS ALL SUPRA INDICTMENTS                               34-63, 68-97

MOTION TO DETERMINE EFFECTIVENESS OF COUNSEL                                 66, 67

MOTION TO SUPPRESS                                                           106-114

MEMORANDIUM IN SUPPORT OF MOTION FOR THE COURT TO CONSIDER ALL
MOTIONS AND OBJECTIONS BY THE DEFENSE IN LIGHT OF A HIGHER STANDARD
OF DUE PROCESS AND RELIABILITY THAT ATTACHES IN DEATH PENALTY
CASES                                                                        115-124

MOTION TO LEAVE TO FILE FURTHER MOTIONS                                      125

MOTION FOR THE COURT TO CONSIDER ALL PRO-SE MOTIONS AND OBJECTIONS
BY THE DEFENSE IN LIGHT OF A HIGHER STANDARDS OF DUE PROCESS AND
RELIABILITY THAT ATTACHES IN DEATH PENALTY CASES                             126

MOTION TO ALLOW WITNESSES TO BE ACCOMPANIED BY GRANDPARENTS WHILE
TESTIFYING                                                                   127

MOTION FOR EARLY PRODUCTION OF WITNESSES' STATEMENT                          128

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR EARLY
PRODUCTIONS OF WITNESSES' STATEMENTS                                         129-131

MOTION TO TRANSFER TO MADISON COUNTY PENAL FARM                              132-133

MOTION (TO ALLOW ATTORNEYS TO BE CONSIDERED INCLUDED IN ALL MOTIONS
THAT HAVE BEEN PREVIOUSLY FILED BY DEFENDANT'S PRIOR ATTORNEYS)              134

MOTION FOR PRIOR AUTHORIZATION FOR PAYMENT OF COSTS FOR COPY OF
TRANSCRIPT                                                                   138-139

MOTION TO HAVE DEFENDANT TRANSFERRED TO MADISON COUNTY PENAL FARM
OR MADISON COUNTY JAIL                                             147-148

MOTION FOR DEFENDANT'S PRESENCE DURING ALL PROCEEDINGS HELD        149

MOTION TO RENEW MOTION FOR CHANGE OF VENUE                         150

MOTION TO DETERMINE PRIOR TO TRIAL THE COMPETENCY OF WITNESSES     151

MOTION TO DISMISS/BASED ON NEWLY DISCOVERED EVIDENCE               153-155

MOTION FOR HEARING ON TRANSFER OF DEFENDANT                        164-165

MOTION AND MEMORANDUM TO QUASH SUBPOENA OF TOM CLOUSE              166-167

MOTION FOR DEFAULT JUDGEMENT PURSUANT TO THE ABOVE ACTION          171

MOTION TO RESTRICT DEFENDANT MAIL AND PHONE CALLS FROM VICTIM'S
FAMILY                                                            174

MOTION FOR TRANSCRIPT OF PRIOR TRIAL                               182-183

MOTION FOR PRESERVATION OF RECORDS/EVIDENCE                        184-185

MOTION FOR JUDGEMENT OF ACQUITTAL                                  186-187

MOTION IN ARREST OF JUDGEMENT                                      188-189

MOTION FOR NEW TRIAL/AMENDMENT                                     190-192

MOTION FOR NEW TRIAL / PRO-SE / AMENDMENT                          193-198

MOTION TO ALLOW COUNSEL AND CO-COUNSEL TO WITHDRAW                 199-201

MOTION FOR NEW TRIAL OR VERDIT OF ACQUITTAL                        202-203

MOTION TO CURE OR WAIVER OF DEFECT                                 205-214

MOTION TO DECLARE DEFENDANT INDIGENT AS TO FINES AND COURT COSTS   232-233

NOTICE OF INTENT TO SEEK DEATH PENALTY AND SPECIFICATION OF
AGGRAVATING CIRCUMSTANCES                                         6

NOTICE OF MOTIONS                                                  145

NOTICE OF STATE'S INTENT TO USE PRIOR ASSAULT                      175

NOTICE OF APPEAL                                          180-181, 229, 217

ORDER ALLOWING PUBLIC DEFENDER'S OFFICE TO WITHDRAW AND
APPOINTING PRIVATE COUNSEL                                         23-24

ORDER APPROVING EMPLOYMENT OF JURY SELECTION CONSULTANT            30

ORDER (ATTORNEYS TO BE INCLUDED IN ALL MOTIONS PREVIOUSLY
FILED BY PRIOR ATTORNEYS)                                         135

ORDER (DEFENDANT TO BE MOVED; ATTORNEY TO HAVE UNLIMITED TRAVEL)   136-137

ORDER (AUTORIZATION FOR PAYMENT OF COSTS FOR COPY OF TRANSCRIPT
AND MOTIONS)                                                      140

ORDER (CHANGE OF VENUE GRANTED)                                    152

ORDER ON MOTION FOR CONTINUANCE                                    168

ORDER (DEFENDANT DECLARED INDIGENT)                                177

ORDER (FROM CRIMINAL COURT OF APPEALS)                             204

ORDER OVERRULING MOTION FOR NEW TRIAL                              215

ORDER OVERRULING MOTION FOR COUNSEL TO WITHDRAW                    216

ORDER (FROM CRIMINAL COURT OF APPEALS)                             230, 231

ORDER TO DECLARE DEFENDANT INDIGENT AS TO FINES AND COURT COSTS    234

ORDER GRANTING STAY OF EXECUTION                                   235

REPORT OF TRIAL JUDGE IN FIRST-DEGREE MURDER CASES            218-228

STATE'S RESPONSE TO MOTION TO SUPPRESS DEFENDANT'S STATEMENT       64

STATE'S RESPONSE TO DEFENDANT'S PRO-SE MOTION                     65

STATE'S RESPONSE (TO NOTICE OF MOTIONS)                          146

STATE'S RESPONSE (TO MOTION)                                     169

STATE'S SPECIAL REQUEST NO. 1                                    176

STATE'S NOTICE OF APPEAL                                         217

WITHDRAWL OF COUNSEL - REPLACEMENT BY COURT            21-22, 98-103

WRIT OF MANDAMUS / COMPELLING JUDGE TO ORDER DEFAULT             170

NO: _____

STATE OF TENNESSEE

vs.

JON DOUGLAS HALL

INDICTMENT FOR

FIRST DEGREE MURDER
THEFT OF PROPERTY - 2 COUNTS
ESPECIALLY AGGRAVATED KIDNAPPING

WITNESSES:
SUMMON FOR STATE

JENNIFER S. O'CONNOR, RT 1 BOX 403, HOLLOW ROCK, 986-8943

CINTHIA D. O'CONNOR, RT 1 BOX 403, HOLLOW ROCK, 986-8943

STEPHANIE N. HALL, RT 1 BOX 403, HOLLOW ROCK, 986-8943

BRENT BOOTH, JERRY BINGHAM, & RICK LUNSFORD; HCSD

SHERIFF BENDEL BARTHOLOMEW, CARROLL COUNTY SHERIFF'S DEPT.

JIMMY KEE, CARROLL COUNTY AMBULANCE AUTHORITY,
    BAPTIST MEMORIAL HOSPITAL, 986-4428

BRIAN BYRD, TBI

BILL SMITH, LINDA SMITH, & CLINTON E. SMITH; NATCHEZ TRACE DR

DONNA ESCUE, HUNTINGDON, 986-4427

DARLENE BROWN & JACKIE BRITTAIN, 500 W CHURCH ST

HERMAN McKINNEY, RT 2 PLEASANT HILL RD, LEXINGTON

DR. REGGIE HENDERSON, REGARDING PATIENT BILLIE JO HALL SEEN ON
    7/29/94

DR. VIOLETTE S. HNILICA, MEDICAL EXAMINERS OFFICE, MEMPHIS
    REGARDING BILLIE JO HALL

LAB DIRECTOR, ROOM 300, REGIONAL FORENSIC CENTER, 1060 MADISON
    AVE, MEMPHIS, TN  38104 WITH LAB RESULTS FOR AUTOPSY
    #_____FOR BILLIE JO HALL;
    DEFENDANT:  JON DOUGLAS HALL

BRENT BOOTH, PROSECUTOR

A TRUE BILL

_____
FOREMAN OF THE GRAND JURY

DATE INDICTMENT RETURNED: OCTOBER 3, 1994

COUNT 1

STATE OF TENNESSEE, HENDERSON COUNTY

THE GRAND JURORS of Henderson County, Tennessee, duly empaneled and sworn, upon their oath, present that

JON DOUGLAS HALL

on or about July 29, 1994, in Henderson County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally, deliberately, and with premeditation kill BILLIE JO HALL, in violation of T.C.A. §39-13-202, all of which is against the peace and dignity of the State of Tennessee.


_____
District Attorney General,
26th Judicial District

COUNT 2

## STATE OF TENNESSEE, HENDERSON COUNTY

THE GRAND JURORS of Henderson County, Tennessee, duly empaneled and sworn, upon their oath, present that

### JON DOUGLAS HALL

on or about July 29, 1994, in Henderson County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly obtain and/or exercise control over property, to-wit: one 1993 Dodge Caravan automobile, over the value of Ten Thousand Dollars ($10,000.00), without the effective consent of the owner, BILLIE JO HALL, with the intent to deprive the said owner thereof, in violation of T.C.A. §39-14-103, all of which is against the peace and dignity of the State of Tennessee.

_____
District Attorney General,
26th Judicial District

COUNT 3


STATE OF TENNESSEE, HENDERSON COUNTY

    THE GRAND JURORS of Henderson County, Tennessee, duly
empaneled and sworn, upon their oath, present that

                    JON DOUGLAS HALL

on or about July 29, 1994, in Henderson County, Tennessee, and
before the finding of this indictment, did unlawfully and
knowingly obtain and/or exercise control over property, to-wit:
one 1993 Oldsmobile Cutlass automobile, over the value of Ten
Thousand Dollars ($10,000.00), without the effective consent of
the owner, LINDA SMITH, with the intent to deprive the said owner
thereof, in violation of T.C.A. §39-14-103, all of which is
against the peace and dignity of the State of Tennessee.




                    _____
                    District Attorney General,
                    26th Judicial District

COUNT 4

STATE OF TENNESSEE, HENDERSON COUNTY

THE GRAND JURORS of Henderson County, Tennessee, duly empaneled and sworn, upon their oath, present that

JON DOUGLAS HALL

on or about July 29, 1994, in Henderson County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly remove and/or confine CLINTON E. SMITH so as to interfere substantially with CLINTON E. SMITH'S liberty, and CLINTON E. SMITH was under the age of thirteen (13) at the time of the removal and confinement, in violation of T.C.A. §39-13-305, all of which is against the peace and dignity of the State of Tennessee.

_____
District Attorney General,
26th Judicial District

FILED
KENNY CYPRESS - CIRCUIT CT. CLERK
DEC 1 9 1994
BY_____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE          )
                           )
VS.                        )          NO. 94-342
                           )
JON DOUGLAS HALL           )

NOTICE OF INTENT TO SEEK DEATH PENALTY AND
SPECIFICATION OF AGGRAVATING CIRCUMSTANCES

Comes now the State of Tennessee and, pursuant to Rule 12.3(b), Tennessee Rule of Criminal Procedure, of intent to seek the death penalty in the above-referenced case. The State hereby specifies the following aggravating circumstances that the State intends to rely upon at the sentencing hearing:

1.   The murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death;

2.   The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another;

3.   The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, and first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb.

Respectfully submitted,

_____
JAMES W. THOMPSON
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

_____
JAMES G. WOODALL
DISTRICT ATTORNEY GENERAL
26TH JUDICIAL DISTRICT

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been mailed to Mr. Frankie Stanfill, 227 W. Baltimore St., Jackson, TN 38301 this the 15th day of December, 1994.

_____
JAMES W. THOMPSON
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

IN THE CIRCUIT COURT FOR HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE      )
                        )    No:  94-342; 94-452      *FILED*
VS.                     )         94-454              KENNY CAMPERS  CIRCUIT CT. CLERK
                        )                             JAN 0 9 1995
JON HALL                )                             BY_____
                                                        DEPUTY CLERK

---

### MOTION FOR CONTINUANCE

---

Defendant, Jon Hall, by and through his counsel, request a continuance in this case and would show unto the Court as follows:

1.  The Assistant Public Defender's has resigned and the Public Defender's office in Jackson has just taken over this case.

2.  The State has filed a death penalty notice on December /5th/, 1994.


For any and all or the above reasons, defendant respectfully request that all dates in this cause be continued to allow proper representation of Defendant.

                            Respectfully Submitted,


                            _____
                            Stephen P. Spracher
                            Assistant Public Defender
                            227 West Baltimore
                            Jackson, TN 38301
                            (901) 423-6657


### CERTIFICATE OF SERVICE

I hereby certify that I have mailed or personally hand delivered a true copy of the foregoing motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson, TN 38302, this ____ day of January, 1995.


                            _____
                            Stephen P. Spracher

FILED
KENNY CAVNESS - CIRCUIT CT. CLERK.

JAN 0 9 1995

_____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE           )
                             )    DOCKET NO'S: 94-342, 94-452
VS.                          )                 94-454
                             )    CHARGES:  KIDNAPPING, 1ST
JON HALL                     )              DEGREE MURDER,
                             )              VANDALISM

MOTION FOR THE COURT TO CONSIDER ALL MOTIONS AND
OBJECTIONS BY THE DEFENSE IN LIGHT OF A HIGHER
STANDARDS OF DUE PROCESS AND RELIABILITY THAT
ATTACHES IN DEATH PENALTY CASES

Comes now the defendant, through counsel, and respectfully requests this Court to apply, in the course of ruling on motions, objections, and other matters arising in the course of this litigation, the heightened standard of due process required by the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 8, 16, and 17 of the Tennessee Constitution, and by the authorities set out to ensure the exercise of constitutional discretion in the decision and reliability in the result that is required specifically and uniquely in cases involving the potential for the imposition of the sentence of death.

Respectfully Submitted,

Stephen P. Spracher
Assistant Public Defender
227 West Baltimore
Jackson, TN 38301
(901) 423-6657

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing motion has been forwarded to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson, TN 38302, on this the 9th day of January, 1995.

Stephen P. Spracher

FILED
KENNY CAMPESS CIRCUIT CT. CLRK.

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE JAN 0 9 1995
DIVISION I

BY_____
DEPUTY CLERK

STATE OF TENNESSEE )
) DOCKET NO'S: 94-342, 94-452
VS. ) 94-454
) CHARGES: KIDNAPPING, 1ST
JON HALL ) DEGREE MURDER,
) VANDALISM

MEMORANDIUM IN SUPPORT OF MOTION FOR THE COURT TO
CONSIDER ALL MOTIONS AND OBJECTIONS BY THE DEFENSE
IN LIGHT OF A HIGHER STANDARD OF DUE PROCESS AND
RELIABILITY THAT ATTACHES IN DEATH PENALTY CASES

I.    "DEATH IS DIFFERENT":  THE IMPOSITION OF THE PENALTY
      OF DEATH REQUIRES, AS A MATTER OF FUNDAMENTAL
      CONSTITUTIONAL LAW, HEIGHTENED SCRUTINY AND
      RELIABILITY IN THE GUIDANCE AND EXERCISE OF
      SENTENCING DISCRETION.

      As a matter of substantive consitutional law, the
imposition of death as a criminal sanction is fundamentally and
qualitatively different from every other punishment meted out by a
state.  It is more servere in quantity and quality from life in
prison.  The taking of the life of one of its citizens is the most
extreme action that a governmental entity can take.  Indeed, death,
because of its severity and finality, occupies a constitutional
classification that is unique unto itself.  As the United States
Supreme Court explained in Woodson v. North Carolina, 428 U.S. 280
(1976), the Constitution requires a reliability in captial cases
that has no parallel in no captial cases:

            The penalty of death is qualitatively
            different from a sentence of imprisonment,
            however long.  Death in its finality,
            differs more from life imprisonment than a
            100-year prison term differs from only one
            of a year or two.  Because of that
            qualitative difference, there is a
            corresponding difference in the need for
            reliability in the determination that death
            is the appropriate punishment in a specific
            case.

Id. at 305

      It is from this fundamental and overriding constitutional
concern for the reliability of any sentence of death that most of
the standards and principles governing capital punishment emanate.
Numerous rules and safeguards have been developed by the courts,
including the Tennessee Supreme Court and the United States Supreme
Court, to circumscribe proceedings where death may be the ultimate

penalty. These rules and safeguards are far more than procedural
niceties. They are substantive law, infused with the recognition
that, to be constitutional, a sentence of death must be the result
of the exercise of individualized, reasoned and reliable sentencing
discretion.

    Indeed, the Supreme Court has repeatedly recognized that
death in such a final and draconian step that its imposition must
be attended with constitutional protections designed to ensure both
that the courts have reliably identified those defendants who are
guilty of a capital crime and for whom execution is the appropriate
saction, see, e.g. Ford v. Wainwright, 477 U.S. 399 (1986), and
that the death sentence is "and appear(s) to be, based on reason
rather than caprice or emotion." Gardner v. Florida, 430 U.S. 349,
358 (1977). As the Court stated in Caldwell v. Mississippi, 472
U.S. 320 (1985):

          This Court has repeatedly said that under
          the Eight Amendment "the qualitative
          difference of death from all other
          punishments requires a correspondingly
          greater degree of scruntiny of the capital
          sentencing determination." Accordingly,
          many of the limits that this Court has
          placed on the imposition of capital
          punishment are rooted in a concern that the
          sentencing process should facilitate the
          responsible and reliable exercise of
          sentencing discretion.

Id. at 329 (citations omitted) (quoting California v. Ramos, 463
U.S. 992, 9898-99 (1983). See also Eddings v. Oklahoma, 455 U.S.
104 (1982); Lockett v. Ohio, 438 U.S. 586 (1978); Garner v.
Florida, 430 U.S. 349 (1977).[1]

---

          1.
          Captial decisions emanating from the United States
Supreme Court contain numerous examples fo this conern for the
reliability of a death sentence. See, e.g., Barefoot v. Estelle,
463 U.S. 880, 924 (1983) (Blackmun, Jr. dissenting) (Woodson's
concern for assuring heightened reliability in capital sentencing
determination "is a firmly established as any in our Eighth
Amendment jurisprudence"); Eddings v. Oklahoma, 455 U.S. 104, 118
(1982) (O'Connor, J., concurring) ("This Court has gone to

In his opinion in Spaziano v. Florida, 468 U.S. 447
(1984), Justice Stevens noted that "in the 12 years since Furman v.
Georgia every Member of this Court has written or joined at least
one opinion endorsing the propostition that because of its severity
and irrevocavility, the death penalty is qualitatively different
from any other punishment, and hence must be accompanied by unique
safeguards to ensure that it is a J., concurring in part and
dissenting in part) (citations and footnote omitted).    See also
Parker v. Dugger, 498 U.S. _____, 111 S. Ct. 731, 112 L.Ed. 2d
812 (1991).

The retionale for this well-recognized constitutional
distinction between death and every other type of criminal
punishment was perhaps best articulated in Justice Brennan's
concurrence in Furman v. Georgia, 408 U.S. 238 (1972):

> Death is truly an awesome punishment. The
> calculated killing of a human being by the
> State involves, by its very nature, a
> denial of the executed person's humanity.
> The contrast with the plight of a person
> punished by imprisonment is evident.  An
> individual in prison does not lose "the
> right to have rights."  A prisoner retains,
> for example, the constitutional rights to
> the free exercise of religion, to be free
> of cruel and unusual punishments, and to
> treatment as a "person" for purposes of due
> process of law and the equal protection of
> the laws.  A prisoner remains a member of
> the human family.  Moreover, he retains the
> right of access to the courts.  His
> punishment is not irrevocable.  Apart from
> the common charge, grounded upon the
> recognition of human fallibility that the
> punishment of death must inevitably be
> inflicted upon innocent men, we know that
> death has been the lot of men whose
> convictions were unconstitutionally
> inflicted, yet the finality of death
> precludes relief.  An executed person has
> indeed "lost the right to have rights."
> As one 19th century proponent of punishing
> crimnals by death declared, "When a man is

---

extradiordinary measures to ensure that the prisoner sentenced to
be executed is afforded due process that will guarantee, as much
as is humanly possible, that the sentence was not imposed out of
whim, passion, prejudice or mistake") Godfrey v. Georgia, 446 U.S.
420, 443 (1980) (Burger, J., dissenting) (In capital cases we must
see to it that the Jury has rendered its decision with meticulous
care")   See also Caldwell, 472 U.S. at 329 n. 2.

> hung, there is end of our relations with
> him. His execution is a way of saying,
> You are not fit for this world, take your
> chance elsewhere.

Id. at 290 (Brennan, J., concurring) (citation omitted) (quoting
Stephen, Capital Punishments, 69 Fraser's Magazine 753, 763 (1864).
See also Furman, 408 U.S. at 306 (Stewart, J., concurring) ("The
penalty of death differs from all other forms of criminal
punishment, not in degree but in kind. It is unique in its total
irrevocability. It is unique in its rejection of rehabiliation of
the convict as a basic purpose of criminal justice. And it is
unique, finally, in its absolute renunciation of all that is
embodied in our concept of humanity").

The Tennessee Supreme Court has recognized the unique
characteristics of the impostion of the sentence of death and the
consequent unique constitutional protections for a defendant
charged iwth a capital offense. For example, in Johnson v. State,
797 S.W. 2d 578 (Tenn. 1990), referring to Woodson, supra, the
State Supreme Court stated:

> The penalty of death is qualitatively
> different from a sentence of imprisonment
> and because of that difference there is a
> corresponding difference in the need for
> reliability in the determination that death
> is the appropriate punishment in a specific
> case.

797 S.W. 2d at 580. See also State vs. Terry, 813 S.W. 2d 420,
425 (Tenn. 1991) and State v. Middlebrooks, Supreme Court at
Nashville, No. 01-S-01-9201-00008, decided 9/8/92, slip opinion, p.
57.

The difference between a life sentence and a death
sentence in Tennessee may be greater in actual fact than many
imagine. Although the current prediction concerning the amount of
time that an inmate serving a life sentence must actually expect to
serve before he is released from custody is difficult to predict
and is perhaps now longer in this state than it used to be, based
on past experience the average release time on a life sentence in
the immediate past years has been a little

4

more than <u>one-fifth</u> of an actual normal life span figured at seventy years. [2]

While a life sentence has in the past taken away a defendant's freedom for one-fifth of his or her life, a death sentence takes form the defendant, not only freedom for the defendant's entire life, but life itself. The death-sentenced defendant endures the psychological debilitation of being condemned to die while the life-sentence defendant enjoys the psychological advantage of anticipating release. The difference between the death sentence and the life sentence is therefore, one of both quality and quantity, substance and degree. The sentence of death is much more severe in all categories and to compare it to other types of sentences, which deprive the defendant of property or liberty, is to compare apples and oranges.

II.    SENTENCING JURIES MUST BE CAREFULLY AND ADEQUATELY
       GUIDED IN THEIR DELIBERATIONS.

To ensure the heightened reliability that is required of proceedings that may result in the imposition of the death penalty, the Jury vested with the authority to impose the sentence must be "carefully and adequately guided" in the exercise of its discretion. <u>Gregg v. Georgia</u>, 428 U.S. at 193. Such guidance will be deemed constitutionally sufficient only it it "channel(s) the sentencer's discretion by clear and objective standards' that provide specific and detailed guidance,' and that make rationally reviewable the process for imposing a sentence of death." <u>Godfrey v. Georgia</u>, 446 U.S. 420, 428 (1980) (quoting, respectively, <u>Gregg v. Georgia</u>, 428 U.S. at 198; <u>Proffit v. Florida,</u> 428 U.S. 242, 253 (1976); and <u>Woodson v. North Carolina</u>, 428 U.S. 280, 303 (1976).

---

2

According to figures released by the Tennessee Sentencing Commission, the average time actually served by inmates, who were released between 1986 and 1991, serving life sentence on first-degree murder convictions in this state, was somewhere around 15 years. [(1) In 1986-1987, 19 inmates were released who had served an average time of 14.9 years for first-degree murder.
(2) In 1987-1988, 6 inmates, 11.3 years average time. (3) In 1989-1990, 36 inmates, 15.5 years average time. (4) In 1990-1991, 32 inmates, 15.8 years average time.]

III.        A SENTENCE OF DEATH MUST BE BASED UPON AN
            INDIVIDUALIZED DETERMINATION OF ITS APPROPRIATENESS
            FOR THE PARTICULAR DEFENDANT UPON WHOM IT IS IMPOSED.
            TOWARD THAT END, THE SENTENCER MUST BE ALLOWED TO
            CONSIDER ANY RELEVANT MITIGATING FACTOR, NOT JUST
            THOSE SPECIFIED BY THE STATE'S DEATH PENALTY STATUTE.

        Having made the determination that the defendant is a

member of the narrow class of people eligible for death by virtue

of the presence of one or more clearly and objectiverly defined

aggravating circumstances, the sentencer cannot be constitutionally

required even onthat basis to impose a death sentence. Woodson v.

North Carolina, 428 U.S. at 404. "The fundamental respect for

humanity underlying the Eighth Amendment ... requires consideration

of the character and record of the individual offender and the

circumstances of the particular offense as a constitutionally

indispensable part of the process of inflicting the penalty of

death." Id. at 604. See also Roberts v. Louisiana, 431 U.S. 633

(1977); Roberts v. Louisiana, 428 U.S. 325 (1976).

        Only through such a process, which requires the sentencer

to "consider in fixing the ultimate punishment of death the

possibility of compassionate or mitigating factors stemming from

the diverse frailties of humankind,"Woodson v. North Carolina, 428

U.S. at 304, can capital defendants be treated as the Eighth

Amendment requires -- "as uniquely individual human beings." Id.

Because of this need for individualized treatment, the Court has

required that the sentencer be permitted to consider, and in

appropriate cases base a decision to impose a sentence short of

death upon, any state's death penalty statue. Lockett v. Ohio, 438

U.S. 586 (1978). As the Court explained in Eddings v. Oklahoma,

455 U.S. 104 (1982):

                    Lockett followed from the earlier decisions
                    of the Court and from the Court's
                    insistence that capital punishment be
                    imposed fairly, and with reasonable
                    consistency, or not at all ... By holding
                    that the sentencer in captial cases must be
                    permitted to consider any relevant
                    mitigating factor, the rule in Lockett
                    recognizes that a consistency produced by
                    ignoring individual differences is a false
                    consistency.

Id. at 112.

6

IV.                    DEATH AS A PUNISHMENT MUST BE PROPORTIONATE TO
                       THE CRIME FOR WHICH IT IS IMPOSED.

          Finally, the requirement that the "punishment
fit the crime" -- that death must be imposed consistently and
reserved solely for the punishment of individuals and conduct for
which the severest criminal sanction is appropriate -- is a
requirement of constitutional magnitude. Eddings v. Oklahoma, 455
U.S. 104 (1982); Cf. Pulley v. Harris, 465 U.S. 37 (1984)
(comparative proportionality review constitutionally mandated where
part of the state's statutory scheme for imposition of the death
penalty). T.C.A. Section 39-13-206(c) specifically mandates a
determination concerning whether the imposition of the sentence of
death in an individual capital case is arbitrary, excessive, or
disproportionate.

V.                    THE DISCRETION TO IMPOSE DEATH MUST BE LIMITED.

          As part of the constitutional jurisprudence of death
under the Eight Amendment, the Supreme Court has steadfastly
insisted that states meaningfully narrow the class of persons for
whom death is an available penalty. Thus, it has been held that a
conviction for a crime for which death is an available sentencing
option cannot, standing alone, justify the imposition of the
penalty from a constitutional standpoint. Rather, the state must
specify certain aggravating circumstances, at least one of which
must be present, in order for the defendant to become
constitutionally death-eligible.

          In Zant v. Stephens, 462 U.S. 862 (1983), for
example, the Court held that the state "must geninely narrow the
class of persons eligible for the dealth penalty" by requiring the
finding of a least one statutory aggravating circumstance which
sets a particular case apart from murders in general. Id. at 877.
As Justice White state in Furman v. Georgia, 408 U.S. 238 (1972),
the sentence of death cannot be constitutionally imposed where
"there is no meaningful basis for distinguishing the few cases in
which it is imposed from the many cases in which it is not." Id.
at 313 (White, Jr., concurring).

The Tennessee Supreme Court has recognized the application in this state of the "narrowing" limitation on the exercise of the jury's discretion contemplated in Zant v. Stephens, supra. See, for example, State v. Middlebrooks, Supreme Court at Nashville, No. 01-S-01-9102-00008, decided 9/8/92, slip opinion, p. 51-55.

In order to properly enforce, concerning the decision to impose the sentence of death, this "narrowing" requirement, the "reliability" requirement, and the requirement that the jury's discretion be limited and that its decision be based on the reason and not whim and caprice (see, ibid.), for example, the Tennessee Supreme Court has required that the scope of the state's proof-in-chief in a capital sentencing trial is limited to only proof relevant to the statutory aggravating circumstances. See, Cozzolino v. State, 584 S.W. 2d 765 (Tenn. 1979); and Black v. State, 815 S.W. 2d 166, 179 (Tenn. 1991); and the state is held to a double burden of proof beyond a reasonable doubt in a capital sentencing hearing, i.e., the state must prove beyond a reasonable doubt: (1) the existence of any statutory aggravating circumstance; and, subsequently that (2) any statutory aggravating circumstance outweighs any mitigating circumstance, statutory or otherwise, T.C.A. Section 39-13-204 (g).

VI.                    THE DISCRETION TO IMPOSE A SENTENCE OF LIFE
                       IS NOT LIMITED

The State and federal constitutions require that the jury's decision to impose a sentence of death must be "limited," "reliable," and "narrowed." At the same time, however, the jury's decision to impose a sentence of life may be based on anything with evidence that is relevant to the character of the defendant or the circumstances of the offense. See, Lockett v. Ohio, 438 U.S. 586 (1978); Zant v. Stephens, supra; Eddings v. Oklahoma, 455 U.S. 104 (1982); Skipper v. South Carolina, 476 U.S. 104; Hictchcock v. Dugger, 481 U.S. 393 (1987) Mills v. Maryland, 486 U.S. 387 (1988). See also State v. Middlebrooks, supra, slip opinion, p. 57.

8

The defendant's proof, therefore, is not limited to the statutory mitigating circumstances, T.C.A. Section 39-13-204(e) and (j) (9); and, in fact, the defendant is entitled to a jury instruction directing the jury to consider any evidence presented concerning mitigating circumstances, statutory or otherwise, T.C.A. Section 39-13-204(e) ("The trial judge shall also include in the instructions for the jury to weigh and consider any mitigating circumstances raised by the evidence at either the guilt or sentencing hearing or both which shall include but not be limited to those circumstances set forth in subsection (j)."). The defendant is entitled to such an instruction upon the presentation of "any mitigating circumstances raised by the evidence," id., and therefore has no specific burden of proof. See, for example, State v. Thompson, 768 S.W. 2d 239, 252 (Tenn. 1989) ("Each juror has discretion to determine the degree to which the proof mitigates against the death penalty.")

In the comparison of the limited scope of the prosecution's proof with the broad scope of the defense's proof that is subject to the jury's scrutiny, the Court in State v. Middlebrooks, supra, noted

> .... a capital sentencer must be allowed
> wide discretion -- not unlike that used
> before Furman -- to impose a life sentence
> based upon any mitigating evidence
> concerning the character of the defendant
> or the circumstances of the crime, the
> sentence of death] on a class of murderers
> that is demonstrably smaller and more
> blame worthy than the class of pre-Furman
> murders eligible for the death penalty.

slip opinion, 59; while the scope of permissible prosecution proof has been limited by Furman and its progeny, the scope of the defense proof has not been limited.

WHEREFORE, this Court should enter an Order recognizing that because the state is seeking the death penalty a heightened standard of review by the Eight and Fourteenth Amendments to the United States Constitution, Tennessee state law and the state constitution of Tennessee.

Respectfully Submitted,

GEORGE MORTON GOOGE
DISTRICT PUBLIC DEFENDER FOR
THE 26TH JUDICIAL DISTRICT

Stephen P. Spracher
Assistant Public Defender
227 W. Baltimore
Jackson, TN 38301
(901)  423-6657

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing
pleading has been forwarded to Jim Thompson, Assistant District
Attorney, P. O. Box 2825, Jackson, TN 38302, on this ____ day
January, 1995.

Stephen P. Spracher

*[handwritten notes at top right]*

STATE OF TENNESSEE
DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
**MIDDLE TENNESSEE MENTAL HEALTH INSTITUTE**
1501 MURFREESBORO ROAD
NASHVILLE, TENNESSEE 37217
(615) 366-7616

March 28, 1995

The Honorable Whit S. LaFon
Henderson County Circuit Court
P.O. Box 7411
Jackson, TN 38302

*[stamp:]* FILED
KENNY CAVNESS - CIRCUIT CT. CLERK

APR 1 0 1995

BY_____
DEPUTY CLERK

RE:  State of Tennessee vs. Jon Douglas Hall
     Docket No.:  94-342, 94-452, 94-454
     Report of Competency Evaluation

Dear Judge Lafon:

Jon Hall was seen by staff from the Forensic Services Division
-(FSD) of Middle Tennessee Mental Health Institute (MTMHI) in the
Department of Corrections on an outpatient basis at Riverbend
Maximum Security, and was subsequently admitted to FSD on
February 23, 1995, by order of your court.  He was sent here for
an evaluation of his ability to stand trial on the charge(s) of
first degree murder, kidnapping, vandalism, and for an assessment
of his mental condition at the time of the alleged offense(s).

After completion of the competency evaluation, the staff has
determined that Mr. Hall's condition is such that he is capable
of adequately defending himself in a court of law.  In making
this determination, it was concluded that he does understand the
charges pending against him and the consequences which might
follow, and he is able to advise counsel and participate in his
own defense.

With regard to Mr. Hall's mental condition at the time of the
alleged offenses, it is the opinion of the staff that he does not
meet the criteria for an insanity defense pursuant to the
provisions of T.C.A. 39-11-501.  Therefore, a defense of insanity
cannot be supported.

Judge Lafon
March 28, 1995
Page 2

The order also specified that the evaluation would address
matters which relate to alcohol and/or drug dependence and the
defendent's intellectual functioning.  The evaluation staff are
of the opinion that the defendent does have an alcohol and drug
dependence which could affect his normal behavior, and he scored
in the low-average range of intellectual functioning.

The staff further determined that Mr. Hall does not meet the
standards of judicial commitment to a mental health institute
pursuant to the provisions of T.C.A. 33-7-301(b) and 33-6-104.

We have returned Mr. Hall to the custody of the officials at
Riverbend Maximum Security Correctional Facility as he is
currently in safekeeping status from the Henderson County Jail.
We did not recommend follow-up services, although he could
benefit from alcohol and drug rehabilitation.  We have also
notified the mental health center which serves the Henderson
County Jail of our recommendations.

If you have any questions about this case, please do not hesitate
to contact me at (615) 366-7973.

                              Sincerely,

                              Larry Southard, Director
                              Forensic Services

cc:   James W. Thompson, District Attorney General's Office
      George Morton, Defense Attorney
      Richard Drewery, West Tennessee Behavioral Center

LS/bb

IN THE CIRCUIT COURT FOR HENDERSON COUNTY,
TENNESSEE

STATE OF TENNESSEE )
)                                FILED
)                        KENNY CANVESS - CIRCUIT CT CLRK
)                            MAY 0 2 1995
V.                                )      NO. 94-342 94-452 94-4  BY_____
)                                              DEPUTY CLERK
)
JON HALL                          )
)

WITHDRAWL OF COUNSEL  -  REPLACEMENT BY COURT

Comes now the Petitioner/Defendant, Jon Hall, and respectfully
moves this Court for "WITHDRAWL OF COUNSEL" under T.C.A. 40-14-104;
and request this Court to waive new appointment for atleast thirty
(30) days for the following an just reason:

Defendant is in the process in trying to retain Counsel within his
own means. After defendant has exercised due dilligance  in such,
and no Counsel has been retained, defendant then request this Hon-
orable Court to appoint new Counsel.

In further support of this motion to withdraw Counsel, Petitioner/
Defendant will show forth this Court the following;

Attorney George Googe has engaged in conduct involving dishonesty,
fraud, deceit, and mirepresentation of this defendant; and engaged
in conduct that is prejudicial to the Administration of justice; and
engaged in other conduct that adversely reflects his fitness to
practice law. DR 1-102 (a) 1,4,5,6,.

Attorney Googe has failed to seek the lawful objectives for defendant
Hall through reasonably means permitted by law. He has failed to accede
to a reasonably request of opposing Counsel  which has prejudiced the
rights of this defendant by not being punctual or in fulfilling all
professional commitmetns by use of offensive tactics, and failing to
treat with courtesy and consideration, all persons involved in this
legal process. DR 7-101 (a) 1,3:

Attorney has concealed and knowingly failed to disclose everything
that is required by law for him to reveal, to his knowledge. DR 7-
102 (a) 3,8:

Defendant contends that he has ask Attorney to file numerous motions
including: Change of Venue and to suppress certain evidence pursuant
to this case to name a few.

Defendant contends that his Attorney has lied about having in his
possesion certain evidence that is pertinent and material to the
defense.
In conjunction with this, defendant contends that Attorney has failed
to ascertain police reports that is paramount to his defense, and
has failed to petition the state for any/all exculpatory evidence
that may be favorable to the defense, if any.

1.

Defendant conte      that he is not    th Attorney Googe
representing bi.., and does not feel that said Attorney is represent-
ing his best interest within his means permitted by law.

A copy of this motion will be forwarded to the Board Of Professional
Responibility for an added inclusion in Attorney Googe records.

Defendant respectfully ask this Court that the time table for this
motion start after the Court has dismissed sais Attorney from his
case.

WHEREFORE, Petitioner/Defendant ask this Court that his Attorney be
dismissed from representing him.

                                   Respectfully Submitted,


                                   Jon Hall - Petitioner/Defendant


I _____ hereby certify that I have mailed a
copy of the exact same to George Googe and James Woodall prosecutor
for the state. This the _____ day of _____ 1995.


SWORN TO ME THIS THE _____ day of _____ 1995.

NOTARY PUBLIC _____

MY COMMISSION EXPIRES _____

                                2.

FILED

MAY 2 2 1995

BY_____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE          )
                            )      Nos. 94-342; 94-452 & 94-454
VS.                         )
                            )
JON HALL                    )

---

## ORDER ALLOWING PUBLIC DEFENDER'S OFFICE TO WITHDRAW
## AND APPOINTING PRIVATE COUNSEL

---

This matter came on to be heard before the Honorable Whit
LaFon, Circuit Judge, on the 19th day of May, 1995, and it
appearing to the Court that the Defendant, Jon Hall, is charged
with First Degree Murder, that a death penalty notice has been
filed by the State of Tennessee and that an irreconcilable conflict
exists between the Defendant and the Public Defender, such that
private counsel should be appointed.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the
Public Defender's Office of the 26th Judicial District is hereby
allowed to withdraw from representation of Defendant, Jon Hall.

IT IS FURTHER ORDERED that Carthel Smith, Attorney at Law, of
Lexington, Tennessee is appointed to represent Defendant, Jon Hall.
After Mr. Smith has had time to review the file in this case, the
Court will consider appointing an additional attorney to assist Mr.
Carthel Smith as co-counsel. Furthermore, Mr. Smith is authorized
mileage expense at the regular state rate to visit Mr. Hall since
this would be necessary for the defense in this case and no less
expensive alternative is available for consultation and preparation
in this death penalty matter. Mr. Hall is currently being held
pre-trial at the Riverbend Facility in Nashville, Tennessee.

ENTER this _22_ day of May, 1995.

_____
Whit LaFon, Circuit Judge

_____
GEORGE MORTON GOOGE
DISTRICT PUBLIC DEFENDER

_____
JIM THOMPSON
ASSISTANT DISTRICT ATTORNEY

CERTIFICATE OF SERVICE

I hereby certify that I have forwarded by U. S. Mail, postage prepaid a true and correct copy of the foregoing Order to the following:

1.    Carthel Smith, Attorney at Law, 85 E. Church Street, Lexington, TN  38351, and

2.    Jon Hall, Inmate No.  238941, Riverbend Maximum Security Institute, Unit 1 A-209, 7475 Cockrill Bend Ind. Rd., Nashville, TN 37209-1010.

This  22  day of May, 1995.

George Morton Googe

```
STATE OF TENNESSEE                  )
                           FILED    )
V.                KENNY CAVINESS - CIRCUIT CT. CLERK. )   NO.: 94-342 94-452 94-454
                                    )
JON HALL              MAY 2 3 1995  )
                                    )
                  BY_____
                     DEPUTY CLERK
```

---

### MOTION FOR EXCULPATORY EVIDENCE - JENCKS ACT

---

Comes now the defendant, Jon Hall, and moves this court pursuant
to Rule 26.02 of the Tennessee Rules Of Criminal Procedures, and
request the Attornet General to produce to him any/all "Exculpatory
Evidence" in the possesion of the state, if any;

26.02 (1) That defendant be provided with the existence, description,
nature, custody, condition and location of any books, documents, or
other tangible things and the identity and location of any persons
having knowledge of any discoverable matter that may be in the possesi
of the state and/or may become known, that is favorable material to
the defendant.

## I. POINTS AND AUTHORITIES

In the landmark case of Brady v. Maryland 373 U.S. 83, 83 S.CT. 1194,
10 L.ED 215 (1963), the United States ruled that the prosecution has
a compelling duty to voluntarily furnish the accused with any ex-
culpatory evidence that pertains to (a) the guilt or innonence of the
accused; (b) the punishment which may be imposed if the accused is
convicted of a criminal offense. The court said in Brady that "supp-
ression by the prosecution of evidence favorable to an accused upon
request violates due process where the evidence is material either to
guilt or to punishment, irrespective of the good faith or bad faith
of the prosecution". 373 U.S. at 87, 83 S.CT. at 1196-1197, 10 L.ED.
at 219. Thus, four prasqisities must be present before the prosecution
is required to furnish the accused with "Exculpatory evidence". First,
the evidence must be material, Second, the evidence must be favorable
the accused, his defense, or the sentence imposed if found guilty.
Third, the state suppressed the evidence. Fourth, the accused must mak
a proper request for the production of the evidence, unless the evider
when viewed by the prosecution, is obviously exculpatory in nature and
will be helpful to the accused. See United States v. Bagley, 473 U.S.
667, 105 S.CT. 3375, 87 L.ED. 481 (1985); United States v. Acurs 427
U.S. 97, 96 S.CT. 2392, 49 L.ED. 2d 342(1976); Brady v. Maryland supra
Strouth v. State, 755 S.W.2d 819. 828 (Tenn. Crim. App.)

The prosecutors duty to disclose is not limited in scope to "competent
evidence" or "admissible evidence". The duty extends to "favorable
information" unknown to the accused. United States v. Gleason 265 F.
Supp. 880,886 (S.D.N.Y. 1967). See also Branch v. State 4 Tenn. Crim.
App. 164, 469 S.W.2d 533 (1969).

The defendant s ting the discove: ntial need of the
materials in the preparation of his case, and that he is unable withou
undue hardship to obtain the substantial equivalent of the materials
by other means.

Wherefore, premises considered, defendant request that he provided
with all exculpatory evidence in supra case numbers.

Respectfully Submitted,

Jon Hall - Defendant

CERTIFICATE OF SERVICE

This is to certify that I have made service on Jerry Woodall, opposing
Attorney for the State of Tennessee, PO BOX 2825 Jackson Tn 38302,
this the 19th day of May     1995.

SWORN TO ME THIS THE 19th     DAY OF May     1995.

NOTARY PUBLIC Jenna Phillip

MY COMMISSION EXPIRES My Commission Expires JAN. 24, 1998

2.

IN THE CIRCUIT COURT OF HENDERSON COUNTY
AT LEXINGTON TENNESSEE

|  |  |  |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | |
| V. | ) | NO: 94-342 |
| | ) | |
| JON HALL | ) | |
| | ) | |

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK.

JUN 0 1 1995

BY_____
DEPUTY CLERK

---

MOTION TO PROHIBIT DISPLAY OF PHOTOGRPAHS OF THE DECEASED

---

Comes now the defendant, Jon Hall, and moves this court pursuant
to the decision in State v. Banks, 564 S.W.2d 947 (Tenn. 1978) to
prohibit the state from displaying photographs of the body of the
decedent prior to her death.

In support of this motion a memorandum of law is hereby set forth.

### POINTS AND AUTHORITIES

The following memorandum of law is submitted in support of the
motion to prohibit display photographs of the deceased. The defendant
asserts that any such display would be highly prejudicial and would be
highly uneccessary and inflame the emotions and passions of the jury.

A. Photogrpahs taken after the death of the Victim.

In State v. Banks, 564 S.W.2d 974 (Tenn. 1978), the Tennessee Supreme
Court held that photographs of a deceased were admissable if: (1) the
photos were verified and authenticated; (2) the photos were relevant
to a contested issue; and (3) the photos probative value was not out-
weighed by their prejudicial effect.

In Banks, the Court also expressed a preference for testimony by a
medical professional, such as a pathologist. This type of testimony
often better explains the events to the jury without the dangers which
are present with gruesome photographs as shown to the jury. See Banks,
564 S.W.2d at 951- 2. See also, State v. Duncan, 698 S.W.2d 63, 69
(Tenn. 1985), and State v. McCall, 698 S.W.2d 643, 648 (Tenn. Cr. App.
1985).

Any photographs of the deceased in this case would be especially grusome
and horrifying due to the manner of the death. The photos would also
be of questionable probative value to any contested, to any contested
issue in this case. Without question, any minimal probative value these
photos would clearly be outweighed by the substantial prejudice the
defendant would suffer should these photos be exhibited to the jury.

B. Photographs of the deceased before her death.

Photogrpahs of the deceased prior to her death (commonly referred to as
"life photos:) should be excluded if "they add little or nothing to the
sum total knowledge to the jury" or are not sufficiently relevant to a
legitimate controverted issue in a case". See generally, State v. Strou
620 S.W.2d 467, 472 (Tenn. 1981); State v. Dicks, 615 S.W.2d 126, 128
(Tenn. 1981); and Taylor v. State, 475 S.W.2d 51,553 (Tenn. App.197

1.

While appellate courts in Tennessee have often found erroneous admissio of "life photos" to be harmless, it is error nonetheless. "Life photos" like "death photos" have the same potential to excite the passions of a jury and cause them to decide the issues based on emotion rather than reason. Unless the State can show a controverted issue which a "life photo would be probative of, these photos should be excluded.

## CONCLUSION

The defendant respectufly request that the Court exclude any photographs of the deceased. The defendant also respectfully request that before any photo be admitted, the defense have any opportunity to stipulate to the facts the State wishes to establish through the introduction of that photograph. See State v. Banks, 564 S.W.2d 947,951 (Tenn. 1978) and Gladson v. State, 577 S.W.2d 686 (Tenn. Cr. App.)

Respectufly Submitted,

Jon Hall

Jon Hall - Defendant.

## Certificate of Service

This is to certify that I have made service upon J. Woodall opposing Attorney for the State, PO BOX 2825 Jackson Tenn. 38302. Signed this the_____day of_____1995.

SWORN TO ME THIS THE ___3d___ day of __May____ 1995.

NOTARY PUBLIC _Valerie D. Murry_

MY COMMISSION EXPIRES __My Commission Expires JAN. 20, 1999__

IN THE CIRCUIT COURT OF HENDERSON COUNTY
AT LEXINGTON TENNESSEE

STATE OF TENNESSEE )
)
)
V. )                         NO 94-342 94-452
)
)
JON HALL )
)

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK.
JUN 0 1 1995
BY 454
DEPUTY CLERK

MOTION TO PRESERVE EVIDENCE

Comes now the defendant, Jon Hall, and moves this court to order
the state to preserve the physical evidence in this cause.

1. That the State of Tennessee, in its investigation relative to this
cause, has taken certain items of physical evidence, including, but
not limited to blood. Said samples are perishable.

2. That the defendant desires to have an independant laboratory test
said samples and intends to seek permission to do so should further
proceedings in this cause be necessary.

3. That unless the State of Tennessee preserves any and all perishable
evidence, the defendant will be deprived of his right to discover
potentially exculpatory evidence.

WHEREFORE, premises considered, defendant prays:

That this court order the State of Tennessee to preserve any and all
physical evidence which it has gathered during its investigation of
this matter, pending further proceedings.

Respectfully Submitted,

_Jon Hall_

Jon Hall - Defendant

CERTIFICATE OF SERVICE

This is to certify that I have made service upon J. Woodall, opposing
counsel for the State of Tennessee, PO BOX 2825 Jackson Tenn. 38302.
Signed this the _____ day of _____ 1995.

SWORN TO ME THIS THE _30_ day OF _May_ 1995.

NOTARY PUBLIC _Valerie D. Murry_

MY COMMISSION EXPIRES My Commission Expires JAN. 20, 1999

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK.

JUL 1 4 1995

BY_____
DEPUTY CLERK

STATE OF TENNESSEE        )
                          )
V.                        :  CRIM. NOS. 94-342, 94-452 and 94-454.
                          )
JON HALL                  )

### ORDER APPROVING EMPLOYMENT OF
### JURY SELECTION CONSULTANT

This cause came on to be heard on the 14th day of July 1995, before the Honorable Whit LaFon, Circuit Judge, upon the *ex parte* motion of the Defendant, Jon Hall, for the authorization to employ a jury selection consultant at state expense to assist defense counsel in the preparation of this case. The Court finds that the motion is well taken and should be granted.

IT IS, THEREFORE, ORDERED that defense counsel is authorized to employ Julie E. Fenyes of Germantown, Tennessee, to perform jury selection consultation in this matter, at the rate of $50.00 per hour.

IT IS FURTHER ORDERED that said consultant is authorized to perform up to 40 hours of work on this case. at which time she shall report to defense counsel concerning her progress. Defense counsel shall then report to the Court before any further work may be authorized.

ENTER on this the 14th day of July, 1995.

_____
CIRCUIT JUDGE

_____
MIKE MOSIER, ATTORNEY AT LAW

_____
CARTHEL L. SMITH, ATTORNEY AT LAW

APPOINTED ATTORNEYS FOR THE
DEFENDANT, JON HALL



```
STATE OF TENNESSEE          )
                           )
V.                         )    NO. 94-342,        FILED
                           )                  KENNY CAVNESS - CIRCUIT CT. CLRK.
JON HALL                   )
                           )                     OCT 2 6 1995
_____)
                                              BY_____
                                                  DEPUTY CLERK
```

              *MOTION TO DISMISS AND ABATE THE INDICTMENT*

Comes now the defendant, Jon Hall, by and through himself and would
respectfully move this court to dismiss the bind-over pursuant to supra
indictment and in conjunction with T.C.A. § 40-1131, as cited in State
v. Waugh, 564 S.W.2d at 634.

Accordingly, attached heretofore, defendant advers to his supporting
motion to dismiss and affidavit in support for an abatement of the
bind-over.

WHEREFORE, defendant will forever pray.

                              Respectfully Submitted

                              _____
                              Jon Hall - Defendant
                              RMSI 7475 Cockrill Bend
                              Ind Rd Nash Tn 37209-1010

SWORN TO ME THIS THE 19TH DAY OF October 1995.

NOTARY PUBLIC_____

MY COMMISSION EXPIRES July 24 1999.




                    CERTIFICIATE OF SERVICE

This is to certify that I have made service upon Jerry Woodall,
Attorney General for Henderson County, P.O. Box 2325 Jackson Tn 38302,
with proper postage affixed thereto to insure delivery, this the_____
day of_____ 1995. _____.

N THE CIRCUIT COURT OF JEFFERSON COUNTY
AT LEXINGTON TENNESSEE

```
STATE OF TENNESSEE           )
                             )
V.                           )    NO. 94-342
                             )
JON HALL                     )
```

*AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS AND ABATE*
THE BIND-OVER

STATE OF TENNESSEE
                        -ss-
COUNTY OF DAVIDSON

I _____ hereby after first being duly sworn hereby
state and depose the following to-wit:

I was denied effective assistance of counsel during the Preliminary
hearing held for me on August 22, 1994; I was denied ample time to con-
sult with my Attorney's, and said Attorney's made no motion to the court
for such; I was denied a Preliminary hearing on the Kidnapping and theft
charges; my Attorney's waived the Preliminary hearing on the kidnapping
and theft charges after I specifically told them not to; these said
charges was later used against me by Attorney General Woodall as an
enhancement tool to seek the death penalty; I was subjected to self-
incrimination when Byrd did not read my Miranda rights; he then sought
custodial interrogation against me without reading my rights to me, and
then used false and perjured testimnoy against me during the Preliminary
hearing; Agent Byrd also played this false and perjured testimony to
the news-media, thereby denying me the right to a fair and impartial
Jury Trial; this said false and perjured testimony was used and presente
to the Grand Jury to bind me over which resulted in a True Bill being
returned.

I _____ hereby state under penalty of perjury that the
forgoing affidavit in support of this motion to dismiss is true to the
best of knowledge and belief. Signed this the 19th day of October, 1995.

                              _____
                              Jon Hall - Defendant


SWORN TO ME THIS THE 19th DAY OF October.

NOTARY PUBLIC _____

MY COMMISSION EXPIRES July 24, 1999.

MR JON HALL #280028
RMSI 7475 COCKRILL BEND IND RD
NASHVILLE TN 37209-1010

HONORABLE WHIT LAFON
CIRCUIT COURT JUDGE
HENDERSON COUNTY
LEXINGTON TN 38351

DATE: 10/20/95

RE: MOTION OF DISMISSAL FILED PRO-SE:

Dear Sir:
        I am writing to you in conjunction about the enclosed
motion. Sir, I did not want to file this pro-se, but at this time
my lawyers appointed to me leave me no other choice.

        Despite my pleas to gain exculpatory information that
I think pertains to my case, my lawyers will not try and ascertain
the information requested. I ask them to try and get records from
D.H.S., transcripts from the Protection order my wife filed against
me, and other information that I think would help mitigate the
murder charge I am currently facing. This has been all to no "avail".

        I need said evidence for other reasons as well pertinent
to my case, but, specifically, to show the character of my late
estranged wife, that she was the first aggressor etc... My attor-
ney's contend this is irrelevant; however, I know that it's not. I
can also use this defense if what I am alleging is factual. Tenn-
essee Rules of Evidence 404 (2) provides:

        .Character of Victim: Evidence of a pertinent character
trait of the victim of crime offered by an accussed or by the pros-
ecution to rebut the same, or evidence of a character trait of
peacefulness of the victim offered by the prosecution in a homicide
case to rebut the evidence that the victim was the first aggressor.

        Sir, please entertain my motion to abate the charges I
am facing, if nothing else, so I can have it entered into the
record for appeal purposes, pursuant to Tennessee Rules Of Criminal
Procedures. Rule 12.

        Please find enclosed of the things I have asked my
attorney's to ascertain in my behalf, but have failed to do so,
or atleast even try.

                                        Respectfully Submitted,

Sworn to before me this 20ᵀᴴ                    Jon Hall
                                        _____
day of October, 1995.                   Jon Hall - Defendant

Virginia Wilson

My Commission Expires July 24, 1999.

                                                    enclosed
P.S. I Have Sent Jerry Woodal copies of Dismissal, + the letters to my
Atty. Dated 9/19/95 So That D.A. couldn't Avoid Pursuit of Exculpatory Evidence

IN THE CIRCUIT COURT OF HENDERSON COUNTY
AT LEXINGTON TENNESSEE

STATE OF TENNESSEE

V.

JON HALL

FILED
KENNY CANNESS - CIRCUIT CT. CLRK.

OCT 2 6 1995

BY _____
    DEPUTY CLERK

)
)
)
)
)
)

NO. 94-342, 94-452, 94-454

─────────────────────────────

### *MOTION TO DISMISS ALL SUPRA INDICTMENTS*

Comes now the defendant, Jon Hall, by and through himself, and
moves this court to dismiss all supra indictments against him
under Rule 12 (a), (1), of the Tennessee Rules of Criminal Proc-
edures; In support of this motion, defendant will respectfully
show forth this court the following:

1. BRIEFING OF THE PRESENTMENT AND INFORMATION OF THE PRELIMINARY.

On August 4th, 1994, defendant was extradicted from Belton County
Texas to Henderson Conty Tennessee, to face charges of the follow-
ing to-wit: First Degree Murder (1CT.), Theft of Property (2CT.),
and Aggravated Kidnapping (1CT.). On or about the date of 9/7/94,
defendant was indicted for Possesion of Implements for Escape. On
or about 9/___ 1994, defendant was also charged with Vandalism (1CT.).

On 8/22/1994, defendant was scheduled for a Preliminary hearing on
docket number 94-342, (inter-alia).

From the dates of 8/4 to 8/22/1994, defendant never seen his appoin-
ted Attorney's until (5) minutes before the Preliminary hearing[1].

Defendant contends on the date of 8/22/1994, he was escorted to the
Lexington Courthouse at approximately (9:00 A.M.). Defendant contends
that he was placed in a holding cell awaiting said procedures, when
he overheard Brent Booth (Prosecutor), discussing his case with (2)
other men, inwhich was his appointed Attorney's Stanfill and Hinson.

Defendant contends that he was removed from said holding cell and
introduced to said Attorney's. Defendant contends that Hinson ask
him did he have (5.000.00) dollars to pay for an alleged Psychiatric
examination. At which time the preliminary hearing was to be had. As

─────────────────────────────

1. Both Attorney's, Jack Hinson and
Frankie Stanfill later withdrew from
the case after the Preliminary hearing.

noted, defendant contends that he had approximatley (5) minutes
to preapre for the Preliminary hearing.

2. THE PRELIMINARY HEARING:

The effective assistance of counsel in this matter was a farce and
a mockery. Defendant contends that he did not waive the Preliminary
hearing on the Kidnapping charge, and contends that he repeatedly
told Attorney's that he did not want to waive said hearing on the
same. Defendant contends that this was all to no "avail".

There has also been a manifestation of injustice, malicious prose-
cution, denial access to the court, and denial to proper represent-
ation to adequately prepare for the Preliminary hearing, all leading
to inflamed waiver of the Kidnapping indictment, and an abandonment
to impeach certain evidence used and introduced by the State's wit-
ness, Brian Byrd for the Tennessee Bureau of Investigation. (See att-
ached Preliminary hearing and News Articles, referred to hereinafter
as defendants "Exhibit's A and B respectively).

The following colloquy took place at the Preliminary hearing that
will substantiate defendants motion to dismiss, (in-part), verbatim:

J.J. Mr. Hall is charged with First Degree Murder and Kidnapping. How
do you plea?

P.D. With all due respect your Honor, the defendant respectfully
enters a not guilty plea.

J.W. Your Honor may I address the court. The defense counsil stop
participlying furthercist of the Preliminary hearing, the defendant
waived the Kidnapping case to the Grand Jury for their consideration.
We want to proceed on the proably cause. (inaudible).

The transcript shows that Attorney Hinson never responded or objected
to Woodall adressing the court.

(a) If defendant waived the Preliminary hearing on the Kidnapping
indictment, why did defense Attorney enter into transcript a not
guilty plea on the Kidnapping in the first place?

(b) If defendant did not waive the Preliminary hearing on the Kid-
napping indictment, why then did Hinson not object to Woodall's
objection that he did waive the Preliminary hearing?

(c) Had Hinson and Woodall discussed defendants case prior to the
Preliminary hearing, without notice given to the defendant?

(d) Did Woodall and Hinson conspire against the defendant to ex-
pedite the Preliminary hearing at the lowest possible expense for
the State?

(e) Was it mentioned during the Preliminary hearing that the alleged
victim of the Kidnapping was attending his first day of school, and
that the State did not want to disturb his attendance?

(f) Did the State really have pertinent evidence and information to
bound the defendant over to the Grand Jury on the Aggravated Kid-
napping?

3. THE EVIDENCE PRESENTED AT THE PRELIMINARY HEARING ON 94-342:

During the Preliminary hearing the following colloquy took place
between Prosecutor Woodall and Agent Brian Byrd, verbatim:

J.W. (pg.5) Alright, just one minute. In addition, to what the def-
endant told you, as you testify here today, were you able to observe
the defendnats person?

B.B. Yes.

J.W. Did you observe any marks on his person or on his body, which
were consistent with your previous testimony?

B.B. (pg.6) Yes, sir. There were a great deal of scrapes to his hands
there was notable damage to his hands as if he had been accident or
injury of some sort.

J.W. Now was there any injury to the palm of the defendants hand?

B.B. No, sir.

J.W. Was the injury to the knuckles, fingers and thumbs?

B.B. It all appeared to be the back of the knuckles of the hands.

J.W. Would this be both right and left hand?

B.B. I believe I note it on both hands. Yes, sir.

CROSS-EXAMINATION OF BYRD BY DEFENSE ATTORNEY HINSON:

P.D. (pg.9) Scrapes on the hand, you indicated that there was scrapes
or scratches on the knuckles, fingers and hand. Was this both hands?

B.B. Ah. To the best of my knowledge it was.

P.D. Is there anything you have done in the past weeks that relates
to the scrapes on top of the hand that preserves that?

B.B. To my knowledge, I don't think we did. No, sir.

P.D. Did you ask defendant about that there?

B.B. <u>Yes, sir.</u>

Defendant contends that Byrd perjured himself on the stand about the
supra evidence, pursuant to the scrapes and scratches on his hand.
Byrd admitted into transcript that they never preserved any evidence
to support the condition of defendants hands. Defendant contends that
Byrd testified that both his hands were bruised and swollen with cuts
and scrapes. Defendant contends that pictures were taken of his hands
by the Belton County Sheriff's Department, and compared one hand to
the other by use of a ruler, to show the amount of swelling to the
hands. Defendant contends that only his right hand was swollen.
(Belton County Texas reports will be referred to hereinafter as Def-
endants "Exhibit C").

Defendant contends that Byrd gained access to the Belton Texas report
and pictures and perjured himself during the Preliminary hearing.

Byrd also contradicted and impeached himself during the Preliminary
hearing under direct and cross-examination about defendants rights
being read to him.

<u>DIRECT EXAMINATION OF BYRD BY WOODALL CONCERNING THE DEMISE OF DEF-
ENDANTS WIFE, (BILLIE HALL):</u>

J.W. (pg.5) Alright now. After he made that staement to you, I bel-
ieve he did not know she was dead until the day before?

B.B. That is the statement he made to us.

J.W. I did it. I did it. Now after that what did you do?

B.B. We discussed and read the rights waiver, when through the sheet
we got down to the part where he would sign the right waiver and give
us a statement. He stated that he would not sign statement without
counsel being present, so we terminated the interview at that point.

J.W. Alright so, after he allowed you to complete the Miranda infor-
mation he then ask for an Attorney, and you terminated the interview?

B.B. Correct.

J.W. Is that correct?

B.B. Correct.

J.W. What day was this?

B.B. This would have been on the 3rd, the day before the election.

BYRD UNDER CROSS-EXAMINATION BY DEFENSE ATTORNEY HINSON:

P.D. O.K. And of today date, three, two and half, three weeks later, that individual has never been read his rights?

B.B. No, sir.

The false testimony speaks for itself and needs no argumentation.
Byrd also perjured himself under oath at the Preliminary hearing when
stating under direct examination by Woodall: "after reading the def-
endant his rights, you terminated the interview"?

B.B. Correct.

However under cross-examination by Attorney Hinson, Byrd perjured
himself about terminating the interview.

P.D. (pg.9) Scrapes on the hand, you indicated that there was scrapes
or scratches on the knuckles, fingers and hand. Was this on both
hands?

B.B. Ah. To the best of my knowledge it was

P.D. You took no pictures of that?

B.B. To my knowledge, I don't think we did. No, sir.

Perjured testimony: P.D. Did you ask defendant about there?

B.B. Yes, sir.

Woodall reiterated his question to Byrd three (3) times to make sure
he knew he terminated the interview, and reiterated about what day
it was to make sure he knew, inwhich, Byrd responded the day before
the election, August 3rd. Byrd then also perjured himself by stating,
"we did ask the defendant about the scrapes on his hand".

Defendant contends that Byrd questioned him x-amount of times during
extradition from Belton Texas to Henderson County Tennessee.

4. <u>MEMORANDUM OF LAW POINTS AND AUTHORITIES TO DISMISS ALL SUPRA</u>
<u>INDICTMENTS IN THIS CAUSE</u>:

<u>RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND RIGHT TO PREPARE FOR</u>
<u>THE DEFENSE</u>:

Defendant was not provided with effective assistance of counsel, and
did not have ample time to prepare for the Preliminary hearing. Def-
endant seen his Attorney's for only (5) minutes before the Preliminar
hearing. The Sixth Amendment guarantees to a criminal defendant the
right to effective assistance of counsel at every step in the pro-
ceedings. <u>U.S.C.A. Const. Amend. 6</u>.

Counsel entering the case at the time of the defendants first app-
erance in court (usally Preliminary hearing) is likely to be confront
with a drastic curtailment of the opportunity for an inital interview
Counsel's first task will often be to impress upon the court necessit
for allowing him or her with sufficent time to discuss essential matt
ers with the new client. In addition to whatever rights to a cont-
inuance and to legal representation at Preliminary hearing may be
provided by State law, counsel should invoke the clients federal 6th
and 14th Amendment, which guarantees the opportunity for lawyer-clien
consultation in the course of judicial proceedings where there are
tactial decisions to be made and stratedgies to be reviewed. <u>Gedars</u>
<u>v. United States</u>, 425 U.S. 80, 88. If counsel is denied ample time fo
an adequate interview and investigation s/he should resist strongly
as possible being pressed to proceed with the Preliminary hearing. In
many jurisdictions, rights are not exercised and motions not made
prior to or at Preliminary arraignment, that may be irrevocably lost.

The Constitution guarantees of Assistance of Counsel, and cannot not
be satisifed by mere formal appointment. <u>Averv v. Alabama</u>, 308 U.S.
444, 446. It is therefore imperative to make a detailed factual recor
of both the Attorney's unprepareavidedness and justification for it.
<u>Morris v. Slappy</u>, 461 U.S. (1983).

Counsel should make a clear request on behalf of his client for the
assurance of adequate counsel throughout the case. As an Attorney,
s/he has the obligation to accept the appointment, but s/he has neith
the obligation nor the right to be used to create the apperance of
representation without its reality, such as it is in this case agains
defendnat Hall. Attorney's second job is to request adequate time to
interview the defendant privately and to prepare for the arraignment.
This is important at a Preliminary hearing. and Attorney's position
should be the same. 425 U.S. 80 (1976).

As incorporated herein, defendant Hall seen his appointed Attorney's
for only (5) minutes before the Preliminary hearing. Attorney's did
not make any motions to post-pone the Preliminary hearing to adeq-
uately prepare for the hearing, and to elicit facts for the same. [A]
trial lawyer was ineffective when his only contact with a client was
(15) minutes before the guilty plea. Butler v. State, 789 S.W.2d 898
(Tenn. 1990).

The ineffective assistance of counsel during the Preliminary hearing
in this matter could be narrowed to the following: 1) Did the ineff-
ective assistance of counsel prejudice the defendant; 2) Was the in-
effective assistance of counsel harmless error.

The determination whether the hearing is a "critical stage" requiring
the provision of counsel depends, as noted, upon an analysis "whether
potential substantial prejudice to defendants rights inheres in the..
confrontation and the ability of counsel to avoid that prejudice".
United States v. Wade, supra, [388 U.S. 218] at 277, [87 S.Ct. 1926,
at 1932] [18 L.Ed.2d [1149] at 1157]. Plainly the guiding hand of
counsel at the Preliminary hearing is essential to protect the indige
accused against an erroneous or improper prosecution. First, the
lawyer's skilled examination and cross-examination of witnesses may
expose the fatal weaknesses in the State's case that may lead the
Magistrate to refuse to bind the accused over. Second, in any event,
the skilled interrogation of witnesses by an experienced lawyer can
fashion a vital impeachment tool for use in cross-examination of wit-
nesses at the trial, or preserve testimony favorable to the accused
of a witness who does not appear at trial. Third, trained counsel can
more effectively discover the case the State has against his client
and make possible the preparation of a proper defense to meet that
case at trial. Fourth, counsel can also be influential at the Pre-
liminary hearing in making effective arguments for the accused on suc
matters as the necessity for an early psychiatric examination.

Defendant contends that his right to effective assistance of counsel
during the Preliminary hearing was grossly inadequate and mis-repre-
sented.

Defendant Hall contends that he did not waive the Preliminary hearing
on the Kidnapping indictment. This is well noted in the Preliminary
transcript, and was also reported by the Lexington Progress on 8/24/-
94, which stated: "Hinson waived the charge on behalf of his client
after Hall refused to sign the waiver". (referred to hereinafter as
defendants "Exhibit D").

Defendant contends that the alleged Kidnapping indictment was dis-
proportionate to the alleged crime committed,and that the Kidnapping
indictment would have not been bound over to the Grand Jury if a
Preliminary hearing had been held.

Not only did this prejudice defendants right to effective assistance
of counsel, the Kidnapping charge was later used as an enhancement
tool to seek the death penalty by presentment of Woodall's motion
against defendant Hall. (referred to hereinafter as defendants "Ex-
hibit  E").

While Hinson did impeach Byrd under cross-examination when he ask him
about reading Hall's Miranda rights and about cutting off the cust-
odial interrogation; however, counsel made no motions thereafter to
dimiss the indictments and move the court to suppress the impeached
testimony of Byrd. Thus, subjecting defendant Hall to self-imposed
incrimination during both the Preliminary and Grand Jury process.

Under Mckledin v. State, the court held that the Tennessee Preliminar
hearing is a "pretrial" type of arraignment where certain rights may
be sacrificed or lost. 516 S.W.2d. 82.

Coleman details the vital necessity for the "guiding hand of counsel"

Every criminal lawyer "worth his salt" knows the overriding importance
and the manifest advantages of a Preliminary hearing. In fact the
failure to exploit this golden opportunity to observe this manner,
demeanor and apperance of the witness for the prosecution, to learn
the precise details of the prosecutions case, and to engage in that
happy event sometimes known as a "fishing expedition" would be an in-
excusable dereliction of duty, in the majority of cases.

The Sixth Amendment guarantees to a criminal defendant the right to
have the assistance of counsel for his defense. This means the eff-
ective assistance of counsel, and "requires the guidnig hand of coun-
sel at every step in the proceedings. Powell v. Alabama, 287 U.S.
45, 53 S.Ct. 55, 77 L.Ed 158 (1932). This constitutional guarantee
is not satisfied by mere formal appointment. Averv v. Alabama, 308
U.S. 444, 60 S.Ct. 321, 84 L.Ed 377 (1940).

EC6-1 CPR reads as follows:

Because of his vital role in the legal process, a lawyer should act
with competence and proper care in representing clients. He should
strive to become and remain proficient in his pratice and should accep
employment only in matters which he is or intends to become competent
to handle.

DR6-101 provides, in part:

A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is
not competent to handle, without associating with him a lawyer who
is competent to handle it.

Defendant contends that both Hinson and Stanfill knew they had no
intentions to represent Him throughout the proceedings. Both Att-
orney's withdrew from defendants case not long after the Preliminary
hearing. This type of practice would fall under the same footing as
Avery v. Alabama. Id. (See Exhibit 6)

An inadequate performance by counsel renders a conviction void. Glass
v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed 680 (1942).

Defendant was subjected to prejudicial error when the alleged heresay
statement of defendant was introduced by Agent Byrd, alleging defenda
stated, "I did it" under custodial interrogation. Agent Byrd was then
later impeached under cross-examination about reading defendant the
Miranda confrontation act, i.e. defendants rights. The alleged heresa
statement was then publicized in all the local papers surrounding the
Henderson County. Hinson then failed to move this court to place a
"gag order" on court officials from speaking with anyone from the
media until Grand Jury proceedings could be had. See Sheppard v.
Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed. 2d (1966). This pre-
judice defendant during a "critical stage" of the Preliminary hearing.
forcing false adverse publicity upon the defendant, in violation of
the due process clause of the 14th Amendment, commensurate with Beck
v. Washington 369 U.S. 541-546 (1962) dictum.

This type of counseling sets forth a pattern of unhampered methods of
abuse to a defendants constitutional rights to effective assistance
of counsel. "What a status for future defendants".

5. DEFENDANT HALL WAS SUBJECTED TO PROSECUTORIAL MISCONDUCT DURING
THE PRELIMINARY HEARING STAGE OF THESE PROCEEDINGS:

THE PROSECUTORS DUTY DURING THE PRELIMINARY HEARING.

When an accused alleges that he has been denied a constitutional righ
the accused must prove the constitutional deprivation by a prepond-
erance of the evidence.

This standard of proof applies when it is alleged that the District
Attorney General has suppressed exculpatory evidence, has failed to
correct the known false testimony of a prosecution witness, or has
used false evidence to convict the accused. Smith v. State, 757 S.W.
2d 14, 19 (Tenn Crim. App. 1988). Thus, Hall would be required under
this theory to establish by the preponderance of the evidence, that
the Attorney General used false testimony of Brian Byrd, and that the
District Attorney used said false evidence to bound the defendant over
to the Grand Jury.

The defendant finds that his constitutional rights were violated by
the preponderance of evidence, by the inducement and allowance of
known false testimony submitted to this court of Agent Byrd of the
Tennessee Bureau of Investigation. The record of the Preliminary hearin
clearly supports these findings.

In State v. Gaddis, 530 S.W.2d 64, 69 (Tenn. 1975), the late Mr. Justi
Henry stated: "The days of trial by ambush are numbered. Rapidly fadin
is what Dean Pound described as the 'sporting theory of justice".

In State v. Fields,7 Tenn. 140, 145-416 (1823), the court referred to
the District Attorney General in the following manner:

> In a State case the people prosecute and the Attorney
> General is their officer; he is created by the consti-
> ution, acts in virtue of his commission, and on oath;
> and while he gards with viligance the interest of the
> State, it his bounden duty to see that such rights as
> the accused shall not be prostrated, but that right
> and justice shall be done; he should not lay hold of an
> accident brought upon the accused by default not imput-
> able to her. and turn such accident to the purpose of il-
> egal conviction; for as the people, the members of whom
> such abuse might fall indiscriminately, would, for the
> safety of each, avert such a course; so should neither the
> Attorney General, acting for them, stand by and see toils
> spread to insnare any.

In Napue the United States Supreme Court, holding that the prosecution
was required to correct false answer given by a prosecution witness,
stated:

> This principle that a State may not knowningly use false
> evidence, including false testimony, to obtain a tainted
> conviction, implicit in any concept or ordered liberty,
> does not cease to apply merely because the false test-
> imony goes only to the credibility of the witness. The
> jury's estimate of the truthfulness and reliability of
> a given witness may well be determinative of guilt or
> innoocence, and it is upon such subtle factors as the
> possible interest of the witness in testifying falsely
> that a defendants life or liberty may depend.

Berger was cited with approval in Judge v. State, 539 S.W.2d 340, 344
345 (Tenn. Crim. App.). The District Attorney General has an ethical
duty to furnish an accused with exculpatory evidence or favorable info
mation, to correct false testimony given by a prosecution witness, and
to refrain from using false evidence to convict an accused. Tennessee
Code of Professional Responsibility of the Criminal Lawyer, section 7.
17 (1987).

Ethical Consideration provides in part: 7-13:

> The responsibility of a public prosecutor differs
> from that of the usual advocate; his duty to seek
> justice, not merely to convict. With respect to ev-
> idence and witnesses, the prosecutor has responsib-
> ilities different from those of a lawyer in pri-
> vate pratice; the prosecutor should make timely dis
> disclosure to the defense available evidence, known
> to him, that tends to negate the guilt of the
> accused, mitigate the degree of the offense,
> or reduce the punishment. Further, a prosecutor
> should not intentionally avoid pursuit of evidence
> merely because he believes it will damage the pro-
> secutor's case or aid the accused.

Thus, DR &-103 (B) provides: "A public prosecutor or other government
lawyer in criminal litigation shall make timely disclosure to counsel
for defendant, or to the defendant if he has no counsel, of the exist-
ence of evidence, known to the prosecutor or other government lawyer,
that tends to negate the guilt of the accused, mitigate the degree
of the offense, or reduce the punishment. DR 7-109 (A) provides that
a lawyer "shall not suppress any evidence that he or his client has a
legal obligation to reveal or produce. See A.B.A. standards for Crim-
inal Justice, The Prosecution Function, standard 3-3.11 (a).

EC 7-26 states that "[t]he law and disciplinary rules prohibit the use
of fraudulent, false, or perjured testimony...."EC 7-27 states that a
"lawyer shall not suppress any evidence that he or his client has a
legal obligation to reveal or produce". Thus, DR 7-102 (A) (3) and (A)
(4) provide that a lawyer should not "(3) [c]onceal or knowingly fail
to disclose that which is required to reveal" or "(4) knowingly use
perjured false testimony or false evidence.

In summary a District Attorney General has both a legal as well as an
ethical duty to furnish the accused with exculpatory evidence or favor-
able information; and has both a legal and ethical duty to refrain from
suppressing such evidence, to correct the false testimony of a pro-
secution witness, and to refrain from using false evidence to convict
the accused.

The doctrine announced in Brady v. Maryland, extends to the statements
of a prosecution witness that are material and favorable to the accused
McDowell v. Dixon, 858 F.2d 945 (4th Cir. 1988), cert. denied.

11.

489 U.S. 1033, 109 S.Ct. 1172, 103 L.Ed. 2d 230 (1989) (statement of
victim); Chavis v. North Carolina, 637 F.2d. 213, 223 (4th Cir. 1980)
(statement of key witness); Scurr v. Niccum, 620 F.2d 186 (8th Cir.
1980); See State v. Goodman, 643 S.W.2d 375, 379-380 (Tenn. Crim. App.
1982). It is irrelevant that the information contained in the statement
can only be used to impeach the witness. United States v. Bagley, 473
U.S. 667, 105 S.Ct. 3375, 87 L.Ed 2d (1985).

It is a fundamental principle of law that an accused has the right to
cross-examine prosecution witnesses to impeach the credibility or est-
ablish the motive or prejudice of the witness. This includes a right to
cross-examine a prosecution witness regarding any promises of leniency,
promises to help the witness, or any other favorable treatment offered
to the witness. See State v. Norris, 684 S.W.2d 650, 654 (Tenn. Crim.
App. 1984).

It is a well established principle of law that the state's knowing use
of false testimony to convict an accused is violative of the right to
a fair and impartial trial embodied in the Due Process of the Fourteent
Amendment to the United States Constitution and article I, §§ 8 and 9
of the Tennessee Constitution. Pyle v. Kansas, 317 U.S. 213, 63 S.Ct.
177, L.Ed 2d 214 (1942).

When a state witness answers questions on either direct or cross-
examination falsely, the District Attorney General, or his Assistant,
has an affirmative duty to correct the false testimony. See Giglio v.
United States, Napue v. Illinois, Blanton v. Blackburn, 944 F. Supp. at
900. ("it is the responisibility of the prosecution to correct the
evidence); Hall v. State, 650 P.2d at 896 [d]ue process... imposes an
affirmative duty upon the state to disclose false testimony which goes
to the merits of the case or to the credibility of the witness. Whether
the District Attorney General did or did not solicit the false testimon
is irrelevant. United States v. Barham, 595 F.2d 231 (5th Cir. 1979).

However, if the prosecution fails to correct the false testimony of the
witness, the accused is denied due process of law guaranteed by the
United States and Tennessee Constitution. Giglio, supra.

This rule applies when the false testimony is given in response to
questions propounded by the defense counsel for the purpose of impeach-
ing the witness. Giglio supra, Napue, supra; Campbell v. Reed, 594 F.2d
(4th Cir. 1979).

Attorney General Woodall let false testimony be presented before the
preliminary hearing in this cause, and then said testimony was presente
to the Grand Jury to indict defendant Hall.

Despite Defendants objections (to defense counsel Hinson and Stanfill
not to waive the Kidnapping charge), said charge was waived and later
used the <u>kidnapping as an underline felony</u> as an enhancement tool to
seek the death penalty against the defendant; the <u>thefts indictment</u> wer
all so used for the same purpose by Woodall and was never introduced fo
a Preliminary hearing. (see "Exhibit F, referred to hereinafter as
defendants "Exhibit F"- part three (3) of Woodall's motion to seek the
death penalty).

6. <u>DEFENDANTS RIGHT TO MIRANDA WARNINGS AND RIGHT AGAINST SELF-IMPOSED
INCRIMNIATION</u>:

Defendants Miranda rights were not read to him during custodial interr-
ogation thereby subjecting him to self-imposed incrimination. As incor-
porated herein, <u>Byrd</u> was impeached about reading defendant his Miranda
rights and was impeached during the Preliminary hearing about cutting
off the custodial interrogation.

<u>DIRECT EXAMINATION OF BYRD BY WOODALL</u>:

J.W. (pg.5) Alright now. After he made that statement to you, I believe
he did not know she was dead until the day before?

B.B. That is the statement he made to us.

J.W. I did it. I did it. Now after that what did you do?

B.B. We discussed and read the rights waiver, when through the sheet
we down to the part where he would sign the rights waiver and give us
a statement. He stated that he would not sign statement without counsel
being present, so we terminated the interview at that point.

J.W. Alright so, after he allowed you to complete the Miranda informati
he then ask for an Attorney, and you terminated the interview?

B.B. Correct.

J.W. Is that correct?

B.B. Correct.

J.W. What day was this?

B.B. This would have been on the 3rd, the day before the election.

<u>BYRD UNDER CROSS-EXAMINATION BY ATTORNEY HINSON</u>:

P.D., O.K. And of today date, three, two and half, three weeks later
that individual has never been read his rights?

13.

B.B. <u>No, sir!!!</u>.

Under direct examination by Woodall, Byrd also testified that he cut
off custodial interrogation after defendant requested counsel; how-
ever, under cross-examination, Byrd was impeached and gave a different
version.

P.D. (pg.9) Scrapes on the hands, you indicated that there were scrapes
and scratches on the knuckles, fingers and hand. Was this on both hands

B.B. AH. To the best of my knowledge it was.

P.D. You took no pictures of that?(See: EXHIBIT C)

B.B. To my knowledge, I don't think we did, No, sir.

P.D. Did you ask defendant about that there?

B.B. <u>Yes, sir!!!</u>.

The controling question would then be... "was defendant prejudice by
Byrd not reading the Miranda warning, and by not terminating the
custodial interrogation". First, it cannot be inferred that defendant
was not prejudice by the allowance of the false testimony. The false and
perjured testimony was introduced to the Grand Jury and was later used
as an enhancement tool (in-part) to seek the death penalty against def-
endant and used (in part)to return a true bill against Hall.

The Supreme Court, in a 5-4 decision, reversed a conviction. The majori:
Opinion by Justice Goldberg was highly critical of reliance upon con-
fessions in general and interrogation of those without counsel in part-
icular. "<u>Agent Byrd also used the perjured testimony during the Grand
Jury proceedings when testifying, and then used said testimony and play
it out to the news-media finding defendant guilty of the charges before
he had a fair and impartial Jury Trial</u>".

The <u>Escobedo</u> majority asserted "that a system of criminal law enforce-
ment which comes to depend on the confession" will, in the long run, be
less reliable and more subject to abuses than a system which depends on
extrinic evidence independently secured through skillful investigation.
It seemed that the court was about to announce a broad right-to-counsel-
at-the-station rule, for it was said that the pre-indictment interr-
ogation was just as much as a "critical stage" as the Preliminary hear:
in <u>White v. Maryland</u>, in that what happened at the interrogation could
likewise "affect the whole trial"; and that Massiah was apposite because
"no meaingful distinction can be drawn between interrogation of an acc-
ussed before and after formal indictment".

We, hold, therefore, that were, as here, (1) the investigation is no
longer a general inquiry into an unsolved crime but has begun to focus
on a particular suspect; (2) the suspect has been taken into police

custody; [3] the police carry out a process of interrogation that
lends itself to eliciting incriminating statements; [4] the suspect has
requested and been denied an opportunity to consult with an Attorney,
and [5] the police have not effectively warned him of an absolute con-
stitutional right to remain silent, the accussed has been denied "the
assistance of counsel" in violation of the Sixth Amendment to the con-
stitution as made obligatory upon the states by the Fourteenth Amend-
ment to the constitution, and that no statement elicited by the police
during the interrogation may be used againt him at trial.

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, the Miranda rule
can be summarized as follows:

[1] These rules are required to safeguard the priviledge against self
incrimination, and thus must be followed in the absence of other pro-
cedures which are atleast as effective in apprising accused persons
of their right of silence and in assuring a continous opportunity to
exercise it.

[2] These rules apply when the individual is first subjected to the
police interrogation while in custody at the station or otherwise
deprived of his freedom of action in any significant way, and not to
general on the scene questioning of citizens in the fact finding proces
or to volunteer statements of anykind.

[3] Without regard to his prior awareness of his rights, is a person is
in custody is to be subjected to questioning, he must first be informed
in clear and unequivical terms that he has the right to remain silent,
so that the ignorant may learn of this right and so that pressures of
the interrogation atmosphere will be overcome for those previously awar
of the right.

[4] The above warning must be accompanied by the explaination that any-
thing said can and will be used against the individual in court, so as
to ensure that the suspect fully understands the consequences or for-
getting the priviledge.

[5] Because this is indispensbale to protection of the priviledge,
the individual also must clearly be informed that he has the right to
consult with a lawyer and to have the lawyer with him during interr-
ogation, without regards to whether it appears that he is already aware
of this right.

[6] The individual also must be warned that if he is indignet a lawyer
will be appointed to represent him, for otherwise the above warning
would be understood as meaning only that an individual may consult with
a lawyer if has the funds to obtain one.

[7] The individual is always free to exercise the priviledge, and thus if he indicates in any manner, at anytime prior to or during questioning, that he wishes to remain silent, the interrogation must cease, and likewise, if he states he wants an Attorney, the interrogation muse cease until an Attorney is present.

[8] If a statement is obtained without the presence of an Attorney, a heavy burden rest on the Government to demonstrate that the defendant knowningly and intelligently waived the privilege against self-imposed incrimination and his right to retained or appointed counsel, and such waiver may not be presumed from the individuals silence after warnings or from the fact that a confession was eventually obtained.

[9] Any statement obtained in violation of these rules <u>may not be admitted into evidence</u>, without regard to whether it is a confession or only an admission of part of an offense or whether it is inculpatory or alledgedly exculpatory.

[10] Likewise, exercise of the priviledge may not be penalized, and thus the prosecution may not use at trial the fact that the defendant stood mute or claimed his priviledge in the face of accusation.

7. <u>CONCLUSION IN SUPPORT TO DISMISS</u>:

Defendant contends that the trial court committed constitutional error to the following: 1) The court committed constitutional error when it did not ensure that defendant had the right to effective assistance of counsel; and that defendant had ample time to prepare and consult with attorney; 2) The court committed constitutional error when it allowed false and perjured testimony be presented to the Grand Jury and bind th defendant over on docket numbers 94-342; 3) The court committed constitutional error when it allowed the Attorney General to file a motion to seek the death penalty on underline felonies of Kidnapping and theft without first giving defendant a Preliminary hearing on the kidnapping and theft charges; 4) The court committed constitutional error when it failed to place a "gag order" on court officials to refrain them from speaking to the media about said charges after the indictment was returned consisting of false and perjured testimony by <u>Agent Byrd</u>; 5) The court committed constitutional error when it let false and perjured testimony be presented to the news-media after Byrd had been impeached during the Preliminary hearing, thus denying defendant his righ to a fair and impartial trial.

Wherefore, defendant contends that the bind over  on docket numbers 94-342 should be abated and dismissed.

Sworn to before me this
19th day of October, 1995.

Virginia Wilken

My Commission Expires:
T. L. ... 1999

Respectfully Submitted,

Jon Hall

'Jon Hall - Defendant

16.

Defendant  Exhibit ___

FILED
KENNY CAUTHESS · CIRCUIT CT. CLERK.

OCT 2 6 1995

BY_____
    DEPUTY CLERK

PRELIMINARY HEARING JON HALL

Judge J.B. Johnson= J.J.                James G. Woodall= J.W.

Public Defender= P.D.                   Brian Byrd= B.B.

Date: November 14, 1994                 Court Officer= C.O.

Transcribed by: Tonya Shavers


        Courtroom Noise

J.J. Mr. Hall is charged with First Degree Murder and
     Kidnapping.  How do you plea?

P.D. With all due respect your honor, the defendant
     respectfully enters a not guilty plea.

J.W. Your honor may I address to court.  The defense
     council, the defense council stop participlying
     furthercist of the Preliminary Hearing, the defendant
     waived Kidnapping case to the Grand Jury for their
     consideration.  We want to proceed on the probably
     cause (inaudible).

     (inaudible)

J.W. State your name, please?

B.B. My name is Brian Byrd.  I am an agent assigned to the
     Tennessee Bureau of Investigation.  I work Violent
     Crimes in this area.

J.W. Did you have the case on a lady July 29, 1994, early
     morning hours of July 30, 1994 to be directed by one of
     your supervisors and assist the Henderson County
     Sheriff Department in determining place the Murder
     investigation.

B.B. That is correct.  I was notified around 1:30 a.m..

J.W. And after you were notified did you go to a location
     in terms the 525 Pleasant Hill Road.

B.B. Initially, I went to the E.R. ah, out here at the
     hospital, to review Ms. Hall before I went out to 525
     but I later go out there.

J.W. Alright, do you, we will take it in order of mention
     and then back up Ms. Hall.

B.B. O.K.

J.W. Did you then go to 525 Pleasant Hill Road, here in
     Henderson County, Tennessee.

B.B. Correct.

J.W. Now you had initially gone to the hospital here in
     Lexington, is that correct?

B.B. That's correct.

J.W. At that location did you view the remains of one Billie
     Hall

B.B. Yes, sir.

J.W. And at the time you observed Ms. Hall was she alive or

dead?

B.B. She was deceased.

J.W. And based upon your observation of the remains was
there cause you take intensiveness to the cause of
death?

B.B. Based on my experience.

P.D. Your honor object to him giving any type of opinion as
to cause of death he does not qualify to do that.

J.W. The State of Tennessee a layman can give a medical
opinion in a Police report and I think he is entitled.

P.D. (inaudible)

J.W. What did you observe on the remains of Ms. Hall that
had you form an opinion as to the cause of death?

B.B. Basically, severe trauma to the head, there were other
cuts and bruises to her body but mostly severe trauma
to the head.

J.W. What type of trauma to the head did you observe?

B.B. It was, to be perfectly honest too difficult to ah to
distinct anyone one particular blow. It just appeared
there had been several blows, there was a great deal
of swelling and blood ah to Ms. Hall. I could not
determine what had caused the death other than just
trauma.

J.W. Alright now. Who were advised to clear the remains of
Ms. Hall who was found at 525 Pleasant Hill Road, prior
to being transported to the hospital?

B.B. That's correct.

P.D. I'm going to have to object to that statement having
hear say in it.

J.W. Now after you made the observation on the person Ms.
Hall, you then went to 525?

B.B. That's correct.

J.W. Did you conduct what we call a crime scene search?

B.B. Yes, sir.

J.W. At that location?

B.B. Yes, sir.

J.W. And were you able to determine what (courtroom noise)
anyone outside the premises of the 525 Pleasant Hill
Road prior to officer being dispatched to that
location.

B.B. That's correct. During the crime scene search it was
noted to be a position outside the house where someone
was standing prior to the incident and we noted by the
fact that the telephone junction box was disconnected.

J.W. Alright. When you say the telephone junction box was
disconnected what do you mean by that?

B.B. Apparently, someone had opened up the gray covering
from the box and taken out the connecting wire that
enabled the telephone to transmit from the resident to

any other location.

J.W. Did you at any time, you were conducting your crime scene go into the house?

B.B. Yes.

J.W. What was the phone, what was the status of the phone in the house?

B.B. I noted two phones, both of them off the hook.

J.W. O.K. Did you, were you able to get a dial tone on the phones?

B.B. No.

J.W. Could not.

B.B. No, sir.

J.W. Were not and why couldn't you?

B.B. Apparently, because they had been disconnected.

J.W. And you are talking about the junction box?

B.B. Correct.

J.W. Now were you able based upon the crime scene state that the remains of Ms. Hall had already been removed when you were out there. Were you able to form an opinion based upon what you saw at the scene as to where the remains of Ms. Hall was?

B.B. Yes, sir.

B.B. There was a blood trail from the house to driveway and then from the driveway there was a drag trail from a pool of blood down to the pool and in the pool there was what appeared to be blood floating in the bottom of the pool.

J.W. Now was there anyone at the house, living at the house other than Ms. Hall?

B.B. There were four children living with Ms. Hall?

J.W. And did you and other officer interview these children?

B.B. Yes, sir.

J.W. And were they present at the time that the Police were called (Blank)

J.W. Did you also interview anyone in the neighborhood?

B.B. We also interviewed the neighbor, who live on the hill above the house.

J.W. Had you also had an occasion since this time to interview various member of the Hall family?

B.B. Yes, sir.

J.W. O.K. Now based upon the information you have received from the children and from the Hall family and neighbors did anyone know that investigation why they were warrant?

B.B. Yes, sir.

J.W. And the warrant would be for who?

B.B. The warrant was for Jon D. Hall.

J.W. And do you know at this time who Jon Hall was on the 29th of day of July?

B.B. Yes. sir.

J.W. And his relationship to Ms. Hall?

B.B. Yes, sir.

J.W. And what was that?

B.B. He was her estranged husband.

J.W. O.K.  Now in had the occasion to professional come in contact with the individual who identified himself as Jon Hall?

B.B. Yes.

J.W. Is that individual present in the courtroom?

B.B. Yes, sir.

J.W. Can you point out that individual?

B.B. That man right there.

J.W. Let the record reflect that the witness has identified the defendant.

J.W. Now after obtained a warrant did you go anywhere with this warrant?

B.B. Yes. sir.

J.W. And what location did you go and who did you go with?

B.B. Deputy Rick Lunsford, Investigator Brent Booth and I traveled to Belton, Texas to bring Mr. Hall back to Tennessee after he waived extradition.

J.W. Alright now when you arrived at Belton, is that Bell County?

B.B. In Bell County, Texas.

J.W. Bell County Sheriff Department did you come in contact with an individual who was identified to you as Jon Hall?

B.B. That is correct.

J.W. Is that individual that you previously identified in this case?

B.B. That is correct.

J.W. Now at the time came initial contact with the defendant what location in Bell County Jail was he?

B.B. He was initially in their detention area and they brought him down to us in the detectives office and placed him into a small room adjoining one of their offices.

J.W. Alright now. when you initially had verbal contact as well as eye contact with the defendant what did you intend to do

B.B. The three of us were standing. Investigator Booth was
setting in the room with Mr. Hall as well as I, Deputy
Lunsford was standing in the doorway. We were in the
process of memorandizing Mr. Hall and telling him that
he did not have to speak with us and at the point.

J.W. When you say memorandizing you were attempting to
advise the defendant of certain Constitutional rights?

B.B. That is correct.

J.W. Did the, were you able to complete this?

B.B. No, sir.

J.W. Why were you not able to complete this?

B.B. Before I could even begin the sentences which state the
memoranda act. He was very emotional. He broke down,
began to cry and stated I did it. I did it. I am so
sorry I just found out yesterday she was dead and I
will tell anything you want to know.

J.W. Alright now. After he made that statement to you, I
believe he did not know she was dead until the day
before.

B.B. That is the statement he made to us.

J.W. I did it. I did it. Now after that what did you do?

B.B. We discussed and read the rights waiver, when through
the sheet we got down to the part where he would sign
the right waiver and give us a statement. He stated
he would not an statement without counsel being
present. so we terminated the interview at that point.

J.W. Alright so, after he allowed you to complete the
memorandi, information, memoranda information he then
ask attorney, and you terminated the interview.

B.B. Correct.

J.W. Is that correct?

B.B. Correct.

J.W. What day was this?

B.B. This would have been on the 3rd, the day before the
Election.

J.W. August 3rd?

B.B. August 3rd, the day before the General Election.

J.W. When did you bring the defendant back to the state
of Tennessee?

B.B. We brought him back during the early morning hours of
August 4th around 4 a.m.

J.W. Alright, just one minute. In addition, to what the
defendant told you, as you testify here today, were
you able to observe the defendant's person.

B.B. Yes.

J.W. Did you observe any marks on his person or on his body.
which were consistent with your previous testimony?

B.B. Yes, sir. There were a great deal of scraps to his
     hands, there was notable damage to his hands as if he
     had been accident or injury of some sort.

J.W. Now was there any injury to the palm of the defendant's
     hand?

B.B. No, sir.

J.W. Was the injury to the knuckles, fingers and thumbs?

B.B. It all appeared to be the back of the knuckles of the
     hands.

J.W. Would this be both right and left hand?

B.B. I believe I note it on both hands. Yes, sir.

J.W. Your witness.

P.D. How long have you been with T.B.I.?

B.B. Approximately 5 years.

P.D. How long have you been in the Homicide Division?

B.B. Approximately 2 years.

P.D. During that 2 years, how many cases have you
     investigated involving death?

B.B. Probably 20.

P.D. You indicated that you got called sometime back in July
     concerning possible death July 29th. Who did you
     receive that call from?

B.B. Special Agent John Mehr, he is my acting, or my current
     supervisor over West Tennessee.

P.D. And you identified the woman at around 1:30 a.m., as
     you came to the hospital. Is that correct, in
     Lexington?

B.B. Correct, in Lexington.

P.D. After you left the Hospital, you went to the alleged
     crime scene, which was the residence of Billie Hall.

B.B. That is correct.

P.D. And you noted, who was there when you got there?

B.B. Ah, there was a deputy there guarding the scene, ah I
     think it was the initial responding officer, but I
can't     remember his name.

P.D. Was there only one deputy?

B.B. To my knowledge, I can't be sure, I would not want to
     say without being sure.

P.D. Were the children there when you got there?

B.B. No.

P.D. Alright. Have you sat down and interviewed the
     children?

B.B. Yes.

P.D. Did you personally interview them?

B.B.  Yes.

P.D.  Do you think these children are hiding anything?

B.B.  To my knowledge, they are still with their grandmother, their maternal grandmother.

P.D.  Now you indicated after got to the crime scene, that you noticed a position where someone was standing, I think I quoted you correct?

B.B.  That is correct.

P.D.  How were you able to make that determination based where someone was standing?

B.B.  The ground, the grass on the ground was mashed flat, it was not standing erect.  There wasn't much grass but what was there was flat against the ground.  Also, there was a number of twigs that looked like they had been twisted or broken as if someone was working with them with their hands laying on the ground.

P.D.  Did you take pictures of this?

B.B.  Yes.

P.D.  You got it?

B.B.  Yes, sir.

P.D.  Do you have pictures of both the grass laying flat and of the twigs broken.

B.B.  We kept the twigs.

P.D.  And before you before you opened the junction box, was it dusted any type for fingerprints or any other.

B.B.  The box was open, we did not open it.  We did not dust it either.

P.D.  Was it raining?

B.B.  There was a heavy dew.  Yes, sir.  Was not raining.

P.D.  The box was open?

B.B.  Yes, sir.

P.D.  No finger prints taken?

B.B.  No, sir.

P.D.  Now you came inside and indicated also there was two phones both of which were off the hook, is that correct?

B.B.  Yes, sir.

P.D.  And during your crime scene, you should head over this crime scene.

B.B.  Basically, yes sir.

P.D.  And it is your job as part of that, or in that position to preserve any evidence that is available.

B.B  That is correct.

P.D.  Did you make the determination whether or not there any

evidence left on the property?

B.B. No, sir.

P.D. Did you serve or did you make planning for any type of finger prints anywhere else.

B.B. Yes. sir.

P.D. What did you look for finger prints on?

B.B. We took finger prints or solicited or sent various articles to the Tennessee Crime Lab for analysis so they could lift the prints.

P.D. What articles did you send?

B.B. We sent beer bottles and ash tray, and watch and other articles I could be I'd have to look at a list to tell you.

P.D. Several items?

B.B. Yes, sir.

P.D. You also indicated that I think you spoke to a neighbor, who was the neighbor?

B.B. I believe his name was Mr. McKinney.

P.D. Mr.?

B.B. Mr. McKinney.

P.D. (Tape messed up)

B.B. No, sir. Sheriff Department conducted that interview and advised me of that information.

P.D. Based on the that information you received and based upon the that testified that. you came to sought a warrant for the arrest of Jon Hall?

B.B. I believe that Investigator Booth took out the warrant, but we agreed to take out a warrant for Mr. Hall. Yes. sir.

P.D. O.K. Now while you were in Texas, you have also indicated that there was a statement made on behalf of Mr. Hall, I did it. I did it. Who was present when this statement was made?

B.B. Deputy Rick Lunsford, Investigator Brent Booth and I.

P.D. All three?

B.B. Yes, sir.

P.D. And between all three of you did anyone tape recorder?

B.B. No, sir.

P.D. Were type of camera to recording. anything what so ever at anytime?

B.B. Not at this time. I would probable write it up into an interview format but I have not dictated that yet.

P.D. And this statement was made back in the early hours of August 3rd or August 4th?

B.B. It was made approximately 3:30 or 4:00 p.m. in the

afternoon of the 3rd.

P.D. O.K. And of today date, three, two and half, three
weeks later, that individual has never been read his
rights.

B.B. No, sir.

P.D. Scrapes on the hand, you indicated that there was
scrapes or scratches on the knuckles, fingers and hand.
Was this on both hands?

B.B. Ah. To best of my knowledge it was.

P.D. Is there anything you have done in the past weeks that
relates to the scrapes on top of the hand that
preserves that?

B.B. No.

P.D. You took no pictures of that?

B.B. To my knowledge, I don't think we did. No, sir.

P.D. Did you ask the defendant about that there?

B.B. Yes, sir.

P.D. Nothing further.

J.W. You may step down. Your honor, Probable Cause Hearing
that's all the State intends to put on feels as thought
the State has carried the burden of proof.

P.D. Your honor, ah I am well aware of the probable cause,
recently the time being permitted the defendants one
who committed it. Ah, if the state show probable cause
today, just barely. Ah, and I don't see any charges,
the kidnapping has already agreed that is going to be
bound over but your honor I think this particular
individual. I am going to go ahead and close with my
closing remarks, I ask that the court system set Mr.
Hall a bound based upon the evidence presented today.
It the States appearing burden to show probable cause,
again my option is vague. Your honor, I believe Mr.
Hall is being held without bond and your honor I would
respectively ask this court to set a bond for Mr. Hall
he is entitled to a bond. He is a resident of
Henderson. Lexington. Henderson County. Tennessee your
honor he has been a resident how long? Two years he
has been a resident of Lexington and at any of that
time he certainly has the judicial right for a bond to
be set, with extra on the settlement.

J.W. Your honor, the state would oppose bond being set, this
is a charge of Murder in the First Degree which is a
potential capital in the State of Tennessee. Now
Kidnapping Mr. Blake which obviously is very adamant,
is a serious case too. I would feel like based upon
those factors alone the bond should, there should be no
bond set. I want to make that point.

P.D. Your honor, we have been called to sign this waiver.
(court room noise).

P.D. Your honor, if the court pleases we would like to sign
a waiver on the Kidnapping. If the court please I am
going ahead at this point and waive that on his behalf.
Your honor, court please I don't have any kind of
written, find any kind of written medical evaluation. I
am going to request that Mr. Hall ah, be allowed seek
some type ah, some type of mental evaluation between

now and the time that this matter is be bound over to
the Grand Jury. I think it is in the State best
interest and I think it is the defendants best interest
of whether or not. We present a order before to the
court concerning that. Thank you.

J.J. The court going to hold action of the Grand Jury.
Court going hold to Mr. Hall without a bond.

C.O. Charles D. Hall. (Court room noise)

C.O. Kenny Lyons. (Court room noise)

C.O. Lisa Cunningham (Court room noise)

# Man accused of killing wife has hearing

**EXHIBIT B**

## WHAT'S NEXT

John D. Hall's charges of first-degree murder and kidnapping will be heard by the Henderson County grand jury Oct. 3.

### ▶ Continued from cover

tion with the July 29 killing of his wife, Billie Jo Hall. Hall, 29, also is charged with kidnapping in connection with taking an unknown car that had a child in the back seat.

### TBI agent testifies

Brian Byrd, a special agent with the Tennessee Bureau of Investigation, said he and two other investigators traveled to Belton, Texas — where Hall fled after the incident.

When they questioned Hall Aug. 3, the defendant "was very emotional. He began to cry and said 'I did it. I did it. I'm so sorry I'll tell you anything you need to know,'" about Byrd

said.

After reading Hall his rights, however, the defendant would not give police a statement about his wife's death, said Byrd, who was the only witness called Monday by District Attorney General Jerry Wooddall.

Hall appeared belligerent and agitated during the 45-minute hearing Monday. At one point he refused to sign a form to waive his kidnapping charge

lence involving John Douglas Hall and the wife he's accused of killing was well-known to Henderson County Sheriff Charles Woods.

And while Woods regrets Billie Jo Hall's brutal death, he doesn't know how the sheriff's department could have prevented it.

"We don't have the resources

to arson and possession of marijuana following an incident in March.

Hall was fined $518, and sentenced to two jail terms of 11 months, 29 days. However, all jail time was suspended as long as he paid the fines. Hall waived $50 payments in May, June and July.

Billie Jo Hall, 29, secured an order of protection against her husband causing broken ribs and

Billie Jo Hall's order of protection when Hall pleaded guilty to the charges April 1.

However, Billie Jo Hall filed for a second order July 1. She wrote: "At our house, 525 Pleasant Hill Road, Lexington, he (Hall) assaulted and battered me." He also "beat me with a beer bottle, (and) threw me

scribed some of the evidence that indicated the fury of events that led to Billie Jo Hall's death.

"The telephone junction box had been disconnected. There was a blood trail to the driveway. At the driveway we found a pool of blood and a drag trail from the driveway to the pool,"

said Billie Jo Hall

# Rwanda's orphans live in agony

### ▶ Continued from cover

thorities of the new Tutsi-led government.

Asked about his future, Rutishi turned his head and said quietly, "I only want to be with people who will give me food."

The orphanage, 40 miles

tives. Adoptions abroad have been ruled out.

At Rukungo, four British volunteers are providing clean water, relief agencies bring some food and Canadian UN peacekeepers have "adopted" the orphanage. The soldiers give up some of their own rations and on their time off have

around their eyes and mouths.

## Disease rampant

The rains have come, bringing pneumonia, and there is a constant chorus of hacking coughs. Inside, two dozen babies lie side by side under blankets. Other rooms shelter emaciated children suffering from malnutrition.

EXHIBIT "C"
Belton Co. Texas Records

## ITEMS OF EVIDENCE SUBMITTED

| ITEM NO | QTY | ITEM - DESCRIPTION, WHERE FOUND, WHERE MARKED, HOW MARKED | CODE |
|---|---|---|---|
| 1 | 1 | SET OF CAR KEYS (to STOLEN OLDSMOBILE) TN LIC# 234-CXS | S |
| 2 | 23 | Photographs of John Douglas Halls (injuries) | S |

| ITEM NO | DATE | RELEASED BY | ID # | RECEIVED BY | ID # | PURPOSE |
|---|---|---|---|---|---|---|
| 1 | 13/9/ | | 2235 | | 2235 | |

CODES
LA - Lab Analysis
S - Safekeeping
FP - Finger Prints

FILED
KENNY ARMSTRONG - CIRCUIT CT. CLERK
OCT 2 6 1995
BY
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE              )
                                )
VS.                             )         NO. 94-342
                                )
JON DOUGLAS HALL                )

NOTICE OF INTENT TO SEEK DEATH PENALTY AND
SPECIFICATION OF AGGRAVATING CIRCUMSTANCES

Comes now the State of Tennessee and, pursuant to Rule
12.3(b), Tennessee Rule of Criminal Procedure, of intent to seek
the death penalty in the above-referenced case.  The State hereby
specifies the following aggravating circumstances that the State,
intends to rely upon at the sentencing hearing:

1.    The murder was especially heinous, atrocious, or cruel
      in that it involved torture or serious physical abuse
      beyond that necessary to produce death;

2.    The murder was committed for the purpose of avoiding,
      interfering with, or preventing a lawful arrest or
      prosecution of the defendant or another;

3.    The murder was committed while the defendant was
      engaged in committing, or was an accomplice in the
      commission of, or was attempting to commit, or was
      fleeing after committing or attempting to commit, and
      first degree murder, arson, rape, robbery, burglary,
      theft, kidnapping, aircraft piracy, or unlawful
      throwing, placing or discharging of a destructive
      device or bomb.

                         Respectfully submitted,

                         _____
                         JAMES W. THOMPSON
                         ASSISTANT DISTRICT ATTORNEY
                         26TH JUDICIAL DISTRICT

                         _____
                         JAMES G. WOODALL
                         DISTRICT ATTORNEY GENERAL
                         26TH JUDICIAL DISTRICT

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing
has been mailed to Mr. Frankie Stanfill, 227 W. Baltimore St.,
Jackson, TN 38301 this the 15th day of December, 1994.

                         _____
                         JAMES W. THOMPSON
                         ASSISTANT DISTRICT ATTORNEY
                         26TH JUDICIAL DISTRICT

Defendant "G, Ext E "And F"

IN THE CIRCUIT COURT OF HENDERSON COUNTY TENNESSEE

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | |
| PLAINTIFF, | ) | DOCKET NO.  94-342 |
| | ) | 94-452 |
| VS. | ) | 94-454 |
| | ) | |
| JON HALL | ) | |
| | ) | |
| DEFENDANT. | ) | |

ORDER ON MOTION TO WITHDRAW AS COUNSEL

A Motion has been filed and entered in the Henderson County Circuit Court Clerks office, by Frankie K. Stanfill, Attorney of Record for the Defendant, Jon Hall. A potential conflict of interest has arisen between the Law Offices of Tom Anderson, and the 26th Judicial District. Due to such potential conflict of interest, Frankie K. Stanfill is no longer employed as Assistant Public Defender for Henderson County. Another attorney for the 26th Judicial District from the Public Defenders office will be representing all indigent clients in Henderson County.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that Frankie K. Stanfill shall be withdrawn as Attorney of Record for the Defendant, Jon Hall.

*Exhibit 2 - Additional Ineffective Assistance Of Counsel*

JUDGE WHIT LAFON

_____
JIM THOMPSON
ASSISTANT DISTRICT ATTORNEY

_____
FRANKIE K. STANFILL
ASSISTANT PUBLIC DEFENDER

CERTIFICATE OF SERVICE

A true and exact copy of this Order on Motion has been sent by U.S. mail, postage paid, to Jim Thompson, Assistant District Attorney, P.O. Box 2825, Jackson, Tennessee, 38302-2825, this the ____ day of February, 1995

_____
FRANKIE K. STANFILL

FILED
KERRY CAVRESS - CIRCUIT CT. CO
OCT 3 1 1995
BY_____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE            )
                              )
VS.                           )        NO. 94-342, 94-452
                              )             94-454
JON HALL                      )

STATE'S RESPONSE TO MOTION TO SUPPRESS DEFENDANT'S STATEMENT

Comes now the State of Tennessee by through the office of
the District Attorney General, in response to the defendant's
Motion to Suppress and states;

1.   The defendant was properly mirandized.

2.   The defendant  voluntarily interrupted officers while
     being mirandized and confessed  State v. Chambliss 632
     S.W.2d 227; State v. Brown, 664 S.W.2d 318.

3.   The State denies any violations under rule 5 of the
     Tennessee Rule of Criminal Procedure.

4.   The State contends that all statements are lawful and
     admissible.

Respectfully Submitted:

_____
ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing
has been mailed to Mr. Mike Mosier, Attorney at Law, P.O. Box
1623, 204 E. Baltimore, Jackson, TN 38302-1623 this the 3 C
day of October, 1995.

_____
ASSISTANT DISTRICT ATTORNEY
DIVISION I

FILED
KRISY CAUDESS - CIRCUIT CT CLERK

OCT 3 1 1995

BY_____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE          )
                            )
v.                          )          No. 94-342
                            )
JON HALL                    )

### STATE'S RESPONSE TO DEFENDANT'S PRO-SE MOTION

The defendant is represented by competent counsel and is not
entitled to file Pro-Se Motions. All motions should be filed
through defense counsel.

Respectfully submitted,

ASSISTANT DISTRICT ATTORNEY
26TH JUDICIAL DISTRICT

### Certificate of Service

I hereby certify that I have mailed or delivered a true copy
of the foregoing to Mr. Mike Mosier, Attorney at Law, P.O. Box
1623, 204 E. Baltimore St., Jackson, TN 38302-1623, and Mr. Jon
Hall, R.M.S.I., Cockrill Bend, Nashville, TN 37209-1010 this
34 day of October, 1995.

ASSISTANT DISTRICT ATTORNEY
26th JUDICIAL DISTRICT

FILED
KENNY CAMPBELL - CIRCUIT CT. CU

NOV 0 3 1995

BY _____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE          )
                            )
v.                          )          No. 94-342,94-452
                            )              94-454
JON HALL                    )

                MOTION TO DETERMINE EFFECTIVENESS OF COUNSEL

        Comes now the State of Tennessee by and through the office

of the District Attorney General in response to the defendant's

Pro Se complaint regarding his counsel and moves this Honorable

Court to determine the effectiveness of Counsel post-trial and in

support the state would show the following, to-wit:

        1.    An over abundant number of motions have been filed by
              defense counsel.

        2.    Numerous communications have been made between the
              State and defense counsel to insure that justice is
              done in this cause.

        3.    Defense Counsel has discovered all State's evidence.

        4.    Defense Counsel has been in sufficient contact with the
              defendant to prepare its case.

        5.    Defense counsel has discussed this case with all known
              witnesses.

        6.    Defense counsel presented a legal and adequate defense.

        7.    Defense counsel made every effort to prevent improper
              evidense from being admitted.

        Wherefore premises considered the State moves this Honorable

Court to rule that defense counsel has been effective post-trial.


                            Respectfully submitted


                            _____
                            ASSISTANT DISTRICT ATTORNEY



                    CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was mailed
to Mike Mosier P.O. Box 1623, 204 W. Baltimore Jackson, Tn 38302-
1623, on or before the filing date via first class postage
prepaid this the _2nd_ day of _November_ , 1995.

                            _____

FILED
KENNY CAVNESS - CIRCUIT CI
NOV 0 3 1995
BY_____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE          )
                            )
v.                          )        No. 94-342,94-452
                            )           94-454
JON HALL                    )

### MOTION TO DETERMINE EFFECTIVENESS OF COUNSEL

Comes now the State of Tennessee by and through the office of the District Attorney General in response to the defendant's Pro Se complaint regarding his counsel and moves this Honorable Court to determine the effectiveness of Counsel pre-trial and in support the state would show the following, to-wit:

1.  An over abundant number of motions have been filed by defense counsel.

2.  Numerous communications have been made between the State and defense counsel to insure that justice is done in this cause.

3.  Defense Counsel has discovered all State's evidence.

4.  Defense Counsel has been in sufficient contact with the defendant to prepare its case.

5.  Defense counsel has discussed this case with all known witnesses.

Wherefore premises considered the State moves this Honorable Court to rule that defense counsel has been effective pre-trial.

Respectfully submitted

_____
ASSISTANT DISTRICT ATTORNEY


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was mailed to Mike Mosier P.O. Box 1623, 204 W. Baltimore Jackson, Tn 38302-1623, on or before the filing date via first class postage prepaid this the ___2nd__ day of ___November__, 1995.

_____

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE        )
                          )
V.                        : CRIM. NOS. 94-342, 94-452 and 94-454.
                          )
JON HALL                  )

FILED
KENNY CAVINESS - CIRCUIT CT. CLRK.

JAN 2 5 1996

BY_____
DEPUTY CLERK

\*MOTION TO DISMISS ALL SUPRA INDICTMENTS\*

Comes now the defendant, Jon Hall, by and through himself, and
moves this court to dismiss all supra indictments against him
under Rule 12 (a), (1), of the Tennessee Rules of Criminal Proc-
edures; In support of this motion, defendant will respectfully
show forth this court the following:

1. BRIEFING OF THE PRESENTMENT AND INFORMATION OF THE PRELIMINARY.

On August 4th, 1994, defendant was extradicted from Belton County
Texas to Henderson Conty Tennessee, to face charges of the follow-
ing to-wit: First Degree Murder (1CT.), Theft of Property (2CT.),
and Aggravated Kidnapping (1CT.). On or about the date of 9/7/94,
defendant was indicted for Possesion of Implements for Escape. On
or about 9/___ 1994, defendant was also charged with Vandalism (1CT.).

On 8/22/1994, defendant was scheduled for a Preliminary hearing on
docket number 94-342, (inter-alia).

From the dates of 8/4 to 8/22/1994, defendant never seen his appoin-
ted Attorney's until (5) minutes before the Preliminary hearing[1].

Defendant contends on the date of 8/22/1994, he was escorted to the
Lexington Courthouse at approximately (9:00 A.M.). Defendant contends
that he was placed in a holding cell awaiting said procedures, when
he overheard Brent Booth (Prosecutor), discussing his case with (2)
other men, inwhich was his appointed Attorney's Stanfill and Hinson.

Defendant contends that he was removed from said holding cell and
introduced to said Attorney's. Defendant contends that Hinson ask
him did he have (5.000.00) dollars to pay for an alleged Psychiatric
examination. At which time the preliminary hearing was to be had. As

1. Both Attorney's, Jack Hinson and
Frankie Stanfill later withdrew from
the case after the Preliminary hearing.

noted, defendant contends that he had approximatley (5) minutes
to preapre for the Preliminary hearing.

2. THE PRELIMINARY HEARING:

The effective assistance of counsel in this matter was a farce and
a mockery. Defendant contends that he did not waive the Preliminary
hearing on the Kidnapping charge, and contends that he repeatedly
told Attorney's that he did not want to waive said hearing on the
same. Defendant contends that this was all to no "avail".

There has also been a manifestation of injustice, malicious prose-
cution, denial access to the court, and denial to proper represent-
ation to adequately prepare for the Preliminary hearing, all leading
to inflamed waiver of the Kidnapping indictment, and an abandonment
to impeach certain evidence used and introduced by the State's wit-
ness, Brian Byrd for the Tennessee Bureau of Investigation. (See att-
ached Preliminary hearing and News Articles, referred to hereinafter
as defendants "Exhibit's A and B respectively).

The following colloquy took place at the Preliminary hearing that
will substantiate defendants motion to dismiss, (in-part), verbatim:

J.J. Mr. Hall is charged with First Degree Murder and Kidnapping. How
do you plea?

P.D. With all due respect your Honor, the defendant respectfully
enters a not guilty plea.

J.W. Your Honor may I address the court. The defense counsil stop
particiying furthercist of the Preliminary hearing, the defendant
waived the Kidnapping case to the Grand Jury for their consideration.
We want to proceed on the proably cause. (inaudible).

The transcript shows that Attorney Hinson never responded or objected
to Woodall adressing the court.

(a) If defendant waived the Preliminary hearing on the Kidnapping
indictment, why did defense Attorney enter into transcript a not
guilty plea on the Kidnapping in the first place?

(b) If defendant did not waive the Preliminary hearing on the Kid-
napping indictment, why then did Hinson not object to Woodall's
objection that he did waive the Preliminary hearing?

(c) Had Hinson and Woodall discussed defendants case prior to the
Preliminary hearing, without notice given to the defendant?

2.

(d) Did Woodall and Hinson conspire against the defendant to ex-
pedite the Preliminary hearing at the lowest possible expense for
the State?

(e) Was it mentioned during the Preliminary hearing that the alleged
victim of the Kidnapping was attending his first day of school, and
that the State did not want to disturb his attendance?

(f) Did the State really have pertinent evidence and information to
bound the defendant over to the Grand Jury on the Aggravated Kid-
napping?

3. THE EVIDENCE PRESENTED AT THE PRELIMINARY HEARING ON 94-342:

During the Preliminary hearing the following colloquy took place
between Prosecutor Woodall and Agent Brian Byrd, verbatim:

J.W. (pg.5) Alright, just one minute. In addition, to what the def-
endant told you, as you testify here today, were you able to observe
the defendnats person?

B.B. Yes.

J.W. Did you observe any marks on his person or on his body, which
were consistent with your previous testimony?

B.B. (pg.6) Yes, sir. There were a great deal of scrapes to his hands
there was notable damage to his hands as if he had been accident or
injury of some sort.

J.W. Now was there any injury to the palm of the defendants hand?

B.B. No, sir.

J.W. Was the injury to the knuckles, fingers and thumbs?

B.B. It all appeared to be the back of the knuckles of the hands.

J.W. Would this be both right and left hand?

B.B. I believe I note it on both hands. Yes, sir.

CROSS-EXAMINATION OF BYRD BY DEFENSE ATTORNEY HINSON:

P.D. (pg.9) Scrapes on the hand, you indicated that there was scrapes
or scratches on the knuckles, fingers and hand. Was this both hands?

B.B. Ah. To the best of my knowledge it was.

P.D. Is there anything you have done in the past weeks that relates to the scrapes on top of the hand that preserves that?

B.B. To my knowledge, I don't think we did. No, sir.

P.D. Did you ask defendant about that there?

B.B. Yes, sir.

Defendant contends that Byrd perjured himself on the stand about the supra evidence, pursuant to the scrapes and scratches on his hand. Byrd admitted into transcript that they never preserved any evidence to support the condition of defendants hands. Defendant contends that Byrd testified that both his hands were bruised and swollen with cut: and scrapes. Defendant contends that pictures were taken of his hand: by the Belton County Sheriff's Department, and compared one hand to the other by use of a ruler, to show the amount of swelling to the hands. Defendant contends that only his right hand was swollen. (Belton County Texas reports will be referred to hereinafter as Defendants "Exhibit C").

Defendant contends that Byrd gained access to the Belton Texas repor and pictures and perjured himself during the Preliminary hearing.

Byrd also contradicted and impeached himself during the Preliminary hearing under direct and cross-examination about defendants rights being read to him:

DIRECT EXAMINATION OF BYRD BY WOODALL CONCERNING THE DEMISE OF DEF-ENDANTS WIFE, (BILLIE HALL):

J.W. (pg.5) Alright now. After he made that staement to you, I bel-ieve he did not know she was dead until the day before?

B.B. That is the statement he made to us.

J.W. I did it. I did it. Now after that what did you do?

B.B. We discussed and read the rights waiver, when through the sheet we got down to the part where he would sign the right waiver and give us a statement. He stated that he would not sign statement without counsel being present, so we terminated the interview at that point.

J.W. Alright so, after he allowed you to complete the Miranda infor-mation he then ask for an Attorney, and you terminated the interview?

B.B. Correct.

4.

J.W. Is that correct?

B.B. Correct.

J.W. What day was this?

B.B. This would have been on the 3rd, the day before the election.

BYRD UNDER CROSS-EXAMINATION BY DEFENSE ATTORNEY HINSON:

P.D. O.K. And of today date, three, two and half, three weeks later,
that individual has never been read his rights?

B.B. No, sir.

The false testimony speaks for itself and needs no argumentation.
Byrd also perjured himself under oath at the Preliminary hearing when
stating under direct examination by Woodall: "after reading the def-
endant his rights, you terminated the interview"?

B.B. Correct.

However under cross-examination by Attorney Hinson, Byrd perjured
himself about terminating the interview.

P.D. (pg.9) Scrapes on the hand, you indicated that there was scrapes
or scratches on the knuckles, fingers and hand. Was this on both
hands?

B.B. Ah. To the best of my knowledge it was

P.D. You took no pictures of that?

B.B. To my knowledge, I don't think we did. No, sir.

Perjured testimony: P.D. Did you ask defendant about there?

B.B. Yes, sir.

Woodall reiterated his question to Byrd three (3) times to make sure
he knew he terminated the interview, and reiterated about what day
it was to make sure he knew, inwhich, Byrd responded the day before
the election, August 3rd. Byrd then also perjured himself by stating,
"we did ask the defendant about the scrapes on his hand".

Defendant contends that Byrd questioned him x-amount of times during
extradition  from Belton Texas to Henderson County Tennessee.

5.

4. MEMORANDUM OF LAW POINTS AND AUTHORITIES TO DISMISS ALL SUPRA
INDICTMENTS IN THIS CAUSE:

RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND RIGHT TO PREPARE FOR
THE DEFENSE:

Defendant was not provided with effective assistance of counsel, and
did not have ample time to prepare for the Preliminary hearing. Def-
endant seen his Attorney's for only (5) minutes before the Prelimina.
hearing. The Sixth Amendment guarantees to a criminal defendant the
right to effective assistance of counsel at every step in the pro-
ceedings. U.S.C.A. Const. Amend. 6.

Counsel entering the case at the time of the defendants first app-
.erance in court (usally Preliminary hearing) is likely to be confron·
with a drastic curtailment of the opportunity for an inital intervie·
Counsel's first task will often be to impress upon the court necessi·
for allowing him or her with suffcent time to discuss essential mat·
ers with the new client. In addition to whatever rights to a cont-
inuance and to legal representation at Preliminary hearing may be
provided by State law, counsel should invoke the clients federal 6th
and 14th Amendment, which guarantees the opportunity for lawyer-clie·
consultation in the course of judicial proceedings where there are
tactial decisions to be made and stratedgies to be reviewed. Gedars
v. United States, 425 U.S. 80, 88. If counsel is denied ample time f·
an adequate interview and investigation s/he should resist strongly
as possible being pressed to proceed with the Preliminary hearing. I·
many jurisdictions, rights are not exercised and motions not made
prior to or at Preliminary arraignment, that may be irrevocably lost

The Constitution guarantees of Assistance of Counsel, and cannot not
be satisifed by mere formal appointment. Avery v. Alabama, 308 U.S.
444, 446. It is therefore imperative to make a detailed factual reco·
of both the Attorney's unprepareavideness and justification for it.
Morris v. Slappy, 461 U.S. (1983).

Counsel should make a clear request on behalf of his client for the
assurance of adequate counsel throughout the case. As an Attorney,
s/he has the obligation to accept the appointment, but s/he has neit·
the obligation nor the right to be used to create the apperance of
representation without its reality, such as it is in this case agains
defendnat Hall. Attorney's second job is to request adequate time to
interview the defendant privately and to prepare for the arraignment.
This is important at a Preliminary hearing, and Attorney's position
should be the same. 425 U.S. 80 (1976).

As incorporated herein, defendant Hall seen his appointed Attorney's
for only (5) minutes before the Preliminary hearing. Attorney's did
not make any motions to post-pone the Preliminary hearing to adeq-
uately prepare for the hearing, and to elicit facts for the same. [A
trial lawyer was ineffective when his only contact with a client was
(15) minutes before the guilty plea. Butler v. State, 789 S.W.2d 898
(Tenn. 1990).

The ineffective assistance of counsel during the Preliminary hearing
in this matter could be narrowed to the following: 1) Did the ineff-
ective assistance of counsel prejudice the defendant; 2) Was the in-
effective assistance of counsel harmless error.

The determination whether the hearing is a "critical stage" requirin
the provision of counsel depends, as noted, upon an analysis "whethe
potential substantial prejudice to defendants rights inheres in the.
confrontation and the ability of counsel to avoid that prejudice".
United States v. Wade, supra, [388 U.S. 218] at 277, [87 S.Ct. 1926,
at 1932] [18 L.Ed.2d [1149] at 1157]. Plainly the guiding hand of
counsel at the Preliminary hearing is essential to protect the indig
accused against an erroneous or improper prosecution. First, the
lawyer's skilled examination and cross-examination of witnesses may
expose the fatal weaknesses in the State's case that may lead the
Magistrate to refuse to bind the accused over. Second, in any event,
the skilled interrogation of witnesses by an experienced lawyer can
fashion a vital impeachment tool for use in cross-examination of wit
nesses at the trial, or preserve testimony favorable to the accused
of a witness who does not appear at trial. Third, trained counsel ca
more effectively discover the case the State has against his client
and make possible the preparation of a proper defense to meet that
case at trial. Fourth, counsel can also be influential at the Pre-
liminary hearing in making effective arguments for the accused on su
matters as the necessity for an earily psychiatric examination.

Defendant contends that his right to effective assistance of counsel
during the Preliminary hearing was grossly inadequate and mis-repre-
sented.

Defendant Hall contends that he did not waive the Preliminary hearir
on the Kidnapping indictment. This is well noted in the Preliminary
transcript, and was also reported by the Lexington Progress on 8/24,
94, which stated: "Hinson waived the charge on behalf of his client
after Hall refused to sign the waiver". (referred to hereinafter as
defendants "Exhibit D").

7.

Defendant contends that the alleged Kidnapping indictment was dis-
proportionate to the alleged crime committed, and that the Kidnapping
indictment would have not been bound over to the Grand Jury if a
Preliminary hearing had been held.

Not only did this prejudice defendants right to effective assistance
of counsel, the Kidnapping charge was later used as an enhancement
tool to seek the death penalty by presentment of Woodall's motion
against defendant Hall. (referred to hereinafter as defendants "Ex-
hibit  E").

While Hinson did impeach Byrd under cross-examination when he ask him
about reading Hall's Miranda rights and about cutting off the cust-
odial interrogation; however, counsel made no motions thereafter to
dimiss the indictments and move the court to suppress the impeached
testimony of Byrd. Thus, subjecting defendant Hall to self-imposed
incrimination during both the Preliminary and Grand Jury process.

Under Mckledin v. State, the court held that the Tennessee Preliminar
hearing is a "pretrial" type of arraignment where certain rights may
be sacrificed or lost. 516 S.W.2d. 82.

Coleman details the vital necessity for the "guiding hand of counsel"

Every criminal lawyer "worth his salt" knows the overriding importanc
and the manifest advantages of a Preliminary hearing. In fact the
failure to exploit this golden opportunity to observe this manner,
demeanor and apperance of the witness for the prosecution, to learn
the precise details of the prosecutions case, and to engage in that
happy event sometimes known as a "fishing expedition" would be an in-
excusable dereliction of duty, in the majority of cases.

The Sixth Amendment guarantees to a criminal defendant the right to
have the assistance of counsel for his defense. This means the eff-
ective assistance of counsel, and "requires the guidnig hand of coun-
sel at every step in the proceedings. Powell v. Alabama, 287 U.S.
45, 53 S.Ct. 55, 77 L.Ed 158 (1932). This constitutional guarantee
is not satisfied by mere formal appointment. Avery v. Alabama, 308
U.S. 444, 60 S.Ct. 321, 84 L.Ed 377 (1940).

EC6-1 CPR reads as follows:

Because of his vital role in the legal process, a lawyer should act
with competence and proper care in representing clients. He should
strive to become and remain proficient in his pratice and should acce
employment only in matters which he is or intends to become competent
to handle.

DR6-101 provides, in part:

A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is
not competent to handle, without associating with him a lawyer who
is competent to handle it.

Defendant contends that both Hinson and Stanfill knew they had no
intentions to represent Him throughout the proceedings. Both Att-
orney's withdrew from defendants case not long after the Preliminary
hearing. This type of practice would fall under the same footing as
Avery v. Alabama. Id. (See EXHIBIT G)

An inadequate performance by counsel renders a conviction void. Glass
v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed 680 (1942).

Defendant was subjected to prejudicial error when the alleged heresay
statement of defendant was introduced by Agent Byrd, alleging defenda
stated, "I did it" under custodial interrogation. Agent Byrd was then
later impeached under cross-examination about reading defendant the
Miranda confrontation act, i.e. defendants rights. The alleged heresa
statement was then publicized in all the local papers surrounding the
Henderson County. Hinson then failed to move this court to place a
"gag order" on court officials from speaking with anyone from the
media until Grand Jury proceedings could be had. See Sheppard v.
Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed. 2d (1966). This pre-
judice defendant during a "critical stage" of the Preliminary hearing
forcing false adverse publicity upon the defendant, in violation of
the due process clause of the 14th Amendment, commensurate with Beck
v. Washington 369 U.S. 541-546 (1962) dictum.

This type of counseling sets forth a pattern of unhampered methods of
abuse to a defendants constitutional rights to effective assistance
of counsel. "What a status for future defendants".

5. DEFENDANT HALL WAS SUBJECTED TO PROSECUTORIAL MISCONDUCT DURING
THE PRELIMINARY HEARING STAGE OF THESE PROCEEDINGS:

THE PROSECUTORS DUTY DURING THE PRELIMINARY HEARING.

When an accused alleges that he has been denied a constitutional righ
the accused must prove the constitutional deprivation by a prepond-
erance of the evidence.

This standard of proof applies when it is alleged that the District
Attorney General has suppressed exculpatory evidence, has failed to
correct the known false testimony of a prosecution witness, or has
used false evidence to convict the accused. Smith v. State. 757 S.W.
2d 14, 19 (Tenn Crim. App. 1988). Thus, Hall would be required under
this theory to establish by the preponderance of the evidence, that
the Attorney General used false testimony of Brian Byrd, and that the
District Attorney used said false evidence to bound the defendant over
to the Grand Jury.

The defendant finds that his constitutional rights were violated by
the preponderance of evidence, by the inducement and allowance of
known false testimony submitted to this court of Agent Byrd of the
Tennessee Bureau of Investigation. The record of the Preliminary heari
clearly supports these findings.

In State v. Gaddis, 530 S.W.2d 64, 69 (Tenn. 1975), the late Mr. Justi
Henry stated: "The days of trial by ambush are numbered. Rapidly fadin
is what Dean Pound described as the 'sporting theory of justice".

In State v. Fields,7 Tenn. 140, 145-416 (1823), the court referred to
the District Attorney General in the following manner:

> In a State case the people prosecute and the Attorney
> General is their officer; he is created by the constit-
> ution, acts in virtue of his commission, and on oath;
> and while he gards with viligance the interest of the
> State, it his bounden duty to see that such rights as
> the accussed shall not be prostrated, but that right
> and justice shall be done: he should not lay hold of an
> accident brought upon the accused by default not imput-
> able to her. and turn such accident to the purpose of ill-
> egal conviction: for as the people, the members of whom
> such abuse might fall indiscriminately, would, for the
> safety of each, avert such a course; so should neither the
> Attorney General, acting for them, stand by and see toils
> spread to insnare any.

In Napue the United States Supreme Court, holding that the prosecution
was required to correct false answer given by a prosecution witness,
stated:

> This principle that a State may not knowningly use false
> evidence, including false testimony, to obtain a tainted
> conviction, implicit in any concept or ordered liberty,
> does not cease to apply merely because the false test-
> imony goes only to the credibility of the witness. The
> jury's estimate of the truthfulness and reliability of
> a given witness may well be determinative of guilt or
> innocence, and it is upon such subtle factors as the
> possible interest of the witness in testifying falsely
> that a defendants life or liberty may depend.

Berger was cited with approval in Judge v. State, 539 S.W.2d 340, 344
345 (Tenn. Crim. App.). The District Attorney General has an ethical
duty to furnish an accused with exculpatory evidence or favorable inf
mation, to correct false testimony given by a prosecution witness, and
to refrain from using false evidence to convict an accussed. Tennessee
Code of Professional Responsibility of the Criminal Lawyer, section 7.
17 (1987).

Ethical Consideration provides in part: 7-13:

> The responsibility of a public prosecutor differs
> from that of the usual advocate; his duty to seek
> justice, not merely to convict. With respect to ev-
> idence and witnesses, the prosecutor has responsib-
> ilities different from those of a lawyer in in pri-
> vate pratice; the prosecutor should make timely dis
> disclosure to the defense available evidence, known
> to him, that tends to negate the guilt of the
> accused, mitigate the degree of the offense,
> or reduce the punishment. Further, a prosecutor
> should not intentionally avoid pursuit of evidence
> merely because he believes it will damage the pro-
> secutor's case or aid the accussed.

Thus, DR &-103 (B) provides: "A public prosecutor or other government
lawyer in criminal litigation shall make timely disclosure to counsel
for defendant, or to the defendant if he has no counsel, of the exist-
ence of evidence, known to the prosecutor or other government lawyer,
that tends to negate the guilt of the accused, mitigate the degree
of the offense, or reduce the punishment. DR 7-109 (A) provides that
a lawyer "shall not suppress any evidence that he or his client has a
legal obligation to reveal or produce. See A.B.A. standards for Crim-
inal Justice, The Prosecution Function, standard 3-3.11 (a).

EC 7-26 states that "[t]he law and disciplinary rules prohibit the use
of fraudulent, false, or perjured testimony... "EC 7-27 states that a
"lawyer shall not suppress any evidence that he or his client has a
legal obligation to reveal or produce". Thus, DR 7-102 (A) (3) and (A)
(4) provide that a lawyer should not "(3) [c]onceal or knowingly fail
to disclose that which is required to reveal" or "(4) knowingly use
perjured false testimony or false evidence.

In summary a District Attorney General has both a legal as well as an
ethical duty to furnish the accused with exculpatory evidence or favor
able information; and has both a legal and ethical duty to refrain from
suppressing such evidence, to correct the false testimony of a pro-
secution witness, and to refrain from using false evidence to convict
the accussed.

The doctrine announced in Brady v. Maryland, extends to the statements
of a prosecution witness that are material and favorable to the accusse
McDowell v. Dixon, 858 F.2d 945 (4th Cir. 1988), cert. denied,

489 U.S. 1033, 109 S.Ct. 1172, 103 L.Ed. 2d 230 (1989) (statement of victim); Chavis v. North Carolina, 637 F.2d. 213, 223 (4th Cir. 1980) (statement of key witness); Scurr v. Niccum, 620 F.2d 186 (8th Cir. 1980); See State v. Goodman, 643 S.W.2d 375, 379-380 (Tenn. Crim. App. 1982). It is irrelevant that the information contained in the statemen can only be used to impeach the witness. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed 2d (1985).

It is a fundamental principle of law that an accused has the right to cross-examine prosecution witnesses to impeach the credibility and establish the motive or prejudice of the witness. This includes a right t cross-examine a prosecution witness regarding any promises of leniency promises to help the witness, or any other favorable treatment offered to the witness. See State v. Norris, 684 S.W.2d 650, 654 (Tenn. Crim. App. 1984).

It is a well established principle of law that the state's knowing use of false testimony to convict an accused is violative of the right to a fair and impartial trial embodied in the Due Process of the Fourteen Amendment to the United States Constitution and article I, §§ 8 and 9 of the Tennessee Constitution. Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, L.Ed 2d 214 (1942).

When a state witness answers questions on either direct or cross-examination falsely, the District Attorney General, or his Assistant, has an affirmative duty to correct the false testimony. See Giglio v. United States, Napue v. Illinois, Blanton v. Blackburn, 944 F. Supp. at 900. ("it is the responsibility of the prosecution to correct the evidence); Hall v. State, 650 P.2d at 896 [d]ue process... imposes an affirmative duty upon the state to disclose false testimony which goes to the merits of the case or to the credibility of the witness. Whether the District Attorney General did or did not solicit the false testimon is irrelevant. United States v. Barham, 595 F.2d 231 (5th Cir. 1979).

However, if the prosecution fails to correct the false testimony of the witness, the accused is denied due process of law guaranteed by the United States and Tennessee Constitution. Giglio, supra.

This rule applies when the false testimony is given in response to questions propounded by the defense counsel for the purpose of impeaching the witness. Giglio supra, Napue, supra; Campbell v. Reed, 594 F.2d (4th Cir. 1979).

Attorney General Woodall let false testimony be presented before the preliminary hearing in this cause, and then said testimony was presente to the Grand Jury to indict defendant Hall.

Despite Defendants objections (to defense counsel Hinson and Stanfill
not to waive the Kidnapping charge), said charge was waived and later
used the kidnapping as an underline felony as an enhancement tool to
seek the death penalty against the defendant; the thefts indictment we
all so used for the same purpose by Woodall and was never introduced f.
a Preliminary hearing. (see "Exhibit F, referred to hereinafter as
defendants "Exhibit F"- part three (3) of Woodall's motion to seek th
death penalty).

6. DEFENDANTS RIGHT TO MIRANDA WARNINGS AND RIGHT AGAINST SELF-IMPOSED
INCRIMNIATION:

Defendants Miranda rights were not read to him during custodial interr-
ogation thereby subjecting him to self-imposed incrimination. As incor
porated herein, Byrd was impeached about reading defendant his Miranda
rights and was impeached during the Preliminary hearing about cutting
off the custodial interrogation.

DIRECT EXAMINATION OF BYRD BY WOODALL:

J.W. (pg.5) Alright now. After he made that statement to you, I believ
he did not know she was dead until the day before?

B.B. That is the statement he made to us.

J.W. I did it. I did it. Now after that what did you do?

B.B. We discussed and read the rights waiver, when through the sheet
we down to the part where he would sign the rights waiver and give us
a statement. He stated that he would not sign statement without counse
being present, so we terminated the interview at that point.

J.W. Alright so, after he allowed you to complete the Miranda informati
he then ask for an Attorney, and you terminated the interview?

B.B. Correct.

J.W. Is that correct?

B.B. Correct.

J.W. What day was this?

B.B. This would have been on the 3rd, the day before the election.

BYRD UNDER CROSS-EXAMINATION BY ATTORNEY HINSON:

P.D. O.K. And of today date, three, two and half, three weeks later,
that individual has never been read his rights?

12.

B.B. <u>No, sir</u>!!!.

Under direct examination by Woodall, Byrd also testified that he cut
off custodial interrogation after defendant requested counsel; how-
ever, under cross-examination, Byrd was impeached and gave a different
version.

P.D. (pg.9) Scrapes on the hands, you indicated that there were scrape
and scratches on the knuckles, fingers and hand. Was this on both hand

B.B. AH. To the best of my knowledge it was.

P.D. You took no pictures of that?( <u>See</u>: EXHIBIT C)

B.B. To my knowledge, I don't think we did, No, sir.

P.D. Did you ask defendant about that there?

B.B. <u>Yes, sir</u>!!!.

The controling question would then be... "was defendant prejudice by
Byrd not reading the Miranda warning, and by not terminating the
custodial interrogation". First, it cannot be inferred that defendant
was not prejudice by the allowance of the false testimony. The false an
perjured testimony was introduced to the Grand Jury and was later used
as an enhancement tool (in-part) to seek the death penalty against def-
endant and used (in part)to return a true bill against Hall.

The Supreme Court, in a 5-4 decision, reversed a conviction. The major:
Opinion by Justice Goldberg was highly critical of reliance upon con-
fessions in general and interrogation of those without counsel in part-
icular. "<u>Agent Byrd also used the perjured testimony during the Grand
Jury proceedings when testifying, and then used said testimony and play
it out to the news-media finding defendant guilty of the charges before
he had a fair and impartial Jury Trial</u>".

The <u>Escobedo</u> majority asserted "that a system of criminal law enforce-
ment which comes to depend on the confession" will, in the long run, be
less reliable and more subject to abuses than a system which depends or
extrinic evidence independently secured through skillful investigation.
It seemed that the court was about to announce a broad right-to-counsel
at-the-station rule, for it was said that the pre-indictment interr-
ogation was just as much as a "critical stage" as the Preliminary heari
in <u>White v. Maryland</u>, in that what happened at the interrogation could
likewise "affect the whole trial"; and that Massiah was apposite becaus
"no meaingful distinction can be drawn between interrogation of an acc-
ussed before and after formal indictment".

We, hold, therefore, that were, as here, [1] the investigation is no
longer a general inquiry into an unsolved crime but has begun to focus
on a particular suspect; [2] the suspect has been taken into police

custody; [3] the police carry out a process of interrogation that
lends itself to eliciting incriminating statements:, [4] the suspect ha
requested and been denied  an opportunity to consult with an Attorney,
and [5] the police have not effectively warned him of an absolute con-
stitutional right to remain silent, the accussed has been denied "the
assistance of counsel" in violation of the Sixth Amendment to the con-
stitution as made obligatory upon the states by the Fourteenth Amend-
ment to the constitution, and that no statement elicited by the police
during the interrogation may be used againt him at trial.

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, the <u>Miranda</u> rule
can be summarized as follows:

[1] These rules are required to safeguard the privilege against self
incrimination, and thus must be followed in the absence of other pro-
cedures which are atleast as effective in apprising accused persons
of their right of silence and in assuring a continous opportunity to
exercise it.

[2] These rules apply when the individual is first subjected to the
police interrogation while in custody at the station or otherwise
deprived of his freedom of action in any significant way, and not to
general on the scene questioning of citizens in the fact finding proce:
or to volunteer statements of anykind.

[3] Without regard to his prior awareness of his rights, is a person i:
in custody is to be subjected to questioning, he must first be informe(
in clear and unequivical terms that he has the right to remain silent.
so that the ignorant may learn of this right and so that pressures of
the interrogation atmosphere will be overcome for those previously awa:
of the right.

[4] The above warning must be accompained by the explaination that any·
thing said can and will be used against the individual in court, so as
to ensure that the suspect fully understands the consequences or for-
·getting the priviledge.

[5] Because this is indispensbale to protection of the priviledge,
the individual also must clearly be informed that he has the right to
consult with a lawyer and to have the lawyer with him during interr-
ogation, without regards to whether it appears that he is already awar(
of this right.

[6] The individual also must be warned that if he is indignet a lawyer
will be appointed to represent him, for otherwise the above warning
would be understood as meaning only that an individual may consult wit?
a lawyer if has the funds to obtain one.

[7] The individual is always free to exercise the priviledge, and thus
if he indicates in any manner, at anytime prior to or during quest-
ioning, that he wishes to remain silent, the interrogation must cease,
and likewise, if he states he wants an Attorney, the interrogation
muse cease until an Attorney is present.

[8] If a statement is obtained without the presence of an Attorney, a
heavy burden rest on the Government to demonstrate that the defendant
knowningly and intelligently waived the privilege against self-imposed
incrimination and his right to retained or appointed counsel, and such
waiver may not be presumed from the individuals silence after warnings
or from the fact that a confession was eventually obtained.

[9] Any statement obtained in violation of these rules may not be ad-
mitted into evidence, without regard to whether it is a confession or
only an admission of part of an offense or whether it is inculpatory
or alledgedly exculpatory.

[10] Likewise, exercise of the priviledge may not be penalized, and thus
the prosecution may not use at trial the fact that the defendant stood
mute or claimed his priviledge in the face of accusation.

7. CONCLUSION IN SUPPORT TO DISMISS:

Defendant contends that the trial court committed constitutional error
to the following: 1) The court committed constitutional error when it
did not ensure that defendant had the right to effective assistance of
counsel; and that defendant had ample time to prepare and consult with
attorney; 2) The court committed constitutional error when it allowed
false and perjured testimony be presented to the Grand Jury and bind the
defendant over on docket numbers 94-342; 3) The court committed con-
stitutional error when it allowed the Attorney General to file a motion
to seek the death penalty on underline felonies of Kidnapping and theft.
without first giving defendant a Preliminary hearing on the kidnapping
and theft charges; 4) The court committed constitutional error when it
failed to place a "gag order" on court officials to refrain them from
speaking to the media about said charges after the indictment was
returned consisting of false and perjured testimony by Agent Byrd;
5) The court committed constitutional error when it let false and per-
jured testimony be presented to the news-media after Byrd had been im-
peached during the Preliminary hearing, thus denying defendant his right
to a fair and impartial trial.

Wherefore, defendant contends that the bind over  on docket numbers
94-342 should be abated and dismissed.

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE )
)
V. : CRIM. NOS. 94-342, 94-452 and 94-454.
)
JON HALL )

---

*MOTION TO DISMISS ALL SUPRA INDICTMENTS*

7. CONCLUSION IN SUPPORT TO DISMISS: cont.

see DF-MOT 4

MOTION TO SUPPRESS

COMES NOW the Defendant, JON HALL, by and through his attorneys,
JON HALL and Carthel L. Smith, and moves the Court to suppress or determine
prior to the trial, the admissibility of all searches and seizures, confessions or [1] [2]
admissions, eyewitness identification and any other matters the admissibility of
which should properly be determined by the Court prior to the introduction of said
evidence or testimony to the jury. Further, to require the State to refrain from the
mention of such evidence or testimony to the jury prior to its suppression or
admissibility being determined.

(1), (2)  (referred to hereinafter as "Exhibit (A) and (b)
of DF-MOT 4  TRCP, Rule 3

Respectfully Submitted,

Jon Hall - Defendant

SWORN TO ME THIS THE /9th day of January, 1996.
NOTARY PUBLIC Rowena Tanner
MY COMMISSION EXPIRES September 18, 1999

---

CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church Street
Lexington, Tennessee 38351
(901) 968-2561

HONORABLE WHIT LAFON
CIRCUIT COURT JUDGE
HENDERSON COUNTY
LEXINGTON TN 38351

APPOINTED ATTORNEY FOR

CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302, this 8th day of Jan 1996.

JQP/jh
gg:file

DF-MOT 6

Def'r Jamt   Exhibit   9

FILED
KENNY CAVINESS - CIRCUIT CT. CLRK.

JAN 2 5 1996

BY_____
DEPUTY CLERK

PRELIMINARY HEARING JON HALL

Judge J.B. Johnson= J.J.          James G. Woodall= J.W.

Public Defender= P.D.             Brian Byrd= B.B.

Date: November 14, 1994           Court Officer= C.O.

Transcribed by: Tonya Shavers

Courtroom Noise

J.J. Mr. Hall is charged with First Degree Murder and
     Kidnapping. How do you plea?

P.D. With all due respect your honor, the defendant
     respectfully enters a not guilty plea.

J.W. Your honor may I address to court. The defense
     council, the defense council stop participling
     furthercist of the Preliminary Hearing, the defendant
     waived Kidnapping case to the Grand Jury for their
     consideration. We want to proceed on the probably
     cause (inaudible).

     (inaudible)

J.W. State your name, please?

B.B. My name is Brian Byrd. I am an agent assigned to the
     Tennessee Bureau of Investigation. I work Violent
     Crimes in this area.

J.W. Did you have the case on a lady July 29, 1994, early
     morning hours of July 30, 1994 to be directed by one of
     your supervisors and assist the Henderson County
     Sheriff Department in determining place the Murder
     investigation.

B.B. That is correct. I was notified around 1:30 a.m..

J.W. And after you were notified did you go to a location
     in terms the 525 Pleasant Hill Road.

B.B. Initially, I went to the E.R. ah, out here at the
     hospital, to review Ms. Hall before I went out to 525
     but I later go out there.

J.W. Alright, do you, we will take it in order of mention
     and then back up Ms. Hall.

B.B. O.K.

J.W. Did you then go to 525 Pleasant Hill Road, here in
     Henderson County, Tennessee.

B.B. Correct.

J.W. Now you had initially gone to the hospital here in
     Lexington, is that correct?

B.B. That's correct.

J.W. At that location did you view the remains of one Billie
     Hall.

B.B. Yes, sir.

J.W. And at the time you observed Ms. Hall was she alive or

dead?

B.B. She was deceased.

J.W. And based upon your observation of the remains was
there cause you take intensiveness to the cause of
death?

B.B. Based on my experience.

P.D. Your honor object to him giving any type of opinion as
to cause of death he does not qualify to do that.

J.W. The State of Tennessee a layman can give a medical
opinion in a Police report and I think he is entitled.

P.D. (inaudible)

J.W. What did you observe on the remains of Ms. Hall that
had you form an opinion as to the cause of death?

B.B. Basically, severe trauma to the head, there were other
cuts and bruises to her body but mostly severe trauma
to the head.

J.W. What type of trauma to the head did you observe?

B.B. It was, to be perfectly honest too difficult to an to
distinct anyone one particular blow. It just appeared
there had been several blows, there was a great deal
of swelling and blood ah to Ms. Hall. I could not
determine what had caused the death other than just
trauma.

J.W. Alright now. Who were advised to clear the remains of
Ms. Hall who was found at 525 Pleasant Hill Road, prior
to being transported to the hospital?

B.B. That's correct.

P.D. I'm going to have to object to that statement having
hear say in it.

J.W. Now after you made the observation on the person Ms.
Hall, you then went to 525?

B.B. That's correct.

J.W. Did you conduct what we call a crime scene search?

B.B. Yes, sir.

J.W. At that location?

B.B. Yes, sir.

J.W. And were you able to determine what (courtroom noise)
anyone outside the premises of the 525 Pleasant Hill
Road prior to officer being dispatched to that
location.

B.B. That's correct. During the crime scene search it was
noted to be a position outside the house where someone
was standing prior to the incident and we noted by the
fact that the telephone junction box was disconnected.

J.W. Alright. When you say the telephone junction box was
disconnected what do you mean by that?

B.B. Apparently, someone had opened up the gray covering
from the box and taken out the connecting wire that
inabled the telephone to transmit from the resident to

any other location.

J.W. Did you at any time, you were conducting your crime scene go into the house?

B.B. Yes.

J.W. What was the phone, what was the status of the phone in the house?

B.B. I noted two phones, both of them off the hook.

J.W. O.K. Did you, were you able to get a dial tone on the phones?

B.B. No.

J.W. Could not.

B.B. No, sir.

J.W. Were not and why couldn't you?

B.B. Apparently, because they had been disconnected.

J.W. And you are talking about the junction box?

B.B. Correct.

J.W. Now were you able based upon the crime scene search state that the remains of Ms. Hall had already been removed when you were out there. Were you able to form an opinion based upon what you saw at the scene as to where the remains of Ms. Hall was?

B.B. Yes, sir.

B.B. There was a blood trail from the house to driveway and then from the driveway there was a drag trail from a pool of blood down to the pool and in the pool there was what appeared to be blood floating in the bottom of the pool.

J.W. Now was there anyone at the house, living at the house other than Ms. Hall?

B.B. There were four children living with Ms. Hall?

J.W. And did you and other officer interview these children?

B.B. Yes, sir.

J.W. And were they present at the time that the Police were called (Blank)

J.W. Did you also interview anyone in the neighborhood?

B.B. We also interviewed the neighbor, who live on the hill above the house.

J.W. Had you also had an occasion since this time to interview various member of the Hall family?

B.B. Yes, sir.

J.W. O.K. Now based upon the information you have received from the children and from the Hall family and neighbors did anyone know that investigation why they were warrant?

B.B. Yes, sir.

J.W. And the warrant would be for who?

B.B. The warrant was for Jon D. Hall.

J.W. And do you know at this time who Jon Hall was on the 29th of day of July?

B.B. Yes. sir.

J.W. And his relationship to Ms. Hall?

B.B. Yes, sir.

J.W. And what was that?

B.B. He was her estranged husband.

J.W. O.K. Now in had the occasion to professional come in contact with the individual who identified himself as Jon Hall?

B.B. Yes.

J.W. Is that individual present in the courtroom?

B.B. Yes, sir.

J.W. Can you point out that individual?

B.B. That man right there.

J.W. Let the record reflect that the witness has identified the defendant.

J.W. Now after obtained a warrant did you go anywhere with this warrant?

B.B. Yes, sir.

J.W. And what location did you go and who did you go with?

B.B. Deputy Rick Lunsford, investigator Brent Booth and I traveled to Belton, Texas to bring Mr. Hall back to Tennessee after he waived extradition.

J.W. Alright now when you arrived at Belton, is that Bell County?

B.B. In Bell County, Texas.

J.W. Bell County Sheriff Department did you come in contact with an individual who was identified to you as Jon Hall?

B.B. That is correct.

J.W. Is that individual that you previously identified in this case?

B.B. That is correct.

J.W. Now at the time came initial contact with the defendant what location in Bell County Jail was he?

B.B. He was initially in their detention area and they brought him down to us in the detectives office and placed him into a small room adjoining one of their offices.

J.W. Alright now, when you initially had verbal contact as well as eye contact with the defendant, what did you intend to do?

Pg. 4

B.B. The three of us were standing. investigator Booth was setting in the room with Mr. Hall as well as I, Deputy Lunsford was standing in the doorway. We were in the process of memorandizing Mr. Hall and telling him that he did not have to speak with us and at the point.

J.W. When you say memorandizing you were attempting to advise the defendant of certain Constitutional rights?

B.B. That is correct.

J.W. Did the, were you able to complete this?

B.B. No, sir.

J.W. Why were you not able to complete this?

B.B. Before I could even begin the sentences which state the memoranda act. He was very emotional. He broke down, began to cry and stated I did it. I did it. I am so sorry I just found out yesterday she was dead and I will tell anything you want to know.

J.W. Alright now. After he made that statement to you, I believe he did not know she was dead until the day before.

B.B. That is the statement he made to us.

J.W. I did it. I did it. Now after that what did you do?

B.B. We discussed and read the rights waiver, when through the sheet we got down to the part where he would sign the right waiver and give us a statement. He stated he would not an statement without counsel being present, so we terminated the interview at that point.

J.W. Alright so, after he allowed you to complete the memorandi, information, memoranda information he then ask attorney, and you terminated the interview.

B.B. Correct.

J.W. Is that correct?

B.B. Correct.

J.W. What day was this?

B.B. This would have been on the 3rd, the day before the Election.

J.W. August 3rd?

B.B. August 3rd, the day before the General Election.

J.W. When did you bring the defendant back to the state of Tennessee?

B.B. We brought him back during the early morning hours of August 4th around 4 a.m.

J.W. Alright, just one minute. In addition, to what the defendant told you, as you testify here today, were you able to observe the defendant's person.

B.B. Yes.

J.W. Did you observe any marks on his person or on his body, which were consistent with your previous testimony?

Pg. 5

B.B. Yes.

P.D. Do you think these children are hiding anything?

B.B. To my knowledge, they are still with their grandmother, their maternal grandmother.

P.D. Now you indicated after got to the crime scene, that you noticed a position where someone was standing, I think I quoted you correct?

B.B. That is correct.

P.D. How were you able to make that determination based where someone was standing?

B.B. The ground, the grass on the ground was mashed flat, it was not standing erect, There wasn't much grass but what was there was flat against the ground. Also, there was a number of twigs that looked like they had been twisted or broken as if someone was working with them with their hands laying on the ground.

P.D. Did you take pictures of this?

B.B. Yes.

P.D. You got it?

B.B. Yes, sir.

P.D. Do you have pictures of both the grass laying flat and of the twigs broken.

B.B. We kept the twigs.

P.D. And before you before you opened the junction box. was it dusted any type for fingerprints or any other.

B.B. The box was open, we did not open it. We did not dust it either.

P.D. Was it raining?

B.B. There was a heavy dew. Yes, sir. Was not raining.

P.D. The box was open?

B.B. Yes, sir.

P.D. No finger prints taken?

B.B. No, sir.

P.D. Now you came inside and indicated also there was two phones both of which were off the hook, is that correct?

B.B. Yes, sir.

P.D. And during your crime scene, you should head over this crime scene.

B.B. Basically, yes sir.

P.D. And it is your job as part of that. or in that position to preserve any evidence that is available.

B.B. That is correct.

P.D. Did you make the determination whether or not there any

evidence left on the property?

B.B. No, sir.

P.D. Did you serve or did you make planning for any type of finger prints anywhere else.

B.B. Yes, sir.

P.D. What did you look for finger prints on?

B.B. We took finger prints or solicited or sent various articles to the Tennessee Crime Lab for analysis so they could lift the prints.

P.D. What articles did you send?

B.B. We sent beer bottles and ash tray, and watch and other articles I could be I'd have to look at a list to tell you.

P.D. Several items?

B.B. Yes, sir.

P.D. You also indicated that I think you spoke to a neighbor, who was the neighbor?

B.B. I believe his name was Mr. McKinney.

P.D. Mr.?

B.B. Mr. McKinney.

P.D. (Tape messed up)

B.B. No, sir. Sheriff Department conducted that interview and advised me of that information.

P.D. Based on the that information you received and based upon the that testified that, you came to sought a warrant for the arrest of Jon Hall?

B.B. I believe that Investigator Booth took out the warrant, but we agreed to take out a warrant for Mr. Hall. Yes, sir.

P.D. O.K. Now while you were in Texas, you have also indicated that there was a statement made on behalf of Mr. Hall, I did it. I did it. Who was present when this statement was made?

B.B. Deputy Rick Lunsford, Investigator Brent Booth and I.

P.D. All three?

B.B. Yes, sir.

P.D. And between all three of you did anyone tape recorder?

B.B. No, sir.

P.D. Were type of camera to recording, anything what so ever at anytime?

B.B. Not at this time, I would probable write it up into an interview format but I have not dictated that yet.

P.D. And this statement was made back in the early hours of August 3rd or August 4th?

B.B. It was made approximately 3:30 or 4:00 p.m. in the

$P_a$ $\mathcal{R}$

afternoon of the 3rd.

P.D. O.K. And of today date, three, two and half, three
weeks later, that individual has never been read his
rights.

B.B. No, sir.

P.D. Scrapes on the hand, you indicated that there was
scrapes or scratches on the knuckles, fingers and hand.
Was this on both hands?

B.B. Ah. To best of my knowledge it was.

P.D. Is there anything you have done in the past weeks that
relates to the scrapes on top of the hand that
preserves that?

B.B. No.

P.D. You took no pictures of that?

B.B. To my knowledge, I don't think we did. No, sir.

P.D. Did you ask the defendant about that there?

B.B. Yes, sir.

P.D. Nothing further.

J.W. You may step down. Your honor, Probable Cause Hearing
that's all the State intends to put on feels as thought
the State has carried the burden of proof.

P.D. Your honor, ah I am well aware of the probable cause,
recently the time being permitted the defendants one
who committed it. Ah, if the state show probable cause
today, just barely. Ah, and I don't see any charges,
the kidnapping has already agreed that is going to be
bound over but your honor I think this particular
individual. I am going to go ahead and close with my
closing remarks, I ask that the court system set Mr.
Hall a bound based upon the evidence presented today.
It the States appearing burden to show probable cause,
again my option is vague. Your honor, I believe Mr.
Hall is being held without bond and your honor I would
respectively ask this court to set a bond for Mr. Hall
he is entitled to a bond. He is a resident of
Henderson, Lexington, Henderson County, Tennessee your
honor he has been a resident how long? Two years he
has been a resident of Lexington and at any of that
time he certainly has the judicial right for a bond to
be set, with extra on the settlement.

J.W. Your honor, the state would oppose bond being set, this
is a charge of Murder in the First Degree which is a
potential capital in the State of Tennessee. Now
Kidnapping Mr. Blake which obviously is very adamant,
is a serious case too. I would feel like based upon
those factors alone the bond should, there should be no
bond set. I want to make that point.

P.D. Your honor, we have been called to sign this waiver,
(court room noise).

P.D. Your honor, if the court pleases we would like to sign
a waiver on the Kidnapping. If the court please I am
going ahead at this point and waive that on his behalf.
Your honor, court please I don't have any kind of
written, find any kind of written medical evaluation. I
am going to request that Mr. Hall ah, be allowed seek
some type ah, some type of mental evaluation between

Pa. 9

now and the time that this matter is be bound over to
the Grand Jury. I think it is in the State best
interest and I think it is the defendants best interest
of whether or not. We present a order before to the
court concerning that. Thank you.

J.J. The court going to hold action of the Grand Jury.
Court going hold to Mr. Hall without a bond.

C.O. Charles D. Hall. (Court room noise)

C.O. Kenny Lyons. (Court room noise)

C.O. Lisa Cunningham (Court room noise)

Pg. 10

FILED
KENNY CANNESS - CIRCUIT CT. CLRK.

JAN 2 5 1996

BY _____
DEPUTY CLERK

## Man accused of killing wife flees hearing

### Continued from cover

### TBI agent testifies

Brian Byrd, a special agent with the Tennessee Bureau of Investigation, said he and two other investigators traveled Aug. 3 to Belton, Texas, where Hall fled after the incident.

When they questioned Hall with the July 29 killing of his wife, Billie Jo Hall, 29, he is charged with kidnapping in connection with a the Jo Hall's brutal death, he doesn't know how the sheriff's department could have pre-

Hall and the wife he's charged with killing was well known to Henderson County Sheriff Charles Woods.

And while Woods regrets Billie Jo Hall's death, he said that at the times Hall made $60 per night in May, June and July.

Billie Jo Hall, 29, received an

### Words exchanged

As Hall, who was bound by handcuffs and leg shackles, left the courtroom, he yelled at the victim's sister, Donna Estew, who was driving by.

"You and your gun, Donna," Hall yelled. Estew screamed back.

the theaters out the back, said Byrd.

Estew told The Sun that Hall was referring to a small hand-gun she had bought her sister for protection, and that Hall had different "flashers" during the hearing, Byrd de-



## Rwanda's orphans live in agony

### Continued from cover

thorities of the new Tutsi-led government.

Asked about his future, Hansto bored his head and said quietly, "I only want to go with people who will give me bread."

The orphanage, 40 miles southeast of the capital Kigali,

lives. Adoptions abroad have been ruled out.

At Buhango, four British volunteers are providing clean water relief agencies bring some food, and Canadian U.N. peacekeepers have "adopted" the orphanage. The soldiers give up their time of their own to

### Disease rampant

The rains have come, bringing pneumonia, and there is a constant chorus of hacking coughs inside, two more babies die each day, their bodies being cut by side, under blankets other arms, emaciated children seem to cry from within

"EXHIBIT C"
Bullton Co. Texas Records

## ITEMS OF EVIDENCE SUBMITTED

| ITEM NO. | QTY. | ITEM — DESCRIPTION, WHERE FOUND, WHERE MARKED, HOW MARKED) | CODE |
|---|---|---|---|
| 1 | 1 | SET OF Car Keys (To Stolen Oldsmobile) | S |
| 2 | 23 | Photographs of Jon Douglas Halls (Injuries) | S |

CODES
LA - Lab Analysis
S - Safekeeping
FP - Finger Prints

| ITEM NO. | DATE | RELEASED BY: | ID # | RECEIVED BY: | ID # | PURPOSE |
|---|---|---|---|---|---|---|
| 1 | 1/30/01 | | 2225 | | 2225 | Safekeeping |

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE          )
                            )
VS.                         )          NO. 94-142
                            )
JON DOUGLAS HALL            )

<u>NOTICE OF INTENT TO SEEK DEATH PENALTY AND
SPECIFICATION OF AGGRAVATING CIRCUMSTANCES</u>

Comes now the State of Tennessee and, pursuant to Rule
12.3(b), Tennessee Rule of Criminal Procedure, of intent to seek
the death penalty in the above-referenced case. The State hereby
specifies the following aggravating circumstances that the State
intends to rely upon at the sentencing hearing:

1.   The murder was especially heinous, atrocious, or cruel
     in that it involved torture or serious physical abuse
     beyond that necessary to produce death;

2.   The murder was committed for the purpose of avoiding,
     interfering with, or preventing a lawful arrest or
     prosecution of the defendant or another;

3.   The murder was committed while the defendant was
     engaged in committing, or was an accomplice in the
     commission of, or was attempting to commit, or was
     fleeing after committing or attempting to commit, and
     first degree murder, arson, rape, robbery, burglary,
     theft, kidnapping, aircraft piracy, or unlawful
     throwing, placing or discharging of a destructive
     device or bomb.

                         Respectfully submitted,

                         _____
                         JAMES W. THOMPSON
                         ASSISTANT DISTRICT ATTORNEY
                         26TH JUDICIAL DISTRICT

                         _____
                         JAMES G. WOODALL
                         DISTRICT ATTORNEY GENERAL
                         26TH JUDICIAL DISTRICT

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing
has been mailed to Mr. Frankie Stanfill, 227 W. Baltimore St.,
Jackson, TN 38301 this the 15th day of December, 1994.

                         _____
                         JAMES W. THOMPSON
                         ASSISTANT DISTRICT ATTORNEY
                         26TH JUDICIAL DISTRICT

IN THE CIRCUIT COURT OF HENDERSON COUNTY TENNESSEE

STATE OF TENNESSEE        )
                          )
    PLAINTIFF,            )        DOCKET NO.  94-342
                          )                   94-452
VS.                       )                   94-454
                          )
JON HALL                  )
                          )
    DEFENDANT.           )

---

ORDER ON MOTION TO WITHDRAW AS COUNSEL

---

A Motion has been filed and entered in the Henderson County Circuit Court Clerks office, by Frankie K. Stanfill, Attorney of Record for the Defendant, Jon Hall. A potential conflict of interest has arisen between the Law Offices of Tom Anderson, and the 26th Judicial District. Due to such potential conflict of interest, Frankie K. Stanfill is no longer employed as Assistant Public Defender for Henderson County. Another attorney for the 26th Judicial District from the Public Defenders office will be representing all indigent clients in Henderson County.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that Frankie K. Stanfill shall be withdrawn as Attorney of Record for the Defendant, Jon Hall.

_Exhibit G · Additional_
_Ineffective Assistance_
_Of Counsel_

_____
JUDGE WHIT LAFON

_____
JIM THOMPSON
ASSISTANT DISTRICT ATTORNEY

_____
FRANKIE K. STANFILL
ASSISTANT PUBLIC DEFENDER

CERTIFICATE OF SERVICE

A true and exact copy of this Order on Motion has been sent by U.S. mail, postage paid, to Jim Thompson, Assistant District Attorney, P.O. Box 2825, Jackson, Tennessee, 38302-2825, this the 21st day of February, 1995

_____
FRANKIE K. STANFILL

97

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

                                                              FILED
                                                        KENNY POWERS  CIRCUIT CT. C

STATE OF TENNESSEE          )
                            )                            JAN 2 5 1996
V.                          :  CRIM. NOS. 94-342, 94-452 and 94-454.
                            )                            DEPUTY CLERK
JON HALL                    )
_____

    WITHDRAWL OF COUNSEL  -  REPLACEMENT BY COURT
_____

    Comes now the Petitioner/Defendant, Jon Hall, and respectfully
    moves this Court for "WITHDRAWL OF COUNSEL" under T.C.A. 40-14-104;
    and request this Court to dismiss Mike Mosier from his  defense in
    this matter;

    In support of this motion, defendant will show this court the following:

    (a) There is a conflict of interest between the defendant and counsel's
    as to their representation of this defendant; FOR the following an just
    reason:

    (b) Defendant contends that his counsel's are not representing him
    zealously; They are not keeping defendant reasonably informed of the
    status of the case. DR 7-101 (A) (1), (2), (3), (4).

    In support of this motion, defendant will show this court the following:

    :SEE:

## MOSIER & MORRIS, P.A.
### ATTORNEYS AT LAW
204 WEST BALTIMORE
P.O. BOX 1623
JACKSON, TENNESSEE 38302-1623
(901) 424-6616

MIKE MOSIER                                    J. COLIN MORRIS


                    November 22, 1995



Lynne D. Zager, Ph.D.
Psychological Services
68 Timberlake Drive
Jackson, Tennessee 38305

Dear Lynne:        it cannot be inferred that defendants intention was
            the same as his father's in 1969 when Defendant Began
        Kindergarten OR THAT DEFENDANT WITNESSED OR COPIES ALLEDGED ACTS,
            ★[NOTE: DONT FORGET MONEY ORDER] Jon D Hall

SEE also:        MITIGATION ASSESSMENT
                        for
                JON DOUGLAS HALL
                        by
                Ann Charvat, Ph.D.                    DF-MOT 1
        The Capital Case Resource Center of Tennessee
                    January 20, 1994

        which is not  a factual record.  see TENN. PRACTICE  RAYBIN SERIES
                                         VOL. II  Ch. § 32.9⊕

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON TENNESSEE
DIVISION I

STATE OF TENNESSEE            )
                              )
V.                            ) CRIM. NOS. 94-342, 94-452 and 94-454.
                              )
JON HALL                      )

MEMORANDUM OF LAW POINTS AND AUTHORITIES

JON HALL #238941
7475 Cockrill Bend Ind. Rd.
Nashville Tenn. 37209-1010

RE: DISMISSAL / PRO-SE w/counsel State v. BurkHart 541 s.w.2d3

Pg. 1 of 4

Dear Sirs, / THE HONORABLE WHIT LaFON

I AM writing to you on behlF My Pro-se "MOTION To Dismiss" Filed in
Henderson County Circuit Court 10/27/95. ALong with a "Motion To Leave To
File more motions" That was overuled by Circuit Court Judge whit LaFon.
Because I was represented by competent attorneys.

I ASK That This court Re-evaluate its position in this matter.
Because, THE competent attorneys That Have Represented Me since Aug.
22, 1994 TO DATE. ALL SIX ATTORNEYS Have Failed To Preserve My
Constitutional Rights From The very begining of these proceedings.

I'm Tired of suing attorneys, etc. To Protect My Constitutional
Rights. Therefore I ask that You Hear my pro-se Motions and List
Me as Co-counsel Pursuant to State v. BurkHart 541 s.w.2d at 361
and to Support My Claims of "EXCEPTIONAL Circumstances" I'm prepared
to show You That, I've Been Held on an "ILLegal Arrest" For
Sixteen Months, in violation OF The Fourth Amendment. See: Henry
VS. United States, 361 U.S. 98, 80 s.ct. 168, 4 L.Ed. 2d 134 (1959)

ON Aug. 3, 1994 I was arrested in Belton Texas and Had
a preliminary arraignment on Aug. 22, 1994. THE Arrest warrants Were
Listed as 2300 and 2301. Supported by an affidavit in violation of
Tenn. R. Crim. P. Rule 3 citing the case of Spinelli vs. United States
393 U.S. 410 (1969) which States:

    A Factually SufFicient Basis For The probable cause
    Judgement Must appear within The affidavit of complaint,
    IF Hearsay is relied upon, The basis For the credibility of
    the informant and His information must appear on the affidavit.
See also: STATE V. Tays 836 s.w. 2d 596 (Tn. Cr. App. 1992) as cited
in Tenn. R. Crim. P. Rule 4

    THE Test to Determine whether probable cause To Make
    an arrest should be as equally Stringent as the test to
    Determine whether probable cause EXISTS to issue a search warrant.
    THE Evidence That what used at the preliminary Hearing to
Bind-over to the Grand Jury was an "Impeached Hearsay Statement" by
Tenn. Bureau of Investigation Bryan Byrd, During an Illegal arrest During
"Custodial Interrogation" in violation of The Rules Set Fourth in Miranda
v. Arizona 384 U.S. 436, 86 s.ct 1602. all in violation OF Tenn. R.
Crim. P. 5.1 Pursuant to Waugh vs state 564 s.w.2d 654.

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE )
)
V. : CRIM. NOS. 94-342, 94-452 and 94-454.
)
JON HALL )

    IN Addition To Those violations THE "Impeached Hearsay    Pg. 2 of
Statement" was publicized in all The Local Newspapers see: Shephard
v. Maxwell, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed 2d (1966). (F. Lee Bailey)
This prejudice The defendant at a "critical Stage" of The Preliminary
Hearing, Forcing False adverse Publicity upon the defendant, in violation
of The Due process clause of The 14th Amendment commensurate with
Beck v. washington 369 U.S. 541-546 (1962) dictum. Before The Grand
Jury Proceedings in Henderson County in violation of A Fair and
Impartial Tribunal Hearing.
    NONE of The Six attorneys appointed To me have made
any Motions To Preserve any of my Constitutional Rights. That
is [Jack Hinson and Frankie Stanfill] of The Lexington Public
Defenders office which represented me through the Preliminary Hearing
To The Grand Jury Proceedings. [George Googe and Steven Spracher]
of The 26th District Public Defenders office in Jackson, which
Did The First investigation on 4/17/95 and Set up the court appointed
Psychiatric examination, asked originally To be had before Grand Jury proceeding
by Jack Hinson at the preliminary examination, was Finally Scheduled on
3/23/95. after defendant Had been treated by a psychiatrist Since Sept
23, 1994 at Riverbend, with anti-Depressants, without ever conferring with
Defendant UNTIL 3/24/95 See: McBee v. state, 655 S.W. 2d 191 (Tn. Cr. App 1983)
    IN short, more defense investigative effort Should be expanded
as soon as counsel is retained or The public Defender is assigned.
Counsel must conduct appropriate investigations into Both Facts
and the Law to determine what matters of Defense can be
Developed.
    Then Finally, I Had a motion Hearing on Nov. 8, 1995 Litigated
By Michael Moshier, NO Motions to Suppress any of The Constitutional
Errors in this case Have been Made. See Tenn. R. of Crim. P. Rule 45 (c)
The ineffective assistance of counsel to make appropriate Motions See:
state v. Hamilton, 628 S.W. 2d 742 (Tn. Cr. App 1981) See: state v. Zyle
628 S.W. 2d 39 (1981) on confessions. Suffice it to Say I've been
Denied the effective assistance of counsel as Described in Baxter
v. Rose, 523 S.W. 2d 930 and See: Mckeldin v. state, 516 S.W. 2d 82
Failure to Exploit Discovery opportunities. Both Michael Moshier and
Carthel Smith were given copies of Hall v. Johnson 95-1299 Filed
in Jackson Fed. court Stating various violations But Still The
Record Has not been Set Straight. And None of The errors could be

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE ) 
                        )
V.                    : CRIM. NOS. 94-342, 94-452 and 94-454.
                        )
JON HALL              )

Pg 3 of 4

considered as "Harmless errors". I Have doubts to the type of Representation that I've been Given. I've Had six Full Fledged attorneys on my case, but as a Layman at Law, I've Been the only person that Has brought the constitutional Errors to light as per Tenn. R. of Crim. P. Rule 3. IT Seems like all the court appointed Lawyers Do For The Defendant, is set them out For Jerry Woodal of The Dist. Attorneys office To violate constitutional Rights and alter evidence such as the transcripts of My preliminary Hearing To cover up His Acts. ESSpecially Since I Filed Hall v. Johnson 95-1249 in Fed. Court.

I've Asked For Several Items of Discovery To prove my allegations, But They Refuse to send them To Me. For example a copy of The Audio Tapes of The Aug 22, 1994 Preliminary Hearing, My attorneys Tell me They Have it, But will not comply with Giving it to me even under the Freedom of Information act. In certain several objections were made but not Listed on the Transcript Transcribed by The Dist. Atty. Secretary [Tonya Shavers]. I've showed Them proof that I did not waive the kidnapping charge, or the auto theft charges Listed on Indictment 94-342. I've showed Them that the Impeached Hearsay statement Byrd made was in Fact Impeached, But none of the attorneys were worried about Losing the Discovery Priveledges, and Asked For a Motion To Stay, Vacate and Remand order of Bind-over" Pursuant with waugh v. state 564 s.w. 2d 654, But with out Accurate Transcripts, along with the Fact That [Jack Hinson] quit the public Defenders office, after Litagation of the Preliminary Hearing in violation of Partee v. state, 2 Tenn. Cr. App 626 455 s.w. 2d 645 (1970) [Gap in representation] See also: State v. Simon 635 s.w.2d 498 (Tn. 1982) (Trial Judge Should appoint More experienced counsel). So, The Denial of Discovery of at least the prima facie Portion of the states case necessary to establish probale cause amounts to Rev. error. See Tenn. R. of Crim. P. 6.9 [Scope of Review] citing Volau v. state 568 s.w. 2d 837 (Tn. Cr. App. 1978) The conduct Described in Hall v. Johnson 95-1249 amounts to "outrageous conduct" See List of cases cited in United State v. Myers 527 F. Supp. 1206 (O.C.N.Y) (Abscan) Section [9] const. violation w/ prejudice

I Hereby certify that on 27 day of Dec 1995. I've sent a copy of this Letter to (Jerry Woodal D.A.), (Lance B. Bracy senior Disciplinary counsel of Board of Professional Responsibility), (Whit LaFon Henderson Co. Court Judge), (Asst. Atty Gen. Civil Rights Div. Dept. of Justice Wash. D.C. Judge Todd U.S. Fed. Dist. court Judge Jackson) (Tenn. Atty General Charles Burson) with sufficient Postage there on. Respect Fully Submitted _Jon Hall_ Sworn and subscribed Before me this the 27 day of Dec 1995 Notary public _[signature]_ My com. exp. July 21 1999

4

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE                )
                                  )
V.                                : CRIM. NOS. 94-342, 94-452 and 94-454.
                                  )
JON HALL                          )

*WITHDRAWL OF COUNSEL*

Comes now the Defendant, Jon Hall, and moves this court pursuant to
T.C.A. 40-14-205, with a motion of withdrawl of counsel's in State of
Tennessee v. Hall; In support of this motion, defendant will show this
court the following:

WHEREFORE, defendant ask this court to expedite the proceedings so
that said waiver will be spread upon the minutes of the court, and so
that defendant can safeguard his constitutional rights. i.e., to
entertain his own pro-se motions to preserve evidence in this cause
as they have not been filed by former Attorney's.

                                        Respectfully Submitted,

                                        Jon Hall - Defendant

SWORN TO ME THIS THE _1_4th_ DAY OF _Jan._ 1996.

NOTARY PUBLIC _Donna Phillips_

MY COMMISSION EXPIRES _____ My Commission Expires JAN. 24, 1998

CARTHEL L. SMITH, ATTORNEY AT LAW          HONORABLE WHIT LAFON
85 East Church                             CIRCUIT COURT JUDGE
Lexington, Tennessee 38351                 HENDERSON COUNTY
(901) 968-2561                             LEXINGTON TN 38351

APPOINTED ATTORNEY FOR
DEFENDANT, JON HALL

CERTIFICATE OF SERVICE

    I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302, this 19th day of Jan. 1996.

                                        MR. JON HALL #086941
                                        RMSI 7475 COCKRILL BEND IND RD
                                        NASHVILLE TN 37209-1010

JQF/jh
cc:file

DF.MOT  1                    5



Assistant Public Defenders
 PAMELA J. DREWERY
 STEPHEN P. SPRACHER
 DANIEL J. TAYLOR
 VANESSA D. KING

Investigators
 ROBERT F. RICE
 LAWRENCE E. BROWN

Serving Madison, Chester
and Henderson Counties

GEORGE MORTON GOOGE
DISTRICT PUBLIC DEFENDER
26th JUDICIAL DISTRICT
STATE OF TENNESSEE

227 West Baltimore St.
Jackson, TN 38301

Office Manager
 IVA ARNOLD

Legal Assistants
 CHRIS SCHERFF
 TERESA MITCHE

Telephone
(901) 423-6857
Facsimile
(901) 423-6663

May 16, 1995

Mr. John Hall
#338941
River Bend Maximum
7475 Cockrell Bend Ind.
Nashville, TN 37243-0471

*Purchased 7/29/94 AFTER CASHING Firs UNEMPLOYMENT Che Recied 7/27/94 TO PAY SuPPORT.*

Dear Mr. Hall,

By way of update on our investigation and discovery, we have obtained a copy of the money order, front and back, which is enclosed.  → LEFT AT 525 Pl. Hill Rc

You have previously been sent copies of materials you requested from your file on more than one occasion. The most recent one was received by you on April 19, 1995.

Also, enclosed is a copy of a letter dated April 11, 1995. At your request the itemized materials were sent to you along with the above letter.

Sincerely,

George Morton Googe
District Public Defender

GMG/cs

Enclosure

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE          )
                            ) FILED
V.                          ) KENNY CANNESS - CIRCUIT COURT CRIM. NOS. 94-342, 94-452 and 94-454.
                            )
JON HALL                    ) JAN 2 5 1996
                            ) BY_____
                            )   DEPUTY CLERK

*MOTION TO DISMISS AND ABATE THE INDICTMENT*

Comes now the defendant, Jon Hall, by and through himself and would
respectfully move this court to dismiss the bind-over pursuant to supra
indictment and in conjunction with T.C.A. § 40-1131, as cited in State
v. Waugh, 564 S.W.2d at 654.

Accordingly, attached heretofore, defendant advers to his supporting
motion to dismiss and affidavit in support for an abatement of the
bind-over.

In support of this motion, defendant will show this court the following:

(a) SEE DF-MOT 4 MOTION TO SUPPYESS CONFESSION IN VIOLATION
OF TENN. R. CRIM. P. RULE 3 AFFIDAVIT OF COMPLAIN

WHEREFORE, defendant will forever pray.

                                        Respectfully Submitted,

                                        _____
                                        Jon Hall  - Defendant

SWORN TO ME THIS THE 19th day of January 1996.

NOTARY PUBLIC _Rowena Tanner_

MY COMMISSION EXPIRES September 18, 1999

_____
CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church Street
Lexington, Tennessee 38351
(901) 968-2561                          HONORABLE WHIT LAFON
                                        CIRCUIT COURT JUDGE
APPOINTED ATTORNEY FOR                  HENDERSON COUNTY
                                        LEXINGTON TN 38351

CERTIFICATE OF SERVICE

    I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302, this 11th day of Jan 1996.

                                        _____

TGP/jh
cc:file

DF-MOT 6

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE )
                                            )
V.                                          : CRIM. NOS. 94-342, 94-452 and 94-454.
                                            )
JON HALL                                    )

*AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS AND ABATE*
THE BIND-OVER

STATE OF TENNESSEE
                               -SS-
COUNTY OF DAVIDSON

I ___Jon Hall___ hereby after first being duly sworn hereby
state and depose the following to-wit:

I was denied effective assistance of counsel during the Preliminary
hearing held for me on August 22, 1994; I was denied ample time to con-
sult with my Attorney's, and said Attorney's made no motion to the court
for such; I was denied a Preliminary hearing on the Kidnapping and theft
charges; my Attorney's waived the Preliminary hearing on the kidnapping
and theft charges after I specifically told them not to; these said
charges was later used against me by Attorney General Woodall as an
enhancement tool to seek the death penalty; I was subjected to self-
incrimination when Byrd did not read my Miranda rights; he then sought
custodial interrogation against me without reading my rights to me, and
then used false and perjured testimony against me during the Preliminary
hearing; Agent Byrd also played this false and perjured testimony to
the news-media, thereby denying me the right to a fair and impartial
Jury Trial; this said false and perjured testimony was used and presented
to the Grand Jury to bind me over which resulted in a True Bill being
returned.

I ___Jon Hall___ hereby state under penalty of perjury that the
forgoing affidavit in support of this motion to dismiss is true to the
best of knowledge and belief. Signed this the 19th day of october 1995.

___Jon Hall___
Jon Hall - Defendant

SWORN TO ME THIS THE 19th DAY OF October .

NOTARY PUBLIC ___Virginia Walker___

MY COMMISSION EXPIRES July 24, 1999.

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I.

FILED
KENNY CAMPBELL, CIRCUIT CL. C

JAN 2 5 1996

BY _____
DEPUTY CLERK

STATE OF TENNESSEE            )
                              )
V.                            : CRIM. NOS. 94-342 and 94-452 and 454.
                              )
JON HALL                      )

## MOTION TO SUPPRESS

COMES NOW the Defendant, JON HALL, by and through his attorneys,
JON HALL and Carthel L. Smith, and moves the Court to suppress or determine
prior to the trial, the admissibility of all searches and seizures, confessions or
admissions, eyewitness identification and any other matters the admissibility of
which should properly be determined by the Court prior to the introduction of said
evidence or testimony to the jury. Further, to require the State to refrain from the
mention of such evidence or testimony to the jury prior to its suppression or
admissibility being determined.

RESPECTFULLY SUBMITTED,

_Jon Hall_

MR JON HALL #238941
RMSI 7475 COCKRILL BEND IND RD,
NASHVILLE TN 37209-1010

SWORN TO ME THIS THE ___11th___ DAY OF ___Jan___      1996.

NOTARY PUBLIC ___Donna Phillips___

MY COMMISSION EXPIRES My Commission Expires JAN. 24, 1996

CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church Street
Lexington, Tennessee 38351
(901) 968-2561

HONORABLE WHIT LAFON
CIRCUIT COURT JUDGE
HENDERSON COUNTY
LEXINGTON TN 38351

APPOINTED ATTORNEY FOR
DEFENDANT, JON HALL

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302, this ___19th___ day of ___Jan___ 1995.

_Jon Hall_

MR JON HALL #238941
RMSI 7475 COCKRILL BEND IND RD
NASHVILLE TN 37209-1010

In support of this motion, defendant will show this court the following:

(1), (2)  (referred to hereinafter as "Exhibit (A) and (B)

1

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE )
 )
V. : CRIM. NOS. 94-342, 94-452 and 94-454.
 )
JON HALL )

MOTION TO SUPPRESS

MEMORANDUM OF LAW POINTS AND AUTHORITIES

Since the begining THE Attorneys Have Failed To Protect My Constitutional
Rights. Therefore I ask that you Hear my pro-se Motions and List
Me as Co-counsel Pursuant to State v. BurkHart 541 S.W. 2d at 361.
and to Support My Claims of "Exceptional Circumstances" I'm prepared
to show you That, I've Been Held on an "Illegal Arrest" For
Sixteen Months, in violation of The Fourth Amendment. See: Henry
VS. United States, 361 U.S. 98, 80 s.ct. 168, 4 L.Ed. 2d 134 (1959)

ON Aug. 3, 1994 I was arrested in Belton Texas and Had
a preliminary arraignment on Aug. 22, 1994. THE Arrest warrants were
Listed as 2300 and 2301. Supported by an affidavit in violation of
Tenn. R. Crim. P. Rule 3 citing the case of Spinelli vs. United States
393 U.S. 410 (1969) which States:

A Factually Sufficient Basis for The probable Cause
Judgement must appear within The affidavit of complaint,
IF Hearsay is relied upon, The basis For the credibility of
The informant and His information must appear on the affidavit.
see also: STATE V. Tays 836 S.W. 2d 596 (Tn. Cr. App. 1992) as cited
in Tenn. R. Crim. P. Rule 4

THE Test to Determine whether probable cause To Make
an arrest should be as equally Stringent as the test to
Determine whether probable cause exists to issue a search warrant.
THE Evidence That what used at the preliminary Hearing to
Bind-over to the Grand Jury was an "Impeached Hearsay statement" by
Tenn. Bureau of Investigation Bryan Byrd, During an Illegal arrest During
"custodial Interrogation" in violation of The Rules set Fourth in Miranda
v. Arizona 384 U.S. 436, 86 s.ct 1602 all in violation of Tenn. R.
Crim. P. 5.1 Pursuant to waugh vs state 564 S.W. 2d 654.

IN Addition To These violations THE "Impeached Hearsay
Statement" was publicized in all The Local Newspapers. See: Shephard
V. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed 2d (1966) (F Lee Bailey)
This preJudice The defendant at a "critical stage" of The Preliminary
Hearing, Forcing False adverse Publicity upon the defendant, in violation
of The Due process clause of The 14th Amendment commensurate with
Beck v. washington 369 U.S. 541-545 (1962) dictum. Before The Grand
Jury Proceedings in Henderson County in violation of A Fair and
Impartial Tribunal Hearing.
JON/jh
SGT/jl1e

EXHIBIT (A) - Warrant #2306

*[AFFIDAVIT FOR SEARCH WARRANT]
STATE OF TENNESSEE
HENDERSON COUNTY

PERSONALLY APPEARED BEFORE ME DARENE BOOTH, WHO MAKES OATH
THAT HE HAS PROBABLE CAUSE FOR BELIEVING AND DOES BELIEVE
THAT   PERSONAL   PROPERTY   BELONGING   TO   JON   HALL
IS NEEDED AS EVIDENCE IN THE ALLEGED CRIMINAL OFFENSE OF
FIRST DEGREE MURDER.

COMMITTED ON THE PERSON OF BILLIE HALL.

HIS REASON FOR SUCH BELIEF AND THE PORBABLE CAUSE FOR SUCH
BELIEF IS THAT THE AFFIANT HAS RECEIVED INFORMATION FROM THE
SAID DARLENE BROWN    THAT ON THE 29  DAY OF   JULY  1994 THE
SAID   JON HALL   DID MAINTAIN RESIDENCE AT 500 WEST CHURCH
STREET TRAILER NUMBER 42 AND BEING THE SAME RESIDENCE, ALSO
OCCUPIED BY DARLENE BROWN.

YOUR AFFIANT  THEREFORE  ASKS  THAT  A  WARRANT  BE  ISSUED  TO
SEARCH  THE  RESIDENCE  OF  DARLENE  BROWN  AND  JON  HALL  AND  TO
SEIZE   PERSONAL  PROPERTY  BELONGING  TO  JON  HALL  TO  BE  USED  AS
EVIDENCE  IN  THE  INVESTIGATION  OF  THE  ALLEGED  HOMICIDE.

                                        AFFIANT

SWORN   TO   AND   SUBSCRIBED   BEFORE   ME   THIS  THE
3 0 th   DAY OF  July   , 1994

                                        GENERAL SESSIONS JUDGE
                                        HENDERSON COUNTY, TENNESSEE

EXHIBIT (A) (Judges order) Pursuant to { Arrest
                                          warrant
                                          # 2300

[illegible faded text block — state of Tennessee court heading]

[illegible faded body text]

[illegible faded body text]

[illegible faded body text]

this the *30* _____ July

[signature]

[illegible faded text]

EXHIBIT (A) *[CONTENTS OF SEIZED PROPERTY]    Arrest
WARRANT
# 2306

[unclear text]

[unclear text]

[unclear text]
v.
[unclear]
[unclear]

[unclear] *Brent Booth*

[unclear] *30* [unclear]

*July* [unclear]

*8:55* [unclear] *A.*

*J.B. Johnson*
[unclear]

[unclear text]
[unclear text]
[unclear text]
[unclear text]

/ Blue Suitcase w/n video Tapes, High School Annual paper(3/4 [unclear])
/ Tape Audio Player w/ Two Tapes
/ Brown Paper-sack w/ assorted photos and pop=it
/ Brown Canvas Bag w/ Assorted paper and receipts
/, etc

[unclear text]

[unclear] *July*

*B. Booth*
[unclear]

AFFIDAVIT OF COMPLAINT

# AFFIDAVIT OF COMPLAINT

IN THE GENERAL SESSIONS COURT OF HENDERSON COUNTY, TN

Brent Booth _____ Affiant herein after being duly sworn according to
law, makes oath and says: _____ that _____ Hall _____ herein referred to as

Defendant, whose name is otherwise unknown to the Affiant, committed the offense of _____

_____ in _____ County, TN near _____

FURTHER, Affiant makes oath and says that the following facts constituting said offense,
the crime in the above County and State and at the stated time, to-wit:

NAME & ADDRESS

DESCRIPTION OF DEFENDANT

Age _____ Sex M [ ] F _____ Complexion _____

Height _____ Weight _____ Distinguishing traits _____

May be found at: _____

Place of employment _____

Phone _____

OFFICER'S RETURN

TO ANY LAWFUL OFFICER OF THE STATE:
WARRANT/SUMMONS

THEREFORE, you are hereby commanded in the name of
the State of Tennessee to forthwith _____ ARREST
SUMMON, the Defendant and bring Defendant
before the General Sessions Court of said County to
answer the charges.

Issued _____ 19 _____

Judge/Clerk/Judicial Commissioner

I HEREBY CERTIFY that _____

I HEREBY CERTIFY that I was unable to serve the within
WARRANT/SUMMONS because _____

Signature of Affiant

Sworn to and subscribed before me this the
_____ day of _____ 19 _____

8-22-96

Judge/Clerk/Judicial Commissioner

## WAIVER OF RIGHTS

Being fully advised of his/her rights, the Defendant hereby waives

( ) The right to a preliminary hearing within 10/30 days

( ) The right to counsel at the preliminary hearing.

( ) The right to a preliminary hearing.

_____ Defendant

_____ Attorney

_____ Judge

_____ Date

## ORDER

( ) UPON TRIAL, the Court finds probable cause that an offense occurred and that Defendant committed the offense herein and Defendant is hereby bound to the next day of Henderson County, TN

( ) UPON TRIAL, the Court finds that the State has failed to show probable cause in this matter and the same is hereby dismissed with cost taxed to the State.

( ) Defendant, having waived the right to a preliminary hearing, is hereby bound to the Grand Jury of Henderson County, TN upon the charges herein.

( ) Defendant is hereby ordered to appear in the Criminal Court for Henderson County, TN at _____ AM/PM on the _____ day of _____, _____ and bond is hereby set at $ _____

_____ Judge

_____ Date

---

DOCKET # _____

# STATE OF TENNESSEE
VS. _____

_____ Defendant

_____ Address

Violation _____

## AFFIDAVIT OF COMPLAINT

## COURT OF GENERAL SESSIONS
## HENDERSON COUNTY, TENNESSEE

Bond $ _____
Conditions of Bond: _____

Defendant must appear in General Sessions Court on _____ 19 _____ at _____

Bond for: (1) _____
(2) _____
(3) _____
(4) _____

### CLERK'S RECORDS

Mittimus Issued _____
Fines $ _____ Jail Fees: $ _____
Court Cost: $ _____
Litigation Tax: $ _____
Other: _____

_____ Attorney for Defendant

---

## JUDGEMENT

( ) UPON TRIAL/PLEA, the Court finds Defendant: GUILTY/NOT GUILTY of _____

( ) Dismissed, on Motion of State: _____
Costs taxed to _____

( ) Dismissed upon _____
costs taxed to _____

( ) Defendant waives extradition
costs taxed to _____

( ) Cash bond referred to payment of fine and costs

( ) Separate orders attached _____

### SENTENCE

( ) Fined $ _____ and costs paid.

( ) Sentenced to serve _____ days in _____ County jail beginning _____

_____ Sentence is suspended except

to serve _____ months and _____ days, and/or

( ) Defendant's driving privilege is suspended for _____

( ) Defendant is placed on probation through _____ for a period of _____

probation/suspended sentence is condition that _____ and the Defendant

and paying fines/cost restitution and complying with all laws.

_____

( ) OTHER: _____

If Defendant is in violation of Defendant's suspended sentence/probation, Defendant shall serve _____% of the sentence herein as offender _____

_____ Judge

IN THE GENERAL SESSIONS COURT OF HENDERSON COUNTY, TN

I, _Brent Booth_ Affiant herein after being duly sworn according to law, makes oath and says: _Tom Holl_ herein referred to as Defendant, whose name is otherwise unknown to the Affiant, committed the offense of _Molesting_ a ____ in violation of TCA ____ in _Henderson_ County, TN on or about _July_ _29th_, 19_94_.

FURTHER, Affiant makes oath and says that the following facts constituting said offense, did occur in the above County and State and at the stated time, to-wit:

_On July 29, 1994 Tom Holl took_
_Clinton Smith Clickild 13 yrs of_
_age against his will and J'will_
_the permission of his parents_

Signature of Affiant: ____

Sworn to and subscribed before me this the ____ day of ____, 19__.

_____
Judge/Clerk/Judicial Commissioner

DESCRIPTION OF DEFENDANT:

Age: ____ Sex: M / F Weight: ____ Complexion: ____

Height: ____ Ft. ____ In. Distinguishing traits: ____

May be found at: ____

Place of employment: ____

Phone: ____
S.S.# ____
Dr. Lic. # ____

[ ] ARREST WARRANT [ ] CRIMINAL SUMMONS
[ ] CITATION ISSUED

TO ANY LAWFUL OFFICER OF THE STATE: Based upon the sworn Affidavit or Complaint, there is probable cause to believe that the offense named herein or ____ (TCA ____) was committed in said County by the Defendant.

THEREFORE, you are hereby commanded in the name of the State of Tennessee to forthwith ____ ARREST ____ SUMMON, the Defendant and bring Defendant before the General Sessions Court of said County to answer the charges.

Issued ____, 19__.

_____
Judge/Clerk/Judicial Commissioner

Received ____, 19__

By _____
                                    Officer

OFFICER'S RETURN

I HEREBY CERTIFY that I have served the within WARRANT/SUMMONS by ____
____
this ____ day of ____, 19__
____ AM/PM. Time ____
____

I HEREBY CERTIFY that I was unable to serve the within WARRANT/SUMMONS because ____

this ____ day of ____, 19__

Title ____

## JUDGEMENT

( ) UPON TRIAL/PLEA, the Court finds Defendant GUILTY/NOT GUILTY of

( ) Dismissed, on Motion of State,

Costs taxed to

( ) Dismissed, upon

Costs taxed to

( ) Defendant waives extradition.

Costs taxed to

( ) Cash bond forfeited to payment of fine and costs

( ) Separate orders attached

### SENTENCE

( ) Fined $ _____ and cost; and/or

( ) Sentenced to _____ days in

_____ County jail, beginning _____

19 _____ at _____ AM/PM. Sentence is suspended except

_____ months and _____ days; and/or

( ) Defendant's driving privlege is suspended for _____
and/or

( ) Defendant is placed on probation through _____

for a period of _____ and the Defendant
probation/suspended sentence is condition upon _____

and paying fines/cost restitution and complying with all laws.

( ) OTHER:

If Defendant is in violation of Defendant's suspended sentence/probation,
Defendant shall serve _____ % of the sentence herein as
_____ offender.

_____ Judge

---

DOCKET # _____ 2301

## STATE OF TENNESSEE

vs. _____

_____ Defendant

_____ Address

Violation: _____ Kidnapping

## AFFIDAVIT OF COMPLAINT

## COURT OF GENERAL SESSIONS
## HENDERSON COUNTY, TENNESSEE

Bond: $ _____
Conditions of Bond: _____

Defendant must appear in General Sessions Court on
_____ 19 _____ at _____

AM/NOT

Reset for: (1) _____ E-22-94 5:00PM
(2) _____ (3) _____
(4) _____ (5) _____

## CLERK'S RECORDS

Mittimus issued _____
Fines: $ _____ Jail Fees: $ _____
Court Cost: $ _____
Litigation Tax: $ _____
Other: _____

_____
Attorney for Defendant

---

## WAIVER OF RIGHTS

Being fully advised of his/her rights, the Defendant hereby
waives:

( ) The right to a preliminary hearing within 10/30
days;

( ) The right to counsel at the preliminary hearing;

( ) The right to a preliminary hearing

_____ Defendant

_____ Attorney

_____ Judge

_____ Date

## ORDER

( ) UPON TRIAL, the Court finds probable cause that an
offense occurred and that Defendant committed the
offense herein and Defendant is hereby bound to the
Grand Jury of Henderson County, TN

( ) UPON TRIAL, the Court finds that the State has
failed to show probable cause in this matter and the
same is hereby dismissed with cost taxed to the State.

( ) Defendant, having waived the right to a preliminary
hearing, is hereby bound to the Grand Jury of Henderson
County, TN upon the charges herein.

( ) Defendant is hereby ordered to appear in the Criminal
Court for Henderson County, TN at _____
AM/PM on the _____ day of
19 _____ and bond is hereby set at $ _____

_____ Judge

_____ Date

FILED
IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT JENNY CAVNESS - CIRCUIT CT. CLRK
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I                                   JAN 2 5 1996

BY_____
STATE OF TENNESSEE          )                      DEPUTY CLERK
                            )
V.                          : CRIM. NOS. 94-342, 94-452 and 94-454.
                            )
JON HALL                    )

        MEMORANDIUM IN SUPPORT OF MOTION FOR THE COURT TO
        CONSIDER ALL MOTIONS AND OBJECTIONS BY THE DEFENSE
        IN LIGHT OF A HIGHER STANDARD OF DUE PROCESS AND
        RELIABILITY THAT ATTACHES IN DEATH PENALTY CASES

I.      "DEATH IS DIFFERENT": THE IMPOSITION OF THE PENALTY
        OF DEATH REQUIRES, AS A MATTER OF FUNDAMENTAL
        CONSTITUTIONAL LAW, HEIGHTENED SCRUTINY AND
        RELIABILITY IN THE GUIDANCE AND EXERCISE OF
        SENTENCING DISCRETION.

        As a matter of substantive consitutional law, the

imposition of death as a criminal sanction is fundamentally and

qualitatively different from every other punishment meted out by a

state.    It is more servere in quantity and quality from life in

prison.    The taking of the life of one of its citizens is the most

extreme action that a governmental entity can take.    Indeed, death,

because of its severity and finality, occupies a constitutional

classification that is unique unto itself.    As the United States

Supreme Court explained in Woodson v. North Carolina, 428 U.S. 280

(1976), the Constitution requires a reliability in captial cases

that has no parallel in no captial cases:

                The penalty of death is qualitatively
                different from a sentence of imprisonment,
                however long.    Death in its finality,
                differs more from life imprisonment than a
                100-year prison term differs from only one
                of a year or two.    Because of that
                qualitative difference, there is a
                corresponding difference in the need for
                reliability in the determination that death
                is the appropriate punishment in a specific
                case.

Id. at 305

        It is from this fundamental and overriding constitutional

concern for the reliability of any sentence of death that most of

the standards and principles governing capital punishment emanate.

Numerous rules and safeguards have been developed by the courts,

including the Tennessee Supreme Court and the United States Supreme

Court, to circumscribe proceedings where death may be the ultimate

1

penalty. These rules and safeguards are far more than procedural
niceties. They are substantive law, infused with the recognition
that, to be constitutional, a sentence of death must be the result
of the exercise of individualized, reasoned and reliable sentencing
discretion.

　　　　Indeed, the Supreme Court has repeatedly recognized that
death in such a final and draconian step that its imposition must
be attended with constitutional protections designed to ensure both
that the courts have reliably identified those defendants who are
guilty of a capital crime and for whom execution is the appropriate
saction, see, e.g. Ford v. Wainwright, 477 U.S. 399 (1986), and
that the death sentence is "and appear(s) to be, based on reason
rather than caprice or emotion." Gardner v. Florida, 430 U.S. 349,
358 (1977). As the Court stated in Caldwell v. Mississippi, 472
U.S. 320 (1985):

> This Court has repeatedly said that under
> the Eight Amendment "the qualitative
> difference of death from all other
> punishments requires a correspondingly
> greater degree of scrutiny of the capital
> sentencing determination." Accordingly,
> many of the limits that this Court has
> placed on the imposition of capital
> punishment are rooted in a concern that the
> sentencing process should facilitate the
> responsible and reliable exercise of
> sentencing discretion.

Id. at 329 (citations omitted) (quoting California v. Ramos, 463
U.S. 992, 9898-99 (1983). See also Eddings v. Oklahoma, 455 U.S.
104 (1982); Lockett v. Ohio, 438 U.S. 586 (1978); Garner v.
Florida, 430 U.S. 349 (1977).[1]

---

1.
　　　　Captial decisions emanating from the United States
Supreme Court contain numerous examples fo this conern for the
reliability of a death sentence. See, e.g., Barefoot v. Estelle,
463 U.S. 880, 924 (1983) (Blackmun, Jr. dissenting) (Woodson's
concern for assuring heightened reliability in capital sentencing
determination "is a firmly established as any in our Eighth
Amendment jurisprudence"); Eddings v. Oklahoma, 455 U.S. 104, 118
(1982) (O'Connor, J., concurring) ("This Court has gone to

In his opinion in <u>Spaziano v. Florida</u>, 468 U.S. 447 (1984), Justice Stevens noted that "in the 12 years since <u>Furman v. Georgia</u> every Member of this Court has written or joined at least one opinion endorsing the proposition that because of its severity and irrevocability, the death penalty is qualitatively different from any other punishment, and hence must be accompanied by unique safeguards to ensure that it is a J., concurring in part and dissenting in part) (citations and footnote omitted). <u>See also</u> <u>Parker v. Dugger</u>, 498 U.S. _____, 111 S. Ct. 731, 112 L.Ed. 2d 812 (1991).

The rationale for this well-recognized constitutional distinction between death and every other type of criminal punishment was perhaps best articulated in Justice Brennan's concurrence in <u>Furman v. Georgia</u>, 408 U.S. 238 (1972):

> Death is truly an awesome punishment. The calculated killing of a human being by the State involves, by its very nature, a denial of the executed person's humanity. The contrast with the plight of a person punished by imprisonment is evident. An individual in prison does not lose "the right to have rights." A prisoner retains, for example, the constitutional rights to the free exercise of religion, to be free of cruel and unusual punishments, and to treatment as a "person" for purposes of due process of law and the equal protection of the laws. A prisoner remains a member of the human family. Moreover, he retains the right of access to the courts. His punishment is not irrevocable. Apart from the common charge, grounded upon the recognition of human fallibility that the punishment of death must inevitably be inflicted upon innocent men, we know that death has been the lot of men whose convictions were unconstitutionally inflicted, yet the finality of death precludes relief. An executed person has indeed "lost the right to have rights." As one 19th century proponent of punishing criminals by death declared, "When a man is

---

extradiordinary measures to ensure that the prisoner sentenced to be executed is afforded due process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice or mistake") <u>Godfrey v. Georgia</u>, 446 U.S. 420, 443 (1980) (Burger, J., dissenting) (In capital cases we must see to it that the Jury has rendered its decision with meticulous care") <u>See also Caldwell</u>, 472 U.S. at 329 n. 2.

> hung, there is end of our relations with
> him. His execution is a way of saying,
> You are not fit for this world, take your
> chance elsewhere.

Id. at 290 (Brennan, J., concurring) (citation omitted) (quoting

Stephen, Capital Punishments, 69 Fraser's Magazine 753, 763 (1864).

See also Furman, 408 U.S. at 306 (Stewart, J., concurring) ("The

penalty of death differs from all other forms of criminal

punishment, not in degree but in kind. It is unique in its total

irrevocability. It is unique in its rejection of rehabiliation of

the convict as a basic purpose of criminal justice. And it is

unique, finally, in its absoulte renunciation of all that is

embodied in our concept of humanity").

The Tennessee Supreme Court has recognized the unique

characteristics of the impostion of the sentence of death and the

consequent unique constitutional protections for a defendant

charged iwth a capital offense. For example, in Johnson v. State,

797 S.W. 2d 578 (Tenn. 1990), referring to Woodson, supra, the

State Supreme Court stated:

> The penalty of death is qualitatively
> different from a sentence of imprisonment
> and because of that difference there is a
> corresponding difference in the need for
> reliability in the determination that death
> is the appropriate punishment in a specific
> case.

797 S.W. 2d at 580. See also State vs. Terry, 813 S.W. 2d 420,

425 (Tenn. 1991) and State v. Middlebrooks, Supreme Court at

Nashville, No. 01-S-01-9201-00008, decided 9/8/92, slip opinion, p.

57.

The difference between a life sentence and a death

sentence in Tennessee may be greater in actual fact than many

imagine. Although the current prediction concerning the amount of

time that an inmate serving a life sentence must actually expect to

serve before he is released from custody is difficult to predict

and is perhaps now longer in this state than it used to be, based

on past experience the average release time on a life sentence in

the immediate past years has been a little

4

more than one-fifth of an actual normal life span figured at seventy years.[2]

While a life sentence has in the past taken away a defendant's freedom for one-fifth of his or her life, a death sentence takes form the defendant, not only freedom for the defendant's entire life, but life itself. The death-sentenced defendant endures the psychological debilitation of being condemned to die while the life-sentence defendant enjoys the psychological advantage of anticipating release. The difference between the death sentence and the life sentence is therefore, one of both quality and quantity, substance and degree. The sentence of death is much more severe in all categories and to compare it to other types of sentences, which deprive the defendant of property or liberty, is to compare apples and oranges.

II.      SENTENCING JURIES MUST BE CAREFULLY AND ADEQUATELY
         GUIDED IN THEIR DELIBERATIONS.

To ensure the heightened reliability that is required of proceedings that may result in the imposition of the death penalty, the Jury vested with the authority to impose the sentence must be "carefully and adequately guided" in the exercise of its discretion. Gregg v. Georgia, 428 U.S. at 193. Such guidance will be deemed constitutionally sufficient only it it "channel(s) the sentencer's discretion by clear and objective standards' that provide specific and detailed guidance,' and that make rationally reviewable the process for imposing a sentence of death." Godfrey v. Georgia, 446 U.S. 420, 428 (1980) (quoting, respectively, Gregg v. Georgia, 428 U.S. at 198; Proffit v. Florida, 428 U.S. 242, 253 (1976); and Woodson v. North Carolina, 428 U.S. 280, 303 (1976).

---

2

According to figures released by the Tennessee Sentencing Commission, the average time actually served by inmates, who were released between 1986 and 1991, serving life sentence on first-degree murder convictions in this state, was somewhere around 15 years. [(1) In 1986-1987, 19 inmates were released who had served an average time of 14.9 years for first-degree murder.
(2) In 1987-1988, 5 inmates, 11.3 years average time. (3) In 1989-1990, 36 inmates, 15.5 years average time. (4) In 1990-1992, 32 inmates, 15.8 years average time.]

III.       A SENTENCE OF DEATH MUST BE BASED UPON AN
           INDIVIDUALIZED DETERMINATION OF ITS APPROPRIATENESS
           FOR THE PARTICULAR DEFENDANT UPON WHOM IT IS IMPOSED.
           TOWARD THAT END, THE SENTENCER MUST BE ALLOWED TO
           CONSIDER ANY RELEVANT MITIGATING FACTOR, NOT JUST
           THOSE SPECIFIED BY THE STATE'S DEATH PENALTY STATUTE.

        Having made the determination that the defendant is a

member of the narrow class of people eligible for death by virtue

of the presence of one or more clearly and objectiverly defined

aggravating circumstances, the sentencer cannot be constitutionally

required even on that basis to impose a death sentence.  Woodson v.

North Carolina, 428 U.S. at 404.  "The fundamental respect for

humanity underlying the Eighth Amendment ... requires consideration

of the character and record of the individual offender and the

circumstances of the particular offense as a constitutionally

indispensable part of the process of inflicting the penalty of

death."  Id. at 604.  See also Roberts v. Louisiana, 431 U.S. 633

(1977); Roberts v. Louisiana, 428 U.S. 325 (1976).

        Only through such a process, which requires the sentencer

to "consider in fixing the ultimate punishment of death the

possibility of compassionate or mitigating factors stemming from

the diverse frailties of humankind,"Woodson v. North Carolina, 428

U.S. at 304, can capital defendants be treated as the Eighth

Amendment requires -- "as uniquely individual human beings."  Id.

Because of this need for individualized treatment, the Court has

required that the sentencer be permitted to consider, and in

appropriate cases base a decision to impose a sentence short of

death upon, any state's death penalty statue.  Lockett v. Ohio, 438

U.S. 586 (1978).  As the Court explained in Eddings v. Oklahoma,

455 U.S. 104 (1982):

                    Lockett followed from the earlier decisions
                    of the Court and from the Court's
                    insistence that capital punishment be
                    imposed fairly, and with reasonable
                    consistency, or not at all ... By holding
                    that the sentencer in captial cases must be
                    permitted to consider any relevant
                    mitigating factor, the rule in Lockett
                    recognizes that a consistency produced by
                    ignoring individual differences is a false
                    consistency.

Id. at 112.

                                  6

IV.                    DEATH AS A PUNISHMENT MUST BE PROPORTIONATE TO
                       THE CRIME FOR WHICH IT IS IMPOSED.

          Finally, the requirement that the "punishment
fit the crime" -- that death must be imposed consistently and
reserved solely for the punishment of individuals and conduct for
which the severest criminal sanction is appropriate -- is a
requirement of constitutional magnitude. Eddings v. Oklahoma, 455
U.S. 104 (1982); Cf. Pulley v. Harris, 465 U.S. 37 (1984)
(comparative proportionality review constitutionally mandated where
part of the state's statutory scheme for imposition of the death
penalty). T.C.A. Section 39-13-206(c) specifically mandates a
determination concerning whether the imposition of the sentence of
death in an individual capital case is arbitrary, excessive, or
disproportionate.

V.                     THE DISCRETION TO IMPOSE DEATH MUST BE LIMITED.

          As part of the constitutional jurisprudence of death
under the Eight Amendment, the Supreme Court has steadfastly
insisted that states meaningfully narrow the class of persons for
whom death is an available penalty. Thus, it has been held that a
conviction for a crime for which death is an available sentencing
option cannot, standing alone, justify the imposition of the
penalty from a constitutional standpoint. Rather, the state must
specify certain aggravating circumstances, at least one of which
must   be   present,   in   order   for   the   defendant   to   become
constitutionally death-eligible.

          In Zant v. Stephens, 462 U.S. 862 (1983), for
example, the Court held that the state "must geninely narrow the
class of persons eligible for the dealth penalty" by requiring the
finding of a least one statutory aggravating circumstance which
sets a particular case apart from murders in general. Id. at 877.
As Justice White state in Furman v. Georgia, 408 U.S. 238 (1972),
the sentence of death cannot be constitutionally imposed where
"there is no meaningful basis for distinguishing the few cases in
which it is imposed from the many cases in which it is not." Id.
at 313 (White, Jr., concurring).

The Tennessee Supreme Court has recognized the application in this state of the "narrowing" limitation on the exercise of the jury's discretion contemplated in Zant v. Stephens, supra. See, for example, State v. Middlebrooks, Supreme Court at Nashville, No. 01-S-01-9102-00008, decided 9/8/92, slip opinion, p. 51-55.

In order to properly enforce, concerning the decision to impose the sentence of death, this "narrowing" requirement, the "reliability" requirement, and the requirement that the jury's discretion be limited and that its decision be based on the reason and not whim and caprice (see, ibid.), for example, the Tennessee Supreme Court has required that the scope of the state's proof-in-chief in a capital sentencing trial is limited to only proof relevant to the statutory aggravating circumstances. See, Cozzolino v. State, 584 S.W. 2d 765 (Tenn. 1979); and Black v. State, 815 S.W. 2d 166, 179 (Tenn. 1991); and the state is held to a double burden of proof beyond a reasonable doubt in a capital sentencing hearing, i.e., the state must prove beyond a reasonable doubt: (1) the existence of any statutory aggravating circumstance; and, subsequently that (2) any statutory aggravating circumstance outweighs any mitigating circumstance, statutory or otherwise, T.C.A. Section 39-13-204 (g).

VI.                THE DISCRETION TO IMPOSE A SENTENCE OF LIFE
                   IS NOT LIMITED

The State and federal constitutions require that the jury's decision to impose a sentence of death must be "limited," "reliable," and "narrowed." At the same time, however, the jury's decision to impose a sentence of life may be based on anything with evidence that is relevant to the character of the defendant or the circumstances of the offense. See, Lockett v. Ohio, 438 U.S. 586 (1978); Zant v. Stephens, supra: Eddings v. Oklahoma, 455 U.S. 104 (1982); Skipper v. South Carolina, 476 U.S. 104; Hitchcock v. Dugger, 481 U.S. 393 (1987) Mills v. Maryland, 486 U.S. 387 (1988). See also State v. Middlebrooks, supra, slip opinion, p. 57.

8

The defendant's proof, therefore, is not limited to the statutory mitigating circumstances, T.C.A. Section 39-13-204(e) and (j)(9); and, in fact, the defendant is entitled to a jury instruction directing the jury to consider any evidence presented concerning mitigating circumstances, statutory or otherwise, T.C.A. Section 39-13-204(e) ("The trial judge shall also include in the instructions for the jury to weigh and consider any mitigating circumstances raised by the evidence at either the guilt or sentencing hearing or both which shall include but not be limited to those circumstances set forth in subsection (j).") The defendant is entitled to such an instruction upon the presentation of "any mitigating circumstances raised by the evidence," id., and therefore has no specific burden of proof. See, for example, State v. Thompson, 768 S.W. 2d 239, 252 (Tenn. 1989) ("Each juror has discretion to determine the degree to which the proof mitigates against the death penalty.")

In the comparison of the limited scope of the prosecution's proof with the broad scope of the defense's proof that is subject to the jury's scrutiny, the Court in State v. Middlebrooks, supra, noted

> :... a capital sentencer must be allowed wide discretion -- not unlike that used before Furman -- to impose a life sentence based upon any mitigating evidence concerning the character of the defendant or the circumstances of the crime, the sentence of death] on a class of murderers that is demonstrably smaller and more blame worthy than the class of pre-Furman murders eligible for the death penalty.

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE          )
                            )
V.                          : CRIM. NOS. 94-342, 94-452 and 94-454.
                            )
JON HALL                    )

CONCLUSION

WHEREFORE, this Court should enter an Order
recognizing that because the state is seeking the death penalty a
heightened standard of review by the Eight and Fourteenth
Amendments to the United States Constitution, Tennessee state law
and the state constitution of Tennessee.

Respectfully Submitted,

Jon Hall - Defendant

SWORN TO ME THIS THE 19th day of January 1996.

NOTARY PUBLIC Rowena Tanner

MY COMMISSION EXPIRES September 18, 1999

CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church Street
Lexington, Tennessee 38351
(901) 968-2561

APPOINTED ATTORNEY FOR

HONORABLE WHIT LAFON
CIRCUIT COURT JUDGE
HENDERSON COUNTY
LEXINGTON TN 38351

CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson.
Tennessee 38302, this 8th day of Jan 1996.

JQP/jh
cc:file

DP-MOT/ 10

10

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE    )
                      )                              FILED
V.                    )    CRIM. NOS. 94-342, 94-452 and 94-454    KENNY CAVNESS - CIRCUIT CT. CL.
                      )                              JAN 2 5 1996
JON HALL               )                              BY_____
                                                     DEPUTY CLERK

### *MOTION TO LEAVE TO FILE FURTHER MOTIONS*

Comes now the defendant, Jon Hall, and respectfully moves this
Honorable Court to permit the filing of additional motions in
this matter. Defendant has filed motions which he believes to
be necessary in order to protect the interest of the defendant
in this cause. Defendant has already entertained motions with
this Court and is awaiting the final outcome of investigator,
Tammy Askew, of Jackson Tennessee, pursuant to researching the
issues in this cause, as to otherwise provide the effective
representation of the defendant. The filing of additional motions
may be necessary in order to adequately provide the effective
assistance of counsel to which the defendant is entitled to
under the Sixth Amendment of the United States Constitution.

This motion is not made to delay or to encumber the Court with
unecessary or irrelevant motions, but for the very purpose to
provide the defendant the opportunity to be represented by
counsel that will effectively represent defendant on colorful
pro-se motions that defendant wishes to be filed in the event
that defendant moves this Honorable Court to withdrawl of counsel
pursuant to T.C.A. § 40-14-205.

                                    Respectfully Submitted,

                                    _Jon Hall_
                                    Jon Hall, Defendant

SWORN TO ME THIS THE _19th_ DAY OF _January_ 1996.
NOTARY PUBLIC _Rowena Tanner_
MY COMMISSION EXPIRES _September 18, 1999_


CARTHEL L. SMITH, ATTORNEY AT LAW          HONORABLE WHIT LAFON
85 East Church                             CIRCUIT COURT JUDGE
Lexington, Tennessee 38351                 HENDERSON COUNTY
(901) 968-2561                             LEXINGTON TN 38351

APPOINTED ATTORNEY FOR
DEFENDANT, JON HALL


### CERTIFICATE OF SERVICE

        I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302, this _11th_ day of _Jan_ 1996.

                                    _Jon Hall_

JQP/jh                               MR JON HALL #213941
cc:file                              RMSI 7475 COCKRILL BEND IND RD
                                     NASHVILLE TN 37209-1010

DF-MOT 9

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

FILED
KENNY CAVNESS - CIRCUIT CT. C

JAN 2 5 1996

DEPUTY CLERK

STATE OF TENNESSEE        )
                          )
V.                        :  CRIM. NOS. 94-342, 94-452 and 94-454
                          )
JON HALL                  )

MOTION FOR THE COURT TO CONSIDER ALL pro-se motions
AND OBJECTIONS BY THE DEFENSE IN LIGHT OF A HIGHER
STANDARDS OF DUE PROCESS AND RELIABILITY THAT
ATTACHES IN DEATH PENALTY CASES

Comes now the defendant, through counsel, and respectfully
requests this Court to apply, in the course of ruling on motions,
objections, and other matters arising in the course of this
litigation, the heightened standard of due process required by the
Eighth and Fourteenth Amendments to the United States Constitution
and Article I, Sections 8, 16, and 17 of the Tennessee
Constitution, and by the authorities set out to ensure the exercise
of constitutional discretion in the decision and reliability in the
result that is required specifically and uniquely in cases
involving the potential for the imposition of the sentence of
death.

RESPECTFULLY SUBMITTED,

_Jon Hall_

MR JON HALL #238941
RMSI 7475 COCKRILL BEND IND RD
NASHVILLE TN 37209-1010

SWORN TO ME THIS THE  _19th_  DAY OF _January_ 1996.

NOTARY PUBLIC _Sorena Garner_

MY COMMISSION EXPIRES _September 18, 1999_

CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church Street
Lexington, Tennessee 38351
(901) 968-2561

APPOINTED ATTORNEY FOR
DEFENDANT, JON HALL

HONORABLE WHIT LAFON
CIRCUIT COURT JUDGE
HENDERSON COUNTY
LEXINGTON TN 38351

CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302, this _14_ day of _Jan_ 1996.

JQP/jh
re:file

DPMOT 10

_Jon Hall_

MR JON HALL #238941
RMSI 7475 COCKRILL BEND IND RD

FILED
KENNY CAVRESS - CIRCUIT CT. CLRK.

JAN 2 5 1996

BY _____
DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE        )
                          )
v.                        )        No. 95-265
                          )
JON HALL                  )

## MOTION TO ALLOW WITNESSES TO BE ACCOMPANIED BY GRANDPARENTS WHILE TESTIFYING

Comes now the State of Tennessee by and through the office of the District Attorney General and moves this Honorable Court to permit the minor children of the deceased to be accompanied by a Grandparent or other person while testifying from the witness stand and in support there of States:

1.    The witnesses are considerably young.

2.    The witnesses are extremely emotionally upset from witnessing their mother killed by the defendant.

3.    The attendance of a Grandparent or other person in whom the witnesses have confidense is essential to their well being at trial.

Respectfully Submitted,

AL EARLS
ASSISTANT DISTRICT ATTORNEY

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the foregoing to Mr. Mike Mosier, Attorney at Law, P. O. Box 1623, Jackson, Tennessee 38305, this 23 day of January, 1996.

AL EARLS
ASSISTANT DISTRICT ATTORNEY

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT
HENDERSON COUNTY AT LEXINGTON, TENNESSEE
DIVISION I

STATE OF TENNESSEE          )
                            )
V.                          : CRIM. NOS. 94-342, 94-452 and 94-454.
                            )
JON HALL                    )

MOTION FOR EARLY PROUDCTION OF WITNESSES' STATEMENTS

        COMES NOW the Defendant, Jon Hall, by and through counsel, and
hereby moves this Court for an order compelling the State of Tennessee
to produce all statements the State will be required to produce in acc-
ordance with T.C.A. §40-17-120 and Rule 26.2 of the Tennessee Rules of
Criminal Procedure, at least two weeks in advance of the trial date, for
inspection and copying by counsel for Defendant. As grounds for this
motion, the Defendant states that the earily production of witness' state
ments will afford adequate trial preparation and expedite the trial of
this cause. A Memorandum of Law is submitted herewith in support of the
Defendnat's Motion.

                            _____
                            MR JON HALL #238941
                            RMSI 7475 COCKRILL BEND IND RD
                            NASHVILLE TN 37209-1010

SWORN TO ME THIS THE ___8___ DAY OF _Febuary_ 1996.

NOTARY PUBLIC _Howard Wayne Brandon_

MY COMMISSION EXPIRES __My Commission Expires JULY 24, 1999__

                                            **FILED**
                                            XENRY CAVNESS - CIRCUIT CL CLRK.

                                            FEB 2 6 1996

                                            by _____
                                               DEPUTY CLERK

CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church Street              HONORABLE WHIT LAFON
Lexington, Tennessee 38351         CIRCUIT COURT JUDGE
(901) 968-2561                     HENDERSON COUNTY
                                   LEXINGTON TN 38351
APPOINTED ATTORNEY . FOR
DEFENDANT, JON HALL

CERTIFICATE OF SERVICE

    I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302-2825, on this the 19th day of Feb 1996.

                            _____
                            Jon Hall

IN THE CIRCUIT COURT FOR TWENTY-SIXTH JUDICIAL DISTRICT  FILED
HENDERSON COUNTY AT LEXINGTON, TENNESSEE  KENNY CAVNESS - CIRCUIT CT. C
DIVISION I

FEB 2 6 1996

BY_____
DEPUTY CLERK

STATE OF TENNESSEE                )
                                  )
V.                                :  CRIM. NOS. 94-342, 94-452 and 94-454.
                                  )
JON HALL                          )

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR EARILY PRODUCTION
OF WITNESSES' STATEMENTS

        COMES NOW the Defendant, Jon Hall, by and through counsel, and
has moved this Honorable Court for an order requiring the State of Tenn-
essee to produce all statements the State will be required to produce in
accordance with T.C.A. §40-17-120 and Rule 26.2 of the Tennessee Rules
of Criminal Procedure, at least two weeks in advance of the trial date,
for inspection and copying by counsel for the Defendant. This Memorandum
of Law is respectfully submitted in support of the Defendant's Motion.

I.
DISCUSSION

        The rule of law which permits a defendant to obtain copies of
witnesses' statements is contained in Rule 26.2 of the Tennessee Rules
of Criminal Procedure, which provides as follows:

        Tenn. R. Crim. P., Rule 26.2

        (a) After a witness other than the defendant has testified on
direct examination, the trial court, on motion of a party who did not cal
the witness, shall order the attorney for the state or the defendant and
his attorney, as the case may be, to produce, for the examination and use
of the moving party, any statement of the witness that is in their poss-
ession and that relates to the subject matter concerning which the witnes
has testified.

        (b) If the entire contents of the statement relate to the sub-
ject matter concerning which the witness has testified, the court shall
order that the statement be delivered to the moving party.

        (c) If the other party claims that the statement contains matte
that does not relate to the subject matter concerning which the witness
has testified, the court shall order that it be delivered to the court in
camera. Upon inspection, the court shall excise the portions of the
statement that do not relate to the subject matter concerning which the
witnesss has testified, and shall order that the statement, with such
mmaterial excised, be delivered to the moving party. Any portion of the
statement that is withheld from the defendant over his objection shall be
preserved by the attorney for the state, and, in the event of a convictio
and an appeal by the defendant, shall be made available to the appellate
court for the purpose of determining the correctness of the decision to
excise the portion of the statement.

        (d) Upon delivery of the statement to the moving party, the cou
upon application of that party, may recess proceeding in the trial for th
examination of such statement and for preparation for its use in the tria

        (e) If the other party elects not to comply with an order to
deliver a statement to the moving party, the court shall order that the
testimony of the witness be stricken from the record and that the trial
proceed, or, if it is the attorney for the state who elects not to comply
shall declare a mistrial if required by the interest of justice.

        (f) Except as herein provided, this rule shall apply at a heari
before the trial court on a motion under Rule 12 (b).

(g) As used in this rule, a "statement" of a witness means:
as follows:

(1) A written statement made by the witness that is
signed or otherwise adopted or approved by him; or

(2) A substantially verbatim recital of an oral statemen
made by the witness that is recorded contemporaneously with the makin
of the oral statement and that is contained in a stenographic, mech-
anical, electrical, or other recording or a transcription thereof.

The Committee Comment to Rule 26.2 states that its language i
"substantially identical" to the language in Rule 26.2 of the Federal
Rules of Criminal Procedure, formerly known as Jencks Act (18 U.S.C.
§ 3500). See Tenn. R. Crim. P., Rule 26.2, Committee Comment (1984).

(a) After a witness called by either the state or defendant in
criminal case has testified on direct exmaination, the court shall, or
motion, order the state or the defense to produce any statement of the
witness in the state's or the defenses' possession which relates to th
subject matter as to which the witness has testified. Upon request by
the state or the defense made upon calling a witness and in advance of
direct testimony, the court first shall inspect such statement in came
to determine if it contains matter relating to the subject matter of t
testimony. The court shall excise uch portions which do not relate to
the subject matter of the testimony; however, in the event of convict
and appeal, on motion by either party, the entire statement shall be
made available to the reviewing courts. If the party calling a witnes
elects not to comply with this paragraph, the court shall have the wi
ness withdraw and shall not allow any direct testimony.

(b) The term "statement" as used in this section means is as
follows:

(1) A written statement made by a witness and signed, or
otherwise adopted or appproved by him; or

(2) A stenographic, mechanical, electrical, or other recor
ing of a statement, or a transcription or summary thereof, which is
essentially verbatim recital of, an oral statement made by said witt-
ness. T.C.A. § 40-17-120.

As many observed above, Rule 26.2 and T.C.A. § 40-17-120, are
closely related. Both are patterned fater the Jceks Act, 18 U.S.C.
3500, now Rule 26.2, Federal Rules of Criminal Procedure, but are
broader in scope, particularly in their application to pretrial motic
hearings. See Tenn. R. Cirm. P., Rule 26.2, Committee Comment (1984).

The literal language of Rule 26.2 (a) for the production of
witness statements fater a witness called either by the state or
defense has testified on direct examination. See Tenn. R. Crim. P.,
Rule 26.2 (a); State v. Robinson, 618 S.W.2d 754, 757 (Tenn. Crim.
App. 1981) However, courts have inherent power to do all things that
are reasonable necessary for the adminstration of justice within the
scope of their jurisdiction. See generally, 20 Am. Jur. 2d, Courts 37
(1965). An example of the exercise of such inherent power is the prom
ulgation of local rules which require the filing of pretrial motions
on or before a specified date.

Furthermore, courts have long recognized that they have inhere
power not limited by statute or rule to insure that due process of la
is provided and that criminal trials are fair and efficient. See
United States v. Narciso, 446 F. Supp. 252, 270-271 (E.D. Mich 1977);
See also United States v. Jackson, 508 F. Supp. 1001 (7th Cir. 1975).

The federal courts have also recognized that strict adherence
to the schedule imposed by the Jencks Act (Rule 26.2 Federal Rules
of Criminal Procedure) can be expected to lengthen the trial con-
siderably. Needless to say, the recesses occasioned by delayed pro-

duction of Jencks material, and in case this case Rule 26.2
material, will seriously hamper efficient, orderly and fair conduct
of a trial. The subject of a trial will often be difficult enough for
the parties, the court and jurors to assimilate without the added
hindrance of numerous delays. See United States v. Narciso, supra,
445 F. Supp. at 270.

Accordingly, the Defendant submits that the State should provi
the Defendant with all statements producible in accordance with
Rule 26.2 and T.C.A. § 40-17-120 reasonably in advance of the trial date.
order the early production of witnesses statements will allow defense
for the Defendant, avoid delays at trial occasioned by delivery of
materials to defense counsel during the proceedings, and generally ma
the trial of this cause more efficient.

## II.
## CONCLUSION

For the reasons stated herein, the Defendant respcetfully requ
that the State of Tennessee be compelled to proudce all statements wi
in the purview of Rule 26.2 and T.C.A. § 40-17-120 two weeks in advan
of the trial date.

Respectfully Submitted,

Jon Hall - Defendant

SWORN TO ME THIS THE ___8___ DAY OF _Febuary_____ 1996.

NOTARY PUBLIC _Howard Wayne Brandon_

MY COMMISSION EXPIRES___My Commission Expires JULY 24, 1999___

CARTHEL L. SMITH, ATTORNEY AT LAW
85 East Church
Lexington, Tennessee 38351
(901) 968-2561

HONORABLE WHIT LAFON
CIRCUIT COURT JUDGE
HENDERSON COUNTY
LEXINGTON TN 38351

APPOINTED ATTORNEY FOR
DEFENDANT, JON HALL

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true and exact copy of the foregoing
Motion to Jim Thompson, Assistant District Attorney, P. O. Box 2825, Jackson,
Tennessee 38302, this 19th day of _Feb_ 1996.

MR JON HALL #083841
RMSI 7475 COCKRILL BEND IND RD
NASHVILLE TN 37209-1010

DF-MOT 13                                    3.

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

```
STATE OF TENNESSEE,        )
                           )
        Plaintiff,         )
                           )
VS.                        )      NO. 94-342
                           )
JON HALL,                  )
                           )
        Defendant.         )
```

FILED
KENNY CARGESS - CIRCUIT CT. CLERK

MAR 0 7 1996

BY _____
      DEPUTY CLERK

---

MOTION TO TRANSFER TO MADISON COUNTY PENAL FARM

---

Comes the Defendant, JON HALL, by and through his attorneys of record, Jesse H. Ford, III and Clayton F. Mayo, and hereby moves this Honorable Court to transfer Defendant from Riverbend Maximum Security Institution in Nashville, Tennessee, to the Madison County Penal Farm for the following reasons:

1.    That Defendant has been charged with First Degree murder and notice has been entered by the District Attorney General's Office seeking the Death Penalty;

2.    That Attorneys for Defendant have just been recently appointed to this case and Attorneys most definitely need to spend time meeting with Defendant regarding this case;

3.    That Attorneys feel that they will be not be able to competently and adequately prepare for this case with Defendant being incarcerated such a far distance away from Attorneys;

4.    That Attorneys for Defendant and Defendant believe that this would be in everyone's best interest;

5.    That Defendant is a pretrial detainee but is being treated the same as if he has already been convicted and is subject to twenty-three (23) hour lockdown;

6.    That there is no reason regarding Defendant's conduct as to why he should be in lockdown for twenty-three hours a day and located such a far distance from his attorneys.

BASED UPON THE FOREGOING REASONS, Attorneys for Defendant, Jesse H. Ford, III and Clayton F. Mayo, and Defendant, JON HALL, respectfully request that this Honorable Court transfer Defendant from the Riverbend Maximum Security Institution and the Department

of Corrections' custody to the Madison County Penal Farm to
facilitate the attorney/client relationship.

DATED this the 6th day of March, 1996.

Respectfully submitted,

_____
JESSE H. FORD, III, #00119775
Appointed Attorney for Defendant
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN 38302-1625
(901) 422-1375


_____
CLAYTON F. MAYO, #014138
Appointed Attorney for Defendant
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN 38302-1625
(901) 422-1375


CERTIFICATE OF SERVICE

I hereby certify that I have either mailed or personally
delivered a true copy of the foregoing to Mr. James Thompson,
Assistant District Attorney, P.O. Box 2825, Jackson, TN 38302,
this the 6th day of March, 1996.

_____
JESSE H. FORD, III


_____
CLAYTON F. MAYO

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE,           )
                              )
        Plaintiff,            )
                              )
VS.                           )    NO. 94-342
                              )
JON HALL,                     )
                              )
        Defendant.            )

FILED
KENNY CARNESS - CIRCUIT CT. CLRK.
MAR 0 7 1996
BY
DEPUTY CLERK

---

MOTION

---

Comes your defendant, JON HALL, by and through his attorneys of record, Jesse H. Ford, III and Clayton F. Mayo, and hereby moves this Honorable Court to allow Attorneys to be considered included in all motions in this case that have been previously filed by Defendant's prior attorneys.

DATED this the _____ day of _March_____, 1996.

                        Respectfully submitted,


                        _____
                        JESSE H. FORD, III, #0011977
                        Appointed Attorney for Defendant
                        618 N. Highland Avenue
                        P.O. Box 1625
                        Jackson, TN  38302-1625
                        (901) 422-1375


                        _____
                        CLAYTON F. MAYO #014138
                        Appointed Attorney for Defendant
                        618 N. Highland Avenue
                        P.O. Box 1625
                        Jackson, TN  38302-1625
                        (901) 422-1375


CERTIFICATE OF SERVICE

I hereby certify that I have either mailed or personally delivered a true copy of the foregoing to Mr. James Thompson, Assistant District Attorney, P.O. Box 2825, Jackson, TN  38302, this the _____ day of _____, 1996.


                        _____
                        JESSE H. FORD, III


                        _____
                        CLAYTON F. MAYO

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE,                )
                                   )
        Plaintiff,                 )
                                   )
VS.                                )    NO. 94-342
                                   )
JON HALL,                          )
                                   )
        Defendant.                 )

FILED
KENNY CAVINESS - CIRCUIT CT. CLERK.
MAR 0 7 1996
BY _____
DEPUTY CLERK

---

ORDER

---

This cause came to be heard this the _____ day of

_____, 1996, before the Honorable Whit LaFon, Circuit

Court Judge, upon Motion of Defendant, and it appearing to the

Court that said Motion is good, and,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that

Defendant's attorneys, Jesse H. Ford, III and Clayton F. Mayo, be

considered included in all motions in this case that have been

previously filed by Defendant's prior attorneys.

ENTER this the 11 day of March, 1996.

_____
HONORABLE WHIT LAFON
Circuit Court Judge

APPROVED FOR ENTRY:

_____
JESSE H. FORD, III
Attorney for Defendant

_____
CLAYTON F. MAYO
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that I have either mailed or personally
delivered a true copy of the foregoing to Mr. James Thompson,
Assistant District Attorney, P.O. Box 2825, Jackson, Tennessee
38302, this the 6th day of March, 1996.

_____
JESSE H. FORD, III

_____
CLAYTON F. MAYO

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE,          )
                             )
       Plaintiff,            )
                             )
VS.                          )    NO. 94-342
                             )
JON HALL,                    )
                             )
       Defendant.            )

FILED
KENNY CYPRESS - CIRCUIT CT. CLERK

APR 27 1996

BY_____
       DEPUTY CLERK

---

ORDER

---

This cause came to be heard the 9th day of April, 1996, before
the Honorable Whit LaFon, Circuit Court Judge, and it appearing to
the Court that Defendant, JON HALL, by and through his attorneys of
record, Jesse H. Ford, III and Clayton F. Mayo, filed a Motion to
Transfer Defendant from Riverbend Maximum Security Institute in
Nashville, Tennessee, to the Madison County Jail or the Madison
County Penal Farm, and it appearing to the Court that the Madison
County Jail and the Madison County Penal Farm are full and all
isolation cells are additionally full because of juvenile transfer
defendants and HIV positive defendants, and it further appearing to
the Court that Defendant and his attorneys need time to communicate
with each other, and,

     IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that:

     1.    That Defendant, JON HALL, is incarcerated at Riverbend
Maximum Security Institute, in Nashville, Tennessee;

     2.    That in the event a local isolation cell becomes
available at the Madison County Jail or the Madison County Penal
Farm or within this district, such as Chester County Jail or
McNairy County Jail, JON HALL shall be put on a list so as to put
him in line for one of these isolation cells so his attorneys and
he can communicate with each other more effectively;

     3.    That this matter may be reviewed again as the trial date
approaches;

     4.    That Attorneys, Jesse H. Ford, III and Clayton F. Mayo,
shall have unlimited travel time to communicate with Defendant at
Riverbend Maximum Security Institute in order to competently and

effectively represent Defendant JON HALL in this matter.

ENTER this the 3 ²day of _____ April _____, 1996.

_____
HONORABLE WHIT LAFON
Circuit Court Judge

APPROVED FOR ENTRY:

_____
CLAYTON F. MAYO
Attorney for JON HALL

_____
JESSE H. FORD, III
Attorney for JON HALL

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. 94-342 |
| | ) | |
| JON HALL, | ) | |
| | ) | |
| Defendant. | ) | |

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK.

MAY 0 7 1996

BY_____
DEPUTY CLERK

---

MOTION FOR PRIOR AUTHORIZATION FOR PAYMENT OF COSTS
FOR COPY OF TRANSCRIPT

---

Comes your defendant, JON HALL, by and through his attorneys of record, Clayton F. Mayo and Jesse H. Ford, III, and hereby move this Honorable Court to grant an Order for prior authorization for payment of costs for a copy of the transcript from Defendant's Motions hearing in the above referenced matter for the following reasons:

1.  That the above named Defendant is indigent;

2.  That Attorneys need a copy of the transcript from the above referenced Motions hearing to prepare for the trial in the above captioned matter;

3.  That this request is necessary in the adequate and competent representation of the above named defendant.

Therefore, Attorneys Clayton F. Mayo and Jesse H. Ford, III request prior authorization for payment of costs for a copy of the transcript from Defendant's Motions hearing in the above referenced matter.

DATED this the 3rd day of May, 1996.

Respectfully submitted,

CLAYTON F. MAYO, BPR# 014138
Attorney for Defendant
613 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

JESSE H. FORD, III BPR# 009775
Attorney for Defendant
613 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served on Mr. Al Earls, Assistant District Attorney, P.O. Box 2825, Jackson, TN 38302, by mailing the same with sufficient postage, to insure proper delivery this the ____ day of _____, 1996.

_____
CLAYTON F. MAYO

_____
JESSE H. FORD, III

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE,     )
                )
    Plaintiff,    )
VS.              )    NO. 94-342
                )
JON HALL,        )
                )
    Defendant.   )

FILED
KENNY CAYNESS - CIRCUIT CT. CLERK

MAY 1 1 1996

BY_____
DEPUTY CLERK

---

ORDER

---

This cause came to be heard this the ____ day of _____,
1996, before the Honorable Whit LaFon, Circuit Court Judge, and it
appearing to the Court that Attorneys Clayton F. Mayo and Jesse H.
Ford, III need a copy of the transcript from Defendant's Motions
hearing in the above captioned matter in order to prepare for
Defendant's trial,

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Attorneys
Clayton F. Mayo and Jesse H. Ford, III are granted prior
authorization for payment of costs for a copy of the transcript
from Defendant's Motions hearing in the above referenced matter.

ENTER this the _8_ day of _____ , 1996.

_____
HONORABLE WHIT LAFON
Circuit Court Judge

APPROVED FOR ENTRY:

_____
CLAYTON F. MAYO
Attorney for Defendant

_____
JESSE H. FORD, III
Attorney for Defendant

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE,                )
                                   )
        Plaintiff,                 )
                                   )
VS.                                )    NO. 94-364
                                   )
JON HALL,                          )
                                   )
        Defendant.                 )

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK
JUL 0 1 1996
BY _____
        DEPUTY CLERK

---

EX PARTE ORDER APPROVING EMPLOYMENT OF
MITIGATION SPECIALIST

---

This cause came to be heard this the _____ day of
_____, 1996, before the Honorable Whit LaFon, Circuit
Court Judge, upon the Ex-Parte Motion of the Defendant, Jon Hall,
for the authorization to employ a mitigation specialist at State
expense to assist defense counsel in the preparation of this case.
The Court finds that the motion is well taken and should be
granted.

IT IS, THEREFORE ORDERED that Defense Counsel is authorized to
employ Glori J. Shettles of Inquisitor, Inc., Memphis, Tennessee,
to perform a mitigation investigation in this matter, at the rate
of $55.00 per hour and incidental expenses to be billed at the
current approved Tennessee State Government rate.

IT IS FURTHER ORDERED that said investigator is authorized to
perform up to 100 to 200 hours of work on this case, at which time
he shall report to Defense Counsel concerning his progress.
Defense Counsel shall then report to the Court before any further
work may be performed.

ENTER this the 27 day of _____June_____, 1996.

_____
HONORABLE WHIT LAFON
Circuit Court Judge

APPROVED FOR ENTRY:

_____
CLAYTON F. MAYO
Attorney for Jon Hall

_____
JESSE H. FORD, III
Attorney for Jon Hall

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

FILED
KENNY CAVNESS - CIRCUIT CT. CLI
JUL 1 3 1996
BY_____
DEPUTY CLERK

STATE OF TENNESSEE,          )
                             )
        Plaintiff,           )
                             )
VS.                          )    NO. 94-364
                             )
JON HALL,                    )
                             )
        Defendant.           )

_____

EX PARTE MOTION FOR FURTHER INVESTIGATION SERVICES

_____

Comes your Defendant, JON HALL, by and through his attorneys

of record, Clayton F. Mayo and Jesse H. Ford, III, and respectfully

requests this Honorable Court to grant his private investigator,

Tammy Askew of Candid Investigations, an additional Fifty hours

(50) at the rate of Forty dollars ($40.00) per hour to complete her

investigation in Defendant's First Degree Murder case, of which the

State is seeking the death penalty.

        DATED this the 27th day of June, 1996.

                              Respectfully submitted,


                              _____
                              CLAYTON F. MAYO, 014138
                              Appointed Attorney for Defendant
                              618 N. Highland Avenue
                              P.O. Box 1625
                              Jackson, TN  38302-1625
                              (901) 422-1375


                              _____
                              JESSE H. FORD, III
                              Appointed Attorney for Defendant
                              618 N. Highland Avenue
                              P.O. Box 1625
                              Jackson, TN  38302-1625
                              (901) 422-1375

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE,           )
                              )                    FILED
     Plaintiff,               )           KENNY CAVNESS - CIRCUIT CT. CLRK.
                              )
                              )              JUL 1 3 1996
VS.                           )   NO. 94-364
                              )           BY_____
JON HALL,                     )              DEPUTY CLEAK
                              )
     Defendant.               )

EX PARTE ORDER FOR FURTHER INVESTIGATION SERVICES

     This cause came to be heard the ____ day of _____,
1996, before the Honorable Whit LaFon, Circuit Court Judge, and it
appearing to the Court that Defendant and his attorneys in the
above referenced case are in need of further funds for private
investigation services, and it further appearing to the Court that
the above referenced case is a capital murder case in which the
State is seeking the death penalty, and it further appearing to the
Court that such services are necessary, and,

     IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that
Defendant's private investigator, Tammy Askew, be granted an
additional fifty (50) hours at Forty dollars ($40.00) per hour from
the State of Tennessee Indigent Defense Fund for the purposes of
investigating the above referenced matter.

     ENTER this the 8 day of _____, 1996.

                              _____
                              HONORABLE WHIT LAFON
                              Circuit Judge

APPROVED FOR ENTRY:

_____
CLAYTON F. MAYO
Attorney for Defendant

_____
JESSE H. FORD, III
Attorney for Defendant

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

STATE OF TENNESSEE,           )
                              )
    Plaintiff,                )                    FILED
                              )              KENNY CAVNESS - CIRCUIT CT. CLERK,
VS.                           )   NO. 94-364        JUN 1 3 1996
                              )              BY_____
JON HALL,                     )                 DEPUTY CLERK
                              )
    Defendant.                )

---

## AFFIDAVIT

---

I, Tammy Askew, do depose and state as follows:

1.   That I am a licensed private investigator;

2.   That I have been approved and appointed by this Honorable
Court as the Private Investigator for Jon Hall to assist defense
counsel in the preparation of this case;

3.   That an Order Approving Employment of Private
Investigator was entered with this Court on June 29, 1995,
authorizing me to perform up to fifty (50) hours of investigative
work at the rate of Forty dollars and 00/100 ($40.00) per hour;

4.   That I have completely utilized the entire 50 hours
allowed by the Court;

5.   That I have contacted the office of Attorney Clayton F.
Mayo and made his office aware that I am in need of additional time
in order to complete my investigation;

6.   That there are several more witnesses that need to be
interviewed;

7.   That in addition to completing the investigation, I am in
need of more time to competently and adequately prepare my final
report prior to Defendant's trial.

DATED this the 27 day of _____June_____, 1996.

_____
TAMMY ASKEW
Private Investigator

Sworn to and subscribed before me this the 27th day of
_____June_____, 1996.

_____
NOTARY PUBLIC

My Commission Expires: 10/18/99

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

HENDERSON COUNTY, AT LEXINGTON TENNESSEE

DIVISION I

JON HALL                              )                              FILED
                                      )             KENNY CAVNESS - CIRCUIT CT. CLERK.
V.                                    )     CRIM. NO. 94-342, 94-452, 94-454    AUG 1 5 1996
                                      )                              BY
STATE OF TENNESSEE                    )                              DEPUTY CLERK

---

NOTICE OF MOTIONS

---

Please take notice, that the undersigned will bring the below mentioned motions, for a hearing before the Circuit Court, Judge, Whit S. Lafon, at Court Room _____, _____, County Tennessee, on the ____ day of _____ 1996, at ___:___ O'clock _____ or as soon thereafter as defense can be heard.

[1] DF-MOT # 2. Motion to appoint Jon Hall, as co-counsel.

[2] DF-MOT # 3. Request for Discovery and / or Inspection.

[3] DF-MOT # 4. Motion to Suppress, Revised 7/2/96.

[4] DF-MOT # 6. Motion to Dismiss and Abate all supra Indictments, Pursuant to Waugh V. State, 564 S.W.2d 654 / [Argument in Support]

[5] Motion to Exclude Indictment before Veniresmen.

[6] DF-MOT # 8. Motions to Exclude Exhibits from Jury Deliberations.

[7] DF-MOT # 13. Motion for Early Production of Witnesses' Statement

[8] DF-MOT # 14. Motion for Accurate Transcripts / Recording of Prior Proceedings, (Review of Recordings).

[9] DF-MOT # 15. Motion for State Court / Consider Habeas Corpus Relief

[10] DF-MOT # 16. Motion for Fair & Speedy Trial / Untried Indictments

[11] DF-MOT # 17. Writ of Certiorari / Bind-Over Proceedings.

Wherefore, Defendant's legally viable motions, can be heard, & placed on the record for the preservation of my constitutional rights, to be sent to the Criminal Court of Appeals, P.O. Box 909, Jackson, Tennessee 38302, along with my Petition.

Respectfully Submitted,

Jon Hall

Jon Hall # 238941

R.M.S.I. COCKRILL BEND IND. RD.

Nashville Tennessee 37209-1010

---

CERTIFICATE OF SERVICE

I ___Jon Hall___, hereby certify that I have mailed a copy of the foregoing notice, for the previously filed motions, to the D.A. office at P.O. Box 2825, Jackson, Tennessee 38302. This the 15 day Aug 1996.

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK.

AUG 2 2 1996

BY____DEPUTY CLERK

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

JON HALL                              )
                                      )
v.                                    )        No. 94-342
                                      )            94-452
STATE OF TENNESSEE                    )            94-454

                      STATE'S RESPONSE

    Comes now the State of Tennessee by and through the office
of the District Attorney General and in response to the above
styled notice of motions states:

    1.   The "Notice of Motions" is not a motion, no does it
         state any factual basis for any colorable claim.

    2.   The Court has previously overruled those motions listed
         in the defendant's "Notice of Motions."

    3.   The State's response will be to legitimate motions by
         defense counsel and not the defendant.

                         Respectfully submitted:

                         _____
                         ASSISTANT DISTRICT ATTORNEY
                         26TH JUDICIAL DISTRICT

                   Certificate of Service

    I hereby certify that I have mailed or delivered a true copy
of the foregoing to Mr. Jay Ford, Attorney at Law, 618 N.
Highland Ave., Jackson, TN 38301, this the _20_ day of August,
1996.

                         _____
                         ASSISTANT DISTRICT ATTORNEY
                         26th JUDICIAL DISTRICT

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE
DIVISION I

FILED
KENNY CAVNESS - CIRCUIT CT, CL

AUG 2 9 1996

BY_____
     DEPUTY CLERK

STATE OF TENNESSEE,           )
                              )
          Plaintiff,          )
                              )
VS.                           )    NO. 94-342
                              )
JON HALL,                     )
                              )
          Defendant.          )

---

### MOTION TO HAVE DEFENDANT TRANSFERRED
### TO MADISON COUNTY PENAL FARM OR MADISON COUNTY JAIL

---

Comes the Defendant, JON HALL, by and through his attorneys of record, Clayton F. Mayo and Jesse H. Ford, III, and hereby moves this Honorable Court to transfer Defendant from Riverbend Maximum Security Institution in Nashville, Tennessee, to the Madison County Jail or the Madison County Penal Farm for the following reasons:

1.    That Defendant has been charged with First Degree murder and notice has been entered by the District Attorney General's Office seeking the Death Penalty;

2.    That a trial date in this matter has been scheduled for October 15, 1996;

3.    That Attorneys work in Jackson, Tennessee, and Defendant is incarcerated in Nashville, Tennessee;

4.    That Attorneys must take an entire day from their schedule for their meetings with Defendant, of which approximately five (5) hours of work are being spent driving to and from Riverbend;

5.    That Attorneys feel they will be not be able to competently and adequately prepare for this case with Defendant being incarcerated such a far distance away from Attorneys;

6.    That Attorneys feel that in order to prepare a competent and adequate defense, Defendant should be brought to Madison County at least one month prior to trial.

BASED UPON THE FOREGOING REASONS, Attorneys for Defendant, Clayton F. Mayo ad Jesse H. Ford, III, and Defendant, JON HALL, respectfully request that this Honorable Court transfer Defendant from the Riverbend Maximum Security Institution and the Department

of Corrections' custody to the Madison County Jail or the Madison
County Penal Farm at least one month prior to trial in order to
prepare a competent and adequate defense for the trial in this
matter scheduled for October 15, 1996.

DATED this the ___ day of _____, 1996.

Respectfully submitted,

CLAYTON F. MAYO, #014138
Appointed Attorney for Defendant
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

JESSE H. FORD, III, #00119775
Appointed Attorney for Defendant
618 N. Highland Avenue
P.O. Box 1625
Jackson, TN  38302-1625
(901) 422-1375

CERTIFICATE OF SERVICE

I hereby certify that I have either mailed or personally
delivered a true copy of the foregoing to Mr. Al Earls, Assistant
District Attorney, P.O. Box 2825, Jackson, TN 38302, this the ___
day of _____, 1996.

CLAYTON F. MAYO

JESSE H. FORD, III

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

HENDERSON COUNTY AT LEXINGTON, TENNESSEE

DIVISION I

JON HALL                           )
                                   )
                                   )
V.                                 )    DOCKET NO. 94-342, 94-452, 94-452
                                   )
                                   )
STATE OF TENNESSEE                 )

FILED
KENNY CAVNESS - CIRCUIT CT. CLRK

AUG 3 0 1996

BY_____
DEPUTY CLERK

---

### MOTION FOR DEFENDANT'S PRESENCE DURING ALL PROCEEDINGS HELD

---

Comes now the defendant, Jon Hall, pursuant to Rule # 10 (a) of the Tennessee Rules of Criminal Procedure to be present during all of the criminal proceedings to be had in this matter. The defendant would further like to stipulate that He will be present during any and all competency hearings pursuant to State v. Suttles, 767 S.W.2d 403, for any and all Witnesses, scheduled to testify for the State.

Respectfully submitted,

Jon Hall

Sworn and subscribed before me this the 27 day of August 1996.
Notary Public Herbert Wayne Brandon
My commission expires _____ My Commission Expires JULY 24, 1999

---

### CERTIFICATE OF SERVICE

I Jon Hall , hereby certify that I have mailed a true, and exactt copy of the foregoing motion to Jim Thompson, Assistant, Distrct, Attorney, P.O. Box 2825, Jackson Tennessee 38302, this the 28 day of Aug 1996.

IN THE CIRCUIT COURT OF HENDERSON COUNTY, TENNESSEE

STATE OF TENNESSEE,                    )
                                       )                                    FILED
VS.                                    )        No. 94-342; 94-452    KENNY CAVINESS - CIRCUIT CT. CLK
                                       )           and 94-454             SEP 1 2 1996
JON HALL,                              )
                                       )                              BY_____
                                                                         DEPUTY CLERK

_____

        MOTION TO RENEW MOTION FOR CHANGE OF VENUE
_____

        Comes  now  the  Defendant,  Jon  Hall,  by  and  through  his
attorneys of record, Jesse H. Ford, III and Clayton F. Mayo, and
renews  the  motion  previously  filed  herein  for  change  of  venue
pursuant to Rule 21 of the Tennessee Rules of Criminal Procedure as
follows:

        1.    That the Defendant hereby renews his previous Motion for
Change of Venue which was filed in the above matter which basically
sets forth grounds for change of venue from another county within
this judicial district due to prejudicial publicity the Defendant
has received in Henderson County, Tennessee.

        2.    The Defendant hereby incorporates herein by reference
those allegations which were set forth in the original motion.

        Based on the foregoing, the Defendant, pursuant to Rule 21 of
the  Tennessee  Rules  of  Criminal  Procedure,  would  move  this
Honorable Court for a change of venue to another county within this
judicial district.

        Dated, this the 3rd day of September, 1996.

                                Respectfully submitted,


                                _____
                                JESSE H. FORD, III  009775
                                Attorney for Defendant
                                P. O. Box 1625
                                Jackson, TN  38302-1625
                                (901) 422-1375


                    CERTIFICATE OF SERVICE

        I hereby certify that a true and exact copy of the foregoing
was served on Mr. Al Earls, Assistant District Attorney, P. O. Box
2825, Jackson, Tennessee 38302 by mailing the same with sufficient
postage to insure proper delivery this the 3rd day of September,
1996.


                                _____
                                JESSE A. FORD, III