02301-9805-CC-00048

1   IN THE CRIMINAL COURT OF MADISON COUNTY, TENNESSEE

2   AT JACKSON, DIVISION I

3

4   STATE OF TENNESSEE

5

6   VS.                    No. 96-589

7

8   JON DOUGLAS HALL

9

10  _____

11  **TRANSCRIPT OF EVIDENCE**

12  **FEBRUARY 3, 1997**

13  **VOLUME I**

14  **JURY SELECTION**

15  _____

16

17

18

19

20

21  **AMY MAYS**

22  **OFFICIAL COURT REPORTER**

23  **MADISON COUNTY COURTHOUSE - THIRD FLOOR**

24  **JACKSON, TENNESSEE  38301**

25  **(901)423-6039**

1

FILED
JUN 2 ? 1997
JOE GAFFNEY, CIRCUIT COURT CLERK
A.M. DEPUTY CLERK

FILED
AUG 0 7 1997
Clerk of the Courts
Rec'd By



```
 1                    APPEARANCES

 2          Before the Honorable WHIT LAFON, Judge

 3   For the State:

 4          MR. JERRY WOODALL

 5          MR. AL EARLS

 6          District Attorney General's Office

 7          Lowell Thomas State Office Building

 8          Jackson, Tennessee  38301

 9   For the Defendant:

10          MR. JESSE HILL FORD, III

11          MR. CLAYTON F. MAYO

12          Ford & Mayo

13          618 North Highland

14          Jackson, Tennessee  38301

15                    * * * * *

16

17

18

19

20

21

22

23

24

25
```

1    IN THE CRIMINAL COURT OF MADISON COUNTY, TENNESSEE

2               AT JACKSON, DIVISION I

3

4    **STATE OF TENNESSEE**

5

6    **VS.**                   **No. 96-589**

7

8    **JON DOUGLAS HALL**

9    _____

10          This case came on to be heard and was heard

11    on the 3rd, 4th and 5th days of February, 1997, before

12    the Honorable Whit LaFon, Judge, and a jury of twelve

13    and three alternates.

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Ladies and gentlemen, this is a

2    case wherein the jury will be -- the word we use is

3    sequestered.  If you want to make it plain where

4    everybody can understand it, it means you're locked up

5    overnight.  Now if there's any one of you who will have

6    an undue hardship -- the fact that I anticipate this

7    case will last a maximum of four days and probably just

8    three, which will be locked up two nights.  So now if

9    you will, if any one of you have an undue hardship that

10   you feel like that you should not serve due to the fact

11   that you may have a sick person that you have to stay

12   with at night or something of that sort, if you will,

13   you just line up there at the rail.  I'm going to let

14   you come around like you did whenever I excused people

15   that had hardships when we started off.  Now I hope

16   you'll keep this to a minimum, but I'm at least going

17   to give you the opportunity.

18          All right, sir, you can come around.

19          **(Seven jurors were excused by the Court**

20          **without objection from the State or**

21          **the Defendant.)**

22          THE COURT:  All right, ladies and gentlemen,

23   let's -- the lawyers have advised me that something has

24   come up that they need to confer with me, that came up

25   this morning, and we're going to have to go the jury

4

1   room.  If you'll just be at ease.

2           **(There was a pre-trial conference**

3           **heard in the jury room, out of the**

4           **hearing and presence of the jury,**

5           **as follows:)**

6           THE COURT:  All right, I believe there's

7   something that has come up, Mr. Ford, that you or Mr.

8   Mayo wish to bring to the Court.

9           MR. FORD:  Yes, sir, Your Honor.  Mr. Hall

10  has a concern about a statement that he had made to one

11  of the TBI investigators, Brian Byrd.  Mr. Hall has

12  been asking that we suppress that statement.  We have

13  discussed this matter with General Woodall.  He does

14  not intend to use that statement.  I'm not going to

15  speak for him as to why, but I can speculate the

16  statement is self-serving and the Attorney General does

17  not wish to use that.  I have stated to Mr. Hall that

18  in that event, there's no need to have a separate

19  hearing on that, and if it comes up to the point that

20  it's going to be used, at that time we can stop the

21  trial and have that particular issue addressed to the

22  Court.

23          THE COURT:  Well if it starts coming in, you

24  make your objection and we'll take it up then.

25          All right, Mr. Hall, do you have any ...

1          THE DEFENDANT:  Yes, sir.  It was already

2    used, it was already publicized, and it's going to be

3    put on the record.  It's going to be argued.  There was

4    a coercion factor involved, and --

5          THE COURT:  Well, Mr. --

6          THE DEFENDANT:  -- TBI Agent Byrd was

7    impeached on the stand and they failed to impeach him.

8          THE COURT:  All right, Mr. Hall, I've been

9    assured here it's not going to be used.  So what's in

10   the newspaper such as -- I understand you maybe gave an

11   interview or something of those kind of things.  I

12   would assume if you did that you said things favorable.

13   That will not be used, as I understand it.

14          Is that right, General?

15          MR. WOODALL:  I don't intend to --

16          THE DEFENDANT:  He edited most of the

17   mitigation that I explained --

18          THE COURT:  Mr. Hall, --

19          THE DEFENDANT:  All he wanted to do was write

20   trash.  That was a trash article.

21          THE COURT:  Mr. Hall, that's what happens any

22   time you talk to a newspaper.  I've had that happen to

23   me, but that's just part of the situation.

24          Now let me say this to you, too, now.  We had

25   -- I had two lawyers that you weren't satisfied with

6

1    and we changed those, and two more and we changed

2    those.  We have now Mr. Ford and Mr. Mayo, and when

3    we're out here in the court, if you wish to say

4    anything, you say it to your lawyer.  You're not to

5    make any statements in court.  Now in the event -- I

6    hope we have no problem at all, but in the event that

7    you don't behave yourself, conceivably you can be

8    removed from the room or gagged.  I don't want to have

9    to do that, but I want to warn you now that any

10   statements on your behalf that you wish to have said,

11   you confer with your lawyers, you'll have time, and let

12   them say it.  But now, you're not to be making

13   statements, because if you do I'll deal with you.  You

14   understand?

15           THE DEFENDANT:  Yes, sir.  I'm not trying to

16   disrupt the court, but I can't understand why we're

17   holding this hearing in Madison County when I was

18   charged in Lexington.

19           THE COURT:  Well your lawyers asked that a

20   venue be changed due to the fact of the publicity such

21   as --

22           THE DEFENDANT:  Well not --

23           THE COURT:  Just a minute.  Such as the thing

24   as the statement that you made which was given much

25   more publicity up there, and so if you note your

7

1    objection to the change of venue, I assume that's what

2    you're doing, and asking your lawyers, and I'll

3    overrule that motion.

4              Now is there anything else?

5              MR. FORD:  One other thing, Your Honor

6    please.  The Attorney General had extended an offer to

7    Mr. Hall which he rejected, and I want to place that on

8    the record.

9              MR. WOODALL:  He needs to be put under oath.

10             MR. FORD:  Right.

11             THE COURT:  Raise your right hand, Mr. Hall.

12   Do you swear if you're asked questions to tell the

13   truth?

14             THE DEFENDANT:  I'm not testifying, Your

15   Honor.

16             THE COURT:  Well, if you give a question, do

17   you swear you'll tell the truth -- if you answer a

18   question?

19             THE DEFENDANT:  I'm bound by the Lord to tell

20   the truth.

21             THE COURT:  All right, go ahead.

22             MR. FORD:  Mr. Hall, did we, Mr. Mayo and I,

23   tell you that the Attorney General had extended an

24   offer in this case to you?  Life with the possibility

25   of parole?

8

```
1              THE DEFENDANT:  I told you that he was --
2              THE COURT:  Just a minute now, Mr. Hall.
3    Answer the question.  Did they tell you that?
4              THE DEFENDANT:  Yes, sir, they did.
5              MR. FORD:  And did you reject that offer?
6              THE DEFENDANT:  Why should I accept a first
7    degree guilt whenever there was no premeditation in
8    this?
9              THE COURT:  Mr. Hall, the question is, did
10   you reject -- did you refuse that?
11             THE DEFENDANT:  Yes, sir, Your Honor.
12             MR. FORD:  That's all.
13             THE COURT:  I'm going to ask general
14   questions.  This is what I have in mind.  I want to be
15   sure that you people agree.  And then when these people
16   get back here on the death penalty, he is to be back
17   here, too.
18             MR. FORD:  Yes, sir.
19             THE COURT:  But I'm going to make a general
20   voir dire, and I'm going to call out about 35 names.
21   I'm going to put 12 in the jury box, and I'm going to
22   go ahead, and then we'll ask any question we wish
23   except for the death penalty, and I will not require
24   you to take -- you'll not have to take your preemptory
25   challenges until we get through with the death penalty.
```

9

```
 1            MR. FORD:  All right, sir.  Judge, we would
 2   also ask that we be allowed to question them in private
 3   about domestic problems, domestic violence, and things
 4   of that nature so that that doesn't have to be exposed
 5   in front of the entire venire.  Those are pretty
 6   sensitive questions, and of course, this case involves
 7   domestic -- and if they've been divorced, that kind of
 8   thing.  We think that that's relevant, and we would ask
 9   that we be allowed to explore that on the individual
10   voir dire.
11            MR. WOODALL:  I don't disagree with that.  I
12   think it would be appropriate if the Court would allow
13   individual voir dire on the death penalty, upon pre-
14   trial publicity and the domestic issue.
15            And also, Your Honor, it's my understanding
16   that Mr. Hall has filed some type of pro se motion this
17   morning.  I think that needs to be put into the record.
18            MR. FORD:  Did he file it?  I don't know if
19   he filed it.
20            THE DEFENDANT:  I just want my attorney to
21   argue the suppression motion, and if he's acting as
22   lead counsel, he's supposed to preserve my issues.  If
23   he doesn't want to preserve my issues, then I don't
24   feel comfortable with him.
25            THE COURT:  Well, Mr. Hall, what they have
```

1    stated now, this statement that you're speaking of, the

2    District Attorney has agreed it will not be used.  That

3    means it will be suppressed.  So there's no point of --

4         THE DEFENDANT:  So then you've ruled in my

5    favor.

6         THE COURT:  Yes, that's right.

7         THE DEFENDANT:  Thank you.

8         THE COURT:  Anything else?

9         MR. FORD:  Not that I know of.

10         MR. MAYO:  Your Honor, one more thing,

11    please, sir.  If Your Honor is going to question on

12    pre-trial publicity, if Your Honor would ask -- and I'm

13    sure you are -- but if you would ask about the article

14    that came out this morning, if they read that.  It had

15    some references to a motion that Mr. Earls filed on

16    January 24th that was asking this Court for an order

17    preventing Mr. Hall from being allowed to correspond

18    with his family members because he had sent veiled

19    threats to them.  And that was in the paper this

20    morning.  I just want to make sure that those jurors

21    didn't read that.

22         THE COURT:  Well even if they read it, I'm

23    going to ask them if it affected them in any way.

24         MR. WOODALL:  If I may suggest this to the

25    Court, if we start getting into things like that in

11

1    front of this whole panel, we may contaminate this

2    whole panel.  I know it --

3              THE COURT:  I' going to ask them, General, --

4              THE DEFENDANT:  I believe it's too late for

5    that.

6              THE COURT:  I'm going to ask this question.

7    I'm going to say, "Now there's been some publicity in

8    this trial that I'm sure some of you may have read.  I

9    want to ask you if any one of you have read anything,

10   heard any testimony" -- not any testimony but "any

11   conversation from anyone who purported to know the

12   facts?"  Also, "If you have read anything in the paper,

13   including this morning, that would in any way interfere

14   with you being fair and impartial."  Then if you get

15   into it, I can't completely curb you people, so I'm

16   going to --

17             MR. WOODALL:  Well that may eliminate some.

18             THE COURT:  Then if you will -- What?

19             MR. WOODALL:  That may solve some of the

20   problems, but if they say, yes, they have read it, --

21             THE COURT:  This and that they formed an

22   opinion, well then we'll take their number and talk to

23   them in here.

24             MR. WOODALL:  Okay.

25             MR. EARLS:  Your Honor, could I suggest that

                                 12

1    until we get a jury selected, that the Court order the

2    jury panel not to read anymore papers?

3              THE COURT:  Listen, I've been preparing this

4    jury all this month, tell them not to be reading about

5    anything, tell them to read nothing.  The people that

6    have been in here have heard it.  I've heard it every

7    day.  I've said, "Now I don't want you to read anything

8    about it in the paper, including any cases that might

9    come up."

10              THE DEFENDANT:  Can I ask you what type of

11    veiled threat that they are accusing me of making

12    toward my family?

13              THE COURT:  What did he say?

14              MR. FORD:  What type of threat was made

15    toward his family?

16              THE COURT:  I don't know anything about that.

17    I don't know what your -- I don't know anything about

18    that.

19              THE DEFENDANT:  Okay.  Where did the

20    publicity -- See, there is so much false publicity

21    that's been printed, and even though that I tried to

22    straighten it out with the reporter, he still

23    publicized pretty strong.

24              THE COURT:  Mr. Hall, that's part of the

25    problem, you talking to reporters, because that gives

13

1   them an opportunity to --

2          THE DEFENDANT:  I tried to straighten out the

3   lies of the press that they'd already put out before.

4          THE COURT:  All right, let's go.

5          **(End of pre-trial conference out of**

6          **the hearing and presence of the jury**

7          **venire; in the presence and hearing of the**

8          **jury venire, the following proceedings**

9          **were had to-wit:)**

10         THE COURT:  We'll have 12 in the jury box,

11  and I'm going to have about 32, and basically we'll

12  clear the first two rows.  So if I call your name, the

13  first will be in the seat fartherest from me on the

14  back.  And when I call your name, I'm going to call you

15  a number.  So you keep in mind your number, because we

16  may use the number for some purpose.

17         Jennifer Flanagan, Mabel Crowe, John

18  Martindale.

19         Ms. Flanagan, you're Number 8.

20         Ms. Crowe, you're Number 7.

21         Mr. Martindale, you're 24.

22         Cecil Mayfield, 26.

23         Barbara Patterson, 35.

24         Marian Oliver, 34.

25         Elizabeth Haney.

1          MR. WOODALL:  Judge, you're going a little
2     bit faster than we can write.

3          THE COURT:  Well we'll go back over them.

4          Elizabeth Haney, 13.

5          Martha Rucker, 38.

6          James Walker, 50.

7          Billy Reeves, 37.

8          David Gibbons, 11

9          Caroline McKee, 27.

10         All right now, if you will, you folks on the
11    first row, let's move back.

12         James Matthews, Tom Wagster, Jack Collins,
13    Barbara Jarvis.

14         Disregard these numbers.  I can't keep up
15    with them, so I'm not going to ask y'all.

16         Barbara Jarvis, Linda Tubbs, Sherry Wright,
17    Judith Putnam, Donna Hammonds, Celia White, Daniel
18    Morris, Katie Maness.

19         All right, ladies and gentlemen, this is the
20    case of the State vs. Jon Douglas Hall.  He's charged
21    with murder in the first degree.  In a case of this
22    type, the jury, as I've stated, will be sequestered,
23    that is, they'll sleep with the county tonight and not
24    be able to go home.  We'll arrange for anybody's
25    clothing, anything that you need, anything of that

1    sort.

2             The trial in this case will occur in two

3    distinct phases.  The first phase will be limited to

4    the question of whether the State has proven beyond and

5    to the exclusion of every reasonable doubt the guilt of

6    the accused.  Should the accused be found guilty of the

7    capital felony described in the indictment, the second

8    phase addressed to the type of penalty the jury will

9    recommend to the Court will be held.  Although the

10   verdict of the penalty is advisory in nature and not

11   binding on the Court, the -- Disregard that.

12            The fact that you may have reservations about

13   or conscientious or religious objections to capital

14   punishment does not automatically disqualify you as a

15   juror in a capital case.  The primary or important --

16   is whether you can subordinate your personal philosophy

17   to your duty to abide to your oath as a juror, as a

18   jury, and follow the law as I give it to you.  If

19   you're willing to render a verdict that speaks the

20   truth as you find it to exist, even though such verdict

21   may lead to the imposition of the death penalty, you

22   are qualified to serve as jurors in this case.

23            If, however, you are possessed with such

24   strong opinions regarding capital punishment, no matter

25   what these opinions may be, that you could be prevented

1    from substantially -- from or substantially impaired in

2    the performance of your duties as a jury, you're not

3    qualified to serve as a juror.  It is up to each one of

4    you using the standard described to search your

5    conscious to determine whether or not you're in a

6    position to follow the law as I give it to you and to

7    render a verdict as evidence warrants.  Only by your

8    candor can either the accused or the State of Tennessee

9    be assured of having this extremely serious case

10   resolved by a fair and impartial juror.

11           Now as you know, ladies and gentlemen, you've

12   been on -- been serving in here as jurors for a month

13   now, and I want to commend you for your service to date

14   and want you to know I appreciate it, and I want to

15   remind you, as I've said before, that the charge itself

16   is immaterial to the jury as such.  It's merely your

17   duty to set as jurors, listen to the proof and

18   determine whether or not to your satisfaction that the

19   State has proved beyond a reasonable doubt this man's

20   guilty.  If not, then it's your duty to turn him loose.

21   It's the same thing as any of the other cases.  As I

22   say, you've all been in here and you've heard those.

23   All of you heard, for example, the treatment of

24   witnesses, how they're handled, and officers, for

25   example, their testimony is the same as others.

17

1    Everybody is presumed to tell the truth, but if you

2    decide they're not, then that's your job, and the mere

3    fact the person is an officer should have nothing to do

4    with how you handle this proof.  It's just another

5    witness.

6            Now, there's been some publicity in the paper

7    from time to time, and there was an article this

8    morning, for example, and I want to ask each one of the

9    members of the jury, and particularly the ones I've had

10   seated here, is there any one of you who read the paper

11   to the extent that it's caused you -- or heard any talk

12   about it or know anything about the case itself that

13   has caused you to form or express an opinion,

14   especially on the guilt or innocence of this man?

15           I've told you previously, of course, that --

16   and I've asked you not to be reading the paper, not to

17   be paying attention to the newspaper because we don't

18   try cases out of the newspaper.  That's just not the

19   way we do it.

20           Now again, I want the other ladies and

21   gentlemen who have not already been called on, I want

22   each one of you now, if you will, to play that game

23   we've been playing before.  You're sitting here

24   listening, and you're potential jurors, and if there's

25   anything that I say or these lawyers say that would

18

1    strike a nerve or turn a red light on or something, if

2    you come up here and I ask you people, "Ladies and

3    gentlemen, is there anything that's been said by any of

4    the lawyers that might prevent you from being fair and

5    impartial," then it's your absolute duty to report

6    that, and we'll consider what the situation is.

7         Now is there any member of this jury, the 12,

8    that any one of you have an opinion right now based on

9    what you're heard, if you've heard it, hopefully you

10   haven't heard it, that you could not be fair and

11   impartial?

12        I hope you understand, we don't try in

13   newspapers, and sometimes when -- Well, for example,

14   right now I've been talking to you people, and if I

15   asked one of you to write down what I've said, I'll

16   guarantee you it wouldn't be the same, and this is the

17   same situation you run into when you have newspaper

18   reporters that come and talk to you, and they edit what

19   you say, they say it in their own words, that kind of

20   thing.

21        All right, so -- And I might say also, ladies

22   and gentlemen, this happened in Lexington, and in an

23   effort to be sure that we are fair and impartial as it

24   could be, they asked and I transferred this case over

25   here to Jackson where there was less publicity.

1          So as I understand, none of you have any

2    problem about the publicity and haven't talked to

3    anybody or know anything about the cases and can be

4    fair and impartial.

5          Now what about the five on the first row?

6    Any one of you people the publicity contaminate you?

7    Any of you?

8          Ma'am, have you read something that might

9    interfere with you?

10         JUROR:  I work at the paper.

11         THE COURT:  Pardon?  Don't tell me what it is

12   now.

13         THE COURT'S SECRETARY:  She works at the

14   newspaper.

15         THE COURT:  Oh, you work at the newspaper.

16         Gentleman, do y'all have any problem with --

17   Let me see y'all.

18              **(There was a conference at the bench**

19              **out of the hearing of the jury venire**

20              **as follows:)**

21         THE COURT:  Do you have a problem?

22         MR. FORD:  No, sir.

23              **(End of conference at the bench.)**

24         THE COURT:  All right, ma'am, just to be

25   doubly sure, we're going to let you go.  Now hopefully

1    -- I'm going to get the others in just a minute.

2              MR. FORD:  Your Honor, what is her name?

3              THE COURT:  What is your name, please?

4              JUROR:  Judith Putnam.

5              THE COURT:  You, sir?

6              JUROR:  I work at the newspaper.

7              THE COURT:  The situation the same?

8              JUROR:  Yes, sir.

9              THE COURT:  Well I ain't going to be any

10   easier on her than you, so you can go, too.

11             MR. WOODALL:  What's his name?

12             JUROR:  Daniel Morris.

13             THE COURT:  Anyone else?

14             JUROR:  I work for the newspaper as well.

15             THE COURT:  All right, you can go, too.

16             And all of you have heard what we say about

17   the burden of proof.  You've heard about the fact

18   you're not to discuss this case with anyone and not let

19   anyone discuss it with you.

20             Do any one of you ladies and gentlemen, the

21   12 there, except for the death penalty -- we're going

22   to do that -- this is a careful situation.  You'll be

23   taken back -- You've heard what I said a few moments

24   ago, and we'll -- you'll be taken back and asked

25   questions to be sure.  But now with the exception of

21

1    that, do any one of you folks -- I could sit up here
2    and ask all day, and if I didn't hit the right
3    question, if they're playing games, it might not ever
4    be, but is there anything, anything that you know of,
5    that would prevent you from being fair and impartial,
6    except for the death penalty?
7           All right, what about you five on the first
8    row there?
9           All right, General Woodall.
10          MR. WOODALL:  Good morning, ladies and
11   gentlemen.  I've not been in this division this term of
12   court.  I'm Jerry Woodall, and I along with Al Earls
13   will be representing the State of Tennessee.
14          It's alleged by the State of Tennessee that
15   on or about the 29th day of July of 1994, that this
16   Defendant deliberately and premeditatedly went to the
17   home of his estranged wife, Billie Joe Hall, and
18   thereafter committed the offense of murder in the first
19   degree.  Now, the Court's already asked you if you'd
20   read or heard anything about this that would affect
21   you, and you have told him that you have not read or
22   heard anything about this case from anyone that
23   purports to know the truth, and if you have read or
24   heard something about it, can you promise the Court
25   that you'll set that aside and make any decision that

                              22

1    you make strictly upon the law and the evidence as

2    presented here and given to you by the Court?  So say

3    you all?

4           Now we certainly all know that we don't send

5    anybody to the penitentiary or to the electric chair

6    based on what we read in the Jackson Sun, don't we?

7    Okay.  I know I'd want to be treated that way and I

8    know you would, too.

9           You're experienced jurors, and how many of

10   this 12 have served on a criminal jury this term of

11   court?  Just about everybody, with the exception of the

12   young lady to the top left, and that being Ms.

13   Flanagan.

14          Am I pronouncing that correctly?

15          JUROR:  Yes.  I've been on jury duty before.

16          MR. WOODALL:  On a criminal jury?

17          JUROR:  Yes, sir.

18          MR. WOODALL:  And that's important because

19   there's a difference in the burden of proof.  The State

20   of Tennessee in a criminal action has to prove to your

21   mind beyond a reasonable doubt, to a moral certainty,

22   that the Defendant is, in fact, guilty of the offense

23   for which he's charged.  And it's your duty and your

24   obligation if you serve on this jury that the State

25   does not prove to your mind beyond a reasonable doubt

23

1    that this Defendant is guilty of the offense for which

2    he's charged, it's your duty to acquit him; is it not?

3    And would you do that?  Sure you would.  That's the way

4    you'd want to be treated, and so would I.

5           But now on the other side of this coin, if

6    the State of Tennessee proves to your mind beyond a

7    reasonable doubt to a moral certainty that this

8    Defendant is, in fact, guilty of the offense for which

9    he's charged, will you follow the law and instructions

10   given to you by the Court?  So say you all?  Okay.

11          What we're here for is to pick 12 people

12   along with the alternates that the Court chooses to

13   have in this case to listen to all the proof and then

14   render a verdict that truth dictates and justice

15   demands.  And will you help the Court in making this

16   determination?  So say you all?

17          THE COURT:  General, look at those 10 there,

18   too, on the front row there.

19          MR. WOODALL:  Thank you.

20          THE COURT:  Excuse me.  I just want y'all to

21   understand you're being questioned -- these questions

22   apply to you, too.  And if it in any degree might

23   affect you, we want to know about it.  We want this to

24   be fair and impartial.

25          Go ahead.

```
 1              MR. WOODALL:  Thank you, Your Honor.

 2              Now, as the Court has stated, this case will

 3    probably last two days, possibly go into the third.

 4    You've already told the Court that you'd rather be

 5    somewhere else but you'll stay with us and you'll give

 6    your full attention to this matter, and you have

 7    nothing else that would affect you that would be

 8    preying on your mind; is that correct?  You'd do that.

 9    All right.

10              Now, the State of Tennessee wants to read to

11    you a list of potential witnesses.  I'm not -- We'll

12    try to cut this list down as much as we can to avoid

13    duplication of effort, and we're just as interested in

14    being efficient as you are and us being efficient.  But

15    if you know any of these people, then we need to hear

16    from you, or any of the next group possibly does.

17              Did any of you know Billie Joe Hall during

18    her lifetime?  Now Mrs. Hall was a Lambert, and her

19    parents live in Huntingdon, and she was raised over in

20    Carroll County.  Now does anybody know her parents, her

21    people?  She was the mother of four children, and three

22    of these children will be called as witnesses on behalf

23    of the State.  I'm going to take it that none of you

24    are personally acquainted with any of the children.

25              Now, Ms. Crowe, I saw you flinch when I said
```

1    that we were going to call children as witnesses.  I've

2    got some kiddoes myself, and I bet you do, too, and

3    some grandchildren perhaps.  Does the fact that it's

4    alleged by the State of Tennessee and the proof will

5    show that these three children are witnesses to this

6    act, is that going to so affect you, Ms. Crowe, or

7    anybody else, that you couldn't be fair and impartial?

8        JUROR:  No.

9        MR. WOODALL:  Would be so upset about the

10   fact that these children were forced to be witnesses

11   and go through this, that that would prejudice you

12   against the Defendant?

13       JUROR:  No.

14       MR. WOODALL:  Will you treat these three

15   children, and this applies to everybody, just like you

16   would any other witness in a criminal case?  All

17   witnesses are presumed to know the truth, to testify

18   truthfully.  And y'all know from being around here for

19   several weeks that you should listen to all the proof

20   and then make up your mind as to guilt or innocence of

21   this Defendant.  Will you do that?  So say you all?

22       Now other potential witnesses are TBI Agents

23   Brent Booth, Brian Byrd, Captain Bingham from the

24   Henderson County Sheriff's Department, Ricky Lunsford

25   from the Henderson County Sheriff's Department.  There

1   is a Bill Smith or Linda Smith, a Clinton Smith that

2   may be called, a Donna Escue from Huntingdon who is

3   related to the victim, Darlene Brown, Jackie Brittain,

4   Dr. Henderson who is the medical examiner from

5   Henderson County, Dr. O.C. Smith who is from the State

6   medical examiner's office, various lab people.  I'm

7   taking it by your overwhelming silence and the fact

8   that no one's raised their hand either on the front row

9   here or in the box that you don't know any of these

10  people.  And that's good.  You haven't heard anything

11  from anybody that's got the hot poop, the coffee shop

12  or at work or anything like that.

13          Only you can answer this question and make an

14  honest determination.  Is there any reason why any of

15  the 12 feel like that you just couldn't be a fair and

16  impartial juror in this case?  Now we'll individually

17  voir dire you about the death penalty, your thoughts on

18  the death penalty, upon a finding of guilt of murder in

19  the first degree.  I'm going to tell you right now, the

20  State of Tennessee is going to ask you to impose the

21  death penalty.  We'll talk about that separate and

22  apart from each other.

23          But those are basically the witnesses.  You

24  know that the State has the burden of proof, as it

25  should.  And you are experienced jurors.  You are to

27

1    enter this investigation with an open mind, and you are

2    prepared to listen to all the proof and then render a

3    verdict that truth dictates and justice demands.

4            Pass the panel.

5            MR. FORD:  Your Honor, before I forget, I'd

6    ask the Court to impose the rule and make sure there

7    are no witnesses in here.

8            THE COURT:  Any witnesses that are going to

9    testify will be go outside and remain outside until

10   they are called.  Now if you don't do this and we find

11   out about it, you'll not be allowed to testify.  So if

12   there's anybody in here that's been subpoenaed as a

13   witness, leave the courtroom.

14           MR. FORD:  Thank you, Your Honor.

15           Ladies and gentlemen, my name is Jay Ford.  I

16   along with Clay Mayo over here, my partner, we

17   represent Mr. Hall.  We are here today to ask you some

18   questions.  Some of these questions may be sensitive.

19   I want to apologize in advance for that.  But in order

20   to ensure that we get an open and honest response from

21   you and ensure that we have a good trial here, we have

22   to go into these questions in a little more depth and

23   detail than we ordinarily would.  So if you'll please

24   bear with us on this issue.

25           Also, ladies and gentlemen, I would ask you

28

1    if you all will each apply your everyday common sense

2    to this situation and to any situation.  Will you not

3    leave that at the door?  Will you bring that in with

4    you to this case?  Your ordinary everyday common sense

5    and judgment.

6              I'm going to start with Ms. Flanagan, and I'm

7    not picking on anybody, but we've got to start

8    somewhere and she's in the number one seat up there.

9              Are you married, ma'am?

10             JUROR:  Yes, sir.

11             MR. FORD:  Have any children?

12             JUROR:  Yes, sir.

13             MR. FORD:  How many children do you have?

14             JUROR:  Three.

15             MR. FORD:  What are their ages?

16             JUROR:  16, 14 and 12.

17             MR. FORD:  All right.  You heard Mr. Woodall

18   say that some children may be testifying.  Would that

19   bear on your ability to look at this with an open mind?

20             JUROR:  No, sir.

21             MR. FORD:  Where does your husband work?

22             JUROR:  Porter Cable.

23             MR. FORD:  Is he a supervisor there, or what

24   does he do?

25             JUROR:  He's director of information systems.

29

1              MR. FORD:  Does he -- How many people does he

2    supervise there?

3              JUROR:  I don't know.

4              MR. FORD:  Don't know, okay.  Have you ever

5    been in the military service or National Guard?

6              JUROR:  No, sir.

7              MR. FORD:  How long ago did you serve on a

8    jury?

9              JUROR:  I was in Federal Court last August

10   and Circuit Court about five years ago in Judge

11   Murchison's court.

12             MR. FORD:  Were those both criminal cases?

13             JUROR:  The ones in Circuit Court were.  The

14   one in Federal Court was mail fraud.  Is that criminal?

15             MR. FORD:  Mail fraud, okay.

16             You all have all been told about the burden

17   of proof here and the difference in a civil case.  It's

18   by a mere preponderance of the evidence, the mere

19   tipping of the scales.  In a criminal case it's beyond

20   a reasonable doubt.  Do y'all understand that?

21             Ms. Flanagan, have you or any family member

22   been the victim of a crime?

23             JUROR:  No, sir.

24             MR. FORD:  Have any close friends or

25   relatives that work in law enforcement in any way?

30

```
1              JUROR:  No, sir.

2              MR. FORD:  Ms. Crowe, are you married, ma'am?

3              JUROR:  No, I'm not.

4              MR. FORD:  Are you employed?

5              JUROR:  No, retired.

6              MR. FORD:  Okay.  And what did you do before

7    you retired?  What type of job?

8              JUROR:  I worked at the bakery in Hamilton

9    Hills for 20 years.

10             MR. FORD:  Have you or any of your family

11   members served in the military?

12             JUROR:  No.

13             MR. FORD:  I believe you indicated that you

14   had served on a jury.  When was that?  This term?

15             JUROR:  Just recently.

16             MR. FORD:  Have you been a victim of a crime

17   or had a close friend or family member that's been the

18   victim of a crime?

19             JUROR:  No.

20             MR. FORD:  Mr. Martindale, where are you

21   employed, sir?

22             JUROR:  I own my own lawn service.

23             MR. FORD:  Are you married?

24             MR. FORD:  No, I'm not.

25             MR. FORD:  I assume you don't have any
```

1    children.

2              JUROR:  That's right.

3              MR. FORD:  Have you served in the military?

4              JUROR:  No, I haven't.

5              MR. FORD:  Do you have any close friends or

6    relatives that work in law enforcement?

7              JUROR:  No, I don't.

8              MR. FORD:  Have you been a crime victim?

9              JUROR:  No, I haven't.

10             MR. FORD:  And, Ms. Crowe, I forgot to ask

11   you.  Do you have any close friends or relatives that

12   work in law enforcement?

13             JUROR:  No.

14             MR. FORD:  Mr. Martindale, have you served in

15   the military?

16             JUROR:  No, I haven't.

17             MR. FORD:  I believe you had indicated when

18   you had raised your hand earlier that you had served on

19   a jury.

20             JUROR:  Yes, sir.

21             MR. FORD:  Was that this term?

22             JUROR:  Yes, sir.

23             MR. FORD:  Have you served on any other

24   juries before this term?

25             JUROR:  No, sir.

32

```
 1              MR. FORD:  Have you been the victim of a

 2    crime or had a close friend or relative that's been a

 3    crime victim?

 4              JUROR:  No, sir.

 5              MR. FORD:  Have you ever worked as a security

 6    guard?

 7              JUROR:  No, sir.

 8              MR. FORD:  Mr. Mayfield, good morning, sir.

 9              JUROR:  Good morning.

10              MR. FORD:  Are you employed, sir?

11              JUROR:  Retired.

12              MR. FORD:  And what did you do before you

13    retired?

14              JUROR:  I worked for the City of Jackson 30

15    years.

16              MR. FORD:  And in what capacity?

17              JUROR:  I worked for the street department,

18    health and sanitation.

19              MR. FORD:  All right.  Were you a supervisor

20    in that particular job?

21              JUROR:  Part-time.

22              MR. FORD:  Part-time.  How many did you have

23    under your ...

24              JUROR:  Well I didn't have but two.  We

25    worked at the landfill.
```

```
 1              MR. FORD:  Are you married, sir?

 2              JUROR:  Yes, sir.

 3              MR. FORD:  And is your wife employed?

 4              JUROR:  No, she's retired.

 5              MR. FORD:  She's retired.  Have any children?

 6              JUROR:  One.

 7              MR. FORD:  Grandchildren yet?

 8              JUROR:  Two.

 9              MR. FORD:  Of course, you've heard the

10     question that Mr. Woodall asked, if there would be some

11     children possibly testifying in here.  Would this

12     affect your ability to be fair, honest, approach this

13     with an open mind?

14              JUROR:  Right.

15              MR. FORD:  Mr. Mayfield, have you served in

16     the armed services?

17              JUROR:  No, never did.

18              MR. FORD:  Any family members that served?

19              JUROR:  I had a brother.

20              MR. FORD:  When did he serve?

21              JUROR:  '42 or 3.

22              MR. FORD:  World War II?

23              JUROR:  Yes.

24              MR. FORD:  Sir, have you been the victim of a

25     crime or had a family member that was a victim of a
```

```
 1   crime?

 2           JUROR:  No way.

 3           MR. FORD:  You're fortunate.

 4           Ms. Patterson, good morning.  Where are you

 5   employed?

 6           JUROR:  Medina Banking Company.

 7           MR. FORD:  All right.  Are you married?

 8           JUROR:  Yes, sir.

 9           MR. FORD:  Do you have any children?

10           JUROR:  Two.

11           MR. FORD:  Two children.  And what are their

12   ages?

13           JUROR:  32 and 30.

14           MR. FORD:  So they're grown.  Are they

15   raised?  There's a difference.

16           JUROR:  Kind of.

17           MR. FORD:  All right.  What do you do at the

18   bank?

19           JUROR:  I do loans and CD's.

20           MR. FORD:  And is this -- Are you a loan

21   officer?

22           JUROR:  Just kind of part-time.  I just kind

23   of fill in with that.  I take loan payments.  I sell

24   CD's.

25           MR. FORD:  Did your husband or you or any
```

1     family member ever serve in the armed services?

2            JUROR:  My son did.  He was in the Army

3     Reserve Corp.

4            MR. FORD:  And I believe you indicated that

5     you had served as a juror.

6            JUROR:  Yes, sir, this term.

7            MR. FORD:  Have you served before this term?

8            JUROR:  No, sir.

9            MR. FORD:  Have you or any of your family

10    members or close friends been a victim of a crime?

11           JUROR:  No.

12           MR. FORD:  Are you or any of your family

13    members closely associated with or know people that

14    work in law enforcement in any capacity?

15           JUROR:  No, sir.

16           MR. FORD:  Ms. Oller I believe it is?

17           JUROR:  Yes.

18           MR. FORD:  And Ms. Oller, where are you

19    employed, ma'am?

20           JUROR:  Dollar Tree.

21           MR. FORD:  And what type of business is that?

22           JUROR:  Retail.

23           MR. FORD:  Is that here in Jackson?

24           JUROR:  Yes, sir, out at West Towne Commons.

25           MR. FORD:  Are you married, ma'am?

1           JUROR:  Yes.

2           MR. FORD:  And what does your husband do?

3           JUROR:  He works at Dow Tile as a body prep.

4           MR. FORD:  Do you have any children?

5           JUROR:  Yes.

6           MR. FORD:  And what are their ages?

7           JUROR:  35 and 40.

8           MR. FORD:  Grandchildren yet?

9           JUROR:  Yes, I've got a seven-year-old.

10          MR. FORD:  The fact that there may be some

11   testimony in this case from children, would that have

12   any bearing on your ability to look at this with an

13   open mind?

14          JUROR:  No, it wouldn't have anything to do

15   with it.

16          MR. FORD:  Have you or any of your family

17   members served in the armed services?

18          JUROR:  My husband did.

19          MR. FORD:  And what branch?

20          JUROR:  Navy.

21          MR. FORD:  What years?  Do you remember?

22          JUROR:  '58 to 62.

23          MR. FORD:  And I believe you had indicated

24   you had served as a juror before.

25          JUROR:  Yes, in this term.

37

1            MR. FORD:  This term?

2            JUROR:  Yes, sir.

3            MR. FORD:  Do you have any close friends or

4    family members who are involved in law enforcement?

5            JUROR:  I know some deputy sheriffs, but

6    that's it.

7            MR. FORD:  The fact that you just -- Are they

8    just acquaintances?

9            JUROR:  Yeah.

10            MR. FORD:  All right.  You never discussed

11    their duties or their business or any cases?

12            JUROR:  No.

13            MR. FORD:  Have you or any close friends or

14    relatives been a victim of a crime?

15            JUROR:  No.

16            MR. FORD:  Ms. Haney.  And where do you work,

17    Ms. Haney?

18            JUROR:  I have my own business.

19            MR. FORD:  And what type business is that?

20            JUROR:  A cleaning service.

21            MR. FORD:  And that's here in Jackson I

22    assume?

23            JUROR:  Yes.

24            MR. FORD:  Are you married?

25            JUROR:  Uh-huh.

38

1          MR. FORD:  Have any children?

2          JUROR:  I have a 15-year-old.

3          MR. FORD:  Does your husband -- Where does

4     your husband work?

5          JUROR:  He's sales managers for 93.1 radio

6     station.

7          MR. FORD:  So I assume you listen to the

8     radio.  Or not?

9          JUROR:  Not much.

10         MR. FORD:  Not much.  Okay.  Have you or your

11    husband or any family member served in the military?

12         JUROR:  No.

13         MR. FORD:  And did you indicate that you had

14    served on a jury before?

15         JUROR:  This term.

16         MR. FORD:  This term for this court?

17         JUROR:  Yes.

18         MR. FORD:  Have you served in any other

19    capacity before?

20         JUROR:  No.

21         MR. FORD:  Do you have any close friends or

22    relatives that are employed in law enforcement or

23    connected with law enforcement?

24         JUROR:  No.

25         MR. FORD:  Have you or any of your family

39

1  members ever been a victim of a crime?

2          JUROR:  No.

3          MR. FORD:  Ms. Rucker.  Good morning, Ms.

4  Rucker.

5          JUROR:  Good morning.

6          MR. FORD:  Are you employed, Ms. Rucker?

7          JUROR:  Jackson-Madison County General

8  Hospital.

9          MR. FORD:  And what did you do at the

10  hospital, ma'am?

11          JUROR:  Environmental service technician.

12          MR. FORD:  And how long have you been at the

13  hospital?

14          JUROR:  Eighteen years.

15          MR. FORD:  And are you married?

16          JUROR:  No, sir.

17          MR. FORD:  Do you have any children?

18          JUROR:  Six.

19          MR. FORD:  Six children.  Grandchildren?

20          JUROR:  Eleven.

21          MR. FORD:  That's quite a family there.  Mr.

22  Woodall pointed out that there will be some testimony

23  from children in this case.  Would that bear in any way

24  on your ability to approach this with an open, honest

25  frame of mindset?

1    JUROR:  No.

2    MR. FORD:  Do you supervise any employees at

3 the hospital?

4    JUROR:  No, sir.

5    MR. FORD:  Have you or any of your family

6 served in the military?

7    JUROR:  No, sir.

8    MR. FORD:  Now I believe you had indicated

9 you had served on a jury before.

10    JUROR:  This term.

11    MR. FORD:  This term, okay.  This is the

12 first time.  Do you have any close friends or relatives

13 that are connected with law enforcement?

14    JUROR:  No, sir.

15    MR. FORD:  Have you or any close friends or

16 relatives been a victim of a crime?

17    JUROR:  No, sir.

18    MR. FORD:  Mr. Walker, good morning, sir.

19    JUROR:  Good morning.

20    MR. FORD:  I know you've heard these

21 questions, and please bear with me.  I'm trying to go

22 through these as fast as I can.  Where are you

23 employed, sir?

24    JUROR:  I'm retired.

25    MR. FORD:  Are you married?

41

```
1              JUROR:  Yes.

2              MR. FORD:  Do you have any children?

3              JUROR:  Three.

4              MR. FORD:  Does your wife work outside the

5    home?

6              JUROR:  Yes, she works.

7              MR. FORD:  Okay, sir, where does she work?

8              JUROR:  Lane College.

9              MR. FORD:  What does she do at Lane?

10             JUROR:  She's a loan collector.  She collects

11   outstanding loans.

12             MR. FORD:  Student loans?

13             JUROR:  Yes.

14             MR. FORD:  All right.  Have you, sir, or any

15   of your family members served in the military?

16             JUROR:  No.

17             MR. FORD:  And have you served as a juror

18   before?

19             JUROR:  This term.

20             MR. FORD:  In this court.

21             JUROR:  Right.

22             MR. FORD:  Have you served before in any

23   other court as a juror?

24             JUROR:  No, I haven't.

25             MR. FORD:  Do you have any close friends or
```

42

```
1    relatives that are connected with law enforcement?
2             JUROR:  No, I don't.
3             MR. FORD:  Have you been the victim of a
4    crime?
5             JUROR:  No, I haven't.
6             MR. FORD:  Any relatives been a victim of a
7    crime?
8             JUROR:  No.
9             MR. FORD:  Mr. Reeves, good morning, sir.
10   How are you today?
11            JUROR:  Fine.
12            MR. FORD:  Where are you employed, Mr.
13   Reeves?
14            JUROR:  Tennessee Department of
15   Transportation.
16            MR. FORD:  And what do you do there?
17            JUROR:  I do bridge repair.
18            MR. FORD:  Are you married, sir?
19            JUROR:  Yes, sir.
20            MR. FORD:  Do you have any children?
21            JUROR:  Yes, sir, I have two, 16 and 20.
22            MR. FORD:  Does your wife work outside the
23   home?
24            JUROR:  Yes, sir.
25            MR. FORD:  And where is she employed?
```

```
 1              JUROR:  Kerr Plastic.

 2              MR. FORD:  What does she do there?

 3              JUROR:  Quality assurance.

 4              MR. FORD:  Is she a supervisor in any

 5    capacity?

 6              JUROR:  No, sir.

 7              MR. FORD:  Sir, have you or any of your

 8    family members served in the military?

 9              JUROR:  No, sir, just my brother.

10              MR. FORD:  Your brother, okay.  And were you

11    one of the ones that had indicated you had served on a

12    jury before?

13              JUROR:  Yes, sir, just this term.

14              MR. FORD:  This term, okay.  Do you have any

15    family members, close friends or relatives that are

16    connected with law enforcement in any way?

17              JUROR:  No, sir.

18              MR. FORD:  Have you been the victim of a

19    crime?

20              JUROR:  No, sir.

21              MR. FORD:  Any family member been a victim of

22    a crime?

23              JUROR:  No, sir.

24              MR. FORD:  Mr. Gibbons, good morning, sir.

25    Where are you employed, sir?
```

1              JUROR:  Porter Cable.

2              MR. FORD:  And in what capacity?

3              JUROR:  I am the stock room material handler.

4              MR. FORD:  And are you married, sir?

5              JUROR:  Yes, sir.

6              MR. FORD:  Do you have any children?

7              JUROR:  Three.

8              MR. FORD:  What are their ages?

9              JUROR:  Two, six and nine.

10             MR. FORD:  You've heard my question about

11    children possibly testifying.  What would your answer

12    be?  That you could enter this with an open mind?

13             JUROR:  Yes, sir.

14             MR. FORD:  Have no affect on your judgment.

15             JUROR:  No, sir.

16             MR. FORD:  And where is your wife employed?

17    Does she work outside the home?

18             JUROR:  She's an R.N. supervisor for a home

19    health agency.  She's got two or three people under

20    her.

21             MR. FORD:  Okay, you're picking up on my

22    questions.  I appreciate that.  It makes things go a

23    little quicker.  Have you been in the military service?

24             JUROR:  No, sir.

25             MR. FORD:  Any family member been in the

45

1    military service?

2              JUROR:  No, sir.

3              MR. FORD:  Have you served as a juror before?

4              JUROR:  This term.

5              MR. FORD:  All right.  Do you have any close

6    friends or relatives that are connected with law

7    enforcement?

8              JUROR:  Richard Higgins is my uncle, and he

9    works in records.  I see him about -- at Christmas and

10   weddings and funerals, and his son-in-law is on the

11   police force, and I see him about the same.  But it

12   wouldn't have any affect.

13             MR. FORD:  All right, thank you, sir.  Have

14   you or any family member been a victim of a crime?

15             JUROR:  No, sir.

16             MR. FORD:  And Ms. McKee, last but not least.

17   Where are you employed, Ms. McKee?

18             JUROR:  Jackson-Madison County schools.

19             MR. FORD:  And what do you do with the school

20   system?

21             JUROR:  I'm a computer lab manager.

22             MR. FORD:  And do you have to supervise

23   employees in that capacity?

24             JUROR:  No.

25             MR. FORD:  Are you married, ma'am?

46

1           JUROR:  Yes.

2           MR. FORD:  What does your husband do?

3           JUROR:  Bell South, repair technician, and

4   he's president of Communication Workers of America.

5           MR. FORD:  Do you have any children?

6           JUROR:  One grown son.

7           MR. FORD:  Were you or any family members --

8   did they ever serve in the military?

9           JUROR:  My father was in the Navy during

10  World War II.  My husband was in the National Guard.

11          MR. FORD:  Is he retired from the National

12  Guard?

13          JUROR:  Well, he's no longer in it.  I don't

14  know that he retired from it.

15          MR. FORD:  Okay.  I believe you had indicated

16  that you had served as a juror.

17          JUROR:  This term.

18          MR. FORD:  Is that the only time you've ever

19  served?

20          JUROR:  Yes, sir.

21          MR. FORD:  Do you have any close friends or

22  family members that are connected with law enforcement

23  in any way?

24          JUROR:  I have a first cousin who is a

25  Tennessee Highway Patrol.

47

1           MR. FORD:  Anybody else?

2           JUROR:  No.

3           MR. FORD:  Would that have any affect on your

4    ability to enter this with an open mind?

5           JUROR:  No, sir.

6           MR. FORD:  Have you or any family member been

7    the victim of a crime?

8           JUROR:  As we said in another case, just a

9    car theft.

10          MR. FORD:  Just car theft, okay.  And was

11   that you or your husband?

12          JUROR:  Well, my car was stolen on two

13   different occasions.  I wasn't driving it either of

14   those times.

15          MR. FORD:  I understand.  Okay.  The fact

16   that that unfortunate event happened in your life,

17   would that have any bearing on your ability to enter

18   this with an open mind?

19          JUROR:  No.

20          THE COURT:  Mr. Ford, go ahead with those

21   other 10 there.  I don't mean to get you off beat, but

22   ...

23          MR. FORD:  Yes, sir, I understand.

24          Mr. Matthews, good morning.

25          JUROR:  Good morning.

48

1              MR. FORD:  Mr. Matthews, the fact that we've

2    known each other for quite some time and we live two or

3    three houses apart and see each other occasionally,

4    would that have any bearing on your ability to enter

5    this with an open mind?

6              JUROR:  No, sir.  I've known General Woodall.

7              MR. FORD:  And I know many, many things about

8    Mr. Matthews, so I think we can speed right through

9    him.

10             Mr. Matthews, have you been the victim of a

11   crime?

12             JUROR:  My house has been burglarized twice.

13             MR. FORD:  The fact that that occurred, that

14   unfortunate event occurred, would that have any bearing

15   on your ability to enter this with an open mind?

16             JUROR:  No, sir.

17             MR. FORD:  Since I know Mr. Matthews, I'll

18   move on to ... Mr. Wagster, is it?

19             JUROR:  Yes.

20             MR. FORD:  Mr. Wagster, are you employed,

21   sir?

22             JUROR:  No, I'm retired.  I do part-time

23   work.

24             MR. FORD:  Part-time work.  Where do you work

25   now, sir?

```
 1              JUROR:  Serra Chevrolet.

 2              MR. FORD:  What did you do before you retired

 3    full-time?

 4              JUROR:  Service manager for Truex.

 5              MR. FORD:  Are you married, sir?

 6              JUROR:  Yes.

 7              MR. FORD:  And do you have any children?

 8              JUROR:  Five.

 9              MR. FORD:  Five children.  How many

10    grandchildren?

11              JUROR:  Six.  I have to count them.  I have

12    several.

13              MR. FORD:  Several grandchildren.  You heard

14    Mr. Woodall bring up the fact that he expects some

15    children will be testifying here.  Would that bear on

16    your ability to enter this with an open mind?

17              JUROR:  Slightly.

18              MR. FORD:  All right.  Slightly in what way,

19    sir?

20              JUROR:  I'd hate for my three girl

21    grandchildren to testify about anything.

22              MR. FORD:  Yes, sir, we can understand that.

23    What we're getting at here is that, would that affect

24    your judgment?  Would that affect your being able to

25    set that aside and come in and be totally honest about
```

1    this situation?

2            JUROR:  Not really.

3            THE COURT:  Mr. Wagster, the fact that you

4    have grandchildren, would that in any way prevent you

5    from being fair and impartial as a juror, listen to the

6    proof which could include children and arrive at a

7    verdict based on the proof that you hear in this

8    courtroom and that alone?

9            JUROR:  I don't think so.

10           THE COURT:  You don't think you could.

11           JUROR:  I don't think it would bother my

12   judgment.

13           THE COURT:  Well they got a right to a yes or

14   no answer.  Don't think.  You're going to have to make

15   a decision.

16           JUROR:  No, sir.

17           THE COURT:  Would it any way interfere with

18   you?  Just say yes or no.  That's all they want to

19   know.

20           JUROR:  Yes, it would.

21           THE COURT:  It would?

22           JUROR:  Yes, sir.

23           MR. FORD:  Challenge him for cause, Your

24   Honor please.

25           THE COURT:  All right, Mr. Wagster, you may

51

1   go.

2            MR. FORD:  Mr. Collins I believe it is?

3            JUROR:  Yes, sir.

4            MR. FORD:  All right, sir.  Where are you

5   employed, Mr. Collins?

6            JUROR:  I inspect bridges for the state.

7            MR. FORD:  And I guess you know Mr. Reeves.

8            JUROR:  Yes.

9            MR. FORD:  Okay.  And are you married, sir?

10           JUROR:  Yes, sir.

11           MR. FORD:  How many children do you have?

12           JUROR:  We have three.

13           MR. FORD:  Does your wife work outside the

14  home?

15           JUROR:  She works for the Madison County

16  property assessor at this time.

17           MR. FORD:  Have you served in the military,

18  sir?

19           JUROR:  National Guard.

20           MR. FORD:  Are you still currently --

21           JUROR:  No.

22           MR. FORD:  Have you served as a juror before

23  in a case?

24           JUROR:  Yes, sir, this term.

25           MR. FORD:  Do you have any close friends or

1    relatives that are connected in law enforcement?

2          JUROR:  I got some friends that I golf with

3    that are policemen.

4          MR. FORD:  Would that have any bearing on

5    your ability to enter this with an open mind?

6          JUROR:  No.

7          MR. FORD:  Have you been a victim of a crime

8    or had close friends or family members that have been

9    victims of crimes?

10         JUROR:  My house was burglarized twice in

11   five years.

12         MR. FORD:  The fact that that occurred, that

13   unfortunate event, would that have an --

14         JUROR:  No.

15         MR. FORD:  All right, sir. I understand.

16         Ms. Jarvis, where are you employed?

17         JUROR:  The Jackson-Madison County School

18   System.

19         MR. FORD:  And what do you do with the school

20   system?

21         JUROR:  I'm a home-bound teacher.

22         MR. FORD:  Are you married, ma'am?

23         JUROR:  Yes, sir.

24         MR. FORD:  And do you have any children?

25         JUROR:  Two sons, 20 and 21.

1          MR. FORD:  Is your husband employed?

2          JUROR:  He works at Van de Kamp's.

3          MR. FORD:  Have you or he or any close

4    friends or relatives, family members, served in the

5    military?

6          JUROR:  No.

7          MR. FORD:  Have you served as a juror before?

8          JUROR:  This term.

9          MR. FORD:  And only this term?

10          JUROR:  Yes.

11          MR. FORD:  Have you been the victim of a

12    crime or had a family member that's been the victim of

13    a crime?

14          JUROR:  No.

15          MR. FORD:  Ms. Tubbs, where are you employed?

16          JUROR:  Westover Baptist Child Care Center.

17          MR. FORD:  Are you married, ma'am?

18          JUROR:  Yes.

19          MR. FORD:  And does your husband work outside

20    the home?

21          JUROR:  Yes, sir, ADM.

22          MR. FORD:  What does he do there?

23          JUROR:  He's a miller.

24          MR. FORD:  Okay.

25          JUROR:  He grinds corn is all I know.

54

1            MR. FORD:  All right.  Have you or he served

2    in the military?

3            JUROR:  No.

4            MR. FORD:  Have you served as a juror before?

5            JUROR:  This time.

6            MR. FORD:  Do you have any close friends or

7    relatives that are connected in any way with law

8    enforcement?

9            JUROR:  No, sir.

10           MR. FORD:  Have you or any family member been

11   the victim of a crime?

12           JUROR:  No, sir.

13           MR. FORD:  Ms. Wright, where are you

14   employed?

15           JUROR:  Jackson Clinic.

16           MR. FORD:  What do you do there?

17           JUROR:  I am the reimbursement clerk.

18           MR. FORD:  Oh, they give out -- Never mind.

19   Okay.  That kind of confused me there a little bit.

20   Are you married, ma'am?

21           JUROR:  Yes, sir.

22           MR. FORD:  And what does your husband do?

23           JUROR:  He's the maintenance tech out at

24   Montell.

25           MR. FORD:  And do you have any children?

1              JUROR:  Three.

2              MR. FORD:  What are their ages?

3              JUROR:  24, 22 and 19.

4              MR. FORD:  Have you or your husband or any

5    family member served in the military?

6              JUROR:  My father did.

7              MR. FORD:  What capacity?

8              JUROR:  World War II.

9              MR. FORD:  Have you served as a juror before,

10   ma'am?

11             JUROR:  Yes, this term.

12             MR. FORD:  How about any other court?

13             JUROR:  No.

14             MR. FORD:  Do you have any close friends or

15   relatives that are connected with law enforcement?

16             JUROR:  I have a friend who is a Highway

17   Patrolman in Dixon, Tennessee I see maybe twice a year.

18             MR. FORD:  Dixon, Tennessee Highway Patrol.

19   Don't discuss any cases or anything, just casual

20   friends?

21             JUROR:  Very seldom see him.

22             MR. FORD:  Have you or any family member been

23   a crime victim?

24             JUROR:  No.

25             MR. FORD:  Ms. Hammonds, where are you

1    employed, ma'am?

2            JUROR:  I'm a sales clerk with Foliage

3    Designs.

4            MR. FORD:  And are you married?

5            JUROR:  I am.

6            MR. FORD:  Do you have any children?

7            JUROR:  I have one child six years old and

8    one stepson who is 16.

9            MR. FORD:  Does your husband work?

10           JUROR:  He works for Fence Masters.

11           MR. FORD:  Is he a supervisor?  Does he

12   supervise anybody?

13           JUROR:  He has a crew of three people he

14   supervises.

15           MR. FORD:  Has he served in the military or

16   have you or any other family member?

17           JUROR:  He was in the Air Force before we

18   married.

19           MR. FORD:  And how long ago was that?

20           JUROR:  It was '75.

21           MR. FORD:  Have you served as a juror, ma'am?

22           JUROR:  During this term.

23           MR. FORD:  Have you served in any other court

24   as a juror?

25           JUROR:  No, sir.

57

1            MR. FORD:  Do you have any close friends or

2    relatives that are connected to law enforcement?

3            JUROR:  I have a friend that works for the

4    sheriff's department.

5            MR. FORD:  All right.  Do you see him on an

6    infrequent or frequent basis?

7            JUROR:  Infrequent.

8            MR. FORD:  You've never discussed any cases

9    or anything of that nature?

10           JUROR:  No, sir.

11           MR. FORD:  Have you ever had a family member

12   that's been a victim of a crime?

13           JUROR:  No, sir.

14           MR. FORD:  Or have you been a victim of a

15   crime?

16           JUROR:  No, sir.

17           MR. FORD:  Ms. White, are you employed,

18   ma'am?

19           JUROR:  Homemaker.

20           MR. FORD:  That's full-time.  Do you have any

21   children?

22           JUROR:  Three, three boys, eight, ten and 21.

23           MR. FORD:  You are busy.  Does your husband

24   work?

25           JUROR:  He's self-employed, real estate

1   investment and farming.

2            MR. FORD:  Has he been in the military?

3            JUROR:  Air Force.  He was in Okinawa.

4            MR. FORD:  When was he in the Air force?

5            JUROR:  During the Vietnam War.

6            MR. FORD:  Did he serve in Vietnam?

7            JUROR:  In Okinawa.

8            MR. FORD:  Have you served as a juror, ma'am?

9            JUROR:  Just this term.

10           MR. FORD:  Do you have any close friends or

11  relatives that are connected in law enforcement?

12           JUROR:  No.

13           MR. FORD:  Have you or any family member been

14  a crime victim?

15           JUROR:  Arson.

16           MR. FORD:  Okay.  When did that happen?

17           JUROR:  A couple of years ago.  Someone

18  burned a building we owned.

19           MR. FORD:  Was that crime resolved?  Did you

20  find out who it was?

21           JUROR:  No.

22           MR. FORD:  The fact that you've been a crime

23  victim of a very serious crime, would that have any

24  bearing on your ability to have an open and honest

25  mindset in entering upon this case if you are called to

1    serve?

2            JUROR:  No.

3            MR. FORD:  Ms. Maness, are you employed?

4            JUROR:  Yes, sir, I work for Piercey

5    Employment as dispatcher and just general flunkie.

6            MR. FORD:  Everything.  Right, I understand.

7    Are you married, ma'am?

8            JUROR:  Yes, sir.

9            MR. FORD:  And does your husband work outside

10   the home?

11           JUROR:  He's a patient in the nursing home in

12   Brownsville.

13           MR. FORD:  Do you have any children?

14           JUROR:  We have three, two daughters and a

15   son, a 33-year-old, have one 31 and my son is 29.

16           MR. FORD:  Have any grandchildren yet?

17           JUROR:  I have six grandchildren.

18           MR. FORD:  All right.  I hate to keep

19   bringing this up, but Mr. Woodall alluded to the fact

20   that there would be some children that would be

21   testifying here today.  You do have grandchildren.

22   Would that bear on your ability to enter this with an

23   open, honest mindset in looking at this situation?

24           JUROR:  I don't think so.

25           MR. FORD:  You don't think so?

60

```
 1              JUROR:  I don't think it would bother me.
 2              MR. FORD:  It wouldn't bother you, okay.
 3    That's what I was getting at.  Have you served in the
 4    military or any family members served in the military?
 5              JUROR:  My brother served in the military
 6    years ago.
 7              MR. FORD:  Have you ever served as a juror
 8    before?
 9              JUROR:  In this court.
10              MR. FORD:  This court.  Is this the only
11    time?
12              JUROR:  Yes.
13              MR. FORD:  Do you have any close friends,
14    family members that are connected with law enforcement
15    in any way?
16              JUROR:  No.
17              MR. FORD:  Have you been the victim of a
18    crime or had a family member that was a victim of a
19    crime?
20              JUROR:  My sister's house was broken into
21    about three times, but other than that ...
22              MR. FORD:  Would that affect your ability to
23    be fair?
24              JUROR:  No.
25              MR. FORD:  Your Honor, I believe that's all
```

1    the questions I have at this time other than individual

2    voir dire questions.

3            THE COURT:  All right, ladies and gentlemen,

4    what we're going to have to do -- we're not going to

5    have to -- what we're going to do is we're going to

6    take each one of you individual, one at a time, for

7    further discussion with regard to the death penalty.

8            Let's go to the jury room, and the officers

9    will bring the jurors in one by one.

10           **(The following proceedings were**

11           **had in the jury room:)**

12           MR. WOODALL:  Is Your Honor ready for me to

13    proceed?

14           THE COURT:  Yes, sir.  Let me say -- Let's

15    see, your name is?

16           JUROR:  Mrs. Jennifer Flanagan.

17           THE COURT:  All right.  Jennifer, you heard

18    what I said.  It's going to be in a few phases, and the

19    fact that we have the death penalty, ma'am, are you

20    opposed or in favor of the death penalty?

21           JUROR:  Well I really don't have any opinion.

22           THE COURT:  Have no opinion, all right.  Do

23    you feel like that you can follow the law, and if this

24    person is proven guilty beyond a reasonable doubt,

25    would you vote for a conviction?

1          JUROR:  Yes, sir.

2          THE COURT:  And as I understand it, you would

3  follow the law; is that right?

4          JUROR:  Yes, sir.

5          THE COURT:  As I charge you.

6          JUROR:  Yes, sir.

7          THE COURT:  And the fact that there is the

8  death penalty would not interfere with you doing your

9  duty; is that right?

10         JUROR:  That's right.

11         THE COURT:  All right, General.

12  **EXAMINATION BY MR. WOODALL:**

13  Q          Upon a finding of guilt of murder in the

14  first degree, the State of Tennessee is going to ask

15  you to impose the death penalty, Ms. Flanagan.  Can you

16  fairly consider the death penalty along with other

17  forms of punishment?

18  A          Yes, sir.

19  Q          And will you do that?

20  A          Yes, sir.

21         MR. WOODALL:  Thank you.

22         That's all.

23  **EXAMINATION BY MR. FORD:**

24  Q          Ms. Flanagan, there's some pretty sensitive

25  areas that we have to go into here.  Have you been the

63

1    victim or do you have any close friends or relatives

2    that have been the victim of domestic abuse in any way,

3    marital -- suffered marital difficulties or anything of

4    that nature?

5    A        No, sir.

6    Q        As you know, the State is seeking the death

7    penalty.  However, there are other forms of punishment

8    that can be considered in a case such as this, such as

9    life without parole or life with the possibility of

10   parole.  Would you be willing to consider all three

11   forms of punishment?

12   A        Yes, sir.

13   Q        There are various degrees of murder,

14   premeditated, first degree, and a lesser included

15   offense of second degree, which would result in --

16   there are different things and different elements that

17   the State has to prove.  Will you carefully consider

18   all of those elements that are required of premeditated

19   first degree murder and make the State prove those to

20   your satisfaction and beyond a reasonable doubt?

21   A        Yes, sir.

22           MR. FORD:  I have no more questions.

23           **(JUROR EXCUSED.)**

24                      - - - - -

25           THE COURT:  State your name, please, ma'am.

64

1          JUROR:  Mabel Crowe.

2          THE COURT:  All right, Mabel, you heard what

3     I said with regard to the fact that you'll be

4     considering the death penalty.  Let me ask you this.

5     Are you opposed or in favor of the death penalty?

6          JUROR:  I would say that I'm for it.

7          THE COURT:  All right, then, would you have

8     any hesitancy if you served -- Would you consider --

9     Would you return the death penalty merely because it's

10    asked for, or would you follow the law that I charge

11    you with?

12         JUROR:  I wouldn't unless I was sure of it.

13         THE COURT:  You would consider the death

14    penalty; is that correct?

15         JUROR:  Yeah.

16         THE COURT:  But would you automatically

17    return it?

18         JUROR:  No.

19         THE COURT:  All right, General.

20    **EXAMINATION BY MR. WOODALL:**

21    Q         Ms. Crowe, upon a finding of guilt of murder

22    in the first degree, the State of Tennessee is going to

23    ask you to impose the death penalty.  Now can you

24    fairly consider the death penalty along with other

25    forms of punishment and will you do so?

1    A        No.  I can't do that.

2    Q        You cannot impose the death penalty?  Is that

3    what you're saying?

4    A        Uh-huh.

5    Q        All right.  While ago you told the Court that

6    --

7    A        Yeah, but I thought about it.

8    Q        In thinking about it, are you telling me that

9    even though that's the law in the State of Tennessee,

10   that if the State proves to your mind beyond a

11   reasonable doubt and to a moral certainty and the

12   person is found guilty of premeditated murder, that you

13   just can't impose the death penalty?

14   A        Oh, if it's premeditated murder I could.

15   Q        Well you've got me confused.

16   A        Ask me a question again.

17   Q        All right, let's try it one more time.  Could

18   you, number one, fairly consider the death penalty

19   along with other forms of punishment?

20   A        Yeah, I could do that.

21   Q        You could consider it.

22   A        Yes, I'd consider it.

23   Q        All right.  Now the question then becomes, if

24   it's the law in the State of Tennessee that if an

25   individual is found guilty of murder in the first

66

1    degree that he's to receive the death penalty, can you

2    follow the law and instructions given to you by the

3    Court?

4    A        Yes.

5    Q        You could impose the death penalty?

6    A        Yes.

7    Q        And you would do so if that's the law in the

8    State of Tennessee.

9    A        If that's the law, yes.

10   Q        Now, you said you thought about it and that

11   you couldn't do it, and now you're saying you can.

12   A        Yeah, I can do it, uh-huh.

13            MR. WOODALL:  I don't have anymore questions.

14   **EXAMINATION BY MR. MAYO:**

15   Q        Ms. Crowe, General Woodall has just asked the

16   question.  I think you responded just a minute ago

17   about considering the death penalty in the premeditated

18   murder case.

19   A        Uh-huh.

20   Q        Do you understand that there are different

21   degrees of murder in the State of Tennessee?  That

22   there's first degree murder which allows the State to

23   ask for the death penalty, and there's second degree

24   murder which the death penalty does not go along with.

25   That can't be punishment in second degree murder.  Are

67

```
 1    you willing to listen to all the proof and consider the
 2    different elements of first degree murder and second
 3    degree murder and hold the State to the burden of proof
 4    of beyond a reasonable doubt on each and every element
 5    of the degree or murder they ask for?
 6    A        I think so.
 7             THE COURT:  Well don't say "I think".
 8    A        I can.
 9    Q        As stated, in the first degree murder case it
10    has to be proven that it's premeditated and that it was
11    deliberate, which is with cool purpose.  And second
12    degree doesn't require those elements.
13    A        Uh-huh.
14    Q        Have you or anyone close to you been the
15    victim of domestic abuse, any violence between --
16    A        No.
17    Q        No daughters or sons?
18    A        No.
19    Q        There are three different forms of punishment
20    if the State proves beyond a reasonable doubt that Mr.
21    Hall committed first degree murder, and those three
22    different forms are life with parole, life without
23    parole and the death penalty.  If the State proves
24    first degree murder, will you consider all three
25    different forms of punishment?
```

```
 1              THE COURT:  If that's the law, if that's what

 2     you're charged.

 3     A         If that's what the charge is?

 4     Q         Yes, ma'am.

 5     A         Uh-huh, I can.

 6     Q         What was the hesitancy, please, ma'am?

 7     A         Well, I didn't understand exactly.

 8     Q         Okay.  If Mr. Hall was convicted of first

 9     degree murder, the State is asking for the death

10     penalty.  But there are two different forms of

11     punishment that the jury can impose.

12     A         Yeah.

13     Q         The other two other than the death penalty

14     are life without parole and life with parole.  Would

15     you consider all of those, those three different forms

16     of punishment in trying to reach a decision as to how

17     Mr. Hall should be punished, if the State proves the

18     first degree murder case?

19     A         Uh-huh.

20     Q         Did I make that a little bit clearer?

21     A         Yeah.

22              THE COURT:  What it is, ma'am, if you find

23     him guilty of murder, then you will consider what the

24     punishment would be, and it will either be death or

25     life without parole or death with parole, and you'll
```

1    have those two choices.

2                JUROR:  I understand that.

3                THE COURT:  Well will you consider all three

4    of them?

5                JUROR:  Yes.

6                MR. WOODALL:  Your Honor, let me -- one thing

7    we haven't pointed out to this juror that could assist

8    her.

9                THE COURT:  Sure.

10   **FURTHER EXAMINATION**

11   **BY MR. WOODALL:**

12   Q        The law is in the State of Tennessee that

13   before you can render a death penalty conviction, that

14   the aggravating circumstances have to outweigh the

15   mitigating circumstances.  And if the aggravating

16   circumstances outweigh the mitigating circumstances,

17   the law in the State of Tennessee is that you shall

18   impose the death penalty.  So the question then

19   becomes, if the aggravating circumstances, the State

20   proves to your mind beyond a reasonable doubt that they

21   outweigh the mitigating circumstances, will you follow

22   the law and instructions of the Court and impose the

23   death penalty?

24   A        Yes.

25                **(JUROR EXCUSED.)**

                              70

```
1                            - - - - -

2              THE COURT:  Sir, you've heard what I read a

3    moment ago about the fact that this will be a -- two

4    distinct phases.

5              JUROR:  Yes, sir.

6              THE COURT:  And if you find the person

7    guilty, then you come to the sentencing.  Now if it's

8    proved -- If you're charged -- You will be charged as

9    to how to handle that, and the charge will be that if

10   you find him guilty, then you'll either assess the

11   death penalty or life without parole or life with

12   parole, and you'll do that on the basis of aggravating

13   and mitigating circumstances.

14             JUROR:  Right.

15             THE COURT:  First off, do you believe in the

16   death penalty?

17             JUROR:  No, sir.

18             THE COURT:  All right, if you believe in the

19   death penalty, would you automatically vote for the

20   death penalty regardless of the evidence?

21             JUROR:  Well I don't believe in it, so I

22   wouldn't vote for it.

23             THE COURT:  You wouldn't vote for what?

24             JUROR:  The death penalty.

25             THE COURT:  You wouldn't under any
```

1    circumstances?

2              JUROR:  No, sir.  I just couldn't do it.

3              THE COURT:  All right, I believe he's ...

4              MR. FORD:  If I may, Your Honor please.

5    **EXAMINATION BY MR. FORD:**

6    Q         Mr. Martindale, the death penalty is called

7    for in certain circumstances under Tennessee law.

8    A         I understand.

9    Q         But what I'm asking you is, could you

10   consider that as one form of punishment along with life

11   with parole or life without parole?  There are three

12   forms of punishment.  We're asking if you would just be

13   willing to consider --

14   A         The death penalty, no, sir.

15   Q         Under no circumstances.

16   A         No, sir.

17             THE COURT:  All right, I don't see any reason

18   -- I'd just let him go.  Do y'all agree?

19             MR. FORD:  Yes, sir.

20             MR. WOODALL:  Yes, sir.

21             **(JUROR EXCUSED.)**

22                        - - - - -

23             THE COURT:  Tell us your name.

24             JUROR:  Cecil Mayfield.

25             THE COURT:  Mr. Mayfield, do you believe in

                                72

1    the death penalty?

2               JUROR:  Yes, sir, I do.

3               THE COURT:  In a case of this type, if you --

4    would you -- if the case should reach the penalty

5    phase, would you vote automatically for the imposition

6    of the death penalty without -- regardless of the

7    evidence and the law?

8               JUROR:  Well I'd want the evidence.

9               THE COURT:  Take evidence before you -- Do I

10   understand you -- You say you're for the death penalty,

11   but you'll consider the evidence; is that correct?

12              JUROR:  Right.

13              THE COURT:  You wouldn't automatically -- You

14   say you wouldn't automatically do it, would you?

15              JUROR:  Well not automatically, no.

16              THE COURT:  All right, now, what you're going

17   to find out is if he's found guilty by the jury of this

18   charge, then the jury will consider three things,

19   whether it should be the death penalty or life without

20   parole or life with parole.  Would you consider all

21   three of them if I charge you that to be the law?

22              JUROR:  Well, yes, sir.

23              THE COURT:  All right, General.

24   **EXAMINATION BY MR. WOODALL:**

25   Q          Mr. Mayfield, upon a finding of guilt of

73

1    murder in the first degree, the State of Tennessee is

2    going to ask you to impose the death penalty.  Can you

3    fairly consider the death penalty along with other

4    forms of punishment?

5    A         Well I believe in the death penalty.

6    Q         All right, the second question then becomes:

7    Before a -- The law in the State of Tennessee is that

8    before a death penalty can be imposed, that the jury

9    has to find beyond a reasonable doubt that the

10    aggravating circumstances outweigh the mitigating

11    circumstances.  And if the aggravating circumstances

12    you find do outweigh the mitigating circumstances, it

13    becomes the duty and obligation to impose the death

14    penalty.  And will you do that?

15    A         Yes, sir.

16              MR. WOODALL:  Thank you.

17                        - - - - -

18    **EXAMINATION BY MR. MAYO:**

19    Q         Mr. Mayfield, to begin with, this is a first

20    degree murder case.  The State has charged Mr. Hall

21    with first degree murder.  But you'll be instructed at

22    the end of the case that you can consider other degrees

23    of murder, mainly second degree murder.  The first

24    degree murder must be premeditated and deliberate.  It

25    must be carried out with a cool purpose.  Second degree

74

1  murder is a different type of murder.  Will you be

2  willing to consider a lesser included offense, namely

3  second degree murder, if the proof establishes that?

4  A       Well I think I could.

5  Q       Has you or anyone close to you been a victim

6  or been charged or been labeled a domestic abuse

7  offender or committed any type of domestic abuse?

8  A       No.

9  Q       A daughter that was maybe a victim of it,

10 anything like that.

11 A       No.

12 Q       This has been explained to you, but there are

13 three different forms of punishment if the State proves

14 beyond a reasonable doubt that Mr. Hall committed first

15 degree murder, three different forms of punishment.

16 One is the death penalty.  But there are two others.

17 The second would be life without parole.  The third

18 would be life with parole.  Are you willing to consider

19 all three of those if he is convicted of first degree

20 murder?

21 A       Well, no, I don't think I could do that.

22 Q       Why is that, sir?

23 A       Well I just believe in a cold-blooded murder,

24 I believe in the death penalty.

25 Q       You think that's the only form of punishment.

1   A          Yeah, I think it is.

2          THE COURT:  Well let me say this to you.

3   Cold-blooded murder, I don't know what your definition

4   is, but you're to hear this trial, and then if you find

5   him guilty, then you can consider based on all the

6   facts whether you should give him the death penalty or

7   life without parole or life with parole.  Would you

8   consider all three, or would just the fact that you

9   find him guilty of killing, you'd vote for the death

10  penalty?  Do you know?  Will you follow -- Would you

11  consider all three of them?  That's what the law says

12  do.

13         JUROR:  Well, I guess I could.

14         THE COURT:  Well don't guess you could.  Now

15  this is a very serious matter.

16         JUROR:  Well, see, I've never had nothing to

17  do with law in no way --

18         THE COURT:  I understand it.

19         JUROR:  -- and I don't really understand it.

20         THE COURT:  Well let me read to you again

21  here.  Should the accused be found guilty of capital

22  murder described in the indictment, a second phase is

23  what type of penalty the jury will recommend the Court

24  will be held.  Although the verdict of the penalty,

25  jury is advisory in nature.  The jury recommendation is

76

1   -- is the one that's considered.  Because your verdict

2   could lead to the death penalty, your attitude toward

3   the death penalty is a proper subject to inquire by the

4   Court and the attorneys.  The fact that you may have

5   reservations about or conscientious or religious

6   objections to capital punishment does not automatically

7   disqualify you.  As a juror in a capital case, the

8   primary importance is whether you can subordinate your

9   personal philosophy, your duty to abide by your oath as

10  a juror and follow the law as I give it to you.  If you

11  are willing to render a verdict that speaks the truth

12  as you find it to exist, even though such verdict may

13  lead to the imposition of the death penalty, you

14  qualify.

15          Now what I'll need to know is -- You said

16  first you're personally for the death penalty.

17          JUROR:  Right.

18          THE COURT:  But you're also a juror here.

19  You understand me?

20          JUROR:  Yes, sir.

21          THE COURT:  And that that would be your duty

22  to consider all three.  Now would you consider all

23  three or would you just vote for the death penalty?

24          JUROR:  Yes, sir, I'd consider all three.

25          MR. WOODALL:  No questions.

77

1          MR. MAYO:  Your Honor, if I could ...

2          THE COURT:  Yes, sir, go ahead.

3     **FURTHER EXAMINATION**

4     **BY MR. MAYO:**

5     Q        Mr. Mayfield, the Judge just explained to you

6     that there are three different forms and asked you if

7     you would consider them and you stated you would

8     consider them.  If you consider those, does that mean

9     that you are willing to render a sentencing phase

10    verdict regarding the punishment of Mr. Hall -- would

11    you be willing to punish him with life with parole,

12    even if he committed first degree premeditated murder,

13    or cold-blooded murder as you described it?

14    A        Yes, sir.

15    Q        You would be willing to do that.

16    A        I'd be willing to do that.

17         MR. MAYO:  No more questions.

18         **(JUROR EXCUSED.)**

19                   - - - - -

20         THE COURT:  Ma'am, as I told you, now this

21    will be two phases, and if you find the person guilty

22    beyond a reasonable doubt, then you'll consider the

23    punishment, and the punishment would be that -- death

24    or life without parole or life with parole, three

25    separate things.  First off, are you for the death

78

1  penalty or opposed to it?

2          JUROR:  I don't really have an opinion.  I

3  mean, it wouldn't bother me.

4          THE COURT:  In other words, you would do your

5  -- you could follow the law.

6          JUROR:  Yes, sir.

7          THE COURT:  And as I've stated, even though

8  he's found guilty, then you have what you call

9  aggravating circumstances and mitigating circumstances,

10 and then you consider those, and then if you found him

11 guilty, then you and the rest of the jury would

12 recommend -- would give the sentence of death or life

13 without parole or life with parole.  Would you have any

14 problem doing that?

15         JUROR:  No, sir.

16         THE COURT:  General.

17 **EXAMINATION BY MR. WOODALL:**

18 Q       Ms. Patterson, upon a finding of guilt of

19 murder in the first degree, the State of Tennessee is

20 going to ask you to impose the death penalty.  So the

21 question then becomes, number one, would you fairly

22 consider the death penalty along with other forms of

23 punishment the Court has mentioned to you, and you say

24 you would.

25         Now secondly, and I believe the Court will

79

1    instruct you at the appropriate time, the law in the

2    State of Tennessee is this, that if the aggravating

3    circumstances outweigh the mitigating circumstances

4    beyond a reasonable doubt, then it's your duty and your

5    obligation to impose the death penalty.  And if those

6    aggravating circumstances are found by you to outweigh

7    the mitigating circumstances, will you impose the death

8    penalty as required?

9    A        Yes, sir.

10            MR. WOODALL:  Thank you.

11            THE COURT:  Now let me say also, what General

12   Woodall said is true, but under our law you have to

13   prove the aggravating conditions beyond a reasonable

14   doubt, and you only have to consider the mitigating by

15   the greater weight.  You understand?  Would you do

16   that?

17            JUROR:  Yes, sir.

18   **EXAMINATION BY MR. FORD:**

19   Q        Ms. Patterson, have you or any family member

20   been the victim of domestic abuse, that type of

21   situation?

22   A        No, sir.

23   Q        We saved that question for in here because

24   that's a rather sensitive question, and we don't want

25   that answered in front of a big group of people.  We

1    anticipate the proof will show that there have been

2    some domestic problems here between Mr. Hall and his

3    wife.  You stated you would consider other forms of

4    punishment.  Of course, if the State does prove that

5    there is a premeditated, planned, after judgment,

6    reflection-type of premeditation and the State proves

7    that this is a premeditated first degree murder type

8    case, you stated you would be able to consider all

9    three forms of punishment in the penalty phase.  That

10   is the death penalty, that is life without the

11   possibility of parole or life with parole.

12   A       Yes.

13           MR. FORD:  I believe that's all.

14           **(JUROR EXCUSED.)**

15                   - - - - -

16           THE COURT:  Ms. Oller, the lawyers want to

17   ask you how you feel about the death penalty, and it's

18   kind of personal in front of all the people.

19           So, General Woodall, you can ask for the

20   State.

21   **EXAMINATION BY MR. WOODALL:**

22   Q       Ms. Oller, upon a finding of guilt of murder

23   in the first degree, the State of Tennessee intends to

24   ask you to impose the death penalty.  Now, can you

25   fairly consider the death penalty along with other

1  forms of punishment?

2  A       Yes, sir.

3  Q       All right.  Now, I believe at the appropriate

4  time the Court will instruct that the law in the State

5  of Tennessee is this.  If the State proves to your mind

6  beyond a reasonable doubt that the aggravating

7  circumstances outweigh the mitigating circumstances,

8  then it's your duty and obligation to impose the death

9  penalty.  And if the State proves to your mind beyond a

10  reasonable doubt that the aggravating circumstances

11  outweigh the mitigating circumstances, will you follow

12  the law in the State of Tennessee?

13  A       Yes, sir.

14          MR. WOODALL:  Thank you.

15  **EXAMINATION BY MR. FORD:**

16  Q       Ms. Oller, you understand there are two

17  phases to this trial.  There is a guilt or innocence

18  phase in which the State has to prove beyond a

19  reasonable doubt that the Defendant is guilty of

20  premeditated first degree murder, planned after cool

21  reflection and judgment.  Now you may not get to the

22  penalty phase.  You may not have to consider the death

23  penalty if the State doesn't prove that.  You

24  understand that?

25  A       Yes, sir.

82

1    Q        If they don't prove premeditated first degree

2    murder, then you would consider second degree murder.

3    Can you fairly consider second degree murder as a

4    lesser included offense?

5    A        If so proved, yes, sir.

6    Q        All right.  Have you or any family member

7    been the victim of domestic abuse?

8    A        No.

9    Q        We saved that question for in here because --

10   for obvious reasons.

11   A        Oh, yes.

12   Q        It's a very sensitive question.  We expect

13   that there will be some proof that there was some

14   domestic problems between Mr. Hall and his wife, and

15   that's why I asked that question.

16   A        Okay.

17   Q        During the penalty phase, the State has to

18   prove certain aggravating circumstances or factors that

19   exist.  They have to prove that those aggravating

20   circumstances exist beyond a reasonable doubt.  Will

21   you hold them to that same standard as you would in the

22   guilt or innocence phase?

23   A        Yes, sir.

24   Q        There are three forms of punishment that can

25   be imposed, if you get to that point.  There is the

1    death penalty, there is life without the possibility of

2    parole, and then there's life with the possibility of

3    parole.  Would you consider all three forms of

4    punishment should we get to that point in the trial?

5    A        Yes.

6             MR. FORD:  Thank you.

7             **(JUROR EXCUSED.)**

8                            - - - - -

9             THE COURT:  Ma'am, we want to ask you some

10   questions about your feelings about the death penalty.

11   Mr. Woodall is going to ask you some questions and then

12   Mr. Ford.

13   **EXAMINATION BY MR. WOODALL:**

14   Q        And that's Ms. Haney; is that correct?

15   A        Uh-huh.

16   Q        Ms. Haney, upon a finding of guilt of murder

17   in the first degree, the State of Tennessee is going to

18   ask you to impose the death penalty in this case.  Can

19   you fairly consider the death penalty along with other

20   forms of punishment?

21   A        I can.

22   Q        The law in the State of Tennessee is if the

23   aggravating circumstances outweigh the mitigating

24   circumstances, if the State proves to your mind beyond

25   a reasonable doubt the aggravating circumstances

84

1    outweigh the mitigating circumstances, you shall impose

2    the death penalty.  If you so find, will you follow the

3    law and instructions given to you by the Court?

4    A        To the best of my ability.

5             MR. WOODALL:  Thank you.

6                        - - - - -

7    **EXAMINATION BY MR. MAYO:**

8    Q        Ms. Haney, there are two phases to the trial,

9    this trial.  The first phase is the guilt or innocence

10   where it is established whether Mr. Hall is actually

11   guilty of what he has been charged with.

12   A        Uh-huh.

13   Q        And he has been charged with first degree

14   murder, which is premeditated murder.  It is an act

15   that was committed by someone who was cool and

16   reflective and using judgment.  There is a lesser

17   included offense of second degree murder.  Will you

18   hold the State to their burden of proof beyond a

19   reasonable doubt on each and every element of first

20   degree murder, premeditation and deliberation?

21   A        I'll listen to all the facts and make the

22   best decision that I can.

23   Q        And will you consider second degree murder if

24   the proof is raised and establishes that?

25   A        Uh-huh.

1    Q        Have you been the victim or know anyone close

2    to you that has been the victim of domestic abuse or

3    any type of violence between spouses?

4    A        No.

5    Q        If the State proves the case beyond a

6    reasonable doubt on the first degree murder, each and

7    every element of that, then we go into the penalty

8    phase, the sentencing phase.  That phase is where you

9    decide what type of punishment Mr. Hall should receive.

10   There are three different types of punishment.  The

11   first would be the death penalty; second would be life

12   without parole; third would be life with parole.  And

13   there's no order.  I just stuck those numbers to them.

14   But there's no order to that.  Will you be willing to

15   consider all three forms of punishment?

16   A        Yes.

17            MR. MAYO:  That's all.

18            **(JUROR EXCUSED.)**

19                      - - - - -

20            THE COURT:  Tell us your name.

21            JUROR:  Martha Rucker.

22            THE COURT:  Martha, they are going to ask you

23   how you feel about the death penalty.  That's part of

24   the deal.  He'll ask you some and then the other lawyer

25   representing the Defendant will have some.

1          Mr. Woodall, go ahead.

2    **EXAMINATION BY MR. WOODALL:**

3    Q          Ms. Rucker, upon a finding of guilt of murder

4    in the first degree, the State of Tennessee is going to

5    ask you to impose the death penalty in this case.

6    A          Yeah.

7    Q          Can you fairly consider the death penalty

8    along with other forms of punishment?

9    A          Yes.

10   Q          Now if the law -- I think the Court will

11   instruct you at the proper time that the law in the

12   State of Tennessee is this, that if the State proves to

13   your mind beyond a reasonable doubt that the

14   aggravating circumstances outweigh the mitigating

15   circumstances, you shall impose the death penalty.

16   Will you follow the law and instructions and follow the

17   law of the State of Tennessee?

18   A          I will.

19   Q          You'll do that?

20   A          I will.

21          MR. WOODALL:  Thank you.

22                    - - - - -

23   **EXAMINATION BY MR. FORD:**

24   Q          Ms. Rucker, I understood that you worked at

25   the hospital.

1    A        Yes, sir.

2    Q        Did you know Mrs. Hall, the victim in this

3    case?  She had worked at the ambulance authority I

4    believe.

5    A        No.  We work in housekeeping.  I don't know

6    too many people out there.  I hadn't even heard about

7    this case.  I don't never read too much.

8    Q        I understand.  There are two parts to this

9    type trial.  The first part is you have to determine

10   whether someone is guilty or innocent, and then you

11   move on to the penalty phase.

12   A        I know.

13   Q        You understand that?

14   A        Uh-huh.

15   Q        The State must prove beyond a reasonable

16   doubt premeditated first degree murder.

17   A        Uh-huh.

18   A        That there was a killing, that someone acted

19   out of cool reflection, judgment and planned that

20   particular incident.  Now if the State doesn't prove

21   that beyond a reasonable doubt, you don't get to the

22   penalty phase.

23   A        No.

24   Q        You consider second degree murder.

25   A        Uh-huh.

88

1    Q        Would you consider that as a lesser included

2    offense if the proof shows that?

3    A        I would.

4    Q        Have you or any family member or relative

5    been the victim of domestic abuse?

6    A        No, sir.

7    Q        We saved that question to ask that in here

8    because it's a very sensitive question.  And we

9    anticipate that the proof will show that there were

10   some domestic problems between Mr. and Mrs. Hall before

11   this happened.

12   A        Yeah.

13   Q        Okay.  Should we get to the penalty phase,

14   will you require the State to prove aggravating

15   circumstances beyond a reasonable doubt and use the

16   same standard that you would apply in determining

17   someone's guilt or innocence?

18   A        Yes.

19   Q        And will you consider -- There are three

20   forms of punishment.  There is the death penalty, of

21   course.  There is life without parole; that's another

22   option that the jury could impose as punishment.  And

23   then the other punishment would be life with the

24   possibility of parole.  Can you consider all three

25   forms of punishment if we get that far?

89

1   A       I guess so.

2   Q       Okay?

3   A       As far as I know, because this is the first

4   time I ever been -- I ain't never been on --

5           THE COURT:  You'll follow the law, won't you?

6           JUROR:  Yes, I'll follow the law.

7           MR. FORD:  Thank you, ma'am.

8           **(JUROR EXCUSED.)**

9                           - - - - -

10          THE COURT:  Tell her what your name is.

11          JUROR:  James Walker.

12          THE COURT:  All right, Mr. Walker.

13  **EXAMINATION BY MR. WOODALL:**

14  Q       Mr. Walker, upon a finding of guilt of murder

15  in the first degree, the State of Tennessee is going to

16  ask you to impose the death penalty in this case.  Can

17  you fairly consider the death penalty along with other

18  forms of punishment?

19  A       I can.

20  Q       All right.  And the law in the State of

21  Tennessee, I believe the Court will also instruct you

22  at the appropriate time, is that if the aggravating

23  circumstances proven by the State of Tennessee beyond a

24  reasonable doubt, if they outweigh the mitigating

25  circumstances that the Defendant raises on his behalf,

90

1  then you shall impose the death penalty.  Will you

2  follow the law in the State of Tennessee?

3  A        I'll follow the law.

4              - - - - -

5  **EXAMINATION BY MR. MAYO:**

6  Q        Mr. Walker, you're a tennis player.

7  A        Right.

8  Q        I used to play a lot.  I remember seeing you

9  a lot.  It's been a while since I played.

10  A        Yes.

11  Q        There are two different parts or phases of

12  this trial.  The first phase is the guilt and innocence

13  phase.  That's where it's up to the jury to decide

14  whether Mr. Hall is guilty beyond a reasonable doubt of

15  each and every element of first degree murder.  If the

16  proof is raised by the defense that Mr. Hall is only

17  guilty of second degree murder, will you consider that?

18  Will you consider a second degree murder charge?

19  A        Yes.

20  Q        First degree murder has to be premeditated

21  and has to be deliberate, which is defined as with cool

22  purpose after exercising reflection and judgment.  If

23  the State does not prove that, then we don't get to the

24  penalty phase.  We don't get to the phase where the

25  State is asking for the death penalty, and you have to

1    make a decision between death and life with parole or

2    life without parole.  If the State does prove though

3    beyond a reasonable doubt that it is first degree

4    murder, premeditated and deliberate, will you consider

5    all three different forms of punishment for the penalty

6    phase?  One being the death penalty but the other two

7    being life with parole and life without parole, two

8    more options there.

9    A        Uh-huh.

10   Q        And the prosecutor, Mr. Woodall, will be

11   arguing at that phase aggravating circumstances.

12   Beyond a reasonable doubt is the standard he'll be held

13   to trying to prove those aggravating circumstances, and

14   we will be, if we get to that stage, providing you with

15   information on mitigating circumstances.  And if the

16   mitigating circumstances outweigh the aggravating

17   circumstances, then will you consider and vote for life

18   with parole or life without parole?

19   A        Yes.

20            MR. MAYO:  Thank you.

21            **(JUROR EXCUSED.)**

22                      - - - - -

23            THE COURT:  Let's go ahead and call the other

24   10 in when we finish with the 12.

25            MR. WOODALL:  Judge, I would prefer that we

92

```
 1    finish the 12 and then call one of the others because
 2    we've got one that's been challenged for cause and then
 3    have us issue our challenges.  I think that would be
 4    the proper way to do it.
 5              THE COURT:  Okay, that will be fine.
 6              You in agreement with that, Mr. Ford?
 7              MR. FORD:  Yes, sir.
 8                           - - - - -
 9              THE COURT:  All right, what we're doing, we
10    need to ask you some questions about how you feel about
11    the death penalty.  You listen to Mr. Woodall and Mr.
12    Ford and answer their questions as best you can.
13              JUROR:  Yes, sir.
```

14    **EXAMINATION BY MR. WOODALL:**

```
15    Q         Mr. Reeves, upon a finding of guilt of murder
16    in first degree in this case, the State of Tennessee is
17    going to ask you to impose the death penalty.  Can you
18    fairly consider the death penalty along with other
19    forms of punishment and will you do so?
20    A         Yes, sir.
21    Q         Now the law also, the Court will instruct you
22    at the appropriate time, is that if the aggravating
23    circumstances proved beyond a reasonable doubt by the
24    State of Tennessee outweigh any mitigating
25    circumstances that the Defendant may offer, then you
```

1    shall impose the death penalty.  Will you follow the

2    law of the State of Tennessee?

3    A        Yes, sir.

4             MR. WOODALL:  Thank you, sir.

5    **EXAMINATION BY MR. FORD:**

6    Q        Mr. Reeves, this case, this trial, is divided

7    into two parts.  The first part is the guilt or

8    innocence phase where you determine -- where the State

9    has to prove beyond a reasonable doubt that there was a

10   premeditated plan after using reflection and judgment,

11   cool purpose, first degree murder.  The State has to

12   prove that beyond a reasonable doubt before we even get

13   to discuss any penalties.  Now if the proof shows that

14   there's not a premeditated first degree murder, will

15   you consider the lesser included offense of second

16   degree murder?

17   A        Yes, sir.

18   Q        We anticipate that the proof will show that

19   Mr. and Mrs. Hall had had some domestic problems.  Have

20   you or any family member had any domestic-type

21   problems?

22   A        No, sir.

23   Q        Now if you get to the penalty phase, if the

24   State proves beyond a reasonable doubt a premeditated

25   first degree murder, at that point you'll be called

94

1    upon to consider three different forms of punishment.

2    Those three forms of punishment are the death penalty,

3    life without the possibility of parole and life with

4    the possibility of parole.  Can you fairly consider all

5    three forms of punishment in reaching an appropriate

6    form of punishment?

7    A        Yes, sir.

8    Q        All right.  We anticipate that there will be

9    proof, evidence, of certain mitigating factors.

10   Mitigating factors are things that lessen the

11   culpability of someone, if we get to that phase.  Will

12   you balance those mitigating factors against the

13   aggravating factors which the State is required to

14   prove beyond a reasonable doubt?  Will you balance

15   those, and if the mitigating factors outweigh those

16   aggravating factors, would you consider not imposing

17   the death penalty and imposing either life with parole

18   or life without the possibility of parole?

19   A        Yes, sir.

20   Q        Do you have any questions?  Do you

21   understand?

22   A        I understand.

23            **(JUROR EXCUSED.)**

24                        -  -  -  -  -

25            THE COURT:  Go ahead, General.

95

1    **EXAMINATION BY MR. WOODALL:**

2    Q          Mr. Gibbons, on a finding of guilt of murder

3    in the first degree in this case, the State of

4    Tennessee is going to ask you to impose the death

5    penalty.  Can you fairly consider the death penalty

6    along with other forms of punishment and will you do so

7    in this case?

8    A          Yes.

9    Q          And I believe the Court will also instruct

10   you at the appropriate time that if the State of

11   Tennessee proves to your mind beyond a reasonable doubt

12   that the aggravating circumstances in this case

13   outweigh any mitigating circumstances that the

14   Defendant may present on his behalf, then the law in

15   the State of Tennessee is the jury shall impose the

16   death penalty.  Can you follow the law of the State of

17   Tennessee?

18   A          I believe I can.

19          MR. WOODALL: Thank you.

20                    - - - - -

21   **EXAMINATION BY MR. MAYO:**

22   Q          Mr. Gibbons, there are two different phases

23   or segments or parts to this trial.  The first part is

24   the guilt or innocence phase, and that is where the

25   jury is asked -- proof is put on by the prosecutor and

96

1    proof put on by the defense perhaps as to the question

2    of whether Mr. Hall is guilty of first degree murder.

3    First degree murder requires premeditation.  It

4    requires deliberation, which is defined as cool,

5    deliberate purpose, cool with reflection and judgment,

6    knowing what somebody is doing.  If the proof is not

7    raised, if Mr. Woodall and Mr. Earls don't prove to you

8    beyond a reasonable doubt each and every element of

9    first degree murder, will you consider the lesser

10   included offense of second degree murder?

11   A        Yes.

12   Q        If the jury came back on second degree

13   murder, in other words, we would never reach the

14   penalty phase.  We would never decide whether Mr. Hall

15   is subject to a death sentence or not.  But if the

16   State does prove each and every element beyond a

17   reasonable doubt, there are three different forms of

18   punishment that the jury can consider.  One of those is

19   the death penalty but there are two others.  The other

20   two are life without parole and life with parole.

21   Would you consider the other two forms of punishment?

22   A        I would consider them.

23   Q        Mr. Woodall made reference to the aggravating

24   factors.  The State will be putting on aggravating

25   factors, asking you to vote for death based upon the

1    aggravating factors outweighing the mitigating factors.

2    The defense will be putting forward, if we get to that

3    stage, mitigating factors which somewhat explain why

4    this may have occurred.  If we get to that point and

5    the mitigating factors outweigh the aggravating

6    factors, will you vote for either life with parole or

7    life without parole?

8    A       Yes.

9    Q       Have you or any family member been a victim

10   of domestic abuse?

11   A       No.

12           MR. MAYO:  Thank you.

13           **(JUROR EXCUSED.)**

14                   - - - - -

15           THE COURT:  Ma'am, give us your name.

16           JUROR:  Caroline McKee.

17           THE COURT:  Caroline, these lawyers are going

18   to ask you questions to determine your -- how you feel

19   about the death penalty and how it should be handled.

20   The purpose of this is to do it -- rather than -- you

21   know if you get one out there sometimes that keep

22   asking questions, it gets like a broken record.  So we

23   want you individually in this instance.

24           All right, Mr. Woodall.

25   **EXAMINATION BY MR. WOODALL:**

1    Q        Ms. McKee, upon a finding of guilt to murder

2    in the first degree, the State of Tennessee is going to

3    ask you to impose the death penalty.  Can you fairly

4    consider the death penalty along with other forms of

5    punishment and will you do so?

6    A        I've given it a lot of thought because I knew

7    that this was coming up, and, yes, I think so.

8             THE COURT:  Ma'am, --

9    A        Yes, I can.

10   Q        I think that at the appropriate time the

11   Court will further instruct you that the law in the

12   State of Tennessee is, if the aggravating circumstances

13   proven by the State of Tennessee outweigh the

14   mitigating circumstances demonstrated by the Defendant,

15   that the penalty imposed shall be the death penalty.

16   Can you follow the law of the State of Tennessee?

17   A        Yes, sir.

18            MR. WOODALL:  Your witness.

19                            - - - - -

20   **EXAMINATION BY MR. FORD:**

21   Q        Ms. McKee, you said you've given it a lot of

22   thought, that you knew this was coming up.  What made

23   you --

24   A        Well the Judge had told us that we would have

25   a capital case.

99

1          THE COURT:  Mr. Ford, I've been telling them

2      we're going to have a capital case.  Please don't read

3      the newspaper, and she'll tell you -- don't discuss it,

4      and if I've said that once I've said it 20 times.  I

5      think obviously it's helped some.

6      Q          So you had some misgivings about the death

7      penalty?

8      A          I would not say misgivings, just thought

9      processing.  It's different to think about it and to be

10      one of 12 people actually imposing that.  I think it

11      would require thought from most people probably.

12      Q          All right.  You understand that this case is

13      divided into two parts.  You may not even get to the

14      part where you would consider the forms of punishment.

15      We have to go through the guilt or innocence phase, and

16      during that phase the State of Tennessee is required to

17      prove beyond a reasonable doubt that there was a

18      premeditated first degree murder, premeditated meaning

19      being planned, something that someone does with cool

20      purpose after reflection and judgment.  Will you

21      require the State of Tennessee to prove each and every

22      element of premeditation in this case?

23      A          Yes.

24      Q          If the proof -- If premeditation cannot be

25      proven beyond a reasonable doubt, will you consider the

100

1  lesser offense of second degree murder?

2  A      Yes, sir.

3  Q      Have you or any family member been the victim

4  of -- been involved in any kind of domestic problems,

5  divorce, disputes, anything of that nature?

6  A      No.

7  Q      And I ask that question for obvious reasons.

8  A      Right.

9  Q      If we get to the penalty phase, if we get to

10 where we're going to -- where the jury is to consider

11 the forms of punishment, the State will show that there

12 are certain aggravating factors or circumstances that

13 they are relying on, and they are required to prove

14 aggravating circumstances beyond a reasonable doubt.

15 We will also present certain mitigating circumstances.

16 Your job at that time will be to weigh up the

17 aggravating circumstances and the mitigating

18 circumstances and decide whether or not the aggravating

19 circumstances outweigh the mitigating circumstances

20 beyond a reasonable doubt.  If you come to that

21 conclusion, you will then be required to impose or

22 think of what penalty would be appropriate in this

23 particular case.  There are three penalties that can be

24 imposed here, that the jury has a choice.  First it

25 will be the death penalty, second is life without the

101

1    possibility of parole, which means you don't get out.

2    If that's the sentence you get, that's where you stay

3    for the rest of your life.  The other sentence is life

4    with the possibility of parole.  Can you fairly

5    consider all three forms of punishment, should you even

6    get to that point?

7    A        Yes.

8             MR. FORD:  Thank you.

9             **(JUROR EXCUSED.)**

10                          - - - - -

11            THE COURT:  Mr. Matthews, we're in here for

12   the lawyers to ask you questions about -- talking to

13   you about how to handle a possible death penalty case.

14   And so you pay attention, and you're the next one after

15   12, and we've only excused one so far, so that's the

16   reason you're here.

17            JUROR:  Yes, Your Honor.

18   **EXAMINATION BY MR. WOODALL:**

19   Q        Mr. Matthews, upon a finding of guilt of

20   murder in the first degree, the State of Tennessee is

21   going to ask you to impose the death penalty.  Can you

22   fairly consider the death penalty along with other

23   forms of punishment and will you do so?

24   A        Yes, sir.

25   Q        I believe at the appropriate time the Court

                              102

1    will also instruct you that the law in the State of

2    Tennessee is that if the aggravating circumstances

3    proven by the State beyond a reasonable doubt outweigh

4    the mitigating circumstances, then it's your duty --

5    the law in the State of Tennessee is to impose the

6    death penalty.  Can you do that?

7    A        Yes.

8    Q        All right.

9             MR. WOODALL:  Your witness.

10                           - - - - -

11   **EXAMINATION BY MR. MAYO:**

12   Q        Mr. Matthews, there are two phases to this

13   trial.  The first phase is the guilt or innocence

14   phase.  That's the phase where Mr. Hall is decided by

15   the jury to be guilty or innocent of the charges that

16   the State has charged him with.  He is charged with

17   first degree murder, which by its elements is

18   premeditation, includes premeditation, plan, and

19   deliberation, the carrying out of that plan with a cool

20   purpose, with reflection and judgment.  If the State

21   does not prove each and every element of first degree

22   murder beyond a reasonable doubt, will you be willing

23   to consider lesser included offenses, namely second

24   degree murder?

25   A        Yes.

103

1    Q        This is a sensitive question.  That's why we

2    ask it back in this room.  But has any member of your

3    family been a victim of domestic abuse or assault or

4    charges like that brought against anyone?

5    A        No.

6    Q        If the State proves beyond a reasonable doubt

7    that this is first degree murder, each and every

8    element of first degree murder, then we reach the

9    penalty phase, the sentencing phase, and that's where

10   the jury decides what the punishment should be.  There

11   are three different types of punishment that can be

12   imposed by the jury; one being the death penalty, but

13   the two others being life without parole, which means

14   you go to jail and spend the rest of your life in jail,

15   you never get out, and the other being life with

16   parole.  Are you willing to consider all three of those

17   forms of punishment and not reach a quick decision to

18   impose the death penalty?

19   A        Yes.

20   Q        The State will be required to prove

21   aggravating circumstances, and the defense will be

22   putting on mitigating circumstances at that phase, if

23   we reach that phase.  Will you be willing to listen to

24   each and every one of those and determine which

25   outweighs the other on a balancing scale?

104

1    A          I will.

2              MR. MAYO:  Thank you, sir.

3              **(JUROR EXCUSED.)**

4                        - - - - -

5              THE COURT:  Okay, gentlemen, what do you

6    suggest?

7              MR. WOODALL:  My suggestion is that the Court

8    and the State go outside and let them confer with their

9    client, and then we submit our challenges to the Court.

10             THE COURT:  Do you want to do it in here or

11   out there?

12             MR. WOODALL:  I would suggest you do it out

13   there.

14             THE COURT:  All right.  Under normal

15   circumstances, you know, under this new ruling, you

16   take two, one being -- make two copies of your decision

17   on -- and then I change them.  But that involves the

18   matter of race, so I'm not going to -- make only one

19   copy.

20             What it is, General, in a normal case out

21   here, you got a black man on trial, I make the State

22   and the defense fill out their challenges and then make

23   two copies of them and then I exchange them, and then

24   if there's anybody wants to say anything, particularly

25   if one of them is black that's being challenged.  But

105

1    we don't have that, so I'm not going to worry about

2    that.

3              Do you have any problem with that?

4              MR. FORD:  No, sir.

5              THE COURT:  Do you understand what I'm

6    talking about?

7              MR. WOODALL:  Well, --

8              THE COURT:  There's a new ruling --

9              MR. WOODALL:  That's -- I understand.

10             THE COURT:  All right.  We don't have that

11   problem with this.

12             MR. FORD:  No, sir, Your Honor.  I'd ask that

13   the Court not take the bench until we come out, if

14   that's all right.

15             THE COURT:  Okay.

16             MR. FORD:  It won't take but a few minutes.

17                       - - - - -

18             **(All parties returned into open**

19             **court, and the following proceedings**

20             **were had to-wit:)**

21             THE COURT:  Will you pass your challenges in,

22   please?

23             All right, will Ms. Mabel Crowe step down,

24   please?  Mr. Cecil Mayfield and Mr. Jim Matthews.

25             All right, sir, you come around, please, sir.

1    What is your name?

2              JUROR:  Jack Collins.

3              THE COURT:  All right, you, ma'am, and you,

4    ma'am.

5              All right, Jack Collins.

6              What's your name, please, ma'am?

7              JUROR:  Barbara Jarvis.

8              JUROR:  Linda Tubbs.

9              THE COURT:  All right.  I believe you were

10   here, and I don't know whether General Woodall or Mr.

11   Ford or the other defense attorney has anymore

12   particular questions.  But again, you've heard

13   everything that's taken place; is that correct?

14             Does anyone of you know of any reason based

15   on what General Woodall said and what Mr. Ford said --

16   know any reason why you could not be fair and

17   impartial?  Now it's excluding the matter of the death

18   penalty which we're doing separately.

19             Do you feel like you could handle it without

20   any particular problem?

21             JUROR:  Yes, sir.

22             THE COURT:  You, ma'am?

23             JUROR:  Yes, sir.

24             THE COURT:  You?

25             JUROR:  Yes, sir.

107

1          THE COURT:  I'll say again, nothing that

2     anybody has said that keeps you from being fair and

3     impartial.  All three of you been on the jury before?

4          **(All nodded in the affirmative.)**

5          THE COURT:  All right, General Woodall.

6          MR. WOODALL:  No questions.

7          THE COURT:  Do you have any questions?

8          MR. FORD:  No, sir.

9          **(The following proceedings were**

10         **had in the jury room:)**

11         THE COURT:  What we're doing now is finding

12    out the individual's attitude toward the death penalty,

13    how they'd vote to handle it.  As I said out here, the

14    only purpose of this criminal trial is to determine

15    whether the prosecution has established the guilt of

16    the accused.  That's our purpose.

17         General, you go ahead.

18    **EXAMINATION BY MR. WOODALL:**

19    Q          Mr. Collins, on a finding of guilt of murder

20    in the first degree, the State of Tennessee is going to

21    ask you to impose the death penalty in this case.  Can

22    you fairly consider the death penalty along with other

23    forms of punishment and will you do so?

24    A          Yes, I will.

25    Q          Now at the appropriate time the Court I feel

108

1    will instruct you that the law in the State of

2    Tennessee is this, that if the State of Tennessee

3    proves to your mind beyond a reasonable doubt that the

4    aggravating circumstances outweigh the mitigating

5    circumstances, what the Defendant might bring up on his

6    behalf, then the law in the State of Tennessee is the

7    jury shall impose the death penalty.  Will you do that

8    if that's what the proof shows?

9    A        Yes, sir.

10           MR. WOODALL: Thank you.

11   **EXAMINATION BY MR. FORD:**

12   Q        Mr. Collins, this trial is divided into two

13   parts.  The first part is what we refer to as the guilt

14   or innocence phase.  If the State doesn't prove the

15   case of premeditated first degree murder, meaning they

16   haven't proven all the elements that this was a planned

17   event after cool reflection and the use of judgment in

18   formulating the plan, if the State doesn't prove that

19   beyond a reasonable doubt, then we don't even get to

20   the penalty phase.  All right?

21   A        Yes, sir.

22   Q        If the State does not prove premeditated

23   first degree murder, will you consider the lesser

24   included offense of second degree murder?

25   A        Yes, sir, I will.

1    Q        This is a sensitive question, and the reason

2    we ask it back here is because it is sensitive.  Have

3    you or any of your family members experienced any kind

4    of domestic relations type problems?

5    A        No.

6    Q        All right.  We don't ask that question out

7    there for obvious purposes.  If we do get to the

8    penalty phase, if the State does prove premeditated

9    first degree murder beyond a reasonable doubt, then you

10   as jurors will be asked in the penalty phase to

11   consider the form of punishment that is appropriate.

12   The State will try to prove beyond a reasonable doubt

13   the existence of certain aggravating circumstances.  We

14   will show that certain mitigating circumstances exist;

15   in other words, is there a lessening, is there a good

16   reason not to impose the death penalty.  And your job

17   as a juror will be to weigh those up, aggravators

18   versus mitigating circumstances, and your job will be

19   to decide whether or not the aggravating circumstances

20   outweigh the mitigating circumstances and then impose

21   the penalty.  There are three forms of penalty that you

22   can consider.  First there is the death penalty, there

23   is life without the possibility of parole which means

24   you don't get out, and there's life with the

25   possibility of parole.  Would you consider all three

110

1    forms of punishment?

2    A        Yes, I would.

3             MR. FORD:  Thank you, sir.

4             **(JUROR EXCUSED.)**

5                         - - - - -

6             THE COURT:  Give us your name.

7             JUROR:  Barbara Jarvis.

8             THE COURT:  Barbara, we're going to -- you'll

9    be asked some questions about how the death penalty

10   might affect your consideration.  You pay attention and

11   just answer the questions.

12   **EXAMINATION BY MR. WOODALL:**

13   Q        Ms. Jarvis, upon a finding of guilt of murder

14   in the first degree, the State of Tennessee is going to

15   ask you to impose the death penalty in this case.  Can

16   you fairly consider the death penalty along with other

17   forms of punishment?

18   A        Yes, sir.

19   Q        All right.  Now, at the appropriate time the

20   Court will also instruct you that the law in the State

21   of Tennessee is that if the State, beyond a reasonable

22   doubt, proves that the aggravating circumstances

23   outweigh the mitigating circumstances that might be

24   brought up by the Defendant, then you shall impose the

25   death penalty.  Can you follow the law in the State of

                              111

```
1   Tennessee?

2   A       Yes, sir.

3   Q       And will you do that?

4   A       Yes, sir.

5           MR. WOODALL:  Thank you.
```

**EXAMINATION BY MR. MAYO:**

```
7   Q       Ms. Jarvis, there are two phases to this

8   trial.  There is the guilt and innocence phase which is

9   the deliberation and subsequent verdict of the jury as

10  to the guilt or innocence of Mr. Hall.  The State has

11  charged Mr. Hall with first degree murder.  First

12  degree murder requires premeditation and it requires

13  deliberation.  These are elements of first degree

14  murder.  Deliberation is the exercise of cool judgment,

15  reflection.  If the State does not prove those

16  elements, each and every one of those elements, beyond

17  a reasonable doubt, then are you willing to consider

18  lesser included offenses of first degree murder, namely

19  second degree murder?

20  A       Yes, sir.

21  Q       This is a sensitive question, but we need to

22  ask it of you because the proof may come out that there

23  was some domestic problems between Mr. Hall and Mrs.

24  Hall.  Have you or any member of your family been

25  involved in a domestic situation, a violent situation
```

112

1    or an abusive-type situation?

2    A        No, sir.

3    Q        If the State proves beyond a reasonable doubt

4    each and every element of first degree murder and the

5    jury comes back with a finding of guilt on first degree

6    murder, we go into the penalty phase, the sentencing

7    phase.  The sentencing phase is where the State puts on

8    aggravating circumstances and the defense puts on

9    mitigating circumstances.  The State will try to prove

10   that the aggravating circumstances outweigh the

11   mitigating circumstances, and the defense will try to

12   prove at that stage, if we get there, that the

13   mitigating circumstances outweigh the aggravating

14   circumstances.  Are you willing to listen openly,

15   honestly, fairly to all of those circumstances?

16   A        Yes, sir.

17   Q        Not just the aggravating circumstances but

18   the mitigating circumstances also?

19   A        Yes, sir, I will.

20   Q        There will be three different types of

21   punishment that the jury can impose if the State -- if

22   the jury finds the Defendant guilty of first degree

23   murder.  One is the death penalty, but the two others

24   are life without parole and life with parole.  Will you

25   also consider those other two forms of punishment

113

```
 1    included with the death penalty in your deliberation?

 2    A        Yes, sir.

 3             MR. MAYO:  That's all.

 4             (JUROR EXCUSED.)

 5                       - - - - -

 6             THE COURT:  State your name.

 7             JUROR:  Linda Tubbs.

 8             THE COURT:  All right.  These lawyers are

 9    going to talk to you about the death penalty and how

10    it's handled, going to ask you some questions.

11             All right, General.

12    EXAMINATION BY MR. WOODALL:

13    Q        Ms. Tubbs, upon a finding of guilt of murder

14    in the first degree, the State of Tennessee is going to

15    ask you to impose the death penalty in this case.  Can

16    you fairly consider the death penalty along with other

17    forms of punishment?

18    A        Yes, sir.  I don't like it, but I think --

19    I've did a lot of thinking on it, and I think --

20             THE COURT:  You will consider it?

21             JUROR:  Yes, sir, I think I could.  I know I

22    could.

23    Q        Well, it's kind of like getting married, you

24    know.  You speak now or forever hold your peace.  I

25    think -- Let me ask you one more question.  The law in
```

114

1    the State of Tennessee is this.  I believe the Court

2    will instruct you at the appropriate time that if the

3    State of Tennessee proves to your mind beyond a

4    reasonable doubt that the aggravating circumstances

5    outweigh the mitigating circumstances, then the

6    punishment shall be death.  Can you follow the law in

7    the State of Tennessee?

8    A        Yes, sir.

9    Q        And will you do so?

10   A        Yes, sir.

11            MR. WOODALL:  Thank you.

12   **EXAMINATION BY MR. FORD:**

13   Q        Ms. Tubbs, you understand that we may not

14   ever get to that point.  This case is tried in two

15   different parts.  There is the guilt or innocence phase

16   wherein the State of Tennessee must prove beyond a

17   reasonable doubt a premeditated, a plan with cool

18   purpose, reflection and judgment, a planned event took

19   place.  They have to prove premeditation beyond a

20   reasonable doubt before we even get there.  Now should

21   the State not be able to prove that, and in your mind

22   they don't prove it, would you consider the lesser

23   included offense which was second degree murder?

24   A        Yes, sir.

25   Q        All right.  This is a sensitive question, and

115

1    the reason we ask you back here is very obvious.  Have

2    you or any of your family members experienced domestic

3    problems such as divorce or arguments or anything of

4    that nature?

5    A        No, sir.

6    Q            If we get to the penalty phase, the jury will

7    look at certain aggravating circumstances which the

8    State will attempt to prove beyond a reasonable doubt.

9    The defense will present certain mitigating

10   circumstances.  At that point it would be your job to

11   balance the aggravating circumstances against the

12   mitigating circumstances and then impose an appropriate

13   form of punishment based on what's presented to you.

14   Will you consider all three forms of punishment?

15   There's the death penalty, there's life without parole,

16   which means if that's the sentence imposed, you don't

17   get out, you stay in prison the rest of your natural

18   life.  The other being life with the possibility of

19   parole.  Would you consider all three forms of

20   punishment if we get there?

21   A        Yes.

22            MR. FORD:  Thank you.

23            **(JUROR EXCUSED.)**

24                    - - - - -

25            THE COURT:  I believe that was the three,

116

1  wasn't it?

2          MR. WOODALL:  Yes, sir.

3          MR. MAYO:  Your Honor, Mr. Hall is wearing

4  leg restraints on both legs, and they are clicking real

5  loud and you can see them when he walks by, and he's

6  having to --

7          THE COURT:  Take the leg restraints off.

8          MR. MAYO:  Thank you, Your Honor.

9                  - - - - -

10         **(All parties returned into open**

11         **court, and the following proceedings**

12         **were had to-wit:)**

13         THE COURT:  Pass your forms.

14         Mr. Billy Reeves, step down, please, and Ms.

15  Jarvis.

16         You two ladies come around.  Just have a seat

17  right there because I'm fixing to take you in the jury

18  room.

19         General Woodall, do you have anything?

20         MR. EARLS:  No, sir, Your Honor, the State

21  has no questions of these ladies.

22         THE COURT:  Have any questions?

23         MR. FORD:  I just want to make sure I get

24  their names.

25         Ms. Wright?

117

```
 1            JUROR:  Yes.

 2            MR. FORD:  And Ms. Hammonds?

 3            JUROR:  Yes.

 4                   - - - - -

 5            (The following proceedings were

 6            had in the jury room:)

 7            THE COURT:  Ma'am, give us your name.

 8            JUROR:  Sherry Wright.

 9            THE COURT:  Sherry, they're going to ask you

10     about -- or explain to you something about the death

11     penalty and how it's handled and ask you some

12     questions.  Just answer them, okay?

13            JUROR:  Okay.

14            THE COURT:  All right.
```

**15     <u>EXAMINATION BY MR. EARLS:</u>**

```
16     Q       Ms. Wright, if the jury returns a verdict for

17     first degree murder, the State of Tennessee is going to

18     ask you to impose the death penalty.  Can you fairly

19     consider the death penalty along with other forms of

20     punishment that the Court may instruct you?

21     A       Yes.

22     Q       And if the State proves to you beyond a

23     reasonable doubt that certain aggravating factors in

24     this case outweigh any mitigating factors brought out

25     by the Defendant, and the law in the State of Tennessee
```

1   is, if you're instructed by the Court, that you shall

2   return the death penalty if the aggravating factors

3   outweigh the mitigating factors, can you do that?

4   A        Yes.

5            MR. EARLS:  Pass the juror.

6   **EXAMINATION BY MR. FORD:**

7   Q        Ms. Wright, how do you feel about the death

8   penalty?

9   A        I'm for it.

10  Q        In all instances or ...

11  A        As long as I'm absolutely sure without a

12  reasonable doubt I'm for it.

13  Q        Okay.  You understand that this case is

14  divided up into two different parts.  You may not ever

15  get to the part where you have to consider the death

16  penalty.

17  A        Okay.

18  Q        First of all, we're going to go through a

19  trial where the State has to prove that there was a

20  deliberate, premeditated murder.  They must prove that

21  there was a murder that was committed after reflection,

22  planning, cool purpose and judgment.  All three -- All

23  of the elements of premeditation must be met beyond a

24  reasonable doubt, before you even get into any issue of

25  punishment.  Will you require the State to prove that?

1    A        Yes.

2    Q        Will you also consider that if the State of

3    Tennessee does not prove premeditation, the lesser

4    included offense of second degree murder?

5    A        Yes.

6    Q        This is a sensitive question, and the reason

7    we ask it in here is obvious.  Have you or any family

8    member ever experienced any domestic problems, domestic

9    relations-type problem?

10   A        No.

11   Q        If we get to the penalty phase, which is

12   where you determine the punishment, the State will

13   attempt to prove certain aggravating circumstances.

14   They have to prove that those aggravating circumstances

15   exist beyond a reasonable doubt, the same standard that

16   you would apply in the guilt or innocence phase.  At

17   the same time you'll be asked to consider certain

18   mitigating circumstances on behalf of the Defendant.

19   What you do then is you're asked to balance the

20   aggravating circumstances against the mitigating

21   circumstances, and before you can consider the death

22   penalty, you must determine that the aggravating

23   circumstances outweigh the mitigating circumstances

24   beyond a reasonable doubt.  Will you do that?

25   A        Yes.

1    Q        There are also two other forms of punishment

2    that can be considered.  One is life without the

3    possibility of parole.  Should there be a finding of

4    first degree murder, you could consider life without

5    parole, which means you don't get out.  Once that

6    sentence is imposed, you spend the rest of your natural

7    life in prison.  All right?

8    A        Uh-huh.

9    Q        The other form of punishment is life with the

10   possibility of parole.  Will you consider all three

11   forms of punishment should we get to the penalty phase?

12   A        Uh-huh.

13            MR. FORD:  Thank you.

14            **(JUROR EXCUSED.)**

15                          - - - - -

16            THE COURT:  The lawyers are going to talk to

17   you about how the death penalty is handled, question

18   what you would do.

19            JUROR:  Okay.

20            THE COURT:  What is your name?

21            JUROR:  Donna Hammonds.

22            THE COURT:  All right, General.

23   **EXAMINATION BY MR. WOODALL:**

24   Q        Ms. Hammonds, on a finding of guilt of murder

25   in the first degree, the State of Tennessee is going to

1    ask you to impose the death penalty in this case.  Can

2    you fairly consider the death penalty along with other

3    forms of punishment?

4    A        Yes, sir.

5    Q        Now at the appropriate time I feel that the

6    Court would instruct you that if the State proved to

7    your mind beyond a reasonable doubt that the

8    aggravating circumstances outweigh the mitigating

9    circumstances, in other words, what the Defendant says

10   on his own behalf, then upon a finding -- an earlier

11   finding of murder in the first degree, the penalty

12   shall be death.  Can you follow the law of the State of

13   Tennessee?

14   A        Yes, sir.

15           MR. WOODALL:  Thank you.

16   **EXAMINATION BY MR. MAYO:**

17   Q        Ms. Hammonds, how do you feel about the death

18   penalty?

19   A        I feel that it's justice.  I don't feel that

20   it's trying to get even or justify -- you know, get

21   even with murdering someone or whatever.  But I feel

22   that it's justice.  Sometimes it's the solution of that

23   justice.

24   Q        In what way do you think it's justice?

25   A        I just think that in some cases, under some

122

1   circumstances, that that's what the law tries for and

2   that's what should happen.

3   Q        Ms. Hammonds, there are going to be two

4   different phases of this trial perhaps.  The first

5   phase is the guilt or innocence phase.  It's where the

6   jury determines whether Mr. Hall is guilty beyond a

7   reasonable doubt of the charge that the State has

8   charged him with, which is first degree murder.  First

9   degree murder has several elements of which

10  premeditation is one, deliberation is one.

11  Premeditation means a plan formed in your mind to carry

12  out, and deliberation is acting out that plan with cool

13  judgment, with reflection.  If the State -- The State

14  is under an obligation to prove each and every element

15  beyond a reasonable doubt.  If the State does not prove

16  each and every element of first degree murder, will you

17  consider and follow the law as it relates to the charge

18  of second degree murder?

19  A        Yes, sir.

20  Q        This is a somewhat sensitive question, and we

21  ask it back here so that it's not potentially

22  embarrassing to any of the jurors, but have you or any

23  members of your family or any of your real close

24  friends been involved in domestic situations that may

25  have had some slight violence in them or anything like

123

1    that?

2    A        No, sir.

3    Q            If you find that you agree with the State, if

4    you do find that, on first degree murder, then there

5    are three separate forms of punishment that are

6    available to the jury to impose upon Mr. Hall, that is,

7    if you agree with it.  If you do, will you consider and

8    follow the rule in considering the other two forms of

9    punishment other than death?

10   A        Yes, sir.

11   Q            They are life without parole and life with

12   parole.  You will consider those, too?

13   A        Yes, sir, I would.

14   Q            The State will be putting on aggravating

15   circumstances which are an effort to convince the jury

16   that Mr. Hall deserves the death penalty.  The defense

17   will be putting on mitigation circumstances which

18   explain perhaps why this occurred.  They don't detract

19   from the guilt, they just explain maybe how Mr. Hall

20   ended up in this position, and that is if we ever get

21   to that stage.  But will you consider those mitigating

22   circumstances also in arriving at your verdict on

23   punishment?

24   A        Yes, I will.

25            MR. MAYO:  Thank you.

124

```
 1              (JUROR EXCUSED.)

 2                    - - - - -

 3              (All parties returned into open

 4              court, and the following proceedings

 5              were had to-wit:)

 6         THE COURT:  Pass your forms.

 7              Donna Hammonds and David Gibbons, step down.

 8              You two come around and sit right here for

 9    just a moment.  You ladies have been in here, and, of

10    course, you heard the questions.  Do you feel like you

11    could be fair and impartial?

12         JUROR:  Yes.

13         JUROR:  Yes.

14         THE COURT:  Now you'll be -- have some

15    further questions about handling the death penalty, but

16    that will be individually.  Other than that, do you

17    know any reason why you couldn't be fair?

18         JUROR:  No.

19         JUROR:  No.

20         THE COURT:  What do you do, ma'am?

21         JUROR:  I work for Piercey Employment.

22         THE COURT:  And you, ma'am?

23         JUROR:  Homemaker.

24         THE COURT:  All right, gentlemen, do you want

25    any --
```

1          MR. WOODALL:  I can ask them in the jury

2    room, Your Honor.

3          MR. FORD:  No, Your Honor.

4          **(The following proceedings were**

5          **had in the jury room:)**

6    <u>**EXAMINATION BY MR. WOODALL:**</u>

7    Q        Ms. White, upon a finding of guilt of murder

8    in the first degree, the State of Tennessee is going to

9    ask you to impose the death penalty in this case.  Can

10   you fairly consider the death penalty along with other

11   forms of punishment?

12   A        Yes.

13   Q        Do you have any misgivings about the death

14   penalty?  I understand it's serious business.

15   A        Yes, I -- I don't know how I feel about it.

16   Q        Now, if I tell you that the law in the State

17   of Tennessee is as follows, upon a finding of guilt of

18   murder in the first degree, if the State of Tennessee

19   proves beyond a reasonable doubt that the aggravating

20   circumstances outweigh the mitigating circumstances,

21   the penalty shall be death, can you follow that

22   instruction?

23   A        Yes.

24         MR. WOODALL:  Thank you.

25   <u>**EXAMINATION BY MR. FORD:**</u>

1    Q        Ms. White, you understand that there's no

2    requirement, there's no absolute requirement of

3    reaching the death penalty.  That's something that

4    would have to be determined after hearing all this

5    proof.  There's nothing that's automatic about it, all

6    right?

7    A        All right.

8    Q        Now, you said you didn't know how you felt

9    about the death penalty.

10   A        Uh-huh.

11   Q        We need to know.

12   A        Well it would depend on the case.  I'm not

13   specifically for it or against it.

14            THE COURT:  Are you willing to follow the

15   law, what the Court charges you to be the law?

16            JUROR:  Yes.

17   Q        Now, you may not ever get to that point in

18   this case.  This case is divided up into two different

19   parts.  First of all it's what we call the guilt or

20   innocence part where we have a trial to determine

21   whether or not the State can prove beyond a reasonable

22   doubt a premeditated first degree murder.  Now in

23   premeditation, the State would have to prove that this

24   was a planned event, something that occurs after

25   reflection, the exercise of judgment, with a cool

127

1    purpose.  So the State has to prove each and every

2    element of premeditation, which includes deliberation,

3    thinking about it, before you ever reach that.  Now if

4    the State doesn't prove premeditation, would you

5    consider the lesser included offense of second degree

6    murder?

7    A        Yes.

8    Q        Now, this is a sensitive question, and we ask

9    it back here for obvious reasons.  Have you or any of

10   your family members experienced domestic difficulty,

11   problems, arguments, anything of that nature?

12   A        No.

13   Q        If we get to the penalty phase, if there is a

14   finding of premeditated first degree murder, then we'll

15   have another shorter trial, but it will be a trial,

16   where the State will be required to prove the existence

17   of certain aggravating circumstances beyond a

18   reasonable doubt, the same standard as in the guilt or

19   innocence phase.  At the same time you will be

20   presented proof of certain mitigating circumstances on

21   behalf of the Defendant.  At that time you'll be asked

22   to balance the aggravating factors and mitigating

23   factors.  And if the mitigating factors do not outweigh

24   these mitigating circumstances beyond a reasonable

25   doubt, then you won't have to reach the death penalty.

1    You can consider the other forms of punishment which

2    are life without parole, meaning you don't get out.  If

3    that's the sentence that's imposed, then the person

4    that receives that sentence will serve day for day the

5    rest of his or her life.  The other possibility is life

6    with the possibility of parole.  So you have three

7    choices.  Will you consider all three?

8    A        Yes.

9             MR. FORD:  Thank you.

10            **(JUROR EXCUSED.)**

11                       - - - - -

12            THE COURT:  Tell us your name.

13            JUROR:  Katie Maness.

14            THE COURT:  Ms. Maness, they're going to ask

15   you some questions about -- concerning the death

16   penalty.  So you just pay attention and answer.

17   **EXAMINATION BY MR. WOODALL:**

18   Q        Ms. Maness, upon a finding of guilt of murder

19   in the first degree, the State of Tennessee is going to

20   ask you to impose the death penalty.  Can you fairly

21   consider the death penalty along with other forms of

22   punishment?

23   A        Yes, sir, I believe I can.

24   Q        Now, at the appropriate time, I believe the

25   Court will instruct you that this is the law in the

129

```
1    State of Tennessee.  If after a finding of guilt of
2    murder in the first degree if the State proves to your
3    mind beyond a reasonable doubt that the aggravating
4    circumstances outweigh the mitigating circumstances,
5    the punishment shall be death, will you follow that
6    instruction of the Court?
7    A        Yes.
8             MR. WOODALL:  Thank you.
9    EXAMINATION BY MR. MAYO:
10   Q        Ms. Maness, how do you feel about the death
11   penalty?
12   A        I think it's right for them to have the death
13   penalty if you kill someone, if you're guilty.  If
14   you're not guilty, I don't think they should have it.
15   Q        Do you feel that everyone who is convicted of
16   killing someone should receive the death penalty?
17   A        Not everyone, no.
18   Q        Why do you think it would be appropriate in
19   certain circumstances?
20   A        Well, I just --
21            THE COURT:  Let me say this, ma'am.  If the
22   law provides that, will you follow the law?
23            JUROR:  Uh-huh.
24            THE COURT:  Go ahead.
25   Q        Why do you feel that it's appropriate in
```

130

1    certain circumstances?

2    A        I really don't know.  I just feel in some

3    cases it is.

4    Q        As Judge Lafon just stated, you would follow

5    the law in regard to that if the law required it.

6    A        I would.

7    Q        There are two phases of this trial.  One is

8    the guilt and innocence phase.  That is where the

9    prosecutor puts on -- Mr. Woodall and Mr. Earls put on

10   their proof and they try -- they ask and they try to

11   prove to you beyond a reasonable doubt that Mr. Hall is

12   guilty of first degree murder.  First degree murder has

13   several elements, of which the two ones we're bringing

14   to your attention are premeditation and deliberation.

15   Mr. Woodall and Mr. Earls will have to prove to you

16   beyond a reasonable doubt that Mr. Hall committed a

17   murder with a plan premeditated and carried out that

18   plan deliberately, which is defined as with cool

19   purpose and with reflection and judgment.  If the State

20   does not carry their burden of proof, if they don't

21   prove to you beyond a reasonable doubt that it was

22   premeditated and that it was deliberate, carried out

23   with cool purpose and a clear head, then will you

24   consider other offenses that Mr. Hall may be guilty of,

25   namely second degree murder?

131

1   A          Yes.

2   Q          This is a sensitive question.  We ask it back

3   here so no one is embarrassed in front of other members

4   of the jury, but has anybody in your family, anyone

5   really close to you, been involved in a domestic

6   situation that may have ended up in an argument that

7   was brought to the Court's attention or anyone charged

8   with it or anything like that?

9   A          Years ago.

10  Q          Who would that be?

11  A          My son-in-law.

12  Q          Your son-in-law was charged with what?

13  A          Assault.

14  Q          On who?

15  A          Me.

16  Q          On you?

17  A          Uh-huh.  I'm glad you didn't ask that in

18  front of everybody.

19  Q          What happened with that?  Was he taken to

20  court?

21  A          Uh-huh.

22  Q          Was he convicted of assault?

23  A          Well I dropped the charges.

24  Q          Do you mind telling me what he did?

25             THE COURT:  I won't allow her to go into

                              132

1    details.  She said the charge was assault and she

2    dropped it.  You can ask her if that will affect her in

3    any way.

4    Q       Ms. Maness, how long ago was that?

5    A       It's been about eight, nine years.

6    Q       Is he still your son-in-law?  Is he still

7    married to your daughter?

8    A       Yes.

9    Q       Do y'all get along now?

10    A       Yes.

11    Q       Would that affect your judgment in this case

12    any?

13    A       No.

14    Q       You'd still be able to be open and honest,

15    fair and impartial?

16    A       Yes, I really would.

17    Q       If you do agree with the State, if they do

18    prove their case beyond a reasonable doubt, each and

19    every element, then we get to the sentencing phase, to

20    the punishment phase.  There not only is the death

21    penalty, but there are two other punishments available

22    for the jury to impose, that is, if we get over the

23    first degree murder part and if he is convicted of

24    that.  Because if he's convicted of anything lesser,

25    then you never reach the death penalty phase.  But if

1  he is, there is life without parole, there is life with

2  parole.  Would you consider the two options, life with

3  parole and life without parole just as you would

4  consider the death sentence?

5  A      Yes.

6         MR. MAYO:  Thank you.

7         **(JUROR EXCUSED.)**

8                        - - - - -

9         **(All parties returned into open**

10        **court, and the following proceedings**

11        **were had to-wit:)**

12        THE COURT:  Pass your forms.

13        Celia White, step down, please.

14        Jack Collins, step down, please.

15        **(There was a recess for lunch from**

16        **12:10 p.m. until 1:30 p.m., and**

17        **the following proceedings were had**

18        **to-wit:)**

19        THE COURT:  All right, ladies and gentlemen,

20  as I call your name, come and be seated up here on the

21  front row.

22        Dennis Kenton, Theora Love, Laura Bozza,

23  Luanne Nelson, Donna Turner, Wanda Mosley, Frances

24  Heavner, Ardis Long, Billy Collins, Francis Brown.

25        Again, if I call your name correctly raise

134

1    your hand.

2             Dennis Kenton, Theora Love, Laura Bozza,

3    Luanne Nelson, Donna Turner, Wanda Mosley, Frances

4    Heavner, Ardis Long, Billy Collins, Francis Brown.

5             For you 10 ladies and gentlemen, I assume

6    each one of you has been here in the courtroom.  If you

7    haven't raise your hand.

8             Is there any one of you that hadn't heard

9    what took place in the original voir dire examination

10   of the tentative jurors?

11            Is there anything that any one of you heard,

12   either by me as the Judge or Mr. Woodall or Mr. Ford,

13   that would in any way interfere with you being fair and

14   impartial jurors?

15            Any of you got any connection with policemen

16   in the family or anything like that that might

17   interfere with you?

18            What's your situation, sir?

19            JUROR:  I know one of the witnesses.

20            THE COURT:  Well that's not uncommon.  Would

21   the fact that you know a policeman prevent you from

22   being fair and impartial?

23            JUROR:  No.

24            THE COURT:  I can -- As I told the other jury

25   before, I can sit up here all day and ask questions,

135

1  but is there anything -- Have any one of you had any

2  publicity that you've heard as far as this case is

3  concerned that might poison your mind or taint you or

4  interfere with you?

5          All right, General.

6          MR. WOODALL:  I don't have any questions.

7          THE COURT:  Do you have any questions, Mr.

8  Ford?

9          MR. FORD:  Oh, yes, sir.

10         THE COURT:  Go right ahead.

11         MR. FORD:  Ladies and gentlemen, if you'll

12 please bear with me, this will save a lot of time, but

13 I must ask these questions since you all can

14 potentially be placed in the box, and I'll go through

15 this as quickly as possible.  If you'll just please

16 bear with me and be patient.

17         Mr. Kenton, how are you today?

18         JUROR:  All right.

19         MR. FORD:  I need to bring this to

20 everybody's attention.  I represented Mr. Kenton

21 before.

22         THE COURT:  You what?

23         MR. FORD:  I have represented Mr. Kenton.

24 He's a client of mine, Your Honor.  I just wanted to

25 point that out to the Court.

                          136

```
 1              THE COURT:  General Woodall, under our rules,

 2    that's grounds for a challenge.  Do you have any

 3    problem with it?

 4              MR. WOODALL:  I think that's a proper rule,

 5    Your Honor.

 6              THE COURT:  All right, you're excused.  Call

 7    in Wednesday night.

 8              MR. FORD:  Ms. Love, are you employed, ma'am?

 9              JUROR:  Yes, sir.

10              MR. FORD:  And where are you employed?

11              JUROR:  Alumax.

12              MR. FORD:  Are you married?

13              JUROR:  Divorced.

14              MR. FORD:  Have any children?

15              JUROR:  Three.

16              MR. FORD:  What are their ages?

17              JUROR:  22, 19 and 12.

18              MR. FORD:  What do you do at Alumax?

19              JUROR:  I'm a production tech.

20              MR. FORD:  Do you supervise any folks?

21              JUROR:  No.

22              MR. FORD:  Have you ever served in the

23    military?

24              JUROR:  No.

25              MR. FORD:  Any of your children in the
```

137

1    military?

2              JUROR:  No.

3              MR. FORD:  Have you served as a juror before?

4              JUROR:  Here.

5              MR. FORD:  Just this term of court?

6              JUROR:  Yes.

7              MR. FORD:  All right.  Do you have any close

8    friends or relatives that are involved in law

9    enforcement?

10             JUROR:  No.

11             MR. FORD:  Have you or any of your family

12   members been the victim of a crime?

13             JUROR:  No.

14             MR. FORD:  Ms. Bozza, how are you, ma'am?

15             JUROR:  Fine.

16             MR. FORD:  Are you employed?

17             JUROR:  Yes.

18             MR. FORD:  And where do you work?

19             JUROR:  Jackson-Madison County General

20   Hospital.

21             MR. FORD:  Are you married?

22             JUROR:  Yes.

23             MR. FORD:  Where does your husband work?

24             JUROR:  Ray Glass & Door.

25             MR. FORD:  How many children do you have?

                            138

1           JUROR:  Two children.

2           MR. FORD:  And their ages?

3           JUROR:  16 and seven.

4           MR. FORD:  All right.  Have you ever served

5    in the military or your husband?

6           JUROR:  I haven't but my husband has.

7           MR. FORD:  What branch?

8           JUROR:  Army.

9           MR. FORD:  How long ago was it?

10          JUROR:  '77 through about '80.

11          MR. FORD:  Three years.  Were you married at

12   that time?

13          JUROR:  No.

14          MR. FORD:  Have you served as a juror before?

15          JUROR:  This term.

16          MR. FORD:  No other court?

17          JUROR:  No.

18          MR. FORD:  Do you have any close friends or

19   relatives that are involved in law enforcement?

20          JUROR:  My next door neighbor is a retired

21   police officer.

22          MR. FORD:  Ever discussed any cases with him

23   or anything like that?

24          JUROR:  No.

25          MR. FORD:  Have you or any family member been

139

1    a victim of a crime?

2              JUROR:  I had a cousin who was killed by her

3    boyfriend, at the time.

4              MR. FORD:  You had a cousin, a female cousin,

5    that was killed by her boyfriend?

6              JUROR:  Right.

7              MR. FORD:  How long ago was that?

8              JUROR:  Oh, probably 20 years ago.

9              MR. FORD:  Okay.  This case we're dealing

10   with here today involved a domestic situation.  The

11   fact that your cousin was killed in a domestic-type

12   situation, would that have any bearing on your ability

13   to be open and have a clear conscious in judging the

14   facts of this particular case?

15             JUROR:  No.

16             MR. FORD:  Ms. Nelson, how are you?

17             JUROR:  Fine.

18             MR. FORD:  Are you employed, ma'am?

19             JUROR:  Yes, I am.  We own our own business.

20             MR. FORD:  What type of business is it?

21             JUROR:  Signs First.

22             MR. FORD:  And your husband works with you?

23             JUROR:  No, he's in the insurance business,

24   insurance agent.

25             MR. FORD:  How many children do you have?

140

1          JUROR:  Three.

2          MR. FORD:  What are their ages?

3          JUROR:  18, 15 and 12.

4          MR. FORD:  I'll refer this question to you

5    and to the other ladies.  Of course, there is going to

6    be some testimony from children in this case.  We

7    anticipate that.  Would that have any affect on your

8    ability to look at this with an open mind?

9          JUROR:  No.

10          MR. FORD:  And, Ms. Nelson, have you or your

11    husband served in the military?

12          JUROR:  No.

13          MR. FORD:  Have you served as a juror before?

14          JUROR:  Just this term.

15          MR. FORD:  In this courtroom?

16          JUROR:  Right.

17          MR. FORD:  Do you have any close friends or

18    relatives that are involved in law enforcement?

19          JUROR:  No.

20          MR. FORD:  Have you or any family members

21    been the victim of a crime?

22          JUROR:  No.

23          MR. FORD:  Ms. Turner, are you employed,

24    ma'am?

25          JUROR:  Yes, I am.  I'm the program director

141

1    at Northside United Methodist Church.

2              MR. FORD:  Are you married?

3              JUROR:  I'm divorced.

4              MR. FORD:  Do you have any children?

5              JUROR:  Two.

6              MR. FORD:  Grown?

7              JUROR:  Grown and gone.

8              MR. FORD:  Have you served in the military

9    before?

10             JUROR:  No.

11             MR. FORD:  Have you ever served as a juror?

12             JUROR:  Just this term.

13             MR. FORD:  Just here, nowhere else before?

14             JUROR:  No.

15             MR. FORD:  Do you have any close friends or

16   relatives that are connected or involved in law

17   enforcement in any way?

18             JUROR:  No.

19             MR. FORD:  Have you been the victim of a

20   crime?

21             JUROR:  My house was broken into.

22             MR. FORD:  How long ago was that?

23             JUROR:  About five years ago.

24             MR. FORD:  Did they catch who did it?

25             JUROR:  Of course not.  No.

                         142

1              MR. FORD:  I hope that that won't affect your

2    --

3              JUROR:  No.

4              MR. FORD:  Didn't expect them to, did you?

5              JUROR:  No.

6              MR. FORD:  Ms. Mosley.  How are you, Ms.

7    Mosley?

8              JUROR:  Fine.

9              MR. FORD:  Have I represented you?

10             JUROR:  No.

11             MR. FORD:  I didn't think I had.  Okay.  I

12   just wanted to make sure I hadn't.  Where are you

13   employed, Ms. Mosley?

14             JUROR: Home health agency.

15             MR. FORD:  Are you married?

16             JUROR:  Yes.

17             MR. FORD:  And what does your husband do?

18             JUROR:  Self-employed carpenter.

19             MR. FORD:  Do y'all have any children?

20             JUROR:  Four.

21             MR. FORD:  What are their ages?

22             JUROR:  19, 16, 13 and 12.

23             MR. FORD:  Again, you heard my question about

24   the children being witnesses.

25             JUROR:  Yes.  It won't affect me.

143

```
 1              MR. FORD:  Okay.  Is your husband in the

 2   military, or have you ever served in the military?

 3              JUROR:  No.

 4              MR. FORD:  Have you served as a juror before?

 5              JUROR:  No.

 6              MR. FORD:  Did you serve -- You weren't

 7   picked this term of court?

 8              JUROR:  No.

 9              MR. FORD:  Do you have any close friends or

10   relatives that work or are employed in law enforcement?

11              JUROR:  No.

12              MR. FORD:  Have you or any family member been

13   the victim of a crime?

14              JUROR:  No.

15              MR. FORD:  Ms. Heavener?

16              JUROR:  Yes, sir.

17              MR. FORD:  Are you employed, ma'am?

18              JUROR:  Yes, sir.

19              MR. FORD:  And where are you employed?

20              JUROR:  Heil Beauty Supply.

21              MR. FORD:  What do you do there?

22              JUROR:  I'm a sales clerk.

23              MR. FORD:  Okay.  Are you married, ma'am?

24              JUROR:  Yes, I am.

25              MR. FORD:  And what does your husband do?
```

1                JUROR:  He works at Lowe's.

2                MR. FORD:  Do you have any children?

3                JUROR:  No.

4                MR. FORD:  What does he do at Lowe's?  Is he

5     a supervisor or ...

6                JUROR:  Contractor sales.

7                MR. FORD:  Was he in the military, or have

8     you ever served in the military?

9                JUROR:  No.

10               MR. FORD:  Have you ever served as a juror

11    before?

12               JUROR:  Yes, sir, this term.

13               MR. FORD:  This term, this court.  Any other

14    time?

15               JUROR:  No, sir.

16               MR. FORD:  Do you have any close friends or

17    family members that are connected with or employed by

18    law enforcement?

19               JUROR:  I have a cousin that works for the

20    City Court Clerk's office.

21               MR. FORD:  Have you all discussed any cases

22    or court matters that come up?

23               JUROR:  No.

24               MR. FORD:  Have you or any of your family

25    members been the victim of a crime?

                          145

1              JUROR:  No, sir.

2              MR. FORD:  Ms. Long.  Good afternoon, Ms.

3      Long.  Are you employed, ma'am?

4              JUROR:  Yes, I work for my husband.  He's a

5      building contractor.

6              MR. FORD:  Do y'all have any children?

7              JUROR:  Yes.

8              MR. FORD:  What are their ages?

9              JUROR:  10 and 13.

10             MR. FORD:  Of course, you heard my question

11     about children testifying.  Would that have any affect

12     on you at all?

13             JUROR:  No.

14             MR. FORD:  Have you or your husband served in

15     the military?

16             JUROR:  My husband was in the Marines.

17             MR. FORD:  What years did he serv?

18             JUROR:  Vietnam.

19             MR. FORD:  Vietnam, okay.  One tour, two

20     tours?

21             JUROR:  Two tours.

22             MR. FORD:  Two tours in Vietnam.  Have you

23     served as a juror?

24             JUROR:  Here.

25             MR. FORD:  Is this the only time that you've

146

1   ever served?

2            JUROR:  Yes.

3            MR. FORD:  Do you have any close friends or

4   relatives that are connected in law enforcement?

5            JUROR:  No.

6            MR. FORD:  Have you or any family member or

7   close friend been a victim of a crime?

8            JUROR:  No.

9            MR. FORD:  Mr. Collins, good afternoon, sir.

10  Which witness -- You stated that you knew one of the

11  witnesses.  Which one was that?

12           JUROR:  Rick Lunsford, one of the officers.

13           MR. FORD:  Okay.  Is that a casual

14  acquaintance, close friends or --

15           JUROR:  I worked security with him.

16           MR. FORD:  Worked security when he was off

17  duty?

18           JUROR:  Yes.

19           MR. FORD:  What -- At a department store or

20  ...

21           JUROR:  Tremors.

22           MR. FORD:  Tremors, okay.  Are you married,

23  sir?

24           JUROR:  No, sir.

25           MR. FORD:  Do you have any children?

147

1              JUROR:  One daughter, 27.

2              MR. FORD:  Have you ever served in the

3    military?

4              JUROR:  No.

5              MR. FORD:  Have you served as a juror?

6              JUROR:  In '84 and now.

7              MR. FORD:  Criminal cases in '84 or were they

8    civil?

9              JUROR:  I never was picked.  I can't remember

10   what it was.

11             MR. FORD:  You just came in, and you were

12   lucky enough not to be picked.

13             JUROR:  Right.

14             MR. FORD:  Okay.  Do you have any close

15   friends or relatives that are connected with law

16   enforcement?

17             JUROR:  Just friends.

18             MR. FORD:  Do you discuss any cases, duties,

19   anything of that nature?

20             JUROR:  No.

21             MR. FORD:  Have you or any family member been

22   a victim of a crime?

23             JUROR:  No, sir.

24             MR. FORD:  And, Ms. Brown, finally.  Are you

25   employed, ma'am?

1          JUROR:  Woodland Baptist Church in the

2    daycare.

3          MR. FORD:  Are you married?

4          JUROR:  Yes.

5          MR. FORD:  Do you have any children?

6          JUROR:  A two-year-old.

7          MR. FORD:  Where does your husband work?

8          JUROR:  He's a loan prevention specialist for

9    an insurance company.

10          MR. FORD:  Does he supervise any employees

11    that work under him?

12          JUROR:  No.

13          MR. FORD:  Has he or you served in the

14    military at any time?

15          JUROR:  No.

16          MR. FORD:  Have you served as a juror before

17    now?

18          JUROR:  The first time was several years ago,

19    and it was a murder case and a sequestered jury.

20          MR. FORD:  A sequestered jury?

21          JUROR:  Yes.

22          MR. FORD:  Okay.  Do you have any close

23    friends or relatives that are connected with law

24    enforcement?

25          JUROR:  My brother-in-law is on the sheriff's

149

1    department.

2            MR. FORD:  What's his name?

3            JUROR:  Jerry Elston.

4            MR. FORD:  Okay.  The fact that he works with

5    the sheriff's department, would that influence your

6    ability to enter into this case with an open mind?

7            JUROR:  No.

8            MR. FORD:  Have you or any family member been

9    the victim of a crime?

10           JUROR:  I had a house burglary.

11           MR. FORD:  House burglary.  I'm not going to

12   ask you if they caught them or not.  The fact that that

13   did occur, would that have any influence on you at all

14   in deciding this case?

15           JUROR:  No.

16           MR. FORD:  I believe that's all the questions

17   I have at this time, Your Honor.

18           **(The following proceedings were**

19           **had in the jury room:)**

20           THE COURT:  What is your name, ma'am?

21           JUROR:  Leora Love.

22           THE COURT:  Leora, we want to ask you some

23   questions about the handling of the death penalty

24   should it become necessary for you to vote on it.

25           General.

1    **EXAMINATION BY MR. WOODALL:**

2    Q        Ms. Love, upon a finding of guilt to murder

3    in the first degree, the State of Tennessee is going to

4    ask you to impose the death penalty.  Can you fairly

5    consider the death penalty along with other forms of

6    punishment?

7    A        Yes.

8    Q        Now, the law in the State of Tennessee is

9    this, that if the State proves to your mind beyond a

10   reasonable doubt after a finding of guilt to murder in

11   the first degree that the aggravating circumstances

12   outweigh any mitigating circumstances the Defendant may

13   raise on his behalf, then the punishment shall be

14   death.  Can you follow the law in the State of

15   Tennessee?

16   A        Yes, sir.

17   Q        And will you do that?

18   A        Yes, sir.

19            MR. WOODALL:  Thank you.

20   **EXAMINATION BY MR. FORD:**

21   Q        Ms. Love, we may not ever et to the point

22   where we have to decide the issue of the death penalty.

23   This case is divided up into two different parts  The

24   first part we call the guilt or innocence phase.  In

25   that part the State of Tennessee would have to prove

151

1    beyond a reasonable doubt that a premeditated first

2    degree murder occurred, meaning it was planned, it was

3    deliberate, it was done with a cool purpose and mind

4    after reflection and judgment.  If the State of

5    Tennessee does not prove that first degree

6    premeditation beyond a reasonable doubt, would you

7    consider a lesser included offense of second degree

8    murder, if the Court so instructs you?

9    A        Yes.

10    Q        We expect that the proof in this case is

11    going to show that there were some domestic problems

12    between the parties, and I have to ask a sensitive

13    question and we're asking it back here so nobody else

14    can hear this.  Have you or any family member been

15    involved -- or had any domestic problems, arguments out

16    of the ordinary?  Everybody argues, but, I mean, you

17    know what I'm saying.

18           THE COURT:  Have you ever had any violence

19    connected with anybody in your family where it's man

20    and wife?

21           JUROR:  No.

22           THE COURT:  Is that all right?

23           JUROR:  Yes, sir.

24    Q        If we get to the penalty phase which is the

25    second part, the State of Tennessee will be trying to

152

1    prove that certain aggravating circumstances exist

2    surrounding this case, and we will put on proof, or

3    there will be proof of certain mitigating

4    circumstances.  As a juror in the penalty phase, you

5    will be called upon to weigh the proof, to weigh the

6    aggravating circumstances against the mitigating

7    circumstances, and if the aggravating circumstances do

8    not outweigh the mitigating circumstances beyond a

9    reasonable doubt, then you can consider other forms of

10   punishment other than the death penalty.  You can

11   consider life without parole and you could also

12   consider life with the possibility of parole.  Will you

13   consider all three forms of punishment?

14   A        Yes, sir.

15   Q        If we get to that point.

16            **(JUROR EXCUSED.)**

17                            - - - - -

18            THE COURT:  Ma'am, we're going to ask you

19   questions about how the death penalty is handled.  You

20   listen to these questions.

21            What's your name?

22            JUROR:  Laura Bozza.

23   **EXAMINATION BY MR. WOODALL:**

24   Q        Ms. Bozza, upon a finding of guilt to murder

25   in the first degree, the State of Tennessee is going to

153

1    ask you to impose the death penalty.  Can you fairly

2    consider the death penalty along with other forms of

3    punishment?

4    A          I'm not sure I can, just to be honest.  I

5    think I'd have a hard time.

6    Q          That's why we're here.  I mean, this is

7    serious business.

8    A          Right, absolutely.

9    Q          Speak now or forever hold your peace.  The

10   law also in the State of Tennessee is this, that if the

11   aggravating circumstances proven by the State beyond a

12   reasonable doubt outweigh the mitigating circumstances

13   that the Defendant might raise on his behalf, the

14   punishment shall be death.  Now that's the law in the

15   State of Tennessee.  And if you have misgivings about

16   it and don't feel like you could follow the law, now is

17   the time to tell us.

18   A          Well, I think that I'd have a real hard time

19   signing my name to a death penalty.  I really do.

20   Q          And there's no right or wrong answer here.

21   You're certainly not going to be punished because you

22   don't feel like that you could do this.  Is this based

23   upon personal beliefs or religious beliefs, or both?

24   A          Both.

25   Q          Would it be a fair statement to say that

154

1   based upon these very I assume strong personal and

2   religious beliefs, that even if the State of Tennessee

3   says that you must impose the death penalty, you

4   couldn't do it?

5   A       I don't think so, no, sir.

6   Q       And won't do it.

7   A       No, sir.

8   Q       Just can't and won't.

9   A       Yes, sir.

10  Q       You would consider life without parole or

11  life with the possibility of parole, but Ms. Bozza

12  isn't going to consider nor will she vote to impose the

13  death penalty.

14  A       Right.

15          MR. WOODALL:  Thank you.

16          MR. MAYO:  Your Honor, if I could go ahead

17  and question her.

18          THE COURT:  Sure.

19  **EXAMINATION BY MR. MAYO:**

20  Q       Ms. Bozza, Mr. Woodall has asked you about

21  whether or not you could impose the death penalty.  You

22  understand Tennessee has got laws and there are reasons

23  for those laws; is that correct?

24  A       Uh-huh.

25  Q       And you follow those laws in your everyday

155

1    life.  That's also correct, isn't it?

2    A        Yes.

3    Q         There are other forms of punishment, Mr.

4    Woodall just mentioned those, if the jury comes back

5    with a first degree conviction on Mr. Hall, life

6    without parole, life with parole and the death penalty.

7    All three of those are the laws of Tennessee.  The jury

8    gets to weigh out the evidence at a sentencing hearing

9    and decide whether they believe that the mitigation

10   weighs more than the aggravating factors or the

11   aggravating factors weigh more than the mitigating

12   factors.  If the mitigation weighs more, then it would

13   be life with parole or life without parole.  Do you

14   understand that?

15   A        Yes.

16   Q         If Judge LaFon orders you and instructed you

17   as a member of this jury to follow the laws of

18   Tennessee and you were sitting on there and the proof

19   came back where Mr. Hall had committed the first degree

20   murder, do you think that you could follow the law of

21   Tennessee and carry that out?

22   A        I guess, other than the death penalty.

23   Q         You don't think that even if you were

24   instructed to follow the law of Tennessee that you

25   could impose the death penalty at all?

156

1    A        No.

2    Q        Under any circumstance?

3    A        If that was what the law required, I guess I

4    would.

5        MR. MAYO:  Thank you.

6        THE COURT:  Ma'am, here's the situation.  Now

7    you have the question of the jury finding him guilty,

8    and then you consider the mitigating and aggravating

9    circumstances.  And should it come up in your opinion

10   he was guilty of murder, that would carry the death

11   penalty.  Would you vote for that?  Now nobody is going

12   to be mad at you.  This is a tough situation.

13       JUROR:  Yes, sir, it is.

14       THE COURT:  And it's not any reflection on

15   you at all.  You've been sitting on juries out here

16   doing a good job, and you have a right to express your

17   opinion.  And the question is, in the event that the

18   proof did show that he's guilty of what's constituted

19   murder that would carry the death penalty, would you

20   vote for the death penalty?  Would you consider it?

21       JUROR:  I'd consider it.  I just --

22       THE COURT:  Well, would you do it?  It's all

23   right.

24       JUROR:  No.  I've just always -- I don't

25   know.  Even the little cases that we've done so far, I

157

1    leave out of here and my conscious is thinking back

2    over everything, and I don't know that I can

3    personally, because of religious background, actually

4    say --

5           THE COURT:  It's all right for you to express

6    your opinion.  Nobody is -- What is your opinion?

7    Could you under any circumstances vote for the death

8    penalty?

9           JUROR:  No.  I'd just have to say no.

10          THE COURT:  I believe, General, that I've

11   tried as best as I can.

12          Do you have any problem with that, Mr. Ford?

13          MR. FORD:  No, sir.

14          THE COURT:  You can go.

15                      - - - - -

16          THE COURT:  What is your name?

17          JUROR:  Luanne Nelson.

18          THE COURT:  You're going to be asked some

19   questions about handling the death penalty, so you pay

20   attention and answer them as best you can.

21          JUROR:  Okay.

22          THE COURT:  Go ahead, General.

23   **EXAMINATION BY MR. WOODALL:**

24   Q       Ms. Nelson, upon a finding of guilt of murder

25   in the first degree, the State of Tennessee is going to

                          158

1    ask you to impose the death penalty in this case.  Can

2    you fairly consider the death penalty along with other

3    forms of punishment?

4    A        Yes.

5    Q        I believe if we get to that point in the

6    trial, that the Judge will at the appropriate time

7    instruct you that the law in the State of Tennessee is

8    this:  Upon a finding of guilt of murder in the first

9    degree, if the State proves to your mind beyond a

10   reasonable doubt that the aggravating circumstances

11   outweigh the mitigating circumstances which might be

12   raised by the Defendant on his own behalf, then the

13   punishment that you must impose is death.  Can you do

14   that?

15   A        Yes, I can.

16            MR. WOODALL:   Thank you.

17   **EXAMINATION BY MR. FORD:**

18   Q        Ms. Nelson, this case is divided into two

19   different parts.  There is the guilt or innocence phase

20   and there's the penalty phase.  Now we may not ever get

21   to the point of having to recognize the death sentence

22   as, you know, a penalty to apply in this case because

23   the State of Tennessee in a guilt or innocence phase

24   has to prove that there was a premeditated first degree

25   murder, meaning that it was done deliberately, with a

1    cool purpose in mind after reflection and judgment.

2    The State has to prove all of those elements of

3    premeditation before we get there.  If the State fails

4    to do that, fails to prove premeditation, that there

5    was actually a premeditated murder, would you consider

6    the lesser included offense of second degree murder?

7    A        Uh-huh.

8    Q        Okay.  One of the reasons we bring you back

9    here is so that we can -- there are certain questions

10   that we have to ask that are sensitive in nature and we

11   don't want the general public knowing the answer, and

12   one of those is, we expect the proof will show that

13   this was a domestic situation relationship and there

14   were problems in the relationship.  Have you or any

15   family member, friend, had any domestic-type problems

16   that arose to a serious degree?

17   a        No.

18   Q        If we do get to the penalty phase, there's no

19   automatic death penalty.  You're not required to

20   automatically just say, "Well he's guilty.  Death

21   penalty."  What happens at that point is that there are

22   -- the State of Tennessee has to prove certain

23   aggravating circumstances exist beyond a reasonable

24   doubt.  They have to -- the same criteria that you

25   would apply in the guilt or innocence phase.  They have

1  to prove aggravating circumstances surrounding this

2  case beyond a reasonable doubt.  There will also be

3  proof of mitigation, things that lessen culpability.

4  Your job at that point would be to weigh up

5  aggravators, mitigation, and come to a conclusion as to

6  whether or not the aggravating circumstances outweigh

7  the mitigating circumstances.  Then you consider the

8  punishment and the appropriate form of punishment.  Now

9  there are three forms of punishment, of course, the

10  death penalty being one of them.  The other one, the

11  other two, there's life without parole, and there's

12  also life with the possibility of parole.  Would you

13  also consider those other two forms of punishment?

14  A        Yes, sir.

15          MR. FORD:  Thank you.

16          **(JUROR EXCUSED.)**

17                      - - - - -

18          THE COURT:  Tell us your name, ma'am.

19          JUROR:  Donna Turner.

20          THE COURT:  Ms. Turner, you're going to be

21  questioned about how to handle -- about the death

22  penalty.  Let me ask you one more thing.  We didn't do

23  it out there, but do you have any -- There's going to

24  be some evidence probably of domestic problems in this

25  case.  Has any member of your family been in any

161

1  trouble where there was violence or any violence with

2  regard to a domestic ...

3           JUROR:  No.

4  **EXAMINATION BY MR. WOODALL:**

5  Q        Ms. Turner, upon a finding of guilt of murder

6  in the first degree, the State of Tennessee is going to

7  ask you to impose the death penalty in this case.  Can

8  you fairly consider the death penalty along with other

9  forms of punishment?

10 A        No, sir.

11 Q        You cannot?

12 A        No, sir.

13 Q        All right.  Now is this for personal reasons

14 and religious reasons?

15 A        Yes, sir.

16 Q        All right.  And there's no wrong answer to

17 this.  This is very serious business.  But what you're

18 telling me is that irrespective of what the law is in

19 the State of Tennessee, based upon your very deeply

20 held personal or religious convictions, you could vote

21 for life imprisonment or life without parole but could

22 under no circumstances vote for the death penalty.

23 A        No, sir.

24 Q        Could not.

25 A        No, sir.

162

1    Q        And will not.  Will not; is that correct?

2    A        Yes, sir.

3                        - - - - -

4    **EXAMINATION BY MR. FORD:**

5    Q        I know it's a very sensitive issue, but what

6    the question is, would you consider it?  In other

7    words, you don't have to automatically do it, but in a

8    case like this, if the State proves that there is a

9    deliberate, premeditated first degree murder and that

10   there are aggravating circumstances present that

11   outweigh mitigating circumstances -- now you'll listen

12   to a lot of information -- the question is, would you

13   consider that as an appropriate form of punishment

14   along with other possibilities, being life without

15   parole and life with the possibility of parole?  It's

16   just would you consider it.

17   A        If taking a life is such a heinous crime,

18   then you can't take a person's life.  That's --

19            THE COURT:  Ma'am, let me ask you this.

20   Would you under any circumstances vote for the death

21   penalty?

22            JUROR:  No, sir.

23            THE COURT:  Does that get it, Mr. Ford?

24            MR. FORD:  Yes, sir.

25            THE COURT:  All right, you're excused.  Call

1    in Wednesday night.

2                          - - - - -

3              THE COURT:  What is your name, please, ma'am?

4              JUROR:  Wanda Mosley.

5              THE COURT:  This is -- You'll be questioned

6    about how to handle a case regarding the death penalty.

7    Let me ask you one more thing they hadn't asked out

8    there.  But sometimes -- There's going to be possibly

9    some domestic problems in this case.  Has any member of

10   your family or you been having any domestic violence?

11             JUROR:  No.

12   **EXAMINATION BY MR. WOODALL:**

13   Q        Ms. Mosley, upon a finding of guilt of murder

14   in the first degree, the State of Tennessee is going to

15   ask you to impose the death penalty.  Can you fairly

16   consider the death penalty along with other forms of

17   punishment?

18   A        Yes.

19   Q        I believe if the State does prove to your

20   mind beyond a reasonable doubt to a moral certainty

21   that the Defendant is, in fact, guilty of murder in the

22   first degree, the Court will then instruct you that if

23   you find that the aggravating circumstances do not

24   outweigh the mitigating circumstances, in other words,

25   something the Defendant would say on his own behalf,

                              164

1    then you shall impose the death penalty.  That's the

2    law in the State of Tennessee.  Can you follow the law

3    in the State of Tennessee?

4    A        Yes.

5    Q        Will you follow the law?

6    A        Yes.

7             MR. WOODALL:  Thank you.

8    **EXAMINATION BY MR. MAYO:**

9    Q        Ms. Mosley, how do you feel about the death

10   penalty?

11   A        How do I feel about it?

12   Q        Uh-huh.

13   A        Well, I don't -- If it's proven, you know, I

14   don't really have a problem with it if I feel that --

15   you know, everything was handled right and the person

16   was guilty.

17   Q        Thank you.  General Woodall spoke of several

18   things about first degree murder.  This trial is going

19   to take place perhaps in two parts.  The first part of

20   the trial or phase of the trial is the guilt or

21   innocence phase, and that's where it has to be

22   determined if Mr. Hall committed murder, period, and if

23   he did, what type of murder was it.  Mr. Woodall has

24   mentioned first degree murder.  He has to be convicted

25   of first degree murder to be subjected to the death

1    penalty, to have a possibility of getting the death

2    penalty.  As part of first degree murder, Mr. Woodall

3    has to put on proof that this act was committed

4    premeditatedly, it was premeditated, and it was carried

5    out with cool, deliberate purpose, acting in a cool way

6    with judgment, reflection, clear head.  Now, if the

7    State through Mr. Woodall and Mr. Earls does not prove

8    to you beyond a reasonable doubt each and every

9    element, premeditation, deliberation, would you be

10   willing to consider other offenses that Mr. Hall may be

11   guilty of?  Namely, second degree murder?

12   A       Yes.

13   Q         If the State proves the first degree murder

14   case to you, and if they do, there will be a second

15   phase of it which would be the sentencing phase.  And

16   at that phase there will be proof put on by the State

17   as to aggravation, aggravating factors the State is

18   asking you to rely upon to sentence Mr. Hall to death.

19   And the defense will be putting on mitigation factors,

20   explanations of why this may have occurred.  You are

21   under no obligation to sentence someone to death.  Do

22   you understand that you have other options?

23   A       Yes.

24   Q         Will you be willing to listen to the

25   mitigation factors just as much as you are willing to

166

```
 1    listen to the aggravating factors?

 2    A        Yes.

 3    Q        Will you be willing to impose a sentence of

 4    life without parole or life with parole if he's

 5    convicted of first degree murder and you feel that the

 6    mitigation factors outweigh the aggravating factors?

 7    A        Yes.

 8             MR. MAYO:  Thank you.

 9             (JUROR EXCUSED.)

10                        -  -  -  -  -

11             (All parties returned into open

12             court, and the following proceedings

13             were had to-wit:)

14             THE COURT:  Pass your forms.

15             I believe Ms. Tubbs, please step down.

16             Ma'am, you come around.

17             All right, ladies and gentlemen, you've been

18    tentatively selected as a member of the jury.  I

19    believe we'll select two alternates.

20             You two come around.

21             Let's go to the jury room.

22             (The following proceedings were

23             had in the jury room:)

24             THE COURT:  What is your name, ma'am?

25             JUROR:  Francis Heavner.
```

167

```
 1              THE COURT:  Francis, we're -- the lawyers are
 2    here asking you questions about the death penalty, and
 3    you just answer them.  Now one other thing, we didn't
 4    do it out there, but there may be some domestic
 5    violence or at least domestic trouble in this case.
 6    Has there ever been any of your family, some member of
 7    your family, where there's domestic violence?
 8              JUROR:  No, sir.
 9              THE COURT:  All right, General.
10    EXAMINATION BY MR. WOODALL:
11    Q         Ms. Heavner, if you're called upon to replace
12    one of these jurors, you're kind of like a spare tire
13    in the trunk.  You're selected as an alternate, but if
14    the tire goes flat you become very important.  So
15    obviously you need to listen to the proof just like if
16    you may be called upon to deliberate.
17    A         Yes, sir.
18    Q         So the question then becomes, upon a finding
19    of guilt of murder in the first degree, the State of
20    Tennessee is going to ask you to impose the death
21    penalty, Ms. Heavner.  Can you fairly consider the
22    death penalty along with other forms of punishment?
23    A         Well I thought about it, and I'd base my
24    opinion on like, say, the evidence that's presented,
25    whatever.
```

1  Q        Okay.  So you could fairly consider the death

2  penalty, is what you're saying, along with other forms

3  of punishment.

4  A        If it comes down to it.  Like I said, the

5  evidence ...

6  Q        Well sure.  We would certainly want you to do

7  that.  That's your duty and your obligation.  Now, if

8  the jury finds the Defendant guilty of murder in the

9  first degree, I've already told you we're going to ask

10  for the death penalty if it's appropriate.  But now the

11  Court will instruct you at that time that if the

12  aggravating circumstances proved by the State beyond a

13  reasonable doubt outweigh any mitigating circumstances

14  that the Defendant may present in his behalf, then the

15  law in the State of Tennessee is you shall impose the

16  death penalty.  Can you follow the law in the State of

17  Tennessee?

18  A        I can follow the law, yes, sir.

19        MR. WOODALL:  Thank you.

20  **EXAMINATION BY MR. FORD:**

21  Q        Ms. Heavner, we may not ever get to that

22  point in this trial.  This case is divided into two

23  separate parts, the first part being what we refer to

24  as the guilt and innocence phase, where there will be a

25  trial where the State will be required, just like in

1     any other trial, to prove the elements of the offense

2     charged beyond a reasonable doubt.  In this case the

3     State is seeking to prove premeditated first degree

4     murder, a murder that was committed with deliberation,

5     with plan, with cool purpose, after much use of --

6     thought, judgment and reflection, that kind of thing.

7     If the State is unable to prove premeditation, would

8     you consider a lesser included offense which would be

9     second degree murder?

10     A        Yes.

11     Q        You're going to look at all the evidence is

12     what you're saying.

13     A        Yes, sir.

14     Q        If we get to the penalty phase, there will be

15     mitigating factors, aggravating factors, and you'll be

16     asked to weigh them up, and that's another form of

17     looking at the evidence.  There are three forms of

18     punishment that you can impose.  Of course, you've been

19     asked about the death penalty, and there's life without

20     the possibility of parole and life with parole.  Would

21     you also consider those other forms of punishment if we

22     get to the penalty phase and if the aggravating factors

23     outweigh the mitigating factors in this particular

24     matter?

25     A        Yes, sir.

1          MR. FORD:  Thank you.

2          **(JUROR EXCUSED.)**

3          MR. WOODALL:  Judge, before we bring another

4     juror in, I think we ought to understand the ground

5     rules for challenging an alternate.  One per alternate.

6          THE COURT:  That's right.

7          MR. WOODALL:  If you challenge this one, then

8     the next one will stick unless you can get them for

9     cause.

10         MR. WOODALL:  Will they become number -- The

11    second person would become the first alternate, and

12    unless they challenge them, that becomes the first

13    alternate.

14         THE COURT:  We're going to select this

15    alternate.

16         MR. WOODALL:  I understand.

17         THE COURT:  And then if somebody gets sick,

18    that alternate will be the first one to go on the main

19    jury.

20         MR. WOODALL:  Right.  Now, I would ask of the

21    Court to do three alternates instead of two.  I've been

22    through this too many times to --

23         THE COURT:  I have no objection to that.  I

24    don't mind three.

25                    - - - - -

171

1          THE COURT:  Tell us your name.

2          JUROR:  Ardis Long.

3          THE COURT:  Ms. Long, there's going to be

4    some questions about how the death penalty is handled.

5    Also, we didn't do it out there, but sometimes there is

6    some domestic violence that people have had or know

7    about, and there may be some in this case if you try

8    it.  Have you had any domestic violence in your own

9    family?

10         JUROR:  No.

11         THE COURT:  All right, General.

12   **EXAMINATION BY MR. WOODALL:**

13   Q          Ms. Long, obviously an alternate is very

14   important because, in your case, if two of the other

15   jurors are excused for any reason, then you would be

16   called upon to participate in the deliberation and hear

17   out the rest of the trial.  So it becomes important,

18   and I ask you this, that upon a finding of guilt of

19   murder in the first degree, the State of Tennessee is

20   going to ask you, Ms. Long, to impose the death

21   penalty.  Can you fairly consider the death penalty

22   along with other forms of punishment?

23   A          Yes.

24   Q          The second question then becomes, upon a

25   finding of guilt of murder in the first degree, if the

172

1    State proves beyond a reasonable doubt that the

2    aggravating circumstances outweigh the mitigating

3    circumstances, those produced by the Defendant, then

4    the law in the State of Tennessee is that you shall

5    impose the death penalty.  Can you follow the law in

6    the State of Tennessee?

7    A       Yes, sir.

8            MR. WOODALL:  Thank you.

9    **EXAMINATION BY MR. MAYO:**

10   Q       Ms. Long, how do you feel about the death

11   penalty?

12   A       I agree with it.

13   Q       Why do you agree with it?  What purpose do

14   you think it serves?

15   A       I just have always agreed with it.  I feel

16   like if you do that kind of a crime you should be

17   punished.

18   Q       Do you think that there are other forms of

19   punishment that would be enough, under certain

20   circumstances?

21   A       It depends on the circumstances.

22   Q       Mr. Woodall was talking to you about the

23   first degree murder, and if you found Mr. Hall guilty

24   of first degree murder, there are two phases to this

25   trial.  The first phase is the guilt or innocence

173

1    phase.  During the phase you determine whether you

2    believe beyond a reasonable doubt the elements of first

3    degree murder have been proven.  The State carries that

4    burden of proof.  It's their burden of proof all the

5    way through the trial.  Of those elements,

6    premeditation and deliberation are very important.

7    Premeditation means a plan to do what the Defendant is

8    supposed to have done, and deliberation means a cool

9    purpose in carrying out that plan, reflection,

10   judgment, clear head, things like that.  If the State

11   does not prove beyond a reasonable doubt, no matter

12   what the circumstances of the crime are, no matter how

13   bad it may seem, if those elements are not proven

14   beyond a reasonable doubt, are you willing to consider

15   other offenses that Mr. Hall may be guilty of, namely,

16   second degree murder?

17   A        Sure.

18   Q        If the jury finds beyond a reasonable doubt

19   that Mr. Hall is guilty of first degree murder, we just

20   covered this briefly, but if the jury finds that, there

21   are three different punishments that the jury could

22   hand out, one being the death penalty, the other being

23   -- the other two being life with parole, life without

24   parole.  The State will put on aggravating factors.

25   The defense will put on mitigating factors.  It is up

1    to the jury solely to decide whether the mitigating

2    factors outweigh the aggravating factors or vice versa.

3    Will you listen to those mitigating factors, and if the

4    mitigating factors outweigh the aggravating factors,

5    will you agree to consider the other forms of

6    punishment, namely life with parole or life without

7    parole, and return a verdict of that if you believe

8    that the mitigating factors outweigh the aggravating

9    factors?

10   A       Yes.

11           MR. MAYO:  Thank you.

12           **(JUROR EXCUSED.)**

13                    - - - - -

14           THE COURT:  What is your name, sir?

15           JUROR:  Billy Collins.

16           THE COURT:  Mr. Collins, there may be some

17   domestic violence in this case, some trouble or what

18   not.  Have you ever had any in your own immediate

19   family where that -- I don't mean having an argument

20   like I have with my wife, but I'm talking -- you know

21   what it means to be violent.  Have you ever had

22   anything like that?

23           JUROR:  No, sir.

24           THE COURT:  All right.

25           JUROR:  Not with my family members.

175

1           THE COURT:  Well, is there any violence that

2    you know of that would cause you to -- affect your

3    judgment in this case?

4           JUROR:  No.

5           THE COURT:  All right, General.

6           He's going to ask you some questions and then

7    the other lawyer about the death penalty.

8    **EXAMINATION BY MR. WOODALL:**

9    Q       Mr. Collins, upon a finding of guilt to

10   murder in the first degree, the State of Tennessee is

11   going to ask you to impose the death penalty, if you're

12   chosen, asked to sit as a juror.  Can you fairly

13   consider the death penalty along with other forms of

14   punishment?

15   A       Yes, sir.

16   Q       All right.  The next question then becomes,

17   upon a finding of guilt of murder in the first degree

18   and if the State proves beyond a reasonable doubt that

19   the aggravating circumstances outweigh the mitigating

20   circumstances, the law in the State of Tennessee is

21   that you shall impose the death penalty.  Can you

22   follow the law in the State of Tennessee?

23   A       Yes, sir

24          MR. WOODALL:  Thank you.

25   **EXAMINATION BY MR. FORD:**

                              176

1    Q        Mr. Collins, being the third alternate, if
2    you are chosen to be the third alternate, there is a
3    slim possibility that you'd have to serve, but you
4    might have to.  And, of course, that would require you
5    to give careful consideration to all the testimony
6    throughout the trial because you never know when
7    something -- an illness could come up, or, we had a
8    case where a death came up in the family, and you might
9    be right up there, you know, as a third substitute.
10            But in this type case we may never get to the
11   penalty phase because the first part of this case is
12   the guilt or innocence phase, and the State -- just a
13   regular trial.  The State would have to prove that a
14   premeditated murder occurred.  One, that there was a
15   plan, so to speak, that it was carried out after
16   reflection and judgment with a cool purpose.  You know
17   what I'm saying.  If the State doesn't prove
18   premeditation beyond a reasonable doubt, will you
19   consider a lesser included charge such as second degree
20   murder?
21   A        Yes, sir.
22   Q        If we get to the penalty phase and the jury
23   is required to weigh up aggravating circumstances
24   against the mitigating circumstances, would you fairly
25   consider all of the evidence on aggravating

177

1    circumstances and mitigating circumstances and weigh

2    those up, and if the aggravating circumstances do not

3    outweigh mitigating factors, meaning there's some

4    reason in your mind not to impose the death penalty

5    that's justified by the proof, would you consider other

6    forms of punishment?

7    A        Yes, sir.

8    Q        Those other forms of punishment are life with

9    the possibility of parole and life without parole.  Can

10   you consider those?

11   A        Yes, sir.

12            MR. FORD:  Thank you, sir.

13            **(JUROR EXCUSED.)**

14                    - - - - -

15            **(All parties returned into open court,**

16            **and the following proceedings were**

17            **had to-wit:)**

18            THE COURT:  Pass your forms.

19            Ms. Heavner, you will be the first alternate.

20   Ms. Long and Mr. Collins, you'll be the second and

21   third alternates.

22            **(The jury of 12 and three alternates**

23            **were duly sworn; the court officers**

24            **were duly sworn; the Court read to**

25            **the jury preliminary instructions;**

178

1          there was a short recess; the indictment

2          was read by Mr. Jerry Woodall, District

3          Attorney for the State of Tennessee; a

4          plea of not guilty was entered on behalf

5          of the Defendant Hall by Mr. Ford;

6          opening statements were made on

7          behalf of the State; the following

8          opening statement was made on behalf

9          of the Defendant by Mr. Ford:)

10          MR. FORD:  Ladies and gentlemen, Mr. Woodall

11   has done a very able job.  I like his road map analogy.

12   I've used that before, and that's a good way to look at

13   an opening statement.

14          What I submit to you all, ladies and

15   gentlemen, is that the proof will show that Jon Hall

16   and Billie Hall had been having severe domestic

17   problems for a number of years.  But, there were a

18   series of unfortunate events in their lives that

19   increased the stress level, that increased the

20   emotional level, in both their lives.  For example, the

21   proof will show that during the marriage a child was

22   born of this marriage, it was a special needs child,

23   that added stress to any situation.

24          The proof will show that on this particular

25   evening, Jon Hall was going to his rsidence to try to

179

1   reconcile with his wife.  The proof will show that, in

2   fact, he was taking money out there to pay his child

3   support.  That was his purpose of going out there.

4   Sure, emotions came forward.  We can't deny that Mrs.

5   Hall met her death.  We're simply stating that the

6   proof will show that this was not a planned,

7   deliberate, something acted upon with cool purpose

8   after reflection in judgment.  The proof will not bear

9   that out.

10          There are witnesses to this.  Sure there are

11  witnesses.  The proof will show that in no way was this

12  planned.  This was a domestic situation that merely

13  escalated and got out of control, and it was never his

14  intention to go out there to kill his wife.  The proof

15  will not show that.  That's where the case falls,

16  premeditation.

17          Unfortunate event, but his intent was to

18  reconcile.  His intent was to pay child support.

19  There's no weapon here.  The proof will show that no

20  weapon was used, no weapon was carried out there.  It

21  is not a case of deliberate, premeditated, first degree

22  murder.

23          **(Court was recessed for the day at**

24          **3:45 p.m.)**

25                          - - - - -

180