IN THE CRIMINAL COURT

OF MADISON COUNTY, TENNESSEE

AT JACKSON, DIVISION I

---

STATE OF TENNESSEE


VS.                          No. 96-589


JON DOUGLAS HALL

---

### OPENING STATEMENTS & CLOSING ARGUMENTS

### PENALTY PHASE

### FEBRUARY 5, 1997

---

AMY MAYS

OFFICIAL COURT REPORTER

MADISON COUNTY CRIMINAL JUSTICE COMPLEX

JACKSON, TENNESSEE  38301

(731)423-6039

1



EXHIBIT
14 9-9-02
Coll

**ORIGINAL**

IN THE CRIMINAL COURT

OF MADISON COUNTY, TENNESSEE

AT JACKSON, DIVISION I

---

STATE OF TENNESSEE


VS.                          No. 96-589


JON DOUGLAS HALL

---

OPENING STATEMENTS & CLOSING ARGUMENTS

PENALTY PHASE

FEBRUARY 5, 1997

---


AMY MAYS

OFFICIAL COURT REPORTER

MADISON COUNTY CRIMINAL JUSTICE COMPLEX

JACKSON, TENNESSEE  38301

(731)423-6039

1

ORIGINAL

```
 1                    A P P E A R A N C E S

 2   Before the Honorable:

 3           WHIT LAFON, Judge

 4   For the State:

 5           MR. JERRY WOODALL

 6           MR. AL EARLS

 7           District Attorney General's Office

 8           Lowell Thomas State Office Building

 9           Jackson, Tennessee  38301

10   For the Defendant:

11           MR. JESSE HILL FORD, III

12           MR. CLAYTON F. MAYO

13           Ford & Mayo

14           618 North Highland

15           Jackson, Tennessee  38301

16                   *  *  *  *  *

17

18

19

20

21

22

23
```

2

1                    **TABLE OF CONTENTS**

2    Opening Statement - Woodall        Page 4

3    Opening Statement - Ford           Page 5

4    Closing Argument - Woodall         Page 7

5    Closing Argument - Ford            Page 15

6    Closing Argument - Mayo            Page 22

7    Closing Argument - Woodall         Page 25

8                    *   *   *   *   *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          MR. WOODALL:  Ladies and

2    gentlemen, the State of Tennessee in the

3    sentencing phase is going to rely upon

4    two aggravating circumstances, and in

5    coming to the conclusion as to whether

6    the aggravating circumstances outweigh

7    the mitigating circumstances, the Court

8    will instruct you at the appropriate

9    time that you may consider everything

10   that you've already heard put into

11   evidence in this case.  And those

12   aggravating circumstances that the State

13   intends to rely upon and as such the

14   proof demonstrates, they outweigh any

15   mitigating circumstance or circumstances

16   that the Defendant might raise are:

17          Number one, the murder was

18   especially heinous, atrocious or cruel,

19   in that it involved torture or serious

20   physical abuse, beyond that necessary to

21   produce death.

22          And second, the murder was

23   committed for the purpose of avoiding,

24   interfering with or preventing a lawful

4

1    arrest or prosecution of the Defendant

2    or another.

3         Thank you.

4         MR. FORD:   Ladies and gentlemen,

5    we're here at the final stage of the

6    trial.  Of course, you were very patient

7    during the voir dire, and we talked a

8    lot during that about aggravating

9    factors and mitigating factors, and now

10   we're at that point where it's your duty

11   to balance those.  And basically what

12   you're to determine here is, is there

13   value, is there value, to the life of

14   Jon Hall?  And we submit that there is.

15   And we submit that mitigation will be

16   shown.

17         And what is mitigation?  It

18   means to moderate, to lessen, to

19   alleviate, to bring down to another

20   level.  And when you're making a

21   decision between life and death, you

22   need to consider everything you've

23   heard, that you will hear, and also

24   bring with you your common sense and

5

1  judgment as you do to every case.

2          We submit that mitigating

3  circumstances will be as follows:

4          That the murder was committed

5  while the Defendant was under the

6  influence of extreme mental or emotional

7  disturbance; that the capacity of the

8  Defendant to appreciate the wrongfulness

9  of his condition, or to conform his

10  conduct to the requirements of the law,

11  were substantially impaired as a result

12  of mental disease or defect or

13  intoxication, which was not sufficient

14  to establish a defense, but, to

15  establish -- to substantially affect his

16  judgment.

17          We intend to show that the

18  Defendant was a good worker, a good

19  employee; that he surrendered to

20  authorities peacefully and without

21  resistance; that he cooperated fully

22  with police investigators; that he has

23  acknowledged and has never denied his

24  responsibility for this crime; that he

6

1   has no significant history of prior

2   criminal activity; that the crime

3   committed was out of character for this

4   Defendant; that his judgment was

5   substantially impaired due to extreme

6   violence he witnessed his father commit

7   upon his mother that created

8   psychological problems for him out of

9   his past; that he was a caring and

10  nurturing father who loved his children,

11  took special care of his youngest

12  daughter who had cerebral palsy; that he

13  showed remorse over this crime.

14          Ladies and gentlemen, you can

15  consider those along with anything else

16  that's been shown to balance this man's

17  life in your hands.

18          Thank you.

19                  *  *  *  *  *

20      MR. WOODALL:  Ladies and

21  gentlemen, up until this point in this

22  trial, until the punishment phase of

23  this trial, and you've already

24  determined that the Defendant acted with

7

1  deliberation and premeditation, malice

2  aforethought, Billie Jo Hall was a

3  mannequin with marks on her, and that's

4  all she was.  She was a rather

5  impersonal item, one without flesh or

6  bone or hair or skin, and stood there

7  very silently as she does right now.

8          Yes, the Defendant has his

9  family come in, as is his right, to

10  plead with you, and, yes, Billie Jo Hall

11  has to rely upon the State of Tennessee

12  and the criminal justice system for her.

13  This Defendant has been afforded of his

14  certain constitutional rights, as he

15  should be.  He's been given a fair and

16  impartial trial by a jury of his peers,

17  as he should be.

18          But I'm going to suggest to you,

19  ladies and gentlemen, that Billie Jo

20  Hall has certain constitutional rights

21  also.  We know not about her background

22  and her family.  We know not how she was

23  treated as a child or how her mother or

24  her father or her grandfather treated

8

1    her as a child.  All we know about

2    Billie Hall is what has been presented

3    in this courtroom in evidence.  And I'm

4    sure that it goes without saying that

5    the parents of Billie Hall wish that

6    they could come to court today, look at

7    her living, breathing, walking, holding

8    the hands of her children and be able to

9    visit rather than the mannequin or the

10   photographs that have been placed into

11   evidence.  Because you see, there's a

12   difference between Billie Jo Hall,

13   Billie Jo's family and the Defendant.

14          Yes, he's going to be

15   incarcerated.  He'll be incarcerated for

16   however long or receive the sentence

17   that you give him, whether it be life,

18   life without parole or the death

19   penalty.  And the State of Tennessee

20   asked you from the very beginning of

21   this trial that after you make a

22   determination that this Defendant is, in

23   fact, guilty of the offense for which he

24   is charged, that the State of Tennessee

1   was going to ask you to impose the death

2   penalty.    The State of Tennessee is

3   going to again ask you to impose the

4   death penalty based upon the law and the

5   evidence and that which has been

6   presented to you.

7          You've heard the proof in this

8   case, and you've heard what Dr. Smith

9   had to say on two occasions, and you

10  heard that based upon his medical

11  findings, that the murder and the manner

12  of death of Billie Jo Hall was cruel.

13  And the Court will instruct you at the

14  appropriate time that that means that --

15  cruel means to inflict pain or

16  suffering, causing suffering painfully.

17  And we also have told you that it

18  involved torture, and that the manner of

19  her death was way beyond that which was

20  required to produce death.    Torture,

21  heinous, cruel.    The Court will give you

22  definitions, but you're entitled to use

23  your own thought processes, your own

24  experiences and what you've seen and

10

1  related in this courtroom today, and I

2  say by means of definition, that nothing

3  provides a better definition than this

4  photograph of the right side of Billie

5  Jo Hall's face.  Here's another

6  definition of atrocious and cruel and

7  heinous and torture and depravity of

8  mind, when you see her chin and look up

9  inside her little lips where she was

10  beaten by this Defendant.  Here's some

11  more definitions of how she lay on the

12  gurney, she laid in repose there after

13  being literally beaten to death by this

14  Defendant.  Every portion of her body

15  has been beaten, kicked, scratched,

16  struck, drug, cracked.  She's been

17  tortured.  It's heinous.  It's

18  atrocious.  What more definition do you

19  need of heinous and atrocious than that?

20  What more do you need than that right

21  there, that picture that's been marked

22  into evidence as State's Exhibit Number

23  10?  How lucky the family of Jon Hall,

24  that they can look at Jon Hall.  This is

1   all the family of Billie have left.

2           You talking about torture,

3   here's another example of torture and

4   heinous and cruel.  Here's another

5   definition of heinous, atrocious, cruel.

6           I'm sure that the family of this

7   Defendant is telling you like it was.

8   It was not a good upbringing.  I thought

9   it was interesting that the mother said

10  that she was amazed at how well her sons

11  did when they weren't raised that way.

12  Well the Defendant didn't do very well,

13  did he?  And, you know, I don't care how

14  you're raised, whether you're raised

15  tough or poor, black, white, east side

16  of town, north side of town, rich or

17  poor, when you get down to it, ladies

18  and gentlemen, each and every one of us

19  is responsible for our own conduct.

20  Each and every one of us is responsible

21  for our own conduct.  How we were

22  raised, where we were raised, which side

23  of town we were raised on, in no way

24  justifies or mitigates a deliberate and

1    premeditated murder in the presence of

2    four little children.

3            Now you talk about injury, we

4    know what kind of injury the body has.

5    We've seen them.  But think about the

6    injuries to these little girls.  They're

7    not visible, but they're there.  They're

8    there.  And they're five and seven and

9    nine and eleven.  No ice cream, treated

10   bad on report card day, his mama being

11   struck by the daddy, grandfather being

12   an alcoholic.  They're not responsible

13   for that.  They're not responsible for

14   that.  They're not responsible for that.

15   They're not responsible for that.

16   They're not responsible for that.

17   They're not responsible for that.

18   They're not responsible for that either.

19           THE COURT:  General, just a

20   little louder.  I can't hear you.  I'm

21   getting a little old.

22           MR. WOODALL:  But Jon Hall is.

23   He's the one that deliberately,

24   premeditatedly beat and beat and beat

1   and beat and beat and beat and beat.

2   Nobody else but him.   Nobody else but

3   him.

4             Ladies and gentlemen of the

5   jury, the Court will charge you the

6   definition of the aggravating factors

7   the State alleges, and it's your duty

8   and your obligation that if one or more

9   of the aggravating circumstances alleged

10  by the State of Tennessee is proven

11  beyond a reasonable doubt to a moral

12  certainty, outweigh the mitigating

13  circumstances that this Defendant has

14  presented, it's your duty and your

15  obligation and your sworn oath to vote

16  for the death penalty.   If you feel like

17  an upbringing, a bad upbringing,

18  assuming everything his sisters and his

19  mother said is true, and the fact that

20  he was a good employee, a good mechanic,

21  took care of his children, -- There's

22  proof that most of the time the children

23  were taken care of by a babysitter, but

24  let's go by what has been presented this

1   afternoon.  If you feel like that that

2   outweighs -- that these mitigating

3   factors outweigh this and this and this

4   and this and this and this -- No, it's

5   too late to be sorry now.  Jon Hall is

6   responsible for his own conduct, and I

7   submit to you, ladies and gentlemen,

8   that based upon the law, the evidence

9   and the proof, that the State has proven

10  beyond a reasonable doubt, to a moral

11  certainty, that the aggravating

12  circumstance or circumstances have been

13  proven by the State of Tennessee beyond

14  a reasonable doubt and to a moral

15  certainty, and they're not outweighed by

16  all of the mitigating circumstances, and

17  that you will render a verdict that the

18  proof dictates and justice demands.

19          THE COURT:  You did just about

20  half, General.

21          All right, Mr. Ford, Mr. ...

22          MR. FORD:  Ladies and gentlemen,

23  we're going to split our argument, Mr.

24  Mayo and I are.

                                                    15

1          And we didn't come here to make
2    excuses for this.  There's no excuse for
3    this kind of conduct.  That's not what
4    mitigation's all about.  It's not an
5    excuse.  Mitigation is to lessen, to
6    alleviate, to give a reason to spare
7    this man's life.  Is there a reason?
8          The State says that Mr. Hall has
9    turned these children into victims.  In
10   a way he has.  But today, you have power
11   to alleviate some of that.  The mother's
12   gone.  Nothing that can happen here
13   today can bring back that precious life,
14   but, taking his life will only further
15   victimize these children.  That is a
16   great concern, consideration.  They had
17   no control over coming into this world.
18   They had no control over their
19   environment.  None of us do.  But who
20   are we to say that taking their father's
21   life is going to make things better.
22   Now how is that going to happen?  I
23   can't think of one reason in the world
24   that taking someone else's life is going

16

1  to help these children.  That's what the

2  State of Tennessee wants you to do.

3  "Well, if you give Mr. Hall the death

4  penalty, that's going to be good for

5  these children."  That's skewed logic,

6  ladies and gentlemen.  Don't buy into

7  that.

8          Mitigating.  Power.  A huge

9  amount of power is in your hands today.

10  You've got the power to dispense mercy.

11  You know, it's very difficult to prepare

12  for this kind of argument because you

13  hope and pray that you will not get to

14  this point in the trial.  We talked

15  about that during voir dire, that the

16  case would be divided up into two parts.

17  But in preparing for this, I thought,

18  what is an appropriate thing to say?

19  You know, this country, we -- there is a

20  higher law that this country's

21  principles are based on, Christian

22  fundamentals, higher laws that were here

23  long before the country was created.

24  This country's laws are based on those

1  fundamental Christian principles.  And I

2  thought of the Bible passage where Jesus

3  was on the cross.  He's going to be

4  crucified with two other unfortunate

5  individuals.  They're going to meet

6  their death with him.  And what did He

7  say about those two individuals?  He was

8  about to meet his death, and He was

9  thinking about two unfortunate

10  individuals, and what did He say?

11          "Father, forgive them, for they

12  know not what they do."

13          I submit to you that Mr. Hall

14  really didn't know what he did.  He

15  didn't at the time realize what he was

16  doing.  No excuse, no justification.

17  But there is value to this man's life.

18          Randy Helms, the honorable

19  gentlemen from Lexington, from the same

20  community.  He doesn't have a dog in

21  this fight.  Gives his time, comes down

22  here, and he says, "Yes, there's value

23  to his life.  He was a good father.  He

24  took care of these children.  He came to

18

1  me.  I gave him a job."  But when he

2  couldn't do the job anymore, when his

3  personal problems became too great for

4  him to continue with that job which was

5  shortly before this unfortunate event

6  occurred, what did he do?  He was man

7  enough to come to Mr. Helms and say, "I

8  can't do this job anymore.  I quit.  I'm

9  unable to continue doing this job."

10  People like Mr. Helms don't come in

11  pleading for somebody's life if there's

12  no value to that life.

13         And I anticipate that the State

14  will say, "Well, they brought in two

15  clinical psychologists, and, oh, boy,

16  you know, they're trying to make all

17  kind of excuses."  No.  These people

18  were trained professionals, ladies and

19  gentlemen.

20         Obviously Mr. Hall came from a

21  dysfunctional family, highly

22  dysfunctional.  There's nobody in this

23  courtroom that hadn't been close to a

24  situation like that.  It takes its toll,

19

1  it has an affect, but it's not an

2  excuse.  It's a mitigation.  We're not

3  looking for an excuse.  We're looking

4  for a reason not to take this man's

5  life.  Every day that he's alive, I

6  submit to you, is a living hell.  The

7  easy thing to do is put him out of his

8  misery.  Take his life.  That's what the

9  State wants you to do.  You know, death

10  is final.  Final.  We can't change the

11  fact that he's the father, the natural

12  father, of two of these children.  We

13  can't change that.  So what do we do?

14  Do we take vengeance by removing the

15  father from their lives forever?  No.

16  It's final.  There's no possibility for

17  him to ever have a relationship with

18  those children if his life is taken.  Do

19  we want to victimize them further?  Is

20  that the answer to this unfortunate

21  situation, to further victimize these

22  children?  Are they of an age that they

23  can have any say-so in this?  No.  What

24  if it's ten years, they turn around and

20

1    say, "My mother is gone.  My father is

2    gone, and I want to know why."  Oh,

3    well, "He killed your mother, and that's

4    why he's gone."  Is that justice, ladies

5    and gentlemen?  Taking two lives?  No.

6    It further victimizes those two

7    individuals who have no say-so at this

8    point in their lives.  It doesn't bring

9    her back, but it sure doesn't solve the

10   problem.

11          "Vengeance is mine, thus saith

12   the Lord."

13          Not mine, not the State of

14   Tennessee.  Have mercy on him.  That's

15   what we're asking.  See your way clear

16   to think about these mitigating

17   circumstances that will be in the

18   Judge's charge to you.  I read them to

19   you during the opening statement.  I'm

20   not going to read them again because you

21   are all intelligent, you can read, you

22   can see.  You can find in these

23   mitigating circumstances something to

24   save his life, and I submit that it's

1    there.  There is some quality in this

2    man's life.  But remember those

3    children.  You take his life, and they

4    become victims again.  Thank you.

5        THE COURT:  All right, Mr. Ford

6    -- Mr. ...

7        MR. MAYO:  Ladies and gentlemen,

8    thank you for your time once again.

9    We're now, as you've already been told,

10   at the most difficult, most important

11   decision in this case.  You disagreed

12   with our theory of murder, and we accept

13   that, because at the very root of our

14   argument was the idea that Mr. Hall came

15   from a background and had so many

16   problems in his life, that he really

17   didn't have a complete grasp on how

18   final what he did was.  That's all we

19   were really trying to say.  Some of the

20   proof didn't come in at that stage, and

21   again, that's absolutely no excuse.  It

22   just serves to help explain how this

23   could happen, because I'm sure you're at

24   a loss as to how it could happen.  And

1    maybe that helps some.  We hope it does.

2             Mr. Hall is a human being.  He

3    is alive.  He is breathing.  He can walk

4    and he can talk.  The State's asking you

5    to take that away from him, his very

6    life.  But he's human.  He has humanity

7    about him, regardless of what the State

8    says.  You can't strip every bit of

9    humanity he has because of what he did.

10   You can take away a lot of it and you

11   can cause a lot of doubts about how --

12   what kind of person he is, but you can't

13   just strip his humanity away from him

14   like that.  You have to look at other

15   things in his life.  And that's how --

16   why we presented testimony and proof

17   about how he took care of these

18   children, because it shows you that no

19   matter what he did, he was human.  He

20   has love.  He's capable of emotions like

21   that.  He took care of his three-year-

22   old daughter with cerebral palsy, giving

23   her breathing treatments every day.

24   Now, someone that had no humanity about

1    them would not care.  Someone incapable

2    of love would not care.  He has those

3    attributes.  They may be very difficult

4    to see, but they're there.

5              We didn't live with him, we

6    didn't grow up around him.  We don't

7    know exactly what he went through.  We

8    don't know exactly how well he took care

9    of those children, but we know,

10   hopefully through this testimony, that

11   he loved them and that he loved his

12   wife.  It turned into a twisted, sick

13   kind of love, but he loved her.  He is

14   human.  He has humanity, and you're

15   being asked to strip that from him.

16             Supreme Court Justice Brennan

17   was quoted in an article called Capital

18   Punishment, in a concurring opinion in

19   Furman v. Georgia, stated "Death is a

20   truly awesome punishment.  The

21   calculated killing of a human being by

22   the state involves, by its very nature,

23   a denial of the executed person's

24   humanity."

24

1    You're being asked to state his
2    life has no worth at all.  Don't say
3    that, please.  Think about his children.
4    We may not understand how they could
5    need him, but they may need him as the
6    years go by.  They may.
7    Thank you.
8    MR. WOODALL:  That having been
9    said, the mitigating circumstances do
10   not outweigh the aggravating
11   circumstances.  The mitigating
12   circumstances do not outweigh the
13   aggravating circumstances.
14   And I think there's something
15   else in response to what the defense
16   team had to say that needs to be said.
17   It was also said by that Man:
18   "Render unto Caesar that which
19   is Caesar's, unto God that which is
20   God's."
21   It's time for Jon Hall to be
22   held accountable for his own criminal
23   conduct and to render that to which he
24   owes to Caesar.

25

1          Thank you.

2                         *   *   *   *   *

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1                      <u>**CERTIFICATE**</u>

2          I, the undersigned Amy Mays,

3    Official Court Reporter for the 26th

4    Judicial District of the State of

5    Tennessee, do hereby certify that the

6    foregoing is a true, accurate and

7    complete transcript, to the best of my

8    knowledge and ability, of the requested

9    proceedings had in the captioned cause,

10   in the Criminal Court for Madison

11   County, Tennessee, on the 5th day of

12   February, 1997.

13         I do further certify that I am

14   neither of kin, counsel nor interest to

15   any party hereto.

16

17

18   _____

19   AMY MAYS

20

21   _____

22   DATE

23

24

                                              27