1    IN THE CRIMINAL COURT OF MADISON COUNTY, TENNESSEE

2            AT JACKSON, DIVISION I

3    STATE OF TENNESSEE

4

5    VS.                        No. 96-589

6

7    JON HALL

8

9    _____

10             MOTION FOR NEW TRIAL

11             MOTION TO WITHDRAW

12             MAY 20, 1997

13    _____

14

15

16

17

18

19

20

21             AMY MAYS

22         OFFICIAL COURT REPORTER

23    MADISON COUNTY COURTHOUSE — THIRD FLOOR

24        JACKSON, TENNESSEE  38301

25             (901)423-6039

1

**FILED**

JUN 25 1997

JOE GAFFNEY, CIRCUIT COURT CLERK

DEPUTY CLERK
A.M. _____

**FILED**

AUG 07 1997

Clerk of the Courts
Rec'd By _____

```
 1                          APPEARANCES

 2   For the State:

 3            MR. JAMES G. WOODALL

 4            MR. AL EARLS

 5            District Attorney General's Office

 6            P.O. Box 2825

 7            Jackson, Tennessee  38302

 8   For the Defendant:

 9            MR. JESSE H. FORD, III

10            MR. CLAYTON F. MAYO

11            Ford & Mayo

12            618 North Highland

13            Jackson, Tennessee  38301

14                       * * * * *

15

16

17

18

19

20

21

22

23

24

25
```

2

1          THE COURT:  Gentlemen, this is Ms. Evelyn

2     Goodwin.  She's a law clerk that the Supreme Court has

3     furnished me in these kind of cases.  The other

4     gentleman is somewhere else that we had for the trial.

5          All right, Mr. Ford, what's your motion?

6          MR. FORD:  Your Honor, this is a Motion for

7     New Trial or Judgment or Verdict of Acquittal in State

8     vs. Jon Hall, Number 96-589.  We filed this motion on

9     his behalf.  I'm going to go through it briefly, Your

10    Honor.

11         First of all for the first ground, we would

12    state that the evidence was insufficient to support the

13    verdict and that the verdict is against the weight of

14    the evidence.

15         Also we'd like to point out that the Court

16    allowed Mr. Woodall to question Cindy Connor, one of

17    the child witnesses, regarding a statement she made,

18    and on cross-examination she was only questioned about

19    the first page of that particular statement.  The Court

20    allowed the State to ask questions on redirect which

21    were outside the scope of cross-examination, all to the

22    Defendant's prejudice.

23         The next ground was that we allege the Court

24    erred in failing to allow Cheryl Arbogast during the

25    sentencing phase to testify regarding the Defendant's

3

1    state of mind prior to the date of the alleged

2    incident.  The Defendant was not allowed to make an

3    offer of proof on that issue.

4           Also during the sentencing phase or

5    punishment phase --

6           THE COURT:  Well did you ask for the -- to be

7    allowed to make an offer of proof?

8           MR. FORD:  Yes, sir.  I believe Mr. Mayo did,

9    Your Honor.

10          THE COURT:  And I refused it?

11          MR. FORD:  Yes, sir, as far as -- that's what

12   my memory --

13          THE COURT:  I don't recall that.  I'm just

14   saying it may have happened, but the Court doesn't have

15   any recollection.  I believe it's my general policy to

16   say that if you want an offer an proof, I say well at

17   some time before the end of the trial that you'll be

18   allowed to, and then if they don't ask, why then that's

19   where I stop.

20          MR. FORD:  Yes, sir.

21          THE COURT:  All right, go ahead.

22          MR. FORD:  Also during the sentencing phase,

23   various photographs were introduced which we objected

24   to.  These photographs were gruesome, inflammatory.

25   Their prejudicial affect outweighed their probative

4

1    value.  These were cumulative and unnecessary in that

2    they tended to prove what was already in evidence; that

3    is, the autopsy report which was placed into evidence

4    by Dr. Smith.

5          The next ground would be that we allege it

6    was error to charge the murder was committed while

7    engaging in or committing or was accomplished in the

8    commission of or was attempting to commit or was

9    fleeing after committing or attempting to commit any

10   first degree murder, rape, burglary or kidnapping.

11   These aggravating circumstances were improperly

12   presented to the jury and were a necessary part of the

13   offense as charged.

14         I will submit also, Your Honor, that the

15   aggravating circumstances failed to properly narrow the

16   class of the Defendant subject to the death penalty,

17   and that the instruction on the heinous, atrocious and

18   cruel instruction was unconstitutionally vague.

19         Furthermore, we would argue that the evidence

20   was insufficient to support the findings of any

21   aggravating circumstances and that the aggravating

22   circumstances do not outweigh the mitigating

23   circumstances, and that based thereon, the death

24   penalty -- death sentence should be reduced to life

25   without parole.

1          As another ground we submit that the Court

2    erred in allowing cameras in the courtroom for the

3    trial.

4          Another ground is that the electric chair

5    constitutes cruel and unusual punishment under the

6    Tennessee and U.S. Constitutions.

7          Furthermore, we allege that the State failed

8    to prove the required mental state necessary for the

9    Defendant to form the specific intent to commit first

10   degree murder.

11         Finally, on the constitutional grounds, we

12   submit that the Court erred in overruling Defendant's

13   motion to declare the death penalty unconstitutional in

14   that it violates the Fifth, Sixth, Eighth, Fourteenth

15   Amendments to the United States Constitution, Sections

16   8, 9, 10 and 16 of the Tennessee Constitution.

17         Your Honor, based on those specific grounds,

18   we would seek a new trial on behalf of Jon Hall.

19         MR. EARLS:  Your Honor, if I could address

20   the Court on a matter before I respond to that.

21         THE COURT:  Well, if it's -- Let's get the

22   new trial out of the way.  If you've got some other one

23   to be addressed on, why ...

24         MR. WOODALL:  Judge, may I be heard instead

25   of Mr. Earls?

                              6

1          THE COURT:  Yes, sir.

2          MR. WOODALL:  We've received information as

3  well as a motion filed pro se by the Defendant that he

4  wishes to have different counsel.

5          THE COURT:  General Woodall, my ruling is

6  that that's denied until after this Motion for New

7  Trial.  I'll be glad to take it up then, but I'm not

8  going to dismiss these people.

9          MR. WOODALL:  Would you hear me out?

10          THE COURT:  Yes, sir.

11          MR. WOODALL:  Now assuming that Your Honor

12  does replace them, and we will at the appropriate time

13  address that issue, hypothetically if you did replace

14  them, even after hearing this Motion for a New Trial,

15  you would have to hear a new Motion for a New Trial or

16  amended Motion for a New Trial.  So I just point that

17  out to the Court.

18          THE COURT:  All right.  All right, you may

19  proceed.  At this stage the Court denies any motion for

20  them to be relieved of this case.

21          MR. EARLS:  Your Honor, if I could respond

22  kind of in reverse order.  I point out to the Court

23  that the Tennessee Supreme Court and also the U.S.

24  Supreme Court has continually upheld the death penalty

25  and the instructions related to --

1        THE COURT:  I don't care to hear argument on

2    that.  The Court finds that the ruling was proper with

3    regard to the death penalty.

4        MR. EARLS:  Your Honor, I'd point out that

5    the photographs complained of which he said were more

6    prejudicial and probative, the case law is well-settled

7    in the State of Tennessee, Your Honor.  When the State

8    is relying upon the aggravating factor of heinous,

9    atrocious and cruel, photographs of the deceased are

10   admissible for the jury to see the manner of the death

11   and the injuries inflicted upon the victim, and the

12   State did rely upon heinous, atrocious and cruel, and

13   the Court properly ruled that those photographs were

14   admissible.  As the Court recalls, they were just

15   photographs of the body at the scene in the pool.

16   There was nothing particularly heinous or atrocious

17   about those photographs.

18        We'd also point out, Your Honor, as to Ms.

19   Arbogast who it was complained that her testimony was

20   not allowed, the Court heard her testimony outside the

21   presence of the jury, and Mr. Mayo was allowed to

22   cross-examine her in depth.  And as the Court recalls,

23   on direct examination I asked her if she had any direct

24   knowledge of any of the things she was testifying to

25   and she stated she did not.  She heard this from the --

8

1    from her brother who heard it from Jon Hall.  So it's

2    third-party hearsay.  That's why the Court would not

3    allow her to testify.  She didn't have any personal

4    knowledge of any of the facts she was about to testify

5    to.  So the Court properly ruled on that.

6              And we'd ask that the motion, Your Honor, be

7    -- the Motion for New Trial be overruled.

8              If I could point out one more thing.  Your

9    Honor, on the argument that the Court allowed the

10   aggravating factor that the murder was committed during

11   the perpetration of a first degree murder, rape,

12   robbery, burglary, I'd point out to the Court, that

13   instruction was not given.  The State withdrew that

14   aggravating factor.  As the Court recalls, we had a

15   pretty big discussion on the matter, and the State

16   conceded and withdrew that aggravating factor.  So that

17   wouldn't be a ground.

18             THE COURT:  Anything further?

19             MR. FORD:  No, sir, Your Honor.

20             THE COURT:  All right, the Court overrules

21   the Motion for a New Trial.

22             DEFENDANT HALL:  Objection.

23             THE COURT:  Note the objection.

24             All right, now, I'm ready to hear with regard

25   to your motion -- to the lawyers' motion that they be

9

1    allowed to withdraw.

2         MR. FORD:  Your Honor, we recently received a

3    package of motions and correspondence from Mr. Hall

4    that basically, in summary, show that he's very

5    dissatisfied with my representation and maybe somewhat

6    dissatisfied with Mr. Mayo's representation, and also

7    issues of ineffective counsel are raised in his pro se

8    motions.  We feel under the circumstances that there's

9    a conflict here between our representation of Mr. Hall

10   and Mr. Hall, and in fact, as part of the

11   correspondence, he had threatened to have Mr. Bracy --

12   charges brought against me through the Board of

13   Professional Responsibility.  He refers to me as

14   Benedict Arnold, hand-holding Mr. Woodall -- holding

15   Mr. Woodall's hand during the trial, that kind of

16   thing.  I don't know how we can in good faith continue

17   the representation unless he wants to retract or

18   withdraw --

19         THE COURT:  Mr. Ford, I think you know the

20   history of this case.  I appointed the Public

21   Defender's office to represent Mr. Hall and went on for

22   months various and sundry things, and finally he

23   decided that he didn't want them and that they then

24   were excused.  And then at his request in trying to be

25   fair about the matter, the Court then appointed two

1    other lawyers, Mr. Carthel Smith who is the -- well-

2    trained, highly successful lawyer in Lexington, and

3    also a gentleman named Mr. Mosier who had had

4    experience before in this court and in some other

5    matters that involved first degree murder.  I'm not

6    sure about capital murder, but he had at least --

7    either in this court or Judge Murchison's, and that he

8    was a well-qualified lawyer, and they dealt with this

9    gentleman for several months, and suddenly he requested

10   that they be removed.  And now comes down to the fact

11   that you and Mr. Ford -- I mean, Mr. Mayo, and that the

12   case -- the Court transferred it to Jackson in an

13   effort to avoid publicity, and as evidenced by the

14   trial itself, we were able to select a jury without any

15   noticeable amount of challenges or people who said they

16   couldn't -- had heard too much or did not believe in

17   the death penalty, and that we were not only able to

18   select a jury, but we were able to complete this case,

19   including the sentencing phase, within three days, and

20   that the case -- which would be strong evidence as far

21   as the Court is concerned that there was no -- that the

22   fact that it was heard over here did, in fact, bring it

23   to a place where the publicity didn't seem to affect

24   the case.  And then now after the trial, I think there

25   was some mention at the trial -- In fact, Mr. -- as I

11

1   recall, Mr. Hall stood up after the jury was selected

2   when we had a short recess for the jurors to powder

3   their nose, he at that time said something about he

4   wanted to fire you, and the Court told him that it was

5   too late.

6           And I might also put in here that in an

7   effort to help matters out, I believe that the record

8   should show that he was brought back to Jackson here

9   some weeks before the trial, and at his -- at the fact

10  -- on the complaint that he wasn't seeing you people

11  enough because they had a problem of housing prisoners

12  of his -- the charges he had against him for safe-

13  keeping in Jackson, but that he -- despite that he was

14  brought back here for some weeks and that you requested

15  to see him regularly.  As I understood, that was what

16  happened as far as the time back here.

17          And then he comes in and says that he doesn't

18  want you people.  My problem gets to be is, how many

19  times is he going to say he's not satisfied.  Public

20  Defender, no satisfaction.  The --

21          DEFENDANT HALL:  They quit.

22          THE COURT:  You be quiet unless you want me

23  to gag you until I get through talking.  You

24  understand?  I don't want you to operate.

25          DEFENDANT HALL:  Well why don't you just tell

12

1    the truth for the record?

2            THE COURT:  Mr. Hall, I'm going to let you

3    talk at another time -- at a time now, and you either

4    keep your mouth shut or I'm going to get a gag and I'm

5    going to gag you where you can't be heard until you get

6    your time.  You're going to be allowed to address this

7    Court this morning.  You understand?

8            DEFENDANT HALL:  Thank you, Your Honor.

9            THE COURT:  All right.  You're welcome.

10           And I'm wondering at what point that it's

11    going to be that I would relieve you and what guarantee

12    have we got on the next group, or the next one, or the

13    next one.

14           So the Court now as far as your motion, or

15    Mr. Ford's motion, to withdraw is denied.

16           MR. WOODALL:  Your Honor, may I be heard?

17           THE COURT:  You can be heard, but that's what

18    I'm going to do.

19           MR. WOODALL:  Well, I know --

20           THE COURT:  Then I'm going to take up his

21    motion where he asked to be relieved.  You go right

22    ahead.

23           MR. WOODALL:  All right, thank you, Your

24    Honor.

25           Under the Disciplinary Rule DR5-101, and I'm

13

1   not saying this makes me happy --

2        THE COURT:  General, you don't have any horse

3   in this thing from the standpoint of what these lawyers

4   withdrawing.

5        MR. WOODALL:  Your Honor, --

6        THE COURT:  That's between them and this

7   Court and not between you.

8        MR. WOODALL:  The State has a horse in this

9   race, Your Honor, --

10        THE COURT:  All right, go ahead.  Go ahead.

11        MR. WOODALL:  Under this Disciplinary Rule

12   DR5-101, it very clearly states that a lawyer cannot

13   represent a client when the lawyer has a personal

14   interest in the outcome of the litigation.  Mr. Ford

15   and his partner would have an interest in showing they

16   did not act incompetently, and thus their interest in

17   the case is contrary to that of the Defendant Jon Hall.

18   And as set forth in the petition of Youngblood, 895 SW

19   2d, 322, "A lawyer must zealously represent his client

20   and cannot do so when he has a personal interest in the

21   litigation."

22        I don't think there's any doubt that Mr. Ford

23   and Mr. Mayo did an excellent job, very competent job.

24   But by this Defendant making these allegations against

25   them --

14

1          THE COURT:  General Woodall, that's their

2    argument.  That's not yours.  I don't understand your

3    position.  You're getting up and arguing for them.

4          MR. WOODALL:  Because the State doesn't want

5    to see a remand or a reversal later on for failure to

6    comply with the disciplinary rules.

7          THE COURT:  All right, while you're talking,

8    tell me what the law is with regard to replacing them

9    or not replacing them and what lawyers -- how it should

10   be done.  If you've got all this other, give me that.

11         MR. WOODALL:  Well I don't have a case that

12   tells you how to do that, but Your Honor would have to

13   follow the same reasoning that you did when you

14   appointed Mr. Smith and Mr. Mosier and then appointed

15   Mr. Mayo and Mr. Ford.  I don't know that there's any

16   case law to that affect, but that would be the

17   reasoning that the Court would follow.

18         I understand the Court's dilemma.  When is

19   enough enough?  And that's where you find yourself.

20   You've had a series of lawyers that we all know to be

21   competent.  But I think that the State having an

22   interest in the outcome of this litigation has the duty

23   and obligation to bring this to the attention of the

24   Court.

25         THE COURT:  All right, your motion for

15

1    withdrawal is overruled.

2         Now, Mr. Hall, you filed a motion, asked that

3    these lawyers be withdrawn from this case.  Will you

4    come around please and let you -- take the stand?

5         MR. HALL:  Take the stand?

6         THE COURT:  I want you to come around and sit

7    down and take the stand here.

8         And I want you to swear him.

9         DEFENDANT HALL:  I can't swear in.

10        COURT OFFICER:  Remain standing.  Would you

11   raise your right hand, please?

12        DEFENDANT HALL:  I can't swear in.  I'm under

13   the -- They're still flying the flag of war.  That's in

14   contrary to -- contrast to the United States

15   Constitution.

16        THE COURT:  All right, Mr. Hall, you filed a

17   motion here with regard to asking these lawyers to

18   withdraw; is that correct?

19        DEFENDANT HALL:  I -- They filed it.  I just

20   let them know that I made a motion orally in open court

21   before we ever started with these proceedings.

22        THE COURT:  Mr. Hall, you mailed --

23        DEFENDANT HALL:  On February 3rd.

24        THE COURT:  Mr. Hall, you mailed a large

25   number of papers to this Court, and in that -- among

16

1    those papers, it was the Court's understanding that you

2    were asking that the Court discharge these people as

3    your lawyers.  Is that correct or not?

4              DEFENDANT HALL:  In my Motion for a New Trial

5    I --

6              THE COURT:  Answer my question.

7              DEFENDANT HALL:  You refused to let me

8    dismiss my attorney that I didn't feel confident with.

9              THE COURT:  All right, I'm going to give you

10   an opportunity to testify with regard to whether they

11   should be disallowed -- be withdrawn or not.  If you

12   desire not to testify, that's your privilege, and this

13   so-called war flag is the flag of the United States of

14   America, and it's put in here by the State of Tennessee

15   and it's going to remain in here, and whatever takes

16   place is going to take place while that flag is there

17   as long as I'm judge.  Now if you wish to testify --

18             DEFENDANT HALL:  That flag represents a

19   perjury of oath.  You have a constitutional duty to

20   uphold the laws of the Constitution.

21             THE COURT:  What law do you say I'm not

22   upholding?

23             DEFENDANT HALL:  Well, for one, the American

24   flag is for -- of war with the gold braid around it is

25   -- it was enacted in 1933 under the War's Power Act.

17

1  It is used in federal courts sitting in admiralty.

2  I've got the case law over there.  In fact, I filed a

3  motion in this court that should be in here right now.

4  It's called a Motion to Amend or Arrest a Judgment.

5       THE COURT:  Let's get back now and listen --

6       DEFENDANT HALL:  And it has all the cases

7  listed.  I could go here and cite it and cite it for --

8  law for law, that maritime law is for -- is for

9  business and navigation and not in the courtroom

10  setting.  This should have been a judicial setting

11  under the American flag of peace.

12       THE COURT:  Mr. Hall, that's not the law, and

13  I so hold.  So now my question is to you, do you wish

14  to take your motion as to these lawyers to be

15  withdrawn?

16       THE DEFENDANT:  I filed an oral motion --

17       THE COURT:  Listen to my question now.

18       THE DEFENDANT:  -- before we ever went to

19  trial.  I did not file a paper motion to withdraw.

20  They filed it.

21       THE COURT:  All right.  Let me ask you --

22       THE DEFENDANT:  My Motion to Amend, I want to

23  do an ineffective assistance of counsel claim because

24  they failed to suppress illegally seized conduct

25  evidence that was admitted into evidence by Brian Bird.

18

1    There's several issues, and I would need to -- my trial

2    transcript before -- in order for me to point out all

3    these errors.  I guess it's <u>Woodall vs. Capital Case</u>

4    <u>Resource Center</u>, I'm entitled to all the records in the

5    prosecutor's file.  And I've got that case law --

6              THE COURT:  Mr. Hall, what we have this

7    morning is a Motion for a New Trial and the Motion to

8    Withdraw.  You understand?

9              THE DEFENDANT:  That's their motion.  My

10   motion was --

11             THE COURT:  And you don't want to be heard on

12   it?

13             THE DEFENDANT:  The -- I want my attorneys --

14             THE COURT:  Just a minute.

15             THE DEFENDANT:  -- to start acting

16   competently --

17             THE COURT:  Bring him back over there.

18             THE DEFENDANT:  -- and to argue my points.

19             THE COURT:  You go back over there.

20             THE DEFENDANT:  They are supposed to be my

21   advocate.  If they can't be my advocate, who are they

22   representing?  They aren't representing me.  Just like

23   her parents were allowed to sit amongst the jury and

24   have --

25             THE COURT:  Would you stand up just a minute,

                              19

1   please, sir?  Do you know what day it is?

2            THE DEFENDANT:  It's the 20th of March, 1997.

3   It's about five minutes 'til 10 by this clock.

4            THE COURT:  You know where you are.

5            THE DEFENDANT:  I'm in Madison County court

6   which I never committed any crimes in Madison County.

7   I was supposed to be tried in Henderson County, Docket

8   Number 94-342, 94-452, 94-454.

9            THE COURT:  Well I want to warn you of this

10  now.  In the event that these lawyers are discharged

11  and no longer represent you, you're going to have to

12  represent yourself.  You will not be afforded a lawyer,

13  and I want you to understand that now.

14           THE DEFENDANT:  Then you're violating my

15  Sixth Amendment to effective assistance of counsel

16  again, too.

17           THE COURT:  All I can tell you is -- I'm

18  telling you now that I'll be glad to hear from you on

19  anything concerning these lawyers if you want to

20  testify, and I'm here to tell you now that I'm not

21  going to withdraw them unless you yourself will testify

22  to the fact that you understand that you will not have

23  any lawyers to represent you.  You'll not -- Do you

24  know about what the deadlines are on filing motions?

25           THE DEFENDANT:  Pursuant to Rule 45 of

20

1    Tennessee Rules of Criminal Procedure.

2            THE COURT:  You know those?

3            THE DEFENDANT:  I've got a layman's view of

4    them.

5            THE COURT:  Well do you feel like you can

6    represent yourself?

7            THE DEFENDANT:  I've tried to do that

8    February 3rd.

9            THE COURT:  Mr. Hall, I'm asking you a --

10           THE DEFENDANT:  This post-trial procedure is

11   beyond my scope of intellect, let's put it.

12           THE COURT:  Mr. Hall, I'm asking you now:

13   Can you understand that I'm telling you that in the

14   event these two lawyers are discharged from

15   representing you, that you're not going to have a

16   lawyer appointed, you're going to have to represent

17   yourself?  Do you understand that now?  Do you

18   understand me telling you that?

19           THE DEFENDANT:  Then do you understand you're

20   violating my Sixth Amendment right?

21           THE COURT:  I'm not questioning whatever I

22   violate.  I'm asking you if you understand that.

23           THE DEFENDANT:  I wanted to represent myself

24   during the trial where I could ask my children correct,

25   competent questions instead of five questions each

21

1  witness and turn around -- It ain't no wonder it only

2  lasted three days.  They didn't even ask no questions.

3  They didn't tie up no loose ends.  They had evidence

4  they could have presented.  They didn't ...

5        THE COURT:  Anything else you want to say?

6        THE DEFENDANT:  That was the sorriest trial I

7  ever saw.  There was nothing about the truth that came

8  out in the trial, other than the fact that my wife was

9  gone.

10        THE COURT:  How many trials -- That your wife

11  was dead, that somebody -- and that she was beat to

12  death.  That come out, didn't it?

13        THE DEFENDANT:  This is true.

14        THE COURT:  All right.  Let me ask you this

15  question now.  Have you ever seen another trial?

16        THE DEFENDANT:  Your Honor, I represented

17  myself in a North Carolina court.

18        THE COURT:  What kind of case?

19        THE DEFENDANT:  Misdemeanor.  I've never been

20  charged -- I have no felony record.  I've only had

21  misdemeanors, Your Honor.

22        THE COURT:  Well you've never seen a jury

23  trial before, have you?

24        THE DEFENDANT:  Your Honor, I had a satellite

25  t.v.  I got court t.v. pumped into my house for a long

                            22

1    time.  I've studied law for the last two years because

2    my counsel was quitting on me.  They were waiving

3    issues that shouldn't have been waived.  And that's why

4    I sent them stuff that I wasn't satisfied with their

5    representation, and they turned around and high-tailed

6    it and filed a Motion to Withdraw because I was ...

7         THE COURT:  Well did you write them and talk

8    to Mr. Ford saying you was going to make a complaint to

9    the disciplinary board?  Did you do that?

10         THE DEFENDANT:  Well, heck, he --

11         THE COURT:  I asked you now, did you do that?

12         THE DEFENDANT:  He filed my letter into this

13    court which is attorney/client privileged mail.

14         THE COURT:  All right, your Motion to

15    Withdraw is denied.  Note your exception.

16         You understand now --

17         Let the record also show that I've asked this

18    gentleman if he cared to express himself on --

19         THE DEFENDANT:  Yeah, I wanted Jesse Ford

20    gone February 3rd, whenever he made the opening

21    statements waiving the issue on my Miranda issue, which

22    I have presented in my pro se habeas corpus.  You guys

23    never even acknowledged it, but the Federal Court

24    docketed it 3960940, and the Sixth Circuit Court, I

25    sent them an appellate brief, 96-624, and I sent this

23

1    Court both a copy of the brief and -- the brief and the

2    original complaint with exhibits, and this Court didn't

3    even entertain those, which would have helped eliminate

4    some of the conflicts, but you wouldn't hear of it.

5          I'm sorry if I'm being irrational or

6    whatever, but, you know, things just weren't going

7    right.

8          THE COURT:  The Court don't find you

9    irrational.  The Court finds that you're -- that what

10    you think -- that what you're doing, the Court finds

11    it's deliberate and that you're not irrational, that

12    you understand what you're doing.

13          THE DEFENDANT:  Well I'm not trying to -- I'm

14    just -- I'm not trying to be hard to live with.  I'm

15    just trying to make sure that certain things are on

16    record that should be on record that have been ignored

17    just because I'm being represented by counsel that

18    doesn't want to advocate my cause.  I felt I could have

19    advocated my own cause and got a better verdict out of

20    the jury, because I would have known what questions to

21    ask.  I wouldn't have sat there and asked five

22    questions and then said, okay, dismissed.  I told you

23    that there were certain questions that needed to be

24    asked and they weren't asked.  Just like they left the

25    false impression on the jury that I never took care of

24

```
 1    my children.  My wife, God rest her soul, she worked

 2    from --

 3              THE COURT:  Just sit down, Mr. Ford.

 4              THE DEFENDANT:  -- seven p.m. to seven a.m.

 5    at night --

 6              THE COURT:  I'm going to let you say anything

 7    you want to after he gets finished.

 8              THE DEFENDANT:  -- three to four times a week

 9    and then turned around and went to school three days a

10    week, Monday, Wednesday and sometimes Friday at Jackson

11    State Community College.  During that period of time I

12    was the main caretaker of those children.

13              THE COURT:  Now, Mr. --

14              THE DEFENDANT:  And they sat there --

15              THE COURT:  Just a minute.

16              THE DEFENDANT:  -- and denied that I took

17    care of them.

18              THE COURT:  Stop.  Stop, Mr. Hall.  Now if

19    you want to bring out any other facts, I'm going --

20    you'll have to take the oath.

21              THE DEFENDANT:  If you'll remove the flag of

22    war --

23              THE COURT:  I'm not going to remove the flag

24    of war.

25              THE DEFENDANT:  -- to protect my
```

1  constitutional rights I can take the stand.

2         THE COURT:  I'm not -- It's not going to be

3  removed under any circumstances unless some other court

4  -- higher court tells me.  So your opportunity this

5  morning is to testify if you want to if you'll take the

6  oath.  Now if you don't want to take the oath, then you

7  don't have to.  You're not going to be allowed to

8  testify.

9         THE DEFENDANT:  Can I at least get my records

10  from this Court, like the transcript?

11         THE COURT:  You'll have to go through your

12  lawyers.

13         THE DEFENDANT:  Why don't I just skip that

14  because my lawyers have not -- I found the freedom of

15  information acts based --

16         THE COURT:  See, I can't accept that unless

17  you take the oath.  See, I can't accept anything you

18  say as proof because it must be under oath.  And so

19  what you've been rambling about, the Court does not

20  accept that because you refuse to obey the rules of

21  this Court, and the rule of this Court is that this

22  flag remains here, and anyone that testifies in this

23  courtroom must be under oath.

24         THE DEFENDANT:  Well regardless, Capital Case

25  Resource Center vs. Woodall, which I assume is Jerry

26

1    Woodall, Case Number 01-8-01-9104-CH-00150, 1992,

2    Tennessee Appeals, Lexus '94, Tennessee Appeals,

3    January 29, 1992, in which it was determined that files

4    held by the district attorney general were public

5    records under the Tennessee Public Records Act.   I

6    believe I'm entitled to those records.

7            Thank you, Your Honor.

8            THE COURT:   All right, Mr. Ford.   You can say

9    what you want to.

10           MR. FORD:   Your Honor, I'm just a bit

11   concerned about Mr. Hall's allegations, raising issues

12   of ineffective assistance of counsel.   Now that's

13   basically his argument here.   If the Court wants to

14   proceed, and that's the Court's ruling, however, I just

15   want to point that out, but --

16           THE COURT:   You've pointed it out, and the

17   Court's ruling is that you'll proceed.   Mr. Ford, I've

18   got no assurance that this man either wouldn't

19   cooperate or didn't cooperate or they didn't please,

20   his first group of lawyers, and then out of an

21   abundance of caution I gave him a second group of

22   lawyers, and now after the trial is over -- and after

23   we went through, and the Court feels comfortable about

24   the -- about what the jury did, that then to now kick

25   you out and attempt to bring some other lawyers, we

27

1    don't have that many trained lawyers in this immediate

2    area, and if I -- you're removed, you've got to go to

3    Memphis or Nashville or some place, which it would make

4    it even more disjointed than it is now.

5            THE DEFENDANT:  That's where they were headed

6    before.

7            MR. FORD:  I'm just afraid, Your Honor, --

8            THE COURT:  Well just be afraid.  You be

9    afraid, and I don't feel like you got any more personal

10   interest here than any other lawyer.  Personal itself,

11   the Court is of the opinion that you don't have any

12   unusual personal interest in this matter over and above

13   what you would any other circumstances.

14           MR. FORD:  Thank you, Your Honor.

15           THE COURT:  Anything further?

16           MR. FORD:  No, sir.

17           THE COURT:  Court is adjourned.

18           One more thing, obviously the Court can hold

19   this under -- it would be under consideration for 30

20   days, if anybody wants to submit any brief, or if

21   General Woodall wants to submit his brief about your

22   feelings in the matter, your public interest or

23   anything like that, if he wants to be a friend of the

24   Court on the motion.  I have no problem with it.

25           THE DEFENDANT:  Well could I have my

                              28

1   transcript so I can file my brief?

2          MR. FORD:  We're going to order the

3   transcript, Your Honor.

4          THE COURT:  You can talk to your lawyers and

5   they'll tell you.

6          THE DEFENDANT:  Well I've filed the Freedom

7   of Information Acts until I'm blue in the face and

8   haven't received discovery one from them.

9          THE COURT:  You go right ahead and recite.

10  Just go ahead.  Take him upstairs.

11         THE DEFENDANT:  Upstairs?  I believe I'm on

12  my way to Riverbend where they don't -- where the

13  conditions aren't sub-standard like in these county

14  jails and the city jail.  You know it.  You know

15  they're overcrowded.  They've got beds on the floors in

16  there.  That's a nasty place.  At least the Department

17  of Corrections can do something right.

18                  - - - - -

19  **END OF REQUESTED PROCEEDINGS.**

20

21

22

23

24

25

1                          **CERTIFICATE**

2              I, the undersigned Amy Mays, Official Court

3     Reporter for the 26th Judicial District of the State of

4     Tennessee, do hereby certify that the foregoing is a

5     true, accurate and complete transcript, to the best of

6     my knowledge and ability, of the requested proceedings

7     had in the captioned cause, in the Criminal Court for

8     Madison County, Tennessee, on the 20th day of March,

9     1997.

10             I do further certify that I am neither of

11    kin, counsel nor interest to any party hereto.

12

13    _____

14    AMY MAYS

15

16    _____

17    DATE

18

19

20

21

22

23

24

25

                                30

1                    **CERTIFICATE OF THE COURT**

2              This is to certify that the Transcript of the

3     Evidence adduced at the Motion for New Trial in

4     this case has been filed with the Clerk of the Court in

5     accordance with the Tennessee Rules of Appellate

6     Procedure.

7              This is to further certify that the Court has

8     examined the Transcript of the Evidence and has found

9     it to be a true and accurate record of the proceedings.

10             THEREFORE, IT IS ORDERED, ADJUDGED AND

11     DECREED that the Transcript of the Evidence is hereby

12     approved by the Court and counsel for the State and the

13     Defendant, and the Clerk is hereby ordered to make the

14     Transcript of the Evidence part of the Record on Appeal

15     in this case.

16

17     JUDGE

18

19     DATE

20     APPROVAL:

21     _____           **FILED**

22     ATTORNEY FOR THE STATE

23                                                JUN 25 1997

24     _____    JOE CAFFNEY, CIRCUIT COURT CLERK

25     ATTORNEY FOR THE DEFENDANT                DEPUTY CLERK
                                                   A.M.