ORDER EXTENSION TO __11-23-98__

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

FILED

NOV 23 1998

Clerk of the Courts
Rec'd By _____

---

STATE OF TENNESSEE,                    )
                                       )
        Appellee,                      )
                                       )   No.  02S01-9805-CC-00095
                                       )        02C01-9703-CC-00095
VS.                                    )   DEATH PENALTY CASE
                                       )   ORAL ARGUMENT REQUESTED
JON DOUGLAS HALL,                      )
                                       )
        Appellant.                     )

---

REPLY BRIEF OF APPELLANT
JON DOUGLAS HALL

---

C. MARK DONAHOE - B.P.R. # 14049
ATTORNEY FOR THE DEFENDANT
312 EAST LAFAYETTE STREET
P.O. BOX 2004
JACKSON, TENNESSEE 28302-2004
(901) 424-0461

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

ARGUMENT AND RESPONSE TO THE APPELLEE ................................... 1

I.    THE EVIDENCE FAILS TO SUPPORT THE FINDING OF
      THE JURY THAT JON DOUGLASS HALL COMMITTED
      FIRST-DEGREE PREMEDITATED MURDER ................... 1

      i.    More Than The Mere Fact Of Repeated Blows Must
            Be Shown To Establish First-Degree Murder ............. 5

      ii.   There Was No Absence Of Passion Which Is Required
            To Satisfy The Elements Of Deliberation And
            Premeditation ................................................................. 6

      iii.  Jon Douglas Hall Was Incapable Of Forming The
            Requisite Culpable Mental State Due To Voluntary
            Intoxication .................................................................... 6

II.   THE TRIAL COURT COMMITTED REVERSIBLE
      ERROR WHEN IT ALLOWED HORRIFYING AND
      GRUESOME PHOTOGRAPHS TO BE INTRODUCED
      INTO EVIDENCE AT THE PUNISHMENT PHASE ........... 8

III.  THE EVIDENCE PRESENTED DURING THE PENALTY
      PHASE WAS INSUFFICIENT TO SUPPORT THE
      AGGRAVATED CIRCUMSTANCE THAT THE MURDER
      WAS HEINOUS, ATROCIOUS OR CRUEL WITHIN THE
      MEANING OF TENN. CODE ANN. § 39-13-204(I)(5) ........... 12

      i.    The Statutorily Mandated Proportionality Review
            Is Conducted In Violation Of Due Process And The
            Law Of The Land ........................................................... 12

IV.   THE TRIAL COURT ERRED IN INSTRUCTING THE
      JURY THAT IT MUST AGREE UNANIMOUSLY IN
      ORDER TO IMPOSE A LIFE SENTENCE ........................... 17

V.    THE TRIAL COURT ERRED DURING THE GUILT PHASE
      OF THE TRIAL BY NOT ALLOWING CHERYL ARBOGAST

TO TESTIFY AS TO JON HALL'S STATE OF MIND
IMMEDIATELY PRIOR TO AND ON JULY 29, 1994 ............    18

VI.    THE TRIAL COURT'S FAILURE TO HONOR JON HALL'S
REASONABLE REQUEST FOR REMOVAL OF THE FLAG
VIOLATED THE DEFENDANT'S FIFTH, SIXTH, AND
FOURTEENTH AMENDMENT RIGHTS TO TESTIFY
ON HIS OWN BEHALF ...............................................    19

CONCLUSION ...................................................................    21

CERTIFICATE OF SERVICE ...............................................    22

# TABLE OF AUTHORITIES

**Cases:**

Clark v. State, 402 S.W.2d 863 (Tenn. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Gregg v. Georgia, 428 U.S. 153 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Harrell v. State, 593 S.W.2d 664 (Tenn. Crim. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . 7

Rock v. Arkansas, 483 U.S. 44 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Spencer v. Washington, 418 U.S. 405 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Banks, 564 S.W.2d 947 (Tenn. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

State v. Brooks, 880 S.W.2d 390 (Tenn. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . 2

State v. Brown, 836 S.W.2d 530 (Tenn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 11

State v. Cooper, 718 S.W.2d 256 (Tenn. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

State v. Davis, 28 S.W.2d 993 (Tenn. 1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

State v. De Priest, 697 S.W.2d 597 (Tenn. Crim. App. 1985) . . . . . . . . . . . . . . . . . . . 19

State v. Gentry, 881 S.W.2d 1 (Tenn. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 2

State v. Hall, 958 S.W.2d 679 (Tenn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

State v. Duncan, 698 S.W.2d 63 (Tenn. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

State v. Johnson, 743 S.W.2d 154 (Tenn. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

State v. Odom, 928 S.W.2d 18 (Tenn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

State v. O'Guinn, 709 S.W.2d 561 (Tenn. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

State v. Phipps, 883 S.W.2d 138 (Tenn. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . 6, 18

State v. Shelton, 854 S.W.2d 116 (Tenn. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . 6

State v. West, 844 S.W.2d 144 (Tenn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Texas v. Johnson, 491 U.S. 397 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Eichman, 486 U.S. 310 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Statutes:**

T.C.A. § 39-13-202(a)(1)(Supp. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

T.C.A. § 39-11-106(a)(18)(1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

T.C.A. § 39-13-201(b)(2)(1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

T.C.A. § 39-13-201(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

T.C.A. § 39-11-503(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

T.C.A. § 39-13-206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Rules:**

Tenn. R. Evide. 804(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Other Authorities:**

Wharton's Criminal Law § 140 (14th ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## ARGUMENT

**I.    THE EVIDENCE FAILS TO SUPPORT THE FINDING OF THE JURY THAT JON DOUGLASS HALL COMMITTED FIRST-DEGREE PREMEDITATED MURDER.**

On July 29, 1994, first-degree murder was defined by Tenn. Code Ann. § 39-13-202(a)(1)(Supp. 1994) as "[a]n intentional, premeditated and deliberate killing of another." Importantly, given the case at bar, once a homicide is proven, it is presumed to be a second-degree offense, which may only be rebutted by the State proving premeditation and deliberation beyond a reasonable doubt. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992).

The Tennessee Code defines intentional as "the conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18)(1991). Next, the Code states that premeditation requires "the exercise of reflection and judgment," Tenn. Code Ann. § 39-13-201(b)(2)(1991), necessitating "a previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). Finally, the Code posits that a deliberate act means one performed with a cool purpose. Tenn. Code Ann. § 39-13-201(b)(1). In Brown, the Supreme Court added clarity to the elements of premeditation and deliberation:

> 'Premeditation' is the process simply of thinking about a proposed killing before engaging in the homicidal conduct; and 'deliberation' is the process of carefully weighing such matters as the wisdom of going ahead with the proposed killing, the manner in which the killing will be accomplished, and the consequences which may be visited upon the killer if and when apprehended. 'Deliberation' is present if the thinking, i.e. the 'premeditation,' is being done in such a cool mental state, under such circumstances, and for such a period of time as to permit a 'careful weighing' of the proposed decision.

Id. at 541, quoting C. Torcia, Wharton's Criminal Law § 140 (14th ed. 1979). "While it remains true

1

that no specific length of time is required for the formation of a cool, dispassionate intent to kill, Brown requires more than a 'split-second' of reflection in order to satisfy the elements of premeditation and deliberation." West, 844 S.W.2d at 147. Accordingly, before a jury can convict the defendant of first-degree murder, it must find that the defendant consciously engaged in the conduct to cause death, and killed only "upon reflection, 'without passion or provocation,' and otherwise free from the influence of excitement." State v. Gentry, 881 S.W.2d 1, 4 (Tenn. Crim. App. 1993). See State v. Brooks, 880 S.W.2d 390, 392 (Tenn. Crim. App. 1993).

The record on appeal does not reflect facts or circumstances evidencing a cool and premeditated murder conducted only after reflection and a careful weighing of the circumstances. Quite the contrary, the record offered for review shows a killing premised on anger, passion, and alcohol.

The State, in its brief, attempts to persuade this Court that evidence of premeditation is found in Hall's alleged threats on his wife's life. Brief for the State, 18. The State contends that Hall "made an implicit threat on his wife's life." Brief for the State, 18. The State basis its proof on the testimony of Stephanie Lambert, one of Hall's children, who testified that Hall told the victim that she would "never live to graduate" college, citing pages 246 and 264 of the record. Brief for the State, 18. After already being warned by the Court not to lead his witness, (R. 243), General Woodall asked Stephanie Lambert, eight years old at the time of the trial, and five years old at the time of the crime, the following series of questions:

Q.    Okay, I understand. Now, was your mama doing something outside of the
      home? Did she have a job?

A.    Yes, sir.

2

Q.    What was her job?

A.    She worked at the health department or something like that.

Q.    Where was she going to school?

A.    Jackson.

Q.    Was it a college?

A.    I don't know.

Q.    Did Jon say anything to your mama about her college work or her school

        work?

A.    He said that, "You'll never live to graduate."

(R. 246).

Proof such as the above is insufficient evidence upon which a reasonable juror would have found premeditation beyond a reasonable doubt. It is clear from the record that Stephanie Lambert, a child of tender years, was led and coached in her testimony. The Court, itself, admonished General Woodall not to lead his witness. (R. 243). The fact that the State, in this appeal, is forced to rely upon this scant evidence for facts or circumstances evidencing a cool and premeditated murder - conducted only after reflection and a careful weighing of the circumstances - is proof that the jury behaved irrationally when rendering its verdict. No reasonable juror could have concluded that Stephanie Lambert, five years old at the time of the crime, who could remember little else about the events that took place on July 29, 1994, could somehow remember Mr. Hall telling his mother that she would never graduate college.

There is little doubt that Stephanie Lambert's testimony is inconsistent to such a degree that no reasonable juror would have relied upon it, especially to the extent necessary to impose a verdict

3

of first-degree murder.  For instance, when Stephanie was asked, "Did your mama go to the door or did one of the kids go to the door?," (R. 241) she responded, "Mama and Cynthia."  However, when Cynthia Lambert was asked "Did you open the door?," Cynthia responded, "No." (R.260).  The very next question asked of Cynthia Lambert was, "Who went to the door?," to which she replied, "Mama."  It is clear that inconsistencies such as this show that no reasonable juror would have accredited such testimony with the veracity needed to prove premeditation beyond a reasonable doubt.

Next, the State argues that the "proof shows that Hall reflected upon his decision to murder his wife during the course of the attack."  Brief for the State, 19.  One of the items the State relies upon is that "Hall repeatedly told the children to go to their bedrooms and knocked over the chair in which Mrs. Hall was seated. (Citing page 243 of the record)" However, nowhere in the record is there proof that Hall "knocked" over the chair.  Stephanie Lambert simply stated that Hall "tipped" over the chair.  (R. 243).  As a matter of fact, General Woodall in the trial attempted to get his witness to use the word "pushed," but the Court admonished General Woodall for leading his witness. (R. 243).  While the Defendant is respectfully not asking this Court to engage in a game of semantics, it is important that this Court distinguish between words of force and violence, such as "pushed" and "knocked" as opposed to nonviolent recollections of events, such as "tipped."  Mr. Hall, is, after all, appealing a conviction of first-degree murder and a subsequent sentence of death by electrocution.  Thus, it is important that this Honorable Court be provided with accurate testimony and proof upon which to evaluate the decision of the lower court.

Next, on page 20 of its brief, the State argues that "The children heard their mother's screams coming from the bedroom and heard objects being thrown against the wall. (Citing pages 243, 261,

4

and 277)" The eyewitnesses never claim that they heard objects being thrown against the wall. On page 261 of the record, Cynthia Lambert testified that she heard "things slammed around." No where in the record is there proof that objects were being thrown against the wall. Again, Mr. Hall does not want the State to paint of picture of events that are simply not true. The Defendant insists that the State should be left to the actual proof in the record to support its conviction for first-degree premeditated murder. If the proof is not there, this Court should reverse a decision that is not supported by the evidence and one which no reasonable juror, given the actual testimony in the record would impose.

The Defendant relies upon its version of the facts surrounding the events that occurred on July 29, 1994, as provided in its Brief, and urges the Court to take the role of thirteenth juror and ask whether a reasonable juror, based upon the evidence in the record, would have found Jon Hall's mind to "be free from the influence of excitement or passion, as to be capable of reflecting and acting with a sufficient degree of coolness and deliberation or purpose. . . ." <u>Clark v. State</u>, 402 S.W. 863, 868 (Tenn. 1966).

### i.    More Than The Mere Fact Of Repeated Blows Must Be Shown To Establish First-Degree Murder.

More than the mere fact of repeated blows must be shown to establish first-degree murder. <u>Brown</u>, 836 S.W.2d at 543. In it's case-in-chief, the State drew heavily upon the fact that Billie Hall, according to the State's expert, had been struck some eighty-three times. As a matter of fact, the State's expert, Dr. Smith, used a life-sized mannequin to methodically illustrate each and every one of the eighty-three blows. (R. 295-302). It is clear that such a blow-by-blow synopsis did

nothing more than improperly inflame the jury. This is evident from the fact that the jury returned a verdict of first-degree murder and recommended the death penalty although the eighty-three blows were *not* the cause of death. (R. 293, 303, 305).

In its brief, the State chose not address this particular argument raised by Mr. Hall. Accordingly, Mr. Hall respectfully relies upon all arguments previously made in its brief.

### ii. There Was No Absence Of Passion Which Is Required To Satisfy The Elements Of Deliberation And Premeditation.

The State addresses this portion of the Appellant's brief under its argument beginning on page 17 of its brief. The Appellant has already responded to the State's argument above. Nonetheless, Mr. Hall urges the Court to consider the specific arguments made under the above-titled portion of its brief.

### iii. Jon Douglas Hall Was Incapable Of Forming The Requisite Culpable Mental State Due To Voluntary Intoxication.

The Tennessee Code provides ". . . intoxication itself is not a defense to prosecution for an offense. However, intoxication, whether voluntary or involuntary, is admissible in evidence if it is relevant to negate a culpable mental state." Tenn. Code Ann. § 39-11-503(a). See also State v. Phipps, 883 S.W.2d 138, 148 (Tenn. Crim. App. 1994); State v. Shelton, 854 S.W.2d 116, 121 (Tenn. Crim. App. 1992).

In its brief, the State argues that "The only proof of the defendant's intoxication at the time of the offense came from his own self-serving statements. After the murder, Hall related to his prison

confidant that he drank to the point of intoxication on the day of the murder. (Citing page 234 of the record)"

It is interesting to note that when the State wishes to use the questionable testimony of inmate Dutton, it urges this Court to rely upon it as evidence of guilt. See page 18 of the State's Brief. However, whenever inmate Dutton offers credible exculpatory evidence, the State urges this Court to view it as merely "self-serving" statements. In any event, more than Mr. Hall's alleged self-serving statements indicate that he was indeed intoxicated on July 29, 1994. Inmate Dutton's personal notes reflect his conversation with Mr. Hall. (R. 234). Moreover, one of the few eyewitnesses, Cindy Lambert, testified that Hall had actually brought beer into the house with him and had been drinking. (R. 270). Thus, there was more than ample evidence adduced at trial for the jury to conclude that Mr. Hall was intoxicated to the point that he lacked the mental capacity to form the necessary culpable mental state to commit first-degree premeditated murder. See Harrell v. State, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979).

The Appellant, therefore, relies upon the remainder of its argument addressing the specific issue of intoxication as addressed in its brief.

II.    **THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED HORRIFYING AND GRUESOME PHOTOGRAPHS TO BE INTRODUCED INTO EVIDENCE AT THE PUNISHMENT PHASE.**

The primary issue in the present case is whether the photographs introduced at trial were needed *in addition to* the testimonial evidence of Dr. Smith in relating the facts to the jury. Neither the fact that Billie Hall was beaten nor the fact that she died from asphyxiation and/or drowned were disputed issues. (R. 179-80)  Thus, the admission of 17 gruesome autopsy photos were needlessly cumulative with no additional probative value beyond that already presented by Dr. Smith at the guilt phase. (R. 282-307).  The State's witness, through the use of a life-sized mannequin, did a more than thorough job of depicting for the jury the injuries and beating Billie suffered. (R. 295-301). The state methodically provided a blow-by-blow synopsis of each and every bruise found on the victim's body. (R. 295-301). *The State even had their expert use markers to draw on the mannequin, so that by the time the doctor had concluded his testimony, the mannequin was covered in ink.*

The State, in its brief, however, argues that the admission of 17 colorful and gruesome autopsy photographs were needed during the sentencing phase because the "photographs provided the best evidence for the jury to consider the nature and extent of the injuries inflicted upon the victim.  Therefore, the trial court did not abuse its discretion in admitting these highly probative photographs during the penalty phase of trial."  Brief for the State, 23.

The State, in an effort to avoid the issue at bar, that being whether the admission of the photographs were needlessly cumulative and served no other purpose than to inflame the jury, cited a litany of cases in which the Court allowed photographs to be admitted.  In each of the cases cited

8

by the State, however, there was not medical testimony which even approached that in the present case. Again, in this case the State used a life-sized mannequin at both the trial and sentencing phase to describe the injuries suffered by Ms. Hall. (R. 295-301). The State even had their expert use markers to draw on the mannequin to illustrate the location of each blow. (R. 295-301).

The State has clearly chosen not to bring to this Court's attention the general rule that where medical testimony adequately describes the degree or extent of an injury, graphic photographs should not be admitted. See State v. Duncan, 698 S.W.2d 63, 69 (Tenn. 1985). Instead, the State is content to rely on its argument that the "photographs were essential to show the jury the nature and extent of the injuries inflicted on the victim."

The State's argument is without merit. Even if the State could prove that the admission of 17 color autopsy photographs were needed in addition to medical testimony coupled with a life-sized mannequin illustrating the location of each blow, relevant evidence should not be admitted if its prejudicial effect outweighs its probative value. State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978). The matters to be taken into consideration in determining whether to admit photographs of a murder victim include, the "value of photographs as evidence, ... their accuracy and clarity, ... whether they were taken before the corpse was moved, ... [and] the inadequacy of the testimonial evidence in relating the facts to the jury." Id.

When analyzing the above elements, even if the photographs were considered to be valuable evidence and they are deemed clear and accurate, they were not taken prior to the removal of the corpse from the crime scene. Moreover, and most importantly, their was abundant medical testimony relating the beating sustained by the victim to the jury.

As the Court recognized in Banks, supra, "In the presence of an offer to stipulate the facts

9

shown in the photograph, the State's burden of justification is often difficult to sustain." Id. at 951. In the present case the Appellant did not challenge the number of blows sustained by the victim, nor the manner in which she sustained them. It was essentially undisputed that Mr. Hall beat his wife then threw her in a swimming pull where she ultimately died. The Appellant argued that he did not commit premeditated murder. Thus, the photographic evidence did "not add anything to the testimonial descriptions of the injuries." Id. Similarly, the Banks Court realized that "In many cases, the facts concerning the injuries and the cause of death may be adequately established and better explained by a pathologist." Id. at 951-52. In the present case, a pathologist methodically provided a blow-by-blow synopsis of each and every bruise found on the victim's body and showed the jury where the injuries were located by the use of a life-sized mannequin. (R. 295-301). Moreover, the Banks Court realized that:

> the number of blows and the brutality of the crime was a circumstance bearing on the element of deliberation or premeditation. A case can be imagined in which a photograph could supplement the medical testimony to give a better understanding of the number of wounds inflicted and the manner in which the killing was carried out, but this was not one. *The pathologist catalogued the injuries and described them in detail. He gave more information about them than the photographs do. His explanation is readily understandable without a pictorial portrayal.*

Id. at 952. (Emphasis added).

The case under consideration falls in line with the rule mandated above. Given the testimony of the pathologist and the use of a life-sized mannequin to illustrate where and how the blows were inflicted, the photographs were certainly not essential to show the jury the nature and extent of the injuries inflicted on the victim as the State argues.

The State appears to suggest that because Jon Hall had inflicted so many blows to his wife, he must have wanted to murder her, and that this is evidence of the cruel, heinous, and atrocious

10

aspect of the crime. (R. 396, 398). This Court has held, however, that the fact that repeated blows were inflicted on the victim is not sufficient, by itself, to establish premeditation and deliberation for a first-degree murder conviction. Brown, 836 S.W.2d at 542. The Court explained that repeated blows can just as easily be delivered in the heat of passion without any design or reflection as they can in a premeditated murder. Id. Thus, only when the multiple "blows are inflicted as a result of premeditation and deliberation can they be said to prove first-degree murder." Id.

The photographs were cumulative, serving no other purpose than to inflame the jury and unfairly prejudice Mr. Hall. The trial court's decision to admit these gruesome photographs and to allow the jury to view them was reversible error, which unfairly prejudiced Mr. Hall. Accordingly, this Honorable Court should grant Mr. Hall a new trial so an unimpassioned jury can decide his fate.

III.    THE EVIDENCE PRESENTED DURING THE PENALTY PHASE
WAS INSUFFICIENT TO SUPPORT THE AGGRAVATED
CIRCUMSTANCE THAT THE MURDER WAS HEINOUS,
ATROCIOUS OR CRUEL WITHIN THE MEANING OF TENN.
CODE ANN. § 39-13-204(i)(5).

The Appellant relies upon his argument presented in his brief with regard to the above issue.

i.    The Statutorily Mandated Proportionality Review Is
Conducted In Violation Of Due Process And The Law Of
The Land.

In reply to the State's brief, the Appellant concedes that it was in error in arguing that there is no meaningful method for proportionality review. The Appellant recognizes that Tenn. Code Ann. § 39-13-206(c)(1)(A)-(D) does indeed provide a criteria for a judicial proportionality review of capital sentences. Nevertheless, the penalty imposed on the Appellant is excessive and disproportionate to the penalty imposed in similar cases, even given the guidelines under Tenn. Code Ann. § 39-13-206(c)(1)(A)-(D).

The State, presumably pursuant to State v. Bland, 958 S.W.2d 651 (Tenn. 1997), cites a line of cases which it contends are similar to "both the nature of the crime and background of the defendant." Brief for the State, 34. The Appellant will take each in turn.

First, the State cites State v. Hall, 958 S.W.2d 679 (Tenn. 1997), as an example of a case in which the death penalty was imposed for a similarly natured crime and defendant. Brief for the State, 34. In Hall, the Defendant murdered his ex-girlfriend by throwing a gasoline bomb on the victim as she sat in her car. Id. at 683-84. While it is true that the Defendant in Hall killed someone, and that he received the death penalty, little else is similar with regard to Hall and the case at bar. For instance, in the present case, there is a dispute as to whether the Appellant committed first-degree

premeditated murder. However, in <u>Hall</u>, there was no such dispute, at least factually speaking. In <u>Hall</u>, as he was preparing to leave the neighborhood, "he encountered the victim as she drove up in her car." <u>Id</u>. at 685. Shortly thereafter a fight ensued. <u>Id</u>. Next,

> Hall got out of her car and told the victim to do likewise because he was going to burn it. When the victim tried to lock the door, Hall reached inside the car, grabbed the keys, threw them towards his car, and ordered the victim to get out of her car. Hall then ran to his car and grabbed the jug of gasoline [which he had previously acquired to burn the victim's car]. He ignited the paper towels [which he had previously acquired for just such a purpose] and threw the jug into the driver's side of the victim's car. The defendant knew the victim was lying in the front seat crying when he threw the gas bomb into the car.

<u>Id</u>.

The State argues that because the defendant in <u>Hall</u> was upset by the separation between him and the victim and because the defendant argued that he was intoxicated, it is on par with the case at bar. Brief for the State, 34-35. However, the State fails to realize that in <u>Hall</u>, the defendant was sentenced finding two aggravating circumstances, Tenn. Code Ann. § 39-13-204(i)(5) & (7). In the case *sub judice*, the only mitigating found was that of heinous, atrocious, and cruel. Moreover, and importantly, the evidence supporting premeditation in <u>Hall</u> is clear; the jury was not left to infer premeditation or intent. For instance, in <u>Hall</u>, there was proof that the defendant doused the victim with gasoline prior to lighting her on fire. <u>Id</u>. at 684. There is little doubt that dousing one with gasoline and then lighting him or her on fire is heinous, atrocious, and cruel. There is a good argument to be made, however, that strangling one's wife while in the heat of passion does not convey the same sense of atrocity as that found in <u>Hall</u>.

Next, the State cites <u>State v. Johnson</u>, 743 S.W.2d 154 (Tenn. 1987), as an example of a case in which the death penalty was imposed for a similarly natured crime and defendant. Brief for the

13

State, 35. In <u>Johnson</u>, the way in which the defendant murdered his wife was so horrific that the

Court chose not to describe in detail. Instead, the Court stated:

> It is sufficient to state that a large plastic garbage bag had been forced into her mouth, resulting in her strangulation and asphyxiation. She bled from the nose and ears, and traces of blood were found on a couch in the office where the death occurred. There was testimony that she would have been conscious during the terrifying ordeal and that from one to four minutes would have elapsed before she expired.

<u>Id.</u> at 156.

Here the State argues that because the victim was strangled, the <u>Johnson</u> case and the case

at bar are similar, and thus the punishment imposed on the Appellant is not disproportional to other

similarly situated cases. Brief for the State, 35. Once again, however, in <u>Johnson</u>, the jury found

more than just one aggravating factor. In <u>Johnson</u>, the defendant had been previously charged with

armed robbery and aggravated assault. <u>Id.</u> at 157. Moreover, the Court described the homicide as

"inhuman and brutal to an almost indescribable degree." <u>Id.</u> Again, the murder was so heinous that

the Court chose to not describe it in detail.

In the present case, Jon Hall strangled his wife. Of course all murders are brutal, but the death

penalty is to be reserved for the worst of the worse. <u>See Gregg v. Georgia</u>, 428 U.S. 153 (1976);

<u>State v. Odom</u>, 928 18, 25 (Tenn. 1996). Jon Hall did not use any weapon during the crime, nor did

he mutilate his victim's body. Instead, Jon's temper got the best of him and he began to strike his

wife. (R. 228). Jon, unable to control his rage and passion, drug his wife to a swimming pool in their

backyard where the fight continued and the victim ultimate died. (R. 203-05, 288-92). Again, all

murders are brutal, but the Appellant's crime was certainly not "inhuman and brutal to an almost

indescribable degree" as the State would have this Court believe. <u>See Johnson</u>, 743 S.W.2d at 157.

Next, the State cites <u>State v. Cooper</u>. 718 S.W.2d 256 (Tenn. 1986), as an example of a case

14

in which the death penalty was imposed for a similarly natured crime and defendant. Brief of the State, 35. The defendant in <u>Cooper</u> was sentenced to death for murdering his wife who had previously filed for divorce. <u>Id.</u> at 257. The State argues that <u>Cooper</u> is similar to the case at bar because the defendant argued that he committed the homicide under the influence of extreme emotional disturbance. <u>Id.</u> at 256-57, Brief for the State, 36. However, the facts surrounding the homicide in <u>Cooper</u> are far from similar to the case under consideration. For instance, in <u>Cooper</u> the defendant had taunted and threatened his victim for hours before shooting at her. <u>Id.</u> at 259. As the Court in <u>Cooper</u> recognized:

> It [was] obvious from the testimony that his victim was greatly frightened. She and her manager had twice called the police to try to prevent this senseless and entirely unprovoked homicide, and there can be no question from an examination of the record that the victim was terrified by the conduct and the threats of the appellant.... The deliberate taunting and threatening of a victim for hours before shooting at her once, causing her and her fellow employee to dive to the floor for safety, and then deliberately pumping the contents of four shotgun shells into her while she was helplessly trapped inside a small building could, in our opinion, convince a reasonable jury that the victim was subjected to torture and that the perpetrator of such conduct evinced depravity of mind.

<u>Id.</u> at 259-60.

In the present case, there is no proof that Mr. Hall had taunted and threatened his wife to the extent displayed by the defendant in <u>Cooper</u>. Moreover, the facts in <u>Cooper</u> clearly establish premeditation and a cool and well-thought plan to murder. <u>See</u> <u>Cooper</u> at 258. Such is not the case with the Appellant's case. In short, <u>Cooper</u> is not similar to the present case and the imposition of death on the Appellant is disproportional when compared to <u>Cooper</u>.

Finally, the State cites <u>State v. O'Guinn</u>, 709 S.W.2d 561 (Tenn. 1986), as an example of a case in which the death penalty was imposed for a similarly natured crime and defendant. The State

argues that because the victim in O'Guinn was strangled and because the defendant's father has rejected him, the case is similar to the one at bar. However, in O'Guinn, the Court focused more on the defendant's depravity of the mind when imposing the death sentence. For instance, the Court noted that the defendant's twisting of the victim's "nipples with a pliers-like instrument until it left a ridged abrasion, and rammed a hard, firm object into her vagina with such force that it tore the elastic vaginal tissue" in conjunction with her strangulation show the aggravating circumstance of depravity of the mind. Id. at 567-68.

In the case *sub judice*, the Appellant conducted no such depraved acts on the victim's corpse. See Odom, 928 S.W.2d at 26 (defining abuse as the improper use of a thing). Moreover, the Appellant's aggravating factor is not even related to acts of depravity. The facts which led to the imposition of the death sentence in O'Guinn are clearly not similar to the factual scenario in the present case. Thus, the State's reliance on this case and all the previously cited cases merely lend credibility to the Appellant's argument that the imposition of the death penalty, given the facts and circumstances of his case, is out of proportion with similarly situated crimes and defendants.

The Appellant asks this Court to limit the imposition of the death penalty to the worst of the worse. Odom, 928 S.W.2d at 25; Pulley v. Harris, 465 U.S. 37 (1984); Gregg v. Georgia, 428 U.S. 153 (1976).

16

IV.     THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT
        IT MUST AGREE UNANIMOUSLY IN ORDER TO IMPOSE A LIFE
        SENTENCE.

The Defendant relies upon his argument made under this section in his brief.

**V.    THE TRIAL COURT ERRED DURING THE GUILT PHASE OF THE
TRIAL BY NOT ALLOWING CHERYL ARBOGAST TO TESTIFY
AS TO JON HALL'S STATE OF MIND IMMEDIATELY PRIOR TO
AND ON JULY 29, 1994.**

Hall's sister, Cheryl Arbogast, was called to the stand during the guilt phase of the trial as the

defendant's first witness.  Hall knew that his sister's testimony was critical in that she was the only

person who could testify as to Hall's state of mind immediately prior to the murder.  However, the

State objected to her testimony based on the fact that it was suspected that she lacked first-hand

knowledge, and her testimony would, therefore, be hearsay.  (R. 314).

Generally, evidence of an accused's state of mind at the time of the offense is admissible to

negate the existence of the requisite elements of intent.  See State v. Phipps, 883 S.W.2d 138 (Tenn.

Crim. App. 1994).  Courts have allowed this type of testimony from non-expert as well as expert

witnesses regarding the defendant's state of mind in order to show that the defendant was incapable

of reflection - an element of deliberation.  See State v. Davis, 28 S.W.2d 993 (Tenn. 1930).

Rule 804 of the Tennessee Rules of Evidence provides an exception to the hearsay rule when

the declarant is unavailable. Rule 804(a)(4) provides, "'Unavailability of a witness' includes situations

in which the declarant is unable to be present, or to testify at the hearing because of the declarant's

death or then existing physical or mental illness or infirmity."  In the present case, Cheryl was

attempting to testify as to the conversation she had with her brother Jeff.  Ms. Arbogast was not

testifying as to what Jon said, such that it would be hearsay.  Instead, Ms. Arbogast testified as to the

conversation between herself and her deceased brother Jeff.  This testimony was not hearsay, and

should have been allowed under Rule 804 of the Tennessee Rules of Evidence.

18

**VI.    THE TRIAL COURT'S FAILURE TO HONOR JON HALL'S
REASONABLE REQUEST FOR REMOVAL OF THE FLAG
VIOLATED THE DEFENDANT'S FIFTH, SIXTH, AND
FOURTEENTH AMENDMENT RIGHTS TO TESTIFY ON HIS OWN
BEHALF.**

*There is no justification today for a rule that denies an accused the opportunity to offer*

*his own testimony.*" Rock v. Arkansas, 483 U.S. 44 (1987).  (Emphasis added).

The question now before this honorable Court is whether Jon Hall's right to testify may be

restricted by a trial court judge's decision denying Hall's reasonable request for removal of the

American flag.  During trial, Hall requested that he be allowed to testify.  (R. 348).  However, Hall

perceived the American flag to be a flag of war and, therefore, refused to testify while the flag was

being displayed in the courtroom.  (R. 348).  At this point during the trial, Hall requested that the flag

be removed from the courtroom so that he may testify on his behalf.  The trial court judge then

refused to honor Hall's request, thereby denying him his constitutional right to testify.

The State argues that Mr. Hall's request was not reasonable.  Brief for the State, 44.  The

State cited State v. DePriest, 697 S.W.2d 597, 602 (Tenn. Crim. App. 1985) for the proposition that

the trial court judge has a responsibility to control his courtroom.  Brief for the State, 44.

While the Appellant agrees that the trial court judge has the right to control his courtroom,

removing the flag while Mr. Hall exercised his constitutional right to testify would not have deprived

the trial court of any such control.  In DePriest, the trial court judge excused a defense attorney who

continued to interrupt the State's closing argument.  Moreover, in DePriest, there was already one

defense attorney making objections.  As the Court stated, "It appeared to be an attempt to control

the situation by limiting the number of persons who could interrupt argument."  Id. at 602.

In the present case, the trial court was not attempting to control outburst by the defendant,

laughing in the court room, or undisciplined arguments among lawyers.  To the contrary, the trial court unreasonable denied the Appellant his constitutional right to testify.  It is well settled that the flag receives no special treatment under our system of jurisprudence.  See Spence v. Washington, 418 U.S. 405 (1974); Texas v. Johnson, 491 U.S. 397 (1989); United States v. Eichman, 486 U.S. 310 (1990).  Mr. Hall was morally opposed to testifying while the flag flew in the court room.  Thus, when the trial court denied the Appellant's request that it be removed, it had the result of denying Mr. Hall his constitutional right to testify.  Rock, 483 U.S. 44 (1987).

The Appellant relies upon the remainder of his argument as set forth in his brief.

## CONCLUSION

For all the reasons stated above, this Honorable Court should grant Jon Douglass Hall a

new trial, or in the alternative commute his sentence.


Respectfully submitted,

SPRAGINS, BARNETT, COBB & BUTLER, PLC

BY:  _____

C. MARK DONAHOE
ATTORNEY FOR THE DEFENDANT
312 East Lafayette Street - P.O. Box 2004
Jackson, Tennessee 38302-2004
(901) 424-0461

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded by first-class mail, postage prepaid, to

John Knox Walkup
Attorney General
Criminal Justice Division
425 5th Avenue North
Cordell Hull Building - 2nd Floor
Nashville, Tennessee 37243-0493

on this the 23rd day of November, 1998.

C. MARK DONAHOE
ATTORNEY FOR THE DEFENDANT

22