No. _____

IN THE SUPREME COURT OF THE UNITED STATES

October Term 1999

JON DOUGLAS HALL,

Petitioner,

V.

STATE OF TENNESSEE,

Respondent.



ON PETITION FOR A WRIT OF CERTIORARI
TO THE SUPREME COURT OF TENNESSEE
AND THE TENNESSEE COURT OF CRIMINAL APPEALS

PETITION FOR A WRIT OF CERTIORARI

Donald E. Dawson
Post-Conviction Defender
460 James Robertson Parkway
Nashville, Tennessee 37243
(615) 741-9385

*Counsel of Record for Petitioner*

CAPITAL CASE

QUESTIONS PRESENTED FOR REVIEW

1.    Whether Tennessee's statutory mandate and instructions to the jury requiring that the

jury must return a unanimous verdict in order for the capital defendant to receive a

sentence of life violates the Eighth and Fourteenth Amendments?


2.    Does Tennessee's method for determining whether a death sentence is proportional

violate the due process clause of the Fourteenth Amendment?

# TABLE OF CONTENTS

QUESTIONS PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

OPINIONS BELOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONSTITUTIONAL PROVISIONS INVOLVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.  How the Federal Questions Were Presented in the State Courts . . . . . . . . . . . . . . . . . . 3

   B.  Facts Relating to the Offense and the Petitioner Material to the
       Consideration of the Questions Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

REASONS FOR ALLOWING THE WRIT ............................................. 5

I.    Instructing the Jury that a Decision to Impose a Life Sentence Must be

      Unanimous Violates the Eighth and Fourteenth Amendments. .................... 5

II.   Tennessee's Method for Determining Whether a Death Sentence is Proportional Violates

      the Due Process Clause of the Fourteenth Amendment. .......................... 9

CONCLUSION ................................................................. 14

# TABLE OF AUTHORITIES

## CASES

Buford v. State, 570 So.2d 923 (Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chesire v. State, 568 So.2d 908 (Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Clemons v. Mississippi, 494 U.S. 738 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Copeland v. Dugger, 565 So.2d 1348 (Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Dolinsky v. State, 576 So.2d 271 (Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Downs v. State, 574 So.2d 1095 (Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Farinas v. State, 569 So.2d 425 (Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ford v. Wainwright, 477 U.S. 399, 427 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Godfrey v. Georgia, 446 U.S. 420 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gregg v. Georgia, 428 U.S. 153 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Hegwood v. State, 575 So.2d 170 (Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hewitt v. Helms, 459 U.S. 460 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hopkins v. Shillinger, 545 F.Supp. 374 (D.Wyo. 1986) . . . . . . . . . . . . . . . . . . . . . . . 7

Lucas v. State, 568 So.2d 18 (Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McKinney v. State, 579 So.2d 80 (Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McKoy v. North Carolina, 494 U.S. 433 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Mills v. Maryland, 486 U.S. 367 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Nibert v. State, 574 So.2d 1059 (Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Parker v. Dugger, 498 U.S. 308 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Penry v. Lynaugh, 492 U.S. 302 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Durre, 690 P.2d 165 (Colo. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Simmons v. South Carolina, 512 U.S. 154 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

State v. Barber, 753 S.W.2d 659 (Tenn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

State v. Bland, 958 S.W.2d 651 (Tenn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

State v. Fitzpatrick, 527 So.2d 809 (Fla. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Hall, 8 S.W.2d 593 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

State v. Loyd, 459 So.2d 498 (La. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

State v. Pritchett, 621 S.W.2d 127 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

State v. Terry, 813 S.W.2d 420 (Tenn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

State v. Williams, 392 So.2d 619 (La. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Townsend v. Burke, 334 U.S. 736, 741 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Whalen v. State, 492 A.2d 552 (Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## CONSTITUTIONAL PROVISIONS

Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 2, 5, 9

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 2, 5, 6, 9, 10, 14

## STATUTES

TENN. CODE ANN. §39-13-204(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 , 7

TENN. CODE ANN. §39-13-204(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

TENN. CODE ANN. §39-13-206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 14

## PETITION FOR A WRIT OF CERTIORARI

Jon Douglas Hall respectfully petitions for a writ of certiorari to review the judgment of the Supreme Court of Tennessee.

## OPINIONS BELOW

On November 15, 1999, the Supreme Court of Tennessee entered its opinion in this matter. The opinion of the Supreme Court of Tennessee is reported at 8 S.W.3d 593 (Tenn. 1999), and is included in the Appendix at a-1. The Tennessee Supreme Court denied rehearing on December 27, 1999. The order denying rehearing is included in the appendix at a-14. The Tennessee Court of Criminal Appeals entered its opinion on April 29, 1998. The opinion is unreported and is included in the appendix at a-15.

## JURISDICTION

The Supreme Court of Tennessee denied rehearing on December 27, 1999. (Appendix at a-14.) This petition for a writ of certiorari is accordingly due on March 27, 2000.[1] The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1257(a) and 1651.

---

[1] The 90th day after the denial of rehearing is Sunday, March 26, 2000. Therefore, this Petition is due on the following Monday, March 27, 2000. See. Rules 13 and 30, Rules of the United States Supreme Court.

## CONSTITUTIONAL PROVISIONS INVOLVED

This petition involves the following constitutional provisions:

1.    The Eighth Amendment to the Constitution of the United States provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

2.    The Fourteenth Amendment to the Constitution of the United States provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## STATEMENT OF THE CASE

A.    HOW THE FEDERAL QUESTIONS WERE PRESENTED IN THE STATE COURTS.

    1.    Challenge to the jury instruction that the jury must be unanimous for a verdict of life.

This issue was briefed by the Petitioner in his appeal to the Tennessee Supreme Court. Brief of the Appellant, at 26. The Tennessee Supreme Court considered the issue on the merits. State v. Hall, 3 S.W.3d 593, 602-603 (Tenn. 1999); Appendix a-9 through a-10.

    2.    Challenge to the manner in which the Tennessee Supreme Court conducts proportionality review.

The Petitioner first raised this issue in the Tennessee Court of Criminal Appeals. State v. Hall, CCA No. 02C01-9703-CC-00095 (1998); Appendix at a-25. Appellant also raised this issue in the Tennessee Supreme Court. State v. Hall, 3 S.W.3d at 604-606; Appendix a-11 through a-12.

B.    FACTS RELATING TO THE OFFENSE AND THE PETITIONER MATERIAL TO THE CONSIDERATION OF THE QUESTIONS PRESENTED.

On October 3, 1994, Jon Douglas Hall was indicted for the premeditated murder of his estranged wife, Billie Jo Hall. The prosecution sought the death penalty. The trial court granted a change of venue from Henderson County, Tennessee to Madison County, Tennessee and the trial was commenced on February 3, 1997. At 10:59 a.m. on February 5, 1997, the jury returned a verdict of guilty to the offense of first degree murder. Following a sentencing hearing, at 5:53 p.m. on February 5, 1997 the jury returned a verdict sentencing the Petitioner to death. To make the defendant eligible for a death sentence, the jury found "[t]he murder was especially heinous,

atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to

produce death." (Jury Verdict Form, Supplement to the Record on Appeal.)

At the time of the instant offense, Petitioner and his wife, Billie Hall, were having marital

difficulties and were separated. (Transcript of Evidence, T.E., Vol. II, 221.) By July 29, 1994, the

day that Billie Jo Hall was killed, Jon Hall had become very depressed and worried about his

children, especially his youngest daughter who suffered from cerebral palsy. (T.E. Vol. II, 234.) On

July 29 he had become desperate to reconcile his marriage and had been drinking all day. (Id.) Late

in the day he went to his wife's home to deliver a child support check and attempt to discuss the

possibility of reconciliation. (T.E. Vol. II, 228.)

Billie Jo Hall was not interested in discussing reconciliation and Jon Hall lost his temper and

began to strike his estranged wife. (Id.) Prior to entering the home, Petitioner had disconnected the

telephone and, therefore, the children, who were present, were unable to call for assistance. Mrs.

Hall had often called the police on Petitioner and he disconnected the phone in order to force her to

talk with him without contacting the police. (T.E. Vol. II, 201, 235.) Petitioner, unable to control

his rage and passion, dragged his wife to a swimming pool in the backyard where the fight continued

and Billie Jo Hall ultimately died. (T.E. Vol. II, 203-205.) The state's forensic pathologist testified

that Mrs. Hall had been struck approximately eighty-three times and had died of asphyxia caused

by manual strangulation with some indication of drowning. (T.E. Vol. II, 288-289, 302.)

Petitioner was convicted of first degree murder and sentenced to death. The conviction and

sentence were affirmed on appeal. State v. Hall, 8 S.W.3d 593 (Tenn. 1999); Appendix at a-1.

-4-

## REASONS FOR ALLOWING THE WRIT

I.   INSTRUCTING THE JURY THAT A DECISION TO IMPOSE A LIFE SENTENCE
     MUST BE UNANIMOUS VIOLATES THE EIGHTH AND FOURTEENTH
     AMENDMENTS.

    A.   The jury was instructed that it must agree unanimously in order to impose a life
        sentence, and is prohibited from being told the effect of a non-unanimous verdict.

Pursuant to TENN. CODE ANN. §39-13-204(f), which provides that the jury must unanimously

agree that the aggravating circumstance or circumstances proven by the State do not outweigh the

mitigating circumstance or circumstances in order to impose a life sentence, the jury was instructed

that its verdict must be unanimous in order to return a verdict of a sentence of life or life without

possibility of parole. (T.E. Vol. IV, 444-447.)   In accord with TENN. CODE ANN. §39-13-204(h),

which provides that if the jury cannot ultimately agree as to punishment, the judge shall impose a

sentence of life imprisonment, but that the jury shall not be instructed on the effect of their failure

to agree on a punishment, the jury was not instructed as to the result of its non-unanimity.

These provisions are misleading and coercive, and they cause the jury to arbitrarily arrive at

a unanimous verdict in order to avoid the imagined adverse consequences of a failure to agree on

punishment: e.g. retrial, censure for failing to fulfill their civic duty, no punishment for the

defendant.  The provisions also violate the suggestion in Gregg v. Georgia, 428 U.S. 153, 190

(1976), that "accurate sentencing information is an indispensable prerequisite to a reasoned

determination of whether a defendant shall live or die."

Moreover, the instructions given the jury are patently false: a defendant convicted of first

degree murder must receive *at least* a life sentence; that issue is settled before the sentencing hearing

even begins. The jury's true function in the penalty phase is to determine whether the defendant is

so blameworthy that he deserves to die. If the jurors cannot agree unanimously to that proposition,

the defendant receives the life sentence that he would have automatically received at the close of the

guilt phase if the death penalty had not been sought in the case.

The only conceivable purpose in keeping this information from the jury is to tilt the scales

in favor of the prosecution and make it easier to obtain the unanimous verdict required for a death

sentence. This is a violation of the defendant's right to due process of law, and the arbitrariness that

is injected into the jury's sentencing deliberations violates federal proscriptions against cruel and

unusual punishment.

B.    Tennessee's interpretation of this Court's admonition regarding the need for accurate
      sentencing information is out of step with the interpretation given by other States.

In other states it is reversible error not to inform a capital jury that its inability to agree

unanimously will result in the imposition of a life sentence. The reasoning of the Louisiana Supreme

Court is highly pertinent:

> [T]he jurors were not fully informed of the consequences of
> their votes and the penalties which could result in each eventuality.
> They were not told that by their failure to decide unanimously, they
> would in fact decide that the court must impose a life sentence of life
> imprisonment. . . . Instead, the members of the sentencing body were
> left free to speculate as to what the outcome would be in the event
> there was not unanimity. Under these circumstances, individual
> jurors could rationally surmise that in the event of disagreement a
> new sentencing hearing, and perhaps a new trial, before another jury
> would be required.
>
> Such a false impression reasonably may have swayed a juror
> to join the majority, rather than hold to his honest convictions, in
> order to avoid forcing the parties, witnesses and court officials to
> undergo additional proceedings. Consequently, by allowing the jurors
> to remain ignorant of the true consequences of their failure to decide

-6-

> unanimously upon a recommendation, the trial court failed to suitably
> direct and limit the jury's discretion so as to minimize the risk of
> arbitrary and capricious action. The death penalty was imposed under
> sentencing procedures that created a substantial risk that it would be
> inflicted in an arbitrary and capricious manner.

State v. Williams, 392 So.2d 619, 634-635 (La. 1980). See also, State v. Loyd, 459 So.2d 498,

500-502 (La. 1984); People v. Durre, 690 P.2d 165 (Colo. 1984); Whalen v. State, 492 A.2d 552

(Del. 1985); Hopkins v. Shillinger, 545 F.Supp. 374 (D.Wyo. 1986).

C.    Requiring the jury to agree unanimously to a life verdict violates Mills v. Maryland
      and McKoy v. North Carolina.

In McKoy v. North Carolina, 494 U.S.433, 434 (1990), the Court interpreted its holding in

Mills v. Maryland, 486 U.S. 367 (1988) as requiring that, "each juror be permitted to consider *and*

*give effect* to mitigating evidence when deciding the ultimate question whether to vote for a sentence

of death." (emphasis added). This reaffirmed the holding in Penry v. Lynaugh, 492 U.S. 302, 328

(1989) that, "the jury must be able to consider *and give effect* to any mitigating evidence." (emphasis

added).

The constitutional prohibition against requiring jurors to be unanimous as to the existence

of mitigating circumstances applies equally to their decision of whether the mitigating circumstances

outweigh the aggravating circumstances. There is no discernible difference between requiring the

jury to unanimously agree on the *existence* of a mitigating circumstance and requiring the jury to

unanimously agree on the *effect* of a mitigating circumstance: both are constitutionally impermissible

under Mills and McKoy.

By requiring the jury to unanimously agree that aggravation does not outweigh mitigation,

T.C.A. §39-13-204(f) impinges on the defendant's right to have each juror consider and give effect

-7-

to the mitigating evidence. A juror who, after considering the mitigating circumstances, believes that

they are not outweighed by the aggravating circumstances cannot give effect to that belief because

of the misleading instruction that the jury must be unanimous to impose a life sentence.    The

prohibition in T.C.A. §39-13-204(h) on informing the jury of the consequences of a non-unanimous

verdict keeps jurors ignorant of the fact that they can give effect to their convictions by their

individual votes for a life sentence.

The Eighth Amendment "mandates that where discretion is afforded a sentencing body on

a matter so grave as the determination of whether a human life should be taken or spared, that

discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and

capricious action." Gregg v. Georgia, 428 U.S. 153, 189 (1976)(opinion of Stewart, Powell, and

Stevens, JJ.).   This discretion must "be exercised in an informed manner."   Id.   Thus, "accurate

sentencing information is an indispensable prerequisite to a reasoned determination of whether a

defendant shall live or die by a jury of people who may never before have made a sentencing

decision."   Id. at 190.  As Justice Souter has noted, "[W]henever there is a reasonable likelihood that

a juror will misunderstand a sentencing term, [there is a risk of the death sentence] having been

'arbitrarily or discriminatorily' and 'wantonly and . . . freakishly imposed.'" Simmons v. South

Carolina, 512 U.S. 154, 172-73 (1994) (Souter, J., concurring) (citations omitted).

The reasonable likelihood that Petitioner was sentenced to death on the basis of the jury's

erroneous assumptions about the effect of a jury deadlock also violated the Fouteenth Amendment's

guarantee of due process.  The Court has long recognized that sentences based on "assumptions ...

which [are] materially untrue" or "on a foundation [which is] extensively and materially false"

violate due process.   Townsend v. Burke, 334 U.S. 736, 741 (1948).  This principle applies with

-8-

even greater force in the capital sentencing context, where the necessity of accurate sentencing information is reinforced by the Eighth Amendment requirement of "heightened reliability" in the imposition of death sentences.

In the instant case the Tennessee Supreme Court dismissed this issue by noting that the jury had been instructed that "[t]here is no requirement of jury unanimity as to any particular mitigating circumstance or that you agree on the same mitigating circumstance." Hall, 8 S.W.2d at 603. However, this conclusion does not address the ultimate question of whether each juror understands that they can give full effect to the mitigation evidence as he or she finds it. The Tennessee Supreme Court by dismissing Petitioner's challenge to the unanimity instructions has missed the gravamen of Mills and McKov. Consequently, this Court must grant certiorari in order to bring the decision in the case in conformity with the prior decisions of this Court and to bring Tennessee into conformity with the interpretation given by her sister states.

II.    **TENNESSEE'S METHOD FOR DETERMINING WHETHER A DEATH SENTENCE IS PROPORTIONAL VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.**

A.    The appellate review process in death penalty cases is constitutionally inadequate.

In order to ensure that a death sentence has not been arbitrarily or capriciously imposed, the states must provide "meaningful appellate review." Clemons v. Mississippi, 494U.S.738, 749 (1990); Parker v. Dugger, 498 U.S.308, 321 (1991) ("[M]eaningful appellate review requires that the appellate court consider the defendant's actual record. 'What is important . . . is an individualized determination on the basis of the character of the individual and the circumstances of the crime.'" (citation omitted)).

In addition, TENN. CODE ANN. §39-13-206 requires the Tennessee Supreme Court to review

each case to determine, among other things, whether the death sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant." This review has been held to be an "integral part of the death penalty statute." State v. Pritchett, 621 S.W.2d 127, 140 (1981).

This process has created a liberty interest that is protected by the due process clause of the Fourteenth Amendment. Hewitt v. Helms, 459 U.S. 460, 466 (1983)("Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States.") When a State places substantive limitations or requirements on official discretion, it thereby creates a liberty interest protected by the due process clause. See Ford v. Wainwright, 477 U.S. 399, 427 (1986)(O'Connor concurring). As discussed below, the Tennessee Supreme Court has failed to protect the legislatively created due process right to a proportionality review.

B.    The court cannot properly evaluate the proof due to the absence of written findings concerning mitigating circumstances.

The Tennessee Supreme Court has recognized that, Tennessee's death penalty statute does not require that the jury make written findings of mitigating circumstances and acknowledges the difficulty this creates in appellate review. State v. Terry, 813 S.W.2d 420, 424-425 (Tenn. 1991). In accordance with the lack of statutory requirement for each juror to indicate in writing any mitigating factors he or she found, the trial court in this case did not require such a written finding. (Jury instructions, T.E. Vol. IV, 446; verdict form, Supplement to Record on Appeal.)

The absence of written findings makes it difficult for the appellate court to make an individualized determination on the basis of the actual record of the accused's character and background that the death penalty is the appropriate punishment in the case or to compare one death

-10-

sentenced inmate to another, let alone to all those whose crimes are as or more egregious and yet

received sentences of less than death.

In this case the Tennessee Supreme Court has once again stated that in conducting its

comparative proportionality review it

> applies the precedent-seeking approach, in which it compares a
> particular case with other cases in which it compares a particular case
> with other cases in which the defendants were convicted of the same
> or similar crimes. The Court conducts the comparison by examining
> the facts or the crimes, the characteristics of the defendants, and the
> aggravating and mitigating factors involved.

8 S.W.3d at 604; Appendix at a-11. Nevertheless it has failed to explain how it determines the

aggravating and mitigating factors in the absence of written findings regarding the mitigation

evidence. Does the court accept the juries findings on aggravating factors but then make its own

findings regarding mitigation? How does the court evaluate the witnesses from a cold record? The

court tells us that among other things it considers "the defendant's age, race and gender." Id. Are

these aggravating or mitigating? In short the court tells us nothing that the individual can use to

argue his or her case.

In the instant case the court, in discussing it finding that the penalty of death was not

disproportional said nothing about the Petitioner himself. The court merely reviewed the facts of

the crime in other cases involving the killing of a spouse. 8 S.W.3d at 604-606. There is no review

of the mitigation evidence present in each case as no mitigation findings had been recorded.

Other jurisdictions require the sentencer to specify the mitigating factors it uses. For

example, Florida, which has judge sentencing based on a jury recommendation, requires the trial

court to specify the mitigating as well as the aggravating circumstances that were found to be present

in the case, and the Florida Supreme Court has relied upon these findings to reverse numerous death

sentences on proportionality grounds.[2]

    C.    The court's methodology is flawed.

    Exactly how the Tennessee Supreme Court reviews death sentences to make the

determination mandated by T.C.A. §39-13-206 is unknown and the decision in this case does nothing

to advance that knowledge. Until the decision in State v. Bland, 958 S.W.2d 651 (Tenn. 1997), there

were no published standards or criteria regarding the determination that could be addressed by

defense counsel, and there still is no data base available to the litigants and reviewing courts.

    Prior to the Bland decision, the court dealt with the proportionality issue in a conclusory

fashion--usually reiterating the findings on the jury verdict form and citing one or more prior cases

where similar aggravators were found based on the same type of crime. The court has engaged and,

pursuant to Bland, continues to engage in an ongoing syllogism: the death sentence was imposed in

case A; case B is in some way similar to case A, therefore, the death sentence is not disproportionate

in case B. The proposed methodology outlined by the court in State v. Bland violates the statutory

mandate in that (a) the pool of cases is unduly narrow; (b) the proportionality determination is

entirely subjective, and (c) the review fails to properly function as a safeguard against arbitrary

sentencing. As such the proportionality review conducted in this case violates the due process

clause.

---

[2] See e.g., State v. Fitzpatrick, 527 So.2d 809 (Fla. 1988); Nibert v. State, 574 So.2d 1059 (Fla.
1990); Farinas v. State, 569 So.2d 425 (Fla. 1990); Buford v. State, 570 So.2d 923 (Fla. 1990);
Hegwood v. State, 575 So.2d 170 (Fla. 1991); Downs v. State, 574 So.2d 1095 (Fla. 1991);
Dolinsky v. State, 576 So.2d 271 (Fla. 1991); Copeland v. Dugger, 565 So.2d 1348 (Fla. 1990);
Chesire v. State, 568 So.2d 908 (Fla. 1990); Lucas v. State, 568 So.2d 18 (Fla. 1990); McKinney
v. State, 579 So.2d 80 (Fla. 1991).

1.    The pool of cases is unduly narrow.

The universe of cases to be considered in comparative proportionality review formerly included "all criminal trials for first degree murder in which life imprisonment or a sentence of death have been imposed." State v. Barber, 753 S.W.2d 659, 664 (Tenn. 1988). Inclusion of first degree murder cases in which the death penalty was not sought (as well as those in which it was sought but not imposed), enables the reviewing courts to ensure that the sentencing scheme is performing its constitutional imperative to provide "a principled way to distinguish the case in which the death penalty was imposed from the many cases in which it was not." State v. Middlebrooks, 840 S.W.2d 317, 343 (Tenn. 1992) (citing Godfrey v. Georgia, 446 U.S. 420, 433 (1980)).

However, in State v. Bland, 558 S.W.2d at 666, the Court stated that henceforth while the "universe" of similar cases would be those in which the defendant was convicted of first degree murder, the "pool" for comparison purposes will be "those cases in which a capital sentencing hearing was actually conducted to determine whether the sentence should be life imprisonment, life without the possibility of parole, or death by electrocution." In other words, henceforth, the Court will disregard those first degree murder cases for which no notice of the death penalty had been filed by the State, regardless of how egregious the circumstances of the case or the nature of the defendant might have been. As noted by the dissenting justices in Bland, "cases in which the death penalty is not sought are equally relevant to proportionality as cases in which the death penalty is sought. Without all first degree murder convictions included in the pool, it would be . . . quite difficult to conduct proportionality review as required by Tenn.Code Ann. sec. 39-13-206(c)(1) (Supp. 1996)." 958 S.W.2d at 679 (Birch dissenting).

2.    The determination is entirely subjective.

-13-

The majority in <u>Bland</u> relies on the proposition that "the sentence of death is not disproportionate, unless, the case taken as a whole is plainly lacking in circumstances consistent with those in cases where the death penalty has been imposed." In other words, if the case under review is in any way similar to a past case in which the death penalty has been imposed death is not a disproportionate punishment. The majority eschews "mathematical or scientific techniques," choosing to rely instead upon "the experienced judgment and intuition of its own members." 958 S.W.2d 667. Thus, the Court's proportionality review (as in the past) amounts to little more than a we-know-it-when-we-see-it determination that a case is sufficiently shocking to a majority of the Court's members to warrant imposition of the death penalty.

This lack of standards and arbitrary approach to proportionality review as evidenced by the treatment given the issue in the instant case demonstrates a denial of due process and merits review by this Court

## CONCLUSION

For the above reasons, this Court should grant this writ and hear this case.

Respectfully submitted,

Donald E. Dawson
Post-Conviction Defender
460 James Robertson Parkway
Nashville, Tennessee 37243
(615) 741-9331

*Counsel of Record*

- 14 -

No. _____

---

IN THE SUPREME COURT OF THE UNITED STATES

October Term 1999

---

JON DOUGLAS HALL,

Petitioner,

V.

STATE OF TENNESSEE,

Respondent.

---

PETITION FOR A WRIT OF CERTIORARI
TO THE SUPREME COURT OF TENNESSEE AND
THE TENNESSEE COURT OF CRIMINAL APPEALS

---

APPENDIX

## CONTENTS OF APPENDIX

OPINION OF THE TENNESSEE SUPREME COURT ............................. a-1

ORDER DENYING PETITION FOR REHEARING ................................ a-14

OPINION OF THE COURT OF CRIMINAL APPEALS ........................... a-15